David Bricker (Bar No. 158896)
**THORNTON LAW FIRM LLP**
9430 West Olympic Boulevard, Suite 400
Beverly Hills, California 90212
Telephone: (310) 282-8676
Facsimile: (310) 388-5316
dbricker@tenlaw.com

*Proposed Liaison Counsel for the Class*

**LABATON SUCHAROW LLP**
Christopher J. Keller (*pro hac vice* forthcoming)
Eric J. Belfi (*pro hac vice* forthcoming)
Francis P. McConville (*pro hac vice* forthcoming)
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
ckeller@labaton.com
ebelfi@labaton.com
fmcconville@labaton.com

*Counsel for Proposed Lead Plaintiff*
*Boston Retirement System and Proposed Lead*
*Counsel for the Class*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BENJAMIN STIRRATT, Individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>        v.<br><br>UBER TECHNOLOGIES, INC., DARA KHOSROWSHAHI, NELSON CHAI, GLEN CEREMONY, RONALD SUGAR, URSULA BURNS, GARRETT CAMP, MATT COHLER, RYAN GRAVES, ARIANNA HUFFINGTON, TRAVIS KALANICK, WAN LING MARTELLO, H.E. YASIR AL-RUMAYYAN, JOHN THAIN, DAVID TRUJILLO, MORGAN STANLEY & CO. LLC, GOLDMAN SACHS & CO. LLC, MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED, BARCLAYS CAPITAL MARKETS, LLC, SUNTRUST ROBINSON | Case No. 3:19-cv-06361-RS<br><br><u>**CLASS ACTION**</u><br><br>**NOTICE OF MOTION AND MOTION OF BOSTON RETIREMENT SYSTEM FOR APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF COUNSEL; MEMORANDUM OF LAW IN SUPPORT THEREOF**<br><br>Date: January 9, 2019<br>Time:  10:00 AM<br>Courtroom: 3 – 17th Floor<br>Judge:  Richard Seeborg |

HUMPHREY, INC., DEUTSCHE BANK
SECURITIES INC., HSBC SECURITIES
(USA) INC., SMBC NIKKO SECURITIES
AMERICA, INC., MIZUHO SECURITIES
USA LLC, NEEDHAM & COMPANY, LLC,
LOOP CAPITAL MARKETS LLC, SIEBERT
CISNEROS SHANK & CO., L.L.C.,
ACADEMY SECURITIES, INC., BTIG, LLC,
CANACCORD GENUITY LLC,
CASTLEOAK SECURITIES, L.P., COWEN
AND COMPANY, LLC, MACQUARIE
CAPITAL (USA) INC., MISCHLER
FINANCIAL GROUP, INC., OPPENHEIMER
& CO. INC., RAYMOND JAMES &
ASSOCIATES, INC., WILLIAM BLAIR &
COMPANY, L.L.C., THE WILLIAMS
CAPITAL GROUP, L.P., AND TPG CAPITAL
BD, LLC,

   Defendants.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. ii

NOTICE OF MOTION AND MOTION ............................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ....................................................... 2

I.      STATEMENT OF THE ISSUES TO BE DECIDED........................................... 2

II.     PRELIMINARY STATEMENT ............................................................................ 2

III.    OVERVIEW OF THE PENDING ACTION.......................................................... 4

IV.    ARGUMENT ............................................................................................................ 6

       A.     The Statutory Framework of the Private Securities Litigation Reform Act ............6

             1.     The Aim of the PSLRA........................................................................ 6

             2.     "Selection" of Lead Counsel as the Cornerstone of the PSLRA ................ 8

             3.     The PSLRA's Statutory Mechanism........................................................ 13

       B.     Boston Should be Appointed Lead Plaintiff ............................................15

             1.     The Fund Timely Moved for Appointment as Lead Plaintiff.................. 15

             2.     The Fund Has the Largest Financial Interest in the Outcome of the Action............................................................................................................. 15

             3.     The Fund Otherwise Satisfies Rule 23's Typicality and Adequacy Requirements ...................................................................................... 16

       C.     The Fund's Choice of Lead Counsel Is Well-Qualified to Represent the Class........................................................................................................................20

CONCLUSION.................................................................................................................... 21

1

## **TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4

*Ali v. Intel Corp.*,
5
    No. 18-cv-00507-YGR, 2018 WL 2412111 (N.D. Cal. May 29, 2018)................................12

6

*Andrade v. Am. Apparel, Inc.*,
    No. 10-06352MMM, 2011 WL 13130706 (C.D. Cal. Mar. 15, 2011) ...................................18

7

*Astoria Fed. Savings & Loan Ass'n v. Solimino*,
8
    501 U.S. 104 (1991)...........................................................................................................9

9

*Bailey v. United States*,
10
    516 U.S. 137 (1995)...........................................................................................................9

11

*Bodner v. Oreck Direct, LLC*,
    No. C06-4756MHP, 2007 WL 1223777 (N.D. Cal. Apr. 25, 2007)........................................13

12

*Bodri v. Gopro, Inc.*,
13
    No. 16-cv-00232-JST, 2016 WL 1718217 (N.D. Cal. Apr. 28, 2016) ...................................11

14

*Bowman v. Legato Sys., Inc.*,
15
    195 F.R.D. 655 (N.D. Cal. 2000).........................................................................................11

16

*In re Calpine Corp. Sec. Litig.*,
    No. C02-1200 SBA, 2004 WL 3316309 (N.D. Cal. Feb. 5, 2004) ..................................11, 12

17

*In re Cavanaugh*,
18
    306 F.3d 726 (9th Cir. 2002) .................................................................................. *passim*

19

*In re Cendant Corp. Sec. Litig.*,
20
    404 F.3d 173 (3d Cir. 2005)..........................................................................................6, 8, 14

21

*City of Royal Oak Ret. Sys. v. Juniper Networks Inc.*,
    No. 5:11-CV-04003-CHK, 2012 WL 78780 (N.D. Cal. Jan. 9, 2012) ...................................17

22

*Cohen v. United States*,
23
    586 F.3d 703 (9th Cir. 2009) ...........................................................................................10

24

*In re Critical Path, Inc. Sec. Litig.*,
    156 F. Supp. 2d 1102 (N.D. Cal. 2001) ..............................................................................18

25

26

*In re Enron Corp. Sec. Litig.*,
    206 F.R.D 427 (S.D. Tex. 2002)..........................................................................................19

27

28

MOTION OF BOSTON RETIREMENT SYSTEM FOR APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF COUNSEL
CASE NO. 3:19-CV-06361-RS

ii

*In re Extreme Networks Inc. Sec. Litig.*,
   No. 15-cv-04883BLF, 2016 WL 3519283 (N.D. Cal. June 28, 2016) .............................16, 18

*Ferrari v. Gisch*,
   225 F.R.D. 599 (C.D. Cal. 2004) ...................................................................................14

*In re Gemstar-TV Guide Int'l, Inc. Sec. Litig.*,
   209 F.R.D. 447 (C.D. Cal. 2002) .............................................................................12, 18

*Hessefort v. Super Micro Comput., Inc.*,
   317 F. Supp. 3d 1056 (N.D. Cal. 2018) ............................................................................10

*Hibbs v. Winn*,
   542 U.S. 88 (2004) ........................................................................................................9

*Krieger v. Atheros Commc'ns, Inc.*,
   No. 11-CV-00640-LHK, 2011 WL 6153154 (N.D. Cal. Dec. 12, 2011) ..............................16

*Kuriakose v. Fed. Home Loan Mortg. Co.*,
   No. 1:08-CV-7281 (JFK), 2008 WL 4974839 (S.D.N.Y. Nov. 24, 2008) ...........................10

*Mauss v. NuVasive, Inc.*,
   No. 13cv2005 JM (JLB), 2017 WL 1080654 (S.D. Cal. Mar. 22, 2017) ..........................7, 8

*Mohanty v. BigBand Networks, Inc.*,
   No. C07-5101SBA, 2008 WL 426250 (N.D. Cal. Feb. 14, 2008).................................14, 16

*In re Network Assocs., Inc. Sec. Litig.*,
   76 F. Supp. 2d 1017 (N.D. Cal. 1999) ............................................................................13

*Perlmutter v. Intuitive Surgical, Inc.*,
   No. 10-CV-03451-LHK, 2011 WL 566814 (N.D. Cal. Feb. 15, 2011).............................7, 18

*In re Petrobras Sec. Litig.*,
   104 F. Supp. 3d 618 (S.D.N.Y. 2015).............................................................................11

*Piven v. Skyes Enters., Inc.*,
   137 F. Supp. 2d 1295 (M.D. Fla. 2000) ..........................................................................12

*In re Royal Ahold N.V. Sec. & ERISA Litig.*,
   219 F.R.D. 343 (D. Md. 2003)....................................................................................10, 11

*Rubke v. Capitol Bancorp*,
   No. C054800 PJH, 2006 WL 734390 (N.D. Cal. Mar. 21, 2006) ......................................10

*Sprietsma v. Mercury Marine*,
   537 U.S. 51 (2003)..........................................................................................................9

MOTION OF BOSTON RETIREMENT SYSTEM FOR APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF COUNSEL
CASE NO. 3:19-cv-06361-RS

iii

*Stocke v. Shuffle Master Inc.*,
    No. 2:07-cv-00715, 2007 WL 4262723 (D. Nev. Nov. 30, 2007)..........................................19

*In re Tarragon Corp. Sec. Litig.*,
    No. 07 CIV 7972 (PKC), 2007 WL 4302732 (S.D.N.Y. Dec. 6, 2007) ...............................11

*In re Versata, Inc., Sec. Litig.*,
    No. C 01-1439 SI, 2001 WL 34012374 (N.D. Cal. Aug. 20, 2001)....................................6, 7

*In re Vonage Initial Pub. Offering (IPO) Sec. Litig.*,
    No. 07-177 (FLW), 2007 WL 2683636 (D.N.J. Sept. 7, 2007)............................................13

**Rules & Statutes**

Fed. R. Civ. P. 23 ............................................................................................................. *passim*

15 U.S.C. § 77z-1 *et seq.* ................................................................................................ *passim*

**Docketed Cases**

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
    No. 04-cv-8141 (S.D.N.Y.)..................................................................................................20

*In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*,
    No. 08-md-1963 (S.D.N.Y.) ................................................................................................20

*In re Broadcom Corp. Class Action Litig.*,
    No. 06-cv-5036 (C.D. Cal.) ...........................................................................................20, 21

*In re Countrywide Fin. Corp. Sec. Litig.*,
    No. 07-cv-5295 (C.D. Cal.) .................................................................................................20

*Desilvio v. Lion Biotechnologies, Inc.*,
    No. 17-cv-02086 (N.D. Cal. July 7, 2017)..........................................................................12

*In re Goldman Sachs Grp., Inc. Sec. Litig.*,
    No. 10-cv-3461 (S.D.N.Y.)..................................................................................................21

*In re Mercury Interactive Corp. Sec. Litig.*,
    No. 05-cv-3395 (N.D. Cal.) .................................................................................................21

*In re Nu Skin Enters., Inc. Sec. Litig.*,
    No. 14-cv-00033 (D. Utah)..................................................................................................19

**Other Authorities**

H.R. Conf. Rep. 104-369, *reprinted in* 1995 U.S.C.C.A.N. 730 ......................................... *passim*

S. Rep. 104-98, *reprinted in* 1995 U.S.C.C.A.N. 679 ..........................................................8, 9, 11

Motion of Boston Retirement System for Appointment as Lead Plaintiff, and Approval of Selection of Counsel
Case No. 3:19-cv-06361-RS

iv

### NOTICE OF MOTION AND MOTION

TO:     ALL PARTIES AND THEIR COUNSEL OF RECORD

PLEASE TAKE NOTICE that Lead Plaintiff movant Boston Retirement System ("Boston" or the "Fund") through its counsel, will hereby move this Court, in Courtroom 3 – 17th Floor of the Honorable Richard Seeborg, at the United States District Court, Northern District of California, San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, California 94102, on January 9, 2019 at 10:00 AM, or as soon thereafter as the matter may be heard, for the entry of an Order: (i) appointing Boston as Lead Plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 77z-1(a)(3)(B), *et seq.*; (ii) approving Boston's selection of Labaton Sucharow LLP ("Labaton Sucharow") as Lead Counsel for the Class and Thornton Law Firm LLP ("Thornton Law") as Liaison Counsel for the Class (the "Motion"); and (iii) granting such other and further relief as the Court may deem just and proper.

This Motion is made on the grounds that Boston believes it is the "most adequate plaintiff" under the PSLRA, and should therefore be appointed Lead Plaintiff.  Specifically, the Fund believes it has the "largest financial interest" in the relief sought by the Class in this litigation by virtue of, among other things, the significant losses that it suffered on its investments in Uber Technologies, Inc. ("Uber" or the "Company") securities pursuant and/or traceable to Uber's registration statement and prospectus (together, the "Registration Statement") issued in connection with Uber's May 10, 2019 initial public stock offering (the "IPO" or the "Offering").  Further, Boston is the paradigmatic Lead Plaintiff envisioned by Congress in enacting the PSLRA because it is a sophisticated institutional investor with a substantial financial stake in the litigation that has, after rigorous consideration, selected and retained competent counsel that it will effectively supervise as the litigation progresses.  The Fund also otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") because its claims are typical of other Class members' claims and because it will fairly and adequately represent the Class.

This Motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities in support thereof, the Declaration of David Bricker ("Bricker Decl.") filed herewith, the pleadings and other filings herein, and such written or oral argument and discovery as may be permitted by the Court.

WHEREFORE, Boston respectfully requests that the Court: (i) appoint it as Lead Plaintiff in the above-captioned action pursuant to the PSLRA; (ii) approve its selection of Labaton Sucharow as Lead Counsel for the Class and of Thornton Law as Liaison Counsel for the Class; and (iii) grant such further relief as the Court may deem just and proper.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   STATEMENT OF THE ISSUES TO BE DECIDED

1.   Whether the Court should appoint Boston as Lead Plaintiff pursuant to 15 U.S.C. § 77z-1(a)(3)(B); and

2.   Whether the Court should approve of Boston's selection of Labaton Sucharow as Lead Counsel for the Class and of Thornton Law as Liaison Counsel for the Class, pursuant to 15 U.S.C. § 77z-1(a)(3)(B)(v).

## II.   PRELIMINARY STATEMENT

Presently pending before this Court is the above-captioned federal securities class action brought on behalf of a Class consisting of all persons and entities other than Defendants who purchased or otherwise acquired Uber securities pursuant and/or traceable to Uber's Registration Statement issued in connection with Uber's May 10, 2019 IPO, seeking to recover compensable damages caused by Defendants' violations of the Securities Act of 1933 (the "Securities Act").

Pursuant to the PSLRA's sequential lead plaintiff appointment process, the Court is directed to appoint the "most adequate plaintiff" to serve as lead plaintiff.  15 U.S.C. § 77z-1(a)(3)(B)(i).  In that regard, the Court is required to determine which movant has the "largest financial interest" in the relief sought in this litigation, and also whether that movant has made a *prima facie* showing that it is a typical and adequate class representative under Rule 23. 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I).

MOTION OF BOSTON RETIREMENT SYSTEM FOR APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF COUNSEL
CASE NO. 3:19-CV-06361-RS

2

Boston respectfully submits that it should be appointed Lead Plaintiff because it has the "largest financial interest" in this litigation and has made the requisite showing of typicality and adequacy required by the standards of the PSLRA.  As set forth in detail below, the Fund incurred *$232,803.11* in losses on its transactions pursuant and/or traceable to Uber's Registration Statement.[1]  In light of this significant loss, Boston has a substantial financial interest in the relief sought by this litigation—an interest believed to be greater than that of any competing movant.

In addition to asserting the largest financial interest in this litigation, Boston also meets the typicality and adequacy requirements of Rule 23 as required by the PSLRA, because its claims are typical of those of absent Class members, and because it will fairly and adequately represent the interests of the Class.  The Fund is a sophisticated institutional investor and consumer of legal resources with a substantial financial stake in the litigation and has the ability, resources, and experience to direct the litigation separate and apart from its selected counsel.

Indeed, the Fund is precisely the type of sophisticated institutional investor that Congress intended to empower to lead securities class actions.  As set forth below, the Fund fully understands the Lead Plaintiff's obligations to the Class under the PSLRA and has already dutifully executed its core statutory responsibility to select and retain counsel, and is willing and able to undertake the responsibilities of the Lead Plaintiff to ensure the continued vigorous prosecution of this Action.  The Fund's adequacy is also demonstrated through its retention of Labaton Sucharow as proposed Lead Counsel on behalf of the Class.  Labaton Sucharow is a nationally recognized securities class action law firm with an established track record of achieving substantial recoveries for the benefit of injured investors and has the expertise and resources necessary to handle litigation of this complexity and scale.  Moreover, Thornton Law,

---

[1] A copy of the PSLRA-required Certification, signed by Timothy Smyth as Executive Director of Boston (the "Certification"), is attached as Exhibit A to the accompanying Declaration of David Bricker (the "Bricker Decl."), which sets forth all relevant transactions of Boston in Uber securities.  In addition, a chart reflecting the calculation of the Fund's Securities Act losses as a result of its transactions in Uber securities is attached as Exhibit B to the Bricker Decl.

Motion of Boston Retirement System for Appointment as Lead Plaintiff, and Approval of Selection of Counsel
Case No. 3:19-cv-06361-RS

3

1   which has offices in this Circuit, also has a distinguished record representing plaintiffs in

2   securities class actions such as the instant case.

3          Accordingly, based on Boston's significant financial interest and its demonstrated

4   commitment and ability to oversee the conduct of this action, it respectfully requests that the

5   Court appoint it Lead Plaintiff and otherwise grant its Motion.

6   **III.     OVERVIEW OF THE PENDING ACTION**

7          Uber, headquartered in this District, purports to be a multinational ride-hailing company

8   offering services that include peer-to-peer ridesharing, ride service hailing, food delivery, and a

9   micromobility system with electric bikes and scooters.

10         On April 4, 2019 Uber filed a registration statement on SEC Form S-1, and a subsequent

11  amended registration statement on SEC Form S-1/A on April 26, 2019, which registration

12  statement was declared effective by the SEC on May 9, 2019.  On May 13, 2019, Uber filed its

13  prospectus on Form 424B4 with the SEC.  In the IPO, the Company sold 180 million shares of

14  common stock at a price of $45.00 per share, raising approximately $8 billion, net of

15  underwriting discounts and fees.

16         The Registration Statement claimed that Uber had a number of significant opportunities

17  to continue to grow its business, including "increasing Ridesharing and Uber Eats category

18  penetration in existing markets, expanding Ridesharing and Uber Eats into new markets,

19  increasing MAPCs and Trips per MAPC, investing in and expanding our New Mobility products,

20  including dockless e-bikes and e-scooters, and investing in and expanding Uber Freight."

21  Defendants also promised to continue to "invest in consumer and Driver rewards programs

22  across our offerings."  Central to these growth initiatives was Uber's desire and commitment

23  (and need) to motivate drivers and consumers to use its platform at the expense of well-funded

24  alternatives in both the ridesharing and food delivery markets.

25         The Registration Statement used by Defendants to effectuate Uber's Offering misled

26  investors by failing to disclose the Company's ballooning losses, stagnating growth rate, and

27  cost-cutting measures that undercut its key growth initiatives.  Specifically, the Registration

28

Statement contained materially inaccurate, misleading, and/or incomplete statements because it failed to disclose, *inter alia*, that: (i) at the time of the Offering, Uber was rapidly increasing subsidies for customer's rides and meals in a bid for market share, which caused the Company's sales and marketing expenses to swell; and (ii) Defendants were cutting (or planned to cut) costs in key areas that undermined the Company's central growth opportunities.

Nevertheless, Defendants went forward with the Offering with the foregoing misrepresentations and omissions in the Registration Statement.  This influx of new capital, however, was insufficient to overcome the losses Uber was (and had already been) facing.  Thus, on or about July 29, 2019, Defendants sought to reduce the Company's losses by announcing the termination of 400 workers on Uber's marketing team, representing about a third of the marketing team's global workforce of 1,200 people.  This action stood in stark contrast to the Registration Statement's claim that Uber was, at the time of the Offering, "focused on optimizing our performance marketing spend."

On this news, the Company's stock fell from $43.88 per share on July 29, 2019, to $42.59 per share on July 30,2019, before dropping further to close at $39.05 per share on August 5, 2019, representing a 13.2% decline from the Offering Price.

Then, to make matters worse, on August 8 and 9, 2019, respectively, Uber filed SEC Forms 8- K and 10-Q, announcing its second quarter results for fiscal 2019, which revealed revenues of $3.16 billion and losses of $5.2 billion.  Further, Uber revealed that its ridesharing revenue had only grown by 2% and, significantly, that its sales and marketing expenses for the three and six months ended June 30, 2019, had ballooned by $507 million, or 70.9%, and $870 million, or 62.5%, respectively.

Defendants revealed that "the increase in our sales and marketing expenses were driven by increased Driver incentives and consumer discounts, promotions, refunds, and credits as we invest in our platform."  Indeed, consumer discounts, promotions, refunds, and credits increased from $226 million and $495 million for the three and six months ended June 30, 2018, respectively, to $528 million and $1.1 billion for the three and six months ended June 30, 2019,

1  respectively, compared to $302 million and $621 million, in the same periods in 2018.

2          The media was quick to point out the $5.2 billion in net losses.  For example,

3  *TechCrunch* published an article entitled: "Uber lost more than $5B last quarter."  Likewise,

4  analysts voiced concern about how revenue in the quarter rose just 14% to $3.17 billion, "badly

5  missing estimates at $3.36 billion," and how the Company's "adjusted EBITDA loss more than

6  doubled in the period, increasing 125% to $625 million," which was a "sign that profitability is

7  only getting further away."

8          Then, in early September 2019, the Company announced that it would be laying off 435

9  employees within its product and engineering divisions, representing around 8% of its global

10 workforce.

11         Since the IPO, and as a result of the disclosure of material adverse facts omitted from

12 Uber's Registration Statement, Uber's stock price has fallen substantially below its IPO price,

13 damaging Boston individually, and the Class as a whole.

14 **IV.    ARGUMENT**

15       **A.    The Statutory Framework of the Private Securities Litigation Reform Act**

16               **1.    The Aim of the PSLRA**

17         The statutory purpose animating the passage of the PSLRA was to reduce lawyer-driven

18 litigation by encouraging institutional investor involvement in securities class actions.  As the

19 Third Circuit has explained, the PSLRA began from the premise that "attorneys operating on a

20 contingent fee basis initiate most [securities] suits in the names of 'figurehead' plaintiffs with

21 little at stake."  *In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 191 (3d Cir. 2005) (alteration in

22 original) citing Elliott J. Weiss & John S. Beckerman, *Let the Money Do the Monitoring: How

23 Institutional Investors Can Reduce Agency Costs in Securities Class Actions,* 104 YALE L.J. 2054

24 (1995).  Such figurehead plaintiffs were viewed as unlikely to monitor attorneys to ensure

25 faithful service to the class.  *Id.*  To ensure that both plaintiffs and their attorneys would act as

26 fiduciaries to the class, Congress enacted the PSLRA, through which it aimed to "encourage

27 institutional investors to take a more active role in securities class action lawsuits."  *In re*

28

1   *Versata, Inc., Sec. Litig.*, No. C 01-1439 SI, 2001 WL 34012374, at *6 (N.D. Cal. Aug. 20,

2   2001); H.R. Conf. Rep. No. 104-369, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733

3   ("The Conference Committee believes that increasing the role of institutional investors in class

4   actions will ultimately benefit shareholders and assist courts by improving the quality of

5   representation in securities class actions.").

6         Congress reasoned that increasing the role of institutional investors, which typically have

7   a large financial stake in the outcome of the litigation, would be beneficial because institutional

8   investors with a large financial stake are more apt to effectively manage complex securities

9   litigation and to select and direct counsel capable of maximizing the classes' recovery.  *See* H.R.

10  Conf. Rep. No. 104-369, at 34-35, *reprinted in* 1995 U.S.C.C.A.N. at 733-34.  To this end, many

11  courts, including courts in this District, have recognized that the legislative history reflects a

12  clear preference for institutional investors to be appointed as lead plaintiff in securities class

13  actions.  *See Perlmutter v. Intuitive Surgical, Inc.*, No. 10-CV-03451-LHK, 2011 WL 566814, at

14  *13 (N.D. Cal. Feb. 15, 2011) ("appoint[ing] an institutional investor . . . comports with the

15  PSLRA's goal to increase the likelihood that institutional investors would serve as lead

16  plaintiffs").  Indeed, "the Fifth Circuit has stated . . . 'that securities class actions [should] be

17  managed by active, able class representatives who are informed and can demonstrate they are

18  directing the litigation.  In this way, the PSLRA raises the standard adequacy threshold [of

19  Rule23(a)].'"  *Mauss v. NuVasive, Inc.*, No. 13cv2005 JM (JLB), 2017 WL 1080654, at *2 (S.D.

20  Cal. Mar. 22, 2017) (quoting *Berger v. Compaq Comput. Corp.*, 257 F.3d 475 (5th Cir. 2001)).

21        By raising the bar for who was intended to serve as Lead Plaintiff, the PSLRA has

22  succeeded.  Numerous studies have demonstrated that the presence of an institutional lead

23  plaintiff improves the settlement size and reduces attorneys' fees after controlling for relevant

24  variables, suggesting that using institutional investors as lead plaintiffs has a positive effect on

25  recoveries in securities fraud cases when compared to individual investors.  *See, e.g.*, James D.

26  Cox *et al.*, *Does the Plaintiff Matter? An Empirical Analysis of Lead Plaintiffs in Securities*

27  *Class Actions*, 106 COLUM. L. REV. 1587, 1592 (2006); Adam C. Prichard & Stephen Choi, *Lead*

28

*Plaintiffs and Their Lawyers: Mission Accomplished, or More to Be Done?*, Univ. of Mich. Law School Scholarship Repository, Law & Economics Working Papers (May 3, 2017) (collecting academic research and noting that "institutional investor lead plaintiffs, in particular public pension funds and labor unions, are positively related to larger settlement amounts even when controlling for a measure of provable losses, market capitalization, class period length, and the presence of an SEC enforcement action."); *id.* at 8 (citing study finding that "cases with public pension lead plaintiffs have larger recoveries and lower fee requests and fee awards than cases with other lead plaintiff types.").

### 2.   "Selection" of Lead Counsel as the Cornerstone of the PSLRA

The PSLRA provides that "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class."  15 U.S.C. § 77z-1(a)(3)(B)(v). Congress meant to give the lead plaintiff significant responsibility in controlling the litigation, but chose to manifest this responsibility formally in only one area: "The only powers expressly given to the lead plaintiff . . . are to '***select and retain***' counsel," subject to the approval of the court.  *In re Cendant Corp. Sec. Litig.*, 404 F.3d at 192 (citing 15 U.S.C. § 78u–4(a)(3)(B)(v)[2]); *In re Cavanaugh*, 306 F.3d 726, 734 (9th Cir. 2002) ("[L]ead plaintiff's authority and responsibility [is] ***to select counsel who he believes will best serve his own interests and the interests of the class***.") (emphasis added); H.R. Conf. Rep. 104-369, at 32, *reprinted in* 1995 U.S.C.C.A.N. 730, 731 ("These provisions are intended to increase the likelihood that parties with significant holdings in issuers . . . ***exercise control over the selection and actions of plaintiff's counsel***.") (emphasis added).  The PSLRA thus leaves the selection of counsel in the hands of a unitary, experienced, and sophisticated investor who, as a sophisticated consumer of legal services, can evaluate prospective counsel based both on skill and cost while providing counsel with incentives to perform excellent work.  *See In re Cendant Corp. Sec. Litig.*, 404 F.3d at 193.  Indeed, the provision was enacted "to empower investors so that they–not their lawyers–

---

[2] 15 U.S.C. § 78u-4 is the identical PSLRA provision governing private securities litigation arising under the Exchange Act of 1934.  Therefore, lead plaintiff analysis under both 15 U.S.C. § 77z-1 and 15 U.S.C. § 78u-4 is for all intents and purposes, identical.

exercise primary control over private securities litigation."  S. Rep. 104-98 at 4, *reprinted in* 1995 U.S.C.C.A.N. 679, 683; *id.* at 11-12 ("Finally, the Committee permits the lead plaintiff to choose the class counsel.  ***This provision is intended to permit the plaintiff to choose counsel rather than have counsel choose the plaintiff*.").

While the statutory intent behind the enactment of the PSLRA is clear, the Ninth Circuit has nevertheless cautioned that "Congress enacts statutes, not purposes, and courts may not depart from the statutory text because they believe some other arrangement would better serve the legislative goals."  *In re Cavanaugh*, 306 F.3d at 731–32.  Thus, "[w]e start, as always, with the language of the applicable statute," *id.* at 729*,* and the PSLRA specifies that the presumptive lead plaintiff shall "select and retain" counsel.  "Select" means to "[c]arefully choose as being the best or most suitable."[3]  *Select*, *Oxford English Dictionary,* https://en.oxforddictionaries.com/definition/us/select (*accessed* Dec. 3, 2019).  "Retain" means "[t]o hire; to engage for the provision of services (as by a lawyer, an accountant, an employee, etc.)."  *Retain*, *Black's Law Dictionary* (11th ed. 2019).  Both the text of the PSLRA and Congress' intent therefore make clear that the presumptive lead plaintiff must engage in some selection process to "carefully choose" based on some criteria, lead counsel that is the "best or most suitable."

This reading of the statute is supported by the fact that the PSLRA specifies that the presumptive lead plaintiff shall "select ***and*** retain" lead counsel.  Were the "selection" of counsel not an affirmative act requiring a considered choice between competing alternatives, Congress would have simply empowered the presumptive lead plaintiff to "retain" counsel of its choosing, unconstrained by any "selection" process.  *See also Bailey v. United States*, 516 U.S. 137, 146 (1995) ("We assume that Congress used two terms because it intended each term to have a particular, nonsuperfluous meaning."); *Hibbs v. Winn*, 542 U.S. 88, 101 (2004) (quoted in *Corley v. United States*, 556 U.S. 303, 314 (2009)); *Astoria Fed. Savings & Loan Ass'n v. Solimino*, 501 U.S. 104, 112 (1991); *Sprietsma v. Mercury Marine*, 537 U.S. 51, 63 (2003).

---

[3] *See also*, *Select*, *Webster's Third New Int'l Dictionary* (2002 Ed.) ("to choose from a number or group usu. by fitness, excellence, or other distinguishing feature").

Echoing this reading of Lead Plaintiff's responsibilities in *Cohen v. United States*, the Ninth Circuit expressly held that "***the process through which the lead plaintiff selected its candidates for and final choice of lead counsel***" are relevant factors in approving the choice of lead counsel.  586 F.3d 703, 712 (9th Cir. 2009) (citing *Cendant*, 264 F.3d at 276); *id.* at 709 (citing *Cendant* approvingly for the proposition that a Court may "direct the lead plaintiff to undertake an ***acceptable selection process***" where counsel is inadequate) (emphasis added). Once an adequate selection process has resulted in the retention of counsel, courts are required to grant significant deference to that choice.  *See, e.g.*, *Hessefort v. Super Micro Comput., Inc.*, 317 F. Supp. 3d 1056, 1059 (N.D. Cal. 2018) ("[I]f the lead plaintiff has made a reasonable choice of counsel, the district court should generally defer to that choice," and "should not reject a lead plaintiff's proposed counsel merely because it would have chosen differently") (quoting *Cohen* at 711–12; *Kuriakose v. Fed. Home Loan Mortg. Co.*, No. 1:08-CV-7281 (JFK), 2008 WL 4974839, at *9 (S.D.N.Y. Nov. 24, 2008) ("The PSLRA . . . evidences a strong presumption in favor of approving ***a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention***.") (quotations omitted) (emphasis added).

Thus, because the selection of lead counsel is the only power given by Congress to the lead plaintiff and the cornerstone of the PSLRA's statutory mechanism implementing Congress' intent, lead plaintiff movants must be required to present some *prima facie* evidence that they are adequate to accomplish their core statutory responsibility and have engaged in the "selection" of lead counsel, as opposed to being selected by counsel.  *See, e.g., Rubke v. Capitol Bancorp*, No. C054800 PJH, 2006 WL 734390, at *5 (N.D. Cal. Mar. 21, 2006) ("However, neither plaintiffs nor Trevor submitted any information about ***the process the plaintiffs used to select counsel*** . . . .  At the hearing, the court noted that this information was required to ensure that Rubke's and Ferguson's choices were objectively adequate.  The court advised plaintiffs that it would approve their choice of counsel ***after they demonstrated that their choice resulted from good faith selection and negotiation***.") (emphasis added) (internal citation omitted); *In re Royal*

1    *Ahold N.V. Sec. & ERISA Litig.*, 219 F.R.D. 343, 350 (D. Md. 2003) ("In making the adequacy

2    determination the court also should consider . . . 'whether the movant has **demonstrated a**

3    **willingness and ability to select competent class counsel**'") (citation omitted).

4            Courts within the Ninth Circuit and elsewhere have consistently rejected as inadequate

5    lead plaintiff movants whose *prima facie* evidence shows telltales that they have abdicated their

6    core statutory responsibility to "select" lead counsel and where it appears, instead, that the

7    proposed lead counsel has selected the lead plaintiff based solely on their financial interest in the

8    action.  S. Rep. 104-98 at 11-12, *reprinted in* 1995 U.S.C.C.A.N. 679, 690 ("This provision is

9    intended to permit the plaintiff to choose counsel rather than have counsel choose the plaintiff.").

10           These telltales of lawyer-driven litigation are evident where unrelated lead plaintiff

11   movants are banded together without justification as part of a group.  *See, e.g*, *In re Petrobras*

12   *Sec. Litig.*, 104 F. Supp. 3d 618, 621-22 & n.2 (S.D.N.Y. 2015) (collecting cases and noting that

13   "[a]llowing unrelated plaintiffs to band together in order to manufacture a larger financial

14   interest . . . ensures that the lawyers, who are invariably the matchmakers behind such marriages

15   of convenience, are the true drivers of the litigation."); *See also In re Tarragon Corp. Sec. Litig.*,

16   No. 07 CIV 7972 (PKC), 2007 WL 4302732, at *1-2 (S.D.N.Y. Dec. 6, 2007) (collecting cases

17   and noting that "to enjoy the rebuttable presumption that the statute confers, there must be some

18   evidence that the members of the group will act collectively and separately from their lawyers.");

19   *Bowman v. Legato Sys.*, *Inc.*, 195 F.R.D. 655, 658 (N.D. Cal. 2000) (collecting cases and noting

20   that "many district courts have rejected lead plaintiff applications from large, lawyer-solicited

21   aggregations of shareholders"); *Bodri v. Gopro, Inc.*, No. 16-cv-00232-JST, 2016 WL 1718217,

22   at *4 (N.D. Cal. Apr. 28, 2016) ("Northern District of California courts have generally found that

23   appointing a group of unrelated investors undercuts the primary purpose of the PSLRA: to

24   eliminate lawyer-driven litigation.") (internal quotation marks and citation omitted).  These

25   telltales of lawyer-driven litigation are also apparent where multiple firms seek to represent an

26   individual movant as lead counsel.  *See In re Calpine Corp. Sec. Litig.*, No. C02-1200 SBA,

27   2004 WL 3316309, at *3–4 (N.D. Cal. Feb. 5, 2004) ("The motion to appoint no less than four

28

1    firms strongly hints that it is the law firms, and not Mr. Ser, who is running this litigation.  This,

2    of course, then begs the question of whether Mr. Ser is even capable of serving

3    as Lead Plaintiff.").

4            The abdication of the core statutory responsibility to "select" lead counsel and lead

5    plaintiff movants' resulting inadequacy is also evident in cases where courts, as part of emerging

6    best practices, have requested declarations or testimony from lead plaintiff movants concerning

7    their selection of counsel and where, in turn, those movants have quietly withdrawn themselves

8    from consideration.  *See, e.g.*, *Desilvio v. Lion Biotechnologies, Inc.*, No. 17-cv-02086 (N.D. Cal.

9    July 7, 2017), ECF No. 35 (court order identifying information provided by movants as

10   "skeletal" and ordering movants to set forth "how each individual came to retain his/her

11   respective lawyer(s)."); *In re Gemstar-TV Guide Int'l, Inc. Sec. Litig.*, 209 F.R.D. 447, 452 & n.8

12   (C.D. Cal. 2002) (disqualification for lack of transparency); *Piven v. Skyes Enters., Inc.*, 137 F.

13   Supp. 2d 1295, 1305 (M.D. Fla. 2000) (same).

14           Courts within the Northern District have similarly criticized movants who have provided

15   declarations "replete with generalities" that say nothing about whether "the investors are the true

16   movants as opposed to their counsel."  *See Ali v. Intel Corp.*, No. 18-cv-00507-YGR, 2018 WL

17   2412111, at *3 & n.8 (N.D. Cal. May 29, 2018) (citing *Markette v. XOMA Corp.*, No. 15-cv-

18   03425-HSG, 2016 WL 2902286, at *9 (N.D. Cal. May 13, 2016)).  Further, courts have called

19   out as "troubling" a movants' declaration that failed to describe how they became aware of each

20   other, "which suggests that each was recruited by counsel."  *Id.* (citing *Crihfield v. CytRx Corp.*,

21   No. CV 16-05519 SJO (SKx), 2016 WL 10587938, at *4 (C.D. Cal. Oct. 26, 2016) ("Perhaps the

22   most troubling aspect of the Joint Declaration . . . is its failure to describe how the six members

23   of the CytRx Investor Group . . . came to know of each others' existence, strengthening the

24   inference that each was recruited by counsel.") (alteration in original)).

25           The "recruitment by counsel" is also evident in the numerous solicitations which have

26   taken place in this Action.  From the filing of the Action to date, there have been a multitude

27   press releases published by numerous law firms aggressively soliciting clients.  Where a lead

28

1  plaintiff movant has responded to a solicitation and selected counsel on that basis, that movant

2  should be required to make a *prima facie* showing that they have, in fact, **selected** proposed lead

3  counsel and have not been "recruited by counsel" in abdication of their core statutory

4  responsibility under the PSLRA.  *See, e.g.*, *In re Network Assocs., Inc. Sec. Litig.*, 76 F. Supp. 2d

5  1017, 1020-21 (N.D. Cal. 1999) (rejecting lead plaintiff group assembled through solicitations

6  and lamenting that the PSLRA was not intended to replace the "race to the courthouse" with the

7  race to the "publisher"); *In re Vonage Initial Pub. Offering (IPO) Sec. Litig.*, No. 07-177 (FLW),

8  2007 WL 2683636, at *7 (D.N.J. Sept. 7, 2007) (finding movant failed to surmount the threshold

9  adequacy inquiry where movant was solicited by counsel through mailing and noting that "the

10  Court's inquiry of whether Mr. Guzhagin is adequate hinges upon **his willingness and ability to**

11  **select competent class counsel**."); *Bodner v. Oreck Direct, LLC*, No. C06-4756MHP, 2007 WL

12  1223777, at *2 (N.D. Cal. Apr. 25, 2007) (quoting *Meachum v. Outdoor World Corp.,* 171

13  Misc.2d 354, 654 N.Y.S.2d 240, 369 (1996) (noting that plaintiff had failed to meet "the

14  threshold typicality or adequacy requirements of Rule 23(a)" based in part on counsel's

15  "[s]olicitation of clients for the commencement or continuation" of the action)).

### 3.  The PSLRA's Statutory Mechanism

17  The PSLRA provides a sequential procedure for selecting lead plaintiff for "each private

18  action arising under [the Securities Act] that is brought as a plaintiff class action pursuant to the

19  Federal Rules of Civil Procedure."  *See* 15 U.S.C. § 77z-1(a)(l); *see also* 15 U.S.C. § 77z-

20  1(a)(3)(B).  The Ninth Circuit has described this mechanism as "provid[ing] a simple three-step

21  process for identifying the lead plaintiff" in a securities fraud case.  *In re Cavanaugh,* 306 F.3d

22  726, 729 (9th Cir.2002).

23  *First*, Section 27(a)(3)(A)(i) of the Securities Act, as amended by the PSLRA, specifies

24  that:

> Not later than 20 days after the date on which the complaint is
> filed, the plaintiff or plaintiffs shall cause to be published, in a
> widely circulated national business-oriented publication or wire
> service, a notice advising members of the purported plaintiff
> class --

1

2

        (I)     of the pendency of the action, the claims asserted therein, and the purported class period; and

3

4

        (II)    that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

5

15 U.S.C. § 77z-1(a)(3)(A)(i).

6

     *Second*, the district court must consider the losses allegedly suffered by the various

7

plaintiffs before selecting as the 'presumptively most adequate plaintiff'-and hence the

8

presumptive lead plaintiff-the one who 'has the largest financial interest in the relief sought by

9

the class' and 'otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil

10

Procedure.' *In re Cavanaugh*, 306 F.3d 726, 729–30 (9th Cir. 2002) (quoting 15 U.S.C. § 78u-

11

4(a)(3)(B)(iii)(I)).   In other words, the district court must compare the financial stakes of the

12

various plaintiffs and determine which one has the most to gain from the lawsuit.  *Id.*  "It must

13

then focus its attention on *that* plaintiff and determine, based on the information he has provided

14

in his pleadings and declarations, whether he satisfies the requirements of Rule 23(a), in

15

particular those of 'typicality' and 'adequacy.'"  *Id.*

16

     While a searching inquiry under Rule 23 is not required at this stage of the litigation, that

17

"does not mean that the Court must pay mere lip service to the requirement of the statute that a

18

prospective lead plaintiff satisf[y] the requirements of Rule 23."  *Mohanty v. BigBand Networks,*

19

*Inc.*, No. C07-5101SBA, 2008 WL 426250, at *9 (N.D. Cal. Feb. 14, 2008) (internal citation

20

omitted) (alteration in original).  It is at this stage that courts may probe the "selection" of

21

counsel.  *See, e.g., Ferrari v. Gisch*, 225 F.R.D. 599, 607 (C.D. Cal. 2004) (quoting *Cendant*,

22

264 F.3d at 265) ("In *Cendant*, the Third Circuit noted that 'one of the best ways for a court to

23

ensure that it will fairly and adequately represent the interests of the class is to inquire whether

24

the movant has demonstrated a willingness and ability to select competent class counsel.'").

25

     If the plaintiff with the largest financial stake in the controversy meets its *prima facie*

26

burden of providing information that satisfies the court that it is adequate and typical, they

27

become the presumptively most adequate plaintiff.  If the plaintiff with the greatest financial

28

1   stake does not satisfy the Rule 23(a) criteria, the court must repeat the inquiry, this time

2   considering the plaintiff with the next-largest financial stake, until it finds a plaintiff who is both

3   willing to serve and satisfies the requirements of Rule 23.  *In re Cavanaugh*, 306 F.3d at 730–31.

4        *Third*, once the presumption is established, it "'may be rebutted only upon proof . . . that

5   the presumptively most adequate plaintiff [] will not fairly and adequately protect the interests of

6   the class'" or "is subject to unique defenses that render such plaintiff incapable of adequately

7   representing the class."  15 U.S.C. § 77z-1(a)(3)(B)(iii)(II).  At the third stage, the process turns

8   adversarial and other plaintiffs may present evidence that disputes the lead plaintiff's *prima facie*

9   showing of typicality and adequacy.  The district court may need to hold an evidentiary hearing,

10   and to make a renewed determination of typicality and adequacy.  *In re Cavanaugh*, 306 F.3d at

11   730–31.

12       **B.**    **Boston Should be Appointed Lead Plaintiff**

13        Boston respectfully submits that it is the presumptively "most adequate plaintiff" because

14   it has complied with the PSLRA's procedural requirements, holds the largest financial interest of

15   any qualified movant, and otherwise satisfies Rule 23's typicality and adequacy requirements.

16       **1.**    **The Fund Timely Moved for Appointment as Lead Plaintiff**

17        Boston filed its motion to serve as Lead Plaintiff in a timely manner.  Counsel in the

18   above-captioned action caused notice regarding the lead plaintiff process to be published on

19   *Business Wire*, a widely circulated, national, business-oriented news reporting service, on

20   October 4, 2019.  *See* Bricker Decl., Ex. C, Notice.  Thus, as permitted by the PSLRA, any

21   person or group of persons may apply to be appointed Lead Plaintiff within sixty (60) days after

22   publication of the notice, *i.e.*, on or before December 3, 2019.  The Fund filed its motion within

23   the required period.  Accordingly, Boston has timely moved for appointment as Lead Plaintiff

24   through the filing of this motion.

25       **2.**    **The Fund Has the Largest Financial Interest in the Outcome of the**
           **Action**

26

27        The PSLRA instructs the Court to adopt a rebuttable presumption that the "most adequate

28   plaintiff" for lead plaintiff purposes is the movant with "the largest financial interest in the relief

1  sought by the class," so long as the movant "otherwise satisfies the requirements of Rule 23."

2  15 U.S.C. § 77z-1(a)(3)(B)(iii)(I).

3       During the Class Period, Boston suffered substantial losses of ***$232,803.11*** on its

4  transactions in Uber securities pursuant and/or traceable to the Registration Statement.  *See*

5  Bricker Decl., Ex. B, Loss Analysis.  The Fund is presently unaware of any other movant with a

6  larger financial interest in the outcome of the Action.  Consequently, and because it also satisfies

7  Rule 23's typicality and adequacy requirements, the Fund is entitled to the legal presumption that

8  it is the most adequate plaintiff.  15 U.S.C. § 77z-1(a)(3)(B)(iii)(I).

9          **3.**     **The Fund Otherwise Satisfies Rule 23's Typicality and Adequacy**

10                **Requirements**

11       In addition to possessing the largest financial interest in the outcome of the litigation,

12  Boston also satisfies the applicable requirements of Rule 23.  *See* 15 U.S.C. § 77z-

13  1(a)(3)(B)(iii)(I)(cc).  On a motion to serve as Lead Plaintiff, the moving plaintiff must make a

14  "preliminary showing that it satisfies the typicality and adequacy requirements of [Rule] 23."

15  *Krieger v. Atheros Commc'ns, Inc.*, No. 11-CV-00640-LHK, 2011 WL 6153154, at *3 (N.D.

16  Cal. Dec. 12, 2011) (citation omitted).  Thus, while a searching inquiry under Rule 23 is not

17  required at this stage, that "does not mean that the Court must pay mere lip service to the

18  requirement of the statute that a prospective lead plaintiff satisf[y] the requirements of Rule

19  23."  *Mohanty v. BigBand Networks, Inc.*, 2008 WL 426250, at *9 (internal citation omitted)

20  (alteration in original).  Here, the Fund unquestionably satisfies both requirements.

21          **(a)**     **The Fund's Claims Are Typical of Those of the Class**

22       Boston's claims are typical of the claims of other purchasers of Uber securities.  "The

23  putative lead plaintiff satisfies the typicality requirement when it has suffered the same injuries

24  as absent class members, as a result of the same conduct by the defendants."  *In re Extreme*

25  *Networks Inc. Sec. Litig.*, No. 15-cv-04883BLF, 2016 WL 3519283, at *3 (N.D. Cal. June 28,

26  2016).  Here, the claims of Boston and all other Class members arise from the same course of

27  events, and the legal arguments to prove Defendants' liability are identical.  Like all other Class

28

1   members, Boston: (i) purchased Uber securities pursuant and/or traceable to the Registration

2   Statement (ii) at prices artificially inflated by Defendants' misstatements and/or omissions and

3   (iii) was damaged thereby.  *See id.* (finding typicality requirement met when proposed lead

4   plaintiff "purchased shares of [defendant company] during the specified class period, when the

5   company's share prices were alleged to have been artificially inflated by Defendants'

6   misrepresentations . . . [and] suffered damages when those misrepresentations came to light.").

7   Thus, the Fund satisfies the typicality requirement.

8                      **(b)    The Fund Will Fairly and Adequately Protect the Interests of
                                the Class and Is Precisely the Type of Lead Plaintiff Congress
9                               Intended**

10          Under Rule 23(a)(4), a representative party must "fairly and adequately protect the

11   interests of the Class." Fed. R. Civ. P. 23(a)(4).  "The test for adequacy is whether the class

12   representative and [its] counsel 'have any conflicts of interest with other class members' and

13   whether the class representative and [its] counsel will 'prosecute the action vigorously on behalf

14   of the class.'" *City of Royal Oak Ret. Sys. v. Juniper Networks Inc.,* No. 5:11-CV-04003-CHK,

15   2012 WL 78780, at *5 (N.D. Cal. Jan. 9, 2012) (citation omitted).  Here, no antagonism exists

16   between Boston's interests and those of the absent Class members; rather, the interests of the

17   Fund and Class members are squarely aligned.  Indeed, there are no facts to suggest any actual or

18   potential conflict of interest or other antagonism between the Fund and other Class members.

19   Moreover, because of its substantial financial stake in the litigation, Class members can be

20   assured that Boston has the incentive to vigorously represent the Class' interests.

21          In addition to satisfying the requirements of Rule 23, Boston—as a large, sophisticated

22   institutional investor—is precisely the type of investor Congress sought, through passage of the

23   PSLRA, to empower to assume a more prominent role in securities litigation.  *See* H.R. Conf.

24   Rep. No. 104-369, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733; *see supra* Section

25   IV.A.1.  Congress reasoned that increasing the role of institutional investors, which typically

26   have a large financial stake in the outcome of the litigation, would be beneficial because

27   institutional investors with a large financial stake are more apt to effectively manage complex

28

securities litigation.  *Id.*  To this end, many courts, including courts in this District, have recognized that the legislative history reflects a clear preference for institutional investors to be appointed as lead plaintiff in securities class actions.  *See Perlmutter v. Intuitive Surgical, Inc.*, 2011 WL 566814, at *13 ("appoint[ing] an institutional investor, . . . comports with the PSLRA's goal to increase the likelihood that institutional investors would serve as lead plaintiffs"); *In re Critical Path, Inc. Sec. Litig.*, 156 F. Supp. 2d 1102, 1109 (N.D. Cal. 2001) ("[W]hile it may be true that losing a high percentage of one's net worth due to an alleged fraud contributes to one's desire to prosecute a lawsuit against the wrongdoer, that desire is no substitute for the experience and resources of an institutional investor with, presumably, an in-house legal team and experience in the securities business.").  Here, Boston is well suited to fulfill this Congressional intent.

 "A class action representative serves as a fiduciary to advance and protect the interests of those whom he purports to represent; their interests are entrusted to the fiduciary's diligence." *Andrade v. Am. Apparel, Inc.*, No. 10-06352MMM (PJWx), 2011 WL 13130706, at *11 (C.D. Cal. Mar. 15, 2011) (quoting *Landry v. PriceWaterhouse Chartered Accountants*, 123 F.R.D. 474, 477 (S.D.N.Y. 1989).  The Fund is a well-practiced fiduciary whose interest are aligned with those of the class by virtue of its "fiduciary duties as a combination contributory/non-contributory retirement system fund governed by state law." *In re Extreme Networks Inc. Sec. Litig.*, 2016 WL 3519283, at *3–4.

The Fund's adequacy is further supported by its extensive and successful history serving as Lead Plaintiff.  For example, Boston recovered $47 million for investors as Lead Plaintiff in *In re Nu Skin Enterprises, Inc. Securities Litigation*, with Labaton Sucharow serving as Lead Counsel.  No. 14-cv-00033 (D. Utah).  *See In re Gemstar–TV Guide Int'l, Inc. Sec. Litig.,* 209 F.R.D. 447, 455 (C.D. Cal. 2002) (noting that institutional investor movants "whose representatives [often in-house counsel] possess PSLRA experience—would supervise a single law firm suggests that the pension funds, rather than [the lead counsel], would control this litigation.").  Boston is thus well-aware of the Lead Plaintiff's obligations under the PSLRA to

1   oversee and supervise the litigation separate and apart from counsel and has submitted its

2   Certification as to its willingness and ability to fulfill those duties here.  *See* Bricker Decl., Ex.

3   A.  Furthermore, Boston has the benefit of the resources and dedicated personnel who are highly

4   experienced in conducting and supervising complex litigation, and will bring those resources and

5   that experience to bear in overseeing the prosecution of the Action.

6   Therefore, there can be no doubt that Boston has the resources and institutional

7   sophistication required to effectively manage and supervise complex securities class actions

8   against multibillion dollar companies.  *See In re Enron Corp. Sec. Litig.*, 206 F.R.D 427, 457

9   (S.D. Tex. 2002) (rejecting a motion to be appointed as lead plaintiff filed by an investor with

10  "fractured attention and resources" because the *Enron* "litigation [was] probably the largest and

11  most complex of its kind in the history of this country and . . . will demand the full focus

12  of Lead Plaintiff(s) and Lead Counsel").

13  Finally, Boston has fulfilled its core statutory responsibility under the PSLRA and has

14  demonstrated its adequacy through its selection and retention, subject to Court approval, of

15  Labaton Sucharow as Lead Counsel to represent the class in this Action.  *See Stocke v. Shuffle*

16  *Master Inc.*, No. 2:07-cv-00715, 2007 WL 4262723, at *3 (D. Nev. Nov. 30, 2007) (citing

17  *Armour v. Network Assocs., Inc.*, 171 F. Supp. 2d 1044, 1052 (N.D. Cal. 2001) ("adequacy

18  requires the absence of antagonistic interests between class representatives and absent class

19  members" and the "willingness and ability to assume the duties of lead plaintiff, including ***the***

20  ***crucial duties of choosing adequate counsel . . . and monitoring that counsel's conduct***

21  ***throughout the litigation***.") (emphasis added)).  The Fund, as a sophisticated consumer of legal

22  services, ultimately selected and retained Labaton Sucharow, a firm with deep experience in

23  prosecuting securities class actions who has achieved success representing Boston in the past.

24  *See, e.g.*, *NuSkin*, No. 14-cv-00033 (D. Utah).  As discussed more fully below, Labaton

25  Sucharow is highly qualified and experienced in prosecuting securities class actions, and has

26  repeatedly demonstrated its ability to conduct complex securities class action litigation

27  effectively.  Accordingly, Boston satisfies the adequacy requirement.

28

### C.     The Fund's Choice of Lead Counsel Is Well-Qualified to Represent the Class

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel for the class, subject to the court's approval.  *See* 15 U.S.C. § 77z-1(a)(3)(B)(v).  As such, this Court should not disturb the lead plaintiff's choice of counsel unless necessary to "protect the interests of the class."  15 U.S.C. § 77z-1(a)(3)(B)(iii)(II)(aa); *see also Cohen*, 586 F.3d at 712 ("[I]f the lead plaintiff has made a reasonable choice of counsel, the district court should generally defer to that choice.") (citing *Cendant*, 264 F.3d at 276); *Cavanaugh*, 306 F.3d at 733.  Courts should not disturb the lead plaintiff's choice of counsel unless necessary to "protect the interests of the plaintiff class."  H.R. Conf. Rep. No. 104-369, at 35 (1995), *reprinted in* 1995 U.S.C.C.A.N. at 734; *see also Cavanaugh*, 306 F.3d at 734 ("Selecting a lawyer in whom a litigant has confidence is an important client prerogative and we will not lightly infer that Congress meant to take away this prerogative from securities plaintiffs.").

Here, Boston has selected Labaton Sucharow, highly-qualified counsel, to serve as Lead Counsel for the proposed Class.  Labaton Sucharow is among the preeminent securities class action law firms in the country and has a proven track record of litigating actions resulting in significant recoveries for investors.  For example, Labaton Sucharow has significant experience in prosecuting securities class actions and has excelled as lead counsel in numerous landmark securities class actions throughout the United States on behalf of defrauded investors.  Labaton Sucharow served as a lead counsel in *In re American International Group, Inc. Securities Litigation*, No. 04-cv-8141 (S.D.N.Y.), in which it achieved a recovery totaling more than $1 billion for injured investors, and separately secured a $294.9 million recovery in *In re Bear Stearns Cos., Inc. Securities, Derivative, & ERISA Litigation*, No. 08-md-1963 (S.D.N.Y.), in which it served as co-lead counsel.  In addition, Labaton Sucharow was a lead counsel in *In re Countrywide Financial Corp. Securities Litigation*, No. 07-cv-5295 (C.D. Cal.), which achieved a settlement of $624 million—one of the largest securities fraud settlements arising from the financial crisis of 2007 and 2008.  Other significant examples in which courts in this Circuit have recognized Labaton Sucharow as adequate and qualified class counsel in securities class actions

include: *In re Broadcom Corp. Class Action Litigation*, No. 06-cv-5036 (C.D. Cal.) (recovering $173 million for investors); and *In re Mercury Interactive Corp. Securities Litigation*, No. 05-cv-3395 (N.D. Cal.) (recovering $117.5 million for investors).  Labaton Sucharow also presently serves as lead or co-lead counsel in numerous significant investor class actions, including *In re Goldman Sachs Group, Inc. Securities Litigation*, No. 10-cv-3461 (S.D.N.Y.), among others. *See* Bricker Decl., Ex. D, firm resume of Labaton Sucharow.

Likewise, Thornton Law is well qualified to represent the Class as Liaison Counsel. Thornton Law maintains an office in this Circuit, and has substantial litigation experience. *See* Bricker Decl., Ex. E.  Thus, the firm is well qualified to represent the Class as Liaison Counsel. *See* Manual for Complex Litigation (Fourth) § 10.221 (2004) (discussing role of liaison counsel and noting that "[l]iaison counsel will usually have offices in the same locality as the court.").

Accordingly, the Court may be assured that by granting this Motion and approving Boston's selection of Labaton Sucharow as Lead Counsel and Thornton Law as Liaison Counsel, the Class will receive the highest caliber of legal representation.

## CONCLUSION

For the foregoing reasons, the Fund respectfully requests that the Court: (i) appoint Boston as Lead Plaintiff; (ii) approve its selection of Labaton Sucharow as Lead Counsel for the Class and of Thornton Law as Liaison Counsel for the Class; and (iii) grant such further relief as the Court may deem just and proper.


DATED:  December 3, 2019                              Respectfully submitted,

                                                  */s/ David Bricker*

                                                  David Bricker (Bar No. 158896)
                                                  **THORNTON LAW FIRM LLP**
                                                  9430 West Olympic Boulevard, Suite 400
                                                  Beverly Hills, California 90212
                                                  Telephone: (310) 282-8676
                                                  Facsimile: (310) 388-5316
                                                  dbricker@tenlaw.com

                                                  *Proposed Liaison Counsel for the Class*

                                                  **LABATON SUCHAROW LLP**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Christopher J. Keller (*pro hac vice* forthcoming)
Eric J. Belfi (*pro hac vice* forthcoming)
Francis P. McConville (*pro hac vice* forthcoming)
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
ckeller@labaton.com
ebelfi@labaton.com
fmcconville@labaton.com

*Counsel for Proposed Lead Plaintiff*
*Boston Retirement System and Proposed Lead*
*Counsel for the Class*

MOTION OF BOSTON RETIREMENT SYSTEM FOR APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF COUNSEL
CASE NO. 3:19-CV-06361-RS

22

1

**CERTIFICATE OF SERVICE**

2

I HEREBY CERTIFY that on December 3, 2019, I was authorized to electronically file

3

the foregoing with the Clerk of Court using the CM/ECF system, which will send a Notice of

4

Electronic Filing to all counsel of record.

5

*/s/ David Bricker*
David Bricker

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28