UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BOSTON RETIREMENT SYSTEM, et al.,[1]

Plaintiffs,

v.

UBER TECHNOLOGIES, INC., et al.,

Defendants.

Case No. 19-cv-06361-RS

**ORDER DENYING
MOTION TO DISMISS**

## I. INTRODUCTION

Lead plaintiff Boston Retirement System ("BRS") brings this putative class action against defendants Uber Technologies, Inc. ("Uber"), several of its current and former executives, and the underwriters of its initial public offering ("IPO"). BRS alleges defendants made false or misleading statements and omissions in connection with Uber's IPO in violation of Sections 11, 12(a)(2), and 15 of the Securities Act of 1933 ("Securities Act"). Defendants now move to dismiss the complaint under Rule 12(b)(6). Pursuant to Civil Local Rule 7-1(b), the motion is suitable for disposition without oral argument, and the hearing set for August 13, 2020 is vacated. For the reasons set forth below, the motion is denied.

## II. BACKGROUND[2]

---

[1] This case was originally filed as *Benjamin Stirratt v. Uber Technologies, Inc.* Boston Retirement System was subsequently appointed lead plaintiff. The Clerk shall change the caption of the case on ECF.

[2] The factual background is based on the allegations in the complaint (which must be taken as true for purposes of this motion), documents incorporated by reference, and documents of which

United States District Court
Northern District of California

1  Uber is a transportation company which provides on demand rides and food delivery. The

2  company was founded in San Francisco in 2009 and has since expanded globally. On May 10,

3  2019, Uber conducted its IPO, in which it sold 180,000,000 shares of common share stock to the

4  public. The IPO was priced at $45 per share and generated nearly $8 billion in proceeds for Uber.

5  The IPO was conducted pursuant to several documents filed by defendants with the U.S.

6  Securities and Exchange Commission ("SEC"), including an April 11, 2019 Registration

7  Statement on Form S-1, which, after amendment, was declared effective by the SEC on May 5,

8  2019. *See* ECF No. 86-1 ("RS").

9  BRS purchased Uber's common stock in the IPO, and from an underwriter of the IPO,

10  pursuant to the offering documents, including the RS. At the time BRS purchased this stock, only

11  Uber shares offered in the IPO were available in the market. Uber's share price subsequently

12  declined from $45 to an all-time low of $25.99 on November 14, 2019. This action was brought,

13  alleging violations of Sections 11, 12(a)(2), and 15 of the Securities Act. In January 2020, BRS

14  was appointed lead plaintiff. The named defendants are Uber, several of its past and present

15  executives, and the underwriters of its IPO.[3]

16  **III. INCORPORATION BY REFERENCE AND JUDICIAL NOTICE**

17  **A. Legal Standard**

18

19

20  judicial notice may be taken. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *see
generally* Part III, *infra*.

21  [3] The full list of defendants is: Uber, Dara Khosrowshahi, Nelson Chai, Glen Ceremony, Ronald

22  Sugar, Ursula Burns, Garrett Camp, Matt Cohler, Ryan Graves, Arianna Huffington, Travis
Kalanick, Wan Ling Martello, H.E. Yasir Al- Rumayyan, John Thain, David Trujillo, Morgan
Stanley & Co. LLC, Goldman Sachs & Co. LLC, Merrill Lynch, Pierce, Fenner & Smith

23  Incorporated, Barclays Capital Inc., Citigroup Global Markets, Inc., Allen & Company LLC, RBC
Capital Markets, LLC, SunTrust Robinson Humphrey, Inc., Deutsche Bank Securities Inc., HSBC

24  Securities (USA) Inc., SMBC Nikko Securities America, Inc., Mizuho Securities USA LLC,
Needham & Company, LLC, Loop Capital Markets LLC, Siebert Cisneros Shank & Co., L.L.C.,

25  Academy Securities, Inc., BTIG, LLC, Canaccord Genuity LLC, CastleOak Securities, L.P.,
Cowen and Company, LLC, Evercore Group L.L.C., JMP Securities LLC, Macquarie Capital

26  (USA) Inc., Mischler Financial Group, Inc., Oppenheimer & Co. Inc., Raymond James &
Associates, Inc., William Blair & Company, L.L.C., The Williams Capital Group, L.P., and TPG

27  Capital BD, LLC. Defendants bring the present motion to dismiss jointly.

28

1    Generally, district courts may not consider material outside the pleadings when assessing

2    the sufficiency of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Lee v.*

3    *City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). However, "[t]here are two exceptions to

4    this rule: the incorporation-by-reference doctrine, and judicial notice under Federal Rule of

5    Evidence 201." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018); *see also*

6    *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (noting documents

7    incorporated by reference and "matters of which a court may take judicial notice" are properly

8    considered when ruling on a motion to dismiss).

9    "Incorporation-by-reference is a judicially created doctrine that treats certain documents as

10   though they are part of the complaint itself." *Khoja*, 899 F.3d at 1002. A defendant may seek to

11   incorporate a document into the complaint "if the plaintiff refers *extensively* to the document or

12   the document forms the basis of the plaintiff's claim." *Ritchie*, 342 F.3d at 907 (emphasis added).

13   "The doctrine prevents plaintiffs from selecting only portions of documents that support their

14   claims, while omitting portions of those very documents that weaken—or doom—their claims."

15   *Khoja*, 899 F.3d at 1002. In general, "a court may assume an incorporated document's contents are

16   true for purposes of a motion to dismiss under Rule 12(b)(6) . . . [but] it is improper to assume the

17   truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-

18   pleaded complaint." *Id.* at 1003 (internal quotations and citations omitted).

19   "Judicial notice under Rule 201 permits a court to notice an adjudicative fact if it is 'not

20   subject to reasonable dispute.'" *Id.* at 999 (citing Fed. R. Evid. 201(b)). "A fact is 'not subject to

21   reasonable dispute' if it is 'generally known,' or 'can be accurately and readily determined from

22   sources whose accuracy cannot reasonably be questioned.'" *Id.* (quoting Fed. R. Evid. 201(b)(1)–

23   (2)). "Accordingly, a court may take judicial notice of matters of public record without converting

24   a motion to dismiss into a motion for summary judgment . . . [b]ut a court cannot take judicial

25   notice of disputed facts contained in such public records." *Id.* (internal quotations and citation

26   omitted). If either party requests judicial notice and "supplie[s] the necessary information,"

27   judicial notice "must" be taken. Fed. R. Evid. 201(c)(2).

28

United States District Court
Northern District of California

**B. Discussion**

In support of their motion to dismiss, defendants seek incorporation by reference and/or judicial notice of 29 documents, termed "exhibits" for ease of reference. Exhibit A is the amended RS for Uber's IPO, as filed with the SEC on Form S-1/A on April 26, 2019. BRS agrees that the complaint refers extensively to, and in fact depends on, the amended RS; thus, incorporation by reference of the RS is appropriate.

Exhibits B and C are Uber's press releases announcing its financial results for the first and second quarters of 2019. These were filed with the SEC on May 30 and August 8, 2019, respectively. BRS argues incorporation by reference is inappropriate because the complaint "barely mentions" Uber's financial results; the company's earnings results, it points out, are mentioned in fewer than ten of the hundreds of paragraphs of the complaint. That argument, however, would allow BRS to do precisely what incorporation by reference attempts to avoid: selective use of documents. The complaint refers to Uber's financial results "extensively" in that one of its three main theories is that the company misrepresented its financial position to investors in violation of the Securities Act. Put differently, that theory "depends on" Uber's 2019 financial results, which BRS alleges paint a very different financial picture than the RS. Notably, BRS does not dispute the accuracy of the contents of Exhibits B and C; on the contrary, their contents, i.e., Uber's Q1 and Q2 2019 financial results, bolster BRS's claims. Incorporation by reference of Exhibits B and C is thus appropriate.[4]

The remaining 26 exhibits are news articles written in various publications about Uber between 2014 and 2019. BRS argues they should not be incorporated by reference because they are referenced nowhere in the complaint, and judicial notice should not be taken because they are offered for the sole purpose of raising a "truth-on-the-market" defense, which is inappropriate at

---

[4] Alternatively, because "SEC filings are publicly-filed documents whose accuracy cannot reasonably be questioned," judicial notice may be taken at least in order to "determin[e] what representations [Uber] made to the market." *In re Pivotal Sec. Litig.*, No. 19-cv-03589, 2020 WL 4193384, at *5 (N.D. Cal. July 21, 2020).

the motion to dismiss stage. However, both arguments miss the mark. Defendants do not propose

incorporation by reference, and whether they may offer a "truth-on-the-market" defense in a

motion to dismiss, or whether the defense would succeed, goes to the substance of the motion, *see*

section IV.B.2, *infra*, not the admissibility of evidence. Defendants have "supplied the necessary

information"—notably, BRS does not dispute that the articles were published on the dates and in

the publications that defendants represent they were—and judicial notice *must* therefore be taken.

However, "[j]ust because [a] document itself is susceptible to judicial notice does not mean that

every assertion of fact within that document is judicially noticeable for its truth." *Khoja*, 899 F.3d

at 999. Thus "judicial notice of these documents" will be taken "not for the truth of the matter

asserted, but 'for the purpose of showing that particular information was available to the stock

market.'" *In re Apple Inc. Sec. Litig.*, No. 19-cv-02033, 2020 WL 2857397, at *6 (N.D. Cal. June

2, 2020) (quoting *Helitrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 981 n.18 (9th Cir. 1999)).

## IV. MOTION TO DISMISS

### A. Legal Standard

A complaint must contain "a short and plain statement of the claim showing that the

pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While "detailed factual allegations are not

required," a complaint must include sufficient facts to "state a claim to relief that is plausible on its

face." *Iqbal,* 556 U.S. at 678 (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). A

claim is facially plausible "when the pleaded factual content allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

A motion to dismiss a complaint under Rule 12(b)(6) of the Federal Rules of Civil

Procedure tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus.

v. Symington,* 51 F.3d 1480, 1484 (9th Cir.1995). Dismissal under Rule 12(b)(6) may be based

either on the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged

under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th

Cir.1988). When evaluating such a motion, the court must accept all material allegations in the

complaint as true, even if doubtful, and construe them in the light most favorable to the non-

movant. *Twombly,* 550 U.S. at 570. "[C]onclusory allegations of law and unwarranted inferences," however, "are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.,* 83 F.3d 1136, 1140 (9th Cir.1996); *see also Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 555 ("threadbare recitals of the elements of the cause of action, supported by mere conclusory statements," are not taken as true)).

Complaints in securities cases must also meet the pleading standards set forth by the Private Securities Litigation Reform Act ("PSLRA"). The PSLRA mandates that "securities fraud complaints 'specify' each misleading statement; that they set forth the facts 'on which [a] belief' that a statement is misleading was 'formed'; and that they 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'" *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 345 (2005) (alterations in original) (quoting 15 U.S.C. §§ 78u–4(b)(1)–(2)). Furthermore, securities claims which are "grounded in fraud" must meet the pleading requirements of Rule 9(b). *In re Rigel Pharm., Inc. Sec. Litig.*, 697 F.3d 869, 886 (9th Cir. 2012). "To satisfy Rule 9(b), a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about [the purportedly fraudulent] statement, and why it is false." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (internal quotations and citations omitted).

### B. Discussion

BRS asserts claims under Sections 11 and 12(a)(2) of the Securities Act, as well as a derivative claim under Section 15. To state a claim under Section 11, a plaintiff must allege plausibly that a registration statement "contained an untrue statement of material fact" or "omitted to state a material fact . . . necessary to make the statements therein not misleading." 15 U.S.C. § 77k(a). An "untrue statement of material fact" must be both (1) false and (2) material to investors. *See Rigel Pharm*, 697 F.3d at 880 n.8. Not all relevant or material omitted facts are actionable omissions. *Id.* (citing *Matrixx Initiatives v. Siracusano*, 563 U.S. 27, 38 (2011)); *Brody v. Transitional Hospitals Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002). Rather, to be actionable an omission "must affirmatively create an impression of a state of affairs that differs in a material

way from the one that actually exists" to be actionable. *Brody*, 280 F.3d at 1006. Section 11 imposes strict liability. *In re Daou Sys., Inc.*, 411 F.3d 1006, 1028 (9th Cir. 2005).

Section 12(a)(2) applies the same standard. See 15 U.S.C. § 77l (imposing liability where a prospectus or communication "includes an untrue statement of a material fact" or "omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading"). It creates said liability for any person who offers or sells a security through a prospectus or an oral communication creating a material misstatement or omission. Section 15 creates liability for anyone who "controls" a defendant who is themselves liable under Section 11 or 12(a)(2).

As a threshold matter, the parties disagree as to whether the heightened Rule 9(b) pleading standard applies. Rule 9(b) only applies to Section 11 claims which are "grounded in fraud." *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1404–05 (9th Cir. 1996). Each cause of action in the complaint explicitly disclaims a fraud theory. *See, e.g.*, Amended Complaint ("Complaint'), ECF No. 80, at 108 ("This cause of action does not sound in fraud."). While defendants are correct that "a disclaimer alone is insufficient to re-characterize a complaint whose gravamen is plainly fraud, here [BRS has] made an effort to plead a non-fraudulent basis for Section 11 liability." *Knollenberg v. Harmonic, Inc.*, 152 F. App'x 674, 684 (9th Cir. 2005) (citing *Stac Elecs.*, 89 F.3d at 1405 n.2). In particular, the complaint states the claims against Uber are based on a strict liability theory and against all other defendants on negligence. *See* Complaint at 108. BRS will be held to this representation, and the heightened Rule 9(b) standard thus will not apply—with one exception. The complaint "expressly disclaims any allegations of scienter or fraudulent intent . . . except that any challenged statements of opinion or belief made in connection with the IPO are alleged to have been materially misstated statements of opinion or belief when made." *Id.* Challenged statements of opinion, *see* section IV.B.3, *infra*, must be pled with particularity.

### 1. Puzzle Pleading

Defendants' first argument in favor of dismissal is that BRS has engaged in impermissible "puzzle pleading." "In the securities fraud context, the term 'puzzle pleading' refers to a pleading

that requires a defendant and the court to 'match up' the statements that form the basis of the plaintiff's claims with the reasons why those statements are misleading." *In re Cisco Sys. Inc. Sec. Litig.*, No. 11-cv-01568, 2013 WL 1402788, at *5 (N.D. Cal. Mar. 29, 2013*); see also In re Splash Tech. Holdings, Inc. Sec. Litig.*, 160 F. Supp. 2d 1059, 1073 (N.D. Cal. 2001) (finding structure of complaint rendered it "exceedingly difficult to discern precisely which statements are alleged to be misleading"). "[A] securities fraud complaint that employs a true puzzle-style pleading format will recite lengthy statements attributed to the defendants, followed by a generalized list of reasons that the statements may have been false or misleading or a generalized list of omissions that were required to make the statements not misleading." *Tarapara v. K12 Inc.*, No. 16-cv-04069, 2017 WL 3727112, at *9 (N.D. Cal. Aug. 30, 2017).

The complaint in the present case may be "long, confusing, and meandering," such that "it is difficult to locate the main points within it." *Id.* However, it "is not so deficient that [d]efendants are incapable of figuring out what statements are alleged to be false." *Park v. GoPro, Inc.*, No. 18-cv-00193, 2019 WL 1231175, at *8 (N.D. Cal. Mar. 15, 2019). BRS has "emphasize[d] the portions of [the RS] that [it] allege[s] to be false or misleading." *Id.* "Furthermore, [BRS] set forth the reasons why [it] believe[s] each statement to be false or misleading . . . ." *Id.* While the complaint might be "repetitive" and "hard to follow, it is not so deficient as to amount to puzzle pleading." *Id. See also In re GlenFed, Inc., Sec. Litig.*, 42 F.3d 1541 (9th Cir. 1994) (finding that a 113-page complaint, which "ramble[d] through long stretches of material quotes from defendants' public statement," suffered from "poor draftsmanship," and was "cumbersome almost to the point of abusiveness," nevertheless did not engage in puzzle pleading). BRS has not engaged in impermissible puzzle pleading.

### 2. Omissions

Defendants' next argument favoring dismissal is that they did not omit any material fact necessary to render the RS not misleading, because the facts BRS alleges were omitted were in fact disclosed. BRS alleges defendants omitted material facts about the legality (or lack thereof) of Uber's business model, its passenger safety record, and its financial condition.

United States District Court
Northern District of California

Defendants argue each of these three categories of facts was adequately disclosed in the RS. With regard to the business model, the RS stated Uber was "subject to national, state, local, or municipal laws and regulations that are ambiguous in their application or enforcement or that we believe are invalid or inapplicable." RS at 62. It provided examples of such laws, for example the California Supreme Court's decision in *Dynamex Operations West, Inc. v. Superior Court* regarding the differences between employees and independent contractors. *Id.* at 35. With regard to passenger safety, the RS disclosed that "numerous incidents and allegations worldwide" of sexual assault, abuse, and kidnapping had been reported—though not the details of any of those instances. *Id.* at 40. The RS also stated the company planned to release a "transparency report" about these instances sometime in 2019 which could result in "negative media coverage and increased regulatory scrutiny." *Id.* at 38. Finally, with regard to the company's financial position, the RS disclosed that Uber expected its operating expenses to increase, largely as a result of promotional spending, and that it would incur losses "in the near term" as a result. *Id.* at 34.

"[W]here a company's filings contain abundant and specific disclosures regarding the risks facing the company, as opposed to terse, generic statements, the investing public is on notice of these risks and cannot be heard to complain that the risks were masked as mere contingencies." *Plevy v. Haggerty*, 38 F. Supp. 2d 816, 832 (C.D. Cal. 1998) (collecting cases). Here, defendants are correct that their disclosures were neither "terse" nor "generic." However, the point remains: given the facts BRS has plausibly alleged, the RS was "misleading; in other words, it . . . affirmatively create[d] an impression of a state of affairs that differs in a material way from the one that actually exist[ed]." *Brody*, 280 F.3d at 1006.

In particular, the RS begins with a letter from Uber's CEO, defendant Dara Khosrowshahi, which acknowledges Uber "didn't get everything right" and made "missteps" in its past. RS at vi. However, Khosrowshahi proclaims, "we've changed." *Id.* He goes on to explain the changes Uber has made to fulfill the unique responsibilities that come with being a public company. *Id.* The RS touts Khosrowshahi's installation as CEO as the beginning of a "new path forward" for Uber. *Id.* at 116. *See also id.* at 160 ("It's a new day at Uber."). The "Risk Factors" portion of the RS goes

on to list numerous potential scenarios that, should they materialize, might affect Uber's prospects, but does not suggest that any of those scenarios already exist.

Thus, the RS affirmatively created an impression of an optimistic state affairs: no matter what trouble Uber had faced in the past, Khosrowshahi was leading the company down a new path. The RS represented that, while Uber's future was not blemish-free, the company had turned over a new leaf. Unfortunately, given the facts BRS has plausibly alleged, this state of affairs differs in a material way from the one that actually existed. For example, BRS has alleged plausibly that Uber was continuing, well into 2019, to use a "playbook" to launch in new markets in ways it knew were undoubtedly illegal. In fact, BRS alleges Uber viewed paying fines for violating local laws, or bribes for avoiding those fines, as a cost of doing business. The laws were not, as the RS represented, "ambiguous" or "inapplicable," and Uber knew that. Similarly, BRS plausibly alleges that Uber intentionally delayed layoffs and restructuring it knew were inevitable given its financial position at the time of its IPO, in order to mislead the markets. In particular, mere weeks after its IPO, Uber announced it was dissolving its CMO and COO positions "with the IPO behind us." In other words, the "Risk Factors" in the RS were not mere possibilities; many had already "come to fruition." *Siracusano v. Matrixx Initiatives, Inc.*, 585 F.3d 1167, 1181 (9th Cir. 2009) (internal citation omitted), *aff'd*, 563 U.S. 27. Thus, what was disclosed in the RS was not enough to render what was *not* disclosed, not misleading.

Defendants next argue that the facts which BRS alleges were improperly omitted were adequately disclosed in the press coverage about Uber leading up to its IPO, 26 examples of which it presents as exhibits. *See* Part III, *supra*. That is, there had been enough unfavorable press coverage about Uber before its IPO, that the market was on notice about the risks of investing in it. This "truth-on-the-market" defense is unavailing for at least three reasons.

First, a truth-on-the-market defense is typically raised in the context of Section 10(b) of the Securities Exchange Act of 1934, not Section 11 of the Securities Act. *See, e.g.*, *Provenz v. Miller*, 102 F.3d 1478, 1492 (9th Cir. 1996). While Section 11 is limited to liability for misrepresentations and omissions in registration statements, 15 U.S.C. § 77k(a), Section 10(b) sweeps more broadly,

1    to all securities fraud, 15 U.S.C. § 78j. A truth-on-the-market defense is based on the theory that,

2    if an alleged misstatement or omission of fact is already known to the market, then the fact will

3    already be reflected in the stock price, and the market has not been misled. *Provenz*, 102 F.3d at

4    1492. Thus, the defense is less applicable to registration statements, IPOs, and Section 11 claims,

5    where the stock price has been set privately; the public market has necessarily not had the

6    opportunity to factor in information it may have into the share price.

7         Second, even assuming the defense is available for Section 11 claims, it is not available at

8    the motion to dismiss stage. *In re Thoratec Corp. Sec. Litig.*, No. 04-cv-03168, 2006 WL

9    1305226, at *4 (N.D. Cal. May 11, 2006) (citing *Asher v. Baxter Int'l Inc.*, 377 F.3d 727, 734 (7th

10   Cir. 2004)). This is because, "as the Supreme Court and Ninth Circuit have explained, the truth-

11   on-the-market defense is a method of refuting an alleged misrepresentation's *materiality*."

12   *Connecticut Ret. Plans & Tr. Funds v. Amgen Inc.*, 660 F.3d 1170, 1177 (9th Cir. 2011), *aff'd*, 568

13   U.S. 455 (internal citations omitted). Materiality is a "mixed question of law and fact," *TSC*

14   *Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 450 (1976), and "[p]roof of that sort is a matter for

15   trial," *Basic Inc. v. Levinson*, 485 U.S. 224, 249 (1988). *See also Provenz*, 102 F.3d at 1493

16   (stating summary judgment on truth-on-the-market defense is only warranted if defendants show

17   "no rational jury could find that the market was misled," which is a "heavy burden of proof");

18   *Ganino v. Citizens Utilities Co.*, 228 F.3d 154, 167 (2d Cir. 2000) ("The truth-on-the-market

19   defense is intensely fact-specific and is rarely an appropriate basis for dismissing a § 10(b)

20   complaint for failure to plead materiality.").

21        Finally, even if the truth-on-the-market defense were available at this juncture, defendants

22   have not met their heavy burden of demonstrating it is appropriate on these facts. "[I]nvestors are

23   not generally required to look beyond a given document to discover what is true and what is not."

24   *Miller v. Thane Int'l, Inc.*, 519 F.3d 879, 887 (9th Cir. 2008). The volume of the judicially noticed

25   articles might demonstrate that the alleged misstatements and omissions were known to the

26   market, or it might demonstrate that investors like BRS would have had to follow all press

27   coverage about Uber quite closely to be on notice of all the alleged facts. At the present juncture,

28

ORDER
CASE NO. 19-cv-06361-RS

11

the plausible allegations must be construed in the light most favorable to BRS; viewing the facts

this way requires the latter inference. Furthermore, there is no legal basis for defendants'

contention that the form of the information—news articles, as opposed to SEC filings—determines

whether it was "known" to the market as a matter of law. Thus, for at least these reasons, the

judicially noticed articles do not defeat BRS's plausible allegations at this juncture.

Defendants' final argument on this point is that they had no duty to disclose more

information than they did. They are correct that they had no duty to disclose every legal challenge,

passenger safety complaint, or financial detail—that is, there is no "freestanding completeness

requirement." *Brody*, 280 F.3d at 1006. However, BRS has plausibly alleged that at least three

independent bases which compelled defendants to disclose more than they did. First, as discussed

above, the information defendants *did* disclose "create[d] an impression of a state of affairs that

differ[ed] in a material way from the one that actually exist[ed]." *Id.* Under the facts as alleged by

BRS, defendants had an affirmative duty to correct that impression. Second and third, Items 105

and 303 of SEC Security Regulation S–K impose their own duties to disclose, respectively, "the

most significant factors that make an investment in the registrant or offering speculative or risky"

and "any known trends or uncertainties that have had or that the registrant reasonably expects will

have a material favorable or unfavorable impact on net sales or revenues or income from

continuing operations." 17 C.F.R. §§ 229.105, 229.303(3)(a)(ii). *See also Pirani v. Slack Techs.,*

*Inc.*, No. 19-cv-05857, 2020 WL 1929241, at *12 (N.D. Cal. Apr. 21, 2020). For the same reasons

BRS has plausibly alleged a claim under Sections 11 and 12(a)(2), it has plausibly alleged a

violation of Regulation S–K, *see Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1296 (9th Cir.

1998), which imposes independent duties. Thus, the alleged omissions were required disclosures

which were not adequately disclosed by defendants.

### 3. *Non-Actionable Statements*

Defendants' final argument favoring dismissal is that the misstatements BRS alleges are

not actionable for a variety of reasons. As discussed below, each argument is unavailing.

First, the alleged misstatements, considered in context, are not mere corporate puffery. "In

the Ninth Circuit, vague, generalized assertions of corporate optimism or statements of mere puffing are not actionable material misrepresentations under federal securities laws because no reasonable investor would rely on such statements." *In re Restoration Robotics, Inc. Sec. Litig.*, 417 F. Supp. 3d 1242, 1255 (N.D. Cal. 2019) (internal quotations and citations omitted). On the other hand, "general statements of optimism, *when taken in context*, may form a basis for a securities fraud claim when those statements address specific aspects of a company's operation that the speaker *knows* to be performing poorly." *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1143 (9th Cir. 2017) (emphases added) (internal citation omitted). Put differently, "[s]tatements by a company that are capable of objective verification are not 'puffery' and can constitute material misrepresentations." *Oregon Pub. Employees Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 606 (9th Cir. 2014).

Here, the optimistic statements in the RS—for example, "it's a new day Uber"—are not mere puffery when taken in context. As described above, the RS admitted Uber had stumbled in its past, by failing to comply with local laws and tolerating sexual harassment and even abuse of its passengers and employees. The RS implied the company had turned a corner, particularly with Khosrowshahi's hiring, and these problems were in the past. "It's a new day" is not mere puffery when the speaker knows significant remnants of the "old day"—for example, continuing to launch in markets where Uber was clearly illegal, and paying fines or bribes as a cost of doing business— remain. Similarly, the RS's claims that Uber was "committed to enhancing safety" or "work[ing] tirelessly to earn [its] customers' trust" are vague without context. However, when presented in the context of Uber's troubled history and the "new day" theme, they imply that something has changed—not, as BRS has pled, that Uber's customer service team was still forbidden from involving law enforcement when passengers reported harassment or assault. Complaint at 11. BRS has adequately pled that defendants knew Uber was performing poorly in passenger safety—the company was in the process of compiling a passenger safety report, which was conveniently released after the IPO and demonstrated just how bad the situation was—yet allowed these misleading statements to be made. *Cf. Warshaw v. Xoma Corp.*, 74 F.3d 955, 959 (9th Cir. 1996)

(telling investors FDA approval was "going fine" when the company knew approval would never come was not puffery); *Fecht v. Price Co.*, 70 F.3d 1078, 1081 (9th Cir. 1995) (saying the company "anticipates a continuation of its accelerated expansion schedule" when the expansion already failed was not puffery). Thus, the optimistic statements in Uber's RS are actionable.

Second, the complaint does not engage in impermissible hindsight pleading. Defendants are correct that plaintiffs cannot use post-IPO developments to claim statements in the RS were untrue at the time they were made, but the complaint relies on contemporaneous, not post-IPO events. For example, while defendants are correct that the California State Assembly passed AB5, classifying Uber drivers as employees, ten days after the IPO, the legislative process was well underway, and in any case the California Supreme Court had decided *Dynamex*, which AB5 codified, prior to the IPO. BRS thus plausibly pleads that defendants were aware at the time of the IPO that Uber's classification of its drivers as independent contractors was imminently, if not already, illegal in California. They chose, however, to disclose that Risk Factor as a mere possibility. Similarly, defendants are correct that they were not required to disclose their Q2 2019 financial results at the time of the IPO, which occurred during Q2. However, they were required to remain transparent about the company's financial position, and thus not to state, that they "expect[ed] . . . growth to continue," RS at 118, when Uber had sustained (though conveniently, not yet disclosed) its biggest losses to date in Q1 2019, and had planned massive restructuring and layoffs for a few weeks after the IPO, as BRS has plausibly pled.[5] Thus, defendants' statements were misleading given the information available to them at the time the statements were made.

Third, the bespeaks caution doctrine does not protect defendants at this juncture. "The bespeaks caution doctrine protects affirmative, forward-looking statements from becoming the basis for a securities fraud claim when they are accompanied by cautionary language or risk

---

[5] Defendants misstate the law on this point. They claim SEC Regulation S–X required them to disclose their financial position as of 135 days prior to the RS's effective date. However, Regulation S–X merely requires that the financial information disclosed be *no more than* 135 days old. *See* 17 C.F.R. § 210.3-12(a), (g).

disclosure." *In re Infonet Servs. Corp. Sec. Litig.*, 310 F. Supp. 2d 1080, 1088 (C.D. Cal. 2003) (citing *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1413 (9th Cir. 1994)). "[I]nclusion of *some* cautionary language is not enough to support a determination as a matter of law that defendants' statements were not misleading." *Stac Elecs.*, 89 F.3d at 1408 (internal quotations omitted). "Dismissal on the pleadings under the bespeaks caution doctrine . . . requires a stringent showing: There must be sufficient cautionary language or risk disclosure [such] that reasonable minds could not disagree that the challenged statements were not misleading." *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 947 (9th Cir. 2005) (internal quotations omitted). Defendants have not made the stringent showing required.[6] It cannot be said that all reasonable minds would agree that the forward-looking statements in the RS were not misleading. To the contrary, as described above, BRS has plausibly pled that the predictions about Uber's future in the RS were misleading given the facts at the time of the IPO. Discovery may illuminate that the disclosures were enough, given defendants' knowledge at the time, to render the RS not misleading. However, the bespeaks caution does not warrant dismissal at this juncture.

Finally, the alleged misstatements are not inactionable opinions. In *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175 (2015), the Supreme Court held that opinion statements—for example, statements prefaced by "we believe"—can serve as the basis for a securities fraud claim under limited circumstances. To plead fraud based on an opinion statement under an omissions theory, a plaintiff must "identify particular (and material) facts going to the basis for the issuer's opinion—facts about the inquiry the issuer did or did not conduct or the knowledge it did or did not have—whose omission makes the opinion statement at issue misleading to a reasonable person reading the statement fairly and in context." *Id.* at 194. That is, the plaintiff must plead facts that "call into question the issuer's basis for offering the opinion." *Id.* That is precisely what BRS has done here. In particular, BRS has pled that the RS represented defendants believed Uber was complying with the law, keeping its passengers safe,

---

[6] Defendants' argument on this point, in their motion to dismiss and reply combined, spans all of two paragraphs out of 60 pages.

and performing well financially—even though defendants had no factual basis for offering these opinions. To the contrary, the facts known to defendants at the time—for example, the facts set forth in the soon-to-be-released transparency report and Q1 results—demonstrated otherwise. Furthermore, to the extent the statements of opinion "are alleged to have been materially misstated statements of opinion or belief when made," Complaint at 108, BRS has pled them with particularity as required by Rule 9(b). That is, BRS has pled the underlying facts of which it alleges defendants had knowledge, when and in what context those facts arose, and why they rendered the opinion misleading. The allegations are not inactionable opinions under *Omnicare*.

## V.  CONCLUSION

For the reasons set forth above, the motion to dismiss is denied. Defendants shall respond to the complaint within 21 days of this Order as set forth by Rule 12(a)(1)(A)(i).

**IT IS SO ORDERED**.

Dated: August 7, 2020

RICHARD SEEBORG
United States District Judge

United States District Court
Northern District of California