August 19, 2022

**Via ECF**

Hon. Donna M. Ryu
U.S. District Court, Northern District of California
Oakland Courthouse, Courtroom 4 – 3rd Floor
1301 Clay Street
Oakland, California 94612

Re: *Boston Retirement System v. Uber Technologies, Inc.*, No. 3:19-cv-06361-RS (N.D. Cal.),
<u>Joint Letter About Discovery Dispute Over Uber 30(b)(6) Depositions and Text Messages</u>

Dear Judge Ryu:

Pursuant to Rule 14 of Your Honor's Standing Order, Lead Plaintiff Boston Retirement System ("Lead Plaintiff" or "BRS") and Uber Technologies, Inc. ("Uber") respectfully submit this letter concerning unresolved discovery disputes over Uber's 30(b)(6) deposition and whether the Uber Defendants must produce text messages. Given the breadth of the disputes, the parties request formal briefing and oral argument. Counsel conferred on numerous occasions culminating in an August 12 impasse. The Court recently certified the Class and has set an October 6 case management conference. There are no cut-off dates for discovery, dispositive motions, or trial.

## I. Lead Plaintiff's Statement

The following three discovery disputes are the result of Lead Plaintiff's years-long efforts to obtain from Uber a straight answer to a simple question: what are the sources of responsive information?

On November 3, 2020, we served document requests ("RFPs") seeking, *inter alia*, Correspondence as defined therein, including text messages. Ex. 1 at 4, ¶7. After the Individual Defendants failed to timely respond to the RFPs, the Uber Defendants served amended responses and objections ("R&Os") to the RFPs on June 22. Ex. 1 at 34. On June 1, the parties discussed search parameters and sources. The parties conferred five more times. On September 29, Uber produced a small set of documents. During a September 30 meet and confer, Uber's counsel represented there were no centralized sources kept in the normal course of business and the only searchable source are **emails**.

During a December 10 meet and confer, we pointed out that Uber's September 29 production included ███████████████████████████████████████████████████████████████████████████████████████████████████████████████ During a December 17 meet and confer, Uber remained evasive on text messaging but represented that Uber employees used **Google email/chat** and a service called **uChat** and could agree to collect them. When asked directly about texts, Uber represented they do not "boil the ocean" seeking relevant information.

We followed N.D. Cal. ESI Guideline 2.03 over nine meet and confers, but given the inconsistent representations and the evidence, on December 21, we served an amended notice of 30(b)(6) deposition to Uber ("Amended NOD") seeking testimony about tracking systems, electronic device policies and practices, and senior management's communication methods ("Procedural Topics," *i.e.*, Topic Nos. 1-5, 7-13, 18-20, 23, 42, and 44). The parties agreed to hold the non-procedural topics in abeyance until after substantial completion of discovery and have not met and conferred on their scope (*i.e.*, Topic Nos. 6, 24-44). On January 7, 2022, Uber proposed written discovery in lieu of 30(b)(6) testimony on the Procedural Topics. After conferring from January to May on scope, we rejected Uber's proposal and served a Second Amended NOD on May 10.

In a March 18 letter, Uber confirmed it would collect **emails, Google chats, uChats, and Google Drive (a centralized source) documents** from 38 custodians. We served requests for admission on March 24 ("RFAs") seeking admissions on whether the custodians texted about the IPO, Projections, or Categories to seek the truth about usage of text messages and narrow potential spoliation issues before trial. Ex. 1 at 202, ¶¶1-2. On June 3, Uber requested that we agree to limit the scope of the 30(b)(6) Procedural Topics to our March 10 counterproposal for interrogatories in lieu of 30(b)(6), which Lead Plaintiff rejected on June 6. Uber served R&Os to the Second Amended NOD on June 9 and then contradicted those R&Os on June 24 and July 14 by agreeing to produce witnesses on the topics as noticed. On July 18, Uber served Amended R&Os to the RFAs ████████████████████████████████████████████████████████████. We served Third and Fourth Amended NODs on July 20 and 25. Uber did not respond or object and never sought a protective order. On July 29, Uber confirmed it had produced documents responsive to the Fourth Amended NOD (Ex. 1 at 115) for its first designee, Will Anderson. Uber produced ██████████████████ on August 2.

On August 3, we deposed Mr. Anderson on Topic Nos. 1-4, 18-20, 42, 44 (the "Anderson Topics"). Uber █████████████████████████████████████. Following efforts to accommodate Uber's ████████████████████████████████████████████████, the parties reached an impasse. On August 12, Uber told us it would not appear at two duly noticed 30(b)(6) deposition sessions scheduled for August 19 and September 14, on the grounds that the Procedural Topics are overbroad. Uber now seeks a protective order, 74 days after Lead Plaintiff's June 6 rejection of Uber's proposal to limit the scope of the Procedural Topics and after one 30(b)(6) deposition session has concluded.

**Issue 1: The August 3, 2022 Uber 30(b)(6) Deposition.** Uber should produce (1) another 30(b)(6) witness to testify on the Anderson Topics and (2) Mr. Anderson to testify as a fact witness, which should not count towards any limit on the number of fact witness depositions. *Detoy v. City & Cnty. of San Francisco*, 196 F.R.D. 362, 366-67, 370 (N.D. Cal. 2000).

Under Rule 30(d)(1), courts allow more time needed to fairly examine the deponent and if any circumstance impedes or delays the examination. *See Loop AI Labs Inc. v. Gatti*, 2016 WL 4474584, at *1 (N.D. Cal. Aug. 25, 2016). More time is needed given Mr. Anderson's ██████████████, *Molex v. City & Cnty. of San Francisco*, 2012 WL 1965607, at *2 (N.D. Cal. May 31, 2012) ("affirmative duty" to educate and prepare even if it "would be burdensome"). Mr. Anderson ███████████████████████████████████████████████████. *See, e.g.*, Ex. 1 at 324-43 (Transcript ("Tr.") at 114:3-115:10, 140:21-142:14, 145:21-152:22, 172:1-12, 186:22-190:12). More time is also needed given Uber's ██████████████████████████████████████████████, *Loop*, 2016 WL 4474584 at *1, *4 (attorney-client privilege does not protect facts). For example, counsel █████████████████████████████████████████████████. *See, e.g.*, Ex. 1 at 306-34 (Tr. at 153:12-155:19 (██████████████████████████████), 44:6-48:14 ████████████████████████████). The deposition was ██████████████████████████████ by Uber, *Loop*, 2016 WL 4474584 at *1, ██████████████████████████████████ (*e.g.*, Ex. 1 at 342 (Tr. at 186:22-188:6)), ██████████████████████████████ (*e.g.*, Ex. 1 at 341-43 (Tr. at 184:22-190:12)), and ██████████████████████████████ (*e.g.*, Ex. 1 at 332-35 (Tr. at 148:19-160:13)).

Uber's scope objections are misplaced. For example, Uber ██████████████████████████████████████████████████████████████████████████. *See, e.g.*, Ex. 1 at 331-32 (Tr. at 145:21-148:18). Counsel cannot "unilaterally decid[e] that the questions were outside the scope.... The 30(b)(6) notice establishes the minimum about which the witness must be prepared to testify, not the maximum." *Loop*, 2016 WL 4474584 at *3; *see also Baird v. Blackrock Inst. Tr. Co., N.A.*, 2019 WL 365845, at *1-2 (N.D. Cal. Jan. 30, 2019); *Detoy*, 196 F.R.D. at 367 ("counsel shall state the objection ... and the witness shall answer"); *Molex*,

2012 WL 1965607 at *2 ("responding party must produce a prepared witness on designated topics ... not only within the personal knowledge of the witness but on matters reasonably known").

***Issue 2: Text Messages.*** Uber should produce all responsive texts sent or received by the custodians and all texts between the custodians that relate to the IPO, Projections, or Categories.

The Amended R&Os to the RFAs ███████████████████████████████████████ ████████████████████████████████████████████████████████████ Ex. 1 at 221. When asked the same question pursuant to Topic No. 42, Mr. Anderson ███████ ███████████████████████████████████████████████████████████████████ ████████████████████████████████████ Ex. 1 at 363-66 (Tr. at 270:8-275:1, 279:16-283:22).

Courts routinely compel parties to produce text messages. *See* Ex. 1 at 267-68 (3.5 Authorized Devices, 3.7 Uber's Right to Access); *Waymo LLC v. Uber Techs., Inc.*, 2017 WL 6501798, at *2 (N.D. Cal. Dec. 15, 2017) (Uber ordered to produce text messages and state the extent of deleted, destroyed, or modified material); *John v. Cnty. of Lake*, 2020 WL 3630391, at *3 (N.D. Cal. July 3, 2020) (ordering production of text messages withheld on relevance grounds after defendants claimed they "did not use their cell phones to communicate"). Uber finally revealed on August 12 that its understanding is based on "inquiries of each of the Uber custodians" but admitted they had neither collected nor reviewed their text messages. Uber cannot substantiate its own position.

***Issue 3: The August 19 and September 14, 2022 Uber 30(b)(6) Depositions.*** Uber should be ordered to produce at least two 30(b)(6) witnesses to testify on the remaining Procedural Topics as previously agreed. These topics are not overbroad and seek the identity of persons, policies and practices, documents, and meetings associated with the IPO and Categories, and Uber has not met its "good cause" burden by "demonstrating harm or prejudice." *Ellena v. Standard Ins. Co.*, 2013 WL 4520200, at *2 (N.D. Cal. Aug. 23, 2013); *Apple Inc. v. Samsung Elecs. Co., Ltd*, 282 F.R.D. 259, 263 (N.D. Cal. 2012). To the extent Uber is arguing that the non-procedural topics are overbroad, the parties never met and conferred over those topics and the issue is not ripe.

## II.   Uber's Statement

BRS's statement misrepresents the record and makes clear its improper tactics.   BRS acknowledges that Uber agreed months ago to produce email, internal messaging, and cloud-based Google Drive files from 38 custodians, a collection already totaling over 65 terabytes.  Apparently, that is not enough.  BRS is obsessed with an intensely intrusive and unduly burdensome text collection, without any basis to think such a search would yield relevant evidence.  That is neither reasonable nor proportional.  Its requests should be denied.

***Text Messages.***  BRS raised the texts issue in connection with this dispute only a day before it declared an impasse, *see* Ex. 1 at 442-43, and it has never provided a legitimate basis for such relief.   Collecting and searching text messages is personally invasive and extraordinarily burdensome.  It is justified only by "evidence that a significant amount of business . . . is done over text." *Jones v. Varsity Brands, LLC*, 2021 WL 5889984, at *3 (W.D. Tenn. Dec. 13, 2021). That is not the case here.  Uber's custodians use email, internal chat applications, and Google Drive, all of which has been collected and will be reviewed. *See Kellgren v. Petco Animal Supplies, Inc.*, 2017 WL 979045, at *11 (S.D. Cal. Mar. 13, 2017) (denying request for texts in similar situation).  It was not their practice to use texts for substantive business communications during the relevant period, and the lone email BRS cites referencing a text exchange about meeting times does not establish otherwise.  That is a key distinction from BRS's cited cases.  Forcing a burdensome search of devices for texts now – before the production of emails, chats, and documents already agreed upon – puts the cart miles before the horse.

3

***Rule 30(b)(6) Depositions.*** BRS's demand for 14 additional hours of depositions is also uncalled for, and its conduct at the first deposition confirms that any depositions on its overbroad topics at this early stage would be pointless. BRS's NOD contains more than 100 topics and sub-topics and impermissibly expansive definitions. It was served following (i) BRS's refusal to engage in informal information sharing as urged by this Court's rules[1] and (ii) Uber and the Individual Defendants' responses to 840 RFAs that BRS impermissibly used for discovery of the same information.[2] *See, e.g.*, Ex. 1 at 211-62. At the deposition, BRS expanded the NOD further, repeatedly asked improper questions, deemed Uber's responses and objections a "nullity," and subsequently said that prior meet and confers were meaningless because its revised NODs (setting dates and naming the witnesses Uber identified) put the parties "back at square one." Discovery cannot proceed in this manner. Proper 30(b)(6) depositions on "painstakingly" specific topics, and any request for texts, should proceed only after the production is complete. *See DarbeeVision v. C&A Mktg., Inc.*, 2019 WL 2902697, at *9 (C.D. Cal. Jan. 28, 2019) (noting it is "likely" that "documents may be a better source of information" than a deposition).

Discovery under Rule 30(b)(6) imposes interrelated obligations on the party noticing the deposition and the party providing the witness. *See id.*, at *6. "[T]he requesting party must take care to designate, ***with painstaking specificity***, the particular subject areas that are intended to be questioned." *Id.* at *7 (emphasis added) (citation omitted); *see also Uschold v. Carriage Servs., Inc.*, 2019 WL 8298261, at *3 (N.D. Cal. Jan. 22, 2019); *Silva v. San Pablo Police Dep't*, 2018 WL 358789, at *2 (N.D. Cal. Jan. 11, 2018). If "the defendant cannot identify the outer limits of the areas of inquiry noticed, compliant designation is not feasible," and the NOD should be quashed. *Reed v. Bennett*, 193 F.R.D. 689, 692 (D. Kan. 2000); *see also Apple Inc. v. Samsung Elecs. Co.*, 2012 WL 1511901, at *2 (N.D. Cal. Jan. 27, 2012).

Neither the NOD, nor BRS's conduct at the deposition, have come close to meeting these standards. The NOD requests "any" or "all" information and directs that it be construed to include "all responses that might otherwise be . . . outside the scope." Ex. 1 at 118. Moreover, the NOD's definition of "Policies and Practices" impermissibly purports to encompass any "course of conduct, ***whether formal or informal, written or unwritten***, recorded or unrecorded . . . ***known, recognized, or followed, explicitly or implicitly***." Ex. 1 at 122 (emphasis added); *see Poulos v. City of Los Angeles*, 2020 WL 8509663, at *2 (C.D. Cal. July 15, 2020).

Uber originally attempted to negotiate informal or written responses to BRS's first over-broad NOD, but those efforts failed. BRS served a second NOD on May 10. Uber served Responses & Objections ("R&Os") on June 9, *see* Ex. 1 at 140-90, and the parties met and conferred regarding the scope of the depositions. In an effort to compromise, and reserving its objections, Uber offered 21 hours of testimony from three 30(b)(6) witnesses on "non-substantive" topics. That compromise depended on BRS's representations that it did not expect witnesses to know "all"

---

[1] BRS's recitation of the discovery history is entirely misleading. BRS rejected informal information sharing as set forth in N.D. Cal. ESI Guideline 2.03. Uber timely responded to the RFPs, but BRS demanded separate responses for all of the Individual Defendants. And the "central files" issue is completely contrived. BRS had refused to negotiate search terms until Uber searched its "central files." Uber found no relevant central files and stated that, because the relevant documents would be found in email searches, BRS should negotiate search terms. That was not a representation that emails were the only document source. Moreover, the Google Drive files that ***Uber identified*** as potentially responsive are not "central." They are "cloud-based" documents that, like emails, are searched on a custodial basis. BRS either misunderstands or misrepresents how Google Drive works.

[2] *See Byard v. City & Cnty. of San Francisco*, 2017 WL 988497, at *1 (N.D. Cal. Mar. 15, 2017) (Ryu, M.J.).

matters or "each" item responsive to a topic and that it would be "reasonable" in construing the scope of the Topics.  But that is not what occurred.

BRS's requests for additional depositions rest on its assertion that Uber was required to prepare its witnesses to testify about every possible subject BRS deems covered by the NOD, including, for example, individual instances of policy "violations" or individual employees' requests for policy "clarifications," on top of testifying about the policies themselves, and even though neither term was used in the NOD.  Informed at the first deposition that the witness was not prepared to testify regarding such topics, BRS proceeded to inquire as to his personal knowledge.  That inquiry was also improper because, as BRS was told, the witness's personal knowledge was based on privileged interactions arising out of his work for Uber's eDiscovery group, which is part of Uber's legal team and works on Uber's litigations at the instruction of counsel.  BRS nevertheless sought privileged information repeatedly, and improperly impugned defense counsel who, as required, identified where the witness could not testify on the company's behalf and instructed him not to waive Uber's privilege.  *See Quiksilver, Inc. v. Kymsta Corp.*, 247 F.R.D. 579, 582 (C.D. Cal. 2007).  All of BRS's conduct in this regard was improper.

After the deposition, BRS raced to declare an impasse, contending that Uber's R&Os were a "nullity" and the meet and confers prior to the deposition were irrelevant.  BRS further dismissed Uber's offers to answer specific questions remaining after the first Rule 30(b)(6) deposition, *see* Ex. 1 at 445-48, and instead, demanded 14 hours of deposition time and the production of text messages from 38 custodians *in addition to the document sources and 21 hours of deposition time already agreed*, *see id.* at 442-43.  Shocked by BRS's position, Uber promptly informed BRS that further Rule 30(b)(6) depositions could not go forward absent written narrowing of topics or relief from the Court.[3]  It is time for BRS's gamesmanship to end.  Discovery should proceed in an orderly manner, starting with productions from standard company sources, and followed by depositions and supplemental requests if warranted.

\*       \*       \*

Lead Counsel and counsel for the Uber Defendants attest that they met and conferred regarding these issues, culminating on August 12, 2022, and jointly request full briefing and oral argument.

Respectfully submitted,

LABATON SUCHAROW LLP                    SHEARMAN & STERLING LLP

By: */s/ Alfred L. Fatale III*                         By: */s/ Daniel H.R. Laguardia*

Jonathan Gardner (admitted *pro hac vice*)        Daniel H.R. Laguardia (SBN 314654)
Alfred L. Fatale III (admitted *pro hac vice*)        535 Mission Street, 25th Floor
Joseph N. Cotilletta (admitted *pro hac vice*)       San Francisco, CA 94105-2997
Marco A. Dueñas (admitted *pro hac vice*)          Telephone: (415) 616-1100
Lisa Strejlau (admitted *pro hac vice*)              Facsimile: (415) 616-1199

---

[3] Pending the Court's resolution of this dispute, the noticed depositions need not proceed.  *See, e.g.*, *Izzo v. Wal-Mart Stores, Inc.*, 2016 WL 409694, at \*7 (D. Nev. Feb. 2, 2016); *Hiramanek v. Clark*, 2016 WL 217255, at \*4 (N.D. Cal. Jan. 19, 2016); *Russell v. Walmart Inc.*, 2020 WL 4745546, at \*2 (C.D. Cal. July 5, 2020).

140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
Email: jgardner@labaton.com
  afatale@labaton.com
  jcotilletta@labaton.com
  mduenas@labaton.com
  lstrejlau@labaton.com

*Lead Counsel for the Class*

LEVI & KORSINSKY LLP
Gregory M. Nespole (admitted *pro hac vice*)
55 Broadway, 10th Floor
New York, NY 10006
Telephone: (212) 363-7500
Facsimile: (212) 363-1294
Email: gnespole@zlk.com

 -and-

Adam M. Apton (SBN 316506)
388 Market Street, Suite 1300
San Francisco, CA 94111
Telephone: (415) 373-1671
Facsimile: (415) 484-1294
Email: aapton@zlk.com

*Liaison Counsel for Lead Plaintiff*
 *Boston Retirement System*

Cc:  All Counsel of Record (*via ECF*)

Email: daniel.laguardia@shearman.com

 -and-

Agnès Dunogué (admitted *pro hac vice*)
Dennis D. Kitt (admitted *pro hac vice*)
599 Lexington Avenue
New York, NY 10022-6069
Telephone: (212) 848-4000
Facsimile: (212) 848-7179
Email: agnes.dunogue@shearman.com
  dennis.kitt@shearman.com

*Attorneys for Defendants Uber Technologies,*
 *Inc., Dara Khosrowshahi, Nelson Chai, Glen*
 *Ceremony, Ronald Sugar, Ursula Burns,*
 *Garrett Camp, Matt Cohler, Ryan Graves,*
 *Arianna Huffington, Travis Kalanick, Wan*
 *Ling Martello, H.E. Yasir Al-Rumayyan, John*
 *Thain, and David Trujillo*

**ECF ATTESTATION**

Pursuant to Civil L.R. 5-1(i)(3), the filer attests that concurrence in the filing of this document has been obtained from each of the other signatories thereto.

Executed this 19th day of August, 2022.

*/s/ Alfred L. Fatale III*