# EXHIBIT 1

# EXHIBIT PARTIALLY FILED UNDER SEAL

1  Jonathan Gardner (admitted *pro hac vice*)
   Alfred L. Fatale III (admitted *pro hac vice*)
2  Joseph N. Cotilletta (admitted *pro hac vice*)
   Marco A. Duenas (admitted *pro hac vice*)
3  LABATON SUCHAROW LLP
   140 Broadway
4  New York, New York 10005
   Telephone: (212) 907-0700
5  Facsimile: (212) 818-0477
   Email: jgardner@labaton.com
6          afatale@labaton.com
           jcotilletta@labaton.com
7          mduenas@labaton.com

8  *Lead Counsel for Lead Plaintiff Boston Retirement System*

9
                    **UNITED STATES DISTRICT COURT**
10
                   **NORTHERN DISTRICT OF CALIFORNIA**
11
                      **SAN FRANCISCO DIVISION**
12

13  BOSTON RETIREMENT SYSTEM,
    Individually and On                        Case No:  3:19-cv-06361-RS
14  Behalf of All Others Similarly Situated,
                                               **LEAD PLAINTIFF'S FIRST REQUEST**
15                          Plaintiffs,         **FOR PRODUCTION OF DOCUMENTS**
            v.                                 **TO DEFENDANTS**
16
    UBER TECHNOLOGIES, INC., et al.,           **Courtroom:**  No. 3 – 17th Floor
17                                             **Judge:**       Hon. Richard Seeborg
                            Defendants.
18

19

20

21

22

23

24

25

26

27

28

1    Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Lead Plaintiff

2  Boston Retirement System, by its undersigned attorneys, hereby request that Defendant  Uber

3  Technologies, Inc., ("Uber"), Dara Khosrowshahi, Nelson Chai, Glen Ceremony, Ronald Sugar,

4  Ursula Burns, Garrett Camp, Matt Choler, Ryan Graves, Arianna Huffington, Travis Kalanick,

5  Wan Ling Martello, H.E. Yasir Al-Rumayyan, John Thain and David Trujillo (the "Individual

6  Defendants" and, together with Uber, the  "Uber Defendants"), and Morgan Stanley & Co. LLC,

7  Goldman, Sachs & Co. LLC, Merrill Lynch, Pierce, Fenner & Smith Incorporated, Barclays

8  Capital Inc., Citigroup Global Markets Inc., Allen & Company LLC, RBC Capital Markets,

9  LLC, SunTrust Robinson Humphrey, Inc., Deutsche Bank Securities, Inc., HSBC Securities

10  (USA) Inc., SMBC Nikko Securities America, Inc., Mizuho Securities USA LLC, Needham &

11  Company, LLC, Loop Capital Markets LLC, Siebert Cisneros Shank & Co., L.L.C., Academy

12  Securities, Inc., BTIG, LLC, Canaccord Genuity LLC, CastleOak Securities, L.P., Cowen and

13  Company, LLC, Evercore Group L.L.C., JMP Securities LLC, Macquarie Capital (USA) Inc.,

14  Mischler Financial Group, Inc., Oppenheimer & Co., Inc., Raymond James & Associates, Inc.,

15  William Blair & Company, L.L.C., The Williams Capital Group, L.P., TPG Capital BD, LLC

16  (the "Underwriter Defendants" and, together with Uber Defendants, the "Defendants") produce

17  for inspection and copying within thirty (30) days of the service of these requests, at the law

18  offices of Labaton Sucharow LLP, 140 Broadway, New York, NY 10005, or at such other time

19  and place as the parties mutually agree, all Documents described below in accordance with the

20  following Definitions and Instructions.

21    These document requests incorporate by reference all definitions and rules of

22  construction set forth in Rule 34 of the Federal Rules of Civil Procedure and supplement them

23  with the following definitions and instructions, which apply to each request set forth herein:

24  **I.    DEFINITIONS**

25    1.    "Action" refers to the above-captioned lawsuit.

26

27

28

2. "All" shall include the term "each" and vice-versa, as necessary to bring within the scope of the request all responses that might otherwise be construed to be outside the scope of the request.

3. "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the request all responses that might otherwise be construed to be outside the scope of the request.

4. "Communication" or "Communications" refers to any exchange of information, words, numbers, pictures, charts, studies, or graphs by any means of transmission, sending, or receipt of information of any kind by or through any means including, but not limited to, personal delivery, speech, writings, Documents (as defined herein), language (machine, foreign, or otherwise) of any kind, computer electronics or Electronically-Stored Information (as defined herein), sound, radio or video signals, telecommunication, telephone, facsimile, mail, film, photographic film of all types, or other media of any kind.  The term "Communication" also includes, without limitation, all inquiries, discussions, conversations, Correspondence (as defined herein), negotiations, agreements, presentations, understandings, meetings (as defined herein), notices, requests, responses, demands, complaints, press, publicity, or trade releases.

5. "Complaint" refers to the Amended Class Action Complaint filed on March 3, 2020 (ECF No. 80) in this Action. As used herein, the paragraph symbol (¶) followed by a specific number refers to the corresponding numbered paragraph of the Complaint and the allegation or information contained therein.

6. "Concerning" means Relating to, referring to, describing, evidencing or constituting.

7. "Correspondence" means any letter, memorandum, note, e-mail, facsimile, text message, instant message, internet message board posting, smartphone message, or any other writing containing a communication from one person or persons to another person or persons.

8. "Defendants" mean the Uber Defendants together with the Underwriter Defendants as defined below.

9.     "Document" is intended to have the broadest possible meaning under Rule 34(a) of the Federal Rules of Civil Procedure, and includes, without limitation, electronic or computerized data compilations, electronic file backup tapes, hard drives and images of hard drives, all drafts, communications, correspondence, memoranda, records, presentations, books, manuals, reports and recordings of telephone conversations, telephone logs, statements, summaries, notes, transcripts, opinions, agreements, ledgers, journals records of accounts, checks, summary of accounts, spreadsheets, databases, receipts, balance sheets, income statements, confirmation slips, questionnaires, desk calendars, appointment books, diaries, journals, graphs, test results, blogs, charts, data,  files, log files of computer access and activity, and all of the records kept by electronic, photographic, optical, mechanical, magnetic means and things similar to any of the foregoing, including computer media, regardless of their author, transcripts of testimony, subpoenas, and any paper or writing of whatever description, including any computer database or information contained in any computer although not yet printed out.  A draft or non-identical copy of any Document is a separate Document within the meaning of this term.

10.     "Electronically-Stored Information" or "ESI" - Unless otherwise superseded in this case by an Order Governing the Use of Electronically-Stored Information, ESI is defined herein to include the following:

(a)     all items covered by Fed. R. Civ. P. 34(a)(1)(A);

(b)     information or data that is generated, received, processed, and recorded by computers and other electronic devices, including metadata (e.g., author, recipient, file creation date, file modification date, etc.);

(c)     files, information, or data saved on backup tapes or hard drives;

(d)     internal or external web sites;

(e)     output resulting from the use of any software program, including, without limitation, word processing Documents, spreadsheets, database files, charts, graphs and outlines, electronic mail, instant messenger (or similar programs), bulletin board programs, operating

1   systems, source code, PRF files, PRC files, batch files, ASCII files, and all miscellaneous media

2   on which they reside regardless of whether said electronic data exists in an active file, a deleted

3   file, or file fragment; and

4           (f)     activity listings of electronic mail receipts and transmittals; and any and

5   all items stored on computer memories, hard disks, USB flash drives, CD-ROM, magnetic tape,

6   microfiche, or on any other media for digital data storage, or transmittal, such as, but not limited

7   to, personal digital assistants (e.g., iPads), hand-held wireless devices (e.g., iPhones or

8   BlackBerry smartphones), or similar devices, and file folder tabs, or containers and labels

9   appended to, or Relating to, any physical storage device associated with each original or copy of

10  all Documents requested herein.

11          11.    "Employee" or "Employees" means any person who acted or purported to act on

12  behalf of an entity, or another person or persons including, but not limited to, all present and

13  former officers, directors, executives, Board members, partners, principals, managers, staff

14  personnel, accountants, agents, representatives, in-house attorneys, independent contractors,

15  advisors, and consultants of such entity, person, or persons.

16          12.    "Government" means any agency of the U.S. federal or state government, or the

17  government of any other U.S. commonwealth, district, or territory, including the U.S.

18  Department of Justice, the SEC, U.S. Department of Homeland Security, U.S. Citizenship and

19  Immigration Services; any attorney general's office; and district attorney's office; any committee

20  or subcommittee of the U.S. Congress; and any person, employee, agent, or representative acting

21  on their behalf.

22          13.    "Including" is used to emphasize the type of Document requested and does not

23  limit the request in any way.

24          14.    "Individual Defendants" means Dara Khosrowshahi, Nelson Chai, Glen

25  Ceremony, Ronald Sugar, Ursula Burns, Garrett Camp, Matt Choler, Ryan Graves, Arianna

26  Huffington, Travis Kalanick, Wan Ling Martello, H.E. Yasir Al-Rumayyan, John Thain and

27  David Trujillo.

28

15.     "IPO" or "Offering" means Uber's initial public offering on or about May 10, 2019.

16.     "Investors" means all persons or entities who purchased or otherwise acquired Uber's publically traded common stock pursuant and/or traceable to the Offering Documents for Uber's IPO as defined in ¶ 329 of the Complaint.

17.     "Meeting" means the contemporaneous presence, whether in person or through any means of communication, of any natural persons, whether or not such presence was by chance or prearranged, and whether or not the Meeting was formal or informal or occurred in connection with some other activity.

18.     "Offering Documents" refers to the Registration Statement and Prospectus issued in connection with the IPO, along with any previously filed or amended versions of those offering documents and related documents.

19.     "Person" or "Persons" includes any natural person, firm, association, organization, partnership, limited partnership, sole proprietorship, trust, corporation, or legal or governmental entity, association, or body.

20.     "Policy" or "Policies" means any rule, protocol, procedure, directives, "playbooks," practice, or course of conduct, whether formal or informal, written or unwritten, recorded or unrecorded, that was known, recognized, or followed, explicitly or implicitly.

21.     "Prospectus" means any prospectus distributed by the Defendants or used to conduct the IPO, Including the Prospectus dated May 9, 2019, filed with the SEC on Form 424B4, and declared effective by the SEC on May 13, 2019.

22.     "Refer" or "Relate" or "Referring" or "Relating" means all Documents that explicitly or implicitly, in whole or in part, were received in conjunction with or were generated as a result of, the subject matter of the request, including, but not limited to, all Documents that reflect, record, memorialize, discuss, describe, compare, consider, concern, constitute, embody, evaluate, analyze, review, report on, comment on, impinge upon, or impact the subject matter of the request.

23.     "Registration Statement" means Uber's registration statement dated April 11, 2019, and filed with the SEC on Form S-1, and any amendments thereto, Including each statement declared effective by the SEC.

24.     "Road Show" means any physical or virtual Meeting in which any defendant communicated with any current or potential investor concerning the IPO.

25.      "SEC" means the United States Securities and Exchange Commission and any employee, agent, representative, or subdivision thereof.

26.     "Uber" refers to Uber Technologies, Inc., and any of its subsidiaries, divisions, or affiliates (foreign and domestic), predecessors, successors, and any present and former officers, directors, Employees (as defined herein), agents, representatives, members of its Board of Directors, accountants, attorneys, advisors, and all other persons and agents acting or purporting to act on its behalf.

27.     "Underwriter Defendants" means Morgan Stanley & Co. LLC, Goldman, Sachs & Co. LLC, Merrill Lynch, Pierce, Fenner & Smith Incorporated, Barclays Capital Inc., Citigroup Global Markets Inc., Allen & Company LLC, RBC Capital Markets, LLC, SunTrust Robinson Humphrey, Inc., Deutsche Bank Securities, Inc., HSBC Securities (USA) Inc., SMBC Nikko Securities America, Inc., Mizuho Securities USA LLC, Needham & Company, LLC, Loop Capital Markets LLC, Siebert Cisneros Shank & Co., L.L.C., Academy Securities, Inc., BTIG, LLC, Canaccord Genuity LLC, CastleOak Securities, L.P., Cowen and Company, LLC, Evercore Group L.L.C., JMP Securities LLC, Macquarie Capital (USA) Inc., Mischler Financial Group, Inc., Oppenheimer & Co., Inc., Raymond James & Associates, Inc., William Blair & Company, L.L.C., The Williams Capital Group, L.P., TPG Capital BD, LLC, and, for each, any of its present or former employees, officers, directors, board of directors or committees thereof, representatives or agents (including attorneys, accountants, advisors), parents, subsidiaries, divisions, subdivisions, affiliates, predecessors, successors, assigns, and all other person acting, purporting to act, or authorized to act on its behalf.

1       28.     "You" "Your" or "Yours" means Defendants, and all other persons acting or

2   purporting to act on Defendants' behalf, including, but not limited to, Your Employees, in-house

3   and external attorneys, accountants, representatives, or agents.

4       29.     The use of the singular form of any word includes the plural and vice versa.

5       30.     The use of any tense of any verb shall also include within its meaning all other

6   tenses of that verb.

7       31.     Unless given a prescribed definition herein, each word or term used shall be

8   construed according to its usual and customary dictionary definition.

9       32.     All defined terms shall have the definitions provided herein whether or not

10   capitalized.

11   **II.**    **INSTRUCTIONS**

12       1.     In responding to these requests, all Documents shall be produced in accordance

13   with Rules 26 and 34 of the Federal Rules of Civil Procedure and the parties' to be agreed to

14   Stipulated Order Re: Discovery of Electronically Stored Information.

15       2.     In responding to these requests, You shall produce all responsive Documents that

16   are in Your possession, custody or control.  A Document shall be deemed to be within Your

17   control if You have the ability or right to secure the Document or a copy of the Document from

18   another Person having possession or custody of the Document.

19       3.     All Documents responsive to these requests that are stored on Your electronic

20   backup tapes or hard drives shall be produced.

21       4.     Pursuant to the Federal Rules of Civil Procedure, You are to produce for

22   inspection and copying by Plaintiffs original Documents as they are kept in the usual course of

23   business in their original folders, binders, covers, and containers, or facsimile thereof, or You

24   shall organize and label the Documents to correspond to the categories in these requests.  With

25   respect to ESI, You are to follow the foregoing instructions and also produce the ESI as

26   described in an ESI Protocol as agreed upon by the parties.  If the original Document is not in

27   Your custody, then You are to produce an identical copy thereof, as well as any non-identical

28

1    copies that differ for any reason (including, without limitation, the making of notes thereon) from

2    the original or from the other copies produced.

3         5.    These requests are specifically intended to encompass any data or information

4    maintained in any form of computer memory or on computer hard drives or diskettes, including

5    any word processing or spread sheet programs or electronic mail systems, or in any form of

6    electronic or computer-related storage, whether or not You currently have "hard copy" printouts

7    of the same.

8         6.    If You claim any form of privilege or any other objection, whether based on

9    statute, common law, or otherwise, as a ground for not producing any requested Document, You

10   shall furnish a log identifying each Document for which the privilege or other objection is

11   claimed together with the following information:

12              (a)    the privilege or grounds for withholding being asserted;

13              (b)    the date of the Document;

14              (c)    the author and recipients of the Documents, and whether they are

15   attorneys;

16              (d)    the facts upon which you rely as the basis for claiming any privilege as to

17   the Document; and

18              (e)    a description of the subject matter of the Document and its nature (e.g.,

19   letter, memorandum, tape, etc.).

20        7.    In the event that any Document called for by these requests has been destroyed or

21   discarded, that Document is to be identified by stating:

22              (a)    the nature of the Document;

23              (b)    the names of any addressor or addressee;

24              (c)    if there are any indicated or blind copies;

25              (d)    the Document's date, subject matter, number of pages, and attachments or

26   appendices;

27              (e)    all Persons to whom the Document was distributed, shown or explained;

28

1          (f)      the Document's date of destruction or discard, manner of destruction or

2 discard; and

3          (g)      the Persons authorizing or carrying out such destruction or discard.

4          8.      If a portion of any Document responsive to these requests is withheld under claim

5 of privilege, any non-privileged portion of such Document must be produced with the portion

6 claimed to be privileged redacted.

7          9.      You are to produce each Document requested herein in its entirety, without

8 deletion or excision (except as redacted for privilege), regardless of whether You consider the

9 entire Document to be relevant or responsive to the requests.  All Documents must be produced

10 with all attachments and enclosures, and in their original folder, binder, or other cover or

11 container, regardless of whether You consider the entire Document to be relevant or responsive

12 to the request.  Whenever a Document or group of Documents is removed from a file folder,

13 binder, file drawer, file box, notebook, or other cover or container, a copy of the label of such

14 cover or other container must be attached to the Document or group of Documents.

15          10.     Documents attached to each other should not be separated.

16          11.     If in responding to these requests You can claim any ambiguity in interpreting a

17 Document request or a Definition or Instruction applicable thereto, such claim shall not be

18 utilized by You as a basis for refusing to produce responsive Documents, but there shall be set

19 forth as part of Your response the language deemed to be ambiguous and the interpretation

20 chosen or used in responding to the request.

21          12.     With respect to any category of Documents, if the production of which You

22 contend is in some way burdensome or oppressive, state the specific reason for that objection.

23          13.     All requests shall be deemed continuing and ongoing, and You are required to

24 supplement Your responses with new or newly-discovered material in accordance with Rule

25 26(e) of the Federal Rules of Civil Procedure.

26          14.     Unless otherwise stated herein, the time period covered by these requests (the

27 "Relevant Time Period") is January 1, 2013 through the present.

28

1    **III.     DOCUMENTS REQUESTED**

2    **REQUEST FOR PRODUCTION NO. 1:**

3            All Documents and Communications Concerning the IPO.

4    **REQUEST FOR PRODUCTION NO. 2:**

5            All Documents and Communications Concerning the Offering Documents or Uber's

6    other public disclosures issued in connection with the IPO.

7    **REQUEST FOR PRODUCTION NO. 3:**

8            All Documents and Communications Concerning any actual or considered disclosures in

9    the Offering Documents with respect to:

10                     a.   Uber's expected quarterly and yearly financial results;

11                     b.   Uber's growth;

12                     c.   New users, MAPCs, and trips;

13                     d.   Changes in approach to and spending for marketing;

14                     e.   Safety, including safety to passengers and drivers;

15                     f.   Driver employment classification;

16                     g.   Lack of, or improper, licenses for drivers;

17                     h.   Lack of, or improper, registrations for vehicles;

18                     i.   Lack of, or improper, permits or other Government-issued approvals to

19                          commence or maintain operations in a given locality;

20                     j.   Potential and actual layoffs of Uber Employees;

21                     k.   Any potential risk to Uber's revenues or other financial metrics or results;

22                     l.   Actions taken or not taken to alter Uber's business practices since

23                          November 1, 2017;

24                     m.  Any other data used to create the content of the Offering Documents; or

25                     n.   Any Communication with the SEC regarding the Prospectus, Registration

26                          Statement and/or Offering circular, Including any comment letters

27                          received from the SEC and any Communications related thereto.

28

**REQUEST FOR PRODUCTION NO. 4:**

All presentations, analyses, and reports Concerning financing alternatives for Uber and the selection of the underwriters for the IPO (a.k.a. the "bakeoff").

**REQUEST FOR PRODUCTION NO. 5:**

All Documents and Communications Concerning any actual or considered disclosure of any "known trends or uncertainties" pursuant to Item 303 of Regulation S-K in the Offering Documents.

**REQUEST FOR PRODUCTION NO. 6:**

All Documents and Communications Concerning any actual or considered disclosure of "the most significant factors that make the Offering speculative or risky" pursuant to Item 503 of Regulation S-K in the Offering Documents.

**REQUEST FOR PRODUCTION NO. 7:**

All Documents and Communications Concerning setting the price of Uber's shares in the IPO.

**REQUEST FOR PRODUCTION NO. 8:**

All Documents and Communications Concerning the size of the IPO.

**REQUEST FOR PRODUCTION NO. 9:**

All Documents and Communications Concerning the allocation of shares in the IPO.

**REQUEST FOR PRODUCTION NO. 10:**

All Documents and Communications Concerning the timing of the IPO.

**REQUEST FOR PRODUCTION NO. 11:**

All Documents and Communications that You or any Defendant sent to, or received, from any securities analysts Concerning (a) Uber's expected quarterly and yearly financial results; (b) Uber's growth; (c) new users, MAPCs, and trips; (d) changes in approach to and spending for marketing; (e) safety, including safety to passengers and drivers; (f) driver employment classification; (g) lack of, or improper, licenses for drivers; (h) lack of, or improper, registrations for vehicles; (i) lack of, or improper, permits or other Government-issued approvals

1   to commence or maintain operations in a given locality; (j) potential and actual layoffs of Uber

2   Employees; (k) any potential risk to Uber's revenues or other financial metrics or results; (l)

3   actions taken or not taken to alter Uber's business practices since November 1, 2017; (m) any

4   other data used to create the content of the Offering Documents; (n) the IPO; or (o) the Offering

5   Documents.

6   **REQUEST FOR PRODUCTION NO. 12:**

7       All Documents and Communications that You or any Defendant sent to, or received from

8   New York Stock Exchange Concerning the IPO or the Offering Documents.

9   **REQUEST FOR PRODUCTION NO. 13:**

10       All Documents and Communications with any Investor or potential Investor Concerning

11   the IPO or the Offering Documents.

12   **REQUEST FOR PRODUCTION NO. 14:**

13       All Documents and Communications Concerning any Road Show or identifying the Road

14   Show's participants and attendees, Including any Documents and Communications Concerning

15   Road Show materials, presentations, scripts, reports, analyses, or talking points created, reviewed

16   or otherwise used in connection with the IPO.

17   **REQUEST FOR PRODUCTION NO. 15:**

18       All Documents and Communications Concerning  any effort made by You or any other

19   Person to sell, solicit, market, distribute, publicize, or promote the common stock sold in or

20   traceable to the IPO.

21   **REQUEST FOR PRODUCTION NO. 16:**

22       Trading records or other Documents showing purchases or sales of common stock sold in

23   or traceable to the IPO, including the names of the purchasers and sellers, the quantities that were

24   purchased or sold, the trade dates, and the amounts paid or received for the purchases or sales.

25   **REQUEST FOR PRODUCTION NO. 17:**

26       All Documents and Communications Concerning any "comfort" or opinion letters from

27   attorneys, auditors, accountants, or any other Person Concerning the IPO.

28

**REQUEST FOR PRODUCTION NO. 18:**

All Documents and Communications Concerning any compensation, fees, bonuses, expenses, reimbursements, costs, compensation, or other remuneration You paid to and/or received in connection with the IPO or other services provided to or on behalf of Uber.

**REQUEST FOR PRODUCTION NO. 19:**

All Documents and Communications Concerning the Underwriter Defendants' exercise of the over-allotment or "green shoe," Including the decision to exercise the over-allotment.

**REQUEST FOR PRODUCTION NO. 20:**

Documents sufficient to identify all Persons, excluding purely clerical staff, affiliated with You, any law firm, or any accounting firm that planned or performed work in connection with the IPO, Including preparing the Offering Documents.

**REQUEST FOR PRODUCTION NO. 21:**

All Documents and Communications Concerning any due diligence performed, or relied on, by You or any other Person in connection with the IPO, Including any bring downs, questionnaires, and virtual data room.

**REQUEST FOR PRODUCTION NO. 22:**

All Documents and Communications Concerning any investment by You in Uber.  This request is not limited to the Relevant Time Period.

**REQUEST FOR PRODUCTION NO. 23:**

All Documents and Communications between You and  Uber's current or present auditors and accounting firms Concerning (a) Uber's expected quarterly and yearly financial results; (b) Uber's growth; (c) new users, MAPCs, and trips; (d) changes in approach to and spending for marketing; (e) safety, including safety to passengers and drivers; (f) driver employment classification; (g) lack of, or improper, licenses for drivers; (h) lack of, or improper, registrations for vehicles; (i) lack of, or improper, permits or other Government-issued approvals to commence or maintain operations in a given locality; (j) potential and actual layoffs of Uber Employees; (k)  any potential risk to Uber's revenues or other financial metrics or results; (l)

1   actions taken or not taken to alter Uber's business practices since November 1, 2017; (m) any

2   other data used to create the content of the Offering Documents; (n) the IPO; or (o) the Offering

3   Documents.

4   **REQUEST FOR PRODUCTION NO. 24:**

5        All due diligence checklists, committee presentations, and diligence summary sheets

6   prepared or used in connection with the IPO, as well as Documents memorializing all responses

7   thereto.

8   **REQUEST FOR PRODUCTION NO. 25:**

9        All Policies, guidelines, procedures, protocols and manuals for conducting due diligence

10  in connection with the IPO and the Offering Documents.

11  **REQUEST FOR PRODUCTION NO. 26:**

12       A copy of any insurance policy, indemnification agreement, hold harmless agreements, or

13  by-laws that may provide coverage for You or any other Defendant for all or part of any

14  potential liability arising from any claims asserted in this Action.

15  **REQUEST FOR PRODUCTION NO. 27:**

16       Your Policies or practices, if any, regarding the retention or destruction of Documents

17  and files, including e-mails or instant messages, e-mail or instant messages backup or archive

18  tapes, hard drives, and corporate storage, including and changes or modifications in such Policies

19  or practices.

20  **REQUEST FOR PRODUCTION NO. 28:**

21       All Documents and Communications of any Meeting of Uber's board of directors, or of

22  any committee or subcommittee thereof, Concerning the IPO or Offering Documents  Including

23  any board packages, presentation materials, Communications, minutes, agendas, or notes

24  Concerning the following: (a) Uber's expected quarterly and yearly financial results; (b) Uber's

25  growth; (c) new users, MAPCs, and trips; (d) changes in approach to and spending for

26  marketing; (e) safety, including safety to passengers and drivers; (f) driver employment

27  classification; (g) lack of, or improper, licenses for drivers; (h) lack of, or improper, registrations

28

**016**

1  for vehicles; (i) lack of, or improper, permits or other Government-issued approvals to

2  commence or maintain operations in a given locality; (j) potential and actual layoffs of Uber

3  Employees; (k)  any potential risk to Uber's revenues or other financial metrics or results; (l)

4  actions taken or not taken to alter Uber's business practices since November 1, 2017; (m) any

5  other data used to create the content of the Offering Documents; (n) the IPO; or (o) the Offering

6  Documents.

7  **REQUEST FOR PRODUCTION NO. 29:**

8        All Documents and Communications of any Meeting Concerning the IPO or the Offering

9  Documents, Including presentation materials, memoranda, minutes, agendas, and notes related to

10  the IPO or the Offering Documents.

11  **REQUEST FOR PRODUCTION NO. 30:**

12        All Documents and Communications Concerning any Individual Defendant's sale of

13  Uber securities in the IPO or since the IPO.

14  **REQUEST FOR PRODUCTION NO. 31:**

15        All Documents and Communications Concerning any issuance of Uber common stock

16  other than the shares issued in the IPO.

17  **REQUEST FOR PRODUCTION NO. 32:**

18        All Documents and Communications Concerning any lock-up of Uber's common stock.

19  **REQUEST FOR PRODUCTION NO. 33:**

20        All Documents and Communications Concerning monthly, quarterly, annual or periodic

21  Financial Statements or interim analyses (Including financial analyses, budgets and estimates)

22  and supporting documentation or work papers created by or for Uber's management, officers,

23  directors or Employees.

24  **REQUEST FOR PRODUCTION NO. 34:**

25        All Documents and Communications Concerning Uber's projected and actual revenues

26  and/or net profits for the first, second, third, and fourth quarters of 2018 and  the full year 2018,

27

28

**017**

Including Uber's projected and actual revenues and net profits from Uber Rides and Uber Eats for those same time periods.

**REQUEST FOR PRODUCTION NO. 35:**

All Documents and Communications Concerning Uber's projected and actual revenues and/or net profits for the first, second, third, and fourth quarters of 2019 or the full year 2019, Including Uber's projected and actual revenues and/or net profits from Uber Rides and Uber Eats for those same time periods.

**REQUEST FOR PRODUCTION NO. 36:**

All Documents and Communications Concerning Uber's goals, objectives, strategies, milestones, and efforts for growth, Including:

        a.   Marketing's growth goals for Uber Eats;

        b.   Growth goals for ride share services;

        c.   Metrics for growth goals; and

        d.   All underlying data and information gathered, collected or compiled to determine whether growth goals are being met.

**REQUEST FOR PRODUCTION NO. 37:**

All Documents and Communications Concerning Uber's year-over-year quarterly revenue growth rate for Q2 2019, Including all underlying data and information used to calculate the growth rate.

**REQUEST FOR PRODUCTION NO. 38:**

All Documents and Communications Concerning Uber's profit margins and Policy for pricing in all markets it operated in from January 1, 2019 to present.

**REQUEST FOR PRODUCTION NO. 39:**

All Documents and Communications Concerning Uber's operations including compliance with commercial license and/or commercial vehicle registration requirements in each country, city or locality in which Uber operates, or has operated.

1    **REQUEST FOR PRODUCTION NO. 40:**

2        All Documents and Communications Concerning:

3            a.  Uber's compliance (or lack thereof) with regulatory and/or Government

4                approval to operate its business.

5            b.  Uber violating any regulations, statutes, rules, ordinances, or industry

6                standards in any jurisdiction.

7    **REQUEST FOR PRODUCTION NO. 41:**

8        All Documents and Communications Concerning fines, judgments, orders, penalties,

9    reprimands, injunctions, assessments, verdicts, or guilty pleas,  including payment or compliance

10   with  such, associated with Uber violating  any Government, international, trade association or

11   organization or regulatory body's regulations, statutes, rules, ordinances, laws or industry

12   standards Including those alleged in ¶¶ 23-26, 29, 33-34, 167, 176, 193, 198, 208-225, 227, 233,

13   244-245, 247, 262-263, 269, 274, 280, 282-283, and 295 of the Complaint.

14   **REQUEST FOR PRODUCTION NO. 42:**

15       All non-privileged portions of Uber's legal files associated with the defense and/or

16   compliance of any legal action associated with any information disclosed in the preceding

17   request Including those alleged in ¶¶ 23-26, 29, 33-34, 167, 176, 193, 198, 208-225, 227, 233,

18   244-245, 247, 262-263, 269, 274, 280, 282-283, and 295 of the Complaint.

19   **REQUEST FOR PRODUCTION NO. 43:**

20       Communications with national, state, local, or international regulators Concerning the

21   following: (a) passenger safety (e.g., motor vehicle accidents, sexual assaults, sexual harassment,

22   etc.); (b) driver employment classification (e.g., independent contractor classification,

23   unemployment and temporary disability insurance contributions, etc.); (c) illegal or improper

24   operations (e.g., licenses for drivers, registrations for commercial vehicles, applicable permits

25   and other Government-issued Documents to properly conduct business in a particular

26   municipality, bribes, etc.); (d) sexual harassment, sexual assault, hostile work environment,

27   forced resignation, wrongful termination, and other workplace complaints brought by Uber

28

1 Employees against Uber; or (e) Uber's violations or potential violations of existing and pending

2 laws, rules and regulations, Including those Concerning the classification or misclassification of

3 drivers as independent contractors rather than Employees, Uber's efforts or lack thereof to

4 comply with *Dynamex*, and the regulatory, legal and tax consequences of these violations or

5 potential violations.

6 **REQUEST FOR PRODUCTION NO. 44:**

7       Documents Concerning all customer or Government complaints, whether filed in any

8 court, administrative setting or tribunal or made to Uber, that occurred before the IPO and that

9 are either still active or concluded, resolved, terminated, or settled on or after the IPO, regarding:

10 (a) passenger safety (e.g., motor vehicle accidents, sexual assaults, sexual harassment, etc.); (b)

11 driver employment classification (e.g., independent contractor classification, unemployment and

12 temporary disability insurance contributions, etc.); (c) illegal or improper operations (e.g.,

13 licenses for drivers, registrations for commercial vehicles, applicable permits and other

14 Government-issued documents to properly conduct business in a particular municipality, bribes,

15 etc.); or (d) sexual harassment, sexual assault, hostile work environment, forced resignation,

16 wrongful termination, and other workplace complaints brought by Uber Employees against Uber.

17 **REQUEST FOR PRODUCTION NO. 45:**

18       All Documents and Communications Concerning payments to any lobbying firm, agency,

19 coalition, political action committee, Government official or any agents thereof.

20 **REQUEST FOR PRODUCTION NO. 46:**

21       All Documents and Communications Concerning any Meeting including Policy

22 Communications Legal ("PCL") Meetings,  or calls that mention or discuss passenger safety

23 and/or alleged illegal Uber operations, Including:

24         a.  Meeting minutes;

25         b.  Dates and locations of each Meeting;

26         c.  Identity of the attendees; and

27         d.  Emails or other Correspondence in connection with such Meeting.

28

**020**

**REQUEST FOR PRODUCTION NO. 47:**

All Documents and Communications Concerning Uber's decision to launch only UberX peer-to-peer ridesharing in Africa.

**REQUEST FOR PRODUCTION NO. 48:**

All Documents and Communications Concerning Uber's payment to or on behalf of Uber drivers for reimbursement for tickets, fines, violations, and other punishment associated with driving without a proper license or registration and/or driving illegally in a particularly locality.

**REQUEST FOR PRODUCTION NO. 49:**

All Documents and Communications Concerning Uber's incentive Policy for Uber drivers, Including:

    a.   Type of incentives offered;

    b.   When incentives began and ended;

    c.   Why incentives were offered;

    d.   Why some or all incentives ceased; and

    e.   The identity of all Uber Employees responsible for setting or implementing said Policy or Policies, Including the identity of Uber B.V. Employees for operations in Africa.

**REQUEST FOR PRODUCTION NO. 50:**

Documents sufficient to show compensation (e.g., hourly wages) for Uber drivers in all markets.

**REQUEST FOR PRODUCTION NO. 51:**

All Documents and Communications Concerning Uber B.V.'s payment to Uber drivers and/or Uber's operations in Africa for reimbursement for fines in Africa, Including:

    a.   Uber's Policies Concerning Uber B.V.'s payments or reimbursement for Uber's operations in Africa;

    b.   Uber Correspondence with Uber B.V.; and

c.   Identity of Uber Employees who worked for or with Uber B.V.

**REQUEST FOR PRODUCTION NO. 52:**

All Documents and Communications Concerning the amount of fines Uber paid for failure to maintain, or have, properly licensed drivers and/or properly registered vehicles.

**REQUEST FOR PRODUCTION NO. 53:**

All Documents and Communications Concerning Uber drivers who quit or resigned due to an unwillingness to drive without commercial licenses or commercial registrations for their vehicles.

**REQUEST FOR PRODUCTION NO. 54:**

All Documents and Communications received from or sent to any Uber driver regarding the legality of Uber's operations or that driving an Uber vehicle in the jurisdiction at issue was legal, and/or Uber's compliance with the law.

**REQUEST FOR PRODUCTION NO. 55:**

All Documents and Communications Concerning Uber's Policies on how to launch UberX peer-to-peer ridesharing, Including any amendments, modifications and drafts of said Policies.

**REQUEST FOR PRODUCTION NO. 56:**

All Documents and Communications Concerning Uber's Policies for deactivations of Uber drivers that lacked proper commercial licensing or vehicle registration. This request is not limited to the Relevant Time Period.

**REQUEST FOR PRODUCTION NO. 57:**

All Documents and Communications Concerning Uber's decision to classify Uber drivers as independent contractors instead of Employees, Including, for each market that Uber operated in, the following:

a.   When Uber first implemented its classification for Uber drivers as independent contractors;

1              b.  To the extent applicable, when Uber chose to change the classification of

2                  its Uber drivers; and

3              c.  any cost-benefit analyses for classification of Uber drivers.

4  **REQUEST FOR PRODUCTION NO. 58:**

5       All Documents and Communications Concerning AB5.

6  **REQUEST FOR PRODUCTION NO. 59:**

7       All Documents and Communications Concerning Defendant Khosrowshahi's June 12,

8  2019 Op-Ed in the San Francisco Chronicle ("Chronicle"), Including:

9              a.  Identities of all Persons involved in the drafting, information gathering,

10                 editing, and finalization of the Op-Ed;

11             b.  Communications by, or between, Uber, Lyft, and/or Chronicle Employees;

12             c.  Documents sent by, or received from, Uber, Lyft and/or Chronicle

13                 Employees; and

14             d.  Dates, times, and locations for any Meetings associated with the Op-Ed.

15 **REQUEST FOR PRODUCTION NO. 60:**

16      All Documents and Communications between Uber and the New Jersey Department of

17 Labor and Workforce Development between January 1, 2015 and December 31, 2019.

18 **REQUEST FOR PRODUCTION NO. 61:**

19      All Documents and Communications Concerning passenger safety, Including:

20             a.  Each report of any crime including sexual assault and rape reported to

21                 Uber since January 1, 2017;

22             b.  Each report of sexual harassment reported to Uber since January 1, 2017;

23                 and

24             c.  Uber's handling and resolution of each report it received.

25 **REQUEST FOR PRODUCTION NO. 62:**

26      All Documents and Communications Concerning Uber's internal investigation system

27 and/or department, Including:

28

1       a.  Hiring of investigators;

2       b.  Training of investigators;

3       c.  Policies for handling or conducting investigations;

4       d.  Meetings with investigators;

5       e.  Notes obtained during investigations Concerning incidents involving

6           drivers and/or passengers;

7       f.  Uber's "three-strikes" system;

8       g.  Executive handling of third-strike drivers;

9       h.  Policies for handling or disciplining third-strike drivers, Including factors

10           considered in giving Uber drivers another chance;

11       i.  Disciplinary action taken against investigators;

12       j.  Termination of investigators;

13       k.  Communication and/or cooperation with law enforcement and first

14           responders;

15       l.  Communications and/or cooperation with outside legal counsel for the

16           accused and/or victims;

17       m.  Meetings with accused drivers and/or passengers;

18       n.  Meetings with alleged victims;

19       o.  Notifications to alleged victims; and

20       p.  Refunds issued to alleged victims

21   **REQUEST FOR PRODUCTION NO. 63:**

22       All Documents and Communications Concerning the September 25, 2019 Washington

23   Post article referenced in ¶43 of the Complaint.

24   **REQUEST FOR PRODUCTION NO. 64:**

25       All Documents and Communications Concerning "Super Pumped: The Battle for Uber"

26   and reporting by the author Mike Isaac.

27

28

1    **REQUEST FOR PRODUCTION NO. 65:**

2       All Documents and Communications Concerning the "US Safety Report" that Uber

3 released on December 5, 2019, Including:

4          a.   All draft reports;

5          b.   All underlying data and information associated with the report both in its

6              original form (e.g., handwritten notes) and final form (e.g., handwritten

7              notes converted and saved onto word processing software);

8          c.   All Persons involved  in compiling, assembling, drafting, editing,

9              executing, reviewing and completing the report;

10         d.   When Uber first began compiling data for the report;

11         e.   When Uber last compiled data for the report; and

12         f.   When Uber first contemplated a "US Safety Report."

13 **REQUEST FOR PRODUCTION NO. 66:**

14       All Documents and Communications Concerning specific "accused party" figures and

15 specific "reporting party" figures for non-consensual sexual penetration as discussed in the "US

16 Safety Report."

17 **REQUEST FOR PRODUCTION NO. 67:**

18       All Documents and Communications Concerning any international-equivalent safety

19 report similar to the "US Safety Report" that Uber generated in 2019, including any drafts

20 thereof.

21 **REQUEST FOR PRODUCTION NO. 68:**

22       All Documents and Communications Concerning corresponding data for every other

23 country across Uber's global operations that could be used to generate an international or non-

24 United State equivalent safety report.

25 **REQUEST FOR PRODUCTION NO. 69:**

26       All Documents and Communications Concerning the number of fatal crashes, fatal

27 physical assaults and sexual assaults between January 1, 2019 and December 31, 2019 and any

28

1  Documents evidencing the difference between 2019 incidents and incidents from earlier years

2  (e.g., Documents showing trends of incidents).

3  **REQUEST FOR PRODUCTION NO. 70:**

4          All Documents and Communications Concerning Uber's settlement of passenger safety

5  claims, Including:

6                    a.   Number of cases settled;

7                    b.   Type of cases settled;

8                    c.   When the cases settled;

9                    d.   Jurisdiction where the cases settled;

10                   e.   The dollar amount of each settlement;

11                   f.   The total amount of cases settled; and

12                   g.   The identity of each plaintiff's firm involved in each case, to the extent the

13                        victim retained an attorney.

14  **REQUEST FOR PRODUCTION NO. 71:**

15         All Documents and Communications Concerning Uber's breach of Transport of London

16  regulations, Including:

17                   a.   Any failures to address issues with checks for drivers, insurance and

18                        safety;

19                   b.   Any security lapse; and

20                   c.   Trips where the wrong Uber driver picked up passengers.

21  **REQUEST FOR PRODUCTION NO. 72:**

22         All Documents and Communications Concerning Uber's reaction to Transport of

23  London's 62-page report (¶ 283 of the Complaint), Including:

24                   a.   Changes to Policy for passenger safety and driver verification;

25                   b.   To the extent Uber has not changed its Policies, the reasons why Uber has

26                        not changed its Policies;

27                   c.   Whether any changes in Policies occurred in any other jurisdiction; and

28

1          d.  Any legal action Uber has taken, or anticipates taking, to narrow, limit,

2              strike, or abrogate any requirement to comply with the report or appeals or

3              actions taken to overturn London's ban.

4  **REQUEST FOR PRODUCTION NO. 73:**

5      All Documents and Communications Concerning reports, notices, lawsuits, complaints,

6  non-privileged portions of legal files, and other references of Uber Employees being sexually

7  harassed or assaulted in in connection with their employment.

8  **REQUEST FOR PRODUCTION NO. 74:**

9      All Documents and Communications Concerning former U.S. Attorney General Eric

10  Holder's internal investigation into Uber, Including:

11         a.  Any reports and draft reports;

12         b.  All Communications between Eric Holder, or his representatives, and any

13             Uber Employee;

14         c.  All notes taken, Including notes from approximately 200 interviews with

15             current and former Employees;

16         d.  All Documents flagged, pulled, marked, or otherwise reviewed,  relied on

17             or referenced in any report or draft report;

18         e.  All recommendations Eric Holder gave to Uber; and

19         f.  Uber's attempts, or actual compliance, with the recommendations

20             Including when Uber first sought to comply with the recommendations

21             and when Uber fully complied with the recommendations.

22  **REQUEST FOR PRODUCTION NO. 75:**

23      All Documents and Communications Concerning Uber's layoff of approximately 400

24  marketing Employees on or about July 29, 2019, Including:

25         a.  The reasons the layoffs occurred;

26         b.  When Uber first determined that a layoff was necessary;

27         c.  The financial impact of those layoffs; and

28

1             d.   The number of Employees that remained in the marketing department

2                 immediately after the layoffs.

3  **REQUEST FOR PRODUCTION NO. 76:**

4        All Documents and Communications Concerning Uber's layoff of approximately 435

5  Employees on or about September 10, 2019, Including:

6             a.   The reasons the layoffs occurred;

7             b.   When Uber first determined that a layoff was necessary;

8             c.   The financial impact of those layoffs;

9             d.   The number of Employees laid off from the product team;

10            e.   The number of Employees remaining on the product team immediately

11                after layoffs;

12             f.   The number of Employees laid off from the engineering team; and

13            g.   The number of Employees remaining on the engineering team

14                immediately after the layoffs.

15  **REQUEST FOR PRODUCTION NO. 77:**

16        All Documents and Communications Concerning Uber's layoff of approximately 350

17  Employees on or about October 14, 2019, Including:

18             a.   The reasons the layoffs occurred;

19            b.   When Uber first determined that a layoff was necessary;

20            c.   The financial impact of those layoffs;

21            d.   The number of Employees laid off by team or department; and

22            e.   The number of Employees remaining by team or department immediately

23                after layoffs.

24  **REQUEST FOR PRODUCTION NO. 78:**

25        All Documents and Communications Concerning the removal of Travis Kalanick as

26  Chief Executive Officer ("CEO") of Uber, Including termination letters, severance agreements,

27

28

1   internal statements to Uber Employees, materials analyzed by the board of directors, and the

2   reasons why Travis Kalanick was removed as the CEO of Uber.

3   **REQUEST FOR PRODUCTION NO. 79:**

4       All Documents and Communications Concerning the search for a new CEO to replace

5   Travis Kalanick.

6   **REQUEST FOR PRODUCTION NO. 80:**

7       All Documents and Communications Concerning the hiring of Dara Khosrowshahi,

8   Including offer letters, internal statements to Uber Employees, materials reviewed by the board

9   of directors and the reasons why Dara Khosrowshahi was hired to be the  CEO of Uber.

10  **REQUEST FOR PRODUCTION NO. 81:**

11      All Documents and Communications Concerning the creation, execution, and cessation

12  of "cultural norms" or other Uber Policy that had any connection with the hiring of Dara

13  Khosrowshahi or the replacement of Travis Kalanick.

14  **REQUEST FOR PRODUCTION NO. 82:**

15      All Documents and Communications Concerning the resignation, termination, or removal

16  of Chief Marketing Officer Rebecca Messina, Including when Uber first began contemplating

17  the removal of Rebecca Messina and any Communications between any Uber Employee and

18  Rebecca Messina regarding her removal from Uber.

19  **REQUEST FOR PRODUCTION NO. 83:**

20      All Documents and Communications Concerning the underlying data and information

21  used, or relied on, to make the statements in the Offering Documents as specifically quoted in ¶¶

22  154-166, 169-175, 178-184, 187-192, 194-197, and 200-202 of the Complaint.

23  **REQUEST FOR PRODUCTION NO. 84:**

24      All Documents and Communication between Uber and the New York Times Concerning

25  the article "Uber's $1-per-ride 'safe ride fees' had nothing to do with safety" as alleged in ¶249

26  of the Complaint.

27

28

**REQUEST FOR PRODUCTION NO. 85:**

All Documents You intend to rely upon in opposing Lead Plaintiff's motion for class certification in the Action.

**REQUEST FOR PRODUCTION NO. 86:**

All Documents Concerning any of Defendants' claims or defenses in this Action including all Documents that Defendants intend to rely upon in this Action.

**REQUEST FOR PRODUCTION NO. 87:**

All Documents received in response to formal or informal Document requests or subpoenas to any non-parties to this Action with respect to this Action.

**REQUEST FOR PRODUCTION NO. 88:**

All Documents you considered, received or referenced in drafting responses to or identified in response to any interrogatory propounded to You in this Action.

**REQUEST FOR PRODUCTION NO. 89:**

All Documents you considered, received or referenced in drafting responses to or identified in response to any requests for admissions propounded to You in this Action.

**REQUEST FOR PRODUCTION NO. 90:**

All Documents and information Your expert(s) reviewed, considered and/or relied upon to form any expert opinions in this Action.

**REQUEST FOR PRODUCTION NO. 91:**

All Documents and Communications concerning Uber's "Safe Rides Fee," Including:

      a.   When the fee was instituted;

      b.   Why the fee was instituted;

      c.   Whether the fee still exists;

      d.   If the fee no longer exists, why the fee was removed; and

      e.   All underlying data and information showing flow of monies received as part of the fee to any particular area within the company that the fee was purportedly intended for.

1   **REQUEST FOR PRODUCTION NO. 92:**

2       All Documents and Communications Concerning the time period in Uber used, exercised,

3   employed, or implemented "Greyball."

4

5

6

7

8   Dated:      November 3, 2020          LABATON SUCHAROW LLP

9
                                          By:    /s/ Alfred L. Fatale III_____
10                                              Alfred L. Fatale III

11                                        *Lead Counsel for Lead Plaintiff*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  Jonathan Gardner (admitted *pro hac vice*)
   Alfred L. Fatale III (admitted *pro hac vice*)
2  Joseph N. Cotilletta (admitted *pro hac vice*)
   Marco A. Duenas (admitted *pro hac vice*)
3  LABATON SUCHAROW LLP
   140 Broadway
4  New York, New York 10005
   Telephone: (212) 907-0700
5  Facsimile: (212) 818-0477
   Email: jgardner@labaton.com
6          afatale@labaton.com
           jcotilletta@labaton.com
7          mduenas@labaton.com

8  *Lead Counsel for Lead Plaintiff Boston Retirement System*

9                     **UNITED STATES DISTRICT COURT**

10                    **NORTHERN DISTRICT OF CALIFORNIA**

11                        **SAN FRANCISCO DIVISION**

12

13  BOSTON RETIREMENT SYSTEM,
    Individually and On                          Case No:  3:19-cv-06361-RS
    Behalf of All Others Similarly Situated,
14                                               **CERTIFICATE OF SERVICE**
                              Plaintiffs,
15        v.                                     **Courtroom:**  No. 3 – 17th Floor
                                                 **Judge:**      Hon. Richard Seeborg
16  UBER TECHNOLOGIES, INC., et al.,

17                            Defendants.

18

19

20

21

22

23

24

25

26

27

28

1

## CERTIFICATE OF SERVICE

2      I am a citizen of the United States and a member of the bar of the state of New York.  I

3   am over the age of eighteen years, and not a party to the within Action.  My business address is

4   Labaton Sucharow LLP, 140 Broadway, New York, NY 10005.  My e-mail address is

5   jcotilletta@labaton.com.  On the date set forth below, I served the following documents in the

6   manner described below:

7        • **LEAD PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF
           DOCUMENTS TO DEFENDANTS**

8

9   ☒      **BY ELECTRONIC MAIL** – Based on a court order or agreement of the parties
           to accept service by e-mail or electronic transmission, I caused such documents

10         described herein to be sent to the persons at the e-mail addresses listed below. I
           did not receive, within a reasonable time after the transmission, any electronic

11         message or other indication that the transmission was unsuccessful.

12
    on the following parties in this Action:
13

Patrick D. Robbins (SBN 152288)              Todd G. Cosenza (admitted *pro hac vice*)
14  Daniel H.R. Laguardia (SBN 314654)       **WILLKIE FARR & GALLAGHER LLP**
    Emily V. Griffen (SBN 209162)             787 Seventh Avenue
15  George B. Adams, III (SBN 321090)         New York, NY 10019-6099
    **SHEARMAN & STERLING LLP**              Telephone: (212) 728-8677
16  535 Mission Street, 25th Floor            Fax: (212) 728-9677
    San Francisco, CA 94105-2997              tcosenza@willkie.com
17  Telephone: (415) 616-1100
    Facsimile: (415) 616-1199                 Simona Agnolucci (CA 246943)
18  probbins@shearman.com                    **WILLKIE FARR & GALLAGHER LLP**
    daniel.laguardia@shearman.com             One Front Street
19  egriffen@shearman.com                     San Francisco, CA 94111
    george.adams@shearman.com                 Telephone: (415) 858-7447
20                                            Fax: (415) 858-7599
                                              sagnolucci@willkie.com
21
                                              Joseph G. Davis (CA 157764)
22                                           **WILLKIE FARR & GALLAGHER LLP**
                                              1875 K Street, N.W.
23                                            Washington, DC 20006-1238
                                              Telephone: (202) 303-1131
24                                            Fax: (202) 303-2131
                                              jdavis@willkie.com
25

26      I declare under penalty of perjury under the laws of the State of California that the above

27   is true and correct.  Executed on November 3, 2020 in New York, New York.

28                                            */s/ Joseph N. Cotilletta*

C ERTIFICATE OF S ERVICE
C IVIL A CTION N O. 3:19-CV-06361-RS

1   Patrick D. Robbins (SBN 152288)
    Daniel H.R. Laguardia (SBN 314654)
2   Emily V. Griffen (SBN 209162)
    George B. Adams, III (SBN 321090)
3   SHEARMAN & STERLING LLP
    535 Mission Street, 25th Floor
4   San Francisco, CA  94105-2997
    Telephone: 415.616.1100
5   Facsimile: 415.616.1199
    Email: probbins@shearman.com
6          daniel.laguardia@shearman.com
           egriffen@shearman.com
7          george.adams@shearman.com

8   *Attorneys for Defendants Uber Technologies, Inc.,
    Dara Khosrowshahi, Nelson Chai, Glen*
9   *Ceremony, Ronald Sugar, Ursula Burns, Garrett*
    *Camp, Matt Cohler, Ryan Graves, Arianna*
10  *Huffington, Travis Kalanick, Wan Ling Martello,*
    *H.E. Yasir Al-Rumayyan, John Thain, and David*
11  *Trujillo*

12

13                  UNITED STATES DISTRICT COURT

14                 NORTHERN DISTRICT OF CALIFORNIA

15                    SAN FRANCISCO DIVISION

16  BOSTON RETIREMENT SYSTEM,              Case No. 3:19-cv-06361-RS
17  Individually and on behalf of all others similarly
    situated,
18                                         **UBER DEFENDANTS' AMENDED
                 Plaintiff,                RESPONSES AND OBJECTIONS TO
19                                         LEAD PLAINTIFF'S FIRST SET OF
            v.                             REQUESTS FOR PRODUCTION OF
20                                         DOCUMENTS**
    UBER TECHNOLOGIES, INC., et al.,
21                                          **Courtroom:**  No. 3 – 17th Floor
                 Defendants.                **Judge:**      Hon.  Richard Seeborg
22

23
    **Propounding Party: Lead Plaintiff Boston Retirement System**
24  **Responding Parties: Defendant Uber Technologies, Inc. and the Individual Defendants**
25  **Set: One**

26

27

28

---

**034**

1        Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Defendants Uber

2   Technologies, Inc. ("Uber") and Dara Khosrowshahi, Nelson Chai, Glen Ceremony, Ronald Sugar,

3   Ursula Burns, Garrett Camp, Matt Cohler, Ryan Graves, Arianna Huffington, Travis Kalanick, Wan

4   Ling Martello, H.E. Yasir Al-Rumayyan, John Thain and David Trujillo (the "Individual

5   Defendants" and, collectively with Uber, "Uber Defendants") hereby respond and object to Lead

6   Plaintiff's First Request for Production of Documents, dated November 3, 2020 ("Requests") as

7   follows:

8   **<u>PRELIMINARY STATEMENT</u>**

9        These responses are made solely for the purposes of the above-captioned action ("Action")

10   pursuant to Federal Rules of Civil Procedure 26 and 34.  Each response is subject to all objections

11   as to competence, relevance, materiality, propriety and admissibility, and any and all other

12   objections and grounds which would require the exclusion of any statement herein if the questions

13   were asked of, or any statements contained herein were made by, a witness present and testifying in

14   court, all of which objections and grounds are reserved and may be interposed at the time of trial.

15        These responses are made on the basis of information that is presently known and available

16   to Uber Defendants and their attorneys.  Uber Defendants reserve the right to continue their

17   discovery and investigation herein for the facts and supporting data which may reveal information,

18   which if it had been presently within Uber Defendants' knowledge, would be included in these

19   responses.  Consequently, the following responses are given without prejudice to Uber Defendants'

20   right to provide further responses if such information is subsequently discovered, and without

21   prejudice to use such evidence, whenever discovered, for any purpose.

22        Uber Defendants respond to the requests for production (together the "Requests" and each a

23   "Request") as they understand and interpret them in light of the issues framed in the pleadings in

24   this Action.  If Lead Plaintiff Boston Retirement System ("Lead Plaintiff") subsequently asserts an

25   interpretation of any individual Request that differs from Uber Defendants' understanding, Uber

26   Defendants reserve the right to supplement their responses and/or objections.

27        Uber Defendants reserve the right to refer to, conduct discovery with reference to, or offer

28   into evidence, any and all facts, information, evidence, documents and things developed in the

1   course of discovery and trial preparation, notwithstanding whether such facts, evidence,

2   information, documents and things are referenced in these responses.  However, Uber Defendants

3   assume no obligation to voluntarily supplement or amend these responses to reflect facts,

4   information, evidence, documents and/or things discovered following service of these responses.

5       Uber Defendants explicitly reserve the right to present additional facts and/or contentions

6   and to raise any applicable objections based upon information subsequently obtained and/or

7   evaluated in light of developments in the law, developments in this Action, or any other relevant

8   information that Uber Defendants may subsequently obtain.

9       Uber Defendants reserve the right to introduce at trial or deposition, or in opposition to any

10  motion or proceeding, any and all facts heretofore or hereafter produced by the parties in this Action

11  or by third parties.  Uber Defendants' responses are without prejudice to their right to establish at a

12  later date any additional or contrary facts that may be contained within or discovered as a result of

13  any subsequent review of documents or as a result of any subsequent review of discovery.

14                          **GENERAL OBJECTIONS**

15      These General Objections shall be, and hereby are, incorporated by reference into each

16  Specific Objection below as though set forth fully therein.

17      1.      Uber Defendants object to the Requests to the extent that they purport to impose

18  on Uber Defendants any requirement, burden, or discovery obligation other than or beyond that

19  set forth by the Federal Rules of Civil Procedure or other applicable rules of this Court.

20      2.      Uber Defendants object to each and every Request, including the Definitions

21  and Instructions, to the extent they seek to impose obligations that exceed or differ from those

22  required by the Federal Rules of Civil Procedure and the Local Rules of the United States District

23  Court for the Northern District of California, orders of the Court, or any other applicable law,

24  rule, or orders ("Applicable Law").

25      3.      Uber Defendants object to each and every Request, including the Definitions

26  and Instructions, on the grounds that Lead Plaintiff's 92 Requests for Production, many of which

27  contain numerous subparts, are excessive, oppressive, unduly burdensome, and calculated to

28  prejudice Uber Defendants.

4.          Uber Defendants object to each and every Request, including the Definitions and Instructions, to the extent they seek information that is unreasonably cumulative or duplicative, is not relevant to any claims in this Action and not proportional to the needs of this Action, or can be obtained from some other source that is more convenient, less burdensome or less expensive, or that is publicly available.  Uber Defendants' responses to the Requests are made expressly subject to, and without waiving or intending to waive, any questions or objections as to competence, relevance, materiality, privilege, or other questions concerning admissibility in any proceeding.

5.          Uber Defendants object to each and every Request, including the Definitions and Instructions, to the extent they are vague, ambiguous, overbroad, unduly burdensome, fail to describe the information sought with the required particularity, and/or are so unintelligible that Uber Defendants cannot respond, including to the extent they seek "all" documents and/or communications concerning the subject matters referenced therein.

6.          Uber Defendants object to each and every Request, including the Definitions and Instructions, to the extent they purport to impose an obligation on Uber Defendants to conduct anything beyond a reasonable and diligent search of readily accessible files (including electronic files) where responsive documents reasonably would be expected to be found.  Subject to the objections stated herein, Uber Defendants will search only the readily accessible and centrally located files of individuals whom they reasonably believe may have relevant documents. Any Requests that seek to require Uber Defendants to go beyond such a search are overbroad and unduly burdensome.

7.          Uber Defendants object to each and every Request, including the Definitions and Instructions, to the extent they purport to require production of documents that are public, already in Lead Plaintiff's possession, or otherwise available from sources to which Lead Plaintiff also has access, including but not limited to documents maintained by other defendants in this Action.

8.          Uber Defendants object to each and every Request, including the Definitions and Instructions, to the extent they purport to impose upon Uber Defendants a duty to secure and

1    produce documents that they do not have in their possession, custody, or control.  Uber

2    Defendants' responses and objections shall not be construed as representations regarding the

3    existence or non-existence of specific documents in their possession, custody, or control.

4         9.    Uber Defendants object to each and every Request, including the Definitions

5    and Instructions, to the extent they purport to seek discovery of documents that are in the

6    possession, custody, or control of entities having corporate identities separate and apart from

7    Uber such that those documents are not in Uber Defendants possession, custody, or control.  Uber

8    Defendants will only secure and produce documents in their possession, custody, or control.

9         10.   Uber Defendants object to each and every Request, including the Definitions

10   and Instructions, to the extent they seek documents protected by the attorney-client privilege, the

11   work product doctrine, the joint defense or common interest doctrine and/or any other privilege or

12   immunity from production.  Any inadvertent disclosure of privileged or protected documents or

13   information shall not constitute a waiver of any such privilege, protection, doctrine or immunity.

14   Uber Defendants further object to each and every Request to the extent that they would result in

15   the disclosure of information in violation of privacy rights or obligations under any constitutional,

16   statutory or common law rights of privacy.  To the extent that any Request seeks such privileged

17   or protected information, Uber Defendants will not knowingly provide it.  Moreover, to the extent

18   Uber Defendants inadvertently provide information protected from disclosure, Uber Defendants

19   do not waive their right, pursuant to Applicable Law, to assert those privileges, protections and/or

20   objections to disclosure and to seek prompt return of any such information.

21        11.   Uber Defendants object to the each and every Request, including the Definitions

22   and Instructions, to the extent they seek disclosure of sensitive, confidential or proprietary

23   business information, client information, customer information and/or trade secret information

24   pursuant to California Civil Code Section 3426 et seq., and/or applicable state and federal law.

25        12.   Whenever Uber Defendants agree to produce documents in response to a

26   Request, such a response does not constitute a representation that responsive documents exist or

27   that Uber Defendants will search all files maintained by any person, but only that responsive

28   documents will be produced if they exist and can be located with a reasonable and diligent search

of readily accessible files where responsive documents reasonably would be expected to be found, and are not otherwise protected from disclosure. Uber Defendants agree to meet and confer regarding the scope of the search they agree to conduct and to otherwise comply with the applicable provisions of the Stipulated Order Re: Discovery of Electronically Stored Information (ECF No. 114) and Stipulated Protective Order for Standard Litigation (ECF No. 113) entered in this case.

13.     By agreeing to search for documents, Uber Defendants do not concede that any Request seeks information that is relevant to a claim or defense in this Action, nor that the Request seeks information that is proportional to the needs of this Action. Uber Defendants expressly reserve all further objections as to the admissibility of the information provided, including at trial, as well as the right to object to further discovery relating to the subject matter of any information provided.

14.     Uber Defendants object to each and every Request, including the Definitions and Instructions, to the extent they are argumentative, lack foundation or incorporate allegations and assertions that are disputed and erroneous. By responding and objecting to a particular Request, Uber Defendants do not admit the correctness of such assertions.

15.     Uber Defendants object to each and every Request, including the Definitions and Instructions, to the extent Lead Plaintiff intends to share documents produced by Uber Defendants in response to the Requests, if any, with others not party to this Action in a manner that is inconsistent with Stipulated Protective Order for Standard Litigation (ECF No. 113).

16.     Uber Defendants object to each and every Request, including the Definitions and Instructions, to the extent they purport to impose upon Uber Defendants an obligation to preserve any documents or Electronically Stored Information ("ESI") because, due to the ambiguities and deficiencies in the Requests noted herein, Uber Defendants are currently unable, without undue burden and expense, to determine what documents or information should, pursuant to the terms of the Requests, be preserved or maintained outside of Uber's record retention policies, if any. Moreover, even if Uber Defendants were able to ascertain which categories of documents or information to preserve for the Requests, because of the defects in the Requests,

1  efforts to preserve such documents or information would require undue burden and unreasonable

2  expense.  Without waiving the above objections, if and when Uber Defendants are able to

3  ascertain and limit the scope of the Requests, Uber Defendants will take any additional

4  reasonable steps, if any are required, to ensure the documents responsive to the Requests are

5  preserved.

6      17.    Uber Defendants object to each and every Request, including the Definitions

7  and Instructions, to the extent they purport to impose an obligation to preserve and/or produce

8  any documents or information that are newly created or received after the receipt of the Requests

9  because efforts to preserve and/or produce such documents or information would require undue

10 burden and unreasonable expense.

11     18.    Uber Defendants object to each and every Request, including the Definitions

12 and Instructions, to the extent they purport to impose on Uber Defendants any ESI preservation

13 obligation not included within Stipulated Order Re: Discovery of Electronically Stored

14 Information (ECF No. 114) and Stipulated Protective Order for Standard Litigation (ECF No.

15 113) entered in this case.

16     19.    Uber Defendants object to each and every Request, including the Definitions

17 and Instructions, to the extent they purport to require Uber Defendants to create or generate

18 documents that do not currently exist.

19     20.    To the extent that the Requests, including the Definitions and Instructions,

20 purport to seek discovery from Uber's offices or those of its parents, affiliates or subsidiaries

21 located outside the United States, Uber Defendants object on the grounds that such discovery (a)

22 is beyond the scope of Applicable Law; (b) would violate the secrecy and privacy laws of foreign

23 sovereigns; (c) seeks to circumvent the provisions of the Hague Convention on Taking Evidence

24 Abroad in Civil and Commercial Matters and/or any other applicable convention or treaty by

25 calling for discovery of documents without utilizing the Convention and/or any other applicable

26 convention or treaty with respect to documents that may be located in countries that are

27 signatories to the Convention and/or any other applicable convention or treaty; and (d) purports to

28

1    require Uber, which has hundreds of offices worldwide, to search all of those offices, which is

2    unduly burdensome.

3          21.    Uber Defendants object to each and every Request, including the Definitions

4    and Instructions, to the extent they seek the production of "[a]ll documents" or "[a]ll documents

5    and communications" pertaining to a specific subject, or use similar language, on the grounds that

6    such requirements are overbroad and unduly burdensome and impose burdens different from or in

7    addition to those permitted under Applicable Law.

8          22.    Uber Defendants object to each and every Request, including the Definitions

9    and Instructions, to the extent they seek the disclosure of information that would violate a

10   confidentiality agreement or any other agreement between Uber Defendants and any individual or

11   entity.

12                      **OBJECTIONS TO DEFINITIONS**

13         The following Objections to Definitions apply to each of the numbered Requests whether or

14   not specifically referred to and/or incorporated in each response:

15         1.    Uber Defendants object to the Definitions to the extent that they seek to impose

16   obligations on them different from or greater than those imposed by Applicable Law.

17         2.    Uber Defendants object to the definitions of "Communication," "Document," and

18   "Person" as overbroad, unduly burdensome, vague and ambiguous, and purporting to impose

19   burdens that are greater than, more burdensome than, or inconsistent with the obligations imposed

20   by Applicable Law.

21         3.    Uber Defendants object to the definition of "Concerning" as overbroad, unduly

22   burdensome, vague and ambiguous, and purporting to impose burdens that are greater than, more

23   burdensome than, or inconsistent with the obligations imposed by Applicable Law.

24         4.    Uber Defendants object to the definition of "Document" (i) to the extent it purports

25   to require Uber Defendants to search for, review, or produce documents not in Uber Defendants'

26   possession, custody, or control; and (ii) on the grounds that it is overbroad and unduly burdensome.

27         5.    Uber Defendants object to the definition of "Uber" as overbroad and unduly

28   burdensome to the extent that it seeks information about or from inaccessible or unknown parties

and to the extent that it seeks information that is not reasonably known or obtainable by Uber Defendants. Uber Defendants further object to this definition's inclusion of "subsidiaries, divisions, or affiliates (foreign and domestic), predecessors, successors, and any present and former officers, directors, Employees (as defined herein), agents, representatives, members of its Board of Directors, accountants, attorneys, advisors, and all other persons and agents acting or purporting to act on its behalf" as overbroad and unduly burdensome, vague and ambiguous, and improperly requiring legal conclusions. Uber Defendants further object to this definition to the extent it purports to seek information from any entity that is uninvolved in any of the events or allegations at issue in this Action. In responding to these Requests, Uber Defendants will construe the term "Uber" to mean only Uber Technologies, Inc.

6.       Uber Defendants object to the definition of "You" and "Your" on the grounds that it is vague and ambiguous to the extent it purports to require Uber Defendants to search for, review, or produce documents not in Uber Defendants' possession, custody, or control. In responding to these Requests, Uber will construe the terms "You" and "Your" to mean Uber Technologies, Inc., and Uber and the Individual Defendants will only search for documents in their respective possession, custody, or control.

7.       Uber Defendants object to the definition of "Underwriter Defendants" because, by including in the definition individuals and entities purporting to act on the named parties' behalf, the definition is overbroad, unduly burdensome and calls for information that is neither related to the subject matter of this Action nor reasonably calculated to lead to the discovery of relevant information.

8.       Uber Defendants object to the definition of "Employee" or "Employees" as vague and ambiguous to the extent that it includes "any person who acted or purported to act on behalf of" others. Uber Defendants further object to this definition to the extent that it calls for legal conclusions with respect to the meaning of employment.

9.       Uber Defendants object to the definition of "Investors" as vague and ambiguous to the extent that it includes "all persons or entities who purchased or otherwise acquired Uber's publicly traded common stock."

1      10.      Uber Defendants object to the definition of "Policy" or "Policies" as vague,

2  ambiguous and burdensome to the extent it includes documents that are "informal, "unwritten,"

3  "unrecorded" and/or "known, recognized, or followed . . . implicitly." Uber Defendants will

4  interpret this Definition to encompass only formal policies and procedures created and maintained

5  by Uber Defendants in written form.

6      11.      Uber Defendants object to the definition of "Relevant Time Period"—from January

7  1, 2013, to the present, which is almost eight years long and includes several years before Uber

8  contemplated going public—as overbroad and unduly burdensome and to the extent it seeks

9  discovery of information that is neither relevant to Lead Plaintiff's claims nor reasonably calculated

10  to lead to the discovery of admissible evidence. Uber Defendants will interpret the Relevant Time

11  Period to be from December 6, 2018 until March 3, 2020, unless otherwise agreed by the parties.

12                      **OBJECTIONS TO INSTRUCTIONS**

13      The following Objections to the Instructions apply to each Request whether or not

14  specifically referred to and/or incorporated in each response.

15      1.      Uber Defendants object to the Instructions to the extent they purport to broaden the

16  obligations imposed by Applicable Law or any discovery protocols agreed upon by the parties.

17  Uber Defendants object to Instruction 3 in particular as overly burdensome.

18      2.      Uber Defendants object to Instructions 2 and 3 to the extent they purport to require

19  Uber Defendants to search for, review, or produce documents not in Uber Defendants' possession,

20  custody, or control. Uber Defendants will only search for documents in their possession, custody,

21  or control.

22      3.      Uber Defendants object to Instruction 3 to the extent it imposes an undue burden and

23  seeks information that is not relevant to this Action. To the extent good cause is shown for any

24  supplemental productions, Uber Defendants will meet and confer with Lead Plaintiff over a

25  reasonable time-frame for any document collection, production, and review.

26      4.      Uber Defendants object to the Instructions, including Instructions 1 and 4, to the

27  extent that they would result in the disclosure of information in violation of privacy rights or

28  obligations under any constitutional, statutory, or common law rights of privacy. To the extent that

1  any Request seeks such privileged or protected information, Uber Defendants will not knowingly

2  provide it.

3       5.     In the event Uber Defendants determine that document(s) have been altered,

4  destroyed, or otherwise disposed of, then they will meet and confer with Lead Plaintiff to discuss

5  what information, if any, will be provided.

6  **SPECIFIC OBJECTIONS AND RESPONSES TO REQUESTS FOR DOCUMENTS**

7  **Request No. 1:**

8       *All Documents and Communications Concerning the IPO.*

9  **Response to Request No. 1:**

10       In addition to the General Objections, Objections to Definitions, and Objections to

11  Instructions, each of which is incorporated herein by reference, Uber Defendants object to this

12  Request as overbroad, redundant of other requests, unduly burdensome, not reasonably tailored to

13  Lead Plaintiff's claims related to specific alleged misrepresentations in Uber's IPO Registration

14  Statement and Prospectus, as well as to the extent it calls for a legal conclusion, and to the extent it

15  seeks information that is not relevant to any claims or defenses in the suit nor reasonably calculated

16  to lead to the discovery of admissible evidence.  Uber Defendants further object to this Request to

17  the extent that it seeks documents protected by the attorney-client privilege, the work product

18  doctrine, the joint defense or common interest doctrine and/or any other privilege or immunity from

19  production.

20       Subject to and without waiving these objections, Uber Defendants are prepared to meet and

21  confer with Lead Plaintiff to discuss whether the Request can be sufficiently narrowed and, subject

22  to such discussions, agree to produce relevant non-privileged documents located upon a reasonable

23  search of custodians and readily accessible files or other central locations where responsive

24  documents are likely to be found.

25  **Request No. 2:**

26       *All Documents and Communications Concerning the Offering Documents or Uber's other*
     *public disclosures issued in connection with the IPO.*

27

28

**Response to Request No. 2:**

In addition to the General Objections, Objections to Definitions, and Objections to Instructions, each of which is incorporated herein by reference, Uber Defendants object to this Request as overbroad, redundant of other requests, unduly burdensome, not reasonably tailored to Lead Plaintiff's claims related to specific alleged misrepresentations in Uber's IPO Registration Statement and Prospectus, as well as to the extent it calls for a legal conclusion, and to the extent it seeks information that is not relevant to any claims or defenses in the suit nor reasonably calculated to lead to the discovery of admissible evidence. Uber Defendants further object to this Request as duplicative of Request No. 1. Uber Defendants further object to this Request to the extent that it seeks documents protected by the attorney-client privilege, the work product doctrine, the joint defense or common interest doctrine and/or any other privilege or immunity from production.

Subject to and without waiving these objections, Uber Defendants are prepared to meet and confer with Lead Plaintiff to discuss whether the Request can be sufficiently narrowed and, subject to such discussions, agree to produce relevant non-privileged documents located upon a reasonable search of custodians and readily accessible files or other central locations where responsive documents are likely to be found.

**Request No. 3:**

*All Documents and Communications Concerning any actual or considered disclosures in the Offering Documents with respect to:*

*a.   Uber's expected quarterly and yearly financial results;*

*b.   Uber's growth;*

*c.   New users, MAPCs, and trips;*

*d.   Changes in approach to and spending for Marketing;*

*e.   Safety, including safety to passengers and drivers;*

*f.   Driver employment classification;*

*g.   Lack of, or improper, licenses for drivers;*

*h.   Lack of, or improper, registrations for vehicles;*

*i.   Lack of, or improper, permits or other Government-issued approvals to commence or maintain operations in a given locality;*

j.      *Potential and actual layoffs of Uber Employees;*

k.      *Any potential risk to Uber's revenues or other financial metrics or results;*

l.      *Actions taken or not taken to alter Uber's business practices since November 1, 2017;*

m.     *Any other data used to create the content of the Offering Documents; or*

n.      *Any Communication with the SEC regarding the Prospectus, Registration Statement and/or Offering circular, Including any comment letters received from the SEC and any Communications related thereto.*

**Response to Request No. 3:**

In addition to the General Objections, Objections to Definitions, and Objections to Instructions, each of which is incorporated herein by reference, Uber Defendants object to this Request as overbroad, redundant of other requests, unduly burdensome, not reasonably tailored to Lead Plaintiff's claims related to specific alleged misrepresentations in Uber's IPO Registration Statement and Prospectus, as well as to the extent it calls for a legal conclusion, and to the extent it seeks information that is not relevant to any claims or defenses in the suit nor reasonably calculated to lead to the discovery of admissible evidence.  Uber Defendants object to the use of certain terms in this Request as vague and ambiguous, including "Uber's growth," "trips," "changes in approach to and spending for Marketing," "safety," "safety to passengers and drivers," "driver employment classification," "improper," "licenses for drivers,"  "registrations for vehicles," "permits or other Government-issued approvals to commence or maintain operations," "locality," "potential and actual layoffs of Uber employees," "potential risk to Uber's sales or other financial metrics or results," "other financial metrics or results," "actions taken or not taken to alter Uber's business practices," "any," and "data."  Uber Defendants further object to this Request to the extent that it seeks documents protected by the attorney-client privilege, the work product doctrine, the joint defense or common interest doctrine and/or any other privilege or immunity from production.

Subject to and without waiving these objections, Uber Defendants are prepared to meet and confer with Lead Plaintiff to discuss whether the Request can be sufficiently narrowed and, subject to such discussions, agree to produce relevant non-privileged documents located upon a reasonable search of custodians and readily accessible files or other central locations where responsive documents are likely to be found.

**Request No. 4:**

> *All presentations, analyses, and reports Concerning financing alternatives for Uber and the selection of the underwriters for the IPO (a.k.a. the "bakeoff").*

**Response to Request No. 4:**

In addition to the General Objections, Objections to Definitions, and Objections to Instructions, each of which is incorporated herein by reference, Uber Defendants object to this Request on the ground that it seeks information that is not relevant to any claims or defenses in the suit nor reasonably calculated to lead to the discovery of admissible evidence.  Uber Defendants object to the use of certain terms in this Request as vague and ambiguous, including "presentations, analyses, and reports," "financing alternatives," and "bakeoff."  Uber Defendants further object to this Request to the extent that it seeks documents protected by the attorney-client privilege, the work product doctrine, the joint defense or common interest doctrine and/or any other privilege or immunity from production.  Uber Defendants object to this Request to the extent it calls for a legal conclusion.

Based upon the foregoing objections, Uber Defendants will not produce documents in response to this Request.

**Request No. 5:**

> *All Documents and Communications Concerning any actual or considered disclosure of any "known trends or uncertainties" pursuant to Item 303 of Regulation S-K in the Offering Documents.*

**Response to Request No. 5:**

In addition to the General Objections, Objections to Definitions, and Objections to Instructions, each of which is incorporated herein by reference, Uber Defendants object to this Request as overbroad, redundant of other requests, unduly burdensome, not reasonably tailored to Lead Plaintiff's claims related to specific alleged misrepresentations in Uber's IPO Registration Statement and Prospectus, as well as to the extent it calls for a legal conclusion, and to the extent it seeks information that is not relevant to any claims or defenses in the suit nor reasonably calculated to lead to the discovery of admissible evidence.  Uber Defendants further object to this Request to the extent that it seeks documents protected by the attorney-client privilege, the work product doctrine, the joint defense or common interest doctrine and/or any other privilege or immunity from

production.  Uber Defendants further object to the use of the term "known trends or uncertainties"

on the ground that it calls for a legal conclusion.

Subject to and without waiving these objections, Uber Defendants are prepared to meet and

confer with Lead Plaintiff to discuss whether the Request can be sufficiently narrowed and, subject

to such discussions, agree to produce relevant non-privileged documents located upon a reasonable

search of custodians and readily accessible files or other central locations where responsive

documents are likely to be found.

**Request No. 6:**

> *All Documents and Communications Concerning any actual or considered disclosure of "the most significant factors that make the Offering speculative or risky" pursuant to Item 503 of Regulation S-K in the Offering Documents.*

**Response to Request No. 6:**

In addition to the General Objections, Objections to Definitions, and Objections to

Instructions, each of which is incorporated herein by reference, Uber Defendants object to this

Request as overbroad, redundant of other requests, unduly burdensome, not reasonably tailored to

Lead Plaintiff's claims related to specific alleged misrepresentations in Uber's IPO Registration

Statement and Prospectus, as well as to the extent it calls for a legal conclusion, and to the extent it

seeks information that is not relevant to any claims or defenses in the suit nor reasonably calculated

to lead to the discovery of admissible evidence.  Uber Defendants object to the use of certain terms

in this Request as vague and ambiguous, including "actual or considered disclosure."  Uber

Defendants further object to the use of the term "most significant factors" on the grounds that it

calls for a legal conclusion.  Uber Defendants further object to this Request to the extent that it

seeks documents protected by the attorney-client privilege, the work product doctrine, the joint

defense or common interest doctrine and/or any other privilege or immunity from production.

Subject to and without waiving these objections, Uber Defendants are prepared to meet and

confer with Lead Plaintiff to discuss whether the Request can be sufficiently narrowed and, subject

to such discussions, agree to produce relevant non-privileged documents located upon a reasonable

search of custodians and readily accessible files or other central locations where responsive

documents are likely to be found.

**Request No. 7:**

> *All Documents and Communications Concerning setting the price of Uber's shares in the IPO.*

**Response to Request No. 7:**

In addition to the General Objections, Objections to Definitions, and Objections to Instructions, each of which is incorporated herein by reference, Uber Defendants object to this Request on the ground that it seeks information that is not relevant to any claims or defenses in the suit nor reasonably calculated to lead to the discovery of admissible evidence.  Uber Defendants further object to this Request as vague and ambiguous with respect to its use of the phrase "setting the price of Uber's shares in the IPO."  Uber Defendants further object to this Request to the extent that it seeks documents protected by the attorney-client privilege, the work product doctrine, joint defense or common interest doctrine and/or any other privilege or immunity from production.  Uber Defendants object to this Request to the extent it calls for a legal conclusion.

Based upon the foregoing objections, Uber Defendants will not produce documents in response to this Request.

**Request No. 8:**

> *All Documents and Communications Concerning the size of the IPO.*

**Response to Request No. 8**

In addition to the General Objections, Objections to Definitions, and Objections to Instructions, each of which is incorporated herein by reference, Uber Defendants object to this Request on the ground that it seeks information that is not relevant to any claims or defenses in the suit nor reasonably calculated to lead to the discovery of admissible evidence.  Uber Defendants further object to this Request as vague and ambiguous with respect to its use of the term "size of the IPO."  Uber Defendants further object to this Request to the extent that it seeks documents protected by the attorney-client privilege, the work product doctrine, the joint defense or common interest doctrine and/or any other privilege or immunity from production.  Uber Defendants object to this Request to the extent it calls for a legal conclusion.

1    Based upon the foregoing objections, Uber Defendants will not produce documents in

2    response to this Request.

3    **Request No. 9:**

4    *All Documents and Communications Concerning the allocation of shares in the IPO.*

5    **Response to Request No. 9:**

6    In addition to the General Objections, Objections to Definitions, and Objections to

7    Instructions, each of which is incorporated herein by reference, Uber Defendants object to this

8    Request on the ground that it seeks information that is not relevant to any claims or defenses in the

9    suit nor reasonably calculated to lead to the discovery of admissible evidence.  Uber Defendants

10   further object to this Request to the extent that it seeks documents protected by the attorney-client

11   privilege, the work product doctrine, the joint defense or common interest doctrine, and/or any other

12   privilege or immunity from production.  Uber Defendants further object to this Request as vague

13   and ambiguous with respect to its use of the term "allocation of shares."  Uber Defendants object to

14   this Request to the extent it calls for a legal conclusion.

15   Based upon the foregoing objections, Uber Defendants will not produce documents in

16   response to this Request.

17   **Request No. 10:**

18   *All Documents and Communications Concerning the timing of the IPO.*

19   **Response to Request No. 10:**

20   In addition to the General Objections, Objections to Definitions, and Objections to

21   Instructions, each of which is incorporated herein by reference, Uber Defendants object to this

22   Request on the ground that it seeks information that is not relevant to any claims or defenses in the

23   suit nor reasonably calculated to lead to the discovery of admissible evidence.  Uber Defendants

24   further object to this Request to the extent that it seeks documents protected by the attorney-client

25   privilege, the work product doctrine, the joint defense or common interest doctrine and/or any other

26   privilege or immunity from production.  Uber Defendants further object to this Request as vague

27   and ambiguous with respect to its use of the term "timing of the IPO."  Uber Defendants object to

28   this Request to the extent it calls for a legal conclusion.

1    Based upon the foregoing objections, Uber Defendants will not produce documents in

2   response to this Request.

3   **Request No. 11:**

4    *All Documents and Communications that You or any Defendant sent to, or received, from*
    *any securities analysts Concerning (a) Uber's expected quarterly and yearly financial*

5    *results; (b) Uber's growth; (c) new users, MAPCs and trips; (d) changes in approach to and*
    *spending for Marketing; (e) safety, including safety to passengers and drivers; (f) driver*

6    *employment classification; (g) lack of, or improper, licenses for drivers; (h) lack of, or*
    *improper, registrations for vehicles; (i) lack of, or improper, permits or other Government-*

7    *issued approvals to commence or maintain operations in a given locality; (j) potential and*
    *actual layoffs of Uber Employees; (k) any potential risk to Uber's revenues or other*

8    *financial metrics or results; (l) actions taken or not taken to alter Uber's business practices*
    *since November 1, 2017; (m) any other data used to create the content of the Offering*

9    *Documents; (n) the IPO; or (o) the Offering Documents.*

10  **Response to Request No. 11:**

11    In addition to the General Objections, Objections to Definitions, and Objections to

12  Instructions, each of which is incorporated herein by reference, Uber Defendants object to this

13  Request as overbroad, redundant of other requests, unduly burdensome, not reasonably tailored to

14  Lead Plaintiff's claims related to specific alleged misrepresentations in Uber's IPO Registration

15  Statement and Prospectus, as well as to the extent it calls for a legal conclusion, and to the extent it

16  seeks information that is not relevant to any claims or defenses in the suit nor reasonably calculated

17  to lead to the discovery of admissible evidence.  Uber Defendants object to the use of certain terms

18  in this Request as vague and ambiguous, including "any securities analysts," "Uber's growth,"

19  "trips," "changes in approach to and spending for Marketing," "safety," "safety to passengers and

20  drivers," "driver employment classification," "improper," "licenses for drivers,"  "registrations for

21  vehicles," "permits or other Government-issued approvals to commence or maintain operations,"

22  "locality," "potential and actual layoffs of Uber employees," "potential risk to Uber's sales or other

23  financial metrics or results," "other financial metrics or results," "actions taken or not taken to alter

24  Uber's business practices," "any," and "data."  Uber Defendants further object to this Request to the

25  extent it seeks information that is more easily obtainable by deposition.  Uber Defendants further

26  object to this Request to the extent that it seeks documents protected by the attorney-client

27  privilege, the work product doctrine, the joint defense or common interest doctrine and/or any other

28  privilege or immunity from production.

Subject to and without waiving these objections, Uber Defendants are prepared to meet and confer with Lead Plaintiff to discuss whether the Request can be sufficiently narrowed and, subject to such discussions, agree to produce relevant non-privileged documents located upon a reasonable search of custodians and readily accessible files or other central locations where responsive documents are likely to be found.

**Request No. 12:**

> All Documents and Communications that You or any Defendant sent to, or received from New York Stock Exchange Concerning the IPO or the Offering Documents.

**Response to Request No. 12:**

In addition to the General Objections, Objections to Definitions, and Objections to Instructions, each of which is incorporated herein by reference, Uber Defendants object to this Request as overbroad, redundant of other requests, unduly burdensome, not reasonably tailored to Lead Plaintiff's claims related to specific alleged misrepresentations in Uber's IPO Registration Statement and Prospectus, as well as to the extent it calls for a legal conclusion, and to the extent it seeks information that is not relevant to any claims or defenses in the suit nor reasonably calculated to lead to the discovery of admissible evidence. Uber Defendants further object to this Request to the extent that it seeks documents protected by the attorney-client privilege, the work product doctrine, the joint defense or common interest doctrine and/or any other privilege or immunity from production.

Subject to and without waiving these objections, Uber Defendants agree to produce relevant non-privileged documents located upon a reasonable search of custodians and readily accessible files or other central locations where responsive documents are likely to be found.

**Request No. 13:**

> All Documents and Communications with any Investor or potential Investor Concerning the IPO or the Offering Documents.

**Response to Request No. 13:**

In addition to the General Objections, Objections to Definitions, and Objections to Instructions, each of which is incorporated herein by reference, Uber Defendants further object to this Request as overbroad, redundant of other requests, unduly burdensome, not reasonably tailored

to Lead Plaintiff's claims related to specific alleged misrepresentations in Uber's IPO Registration Statement and Prospectus, as well as to the extent it calls for a legal conclusion, and to the extent it seeks information that is not relevant to any claims or defenses in the suit nor reasonably calculated to lead to the discovery of admissible evidence.  Uber Defendants object to the use of certain terms in this Request as vague and ambiguous, including "potential Investor."  Uber Defendants further object to this Request to the extent that it seeks documents protected by the attorney-client privilege, the work product doctrine, the joint defense or common interest doctrine and/or any other privilege or immunity from production.

Subject to and without waiving these objections, Uber Defendants are prepared to meet and confer with Lead Plaintiff to discuss whether the Request can be sufficiently narrowed and, subject to such discussions, agree to produce relevant non-privileged documents located upon a reasonable search of custodians and readily accessible files or other central locations where responsive documents are likely to be found.

**Request No. 14:**

*All Documents and Communications Concerning any Road Show or identifying the Road Show's participants and attendees, Including any Documents and Communications Concerning Road Show materials, presentations, scripts, reports, analyses, or talking points created, reviewed or otherwise used in connection with the IPO.*

**Response to Request No. 14:**

In addition to the General Objections, Objections to Definitions, and Objections to Instructions, each of which is incorporated herein by reference, Uber Defendants object to this Request as overbroad, redundant of other requests, unduly burdensome, not reasonably tailored to Lead Plaintiff's claims related to specific alleged misrepresentations in Uber's IPO Registration Statement and Prospectus, as well as to the extent it calls for a legal conclusion, and to the extent it seeks information that is not relevant to any claims or defenses in the suit nor reasonably calculated to lead to the discovery of admissible evidence.  Uber Defendants further object to this Request to the extent that it seeks documents protected by the attorney-client privilege, the work product doctrine, the joint defense or common interest doctrine and/or any other privilege or immunity from production.

1    Subject to and without waiving these objections, Uber Defendants agree to produce relevant

2 non-privileged documents located upon a reasonable search of custodians and readily accessible

3 files or other central locations where responsive documents are likely to be found.

4 **Request No. 15:**

5   *All Documents and Communications Concerning any effort made by You or any other*
   *Person to sell, solicit, market, distribute, publicize, or promote the common stock sold in or*
6   *traceable to the IPO.*

7 **Response to Request No. 15:**

8    In addition to the General Objections, Objections to Definitions, and Objections to

9 Instructions, each of which is incorporated herein by reference, Uber Defendants object to this

10 Request as overbroad, redundant of other requests, unduly burdensome, not reasonably tailored to

11 Lead Plaintiff's claims related to specific alleged misrepresentations in Uber's IPO Registration

12 Statement and Prospectus, as well as to the extent it calls for a legal conclusion, and to the extent it

13 seeks information that is not relevant to any claims or defenses in the suit nor reasonably calculated

14 to lead to the discovery of admissible evidence.  Uber Defendants object to the use of certain terms

15 in this Request as vague and ambiguous, including "sell," "solicit," "market," "distribute,"

16 "publicize," and "promote."  Uber Defendants further object to this Request to the extent that it

17 seeks documents protected by the attorney-client privilege, the work product doctrine, the joint

18 defense or common interest doctrine and/or any other privilege or immunity from production.

19    Subject to and without waiving these objections, Uber Defendants are prepared to meet and

20 confer with Lead Plaintiff to discuss whether the Request can be sufficiently narrowed and, subject

21 to such discussions, agree to produce relevant non-privileged documents located upon a reasonable

22 search of custodians and readily accessible files or other central locations where responsive

23 documents are likely to be found.

24 **Request No. 16:**

25   *Trading records or other Documents showing purchases or sales of common stock sold in or*
   *traceable to the IPO, including the names of the purchasers and sellers, the quantities that*
26   *were purchased or sold, the trade dates, and the amounts paid or received for the purchases*
   *or sales.*

27

28

UBER DEFS' AM. RESPONSES & OBJECTIONS   20    CASE NO. 3:19-cv-06361-RS
TO LEAD PLAINTIFF'S 1ST SET OF RFPS

**054**

**Response to Request No. 16:**

In addition to the General Objections, Objections to Definitions, and Objections to Instructions, each of which is incorporated herein by reference, Uber Defendants object to this Request as overbroad, redundant of other requests, unduly burdensome, not reasonably tailored to Lead Plaintiff's claims related to specific alleged misrepresentations in Uber's IPO Registration Statement and Prospectus, as well as to the extent it calls for a legal conclusion, and to the extent it seeks information that is not relevant to any claims or defenses in the suit nor reasonably calculated to lead to the discovery of admissible evidence. Uber Defendants further object to the extent the Request requires Uber Defendants to produce documents that they do not have in their possession, custody, or control. Uber Defendants further object to this Request to the extent it would result in the disclosure of information in violation of privacy rights or obligations under any constitutional, statutory or common law rights of privacy. Uber Defendants further object to this Request to the extent that it seeks documents protected by the attorney-client privilege, the work product doctrine, the joint defense or common interest doctrine and/or any other privilege or immunity from production.

Subject to and without waiving these objections, Uber Defendants are prepared to meet and confer with Lead Plaintiff to discuss whether the Request can be sufficiently narrowed and, subject to such discussions, agree to produce relevant non-privileged documents located upon a reasonable search of custodians and readily accessible files or other central locations where responsive documents are likely to be found.

**Request No. 17:**

*All Documents and Communications Concerning any "comfort" or opinion letters from attorneys, auditors, accountants, or any other Person Concerning the IPO.*

**Response to Request No. 17:**

In addition to the General Objections, Objections to Definitions, and Objections to Instructions, each of which is incorporated herein by reference, Uber Defendants object to this Request as overbroad, redundant of other requests, unduly burdensome, not reasonably tailored to Lead Plaintiff's claims related to specific alleged misrepresentations in Uber's IPO Registration

Statement and Prospectus, as well as to the extent it calls for a legal conclusion, and to the extent it seeks information that is not relevant to any claims or defenses in the suit nor reasonably calculated to lead to the discovery of admissible evidence.  Uber Defendants further object to this Request to the extent that it seeks documents protected by the attorney-client privilege, the work product doctrine, the joint defense or common interest doctrine and/or any other privilege or immunity from production.  Uber Defendants object to the use of certain terms in this Request as vague and ambiguous, including "'comfort' or opinion letters" and "any other Person."

Subject to and without waiving these objections, Uber Defendants are prepared to meet and confer with Lead Plaintiff to discuss whether the Request can be sufficiently narrowed and, subject to such discussions, agree to produce relevant non-privileged documents located upon a reasonable search of custodians and readily accessible files or other central locations where responsive documents are likely to be found.

**Request No. 18:**

> *All Documents and Communications Concerning any compensation, fees, bonuses, expenses, reimbursements, costs, compensation, or other remuneration You paid to and/or received in connection with the IPO or other services provided to or on behalf of Uber.*

**Response to Request No. 18:**

In addition to the General Objections, Objections to Definitions, and Objections to Instructions, each of which is incorporated herein by reference, Uber Defendants object to this Request on the ground that it seeks information that is not relevant to any claims or defenses in the suit nor reasonably calculated to lead to the discovery of admissible evidence.  Uber Defendants further object to this Request to the extent that it seeks documents protected by the attorney-client privilege, the work product doctrine, the joint defense or common interest doctrine and/or any other privilege or immunity from production.  Uber Defendants object to the use of certain terms in this Request as vague and ambiguous, including "other remuneration You paid to and/or received" and "other services provided to or on behalf of Uber."  Uber Defendants further object to this Request to the extent it would result in the disclosure of information in violation of privacy rights or obligations under any constitutional, statutory or common law rights of privacy.  Uber Defendants object to this Request to the extent it calls for a legal conclusion.

1    Based upon the foregoing objections, Uber Defendants will not produce documents in

2  response to this Request.

3  **Request No. 19:**

4  *All Documents and Communications Concerning the Underwriter Defendants' exercise of
   the over-allotment or "green shoe," Including the decision to exercise the over-allotment.*

5  **Response to Request No. 19:**

6    In addition to the General Objections, Objections to Definitions, and Objections to

7  Instructions, each of which is incorporated herein by reference, Uber Defendants object to this

8  Request as overbroad, redundant of other requests, unduly burdensome, not reasonably tailored to

9  Lead Plaintiff's claims related to specific alleged misrepresentations in Uber's IPO Registration

10 Statement and Prospectus, as well as to the extent it calls for a legal conclusion, and to the extent it

11 seeks information that is not relevant to any claims or defenses in the suit nor reasonably calculated

12 to lead to the discovery of admissible evidence.  Uber Defendants object to the use of certain terms

13 in this Request as vague and ambiguous, including "over-allotment," "green shoe" and "decision to

14 exercise."  Uber Defendants further object to this Request to the extent that it seeks documents

15 protected by the attorney-client privilege, the work product doctrine, the joint defense or common

16 interest doctrine and/or any other privilege or immunity from production.

17    Subject to and without waiving these objections, Uber Defendants respond that there are no

18 documents responsive to this Request because the over-allotment or "green shoe" was not

19 exercised.

20 **Request No. 20:**

21 *Documents sufficient to identify all Persons, excluding purely clerical staff, affiliated with
   You, any law firm, or any accounting firm that planned or performed work in connection
22 with the IPO, Including preparing the Offering Documents.*

23 **Response to Request No. 20:**

24    In addition to the General Objections, Objections to Definitions, and Objections to

25 Instructions, each of which is incorporated herein by reference, Uber Defendants object to this

26 Request as overbroad, redundant of other requests, unduly burdensome, not reasonably tailored to

27 Lead Plaintiff's claims related to specific alleged misrepresentations in Uber's IPO Registration

28 Statement and Prospectus, as well as to the extent it calls for a legal conclusion, and to the extent it

---

**057**

1   seeks information that is not relevant to any claims or defenses in the suit nor reasonably calculated

2   to lead to the discovery of admissible evidence.  Uber Defendants object to the use of certain terms

3   in this Request as vague and ambiguous, including "purely clerical," "affiliated," and "work in

4   connection with the IPO."  Uber Defendants further object to this Request to the extent that it seeks

5   documents protected by the attorney-client privilege, the work product doctrine, the joint defense or

6   common interest doctrine and/or any other privilege or immunity from production.

7          Subject to and without waiving these objections, Uber Defendants are prepared to meet and

8   confer with Lead Plaintiff to discuss whether the Request can be sufficiently narrowed and, subject

9   to such discussions, agree to produce relevant non-privileged documents located upon a reasonable

10  search of custodians and readily accessible files or other central locations where responsive

11  documents are likely to be found.

12  **Request No. 21:**

13     *All Documents and Communications Concerning any due diligence performed, or relied on,*
       *by You or any other Person in connection with the IPO, Including any bring downs,*
14     *questionnaires, and virtual data room.*

15  **Response to Request No. 21:**

16         In addition to the General Objections, Objections to Definitions, and Objections to

17  Instructions, each of which is incorporated herein by reference, Uber Defendants object to this

18  Request as overbroad, redundant of other requests, unduly burdensome, not reasonably tailored to

19  Lead Plaintiff's claims related to specific alleged misrepresentations in Uber's IPO Registration

20  Statement and Prospectus, as well as to the extent it calls for a legal conclusion, and to the extent it

21  seeks information that is not relevant to any claims or defenses in the suit nor reasonably calculated

22  to lead to the discovery of admissible evidence.  Uber Defendants further object to this Request to

23  the extent that it seeks documents protected by the attorney-client privilege, the work product

24  doctrine, the joint defense or common interest doctrine and/or any other privilege or immunity from

25  production.  Uber Defendants object to the use of certain terms in this Request as vague and

26  ambiguous, including "relied on," "any other Person," "bring downs," "questionnaires," and

27  "virtual data room."

28

1    Subject to and without waiving these objections, Uber Defendants are prepared to meet and

2    confer with Lead Plaintiff to discuss whether the Request can be sufficiently narrowed and, subject

3    to such discussions, agree to produce relevant non-privileged documents located upon a reasonable

4    search of custodians and readily accessible files or other central locations where responsive

5    documents are likely to be found.

6    **Request No. 22:**

7    *All Documents and Communications Concerning any investment by You in Uber.  This
     request is not limited to the Relevant Time Period.*

8    **Response to Request No. 22:**

9    In addition to the General Objections, Objections to Definitions, and Objections to

10   Instructions, each of which is incorporated herein by reference, Uber Defendants object to this

11   Request on the ground that it seeks information that is not relevant to any claims or defenses in the

12   suit nor reasonably calculated to lead to the discovery of admissible evidence.  In particular, Uber

13   Defendants object that this Request contains no time period limitation whatsoever and is therefore

14   even more overbroad and unduly burdensome as a result.  Uber Defendants further object to this

15   Request to the extent that it seeks documents protected by the attorney-client privilege, the work

16   product doctrine, the joint defense or common interest doctrine and/or any other privilege or

17   immunity from production.  Uber Defendants further object to this Request as vague and ambiguous

18   with respect to its use of the term "any investments."  Uber Defendants object to this Request to the

19   extent it calls for a legal conclusion.

20   Based upon the foregoing objections, Uber will not produce documents in response to this

21   Request.

22   **Request No. 23:**

23   *All Documents and Communications between You and Uber's current or present auditors
     and accounting firms Concerning (a) Uber's expected quarterly and yearly financial results;*

24   *(b) Uber's growth; (c) new users, MAPCs, and trips; (d) changes in approach to and
     spending for Marketing; (e) safety, including safety to passengers and drivers; (f) driver*

25   *employment classification; (g) lack of, or improper, licenses for drivers; (h) lack of, or
     improper, registrations for vehicles; (i) lack of, or improper, permits or other Government-*

26   *issued approvals to commence or maintain operations in a given locality; (j) potential and
     actual layoffs of Uber Employees; (k) any potential risk to Uber's revenues or other*

27   *financial metrics or results; (l) actions taken or not taken to alter Uber's business practices
     since November 1, 2017; (m) any other data used to create the content of the Offering*

28   *Documents; (n) the IPO; or (o) the Offering Documents.*

1     **Response to Request No. 23:**

2        In addition to the General Objections, Objections to Definitions, and Objections to

3   Instructions, each of which is incorporated herein by reference, Uber Defendants object to this

4   Request as overbroad, redundant of other requests, unduly burdensome, not reasonably tailored to

5   Lead Plaintiff's claims related to specific alleged misrepresentations in Uber's IPO Registration

6   Statement and Prospectus, as well as to the extent it calls for a legal conclusion, and to the extent it

7   seeks information that is not relevant to any claims or defenses in the suit nor reasonably calculated

8   to lead to the discovery of admissible evidence.  Uber Defendants object to the use of certain terms

9   in this Request as vague and ambiguous, including "Uber's growth," "trips," "changes in approach

10   to and spending for Marketing," "safety," "safety to passengers and drivers," "driver employment

11   classification," "improper," "licenses for drivers," "registrations for vehicles," "permits or other

12   Government-issued approvals to commence or maintain operations," "locality," "potential and

13   actual layoffs of Uber employees," "potential risk to Uber's sales or other financial metrics or

14   results," "other financial metrics or results," "actions taken or not taken to alter Uber's business

15   practices," "any," and "data."  Uber Defendants further object to this Request to the extent it seeks

16   information that is more easily obtainable by deposition.  Uber Defendants further object to this

17   Request to the extent that it seeks documents protected by the attorney-client privilege, the work

18   product doctrine, the joint defense or common interest doctrine and/or any other privilege or

19   immunity from production.

20        Subject to and without waiving these objections, Uber Defendants are prepared to meet and

21   confer with Lead Plaintiff to discuss whether the Request can be sufficiently narrowed and, subject

22   to such discussions, agree to produce relevant non-privileged documents located upon a reasonable

23   search of custodians and readily accessible files or other central locations where responsive

24   documents are likely to be found.

25   **Request No. 24:**

26        *All due diligence checklists, committee presentations, and diligence summary sheets*
         *prepared or used in connection with the IPO, as well as Documents memorializing all*

27        *responses thereto.*

28

**Response to Request No. 24:**

In addition to the General Objections, Objections to Definitions, and Objections to Instructions, each of which is incorporated herein by reference, Uber Defendants object to this Request as overbroad, redundant of other requests, unduly burdensome, not reasonably tailored to Lead Plaintiff's claims related to specific alleged misrepresentations in Uber's IPO Registration Statement and Prospectus, as well as to the extent it calls for a legal conclusion, and to the extent it seeks information that is not relevant to any claims or defenses in the suit nor reasonably calculated to lead to the discovery of admissible evidence.  Uber Defendants further object to this Request to the extent that it seeks documents protected by the attorney-client privilege, the work product doctrine, the joint defense or common interest doctrine and/or any other privilege or immunity from production.  Uber Defendants object to the use of certain terms in this Request as vague and ambiguous, including "due diligence checklists," "committee presentations," "diligence summary sheets," "prepared or used in connection with," and "Documents memorializing responses thereto."

Subject to and without waiving these objections, Uber Defendants are prepared to meet and confer with Lead Plaintiff to discuss whether the Request can be sufficiently narrowed and, subject to such discussions, agree to produce relevant non-privileged documents located upon a reasonable search of custodians and readily accessible files or other central locations where responsive documents are likely to be found.

**Request No. 25:**

*All Policies, guidelines, procedures, protocols and manuals for conducting due diligence in connection with the IPO and the Offering Documents.*

**Response to Request No. 25:**

In addition to the General Objections, Objections to Definitions, and Objections to Instructions, each of which is incorporated herein by reference, Uber Defendants object to this Request as overbroad, redundant of other requests, unduly burdensome, not reasonably tailored to Lead Plaintiff's claims related to specific alleged misrepresentations in Uber's IPO Registration Statement and Prospectus, as well as to the extent it calls for a legal conclusion, and to the extent it seeks information that is not relevant to any claims or defenses in the suit nor reasonably calculated

**061**

1  to lead to the discovery of admissible evidence.  Uber Defendants further object to this Request to

2  the extent that it seeks documents protected by the attorney-client privilege, the work product

3  doctrine, the joint defense or common interest doctrine and/or any other privilege or immunity from

4  production.  Uber Defendants object to the use of certain terms in this Request as vague and

5  ambiguous, including "Policies," "guidelines," "procedures," "protocols," "manuals," and "in

6  connection with."

7      Based upon the foregoing objections, Uber Defendants will not produce documents in

8  response to this Request.

9  **Request No. 26:**

10     *A copy of any insurance policy, indemnification agreement, hold harmless agreements, or*
       *by-laws that may provide coverage for You or any other Defendant for all or part of any*
11     *potential liability arising from any claims asserted in this Action.*

12  **Response to Request No. 26:**

13     In addition to the General Objections, Objections to Definitions, and Objections to

14  Instructions, each of which is incorporated herein by reference, Uber Defendants object to this

15  Request as overbroad, redundant of other requests, unduly burdensome, not reasonably tailored to

16  Lead Plaintiff's claims related to specific alleged misrepresentations in Uber's IPO Registration

17  Statement and Prospectus, as well as to the extent it calls for a legal conclusion, and to the extent it

18  seeks information that is not relevant to any claims or defenses in the suit nor reasonably calculated

19  to lead to the discovery of admissible evidence.  Uber Defendants further object to the use of the

20  phrase "that may provide coverage" on the ground that it calls for a legal conclusion.  Uber

21  Defendants further object to this Request to the extent that it seeks documents protected by the

22  attorney-client privilege, the work product doctrine, the joint defense or common interest doctrine

23  and/or any other privilege or immunity from production.

24     Subject to and without waiving these objections, Uber Defendants agree to produce relevant

25  non-privileged documents located upon a reasonable search of custodians and readily accessible

26  files or other central locations where responsive documents are likely to be found.

27  **Request No. 27:**

28     *Your Policies or practices, if any, regarding the retention or destruction of Documents and*
       *files, including e-mails or instant messages, e-mail or instant messages backup or archive*

1     *tapes, hard drives, and corporate storage, including and [sic] changes or modifications in*
    *such Policies or practices.*

2   **Response to Request No. 27:**

3        In addition to the General Objections, Objections to Definitions, and Objections to

4   Instructions, each of which is incorporated herein by reference, Uber Defendants object to this

5   Request on the ground that it seeks information that is not relevant to any claims or defenses in the

6   suit nor reasonably calculated to lead to the discovery of admissible evidence.  Uber Defendants

7   object to the use of certain terms in this Request as vague and ambiguous, including "Policies" and

8   "practices."  Uber Defendants further object to this Request as obsolete and unnecessary in light of

9   the Stipulated Order Re: Discovery of Electronically Stored Information (ECF No. 114) and

10   Stipulated Protective Order for Standard Litigation (ECF No. 113) entered in this case.  Uber

11   Defendants further object to this Request to the extent that it seeks documents protected by the

12   attorney-client privilege, the work product doctrine, the joint defense or common interest doctrine

13   and/or any other privilege or immunity from production.

14        Subject to and without waiving these objections, Uber Defendants are prepared to meet and

15   confer with Lead Plaintiff to discuss whether the Request can be sufficiently narrowed and, subject

16   to such discussions, agree to produce relevant non-privileged documents located upon a reasonable

17   search of custodians and readily accessible files or other central locations where responsive

18   documents are likely to be found.

19   **Request No. 28:**

20     *All Documents and Communications of any Meeting of Uber's board of directors, or of any*
    *committee or subcommittee thereof, Concerning the IPO or Offering Documents Including*

21     *any board packages, presentation materials, Communications, minutes, agendas, or notes*
    *Concerning the following: (a) Uber's expected quarterly and yearly financial results;*

22     *(b) Uber's growth; (c) new users, MAPCs, and trips; (d) changes in approach to and*
    *spending for Marketing; (e) safety, including safety to passengers and drivers; (f) driver*

23     *employment classification; (g) lack of, or improper, licenses for drivers; (h) lack of, or*
    *improper, registrations for vehicles; (i) lack of, or improper, permits or other Government-*

24     *issued approvals to commence or maintain operations in a given locality; (j) potential and*
    *actual layoffs of Uber Employees; (k) any potential risk to Uber's revenues or other*

25     *financial metrics or results; (l) actions taken or not taken to alter Uber's business practices*
    *since November 1, 2017; (m) any other data used to create the content of the Offering*

26     *Documents; (n) the IPO; or (o) the Offering Documents.*

27

28

---

**Response to Request No. 28:**

        In addition to the General Objections, Objections to Definitions, and Objections to Instructions, each of which is incorporated herein by reference, Uber Defendants object to this Request as overbroad, redundant of other requests, unduly burdensome, not reasonably tailored to Lead Plaintiff's claims related to specific alleged misrepresentations in Uber's IPO Registration Statement and Prospectus, as well as to the extent it calls for a legal conclusion, and to the extent it seeks information that is not relevant to any claims or defenses in the suit nor reasonably calculated to lead to the discovery of admissible evidence.  Uber Defendants object to the use of certain terms in this Request as vague and ambiguous, including "Uber's growth," "trips," "changes in approach to and spending for Marketing," "safety," "safety to passengers and drivers," "driver employment classification," "improper," "licenses for drivers,"  "registrations for vehicles," "permits or other Government-issued approvals to commence or maintain operations," "locality," "potential and actual layoffs of Uber employees," "potential risk to Uber's sales or other financial metrics or results," "other financial metrics or results," "actions taken or not taken to alter Uber's business practices," "any," and "data."  Uber Defendants further object to this Request to the extent it seeks information that is more easily obtainable by deposition.  Uber Defendants further object to this Request to the extent that it seeks documents protected by the attorney-client privilege, the work product doctrine, the joint defense or common interest doctrine and/or any other privilege or immunity from production.

        Subject to and without waiving these objections, Uber Defendants are prepared to meet and confer with Lead Plaintiff to discuss whether the Request can be sufficiently narrowed and, subject to such discussions, agree to produce relevant non-privileged documents located upon a reasonable search of custodians and readily accessible files or other central locations where responsive documents are likely to be found.

**Request No. 29:**

> *All Documents and Communications of any Meeting Concerning the IPO or the Offering Documents, Including presentation materials, memoranda, minutes, agendas, and notes related to the IPO or the Offering Documents.*

**Response to Request No. 29:**

In addition to the General Objections, Objections to Definitions, and Objections to Instructions, each of which is incorporated herein by reference, Uber Defendants object to this Request as overbroad, redundant of other requests, unduly burdensome, not reasonably tailored to Lead Plaintiff's claims related to specific alleged misrepresentations in Uber's IPO Registration Statement and Prospectus, as well as to the extent it calls for a legal conclusion, and to the extent it seeks information that is not relevant to any claims or defenses in the suit nor reasonably calculated to lead to the discovery of admissible evidence. Uber Defendants further object to this Request to the extent it is duplicative of Request No. 1. Uber Defendants further object to this Request to the extent that it seeks documents protected by the attorney-client privilege, the work product doctrine, the joint defense or common interest doctrine and/or any other privilege or immunity from production.

Subject to and without waiving these objections, Uber Defendants are prepared to meet and confer with Lead Plaintiff to discuss whether the Request can be sufficiently narrowed and, subject to such discussions, agree to produce relevant non-privileged documents located upon a reasonable search of custodians and readily accessible files or other central locations where responsive documents are likely to be found.

**Request No. 30:**

*All Documents and Communications Concerning any Individual Defendant's sale of Uber securities in the IPO or since the IPO.*

**Response to Request No. 30:**

In addition to the General Objections, Objections to Definitions, and Objections to Instructions, each of which is incorporated herein by reference, Uber Defendants object to this Request on the ground that it seeks information that is not relevant to any claims or defenses in the suit nor reasonably calculated to lead to the discovery of admissible evidence. Uber Defendants further object to this Request to the extent it would result in the disclosure of information in violation of privacy rights or obligations under any constitutional, statutory or common law rights of privacy. Uber Defendants further object to this Request to the extent that it seeks documents

protected by the attorney-client privilege, the work product doctrine, the joint defense or common interest doctrine and/or any other privilege or immunity from production.  Uber Defendants object to this Request to the extent it calls for a legal conclusion.

Based upon the foregoing objections, Uber Defendants will not produce documents in response to this Request.

**Request No. 31:**

> *All Documents and Communications Concerning any issuance of Uber common stock other than the shares issued in the IPO.*

**Response to Request No. 31:**

In addition to the General Objections, Objections to Definitions, and Objections to Instructions, each of which is incorporated herein by reference, Uber Defendants object to this Request on the ground that it seeks information that is not relevant to any claims or defenses in the suit nor reasonably calculated to lead to the discovery of admissible evidence.  Uber Defendants further object to this Request to the extent that it seeks documents protected by the attorney-client privilege, the work product doctrine, the joint defense or common interest doctrine and/or any other privilege or immunity from production.  Uber Defendants further object to this Request to the extent it would result in the disclosure of information in violation of privacy rights or obligations under any constitutional, statutory or common law rights of privacy.  Uber Defendants object to this Request to the extent it calls for a legal conclusion.

Based upon the foregoing objections, Uber Defendants will not produce documents in response to this Request.

**Request No. 32:**

> *All Documents and Communications Concerning any lock-up of Uber's common stock.*

**Response to Request No. 32:**

In addition to the General Objections, Objections to Definitions, and Objections to Instructions, each of which is incorporated herein by reference, Uber Defendants object to this Request as overbroad, redundant of other requests, unduly burdensome, not reasonably tailored to Lead Plaintiff's claims related to specific alleged misrepresentations in Uber's IPO Registration

1    Statement and Prospectus, as well as to the extent it calls for a legal conclusion, and to the extent it

2    seeks information that is not relevant to any claims or defenses in the suit nor reasonably calculated

3    to lead to the discovery of admissible evidence.  Uber Defendants further object to this Request as

4    vague and ambiguous with respect to its use of the term "lock-up."  Uber Defendants further object

5    to this Request to the extent that it seeks documents protected by the attorney-client privilege, the

6    work product doctrine, the joint defense or common interest doctrine and/or any other privilege or

7    immunity from production.

8         Subject to and without waiving these objections, Uber Defendants are prepared to meet and

9    confer with Lead Plaintiff to discuss whether the Request can be sufficiently narrowed and, subject

10   to such discussions, agree to produce relevant non-privileged documents located upon a reasonable

11   search of custodians and readily accessible files or other central locations where responsive

12   documents are likely to be found.

13   **Request No. 33:**

14   *All Documents and Communications Concerning monthly, quarterly, annual or periodic*
     *Financial Statements or interim analyses (Including financial analyses, budgets and*
15   *estimates) and supporting documentation or work papers created by or for Uber's*
     *management, officers, directors or Employees.*

16   **Response to Request No. 33:**

17        In addition to the General Objections, Objections to Definitions, and Objections to

18   Instructions, each of which is incorporated herein by reference, Uber Defendants object to this

19   Request as overbroad, redundant of other requests, unduly burdensome, not reasonably tailored to

20   Lead Plaintiff's claims related to specific alleged misrepresentations in Uber's IPO Registration

21   Statement and Prospectus, as well as to the extent it calls for a legal conclusion, and to the extent it

22   seeks information that is not relevant to any claims or defenses in the suit nor reasonably calculated

23   to lead to the discovery of admissible evidence.  Uber Defendants object to the use of certain terms

24   in this Request as vague and ambiguous, including "interim analyses," "financial analyses,"

25   "budgets," "estimates," "supporting documentation," and "work papers."  Uber Defendants further

26   object to this Request to the extent that it seeks documents protected by the attorney-client

27

28

1  privilege, the work product doctrine, the joint defense or common interest doctrine and/or any other

2  privilege or immunity from production.

3        Subject to and without waiving these objections, Uber Defendants are prepared to meet and

4  confer with Lead Plaintiff to discuss whether the Request can be sufficiently narrowed and, subject

5  to such discussions, agree to produce relevant non-privileged documents located upon a reasonable

6  search of custodians and readily accessible files or other central locations where responsive

7  documents are likely to be found.

8  **Request No. 34:**

9      *All Documents and Communications Concerning Uber's projected and actual revenues
and/or net profits for the first, second, third, and fourth quarters of 2018 and the full year*

10  *2018, Including Uber's projected and actual revenues and net profits from Uber Rides and
Uber Eats for those same time periods.*

11  **Response to Request No. 34:**

12      In addition to the General Objections, Objections to Definitions, and Objections to

13  Instructions, each of which is incorporated herein by reference, Uber Defendants object to this

14  Request on the ground that it seeks information that is not relevant to any claims or defenses in the

15  suit nor reasonably calculated to lead to the discovery of admissible evidence.  Uber Defendants

16  object to the use of certain terms in this Request as vague and ambiguous, including "actual

17  revenues" and "Uber Rides."  Uber Defendants further object to this Request to the extent that it

18  seeks documents protected by the attorney-client privilege, the work product doctrine, the joint

19  defense or common interest doctrine and/or any other privilege or immunity from production.  Uber

20  Defendants object to this Request to the extent it calls for a legal conclusion.

21      Based upon the foregoing objections, Uber Defendants will not produce documents in

22  response to this Request.

23  **Request No. 35:**

24      *All Documents and Communications Concerning Uber's projected and actual revenues
and/or net profits for the first, second, third, and fourth quarters of 2019 or the full year*

25  *2019, Including Uber's projected and actual revenues and/or net profits from Uber Rides
and Uber Eats for those same time periods.*

26

27

28

**Response to Request No. 35:**

In addition to the General Objections, Objections to Definitions, and Objections to Instructions, each of which is incorporated herein by reference, Uber Defendants object to this Request on the ground that it seeks information that is not relevant to any claims or defenses in the suit nor reasonably calculated to lead to the discovery of admissible evidence.  Uber Defendants object to the use of certain terms in this Request as vague and ambiguous, including "actual revenues" and "Uber Rides."  Uber Defendants further object to this Request to the extent that it seeks documents protected by the attorney-client privilege, the work product doctrine, the joint defense or common interest doctrine and/or any other privilege or immunity from production.  Uber Defendants object to this Request to the extent it calls for a legal conclusion.

Subject to and without waiving these objections, Uber Defendants are prepared to meet and confer with Lead Plaintiff to discuss whether the Request can be sufficiently narrowed and, subject to such discussions, agree to produce relevant non-privileged documents located upon a reasonable search of custodians and readily accessible files or other central locations where responsive documents are likely to be found.

**Request No. 36:**

*All Documents and Communications Concerning Uber's goals, objectives, strategies, milestones, and efforts for growth, Including:*

    *a.  Marketing's growth goals for Uber Eats;*

    *b.  Growth goals for ride share services;*

    *c.  Metrics for growth goals; and*

    *d.  All underlying data and information gathered, collected or compiled to determine whether growth goals are being met.*

**Response to Request No. 36:**

In addition to the General Objections, Objections to Definitions, and Objections to Instructions, each of which is incorporated herein by reference, Uber Defendants object to this Request on the ground that it seeks information that is not relevant to any claims or defenses in the suit nor reasonably calculated to lead to the discovery of admissible evidence.  Uber Defendants object to the use of certain terms in this Request as vague and ambiguous, including "goals,"

"objectives," "strategies," "milestones," "efforts for growth," and "all underlying data." Uber

Defendants further object to this Request to the extent that it seeks documents protected by the

attorney-client privilege, the work product doctrine, the joint defense or common interest doctrine

and/or any other privilege or immunity from production. Uber Defendants object to this Request to

the extent it calls for a legal conclusion.

Subject to and without waiving these objections, Uber Defendants are prepared to meet and

confer with Lead Plaintiff to discuss whether the Request can be sufficiently narrowed and, subject

to such discussions, agree to produce relevant non-privileged documents located upon a reasonable

search of custodians and readily accessible files or other central locations where responsive

documents are likely to be found.

**Request No. 37:**

> *All Documents and Communications Concerning Uber's year-over-year quarterly revenue growth rate for Q2 2019, Including all underlying data and information used to calculate the growth rate.*

**Response to Request No. 37:**

In addition to the General Objections, Objections to Definitions, and Objections to

Instructions, each of which is incorporated herein by reference, Uber Defendants object to this

Request on the ground that it seeks information that is not relevant to any claims or defenses in the

suit nor reasonably calculated to lead to the discovery of admissible evidence. Uber Defendants

object to the use of certain terms in this Request as vague and ambiguous, including "all underlying

data and information." Uber Defendants further object to this Request to the extent that it seeks

documents protected by the attorney-client privilege, the work product doctrine, the joint defense or

common interest doctrine and/or any other privilege or immunity from production. Uber

Defendants object to this Request to the extent it calls for a legal conclusion.

Subject to and without waiving these objections, Uber Defendants are prepared to meet and

confer with Lead Plaintiff to discuss whether the Request can be sufficiently narrowed and, subject

to such discussions, agree to produce relevant non-privileged documents located upon a reasonable

1   search of custodians and readily accessible files or other central locations where responsive

2   documents are likely to be found.

3   **Request No. 38:**

4       *All Documents and Communications Concerning Uber's profit margins and Policy for*
        *pricing in all markets it operated in from January 1, 2019 to present.*

5   **Response to Request No. 38:**

6       In addition to the General Objections, Objections to Definitions, and Objections to

7   Instructions, each of which is incorporated herein by reference, Uber Defendants object to this

8   Request on the ground that it seeks information that is not relevant to any claims or defenses in the

9   suit nor reasonably calculated to lead to the discovery of admissible evidence.  Uber Defendants

10  further object to this Request as vague and ambiguous with respect to its use of the term "Policy."

11  Uber Defendants further object to this Request to the extent that it seeks documents protected by the

12  attorney-client privilege, the work product doctrine, the joint defense or common interest doctrine

13  and/or any other privilege or immunity from production.  Uber Defendants object to this Request to

14  the extent it calls for a legal conclusion.

15      Based upon the foregoing objections, Uber Defendants will not produce documents in

16  response to this Request.

17  **Request No. 39:**

18      *All Documents and Communications Concerning Uber's operations including compliance*
        *with commercial license and/or commercial vehicle registration requirements in each*

19      *country, city or locality in which Uber operates, or has operated.*

20  **Response to Request No. 39:**

21      In addition to the General Objections, Objections to Definitions, and Objections to

22  Instructions, each of which is incorporated herein by reference, Uber Defendants object to this

23  Request as overbroad, redundant of other requests, unduly burdensome, not reasonably tailored to

24  Lead Plaintiff's claims related to specific alleged misrepresentations in Uber's IPO Registration

25  Statement and Prospectus, as well as to the extent it calls for a legal conclusion, and to the extent it

26  seeks information that is not relevant to any claims or defenses in the suit nor reasonably calculated

27  to lead to the discovery of admissible evidence.  Uber Defendants object to the use of certain terms

28  in this Request as vague and ambiguous, including "compliance," "commercial license,"

**071**

1   "commercial vehicle registration," "requirements," and "locality."  Uber Defendants further object

2   to this Request to the extent it would result in the disclosure of information in violation of privacy

3   rights or obligations under any constitutional, statutory or common law rights of privacy.  Uber

4   Defendants further object to this Request to the extent that it seeks documents protected by the

5   attorney-client privilege, the work product doctrine, the joint defense or common interest doctrine

6   and/or any other privilege or immunity from production.

7        Subject to and without waiving these objections, Uber Defendants are prepared to meet and

8   confer with Lead Plaintiff to discuss whether the Request can be sufficiently narrowed and, subject

9   to such discussions, agree to produce relevant non-privileged documents located upon a reasonable

10  search of custodians and readily accessible files or other central locations where responsive

11  documents are likely to be found.

12  **Request No. 40:**

13        *All Documents and Communications Concerning:*

14        *a.  Uber's compliance (or lack thereof) with regulatory and/or Government approval to*
            *operate its business.*

15

16        *b.  Uber violating any regulations, statutes, rules, ordinances, or industry standards in*
            *any jurisdiction.*

17  **Response to Request No. 40:**

18        In addition to the General Objections, Objections to Definitions, and Objections to

19  Instructions, each of which is incorporated herein by reference, Uber Defendants object to this

20  Request as overbroad, redundant of other requests, unduly burdensome, not reasonably tailored to

21  Lead Plaintiff's claims related to specific alleged misrepresentations in Uber's IPO Registration

22  Statement and Prospectus, as well as to the extent it calls for a legal conclusion, and to the extent it

23  seeks information that is not relevant to any claims or defenses in the suit nor reasonably calculated

24  to lead to the discovery of admissible evidence.  Uber Defendants further object to this Request to

25  the extent that it seeks documents protected by the attorney-client privilege, the work product

26  doctrine, the joint defense or common interest doctrine and/or any other privilege or immunity from

27  production.  Uber Defendants object to the use of certain terms in this Request as vague and

28  ambiguous, including "compliance," "approval to operate," "business," "violating," "any," and

**072**

"industry standards." Uber Defendants further object to this Request to the extent it would result in the disclosure of information in violation of privacy rights or obligations under any constitutional, statutory or common law rights of privacy.

Subject to and without waiving these objections, Uber Defendants are prepared to meet and confer with Lead Plaintiff to discuss whether the Request can be sufficiently narrowed and, subject to such discussions, agree to produce relevant non-privileged documents located upon a reasonable search of custodians and readily accessible files or other central locations where responsive documents are likely to be found.

**Request No. 41:**

*All Documents and Communications Concerning fines, judgments, orders, penalties, reprimands, injunctions, assessments, verdicts, or guilty pleas, including payment or compliance with such, associated with Uber violating any Government, international, trade association or organization or regulatory body's regulations, statutes, rules, ordinances, laws or industry standards Including those alleged in ¶¶ 23-26, 29, 33-34, 167, 176, 193, 198, 208-225, 227, 233, 244-245, 247, 262-263, 269, 274, 280, 282-283, and 295 of the Complaint.*

**Response to Request No. 41:**

In addition to the General Objections, Objections to Definitions, and Objections to Instructions, each of which is incorporated herein by reference, Uber Defendants object to this Request as overbroad, redundant of other requests, unduly burdensome, not reasonably tailored to Lead Plaintiff's claims related to specific alleged misrepresentations in Uber's IPO Registration Statement and Prospectus, as well as to the extent it calls for a legal conclusion, and to the extent it seeks information that is not relevant to any claims or defenses in the suit nor reasonably calculated to lead to the discovery of admissible evidence. Uber Defendants object to the use of certain terms in this Request as vague and ambiguous, including "fines," "orders," "penalties," "reprimands," "assessments," "compliance," "violating," "any," and "industry standards." Uber Defendants further object to this Request to the extent that it seeks documents protected by the attorney-client privilege, the work product doctrine, the joint defense or common interest doctrine and/or any other privilege or immunity from production. Uber Defendants further object to this Request to the extent it would result in the disclosure of information in violation of privacy rights or obligations under any constitutional, statutory or common law rights of privacy.

Subject to and without waiving these objections, Uber Defendants are prepared to meet and confer with Lead Plaintiff to discuss whether the Request can be sufficiently narrowed and, subject to such discussions, agree to produce relevant non-privileged documents located upon a reasonable search of custodians and readily accessible files or other central locations where responsive documents are likely to be found.

**Request No. 42:**

> *All non-privileged portions of Uber's legal files associated with the defense and/or compliance of any legal action associated with any information disclosed in the preceding request Including those alleged in ¶¶ 23-26, 29, 33-34, 167, 176, 193, 198, 208-225, 227, 233, 244-245, 247, 262-263, 269, 274, 280, 282-283, and 295 of the Complaint.*

**Response to Request No. 42:**

In addition to the General Objections, Objections to Definitions, and Objections to Instructions, each of which is incorporated herein by reference, Uber Defendants object to this Request as overbroad, redundant of other requests, unduly burdensome, not reasonably tailored to Lead Plaintiff's claims related to specific alleged misrepresentations in Uber's IPO Registration Statement and Prospectus, as well as to the extent it calls for a legal conclusion, and to the extent it seeks information that is not relevant to any claims or defenses in the suit nor reasonably calculated to lead to the discovery of admissible evidence. Uber Defendants object to the use of certain terms in this Request as vague and ambiguous, including "compliance" and "legal action."

Subject to and without waiving these objections, Uber Defendants are prepared to meet and confer with Lead Plaintiff to discuss whether the Request can be sufficiently narrowed and, subject to such discussions, agree to produce relevant non-privileged documents located upon a reasonable search of custodians and readily accessible files or other central locations where responsive documents are likely to be found.

**Request No. 43:**

> *Communications with national, state, local, or international regulators Concerning the following: (a) passenger safety (e.g., motor vehicle accidents, sexual assaults, sexual harassment, etc.); (b) driver employment classification (e.g., independent contractor classification, unemployment and temporary disability insurance contributions, etc.); (c) illegal or improper operations (e.g., licenses for drivers, registrations for commercial vehicles, applicable permits and other Government-issued Documents to properly conduct business in a particular municipality, bribes, etc.); (d) sexual harassment, sexual assault, hostile work environment, forced resignation, wrongful termination, and other workplace complaints brought by Uber Employees against Uber; or (e) Uber's violations or potential*

*violations of existing and pending laws, rules and regulations, Including those Concerning the classification or misclassification of drivers as independent contractors rather than Employees, Uber's efforts or lack thereof to comply with Dynamex, and the regulatory, legal and tax consequences of these violations or potential violations.*

**Response to Request No. 43:**

In addition to the General Objections, Objections to Definitions, and Objections to Instructions, each of which is incorporated herein by reference, Uber Defendants object to this Request as overbroad, redundant of other requests, unduly burdensome, not reasonably tailored to Lead Plaintiff's claims related to specific alleged misrepresentations in Uber's IPO Registration Statement and Prospectus, as well as to the extent it calls for a legal conclusion, and to the extent it seeks information that is not relevant to any claims or defenses in the suit nor reasonably calculated to lead to the discovery of admissible evidence.  In particular, Uber Defendants object to this Request on the ground that the Amended Complaint does not allege that Uber's IPO Offering Documents were false or misleading for failure to disclose workplace harassment issues and similar employment issues at Uber.  Uber Defendants object to the use of certain terms in this Request as vague and ambiguous, including, "safety," "passenger safety," "driver employment classification," "illegal or improper operations," "licenses for drivers," registrations for commercial vehicles," "applicable permits and other Government-issued Documents to properly conduct business," "other workplace complaints," and "violations or potential violations of existing and pending laws."  Uber Defendants further object to this Request to the extent it would result in the disclosure of information in violation of privacy rights or obligations under any constitutional, statutory or common law rights of privacy.  Uber Defendants further object to this Request to the extent that it seeks documents protected by the attorney-client privilege, the work product doctrine, the joint defense or common interest doctrine and/or any other privilege or immunity from production.

Subject to and without waiving these objections, Uber Defendants are prepared to meet and confer with Lead Plaintiff to discuss whether the Request can be sufficiently narrowed and, subject to such discussions, agree to produce relevant non-privileged documents located upon a reasonable search of custodians and readily accessible files or other central locations where responsive documents are likely to be found.  In particular, Uber Defendants will not produce documents in response to subpart (d) of this Request.

**Request No. 44:**

*Documents Concerning all customer or Government complaints, whether filed in any court, administrative setting or tribunal or made to Uber, that occurred before the IPO and that are either still active or concluded, resolved, terminated, or settled on or after the IPO, regarding (a) passenger safety (e.g., motor vehicle accidents, sexual assaults, sexual harassment, etc.); (b) driver employment classification (e.g., independent contractor classification, unemployment and temporary disability insurance contributions, etc.); (c) illegal or improper operations (e.g., licenses for drivers, registrations for commercial vehicles, applicable permits and other Government-issued documents to properly conduct business in a particular municipality, bribes, etc.); or (d) sexual harassment, sexual assault, hostile work environment, forced resignation, wrongful termination, and other workplace complaints brought by Uber Employees against Uber.*

**Response to Request No. 44:**

In addition to the General Objections, Objections to Definitions, and Objections to Instructions, each of which is incorporated herein by reference, Uber Defendants object to this Request as overbroad, redundant of other requests, unduly burdensome, not reasonably tailored to Lead Plaintiff's claims related to specific alleged misrepresentations in Uber's IPO Registration Statement and Prospectus, as well as to the extent it calls for a legal conclusion, and to the extent it seeks information that is not relevant to any claims or defenses in the suit nor reasonably calculated to lead to the discovery of admissible evidence. In particular, Uber Defendants object to this Request on the ground that the Amended Complaint does not allege that Uber's IPO Offering Documents were false or misleading for failure to disclose workplace harassment issues and similar employment issues at Uber. Uber Defendants further object to this Request insofar as it would be impossible to locate and review all complaints filed anywhere to determine whether any particular complaint is relevant to a listed topic in this Request. Uber Defendants object to the use of certain terms in this Request as vague and ambiguous, including "customer or Government complaints," "made," "passenger safety," "driver employment classification," "illegal or improper operations," "applicable permits," and "other workplace complaints." Uber Defendants further object to the extent the Request purports to require production of documents that are public, already in Lead Plaintiff's possession, or otherwise available from sources to which Lead Plaintiff also has access. Uber Defendants further object to this Request to the extent that it seeks documents protected by the attorney-client privilege, the work product doctrine, the joint defense or common interest doctrine and/or any other privilege or immunity from production.

Subject to and without waiving these objections, Uber Defendants are prepared to meet and confer with Lead Plaintiff to discuss whether the Request can be sufficiently narrowed and, subject to such discussions, agree to produce relevant non-privileged documents located upon a reasonable search of custodians and readily accessible files or other central locations where responsive documents are likely to be found.  In particular, Uber Defendants will not produce documents in response to subpart (d) of this Request.

**Request No. 45:**

> *All Documents and Communications Concerning payments to any lobbying firm, agency, coalition, political action committee, Government official or any agents thereof.*

**Response to Request No. 45:**

In addition to the General Objections, Objections to Definitions, and Objections to Instructions, each of which is incorporated herein by reference, Uber Defendants object to this Request on the ground that it seeks information that is not relevant to any claims or defenses in the suit nor reasonably calculated to lead to the discovery of admissible evidence.  Uber Defendants object to the use of certain terms in this Request as vague and ambiguous, including "agency," "coalition," and "any agents thereof."  Uber Defendants further object to this Request to the extent that it seeks documents protected by the attorney-client privilege, the work product doctrine, the joint defense or common interest doctrine and/or any other privilege or immunity from production. Uber Defendants object to this Request to the extent it calls for a legal conclusion.

Based upon the foregoing objections, Uber Defendants will not produce documents in response to this Request.

**Request No. 46:**

> *All Documents and Communications Concerning any Meeting including Policy Communications Legal ("PCL") Meetings, or calls that mention or discuss passenger safety and/or alleged illegal Uber operations, Including:*
>
> > *a.  Meeting minutes;*
> >
> > *b.  Dates and locations of each Meeting;*
> >
> > *c.  Identity of the attendees; and*
> >
> > *d.  Emails or other Correspondence in connection with such Meeting.*

**Response to Request No. 46:**

In addition to the General Objections, Objections to Definitions, and Objections to Instructions, each of which is incorporated herein by reference, Uber Defendants object to this Request as overbroad, redundant of other requests, unduly burdensome, not reasonably tailored to Lead Plaintiff's claims related to specific alleged misrepresentations in Uber's IPO Registration Statement and Prospectus, as well as to the extent it calls for a legal conclusion, and to the extent it seeks information that is not relevant to any claims or defenses in the suit nor reasonably calculated to lead to the discovery of admissible evidence. Uber Defendants further object to this Request to the extent that it seeks documents protected by the attorney-client privilege, the work product doctrine, the joint defense or common interest doctrine and/or any other privilege or immunity from production. Uber Defendants object to the use of certain terms in this Request as vague and ambiguous, including "Policy," "passenger safety," and "illegal Uber operations."

Subject to and without waiving these objections, Uber Defendants are prepared to meet and confer with Lead Plaintiff to discuss whether the Request can be sufficiently narrowed and, subject to such discussions, agree to produce relevant non-privileged documents located upon a reasonable search of custodians and readily accessible files or other central locations where responsive documents are likely to be found.

**Request No. 47:**

*All Documents and Communications Concerning Uber's decision to launch only UberX peer-to-peer ridesharing in Africa.*

**Response to Request No. 47:**

In addition to the General Objections, Objections to Definitions, and Objections to Instructions, each of which is incorporated herein by reference, Uber Defendants object to this Request as overbroad, redundant of other requests, unduly burdensome, not reasonably tailored to Lead Plaintiff's claims related to specific alleged misrepresentations in Uber's IPO Registration Statement and Prospectus, as well as to the extent it calls for a legal conclusion, and to the extent it seeks information that is not relevant to any claims or defenses in the suit nor reasonably calculated to lead to the discovery of admissible evidence. Uber Defendants further object to this Request to

1    the extent that it seeks documents protected by the attorney-client privilege, the work product

2    doctrine, the joint defense or common interest doctrine and/or any other privilege or immunity from

3    production.

4          Subject to and without waiving these objections, Uber Defendants are prepared to meet and

5    confer with Lead Plaintiff to discuss whether the Request can be sufficiently narrowed and, subject

6    to such discussions, agree to produce relevant non-privileged documents located upon a reasonable

7    search of custodians and readily accessible files or other central locations where responsive

8    documents are likely to be found.

9    **Request No. 48:**

10         *All Documents and Communications Concerning Uber's payment to or on behalf of Uber*
       *drivers for reimbursement for tickets, fines, violations, and other punishment associated*
11     *with driving without a proper license or registration and/or driving illegally in a*
       *particularly [sic] locality.*

12   **Response to Request No. 48:**

13         In addition to the General Objections, Objections to Definitions, and Objections to

14   Instructions, each of which is incorporated herein by reference, Uber Defendants object to this

15   Request as overbroad, redundant of other requests, unduly burdensome, not reasonably tailored to

16   Lead Plaintiff's claims related to specific alleged misrepresentations in Uber's IPO Registration

17   Statement and Prospectus, as well as to the extent it calls for a legal conclusion, and to the extent it

18   seeks information that is not relevant to any claims or defenses in the suit nor reasonably calculated

19   to lead to the discovery of admissible evidence.  Uber Defendants further object to this Request to

20   the extent that it seeks documents protected by the attorney-client privilege, the work product

21   doctrine, the joint defense or common interest doctrine and/or any other privilege or immunity from

22   production.  Uber Defendants object to the use of certain terms in this Request as vague and

23   ambiguous, including "proper license or registration" and "locality."

24         Subject to and without waiving these objections, Uber Defendants are prepared to meet and

25   confer with Lead Plaintiff to discuss whether the Request can be sufficiently narrowed and, subject

26   to such discussions, agree to produce relevant non-privileged documents located upon a reasonable

27

28

search of custodians and readily accessible files or other central locations where responsive

documents are likely to be found.

**Request No. 49:**

> *All Documents and Communications Concerning Uber's incentive Policy for Uber drivers, Including:*
>
> > *a.   Type of incentives offered;*
> >
> > *b.   When incentives began and ended;*
> >
> > *c.   Why incentives were offered;*
> >
> > *d.   Why some or all incentives ceased; and*
> >
> > *e.   The identity of all Uber Employees responsible for setting or implementing said Policy or Policies, Including the identity of Uber B.V.  Employees for operations in Africa.*

**Response to Request No. 49:**

In addition to the General Objections, Objections to Definitions, and Objections to

Instructions, each of which is incorporated herein by reference, Uber Defendants object to this

Request on the ground that it seeks information that is not relevant to any claims or defenses in the

suit nor reasonably calculated to lead to the discovery of admissible evidence.  Uber Defendants

further object to this Request to the extent that it seeks documents protected by the attorney-client

privilege, the work product doctrine, the joint defense or common interest doctrine and/or any other

privilege or immunity from production.  Uber Defendants object to this Request to the extent it calls

for a legal conclusion.

Based upon the foregoing objections, Uber Defendants will not produce documents in

response to this Request.

**Request No. 50:**

> *Documents sufficient to show compensation (e.g., hourly wages) for Uber drivers in all markets.*

**Response to Request No. 50:**

In addition to the General Objections, Objections to Definitions, and Objections to

Instructions, each of which is incorporated herein by reference, Uber Defendants object to this

Request on the ground that it seeks information that is not relevant to any claims or defenses in the

**080**

suit nor reasonably calculated to lead to the discovery of admissible evidence.  Uber Defendants object to the use of certain terms in this Request as vague and ambiguous, including "sufficient to show compensation (e.g., hourly wages)" and "all markets."  Uber Defendants further object to this Request to the extent it would result in the disclosure of information in violation of privacy rights or obligations under any constitutional, statutory or common law rights of privacy.  Uber Defendants further object to this Request to the extent that it seeks documents protected by the attorney-client privilege, the work product doctrine, the joint defense or common interest doctrine and/or any other privilege or immunity from production.  Uber Defendants object to this Request to the extent it calls for a legal conclusion.

Based upon the foregoing objections, Uber Defendants will not produce documents in response to this Request.

**Request No. 51:**

*All Documents and Communications Concerning Uber B.V.'s payment to Uber drivers and/or Uber's operations in Africa for reimbursement for fines in Africa, Including:*

a. *Uber's Policies Concerning Uber B.V.'s payments or reimbursement for Uber's operations in Africa;*

b. *Uber Correspondence with Uber B.V.; and*

c. *Identity of Uber Employees who worked for or with Uber B.V.*

**Response to Request No. 51:**

In addition to the General Objections, Objections to Definitions, and Objections to Instructions, each of which is incorporated herein by reference, Uber Defendants object to this Request as overbroad, redundant of other requests, unduly burdensome, not reasonably tailored to Lead Plaintiff's claims related to specific alleged misrepresentations in Uber's IPO Registration Statement and Prospectus, as well as to the extent it calls for a legal conclusion, and to the extent it seeks information that is not relevant to any claims or defenses in the suit nor reasonably calculated to lead to the discovery of admissible evidence.  Uber Defendants further object to this Request to the extent that it seeks documents protected by the attorney-client privilege, the work product doctrine, the joint defense or common interest doctrine and/or any other privilege or immunity from production.  Uber Defendants further object to this Request to the extent it would result in the

1  disclosure of information in violation of privacy rights or obligations under any constitutional,

2  statutory or common law rights of privacy.

3      Subject to and without waiving these objections, Uber Defendants are prepared to meet and

4  confer with Lead Plaintiff to discuss whether the Request can be sufficiently narrowed and, subject

5  to such discussions, agree to produce relevant non-privileged documents located upon a reasonable

6  search of custodians and readily accessible files or other central locations where responsive

7  documents are likely to be found.

8  **Request No. 52:**

9      *All Documents and Communications Concerning the amount of fines Uber paid for failure
       to maintain, or have, properly licensed drivers and/or properly registered vehicles.*

10 **Response to Request No. 52:**

11     In addition to the General Objections, Objections to Definitions, and Objections to

12 Instructions, each of which is incorporated herein by reference, Uber Defendants object to this

13 Request as overbroad, redundant of other requests, unduly burdensome, not reasonably tailored to

14 Lead Plaintiff's claims related to specific alleged misrepresentations in Uber's IPO Registration

15 Statement and Prospectus, as well as to the extent it calls for a legal conclusion, and to the extent it

16 seeks information that is not relevant to any claims or defenses in the suit nor reasonably calculated

17 to lead to the discovery of admissible evidence.  Uber Defendants further object to this Request to

18 the extent that it seeks documents protected by the attorney-client privilege, the work product

19 doctrine, the joint defense or common interest doctrine and/or any other privilege or immunity from

20 production.  Uber Defendants object to the use of certain terms in this Request as vague and

21 ambiguous, including "properly licensed" and "properly registered."  Uber Defendants further

22 object to this Request to the extent it would result in the disclosure of information in violation of

23 privacy rights or obligations under any constitutional, statutory or common law rights of privacy.

24     Subject to and without waiving these objections, Uber Defendants are prepared to meet and

25 confer with Lead Plaintiff to discuss whether the Request can be sufficiently narrowed and, subject

26 to such discussions, agree to produce relevant non-privileged documents located upon a reasonable

27

28

search of custodians and readily accessible files or other central locations where responsive

documents are likely to be found.

**Request No. 53:**

> *All Documents and Communications Concerning Uber drivers who quit or resigned due to an unwillingness to drive without commercial licenses or commercial registrations for their vehicles.*

**Response to Request No. 53:**

In addition to the General Objections, Objections to Definitions, and Objections to

Instructions, each of which is incorporated herein by reference, Uber Defendants object to this

Request as overbroad, redundant of other requests, unduly burdensome, not reasonably tailored to

Lead Plaintiff's claims related to specific alleged misrepresentations in Uber's IPO Registration

Statement and Prospectus, as well as to the extent it calls for a legal conclusion, and to the extent it

seeks information that is not relevant to any claims or defenses in the suit nor reasonably calculated

to lead to the discovery of admissible evidence.  Uber Defendants further object to this Request to

the extent that it seeks documents protected by the attorney-client privilege, the work product

doctrine, the joint defense or common interest doctrine and/or any other privilege or immunity from

production.  Uber Defendants object to the use of certain terms in this Request as vague and

ambiguous, including "unwillingness," "commercial licenses," and "commercial registrations."

Uber Defendants further object to this Request to the extent it would result in the disclosure of

information in violation of privacy rights or obligations under any constitutional, statutory or

common law rights of privacy.

Subject to and without waiving these objections, Uber Defendants are prepared to meet and

confer with Lead Plaintiff to discuss whether the Request can be sufficiently narrowed and, subject

to such discussions, agree to produce relevant non-privileged documents located upon a reasonable

search of custodians and readily accessible files or other central locations where responsive

documents are likely to be found.

**Request No. 54:**

> *All Documents and Communications received from or sent to any Uber driver regarding the legality of Uber's operations or that driving an Uber vehicle in the jurisdiction at issue was legal, and/or Uber's compliance with the law.*

**Response to Request No. 54:**

In addition to the General Objections, Objections to Definitions, and Objections to Instructions, each of which is incorporated herein by reference, Uber Defendants object to this Request as overbroad, redundant of other requests, unduly burdensome, not reasonably tailored to Lead Plaintiff's claims related to specific alleged misrepresentations in Uber's IPO Registration Statement and Prospectus, as well as to the extent it calls for a legal conclusion, and to the extent it seeks information that is not relevant to any claims or defenses in the suit nor reasonably calculated to lead to the discovery of admissible evidence. Uber Defendants further object to this Request to the extent that it seeks documents protected by the attorney-client privilege, the work product doctrine, the joint defense or common interest doctrine and/or any other privilege or immunity from production. Uber Defendants object to the use of certain terms in this Request as vague and ambiguous. In particular, Uber Defendants object to the use of the terms "legality" and "compliance." Uber Defendants further object to this Request to the extent it would result in the disclosure of information in violation of privacy rights or obligations under any constitutional, statutory or common law rights of privacy.

Subject to and without waiving these objections, Uber Defendants are prepared to meet and confer with Lead Plaintiff to discuss whether the Request can be sufficiently narrowed and, subject to such discussions, agree to produce relevant non-privileged documents located upon a reasonable search of custodians and readily accessible files or other central locations where responsive documents are likely to be found.

**Request No. 55:**

*All Documents and Communications Concerning Uber's Policies on how to launch UberX peer-to-peer ridesharing, Including any amendments, modifications and drafts of said Policies.*

**Response to Request No. 55:**

In addition to the General Objections, Objections to Definitions, and Objections to Instructions, each of which is incorporated herein by reference, Uber Defendants object to this Request as overbroad, redundant of other requests, unduly burdensome, not reasonably tailored to Lead Plaintiff's claims related to specific alleged misrepresentations in Uber's IPO Registration

Statement and Prospectus, as well as to the extent it calls for a legal conclusion, and to the extent it seeks information that is not relevant to any claims or defenses in the suit nor reasonably calculated to lead to the discovery of admissible evidence.  Uber Defendants further object to this Request to the extent that it seeks documents protected by the attorney-client privilege, the work product doctrine, the joint defense or common interest doctrine and/or any other privilege or immunity from production.  Uber Defendants object to the use of certain terms in this Request as vague and ambiguous, including "Policies."  Uber Defendants further object to this Request to the extent it would result in the disclosure of information in violation of privacy rights or obligations under any constitutional, statutory or common law rights of privacy.

Subject to and without waiving these objections, Uber Defendants are prepared to meet and confer with Lead Plaintiff to discuss whether the Request can be sufficiently narrowed and, subject to such discussions, agree to produce relevant non-privileged documents located upon a reasonable search of custodians and readily accessible files or other central locations where responsive documents are likely to be found.

**Request No. 56:**

> *All Documents and Communications Concerning Uber's Policies for deactivations of Uber drivers that lacked proper commercial licensing or vehicle registration.  This request is not limited to the Relevant Time Period.*

**Response to Request No. 56:**

In addition to the General Objections, Objections to Definitions, and Objections to Instructions, each of which is incorporated herein by reference, Uber Defendants object to this Request as overbroad, redundant of other requests, unduly burdensome, not reasonably tailored to Lead Plaintiff's claims related to specific alleged misrepresentations in Uber's IPO Registration Statement and Prospectus, as well as to the extent it calls for a legal conclusion, and to the extent it seeks information that is not relevant to any claims or defenses in the suit nor reasonably calculated to lead to the discovery of admissible evidence.  In particular, Uber Defendants object that this Request contains no time period limitation whatsoever and is therefore even more overbroad and unduly burdensome as a result.  Uber Defendants further object to this Request to the extent that it seeks documents protected by the attorney-client privilege, the work product doctrine, the joint

defense or common interest doctrine and/or any other privilege or immunity from production.  Uber

Defendants further object to this Request as vague and ambiguous with respect to its use of the term

"proper commercial licensing."  Uber Defendants further object to this Request to the extent it

would result in the disclosure of information in violation of privacy rights or obligations under any

constitutional, statutory or common law rights of privacy.

Subject to and without waiving these objections, Uber Defendants are prepared to meet and

confer with Lead Plaintiff to discuss whether the Request can be sufficiently narrowed and, subject

to such discussions, agree to produce relevant non-privileged documents located upon a reasonable

search of custodians and readily accessible files or other central locations where responsive

documents are likely to be found.

**Request No. 57:**

*All Documents and Communications Concerning Uber's decision to classify Uber drivers as independent contractors instead of Employees, Including, for each market that Uber operated in, the following:*

    *a.  When Uber first implemented its classification for Uber drivers as independent contractors;*

    *b.  To the extent applicable, when Uber chose to change the classification of its Uber drivers; and*

    *c.  any cost-benefit analyses for classification of Uber drivers.*

**Response to Request No. 57:**

In addition to the General Objections, Objections to Definitions, and Objections to

Instructions, each of which is incorporated herein by reference, Uber Defendants object to this

Request as overbroad, redundant of other requests, unduly burdensome, not reasonably tailored to

Lead Plaintiff's claims related to specific alleged misrepresentations in Uber's IPO Registration

Statement and Prospectus, as well as to the extent it calls for a legal conclusion, and to the extent it

seeks information that is not relevant to any claims or defenses in the suit nor reasonably calculated

to lead to the discovery of admissible evidence.  Uber Defendants further object to this Request to

the extent that it seeks documents protected by the attorney-client privilege, the work product

1    doctrine, the joint defense or common interest doctrine and/or any other privilege or immunity from

2    production.

3        Subject to and without waiving these objections, Uber Defendants are prepared to meet and

4    confer with Lead Plaintiff to discuss whether the Request can be sufficiently narrowed and, subject

5    to such discussions, agree to produce relevant non-privileged documents located upon a reasonable

6    search of custodians and readily accessible files or other central locations where responsive

7    documents are likely to be found.

8    **Request No. 58:**

9        *All Documents and Communications Concerning AB5.*

10   **Response to Request No. 58:**

11       In addition to the General Objections, Objections to Definitions, and Objections to

12   Instructions, each of which is incorporated herein by reference, Uber Defendants object to this

13   Request as overbroad, redundant of other requests, unduly burdensome, not reasonably tailored to

14   Lead Plaintiff's claims related to specific alleged misrepresentations in Uber's IPO Registration

15   Statement and Prospectus, as well as to the extent it calls for a legal conclusion, and to the extent it

16   seeks information that is not relevant to any claims or defenses in the suit nor reasonably calculated

17   to lead to the discovery of admissible evidence.  Uber Defendants further object to this Request to

18   the extent that it seeks documents protected by the attorney-client privilege, the work product

19   doctrine, the joint defense or common interest doctrine and/or any other privilege or immunity from

20   production.

21       Subject to and without waiving these objections, Uber Defendants are prepared to meet and

22   confer with Lead Plaintiff to discuss whether the Request can be sufficiently narrowed and, subject

23   to such discussions, agree to produce relevant non-privileged documents located upon a reasonable

24   search of custodians and readily accessible files or other central locations where responsive

25   documents are likely to be found.

26   **Request No. 59:**

27       *All Documents and Communications Concerning Defendant Khosrowshahi's June 12, 2019*
         *Op-Ed in the San Francisco Chronicle ("Chronicle"), Including:*

28

a. *Identities of all Persons involved in the drafting, information gathering, editing, and finalization of the Op-Ed;*

b. *Communications by, or between, Uber, Lyft, and/or Chronicle Employees;*

c. *Documents sent by, or received from, Uber, Lyft and/or Chronicle Employees; and*

d. *Dates, times, and locations for any Meetings associated with the Op-Ed.*

**Response to Request No. 59:**

In addition to the General Objections, Objections to Definitions, and Objections to Instructions, each of which is incorporated herein by reference, Uber Defendants object to this Request as overbroad, redundant of other requests, unduly burdensome, not reasonably tailored to Lead Plaintiff's claims related to specific alleged misrepresentations in Uber's IPO Registration Statement and Prospectus, as well as to the extent it calls for a legal conclusion, and to the extent it seeks information that is not relevant to any claims or defenses in the suit nor reasonably calculated to lead to the discovery of admissible evidence.  Uber Defendants further object to this Request to the extent that it seeks documents protected by the attorney-client privilege, the work product doctrine, the joint defense or common interest doctrine and/or any other privilege or immunity from production.  Uber Defendants further object to this Request on the basis that, to the extent it seeks relevant information, it is redundant of other Requests.

Based upon the foregoing objections, Uber Defendants will not produce documents in response to this Request.

**Request No. 60:**

*All Documents and Communications between Uber and the New Jersey Department of Labor and Workforce Development between January 1, 2015 and December 31, 2019.*

**Response to Request No. 60:**

In addition to the General Objections, Objections to Definitions, and Objections to Instructions, each of which is incorporated herein by reference, Uber Defendants object to this Request as overbroad, redundant of other requests, unduly burdensome, not reasonably tailored to Lead Plaintiff's claims related to specific alleged misrepresentations in Uber's IPO Registration Statement and Prospectus, as well as to the extent it calls for a legal conclusion, and to the extent it seeks information that is not relevant to any claims or defenses in the suit nor reasonably calculated

to lead to the discovery of admissible evidence.  Uber Defendants further object to this Request to

the extent it would result in the disclosure of information in violation of privacy rights or

obligations under any constitutional, statutory or common law rights of privacy.  Uber Defendants

further object to this Request to the extent that it seeks documents protected by the attorney-client

privilege, the work product doctrine, the joint defense or common interest doctrine and/or any other

privilege or immunity from production.

Subject to and without waiving these objections, Uber Defendants are prepared to meet and

confer with Lead Plaintiff to discuss whether the Request can be sufficiently narrowed and, subject

to such discussions, agree to produce relevant non-privileged documents located upon a reasonable

search of custodians and readily accessible files or other central locations where responsive

documents are likely to be found.

**Request No. 61:**

> *All Documents and Communications Concerning passenger safety, Including:*
>
> > *a.  Each report of any crime including sexual assault and rape reported to Uber since January 1, 2017;*
> >
> > *b.   Each report of sexual harassment reported to Uber since January 1, 2017; and*
> >
> > *c.  Uber's handling and resolution of each report it received.*

**Response to Request No. 61:**

In addition to the General Objections, Objections to Definitions, and Objections to

Instructions, each of which is incorporated herein by reference, Uber Defendants object to this

Request as overbroad, redundant of other requests, unduly burdensome, not reasonably tailored to

Lead Plaintiff's claims related to specific alleged misrepresentations in Uber's IPO Registration

Statement and Prospectus, as well as to the extent it calls for a legal conclusion, and to the extent it

seeks information that is not relevant to any claims or defenses in the suit nor reasonably calculated

to lead to the discovery of admissible evidence.  Uber Defendants further object to this Request to

the extent that it seeks documents protected by the attorney-client privilege, the work product

doctrine, the joint defense or common interest doctrine and/or any other privilege or immunity from

production.  Uber Defendants further object to this Request as vague and ambiguous with respect to

its use of the term "passenger safety."  Uber Defendants further object to this Request to the extent
it would result in the disclosure of information in violation of privacy rights or obligations under
any constitutional, statutory or common law rights of privacy.

Subject to and without waiving these objections, Uber Defendants are prepared to meet and
confer with Lead Plaintiff to discuss whether the Request can be sufficiently narrowed and, subject
to such discussions, agree to produce relevant non-privileged documents located upon a reasonable
search of custodians and readily accessible files or other central locations where responsive
documents are likely to be found.  In particular, Uber Defendants will not produce documents in
response to subparts (a) through (c) of this Request.

**Request No. 62:**

*All Documents and Communications Concerning Uber's internal investigation system
and/or department, Including:*

  a. *Hiring of investigators;*

  b. *Training of investigators;*

  c. *Policies for handling or conducting investigations;*

  d. *Meetings with investigators;*

  e. *Notes obtained during investigations Concerning incidents involving drivers and/or
passengers;*

  f. *Uber's "three-strikes" system;*

  g. *Executive handling of third-strike drivers;*

  h. *Policies for handling or disciplining third-strike drivers, Including factors
considered in giving Uber drivers another chance;*

  i.  *Disciplinary action taken against investigators;*

  j. *Termination of investigators;*

  k. *Communication and/or cooperation with law enforcement and first responders;*

  l. *Communications and/or cooperation with outside legal counsel for the accused
and/or victims;*

  m. *Meetings with accused drivers and/or passengers;*

  n. *Meetings with alleged victims;*

  o. *Notifications to alleged victims; and*

1          *p.  Refunds issued to alleged victims[.]*

2    **Response to Request No. 62:**

3          In addition to the General Objections, Objections to Definitions, and Objections to

4    Instructions, each of which is incorporated herein by reference, Uber Defendants object to this

5    Request as overbroad, redundant of other requests, unduly burdensome, not reasonably tailored to

6    Lead Plaintiff's claims related to specific alleged misrepresentations in Uber's IPO Registration

7    Statement and Prospectus, as well as to the extent it calls for a legal conclusion, and to the extent it

8    seeks information that is not relevant to any claims or defenses in the suit nor reasonably calculated

9    to lead to the discovery of admissible evidence.  Uber Defendants further object to this Request to

10   the extent that it seeks documents protected by the attorney-client privilege, the work product

11   doctrine, the joint defense or common interest doctrine and/or any other privilege or immunity from

12   production.  Uber Defendants object to the use of certain terms in this Request as vague and

13   ambiguous, including "Policies," "third-strike drivers," and "investigators."  Uber Defendants

14   further object to this Request to the extent it would result in the disclosure of information in

15   violation of privacy rights or obligations under any constitutional, statutory or common law rights

16   of privacy.

17         Subject to and without waiving these objections, Uber Defendants are prepared to meet and

18   confer with Lead Plaintiff to discuss whether the Request can be sufficiently narrowed and, subject

19   to such discussions, agree to produce relevant non-privileged documents located upon a reasonable

20   search of custodians and readily accessible files or other central locations where responsive

21   documents are likely to be found.  In particular, Uber Defendants will not produce documents in

22   response to subparts (e), or (i) through (p) of this Request.

23   **Request No. 63:**

24          *All Documents and Communications Concerning the September 25, 2019 Washington Post*
        *article referenced in ¶43 of the Complaint.*

25   **Response to Request No. 63:**

26          In addition to the General Objections, Objections to Definitions, and Objections to

27   Instructions, each of which is incorporated herein by reference, Uber Defendants object to this

28

1  Request as overbroad, redundant of other requests, unduly burdensome, not reasonably tailored to

2  Lead Plaintiff's claims related to specific alleged misrepresentations in Uber's IPO Registration

3  Statement and Prospectus, as well as to the extent it calls for a legal conclusion, and to the extent it

4  seeks information that is not relevant to any claims or defenses in the suit nor reasonably calculated

5  to lead to the discovery of admissible evidence.  Uber Defendants further object to this Request to

6  the extent that it seeks documents protected by the attorney-client privilege, the work product

7  doctrine, the joint defense or common interest doctrine and/or any other privilege or immunity from

8  production.

9          Subject to and without waiving these objections, Uber Defendants are prepared to meet and

10  confer with Lead Plaintiff to discuss whether the Request can be sufficiently narrowed and, subject

11  to such discussions, agree to produce relevant non-privileged documents located upon a reasonable

12  search of custodians and readily accessible files or other central locations where responsive

13  documents are likely to be found.

14  **Request No. 64:**

15      *All Documents and Communications Concerning "Super Pumped: The Battle for Uber" and
        reporting by the author Mike Isaac.*

16  **Response to Request No. 64:**

17          In addition to the General Objections, Objections to Definitions, and Objections to

18  Instructions, each of which is incorporated herein by reference, Uber Defendants object to this

19  Request as overbroad, redundant of other requests, unduly burdensome, not reasonably tailored to

20  Lead Plaintiff's claims related to specific alleged misrepresentations in Uber's IPO Registration

21  Statement and Prospectus, as well as to the extent it calls for a legal conclusion, and to the extent it

22  seeks information that is not relevant to any claims or defenses in the suit nor reasonably calculated

23  to lead to the discovery of admissible evidence.  Uber Defendants further object to this Request to

24  the extent that it seeks documents protected by the attorney-client privilege, the work product

25  doctrine, the joint defense or common interest doctrine and/or any other privilege or immunity from

26  production.

27

28

1    Subject to and without waiving these objections, Uber Defendants are prepared to meet and

2    confer with Lead Plaintiff to discuss whether the Request can be sufficiently narrowed and, subject

3    to such discussions, agree to produce relevant non-privileged documents located upon a reasonable

4    search of custodians and readily accessible files or other central locations where responsive

5    documents are likely to be found.

6    **Request No. 65:**

7    *All Documents and Communications Concerning the "US Safety Report" that Uber released on December 5, 2019, Including:*

8

9    a.  *All draft reports;*

10   b.  *All underlying data and information associated with the report both in its original form (e.g., handwritten notes) and final form (e.g., handwritten notes converted and saved onto word processing software);*

11

12   c.  *All Persons involved in compiling, assembling, drafting, editing, executing, reviewing and completing the report;*

13   d.  *When Uber first began compiling data for the report;*

14   e.  *When Uber last compiled data for the report; and*

15   f.  *When Uber first contemplated a "US Safety Report."*

16   **Response to Request No. 65:**

17   In addition to the General Objections, Objections to Definitions, and Objections to

18   Instructions, each of which is incorporated herein by reference, Uber Defendants object to this

19   Request as overbroad, redundant of other requests, unduly burdensome, not reasonably tailored to

20   Lead Plaintiff's claims related to specific alleged misrepresentations in Uber's IPO Registration

21   Statement and Prospectus, as well as to the extent it calls for a legal conclusion, and to the extent it

22   seeks information that is not relevant to any claims or defenses in the suit nor reasonably calculated

23   to lead to the discovery of admissible evidence.  Uber Defendants further object to this Request to

24   the extent that it seeks documents protected by the attorney-client privilege, the work product

25   doctrine, the joint defense or common interest doctrine and/or any other privilege or immunity from

26   production.  Uber Defendants object to the use of certain terms in this Request as vague and

27   ambiguous, including "all underlying data and information associated with the report," "data for the

28   report," and "US Safety Report."  Uber Defendants further object to this Request to the extent it

1  would result in the disclosure of information in violation of privacy rights or obligations under any

2  constitutional, statutory or common law rights of privacy.

3          Subject to and without waiving these objections, Uber Defendants are prepared to meet and

4  confer with Lead Plaintiff to discuss whether the Request can be sufficiently narrowed and, subject

5  to such discussions, agree to produce relevant non-privileged documents located upon a reasonable

6  search of custodians and readily accessible files or other central locations where responsive

7  documents are likely to be found.

8  **Request No. 66:**

9          *All Documents and Communications Concerning specific "accused party" figures and*
   *specific "reporting party" figures for non-consensual sexual penetration as discussed in the*
10  *"US Safety Report."*

11  **Response to Request No. 66:**

12          In addition to the General Objections, Objections to Definitions, and Objections to

13  Instructions, each of which is incorporated herein by reference, Uber Defendants object to this

14  Request on the ground that it seeks information that is not relevant to any claims or defenses in the

15  suit nor reasonably calculated to lead to the discovery of admissible evidence.  Uber Defendants

16  further object to this Request to the extent that it seeks documents protected by the attorney-client

17  privilege, the work product doctrine, the joint defense or common interest doctrine and/or any other

18  privilege or immunity from production.  Uber Defendants further object to this Request as vague

19  and ambiguous with respect to its use of the term "US Safety Report."  Uber Defendants further

20  object to this Request to the extent it would result in the disclosure of information in violation of

21  privacy rights or obligations under any constitutional, statutory or common law rights of privacy.

22  Uber Defendants object to this Request to the extent it calls for a legal conclusion.

23          Based upon the foregoing objections, Uber Defendants will not produce documents in

24  response to this Request.

25  **Request No. 67:**

26          *All Documents and Communications Concerning any international-equivalent safety report*
   *similar to the "US Safety Report" that Uber generated in 2019, including any drafts thereof.*

27

28

**094**

**Response to Request No. 67:**

In addition to the General Objections, Objections to Definitions, and Objections to Instructions, each of which is incorporated herein by reference, Uber Defendants object to this Request as overbroad, redundant of other requests, unduly burdensome, not reasonably tailored to Lead Plaintiff's claims related to specific alleged misrepresentations in Uber's IPO Registration Statement and Prospectus, as well as to the extent it calls for a legal conclusion, and to the extent it seeks information that is not relevant to any claims or defenses in the suit nor reasonably calculated to lead to the discovery of admissible evidence.  Uber Defendants further object to this Request to the extent that it seeks documents protected by the attorney-client privilege, the work product doctrine, the joint defense or common interest doctrine and/or any other privilege or immunity from production.  Uber Defendants object to the use of certain terms in this Request as vague and ambiguous, including "international-equivalent" and "US Safety Report."  Uber Defendants further object to this Request to the extent it would result in the disclosure of information in violation of privacy rights or obligations under any constitutional, statutory or common law rights of privacy.

Based upon the foregoing objections, Uber Defendants will not produce documents in response to this Request.

**Request No. 68:**

*All Documents and Communications Concerning corresponding data for every other country across Uber's global operations that could be used to generate an international or non-United States equivalent safety report.*

**Response to Request No. 68:**

In addition to the General Objections, Objections to Definitions, and Objections to Instructions, each of which is incorporated herein by reference, Uber Defendants object to this Request on the ground that it seeks information that is not relevant to any claims or defenses in the suit nor reasonably calculated to lead to the discovery of admissible evidence.  Uber Defendants further object to this Request to the extent that it seeks documents protected by the attorney-client privilege, the work product doctrine, the joint defense or common interest doctrine and/or any other privilege or immunity from production.  Uber Defendants object to the use of certain terms in this Request as vague and ambiguous, including "corresponding data," "every other country," "could be

095

used to generate," and "international or non-United States equivalent safety report."  Uber

Defendants further object to this Request to the extent it would result in the disclosure of

information in violation of privacy rights or obligations under any constitutional, statutory or

common law rights of privacy.  Uber Defendants object to this Request to the extent it calls for a

legal conclusion.

Based upon the foregoing objections, Uber Defendants will not produce documents in

response to this Request.

**Request No. 69:**

*All Documents and Communications Concerning the number of fatal crashes, fatal physical
assaults and sexual assaults between January 1, 2019 and December 31, 2019 and any
Documents evidencing the difference between 2019 incidents and incidents from earlier
years (e.g., Documents showing trends of incidents).*

**Response to Request No. 69:**

In addition to the General Objections, Objections to Definitions, and Objections to

Instructions, each of which is incorporated herein by reference, Uber Defendants object to this

Request as overbroad, redundant of other requests, unduly burdensome, not reasonably tailored to

Lead Plaintiff's claims related to specific alleged misrepresentations in Uber's IPO Registration

Statement and Prospectus, as well as to the extent it calls for a legal conclusion, and to the extent it

seeks information that is not relevant to any claims or defenses in the suit nor reasonably calculated

to lead to the discovery of admissible evidence.  Uber Defendants further object to this Request to

the extent that it seeks documents protected by the attorney-client privilege, the work product

doctrine, the joint defense or common interest doctrine and/or any other privilege or immunity from

production.  Uber Defendants further object to this Request to the extent it would result in the

disclosure of information in violation of privacy rights or obligations under any constitutional,

statutory or common law rights of privacy.

Subject to and without waiving these objections, Uber Defendants are prepared to meet and

confer with Lead Plaintiff to discuss whether the Request can be sufficiently narrowed and, subject

to such discussions, agree to produce relevant non-privileged documents located upon a reasonable

1    search of custodians and readily accessible files or other central locations where responsive

2    documents are likely to be found.

3    **Request No. 70:**

4        *All Documents and Communications Concerning Uber's settlement of passenger safety*
         *claims, Including:*

5            a.   *Number of cases settled;*

6            b.   *Type of cases settled;*

7            c.   *When the cases settled;*

8            d.   *Jurisdiction where the cases settled;*

9            e.   *The dollar amount of each settlement;*

10           f.   *The total amount of cases settled; and*

11           g.   *The identity of each plaintiff's firm involved in each case, to the extent the victim*
                  *retained an attorney.*

12

13   **Response to Request No. 70:**

14       In addition to the General Objections, Objections to Definitions, and Objections to

15   Instructions, each of which is incorporated herein by reference, Uber Defendants object to this

16   Request on the ground that it seeks information that is not relevant to any claims or defenses in the

17   suit nor reasonably calculated to lead to the discovery of admissible evidence.  Uber Defendants

18   further object to this Request to the extent that it seeks documents protected by the attorney-client

19   privilege, the work product doctrine, the joint defense or common interest doctrine and/or any other

20   privilege or immunity from production.  Uber Defendants object to the use of certain terms in this

21   Request as vague and ambiguous, including "Uber" and "settlement of passenger safety claims."

22   Uber Defendants further object to this Request to the extent it would result in the disclosure of

23   information in violation of privacy rights or obligations under any constitutional, statutory or

24   common law rights of privacy.  Uber Defendants object to this Request to the extent it calls for a

25   legal conclusion.

26       Based upon the foregoing objections, Uber Defendants will not produce documents in

27   response to this Request.

28

**Request No. 71:**

*All Documents and Communications Concerning Uber's breach of Transport of London regulations, Including:*

*a.      Any failures to address issues with checks for drivers, insurance and safety;*

*b.      Any security lapse; and*

*c.      Trips where the wrong Uber driver picked up passengers.*

**Response to Request No. 71:**

In addition to the General Objections, Objections to Definitions, and Objections to Instructions, each of which is incorporated herein by reference, Uber Defendants object to this Request as overbroad, redundant of other requests, unduly burdensome, not reasonably tailored to Lead Plaintiff's claims related to specific alleged misrepresentations in Uber's IPO Registration Statement and Prospectus, as well as to the extent it calls for a legal conclusion, and to the extent it seeks information that is not relevant to any claims or defenses in the suit nor reasonably calculated to lead to the discovery of admissible evidence.  Uber Defendants further object to this Request to the extent that it seeks documents protected by the attorney-client privilege, the work product doctrine, the joint defense or common interest doctrine and/or any other privilege or immunity from production.  Uber Defendants further object to this Request to the extent it would result in the disclosure of information in violation of privacy rights or obligations under any constitutional, statutory or common law rights of privacy.

Subject to and without waiving these objections, Uber Defendants are prepared to meet and confer with Lead Plaintiff to discuss whether the Request can be sufficiently narrowed and, subject to such discussions, agree to produce relevant non-privileged documents located upon a reasonable search of custodians and readily accessible files or other central locations where responsive documents are likely to be found.

**Request No. 72:**

*All Documents and Communications Concerning Uber's reaction to Transport of London's 62-page report (¶ 283 of the Complaint), Including:*

*a.   Changes to Policy for passenger safety and driver verification;*

b. *To the extent Uber has not changed its Policies, the reasons why Uber has not changed its Policies;*

c. *Whether any changes in Policies occurred in any other jurisdiction; and*

d. *Any legal action Uber has taken, or anticipates taking, to narrow, limit, strike, or abrogate any requirement to comply with the report or appeals or actions taken to overturn London's ban.*

**Response to Request No. 72:**

In addition to the General Objections, Objections to Definitions, and Objections to Instructions, each of which is incorporated herein by reference, Uber Defendants object to this Request as overbroad, redundant of other requests, unduly burdensome, not reasonably tailored to Lead Plaintiff's claims related to specific alleged misrepresentations in Uber's IPO Registration Statement and Prospectus, as well as to the extent it calls for a legal conclusion, and to the extent it seeks information that is not relevant to any claims or defenses in the suit nor reasonably calculated to lead to the discovery of admissible evidence. Uber Defendants further object to this Request to the extent that it seeks documents protected by the attorney-client privilege, the work product doctrine, the joint defense or common interest doctrine and/or any other privilege or immunity from production. Uber Defendants object to the use of certain terms in this Request as vague and ambiguous, including "Policy" and "passenger safety." Uber Defendants further object to this Request on the basis that, to the extent it seeks relevant information, it is redundant of other Requests. Uber Defendants further object to this Request to the extent it would result in the disclosure of information in violation of privacy rights or obligations under any constitutional, statutory or common law rights of privacy.

Subject to and without waiving these objections, Uber Defendants are prepared to meet and confer with Lead Plaintiff to discuss whether the Request can be sufficiently narrowed and, subject to such discussions, agree to produce relevant non-privileged documents located upon a reasonable search of custodians and readily accessible files or other central locations where responsive documents are likely to be found.

**Request No. 73:**

> *All Documents and Communications Concerning reports, notices, lawsuits, complaints, non-privileged portions of legal files, and other references of Uber Employees being sexually harassed or assaulted in connection with their employment.*

**Response to Request No. 73:**

In addition to the General Objections, Objections to Definitions, and Objections to Instructions, each of which is incorporated herein by reference, Uber Defendants object to this Request on the ground that it seeks information that is not relevant to any claims or defenses in the suit nor reasonably calculated to lead to the discovery of admissible evidence.  In particular, Uber Defendants object to this Request on the ground that the Amended Complaint does not allege that Uber's IPO Offering Documents were false or misleading for failure to disclose workplace harassment issues and similar employment issues at Uber.  Uber Defendants further object to this Request to the extent it would result in the disclosure of information in violation of privacy rights or obligations under any constitutional, statutory or common law rights of privacy.  Uber Defendants further object to this Request to the extent that it seeks documents protected by the attorney-client privilege, the work product doctrine, the joint defense or common interest doctrine and/or any other privilege or immunity from production.  Uber Defendants object to this Request to the extent it calls for a legal conclusion.

Based upon the foregoing objections, Uber Defendants will not produce documents in response to this Request.

**Request No. 74:**

> *All Documents and Communications Concerning former U.S. Attorney General Eric Holder's internal investigation into Uber, Including:*
>
> a.  *Any reports and draft reports;*
>
> b.  *All Communications between Eric Holder, or his representatives, and any Uber Employee;*
>
> b.  *All notes taken, Including notes from approximately 200 interviews with current and former Employees;*
>
> c.  *All Documents flagged, pulled, marked, or otherwise reviewed, relied on or referenced in any report or draft report;*

**100**

e.  *All recommendations Eric Holder gave to Uber; and*

f.  *Uber's attempts, or actual compliance, with the recommendations Including when Uber first sought to comply with the recommendations and when Uber fully complied with the recommendations.*

**Response to Request No. 74:**

In addition to the General Objections, Objections to Definitions, and Objections to Instructions, each of which is incorporated herein by reference, Uber Defendants object to this Request on the ground that it seeks information that is not relevant to any claims or defenses in the suit nor reasonably calculated to lead to the discovery of admissible evidence.  Uber Defendants further object to this Request to the extent that it seeks documents protected by the attorney-client privilege, the work product doctrine, the joint defense or common interest doctrine and/or any other privilege or immunity from production.  Uber Defendants object to the use of certain terms in this Request as vague and ambiguous, including "draft," "compliance," and "recommendations."  Uber Defendants further object to this Request to the extent it would result in the disclosure of information in violation of privacy rights or obligations under any constitutional, statutory or common law rights of privacy.  Uber Defendants object to this Request to the extent it calls for a legal conclusion.

Based upon the foregoing objections, Uber Defendants will not produce documents in response to this Request.

**Request No. 75:**

*All Documents and Communications Concerning Uber's layoff of approximately 400 marketing Employees on or about July 29, 2019, Including:*

a.  *The reasons the layoffs occurred;*

b.  *When Uber first determined that a layoff was necessary;*

c.  *The financial impact of those layoffs; and*

d.  *The number of Employees that remained in the marketing department immediately after the layoffs.*

**Response to Request No. 75:**

In addition to the General Objections, Objections to Definitions, and Objections to Instructions, each of which is incorporated herein by reference, Uber Defendants object to this

1    Request as overbroad, redundant of other requests, unduly burdensome, not reasonably tailored to

2    Lead Plaintiff's claims related to specific alleged misrepresentations in Uber's IPO Registration

3    Statement and Prospectus, as well as to the extent it calls for a legal conclusion, and to the extent it

4    seeks information that is not relevant to any claims or defenses in the suit nor reasonably calculated

5    to lead to the discovery of admissible evidence.  Uber Defendants further object to this Request to

6    the extent that it seeks documents protected by the attorney-client privilege, the work product

7    doctrine, the joint defense or common interest doctrine and/or any other privilege or immunity from

8    production.  Uber Defendants further object to this Request to the extent it would result in the

9    disclosure of information in violation of privacy rights or obligations under any constitutional,

10   statutory or common law rights of privacy.

11          Subject to and without waiving these objections, Uber Defendants are prepared to meet and

12   confer with Lead Plaintiff to discuss whether the Request can be sufficiently narrowed and, subject

13   to such discussions, agree to produce relevant non-privileged documents located upon a reasonable

14   search of custodians and readily accessible files or other central locations where responsive

15   documents are likely to be found.

16   **Request No. 76:**

17          *All Documents and Communications Concerning Uber's layoff of approximately 435
             Employees on or about September 10, 2019, Including:*

18          a.   *The reasons the layoffs occurred;*

19          b.   *When Uber first determined that a layoff was necessary;*

20          c.   *The financial impact of those layoffs;*

21          d.   *The number of Employees laid off from the product team;*

22          e.   *The number of Employees remaining on the product team immediately after layoffs;*

23          f.   *The number of Employees laid off from the engineering team; and*

24          g.   *The number of Employees remaining on the engineering team immediately after the
                 layoffs.*
25

26   **Response to Request No. 76:**

27          In addition to the General Objections, Objections to Definitions, and Objections to

28   Instructions, each of which is incorporated herein by reference, Uber Defendants object to this

Request as overbroad, redundant of other requests, unduly burdensome, not reasonably tailored to Lead Plaintiff's claims related to specific alleged misrepresentations in Uber's IPO Registration Statement and Prospectus, as well as to the extent it calls for a legal conclusion, and to the extent it seeks information that is not relevant to any claims or defenses in the suit nor reasonably calculated to lead to the discovery of admissible evidence.  Uber Defendants further object to this Request to the extent that it seeks documents protected by the attorney-client privilege, the work product doctrine, the joint defense or common interest doctrine and/or any other privilege or immunity from production.  Uber Defendants further object to this Request to the extent it would result in the disclosure of information in violation of privacy rights or obligations under any constitutional, statutory or common law rights of privacy.

Subject to and without waiving these objections, Uber Defendants are prepared to meet and confer with Lead Plaintiff to discuss whether the Request can be sufficiently narrowed and, subject to such discussions, agree to produce relevant non-privileged documents located upon a reasonable search of custodians and readily accessible files or other central locations where responsive documents are likely to be found.

**Request No. 77:**

*All Documents and Communications Concerning Uber's layoff of approximately 350 Employees on or about October 14, 2019, Including:*

  a. *The reasons the layoffs occurred;*

  b. *When Uber first determined that a layoff was necessary;*

  c. *The financial impact of those layoffs;*

  d. *The number of Employees laid off by team or department and;*

  e. *The number of Employees remaining by team or department immediately after layoffs.*

**Response to Request No. 77:**

In addition to the General Objections, Objections to Definitions, and Objections to Instructions, each of which is incorporated herein by reference, Uber Defendants object to this Request as overbroad, redundant of other requests, unduly burdensome, not reasonably tailored to Lead Plaintiff's claims related to specific alleged misrepresentations in Uber's IPO Registration

1    Statement and Prospectus, as well as to the extent it calls for a legal conclusion, and to the extent it

2    seeks information that is not relevant to any claims or defenses in the suit nor reasonably calculated

3    to lead to the discovery of admissible evidence.  Uber Defendants further object to this Request to

4    the extent that it seeks documents protected by the attorney-client privilege, the work product

5    doctrine, the joint defense or common interest doctrine and/or any other privilege or immunity from

6    production.  Uber Defendants further object to this Request to the extent it would result in the

7    disclosure of information in violation of privacy rights or obligations under any constitutional,

8    statutory or common law rights of privacy.

9          Subject to and without waiving these objections, Uber Defendants are prepared to meet and

10   confer with Lead Plaintiff to discuss whether the Request can be sufficiently narrowed and, subject

11   to such discussions, agree to produce relevant non-privileged documents located upon a reasonable

12   search of custodians and readily accessible files or other central locations where responsive

13   documents are likely to be found.

14   **Request No. 78:**

15          *All Documents and Communications Concerning the removal of Travis Kalanick as Chief*
       *Executive Officer ("CEO") of Uber, Including termination letters, severance agreements,*
16     *internal statements to Uber Employees, materials analyzed by the board of directors, and*
       *the reasons why Travis Kalanick was removed as the CEO of Uber.*

17   **Response to Request No. 78:**

18          In addition to the General Objections, Objections to Definitions, and Objections to

19   Instructions, each of which is incorporated herein by reference, Uber Defendants object to this

20   Request on the ground that it seeks information that is not relevant to any claims or defenses in the

21   suit nor reasonably calculated to lead to the discovery of admissible evidence.  In particular, Uber

22   Defendants object to this Request on the ground that Travis Kalanick's resignation as Uber's Chief

23   Executive Officer was announced in June 2017, almost two years prior to Uber's IPO, and the

24   Amended Complaint does not allege that Uber's IPO Offering Documents were false or misleading

25   for failure to disclose information related to Mr. Kalanick's resignation.  Uber Defendants further

26   object to this Request to the extent it would result in the disclosure of information in violation of

27   privacy rights or obligations under any constitutional, statutory or common law rights of privacy.

28

Uber Defendants further object to this Request to the extent that it seeks documents protected by the attorney-client privilege, the work product doctrine, the joint defense or common interest doctrine and/or any other privilege or immunity from production.  Uber Defendants object to this Request to the extent it calls for a legal conclusion.

Based upon the foregoing objections, Uber Defendants will not produce documents in response to this Request.

**Request No. 79:**

*All Documents and Communications Concerning the search for a new CEO to replace Travis Kalanick.*

**Response to Request No. 79:**

In addition to the General Objections, Objections to Definitions, and Objections to Instructions, each of which is incorporated herein by reference, Uber Defendants object to this Request on the ground that it seeks information that is not relevant to any claims or defenses in the suit nor reasonably calculated to lead to the discovery of admissible evidence.  In particular, Uber Defendants object to this Request on the ground that Travis Kalanick's resignation as Uber's Chief Executive Officer ("CEO") was announced in June 2017 and a new CEO was hired in August 2017, almost two years prior to Uber's IPO, and the Amended Complaint does not allege that Uber's IPO Offering Documents were false or misleading for failure to disclose information related to Mr. Kalanick's resignation or his replacement.  Uber Defendants further object to this Request to the extent it would result in the disclosure of information in violation of privacy rights or obligations under any constitutional, statutory or common law rights of privacy.  Uber Defendants further object to this Request to the extent that it seeks documents protected by the attorney-client privilege, the work product doctrine, the joint defense or common interest doctrine and/or any other privilege or immunity from production.  Uber Defendants object to this Request to the extent it calls for a legal conclusion.

Based upon the foregoing objections, Uber Defendants will not produce documents in response to this Request.

**Request No. 80:**

> *All Documents and Communications Concerning the hiring of Dara Khosrowshahi, Including offer letters, internal statements to Uber Employees, materials reviewed by the board of directors and the reasons why Dara Khosrowshahi was hired to be the CEO of Uber.*

**Response to Request No. 80:**

In addition to the General Objections, Objections to Definitions, and Objections to Instructions, each of which is incorporated herein by reference, Uber Defendants object to this Request on the ground that it seeks information that is not relevant to any claims or defenses in the suit nor reasonably calculated to lead to the discovery of admissible evidence. In particular, Uber Defendants object to this Request on the ground that Dara Khosrowshahi was hired to be the CEO of Uber in August 2017, almost two years prior to Uber's IPO, and the Amended Complaint does not allege that Uber's IPO Offering Documents were false or misleading for failure to disclose information related to Mr. Khosrowshahi's hiring. Uber Defendants further object to this Request to the extent it would result in the disclosure of information in violation of privacy rights or obligations under any constitutional, statutory or common law rights of privacy. Uber Defendants further object to this Request to the extent that it seeks documents protected by the attorney-client privilege, the work product doctrine, the joint defense or common interest doctrine and/or any other privilege or immunity from production. Uber Defendants object to this Request to the extent it calls for a legal conclusion.

Based upon the foregoing objections, Uber Defendants will not produce documents in response to this Request.

**Request No. 81:**

> *All Documents and Communications Concerning the creation, execution, and cessation of "cultural norms" or other Uber Policy that had any connection with the hiring of Dara Khosrowshahi or the replacement of Travis Kalanick.*

**Response to Request No. 81:**

In addition to the General Objections, Objections to Definitions, and Objections to Instructions, each of which is incorporated herein by reference, Uber Defendants object to this Request as overbroad, redundant of other requests, unduly burdensome, not reasonably tailored to Lead Plaintiff's claims related to specific alleged misrepresentations in Uber's IPO Registration

Statement and Prospectus, as well as to the extent it calls for a legal conclusion, and to the extent it seeks information that is not relevant to any claims or defenses in the suit nor reasonably calculated to lead to the discovery of admissible evidence.  Uber Defendants further object to this Request to the extent that it seeks documents protected by the attorney-client privilege, the work product doctrine, the joint defense or common interest doctrine and/or any other privilege or immunity from production.

Based upon the foregoing objections, Uber Defendants will not produce documents in response to this Request.

**Request No. 82:**

> *All Documents and Communications Concerning the resignation, termination, or removal of Chief Marketing Officer Rebecca Messina, Including when Uber first began contemplating the removal of Rebecca Messina and any Communications between any Uber Employee and Rebecca Messina regarding her removal from Uber.*

**Response to Request No. 82:**

In addition to the General Objections, Objections to Definitions, and Objections to Instructions, each of which is incorporated herein by reference, Uber Defendants object to this Request as overbroad, redundant of other requests, unduly burdensome, not reasonably tailored to Lead Plaintiff's claims related to specific alleged misrepresentations in Uber's IPO Registration Statement and Prospectus, as well as to the extent it calls for a legal conclusion, and to the extent it seeks information that is not relevant to any claims or defenses in the suit nor reasonably calculated to lead to the discovery of admissible evidence.  Uber Defendants further object to this Request to the extent that it seeks documents protected by the attorney-client privilege, the work product doctrine, the joint defense or common interest doctrine and/or any other privilege or immunity from production.  Uber Defendants further object to this Request to the extent it would result in the disclosure of information in violation of privacy rights or obligations under any constitutional, statutory or common law rights of privacy.

Subject to and without waiving these objections, Uber Defendants are prepared to meet and confer with Lead Plaintiff to discuss whether the Request can be sufficiently narrowed and, subject to such discussions, agree to produce relevant non-privileged documents located upon a reasonable

1  search of custodians and readily accessible files or other central locations where responsive

2  documents are likely to be found.

3  **Request No. 83:**

4     *All Documents and Communications Concerning the underlying data and information used,*
5     *or relied on, to make the statements in the Offering Documents as specifically quoted in*
   *¶¶ 154-166, 169-175, 178-184, 187-192, 194-197, and 200-202 of the Complaint.*

6  **Response to Request No. 83:**

7     In addition to the General Objections, Objections to Definitions, and Objections to

8  Instructions, each of which is incorporated herein by reference, Uber Defendants object to this

9  Request as overbroad, redundant of other requests, unduly burdensome, not reasonably tailored to

10  Lead Plaintiff's claims related to specific alleged misrepresentations in Uber's IPO Registration

11  Statement and Prospectus, as well as to the extent it calls for a legal conclusion, and to the extent it

12  seeks information that is not relevant to any claims or defenses in the suit nor reasonably calculated

13  to lead to the discovery of admissible evidence.  Uber Defendants further object to this Request to

14  the extent that it seeks documents protected by the attorney-client privilege, the work product

15  doctrine, the joint defense or common interest doctrine and/or any other privilege or immunity from

16  production.

17     Subject to and without waiving these objections, Uber Defendants are prepared to meet and

18  confer with Lead Plaintiff to discuss whether the Request can be sufficiently narrowed and, subject

19  to such discussions, agree to produce relevant non-privileged documents located upon a reasonable

20  search of custodians and readily accessible files or other central locations where responsive

21  documents are likely to be found.

22  **Request No. 84:**

23     *All Documents and Communication [sic] between Uber and the New York Times*
   *Concerning the article "Uber's $1-per-ride 'safe ride fees' had nothing to do with safety"*
24   *as alleged in ¶249 of the Complaint.*

25  **Response to Request No. 84:**

26     In addition to the General Objections, Objections to Definitions, and Objections to

27  Instructions, each of which is incorporated herein by reference, Uber Defendants object to this

28  Request on the ground that it seeks information that is not relevant to any claims or defenses in the

suit nor reasonably calculated to lead to the discovery of admissible evidence.  In particular, Uber Defendants object to this Request on the ground that the Amended Complaint does not allege that Uber was using a "safe rides fee" at the time of the IPO or that the IPO Offering Documents were false or misleading for failure to disclose a "safe rides fee" (which was in fact discontinued by Uber in early 2016).  Uber Defendants further object to this Request to the extent that it seeks documents protected by the attorney-client privilege, the work product doctrine, the joint defense or common interest doctrine and/or any other privilege or immunity from production.  Uber Defendants object to this Request to the extent it calls for a legal conclusion.

Based upon the foregoing objections, Uber Defendants will not produce documents in response to this Request.

**Request No. 85:**

*All Documents You intend to rely upon in opposing Lead Plaintiff's motion for class certification in the Action.*

**Response to Request No. 85:**

In addition to the General Objections, Objections to Definitions, and Objections to Instructions, each of which is incorporated herein by reference, Uber Defendants object to this Request as overbroad, redundant of other requests, unduly burdensome, not reasonably tailored to Lead Plaintiff's claims related to specific alleged misrepresentations in Uber's IPO Registration Statement and Prospectus, as well as to the extent it calls for a legal conclusion, and to the extent it seeks information that is not relevant to any claims or defenses in the suit nor reasonably calculated to lead to the discovery of admissible evidence.  Uber Defendants further object to this Request to the extent that it seeks documents protected by the attorney-client privilege, the work product doctrine, the joint defense or common interest doctrine and/or any other privilege or immunity from production.  Uber Defendants further object to this Request as premature given the early stage of this Action and the fact that discovery has just begun.

Subject to and without waiving these objections, Uber Defendants agree to produce relevant non-privileged documents not otherwise provided to Lead Plaintiff (through third-party subpoena

productions, attachment to the opposition, or otherwise) after they have filed their opposition to Lead Plaintiff's motion for class certification.

**Request No. 86:**

> *All Documents Concerning any of Defendants' claims or defenses in this Action including all Documents that Defendants intend to rely upon in this Action.*

**Response to Request No. 86:**

In addition to the General Objections, Objections to Definitions, and Objections to Instructions, each of which is incorporated herein by reference, Uber Defendants object to this Request as overbroad, redundant of other requests, unduly burdensome, not reasonably tailored to Lead Plaintiff's claims related to specific alleged misrepresentations in Uber's IPO Registration Statement and Prospectus, as well as to the extent it calls for a legal conclusion, and to the extent it seeks information that is not relevant to any claims or defenses in the suit nor reasonably calculated to lead to the discovery of admissible evidence. Uber Defendants further object to this Request to the extent that it seeks documents protected by the attorney-client privilege, the work product doctrine, the joint defense or common interest doctrine and/or any other privilege or immunity from production. Uber Defendants further object to this Request as premature given the early stage of this Action and the fact that discovery has just begun.

Subject to and without waiving these objections, Uber Defendants are prepared to meet and confer with Lead Plaintiff to discuss whether the Request can be sufficiently narrowed and, subject to such discussions, agree to produce relevant non-privileged documents located upon a reasonable search of custodians and readily accessible files or other central locations where responsive documents are likely to be found.

**Request No. 87:**

> *All Documents received in response to formal or informal Document requests or subpoenas to any non-parties to this Action with respect to this Action.*

**Response to Request No. 87:**

In addition to the General Objections, Objections to Definitions, and Objections to Instructions, each of which is incorporated herein by reference, Uber Defendants object to this Request as overbroad, redundant of other requests, unduly burdensome, not reasonably tailored to

Lead Plaintiff's claims related to specific alleged misrepresentations in Uber's IPO Registration Statement and Prospectus, as well as to the extent it calls for a legal conclusion, and to the extent it seeks information that is not relevant to any claims or defenses in the suit nor reasonably calculated to lead to the discovery of admissible evidence.  Uber Defendants further object to this Request to the extent that it seeks documents protected by the attorney-client privilege, the work product doctrine, the joint defense or common interest doctrine and/or any other privilege or immunity from production.  Uber Defendants further object to the use of certain terms in this Request as vague and ambiguous, including "formal or informal Document requests."  Subject to and without waiving these objections, Uber Defendants agree to produce documents produced by third parties in response to subpoenas if they are not otherwise provided to Lead Plaintiff, but will not produce any other documents in response to this Request.

**Request No. 88:**

> *All Documents you considered, received or referenced in drafting responses to or identified in response to any interrogatory propounded to You in this Action.*

**Response to Request No. 88:**

In addition to the General Objections, Objections to Definitions, and Objections to Instructions, each of which is incorporated herein by reference, Uber Defendants object to this Request as overbroad, redundant of other requests, unduly burdensome, not reasonably tailored to Lead Plaintiff's claims related to specific alleged misrepresentations in Uber's IPO Registration Statement and Prospectus, as well as to the extent it calls for a legal conclusion, and to the extent it seeks information that is not relevant to any claims or defenses in the suit nor reasonably calculated to lead to the discovery of admissible evidence.  Uber Defendants further object to this Request to the extent that it seeks documents protected by the attorney-client privilege, the work product doctrine, the joint defense or common interest doctrine and/or any other privilege or immunity from production.

Based upon the foregoing objections, Uber Defendants will not produce documents that they "considered, received or referenced in drafting responses to" interrogatories; Uber Defendants agree to produce relevant non-privileged documents they "identified in response to" interrogatories.

**Request No. 89:**

> *All Documents you considered, received or referenced in drafting responses to or identified in response to any requests for admissions propounded to You in this Action.*

**Response to Request No. 89:**

In addition to the General Objections, Objections to Definitions, and Objections to Instructions, each of which is incorporated herein by reference, Uber Defendants object to this Request as overbroad, redundant of other requests, unduly burdensome, not reasonably tailored to Lead Plaintiff's claims related to specific alleged misrepresentations in Uber's IPO Registration Statement and Prospectus, as well as to the extent it calls for a legal conclusion, and to the extent it seeks information that is not relevant to any claims or defenses in the suit nor reasonably calculated to lead to the discovery of admissible evidence. Uber Defendants further object to this Request to the extent that it seeks documents protected by the attorney-client privilege, the work product doctrine, the joint defense or common interest doctrine and/or any other privilege or immunity from production.

Subject to and without waiving these objections, Uber Defendants respond that there are no documents responsive to this Request because Uber Defendants have not received requests for admissions propounded to them in this Action.

**Request No. 90:**

> *All Documents and information Your expert(s) reviewed, considered and/or relied upon to form any expert opinions in this Action.*

**Response to Request No. 90:**

In addition to the General Objections, Objections to Definitions, and Objections to Instructions, each of which is incorporated herein by reference, Uber Defendants object to this Request as overbroad, redundant of other requests, unduly burdensome, not reasonably tailored to Lead Plaintiff's claims related to specific alleged misrepresentations in Uber's IPO Registration Statement and Prospectus, as well as to the extent it calls for a legal conclusion, and to the extent it seeks information that is not relevant to any claims or defenses in the suit nor reasonably calculated to lead to the discovery of admissible evidence. Uber Defendants further object to this Request to the extent that it seeks documents protected by the attorney-client privilege, the work product

doctrine, the joint defense or common interest doctrine and/or any other privilege or immunity from production.  Uber Defendants further object to this Request as premature given the early stage of this Action and the fact that discovery has just begun.

Subject to and without waiving these objections, Uber Defendants are prepared to meet and confer with Lead Plaintiff at the appropriate time in the course of expert discovery to discuss whether the Request can be sufficiently narrowed and, subject to such discussions, agree to produce relevant non-privileged expert materials at that time in accordance with the Federal Rules of Civil Procedure.

**Request No. 91:**

*All Documents and Communications concerning Uber's "Safe Rides Fee," Including:*

    *a.  When the fee was instituted;*

    *b.  Why the fee was instituted;*

    *c.  Whether the fee still exists;*

    *d.  If the fee no longer exists, why the fee was removed; and*

    *e.  All underlying data and information showing flow of monies received as part of the fee to any particular area within the company that the fee was purportedly intended for.*

**Response to Request No. 91:**

In addition to the General Objections, Objections to Definitions, and Objections to Instructions, each of which is incorporated herein by reference, Uber Defendants object to this Request on the ground that it seeks information that is not relevant to any claims or defenses in the suit nor reasonably calculated to lead to the discovery of admissible evidence.  In particular, Uber Defendants object to this Request on the ground that the Amended Complaint does not allege that Uber was using a "safe rides fee" at the time of the IPO or that the IPO Offering Documents were false or misleading for failure to disclose a "safe rides fee" (which was in fact discontinued by Uber in early 2016).  Uber Defendants object to the use of certain terms in this Request as vague and ambiguous, including "Safe Rides Fee" and "all underlying data and information."  Uber Defendants further object to this Request to the extent that it seeks documents protected by the

1   attorney-client privilege, the work product doctrine, the joint defense or common interest doctrine

2   and/or any other privilege or immunity from production.  Uber Defendants object to this Request to

3   the extent it calls for a legal conclusion.

4         Based upon the foregoing objections, Uber Defendants will not produce documents in

5   response to this Request.

6   **Request No. 92:**

7         *All Documents and Communications Concerning the time period in Uber used, exercised,*
          *employed, or implemented "Greyball."*

8   **Response to Request No. 92:**

9         In addition to the General Objections, Objections to Definitions, and Objections to

10  Instructions, each of which is incorporated herein by reference, Uber Defendants object to this

11  Request on the ground that it seeks information that is not relevant to any claims or defenses in the

12  suit nor reasonably calculated to lead to the discovery of admissible evidence.  In particular, Uber

13  Defendants object to this Request on the ground that the Amended Complaint does not allege that

14  Uber was using "Greyball" at the time of the IPO or that the IPO Offering Documents were false or

15  misleading for failure to disclose "Greyball."  Uber Defendants further object to this Request to the

16  extent that it seeks documents protected by the attorney-client privilege, the work product doctrine,

17  the joint defense or common interest doctrine and/or any other privilege or immunity from

18  production.  Uber Defendants object to this Request to the extent it calls for a legal conclusion.

19        Based upon the foregoing objections, Uber Defendants will not produce documents in

20  response to this Request.

21

22  Dated:      June 22, 2021                          SHEARMAN & STERLING LLP

23
                                                       By:      */s/ Daniel H.R. Laguardia*
24                                                              Daniel H.R. Laguardia

25                                                     *Attorneys for Uber Defendants*

26

27

28

**114**

1     Jonathan Gardner (admitted *pro hac vice*)
       Alfred L. Fatale III (admitted *pro hac vice*)
2     Joseph N. Cotilletta (admitted *pro hac vice*)
       Marco A. Dueñas (admitted *pro hac vice*)
3     Lisa Strejlau (admitted *pro hac vice*)
       LABATON SUCHAROW LLP
4     140 Broadway
       New York, New York 10005
5     Telephone: (212) 907-0700
       Facsimile: (212) 818-0477
6     Email: jgardner@labaton.com
             afatale@labaton.com
7               jcotilletta@labaton.com
             mduenas@labaton.com
8               lstrejlau@labaton.com

9     *Lead Counsel for Plaintiffs*

10

11                  **UNITED STATES DISTRICT COURT**

12                  **NORTHERN DISTRICT OF CALIFORNIA**

13                  **SAN FRANCISCO DIVISION**

14     BOSTON RETIREMENT SYSTEM,

15                Plaintiff,       Case No.:  3:19-cv-06361-RS

16        v.                   ECF CASE

17     UBER TECHNOLOGIES, INC., et al.,     **FOURTH AMENDED NOTICE OF DEPOSITION OF DEFENDANT UBER**

18              Defendants.    **TECHNOLOGIES, INC. PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6)**

19

20

21

22        **PLEASE TAKE NOTICE** that, pursuant to Federal Rule of Civil Procedure ("Rule") 30,

23 Lead Plaintiff Boston Retirement System ("Lead Plaintiff") will take the deposition upon oral

24 examination of Defendant Uber Technologies, Inc. ("Uber" or the "Company") through one or

25 more officers, directors, agents, or other representatives who shall be designated to testify on

26 Uber's behalf regarding all the information known or reasonably available to Uber with respect to

27 the subject matters identified in **Schedule B**. Specifically, as agreed upon between Lead Plaintiffs

28

Fourth Amended Notice of Deposition of Defendant Uber Technologies, Inc.
Pursuant to Federal Rule of Civil Procedure 30(b)(6)
Civil Action No. 3:19-cv-06361-RS

**115**

and Counsel for Uber, the following individuals have been designated and testify on the dates, times and locations below:

| DEPONENT NAME | DATE/TIME/LOCATION | DESIGNATED TOPICS |
|---|---|---|
| Will Anderson | 08/03/2022<br>9:00 am MT<br>Remote Means | 1-4, 18-20, 42, 44 |
| Brad Rosenthal | 08/19/2022<br>10:00 am PT<br>Shearman & Sterling LLP<br>535 Mission Street<br>San Francisco, CA 94105 | 1-3, 5, 12-13, 42, 44 |
| Emily Reuter | 09/14/2022<br>10:00 am PT<br>Shearman & Sterling LLP<br>535 Mission Street<br>San Francisco, CA 94105 | 1-3, 7-11, 23, 42, 44 |

All other topics for examination will take place at a later date upon further notice.

**PLEASE TAKE FURTHER NOTICE** that Lead Plaintiff requests that Uber provide the titles of the above-listed persons it will designate to give testimony and summaries of the areas in which each designated person will give testimony at least fourteen (14) days prior to the date the deposition(s) will be conducted. Lead Plaintiff reserves the right to depose any witness Uber designates to testify with regard to the matters set forth in Schedule B regarding his or her personal knowledge of the same matters (*i.e.*, not in her or his capacity as Uber's corporate representative). Moreover, Uber's designated representatives shall be prepared to testify about the subjective beliefs and opinions of Uber as it relates to the topics for which they have been designated.

**PLEASE TAKE FURTHER NOTICE** that the deposition will be taken before a notary public or other officer authorized to administer oaths, and recorded by stenographic means and video. The notary public or officer may administer the oath and court reporter may report the proceedings remotely and may or may not be in the presence of the deponent(s).

**PLEASE TAKE FURTHER NOTICE** that, pursuant to Rules 30(b)(2) and 34, Uber is requested to produce the discoverable information listed in **Schedule C** at least ten (10) days prior to the date the deposition(s) will be conducted.

FOURTH AMENDED NOTICE OF DEPOSITION OF DEFENDANT UBER TECHNOLOGIES, INC.
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6)
CIVIL ACTION NO. 3:19-CV-06361-RS

2

116

1    **PLEASE TAKE FURTHER NOTICE** that the definitions in **Schedule A** shall apply to

2    this Notice and **Schedules B** and **C**, pursuant to Rules 26, 30 and 34.

3    Dated: July 25, 2022

4                                    LABATON SUCHAROW LLP

5                                    */s/ Alfred L. Fatale III*
                                     Jonathan Gardner (admitted *pro hac vice*)
6                                    Alfred L. Fatale III (admitted *pro hac vice*)
                                     Joseph N. Cotilletta (admitted *pro hac vice*)
7                                    Marco A. Dueñas (admitted *pro hac vice*)
8                                    Lisa Strejlau (admitted *pro hac vice*)
                                     140 Broadway
9                                    New York, New York 10005
                                     Telephone: 212-907-0700
10                                   Facsimile: 212-818-0477
11                                   Email:  jgardner@labaton.com
                                             afatale@labaton.com
12                                           jcotilletta@labaton.com
                                             mduenas@labaton.com
13                                           lstrejlau@labaton.com

14                                   *Lead Counsel for Plaintiffs*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---
Fourth Amended Notice of Deposition of Defendant Uber Technologies, Inc.
Pursuant to Federal Rule of Civil Procedure 30(b)(6)
Civil Action No. 3:19-cv-06361-RS

3

117

**SCHEDULE A**

**DEFINITIONS**

1.     "Action" means the above-captioned securities class action.

2.     "Advisor" and "Advisors" mean any and all investment banks, bankers, law firms, lawyers, financial advisors, consultants, accounting firms, accountants, public relations firms, or person(s) or other parties engaged, retained, employed, or consulted by Uber in anticipation of, concerning, or in connection with the Uber IPO.

3.     "All" shall include the term "each" and vice-versa, as necessary to bring within the scope of the request all responses that might otherwise be construed to be outside the scope of the request.

4.     "Board" means the board of directors of Uber collectively, each member and former member individually, each committee or subcommittee thereof, and each member and former member individually of each committee or subcommittee thereof, as context requires.

5.     "Category" or "Categories" refers to the following categories of allegations in the Action: (a) Uber's Business Model and Growth Strategy, as defined herein; (b) Uber's Passenger Safety Issues, as defined herein; and (c) Uber's Financial Condition, as defined herein.

6.     "Communication" refers to any exchange of information, words, numbers, pictures, charts, studies, or graphs by any means of transmission, sending, or receipt of information of any kind by or through any means including, but not limited to, personal delivery, speech, writings, Documents (as defined herein), language (machine, foreign, or otherwise) of any kind, computer electronics or Electronically-Stored Information (as defined herein), sound, radio or video signals, telecommunication, telephone, facsimile, mail, film, photographic film of all types, or other media of any kind.   The term "Communication" also includes, without limitation, all inquiries, discussions, conversations, Correspondence (as defined herein), negotiations, agreements, presentations, understandings, Meetings (as defined herein), notices, requests, responses, demands, complaints, press, publicity, or trade releases.

7.     "Complaint" refers to the Second Amended Class Action Complaint for Violations of the Federal Securities Laws filed May 15, 2021 (ECF No. 137), in this Action. As used herein,

FOURTH AMENDED NOTICE OF DEPOSITION OF DEFENDANT UBER TECHNOLOGIES, INC.
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6) – SCHEDULE A
CIVIL ACTION NO. 3:19-CV-06361-RS

**118**

1   the paragraph symbol (¶) followed by a specific number refers to the corresponding numbered

2   paragraph of the Complaint and the allegation or information contained therein.

3       8.   "Concerning" means relating to, referring to, describing, evidencing, or

4   constituting.

5       9.   "Correspondence" means any letter, memorandum, note, e-mail, facsimile, text

6   message, instant message, internet message board posting, smartphone message, or any other

7   writing containing a Communication from one person or persons to another person or persons.

8       10.   "Defendants" mean "Uber Defendants" together with the "Underwriter

9   Defendants," as those terms are defined below.

10      11.   "Document" is intended to have the broadest possible meaning under Rule 34(a) of

11  the Federal Rules of Civil Procedure, and includes, without limitation, electronic or computerized

12  data compilations, electronic file backup tapes, hard drives and images of hard drives, all drafts,

13  Communications, Correspondence, memoranda, records, presentations, books, manuals, reports

14  and recordings of telephone conversations, telephone logs, statements, summaries, opinions,

15  agreements, ledgers, journals records of accounts, checks, summary of accounts, spreadsheets,

16  databases, receipts, balance sheets, income statements, confirmation slips, questionnaires, desk

17  calendars, appointment books, diaries, journals, graphs, test results, blogs, charts, data, files, log

18  files of computer access and activity, and all of the records kept by electronic, photographic,

19  optical, mechanical, magnetic means and things similar to any of the foregoing, including

20  computer media, regardless of their author, transcripts of testimony, subpoenas, and any paper or

21  writing of whatever description, including any computer database or information contained in any

22  computer although not yet printed out.  A draft or non-identical copy of any Document is a separate

23  Document within the meaning of this term.

24      12.   "Electronic data" means the original (or identical copies when originals are not

25  available) and any non-identical copies (whether different from the originals because of notes

26  made on such copies or otherwise) of electronic data of any kind or description, whether inscribed

27  by mechanical, facsimile, electronic, magnetic, digital, or other means.  Such data may include,

28  but is not limited to, all text files (Including word processing Documents), presentation files (such

FOURTH AMENDED NOTICE OF DEPOSITION OF DEFENDANT UBER TECHNOLOGIES, INC.
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6) – SCHEDULE A
CIVIL ACTION NO. 3:19-CV-06361-RS

2

119

as PowerPoint), spreadsheets, electronic mail files, and information Concerning electronic mails (Including electronic mail receipts or transmittals, logs of electronic mail history and usage, header information, and deleted files), internet history of files and preferences, graphical files in any format, databases, calendar and scheduling information, task lists, telephone logs, contact managers, computer system activity logs, computer programs (whether private, commercial, or work-in-progress), programming notes or instructions, output resulting from the use of any software program Including, but not limited to, database files, charts, graphs, outlines, operating systems, source codes of all types, programming languages, linkers and compilers, peripheral drivers, PDF and TIF files, batch files, native files and all ASCII files, and any and all miscellaneous files or file fragments, regardless of the medium or media on which they reside and regardless of whether such electronic data is in an active file, deleted file, or file fragment. Electronic data includes, but is not limited to, any and all items stored on any electronic media, computers, or networks and backup files containing electronically stored data. The term "electronic data" also includes the file, folder tabs, or containers and labels appended to or associated with any physical storage device associated with each such original or copy.

13.     "Electronically-Stored Information" or "ESI" - Unless otherwise superseded in this case by an Order Governing the Use of Electronically-Stored Information, ESI is defined herein to include the following:

(a)     all items covered by FED. R. CIV. P. 34(a)(1)(A);

(b)     information or data that is generated, received, processed, and recorded by computers and other electronic devices, Including metadata (e.g., author, recipient, file creation date, file modification date, etc.);

(c)     files, information, or data saved on backup tapes or hard drives;

(d)     internal or external web sites;

(e)     output resulting from the use of any software program, Including, without limitation, word processing Documents, spreadsheets, database files, charts, graphs and outlines, electronic mail, instant messenger (or similar programs), bulletin board  programs, operating systems, source code, PRF files, PRC files, batch files, ASCII files,  and all miscellaneous media

FOURTH AMENDED NOTICE OF DEPOSITION OF DEFENDANT UBER TECHNOLOGIES, INC.
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6) – SCHEDULE A
CIVIL ACTION NO. 3:19-CV-06361-RS

3

120

1   on which they reside regardless of whether said electronic data exists in an active file, a deleted

2   file, or file fragment; and

3           (f)      activity listings of electronic mail receipts and transmittals; and any and all

4   items stored on computer memories, hard disks, USB flash drives, CD-ROM, magnetic tape,

5   microfiche, or on any other media for digital data storage, or transmittal, such as, but not

6   limited to, personal digital assistants (e.g., iPads), hand-held wireless devices (e.g., iPhones or

7   BlackBerry smartphones), or similar devices, and file folder tabs, or containers and labels appended

8   to, or relating to, any physical storage device associated with each original or copy of all

9   Documents requested herein.

10      14.    "Employee" or "Employees" means any Person who at any time during the

11  Relevant Time Period acted or purported to act on behalf of an entity, or another Person or Persons

12  Including, but not limited to, all present and former officers, directors, executives, board members,

13  partners, principals, managers, staff personnel, accountants, agents, representatives, in-house

14  attorneys, independent contractors, advisors, and consultants of such entity, Person, or Persons.

15      15.    "Government" means any agency of the U.S. federal or state government, or the

16  government of any other U.S. commonwealth, district, or territory, including the U.S. Department

17  of Justice, the SEC, U.S. Department of Homeland Security, U.S. Citizenship and Immigration

18  Services; any attorney general's office; and district attorney's office; any committee or

19  subcommittee of the U.S. Congress; and any person, employee, agent, or representative acting on

20  their behalf.

21      16.    "Including" means including without limitation.

22      17.    "Individual Defendants" refers to Dara Khosrowshahi, Nelson Chai, Glen

23  Ceremony, Ronald Sugar, Ursula Burns, Garrett Camp, Matt Choler, Ryan Graves, Arianna

24  Huffington, Travis Kalanick, Wan Ling Martello, H.E. Yasir Al-Rumayyan, John Thain and David

25  Trujillo.

26      18.    "Investors" means all persons or entities who purchased or otherwise acquired

27  Uber's publically traded common stock pursuant and/or traceable to the Offering Documents for

28  Uber's IPO as defined in ¶ 329 of the Complaint.

FOURTH AMENDED NOTICE OF DEPOSITION OF DEFENDANT UBER TECHNOLOGIES, INC.
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6) – SCHEDULE A
CIVIL ACTION NO. 3:19-CV-06361-RS

4

121

19.     "IPO" or "Offering" means Uber's initial public offering on or about May 10, 2019.

20.     "Meeting" or "Meetings" means the contemporaneous presence of any natural Persons (Including by telephone, chat room, video conference, bulletin board programs, or instant messenger program), for any purpose, whether or not such presence was by chance or prearranged, and whether or not the Meeting was formal or informal or occurred in connection with some other activity.   Meeting also includes, but is not limited to, Documents discussed at or otherwise Concerning any Meeting, such as agendas, presentations, minutes, records, invites, invitations, calendar reminders, or calendars regarding a Meeting, and Communications regarding the Meeting.

21.     "Offering Documents" refers to the Registration Statement and Prospectus issued in connection with the IPO, along with any previously filed or amended versions of those offering documents and related documents.

22.     "Person" or "Persons" includes any natural person, firm, association, organization, partnership, limited partnership, sole proprietorship, trust, corporation, or legal or governmental entity, association, or body.

23.     "Policies and Practices" means any rule, protocol, procedure, directives, "playbooks," practice, guidelines, or course of conduct, whether formal or informal, written or unwritten, recorded or unrecorded, that was known, recognized, or followed, explicitly or implicitly.

24.     "Prospectus" means any prospectus distributed by the Defendants or used to conduct the IPO, including but not limited to the Prospectus filed with the SEC on Form 424B4 on May 9, 2019.

25.     "Refer" or "Relate" or "Referring" or "Relating" means all Documents that explicitly or implicitly, in whole or in part, were received in conjunction with or were generated as a result of, the subject matter of the request, including, but not limited to, all Documents that reflect, record, memorialize, discuss, describe, compare, consider, concern, constitute, embody, evaluate, analyze, review, report on, comment on, impinge upon, or impact the subject matter of the request.

FOURTH AMENDED NOTICE OF DEPOSITION OF DEFENDANT UBER TECHNOLOGIES, INC.
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6) – SCHEDULE A
CIVIL ACTION NO. 3:19-CV-06361-RS

5

122

26.     "Registration Statement" means Uber's registration statement dated April 11, 2019, and filed with the SEC on Form S-1, which following amendment, was declared effective by the SEC on May 5, 2019.

27.     "Road Show" means any physical or virtual Meeting in which any defendant communicated with any current or potential investor concerning the IPO.

28.     "SEC" means the United States Securities and Exchange Commission and any employee, agent, representative, or subdivision thereof.

29.     "Senior Management" includes the Individual Defendants as well as any past or present Uber Employee who directly reports/reported to:

(a)     any of the Individual Defendants; or

(b)     any officer or director of Uber, Including the Chief Financial Officer(s), Chief Operating Officer(s), Chief Commercial Officer, Chief Compliance Officer, Chief Accounting Officer and/or Corporate Controller(s).

30.     "Uber" refers to Uber Technologies, Inc., and any of its subsidiaries, divisions, or affiliates (foreign and domestic), predecessors, successors, and any present and former officers, directors, Employees, agents, representatives, members of its Board of Directors, accountants, attorneys, advisors, and all other persons and agents acting or purporting to act on its behalf.

31.     "Uber's Business Model and Growth Strategy" refers to allegations in the Complaint (¶¶1-366) that were sustained in full by the Court (ECF Nos. 95, 172), including, *inter alia*, the Offering Documents' failure to disclose that Uber's business model and growth strategy was premised on breaking and thwarting laws, rules, and regulations in many of the domestic and international jurisdictions in which the Company operates, ¶¶157-70, allegations about the "new" Uber's business model, practices, and legality, as well as growth strategy, compliance, integrity, and relationships with government entities, Drivers, and customers as alleged, ¶¶171(a)-(h), and related undisclosed risks, events, and adverse trends or uncertainties, ¶¶191-96 and ¶197(a)-(i).

32.     "Uber Custodians" pertains to the Uber's custodians agreed to and/or used for Uber's production of documents in this Action.

FOURTH AMENDED NOTICE OF DEPOSITION OF DEFENDANT UBER TECHNOLOGIES, INC.
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6) – SCHEDULE A
CIVIL ACTION NO. 3:19-CV-06361-RS

6

123

1    33.    "Uber Defendants" means Uber together with Individual Defendants, as those

2    terms are defined above.

3    34.    "Uber's Financial Condition" refers to allegations in the Complaint (¶¶1-366) that

4    were sustained in full by the Court (ECF Nos. 95, 172), including, *inter alia*, the Offering

5    Documents' failure to disclose that Uber's growth at any cost business model was defective, Uber

6    had sustained—and would continue to sustain—massive losses and deteriorating growth, and the

7    Company planned to mitigate its ongoing losses by cutting costs in fundamental areas of its

8    business that would further hinder growth, ¶¶181-88, allegations about Uber's financial condition,

9    ¶189(a)-(f), and related undisclosed risks, events, and adverse trends or uncertainties, ¶¶203-06

10   and ¶207(a)-(f).

11   35.    "Uber's New Day Theme" refers to allegations in the Complaint (¶¶1-366) that

12   were sustained in full by the Court (ECF Nos. 95, 172), including, *inter alia*, allegations about

13   Uber's efforts to reform its culture "fundamentally" by, among other things, replacing Defendant

14   Kalanick as CEO with Defendant Khosrowshahi and developing a new set of "cultural norms," ¶6,

15   serious, disturbing, and deeply material problems plaguing the Company behind its "new day at

16   Uber" façade, ¶20, Uber's toxic culture and its purported attempts to change, ¶¶145-55, the

17   Offering Documents' claim that after 2017 "[i]t is a new day at Uber[,]" ¶159, and undisclosed

18   facts and related undisclosed risks, events, and adverse trends or uncertainties, including that Uber

19   was not on a "new path" since 2017 nor was it a "new day at Uber[,]" ¶171(a) and ¶197(a).

20   36.    "Uber's Passenger Safety Issues" refers to allegations in the Complaint (¶¶1-366)

21   that were sustained in full by the Court (ECF Nos. 95, 172), including, *inter alia*, the Offering

22   Documents' failure to disclose that Uber ignored rampant, dangerous, and even lethal passenger

23   safety issues across its ridesharing platform that resulted form the Company's own defective safety

24   policies and practices, ¶¶172-79, allegations about Uber passenger safety and its policies and

25   practices related to passenger safety, ¶180(a)-(j), and related undisclosed risks, events, and adverse

26   trends or uncertainties, ¶¶198-201 and ¶202(a)-(j).

27   37.    "Uber Projections" means any Company-prepared or Uber management-prepared

28   unaudited financial projections concerning the business of Uber.

Fourth Amended Notice of Deposition of Defendant Uber Technologies, Inc.          7
Pursuant to Federal Rule of Civil Procedure 30(b)(6) – Schedule A
Civil Action No. 3:19-cv-06361-RS

124

1    38.    "Underwriter Defendants" means Morgan Stanley & Co. LLC, Goldman, Sachs &

2    Co. LLC, Merrill Lynch, Pierce, Fenner & Smith Incorporated, Barclays Capital Inc., Citigroup

3    Global Markets Inc., Allen & Company LLC, RBC Capital Markets, LLC, SunTrust Robinson

4    Humphrey, Inc., Deutsche Bank Securities, Inc., HSBC Securities (USA) Inc., SMBC Nikko

5    Securities America, Inc., Mizuho Securities USA LLC, Needham & Company, LLC, Loop Capital

6    Markets LLC, Siebert Cisneros Shank & Co., L.L.C., Academy Securities, Inc., BTIG, LLC,

7    Canaccord Genuity LLC, CastleOak Securities, L.P., Cowen and Company, LLC, Evercore Group

8    L.L.C., JMP Securities LLC, Macquarie Capital (USA) Inc., Mischler Financial Group, Inc.,

9    Oppenheimer & Co., Inc., Raymond James & Associates, Inc., William Blair & Company, L.L.C.,

10   The Williams Capital Group, L.P., TPG Capital BD, LLC, and, for each, any of its present or

11   former employees, officers, directors, board of directors or committees thereof, representatives or

12   agents (including attorneys, accountants, advisors), parents, subsidiaries, divisions, subdivisions,

13   affiliates, predecessors, successors, assigns, and all other person acting, purporting to act, or

14   authorized to act on its behalf.

15    39.    "You" and "Your" mean Uber or the party responding to this deposition notice.

16    40.    All defined terms shall have the definitions provided herein whether or not

17   capitalized.

18    **INSTRUCTIONS**

19
     1.    The word "any" shall be construed to mean "any and all" when the effect of such
20
     construction is to broaden the scope of the Topic of Examination.
21
22    2.    The word "including" shall not be construed to limit the scope of any Topic of

23   Examination and shall be construed to mean "including but not limited to," "including, without

24   limitation," or "including, for the avoidance of doubt."

25    3.    "And" and "or" shall be construed either disjunctively or conjunctively as necessary

26   to bring within the scope of the request all responses that might otherwise be construed to be

27   outside the scope of the request.

28    4.    The use of the singular form of any word includes the plural and vice versa.

FOURTH AMENDED NOTICE OF DEPOSITION OF DEFENDANT UBER TECHNOLOGIES, INC.                    8
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6) – SCHEDULE A
CIVIL ACTION NO. 3:19-CV-06361-RS

**125**

5.    The use of any tense of any verb shall also include within its meaning all other tenses of that verb.

6.    For purposes of limitation, each Definition, Instruction, and Topic for Examination herein shall be construed independently and not with reference to any other Definition, Instruction, or Topic for Examination.

7.    All defined terms used herein, including in the Topcis for Examination shall have the same meaning ascribed to them above in the Definitions section of this Schedule A.

8.    Unless given a prescribed definition herein, each word or term used shall be construed according to its usual and customary dictionary definition.

FOURTH AMENDED NOTICE OF DEPOSITION OF DEFENDANT UBER TECHNOLOGIES, INC.
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6) – SCHEDULE A
CIVIL ACTION NO. 3:19-CV-06361-RS

9

126

**SCHEDULE B**

**RELEVANT TIME PERIOD**

Unless otherwise noted in a specific Topic, the Relevant Time Period for each Topic is from January 1, 2017 through March 3, 2020.

**TOPICS FOR EXAMINATION**

1.      Without limitation as to date, the deponent(s)' curriculum vitae or resume as well as credentials, work experience, job duties and responsibilities.

2.      All efforts the deponent(s) undertook to prepare for the deposition including all documents the deponent(s) reviewed in preparation of the deposition.

3.      The identities of all individuals the deponent(s) communicated with to become knowledgable with respect to each of the topics for examination.

4.      Any software, programs, systems, processes, reports or Documents Concerning or used to monitor, analyze, track, record, report on or project the Categories Including, for each Category above, including:

   (a)   the functionality of the software, programs, systems, processes or Documents;

   (b)   the various types of data entered into and accessible through the software, programs, systems, processes or Documents;

   (c)   the manner in which and by whom the data are entered;

   (d)   the various reports available to be generated by the software, programs, systems, processes, or Documents and to whom such reports are regularly disseminated;

   (e)   the location of the data on the system;

   (f)   how the data is accessed;

   (g)   any limitations on read or write access for each software, program, system, or type of processes or Document;

   (h)   by whom the data is accessed; and

Fourth Amended Notice of Deposition of Defendant Uber Technologies, Inc.
Pursuant to Federal Rule of Civil Procedure 30(b)(6) – Schedule B
Civil Action No. 3:19-cv-06361-RS

127

         (i)     the reports available to and accessed by the Individual Defendants, Including information on when the Individual Defendants accessed the information.

5.     Uber's operational, legal, organizational, reporting, or financial structure, Including:

         (a)    The lines of authority and personnel reporting between and among the Individual Defendants and any direct or indirect reports of the Individual Defendants, and any Person identified in Uber Defendants' Initial Disclosures or the Uber Custodians;

         (b)    The structure and reporting lines of Uber's departments, groups, teams, agents, consultants, independent contractors, or other Persons responsible for the Categories; and

         (c)    The structure and reporting lines of Uber's international offices, subsidiaries, or affiliates, Concerning the Categories.

6.     All Communications between You and any other Defendant during the Relevant Time Period.

7.     Uber's Policies and Practices Concerning Communication with members of the financial community, media, short sellers, or analysts Concerning the Categories.

8.     Uber's Policies and Practices Concerning the creation, preparation, and dissemination of the Offering Documents Including the identification and description of Documents or reports prepared in connection with the Offering Documents and the identity and location of Documents, Including ESI, relevant to such Policies and Practices.

9.     The identity of current and former Uber Employees who participated in the creation, preparation, and dissemination of the Offering Documents and/or any Road Show material, Including Employees that Uber believes are the Persons most knowledge about the Offering Documents and/or any Road Show material.

10.    The identity of all current and former committees and departments involved in the creation, preparation, and dissemination of the Offering Documents or Road Show material.

FOURTH AMENDED NOTICE OF DEPOSITION OF DEFENDANT UBER TECHNOLOGIES, INC.
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6) – SCHEDULE B
CIVIL ACTION NO. 3:19-CV-06361-RS

2

128

11.     The identification and description of each report produced by Uber for internal use by Uber's Senior Management or Uber's Board of Directors Concerning compiling information to be filed, discussed, or referenced in Uber's IPO and Offering Documents.

12.     The identification and description of all recurring Meetings and any Documents, Communications, and reports Concerning such recurring Meetings, conducted or attended by any of the Individual Defendants, Including Meetings Concerning the Categories.

13.     The identities of all Persons who participated in preparing the U.S. Safety Report (*see* ¶44), Including those who:

(a)     Collected information for the report;

(b)     Provided information for the report;

(c)     Prepared the report (and drafts thereof), Including editing, reviewing and compiling data for the report;

(d)     Communicated information pertinent to the U.S. Safety Report to those collecting information for the U.S. Safety Report; and

(e)     Persons who Uber believes are the most knowledge about the creation, collection, preparation, and dissemination of the information for the U.S. Safety Report and the U.S. Safety Report.

14.     The existence and location of data for any international or non-United States equivalent safety report, Including the identity of any past or current Uber employees with relevant information concerning such data and the Persons who Uber believes are the most knowledge about such data.

15.     The existence and location of draft reports for any international or non-United States equivalent safety report, Including the identity of any past or current Uber employees with relevant information concerning such draft reports and the Persons who Uber believes are the most knowledge about such draft reports.

16.     The location and content of and Uber's Policies and Practices for the filing and storage of Documents Concerning the Categories.

Fourth Amended Notice of Deposition of Defendant Uber Technologies, Inc.
Pursuant to Federal Rule of Civil Procedure 30(b)(6) – Schedule B
Civil Action No. 3:19-cv-06361-RS

3

129

17.     Uber's Policies and Practices, and any changes thereto, Concerning the backup, preservation, archiving, deletion, handling, retention and restoration of Documents, Communications, Electronic Data and/or ESI, as well as any electronic media containing backups of such data, Including:

  (a) the backup, preservation, archiving, and restoration of data contained on network servers or other network storage devices;

  (b) the backup, preservation, archiving, and restoration of data contained on Uber's computers, Including desktop computers, laptop computers, tablets, smartphones, local drives of network computer systems, and any other like device used by any Uber officer(s), partner(s), director(s), Employee(s), or other Person(s);

  (c) the backup, preservation, archiving, and restoration of data contained on the hard drives of computer systems no longer in active service within Uber;

  (d) the backup, preservation, archiving, and restoration of any data created or stored by or within Uber's electronic messaging systems, Including email, SMS, MMS, instant messaging (e.g., Slack, Blackberry, Google Chat, Whatsapp, and other like messages), and other forms of electronic Communications;

  (e) the backup, preservation, archiving, and restoration of any data created or stored by or within Uber's voicemail systems or other systems of recording telephonic messages;

  (f) Uber's Document retention and/or destruction policy, Including those Policies and Practices employed in connection with this Action and any litigation holds related this Action;

  (g) the rotation of any electronic media used by Uber to backup ESI;

  (h) the rotation of any individual workstations and computer systems used by Uber; and

FOURTH AMENDED NOTICE OF DEPOSITION OF DEFENDANT UBER TECHNOLOGIES, INC.
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6) – SCHEDULE B
CIVIL ACTION NO. 3:19-CV-06361-RS

4

130

(i)      the deletion of data from any Uber computers used by any Uber officer(s), partner(s), director(s), Employee(s), representative(s), or other Person(s), whether by scheduled, automated, or individualized processes.

18.      Uber's Policies and Practices, and any changes thereto, Concerning the use by Uber Employees, Including the Individuals Defendants, of personal desktop computers, portable computers, laptop computers, handheld devices, cellular or smartphones, telephones, and other similar electronic devices, and any applications thereon.

19.      Uber's Policies and Practices for the use of cell phones, smartphones, digital convergence devices, or other portable electronic devices, whether owned by Uber or by others, used by any employee of Uber including Senior Management involved in (i) the IPO; (ii) the Offering Documents; and (iii) any Road Show.

20.      All methods by which Senior Management, Including the Individual Defendants, communicated Concerning Uber business such as e-mail, Internet newsgroups, chat rooms, instant messaging, internal or external text messaging, messaging via social media platforms, applications, and any other electronic messaging.

21.      All aspects of the Document collection process, Including:

(a)      what sources of Documents exist;

(b)      what sources of Documents were searched;

(c)      what sources of Documents were not searched;

(d)      the process used to collect Documents.

22.      All efforts to retrieve text messages, instant messages, and other non-email Communications Concerning Uber's business.

23.      Uber's Policies and Practices Concerning the definition of and disclosure of material non-public information and the identity of any current or former Uber Employees who created, prepared or disseminated said Policies and Practices.

24.      The contents of the Offering Documents.

25.      The Uber IPO, Including:

(a)      the timing of the Uber IPO;

Fourth Amended Notice of Deposition of Defendant Uber Technologies, Inc.
Pursuant to Federal Rule of Civil Procedure 30(b)(6) – Schedule B
Civil Action No. 3:19-cv-06361-RS

5

131

1   (b)   all processes Concerning the Uber IPO;

2   (c)   any Communications Concerning the Uber IPO;

3   (d)   all internal Uber Meetings, Including Uber Board Meetings; Concerning the

4   Uber IPO;

5   (e)   all valuations of Uber created in connection with the Uber IPO;

6   (f)   all Uber Projections including in the Offering Documents; and

7   (g)   all materials created, received, or considered Concerning the Categories in

8   connection with the Uber IPO.

9   26.   Your Advisors in connection with the Uber IPO, Including:

10   (a)   Your Communications with Your Advisors in connection with the Uber

11   IPO;

12   (b)   The due diligence process Your Advisors undertook Including Documents

13   and Communications provided to, or sent by, Your Advisors in connection

14   with the Uber IPO;

15   (c)   Your process to select Your Advisors;

16   (d)   Your retenton of and agreements with Your Advisors.

17   27.   Uber's common stock issued in the Uber IPO, Including:

18   (a)   all valuations of Uber common stock;

19   (b)   Your Communications regarding all valuations of Uber common stock;

20   (c)   the public trading price of Uber common stock after the Uber IPO; and

21   (d)   all factors affecting the value of Uber common stock Including the

22   Categories.

23   28.   Uber's Business Model and Growth Strategy, Including:

24   (a)   all Communications and Documents Concerning Uber's Business Model

25   and Growth Strategy in connection with Uber's IPO;

26   (b)   all forecasts, projections, analyses, appraisals, and/or valuations that was

27   reviewed, relied on, or generated Concerning Uber's Business Model and

28   Growth Strategy in connection with the Uber IPO;

FOURTH AMENDED NOTICE OF DEPOSITION OF DEFENDANT UBER TECHNOLOGIES, INC.   6
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6) – SCHEDULE B
CIVIL ACTION NO. 3:19-CV-06361-RS

132

1   (c)   any information Concerning Uber's Business Model and Growth Strategy
2         was excluded from the Offering Documents; and
3   (d)   the reasons why information Concerning Uber's Business Model and
4         Growth Strategy was excluded from the Offering Documents.
5   29.   Uber's Passenger Safety Issues, Including:
6   (a)   all Communications and Documents Concerning Uber's Passenger Safety
7         Issues in connection with Uber's IPO;
8   (b)   all forecasts, projections, analyses, appraisals, and/or valuations that was
9         reviewed, relied on, or generated Concerning Uber's Passenger Safety
10        Issues in connection with Uber's IPO;
11  (c)   any information Concerning Uber's Passenger Safety Issues was excluded
12        fom the Offering Documents; and
13  (d)   the reasons why information Concerning Uber's Passenger Safety Issues
14        was excluded from the Offering Documents.
15  30.   Uber's Financial Condition, Including:
16  (a)   all Communications and Documents Concerning Uber's Financial
17        Condition in connection with the Uber IPO;
18  (b)   all forecasts, projections, analyses, appraisals, and/or valuations that were
19        reviewed, relied on, or generated Concerning Uber's Financial Condition in
20        connection with Uber's IPO;
21  (c)   any information Concerning Uber's Financial Condition was excluded from
22        the Offering Documents; and
23  (d)   the reasons why information Concerning Uber's Financial Condition was
24        excluded from the Offering Documents.
25  31.   Uber's New Day Theme, Including:
26  (a)   the genesis of that language and theme;
27  (b)   the individuals who suggested that language or theme;
28  (c)   the reasons why that theme or language was chosen;

| | | |
|---|---|---|
| 1 | (d) | changes in company culture and norms and the reasons for such changes |
| 2 | | Concerning that theme or language; |
| 3 | (e) | actions taken by Uber leading up to the Uber IPO to implement the changes |
| 4 | | Concerning that theme or language; |
| 5 | (f) | any information Concerning Uber's New Day Theme was excluded from |
| 6 | | the Offering Documents; and |
| 7 | (g) | the reasons why information Concerning Uber's New Day Theme was |
| 8 | | excluded from the Offering Documents. |
| 9 | 32. | The Categories, Including: |
| 10 | (a) | all Communications and Documents Concerning the Categories in |
| 11 | | connection with Uber's IPO; |
| 12 | (b) | all forecasts, projections, analyses, appraisals, and/or valuations that was |
| 13 | | reviewed, relied on, or generated Concerning the Categories in connection |
| 14 | | with Uber's IPO; |
| 15 | (c) | what information Concerning the Categories was excluded from the |
| 16 | | Offering Documents; and |
| 17 | (d) | the reasons why information Concerning the Categories was excluded from |
| 18 | | the Offering Documents. |
| 19 | 33. | Any considered disclosures in the Offering Documents Concerning: |
| 20 | (a) | Uber's Business Model and Growth Strategy; |
| 21 | (b) | Uber's Passenger Safety Issues; |
| 22 | (c) | Uber's Financial Condition; |
| 23 | (d) | Uber's New Day Theme; |
| 24 | (e) | The Categories; |
| 25 | (f) | Any "known trends or uncertainties" pursuant to Item 303 of SEC |
| 26 | | Regulation S-K; and |
| 27 | (g) | The "most significant factors that make the Offering speculative or risky" |
| 28 | | pursuant to Item 105 of SEC Regulation S-K. |

FOURTH AMENDED NOTICE OF DEPOSITION OF DEFENDANT UBER TECHNOLOGIES, INC.
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6) – SCHEDULE B
CIVIL ACTION NO. 3:19-CV-06361-RS

8

134

34.     Communications with securities analysts, the media, the SEC, Uber Employees, and Your Advisors Concerning:

      (a)     the Uber IPO;

      (b)     Uber's Business Model and Growth Strategy;

      (c)     Uber's Passenger Safety Issues;

      (d)     Uber's Financial Condition;

      (e)     Uber's New Day Theme; and

      (f)     The Categories.

35.     The Road Show, Including:

      (a)     all Communications and Documents Concerning the Road Show;

      (b)     participants, attendees, and locations of the Road Show; and

      (c)     all forecasts, projections, analyses, appraisals, projections and/or valuations that were presented or provided in connection with the Road Show.

36.     All price or value impact analyses on Uber's valuation and/or Uber common stock from the disclosure (actual or potential) of information associated with:

      (a)     Uber's Business Model and Growth Strategy;

      (b)     Uber's Passenger Safety Issues;

      (c)     Uber's Financial Condition;

      (d)     Uber's New Day Theme;

      (e)     The Categories;

      (f)     Any "known trends or uncertainties" pursuant to Item 303 of SEC Regulation S-K; and

      (g)     The "most significant factors that make the Offering speculative or risky" pursuant to Item 105 of SEC Regulation S-K.

37.     All cost-benefit analyses associated with the disclosure (actual or potential) of information associated with:

      (a)     Uber's Business Model and Growth Strategy;

      (b)     Uber's Passenger Safety Issues;

FOURTH AMENDED NOTICE OF DEPOSITION OF DEFENDANT UBER TECHNOLOGIES, INC.
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6) – SCHEDULE B
CIVIL ACTION NO. 3:19-CV-06361-RS

9

135

1            (c)     Uber's Financial Condition;

2            (d)     Uber's New Day Theme;

3            (e)     The Categories;

4            (f)     Any "known trends or uncertainties" pursuant to Item 303 of SEC

5                     Regulation S-K; and

6            (g)     The "most significant factors that make the Offering speculative or risky"

7                     pursuant to Item 105 of SEC Regulation S-K.

8      38.     The reasons why Uber common stock decreased in value at any point in time from

9 the date of the Uber IPO through the present.

10     39.     The factors causing any decline in value or share price to Uber common stock at

11 any point in time from the date of the Uber IPO through the present.

12     40.     The allegations in Complaint.

13     41.     The Documents and Communications produced by Uber in this Action.

14     42.     Uber's responses to discovery propounded on Uber in this Action.

15     43.     Uber's affirmative defenses in this Action as set forth in the Uber Defendants'

16 Answer to Second Amended Class Action Complaint for Violations of the Federal Securities Laws

17 filed October 15, 2021 (ECF No. 174).

18     44.     The items listed in Schedule C.

Fourth Amended Notice of Deposition of Defendant Uber Technologies, Inc.
Pursuant to Federal Rule of Civil Procedure 30(b)(6) – Schedule B
Civil Action No. 3:19-cv-06361-RS

10

136

## SCHEDULE C

### RELEVANT TIME PERIOD

Unless otherwise noted in a specific request, the Relevant Time Period for these requests is from January 1, 2017 through March 3, 2020.

### REQUESTS TO PRODUCE

1.     Deponent(s)' current curriculum vitae or resume.

2.     All Documents the deponent reviewed in preparation of the deposition.

3.     Uber's organizational charts for management, legal, marketing, engineering, finance, operations, human resources, and safety.

4.     All Documents that were cited, referenced, reviewed and/or relied upon to support Uber's affirmative defenses in this Action.

5.     All Communications and Documents evidencing a decline in value or share price for Uber common stock from factors other than the misstatements or omissions alleged in the Complaint from the date of the Uber IPO through the present.

FOURTH AMENDED NOTICE OF DEPOSITION OF DEFENDANT UBER TECHNOLOGIES, INC.
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6) – SCHEDULE C
CIVIL ACTION NO. 3:19-CV-06361-RS

137

1   Jonathan Gardner (admitted *pro hac vice*)
    Alfred L. Fatale III (admitted *pro hac vice*)
2   Joseph N. Cotilletta (admitted *pro hac vice*)
    Marco A. Dueñas (admitted *pro hac vice*)
3   Lisa Strejlau (admitted *pro hac vice*)
    LABATON SUCHAROW LLP
4   140 Broadway
    New York, New York 10005
5   Telephone: (212) 907-0700
    Facsimile: (212) 818-0477
6   Email: jgardner@labaton.com
            afatale@labaton.com
7           jcotilletta@labaton.com
            mduenas@labaton.com
8           lstrejlau@labaton.com

9   *Lead Counsel for Plaintiffs*

10

11                **UNITED STATES DISTRICT COURT**

12              **NORTHERN DISTRICT OF CALIFORNIA**

                   **SAN FRANCISCO DIVISION**
13

14   BOSTON RETIREMENT SYSTEM,

                           Plaintiff,          Case No.:  3:19-cv-06361-RS
15
                                               ECF CASE
16            v.
                                               **CERTIFICATE OF SERVICE**
17   UBER TECHNOLOGIES, INC., et al.,

                           Defendants.
18

19

20

21

22

23

24

25

26

27

28

Fourth Amended Notice of Deposition of Defendant Uber Technologies, Inc.
Pursuant to Federal Rule of Civil Procedure 30(b)(6) – Certificate of Service
Civil Action No. 3:19-cv-06361-RS

**138**

1                                  **CERTIFICATE OF SERVICE**

2         I am a citizen of the United States and a member of the bar of the state of New York. I am

3 over the age of eighteen years, and not a party to the within action. My business address is Labaton

4 Sucharow LLP, 140 Broadway, New York, NY 10005. My e-mail address is

5 jcotilletta@labaton.com. On the date set forth below, I served the following documents in the

6 manner described below:

7         •   **NOTICE OF DEPOSITION OF DFENDANT UBER TECHNOLOGIES INC. PURSUANT TO FEDERAL RULES OF CIVIL PRODCEDURE 30(b)(6)**

8       ☒   **BY ELECTRONIC MAIL** – Based on a court order or agreement of the parties to accept service by e-mail or electronic transmission, I caused such documents

9         described herein to be sent to the persons at the e-mail addresses listed below. I did not receive, within a reasonable time after the transmission, any electronic message

10         or other indication that the transmission was unsuccessful.

11 on the following parties in this action:

12

13 Patrick D. Robbins (SBN 152288)               Todd G. Cosenza (admitted *pro hac vice*)
Daniel H.R. Laguardia (SBN 314654)          **WILLKIE FARR & GALLAGHER LLP**

14 **SHEARMAN & STERLING LLP**              787 Seventh Avenue
535 Mission Street, 25th Floor                New York, NY 10019-6099

15 San Francisco, CA 94105-2997                Telephone: (212) 728-8677
Telephone: (415) 616-1100                   Fax: (212) 728-9677

16 Facsimile: (415) 616-1199                    tcosenza@willkie.com
probbins@shearman.com

17 daniel.laguardia@shearman.com             Simona Agnolucci (CA 246943)
                                    **WILLKIE FARR & GALLAGHER LLP**

18 George Anhang (admitted *pro hac vice*)      One Front Street
**SHEARMAN & STERLING LLP**              San Francisco, CA 94111

19 401 9th Street, NW, Suite 800                Telephone: (415) 858-7447
Washington, DC 20004-2128                Fax: (415) 858-7599

20 Telephone: (202) 508-8000                  sagnolucci@willkie.com
george.anhang@sherman.com

21                                    Joseph G. Davis (CA 157764)
                                    **WILLKIE FARR & GALLAGHER LLP**

22                                    1875 K Street, N.W.
                                   Washington, DC 20006-1238

23                                    Telephone: (202) 303-1131
                                   Fax: (202) 303-2131

24                                     jdavis@willkie.com

25         I declare under penalty of perjury under the laws of the State of California that the above

26 is true and correct. Executed on July 25, 2022 in New York, New York.

27                                        */s/ Joseph N. Cotilletta*

28

Fourth Amended Notice of Deposition of Defendant Uber Technologies, Inc.
Pursuant to Federal Rule of Civil Procedure 30(b)(6) – Certificate of Service
Civil Action No. 3:19-cv-06361-RS

2

139

1    Daniel H.R. Laguardia (SBN 314654)
     SHEARMAN & STERLING LLP
2    535 Mission Street, 25th Floor
     San Francisco, CA  94105-2997
3    Telephone: 415.616.1100
     Facsimile: 415.616.1199
4    Email: daniel.laguardia@shearman.com

5    Agnès Dunogué (admitted *pro hac vice*)
     Dennis D. Kitt (admitted *pro hac vice*)
6    SHEARMAN & STERLING LLP
     599 Lexington Avenue
7    New York, NY  10022-6069
     Telephone:  212.848.4000
8    Facsimile:  212.848.7179
     Email: agnes.dunogue@shearman.com
9          dennis.kitt@shearman.com

10   *Attorneys for Defendants Uber Technologies, Inc.,*
     *Dara Khosrowshahi, Nelson Chai, Glen*
11   *Ceremony, Ronald Sugar, Ursula Burns, Garrett*
     *Camp, Matt Cohler, Ryan Graves, Arianna*
12   *Huffington, Travis Kalanick, Wan Ling Martello,*
     *H.E. Yasir Al-Rumayyan, John Thain, and David*
13   *Trujillo*

14

                 UNITED STATES DISTRICT COURT
15           NORTHERN DISTRICT OF CALIFORNIA
16                  SAN FRANCISCO DIVISION

17   BOSTON RETIREMENT SYSTEM,       Case No. 3:19-cv-06361-RS
     Individually and on behalf of all others similarly
18   situated,

19              Plaintiff,          **DEFENDANT UBER TECHNOLOGIES,**
                                 **INC.'S AMENDED RESPONSES AND**
20            v.                 **OBJECTIONS TO LEAD PLAINTIFF'S**
                                 **SECOND AMENDED NOTICE OF RULE**
21   UBER TECHNOLOGIES, INC., et al.,     **30(b)(6) DEPOSITION**

22           Defendants.      **Courtroom:**   No. 3 – 17th Floor
                                **Judge:**       Hon. Richard Seeborg
23

24   **Propounding Party:**      **Boston Retirement System**
     **Responding Party:**       **Uber Technologies, Inc.**
25

26

27

28

Uber's Responses & Objections to              Case No. 3:19-cv-06361-RS
Lead Plaintiff's Second Amended
30(b)(6) Depo. Notice

140

1    Defendant Uber Technologies, Inc. ("Uber") hereby amends its Responses and Objections to

2    Lead Plaintiff's Notice of Rule 30(b)(6) Deposition served on November 3, 2020, first amended by

3    Lead Plaintiff in its Amended Notice of Rule 30(b)(6) Deposition served on December 21, 2021, and

4    amended again by Lead Plaintiff in its Second Amended Notice of Rule 30(b)(6) Deposition served

5    on May 10, 2022 (the "Notice"), and responds and objects to the Notice as follows.

6                            **GENERAL OBJECTIONS TO THE NOTICE**

7    Uber generally objects to the Notice, including the Notice Topics, Definitions, and

8    Instructions, on the following grounds, each of which is incorporated by reference in the responses

9    and objections to the individual Topics below.  All responses set forth herein are subject to and

10   without waiver of any of these general objections.

11   1.    Uber objects to the Notice on the grounds that it is premature to the extent that it

12   calls for substantive testimony on a wide range of topics as well as testimony on contention topics

13   when the parties have yet to reach an agreement concerning a deposition protocol outlining the

14   number and length of depositions, or the scope of discovery (including search terms), and the

15   parties have not yet completed the review and substantial production of documents and information

16   relevant to the issues in the litigation, and further because it impermissibly seeks "discovery on

17   discovery" without an adequate factual basis for doing so at this juncture.

18   2.    Uber objects to the Notice to the extent the Notice seeks to impose on Uber

19   obligations beyond or different from those imposed by the Federal Rules of Civil Procedure,

20   applicable Local Rules, orders of this Court, or any other applicable rules, laws, or orders (the

21   "Applicable Law").

22   3.    Uber objects to the Notice to the extent that the scope and number of Topics included

23   in the Notice are facially overbroad and unduly burdensome.

24   4.    Uber objects to the Notice on the basis that it appears to impose an obligation on

25   Uber to designate and prepare an overly burdensome number of witnesses to testify regarding the

26   multitude of topics, sub-topics and categories set forth in the Notice and appears to impose a

27   corporate deposition that would require many multiples of the time set forth under Rule 30(d)(1).

28   Uber does not consent to more than a single seven-hour deposition.

5.      Uber objects to the Notice to the extent the Notice seeks testimony that is unreasonably cumulative or duplicative, is not relevant to any claims or defenses in this Action and not proportional to the needs of this Action, or can be obtained from some other source that is more convenient, less burdensome or less expensive, or that is publicly available.  Uber's testimony, to the extent it is provided, will be provided expressly subject to, and without waiving or intending to waive, any questions or objections as to competence, relevance, materiality, privilege, or other questions concerning admissibility in any proceeding.

6.      Uber objects to the Notice to the extent the Notice is vague, ambiguous, overbroad, unduly burdensome, fails to describe the testimony sought with the required particularity, and/or is so unintelligible that Uber cannot prepare its witnesses to testify, including to the extent the Notice seeks testimony on "all" examples of the subject matter referenced therein.

7.      Uber objects to the Notice to the extent the Notice seeks testimony on subjects protected by the attorney-client privilege, the work product doctrine, the joint defense or common interest doctrine and/or any other privilege or immunity.  Any inadvertent disclosure of privileged or protected information shall not constitute a waiver of any such privilege, protection, doctrine or immunity.  Uber objects to the Notice to the extent the Notice seeks testimony that would result in the disclosure of information in violation of privacy rights or obligations under any constitutional, statutory or common law rights of privacy.  To the extent the Notice seeks testimony on such privileged or protected information, Uber will not knowingly provide it.

8.      Uber objects to the Notice to the extent the Notice seeks disclosure of sensitive, confidential or proprietary business information, client information, customer information and/or trade secret information pursuant to California Civil Code Section 3426 et seq., and/or applicable state and federal law.

9.      Whenever Uber agrees to provide testimony in response to the Notice, such a response does not constitute a representation that responsive information exists or that Uber will search files maintained by any person in preparing a witness to testify on the subject, but only that testimony on the subject will be provided if relevant information exists and can be located with a reasonable and diligent search of readily accessible files where responsive documents reasonably

would be expected to be found, and is not otherwise protected from disclosure.  Uber agrees to meet and confer regarding the scope of the search it agrees to conduct and to otherwise comply with the applicable provisions of the Stipulated Order Re: Discovery of Electronically Stored Information (ECF No. 114) and Stipulated Protective Order for Standard Litigation (ECF No. 113) entered in this case.

10.     Whenever Uber agrees to provide testimony in response to the Notice, such a response is not a concession that any subject is relevant to a claim or defense in this Action or that the Notice seeks information that is proportional to the needs of this Action.  Uber expressly reserves all further objections as to the admissibility of the testimony provided, including at trial, as well as the right to object to further discovery relating to the subject matter of any testimony provided.

11.     Uber objects to the Notice to the extent it is argumentative, lacks foundation, or incorporates allegations and assertions that are disputed and erroneous.  By responding and objecting to a particular Topic, Uber does not admit the correctness of such assertions.

12.     Uber objects to the Notice to the extent it calls for testimony not within Uber's knowledge or to the extent it requires Uber to provide information that it does not have in its possession, custody, or control.  Subject to the objections stated herein, Uber will prepare its corporate witnesses using only the readily accessible documents of individuals whom Uber reasonably believes may have relevant documents and readily accessible centrally located files that Uber reasonably believes may have relevant documents.  Any Topics that seek to require Uber to go beyond such a search in the process of preparing Uber's witnesses are overbroad and unduly burdensome.

13.     Uber objects to the Notice to the extent it purports to seek testimony from Uber's offices or those of its parents, affiliates or subsidiaries located outside the United States.  Uber objects on the grounds that such discovery (a) is beyond the scope of Applicable Law; (b) would violate the secrecy and privacy laws of foreign sovereigns; (c) seeks to circumvent the provisions of the Hague Convention on Taking Evidence Abroad in Civil and Commercial Matters and/or any other applicable convention or treaty by calling for testimony utilizing the Convention and/or any

other applicable convention or treaty with respect to testimony on topics that may be known in countries that are signatories to the Convention and/or any other applicable convention or treaty; and (d) purports to require Uber, which has hundreds of offices worldwide, to search all of those offices in preparing its witnesses, which is unduly burdensome.

14.     Uber objects to the Notice to the extent the Notice seeks the disclosure of information that would violate a confidentiality agreement or any other agreement between Uber and any individual or entity.

15.     With respect to the Notice's Schedule C and its Requests to Produce ("Requests"), Uber incorporates by reference all General Objections set forth in Uber's Amended Responses and Objections to Lead Plaintiff's First Set of Request for Production of Documents.

16.     Uber objects to the Notice's Schedule C to the extent it purports to impose an obligation to preserve and/or produce any documents or information that are newly created or received after the receipt of the Notice because efforts to preserve and/or produce such documents or information would require undue burden and unreasonable expense.

17.     Uber objects to the Notice's Schedule C to the extent it purports to impose on Uber any ESI preservation obligation not included within Stipulated Order Re: Discovery of Electronically Stored Information (ECF No. 114) and Stipulated Protective Order for Standard Litigation (ECF No. 113) entered in this case.

18.     Uber objects to the Notice to the extent it seeks a legal conclusion or expert opinion.

**SPECIFIC OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS**

1.     Uber objects to all Definitions and Instructions to the extent that they seek to impose obligations on it different from or greater than those imposed by Applicable Law.

2.     Uber objects to the definition of "Advisor" and "Advisors" as overbroad, unduly burdensome, vague and ambiguous, and to the extent it purports to require Uber to testify as to information not reasonably available to Uber.

3.     Uber objects to the definition of "Board" as overbroad, unduly burdensome, vague and ambiguous, and to the extent it purports to require Uber to testify as to information not reasonably available to Uber.

4.     Uber objects to the definition of "Category" and "Categories" as overbroad, unduly burdensome, vague and ambiguous, and to the extent they purport to require Uber to testify as to information not reasonably available to Uber.  Uber further objects to this definition on the grounds that it is compound and consists of numerous discrete subparts and is therefore overbroad and unduly burdensome.

5.     Uber objects to the definition of "Communication" as overbroad, unduly burdensome, vague and ambiguous, and to the extent it purports to require Uber to testify as to information not within the knowledge of Uber.

6.     Uber objects to the definition of "Concerning" as overbroad, unduly burdensome, vague and ambiguous, and to the extent it purports to require Uber to testify as to information not reasonably available to Uber.

7.     Uber objects to the definition of "Correspondence" as overbroad, unduly burdensome, vague and ambiguous, and to the extent it purports to require Uber to testify as to information not in Uber's possession, custody, or control.

8.     Uber objects to the definition of "Defendants" to the extent it seeks information from entities or persons other than Uber and not within the knowledge of Uber.

9.     Uber objects to the definition of "Document" as overbroad, unduly burdensome, vague and ambiguous, and to the extent it purports to require Uber to testify as to information not within the knowledge of Uber.

10.     Uber will interpret the definitions of "Electronic data," "Electronically Stored Information" and "ESI" consistent with the Federal Rules of Civil Procedure and the Stipulated Order Re: Discovery of Electronically Stored Information (ECF No. 114) entered by the Court on November 20, 2020, and does not waive any future objection not asserted herein.

11.     Uber objects to the definition of "Employee" or "Employees" as overbroad, unduly burdensome, vague and ambiguous, and to the extent it seeks information about or from inaccessible or unknown parties and to the extent that it seeks information not within the knowledge of Uber.  Uber further objects to this definition to the extent that it calls for legal conclusions with respect to the term "agent."

12.     Uber objects to the definition of "Government" as overbroad, unduly burdensome, vague and ambiguous, and to the extent it seeks information that is not within the knowledge of Uber.  Uber further objects to this definition to the extent that it calls for legal conclusions with respect to the term "agent."

13.     Uber objects to the definition of "Investors" as vague and ambiguous to the extent that it includes "all persons or entities who purchased or otherwise acquired Uber's publicly traded common stock."

14.     Uber objects to the definition of "Meeting" as ambiguous, overbroad, and unduly burdensome, vague and ambiguous, and to the extent it purports to require Uber to testify as to information not within the knowledge of Uber.

15.     Uber objects to the definitions of "Person" or "Persons" as overbroad, unduly burdensome, vague and ambiguous, and to the extent it purports to require Uber to testify as to information not within the knowledge of Uber.

16.     Uber objects to the definition of "Policies" or "Practices" as ambiguous, overbroad, and unduly burdensome.  Uber will interpret this Definition to encompass only formal policies and procedures created and maintained by Uber in written form.

17.     Uber objects to the definition of "Uber" as overbroad and unduly burdensome to the extent that it seeks information about or from inaccessible or unknown parties, and to the extent that it seeks information that is not reasonably known or obtainable by Uber.  Uber further objects to this definition's inclusion of "subsidiaries, divisions, or affiliates (foreign and domestic), predecessors, successors, and any present and former officers, directors, Employees (as defined herein), agents, representatives, members of its Board of Directors, accountants, attorneys, advisors, and all other persons and agents acting or purporting to act on its behalf" as overbroad and unduly burdensome, vague and ambiguous, and improperly requiring legal conclusions.  Uber further objects to this definition to the extent it purports to seek information from any entity that is uninvolved in any of the events or allegations at issue in this action.  In responding to the Notice, Uber will construe the term "Uber" to mean only Uber Technologies, Inc.

18.      Uber objects to the definition of "Uber's Business Model and Growth Strategy" as ambiguous, overbroad, and unduly burdensome.  Uber further objects to this definition to the extent it requires legal conclusions with respect to the terms "breaking and thwarting laws, rules and regulations," "jurisdiction," "legality," "compliance," and "government entities."

19.      Uber objects to the definition of "Uber Custodians" as vague, ambiguous, overbroad, and unduly burdensome.  Uber further objects to this definition as premature to the extent that it calls for substantive testimony at a juncture when the parties have yet to reach agreement concerning the scope of discovery (including search terms) and have not yet completed review and substantial production of documents and information relevant to the issues in the litigation.  In responding to the Notice, Uber will construe the term "Uber Custodians" to mean the individuals listed in Exhibit A to the letter from Dennis D. Kitt to Marco A. Dueñas of March 18, 2022.

20.      Uber objects to the definition of "Uber's Financial Condition" as vague, ambiguous and overbroad.  Uber further objects to this definition's use of the terms "failure to disclose," "cost business model," "defective," and "financial condition," as overbroad and unduly burdensome, vague and ambiguous, and improperly requiring legal conclusions.

21.      Uber objects to the definition of "Uber's New Day Theme" as vague, ambiguous, overbroad, and unduly burdensome.  Uber further objects to this definition's use of the term "material" as overbroad and unduly burdensome, vague and ambiguous, and improperly requiring legal conclusions.

22.      Uber objects to the definition of "Uber's Passenger Safety Issues" as vague, ambiguous, overbroad, and unduly burdensome.  Uber further objects to this definition's use of the terms "failure to disclose," "safety issues," "passenger safety," "defective," and "policies and practices," as overbroad and unduly burdensome, vague and ambiguous, and improperly requiring legal conclusions.

23.      Uber objects to the definition of "Underwriter Defendants" because, by including individuals and entities purporting to act on the named parties' behalf, the definition is overbroad, unduly burdensome and calls for information that is neither relevant to the subject matter of this action nor reasonably calculated to lead to the discovery of relevant information.

24.     Uber objects to the definition of "Refer," "Relate," "Referring" and "Relating" as overbroad, unduly burdensome, vague and ambiguous, and purporting to impose burdens that are greater than, more burdensome than, or inconsistent with the obligations imposed by Applicable Law.

25.     Uber objects to the definition of "Uber Projections" as vague and ambiguous to the extent that it includes "any . . . unaudited financial projections concerning the business of Uber."

26.     Uber objects to the definition of "You" and "Your" as vague and ambiguous to the extent they purport to refer to an entity other than Uber.  In responding to the Notice, Uber will construe the terms "You" and "Your" to mean only Uber Technologies, Inc.

## SPECIFIC OBJECTIONS AND RESPONSES TO NOTICE TOPICS

**Topic No. 1:**

> *Without limitation as to date, the deponent(s)' curriculum vitae or resume as well as credentials, work experience, job duties and responsibilities.*

**Response to Topic No. 1:**

Uber objects to Topic 1 on the basis that Uber will not produce a deponent at this time for the reasons stated in response to Topics 4 – 44 below.  For this reason, Uber will not designate a witness to testify to Topic 1 at this time but is available to meet and confer with Lead Plaintiff concerning this Topic.

**Topic No. 2:**

> *All efforts the deponent(s) undertook to prepare for the deposition including all documents the deponent(s) reviewed in preparation of the deposition.*

**Response to Topic No. 2:**

Uber objects to Topic 2 on the basis that Uber will not produce a deponent at this time for the reasons stated in response to Topics 4 – 44 below.  Uber further objects to Topic 2 to the extent that it seeks testimony on subjects protected by the attorney-client privilege, the work product doctrine, the joint defense or common interest doctrine and/or any other privilege or immunity.

For these reasons, Uber will not designate a witness to testify to Topic 2 at this time but is available to meet and confer with Lead Plaintiff concerning this Topic.

**Topic No. 3:**

> *The identities of all individuals the deponent(s) communicated with to become knowledgeable with respect to each of the topics for examination.*

**Response to Topic No. 3:**

Uber objects to Topic 3 on the basis that Uber will not produce a deponent at this time for the reasons stated in response to Topics 4 – 44 below.  Uber further objects to Topic 3 to the extent that it seeks testimony on subjects protected by the attorney-client privilege, the work product doctrine, the joint defense or common interest doctrine and/or any other privilege or immunity.

For these reasons, Uber will not designate a witness to testify to Topic 3 at this time but is available to meet and confer with Lead Plaintiff concerning this Topic.

**Topic No. 4:**

> *Any software, programs, systems, processes, reports or Documents Concerning or used to monitor, analyze, track, record, report on or project the Categories Including, for each Category above, including: (a) the functionality of the software, programs, systems, processes or Documents; (b) the various types of data entered into and accessible through the software, programs, systems, processes or Documents; (c) the manner in which and by whom the data are entered; (d) the various reports available to be generated by the software, programs, systems, processes, or Documents and to whom such reports are regularly disseminated; (e) the location of the data on the system; (f) how the data is accessed; (g) any limitations on read or write access for each software, program, system, or type of processes or Document; (h) by whom the data is accessed; and (i) the reports available to and accessed by the Individual Defendants, Including information on when the Individual Defendants accessed the information.*

**Response to Topic No. 4:**

Uber objects to Topic 4 on the grounds that it is disfavored discovery of ESI by deposition rather than through the informal meet-and-confer process and impermissibly seeks "discovery on discovery" without an adequate factual basis for doing so at this juncture, and it is premature to the extent that it calls for substantive testimony at a juncture when the parties have yet to reach agreement concerning the scope of discovery (including search terms) and have not yet completed review and substantial production of documents and information relevant to the issues in the litigation.  Uber objects to Topic 4 on the grounds that it is overbroad and unduly burdensome to the extent that it seeks information that is not relevant to any claims or defenses in the suit nor reasonably calculated to lead to the discovery of admissible evidence, and that it is not proportional

to the needs of the case.  Uber objects to the use of the terms "Categories" and "Category" (and their definition, as set forth above) in Topic 4 as vague, ambiguous, overbroad and unduly burdensome.  Uber objects to Topic 4 to the extent that it seeks testimony on subjects protected by the attorney-client privilege, the work product doctrine, the joint defense or common interest doctrine and/or any other privilege or immunity.  Uber objects to Topic 4 to the extent it requires Uber to express a legal or expert opinion.  Uber objects to Topic 4 on the grounds that it is compound and consists of numerous discrete subparts, and is therefore overbroad and unduly burdensome.  Uber objects to Topic 4 on the grounds that it fails to describe the testimony sought with the required particularity, and/or is so unintelligible that Uber cannot prepare its witnesses to testify on Topic 4.  Uber objects to Topic 4 to the extent it seeks information that is more easily obtainable by production of documents by Uber.

For these reasons, Uber will not designate a witness to testify to Topic 4 at this time but is available to meet and confer with Lead Plaintiff concerning this Topic.

**Topic No. 5:**

> *Uber's operational, legal, organizational, reporting, or financial structure, Including: (a) The lines of authority and personnel reporting between and among the Individual Defendants and any direct or indirect reports of the Individual Defendants, and any Person identified in Uber Defendants' Initial Disclosures or the Uber Custodians; (b) The structure and reporting lines of Uber's departments, groups, teams, agents, consultants, independent contractors, or other Persons responsible for the Categories; and (c) The structure and reporting lines of Uber's international offices, subsidiaries, or affiliates, Concerning the Categories.*

**Response to Topic No. 5:**

Uber objects to Topic 5 to the extent it seeks disfavored discovery of ESI and custodians by deposition rather than through the informal meet-and-confer process and to the extent it seeks "discovery on discovery" without an adequate factual basis for doing so at this juncture.  Uber objects to this Topic on the basis that it is premature to the extent that it calls for substantive testimony at a juncture when the parties have yet to reach agreement concerning the scope of discovery (including search terms) and have not yet completed review and substantial production of documents and information relevant to the issues in the litigation.  Uber objects to Topic 5 on the grounds that it is overbroad and unduly burdensome to the extent it seeks information that is not

1   relevant to any claims or defenses in the suit nor reasonably calculated to lead to the discovery of

2   admissible evidence, and that it is not proportional to the needs of the case.  Uber objects to the use

3   of the term "Categories" in Topic 5 as vague, ambiguous, overbroad and unduly burdensome.  Uber

4   objects to Topic 5 to the extent that it seeks testimony on subjects protected by the attorney-client

5   privilege, the work product doctrine, the joint defense or common interest doctrine and/or any other

6   privilege or immunity.  Uber objects to Topic 5 to the extent it seeks information that is more easily

7   obtainable by production of documents by Uber.  Uber objects to Topic 5 to the extent it requires

8   Uber to express a legal or expert opinion.

9       For these reasons, Uber will not designate a witness to testify to Topic 5 at this time but is

10  available to meet and confer with Lead Plaintiff concerning this Topic.

11  **Topic No. 6:**

12      *All Communications between You and any other Defendant during the Relevant Time*
        *Period.*

13

14  **Response to Topic No. 6:**

15      Uber objects to Topic 6 on the grounds that it is premature because it calls for substantive

16  testimony at this early juncture before the parties have had a reasonable opportunity to review and

17  produce documents relevant to the issues in the litigation.  Uber objects to Topic 6 on the grounds

18  that it is overbroad and unduly burdensome to the extent that it seeks information that is not relevant

19  to any claims or defenses in the suit nor reasonably calculated to lead to the discovery of admissible

20  evidence, and that it is not proportional to the needs of the case.  Uber objects to Topic 6 to the

21  extent that it seeks testimony on subjects protected by the attorney-client privilege, the work

22  product doctrine, the joint defense or common interest doctrine and/or any other privilege or

23  immunity.  Uber objects to Topic 6 to the extent it requires Uber to express a legal or expert

24  opinion.  Uber objects to Topic 6 on the grounds that it fails to describe the testimony sought with

25  the required particularity, and/or is so unintelligible that Uber cannot prepare its witnesses to testify

26  on Topic 6.  Uber objects to Topic 6 to the extent it seeks information that is more easily obtainable

27  by production of documents by Uber.

28

For these reasons, Uber will not designate a witness to testify to Topic 6 at this time but is available to meet and confer with Lead Plaintiff concerning this Topic.

**Topic No. 7:**

> *Uber's Policies and Practices Concerning communication with members of the financial community, media, short sellers, or analysts Concerning the Categories.*

**Response to Topic No. 7:**

Uber objects to Topic 7 on the grounds that it is disfavored discovery of ESI by deposition rather than through the informal meet-and-confer process and that it is premature because it calls for substantive testimony at a juncture when the parties have yet to reach agreement concerning the scope of discovery (including search terms) and have not yet completed review and substantial production of documents and information relevant to the issues in the litigation. Uber objects to Topic 7 on the grounds that it is overbroad and unduly burdensome to the extent that it seeks information that is not relevant to any claims or defenses in the suit nor reasonably calculated to lead to the discovery of admissible evidence, and that it is not proportional to the needs of the case. Uber objects to the use of the term "Categories" in Topic 7 as vague, ambiguous, overbroad and unduly burdensome. Uber objects to Topic 7 to the extent that it seeks testimony on subjects protected by the attorney-client privilege, the work product doctrine, the joint defense or common interest doctrine and/or any other privilege or immunity. Uber objects to Topic 7 to the extent it requires Uber to express a legal or expert opinion. Uber objects to Topic 7 on the grounds that it fails to describe the testimony sought with the required particularity, and/or is so unintelligible that Uber cannot prepare its witnesses to testify on Topic 7. Uber objects to Topic 7 to the extent it seeks information that is more easily obtainable by production of documents by Uber.

For these reasons, Uber will not designate a witness to testify to Topic 7 at this time but is available to meet and confer with Lead Plaintiff concerning this Topic.

**Topic No. 8:**

> *Uber's Policies and Practices Concerning the creation, preparation, and dissemination of the Offering Documents Including the identification and description of Documents or reports prepared in connection with the Offering Documents and the identity and location of Documents, Including ESI, relevant to such Policies and Practices.*

1    **Response to Topic No. 8:**

2       Uber objects to Topic 8 on the grounds that it is disfavored discovery of ESI by deposition

3 rather than through the informal meet-and-confer process, it impermissibly seeks "discovery on

4 discovery" without an adequate factual basis for doing so at this juncture, and it is premature to the

5 extent that it calls for substantive testimony at a juncture when the parties have yet to reach

6 agreement concerning the scope of discovery (including search terms) and have not yet completed

7 review and substantial production of documents and information relevant to the issues in the

8 litigation. Uber objects to Topic 8 on the grounds that it is overbroad and unduly burdensome to the

9 extent that it seeks information that is not relevant to any claims or defenses in the suit nor

10 reasonably calculated to lead to the discovery of admissible evidence, and that it is not proportional

11 to the needs of the case. Uber objects to the use of certain terms in this Topic, including "creation,"

12 "preparation," "dissemination," "identification and description," and "identity and location of

13 Documents, including ESI," as vague, ambiguous and overbroad. Uber objects to Topic 8 to the

14 extent that it seeks testimony on subjects protected by the attorney-client privilege, the work

15 product doctrine, the joint defense or common interest doctrine and/or any other privilege or

16 immunity. Uber objects to Topic 8 to the extent it requires Uber to express a legal or expert

17 opinion. Uber objects to Topic 8 to the extent it seeks information that is more easily obtainable by

18 production of documents by Uber.

19       For these reasons, Uber will not designate a witness to testify to Topic 8 at this time but is

20 available to meet and confer with Lead Plaintiff concerning this Topic.

21    **Topic No. 9:**

22       *The identity of current and former Uber Employees who participated in the creation,*
23 *preparation and dissemination of the Offering Documents and/or any Road Show material,*
*Including Employees that Uber believes are the Persons most knowledge about the Offering*
24 *Documents and/or any Road Show material.*

25    **Response to Topic No. 9:**

26       Uber objects to Topic 9 on the grounds that it impermissibly seeks "discovery on discovery"

27 without an adequate factual basis for doing so at this juncture, and is premature to the extent that it

28 calls for substantive testimony at a juncture when the parties have yet to reach agreement

1  concerning the scope of discovery (including search terms) and have not yet completed review and

2  substantial production of documents and information relevant to the issues in the litigation.  Uber

3  objects to Topic 9 on the grounds that it is overbroad and unduly burdensome to the extent that it

4  seeks information that is not relevant to any claims or defenses in the suit nor reasonably calculated

5  to lead to the discovery of admissible evidence, and that it is not proportional to the needs of the

6  case.  Uber objects to the use of certain terms in this Topic, including "creation," "preparation," and

7  "dissemination" as vague, ambiguous and overbroad.  Uber objects to Topic 9 to the extent it seeks

8  information that is more easily obtainable by production of documents by Uber.  Uber objects to

9  Topic 9 to the extent that it seeks testimony on information protected by the attorney-client

10  privilege, the work product doctrine, the joint defense or common interest doctrine and/or any other

11  privilege or immunity.

12       For these reasons, Uber will not designate a witness to testify to Topic 9 at this time but is

13  available to meet and confer with Lead Plaintiff concerning this Topic.

14  **Topic No. 10:**

15       *The identity of all current and former committees and departments involved in the creation,*
    *preparation, and dissemination of the Offering Documents or Road Show material.*

16

17  **Response to Topic No. 10:**

18       Uber objects to Topic 10 on the grounds that it impermissibly seeks "discovery on

19  discovery" without an adequate factual basis for doing so at this juncture, and is premature to the

20  extent that it calls for substantive testimony at a juncture when the parties have yet to reach

21  agreement concerning the scope of discovery (including search terms) and have not yet completed

22  review and substantial production of documents and information relevant to the issues in the

23  litigation.  Uber objects to Topic 10 as overbroad and unduly burdensome to the extent it seeks

24  information neither relevant to the claims and defenses of any party nor proportional to the needs of

25  the case.  Uber objects to the use of certain terms in this Topic, including "committees,"

26  "departments," "involved in the creation," "preparation," and "dissemination" as vague, ambiguous

27  and overbroad.  Uber objects to Topic 10 to the extent it seeks information that is more easily

28  obtainable by production of documents by Uber.  Uber objects to Topic 10 to the extent that it seeks

testimony on subjects protected by the attorney-client privilege, the work product doctrine, the joint defense or common interest doctrine and/or any other privilege or immunity

For these reasons, Uber will not designate a witness to testify to Topic 10 at this time but is available to meet and confer with Lead Plaintiff concerning this Topic.

**Topic No. 11:**

*The identification and description of each report produced by Uber for internal use by Uber's Senior Management or Uber's Board of Directors Concerning compiling information to be filed, discussed, or referenced in Uber's IPO and Offering Documents.*

**Response to Topic No. 11:**

Uber objects to Topic 11 on the grounds that it impermissibly seeks "discovery on discovery" without an adequate factual basis for doing so at this juncture, and is premature to the extent that it calls for substantive testimony at a juncture when the parties have yet to reach agreement concerning the scope of discovery (including search terms) and have not yet completed review and substantial production of documents and information relevant to the issues in the litigation.  Uber objects to Topic 11 as overbroad and unduly burdensome to the extent it seeks information neither relevant to the claims and defenses of any party nor proportional to the needs of the case.  Uber objects to Topic 11, and the term "compiling" in particular, as vague.  Uber objects to Topic 11 to the extent that it seeks testimony on subjects protected by the attorney-client privilege, the work product doctrine, the joint defense or common interest doctrine and/or any other privilege or immunity.  Uber objects to Topic 11 to the extent it requires Uber to express a legal or expert opinion.  Uber objects to Topic 11 to the extent it seeks information that is more easily obtainable by production of documents by Uber.

For these reasons, Uber will not designate a witness to testify to Topic 11 at this time but is available to meet and confer with Lead Plaintiff concerning this Topic.

**Topic No. 12:**

*The identification and description of all recurring Meetings and any Documents, Communications, and reports Concerning the Categories.*

**Response to Topic No. 12:**

Uber objects to Topic 12 on the grounds that it is disfavored discovery of ESI by deposition rather than through the informal meet-and-confer process, it impermissibly seeks "discovery on discovery" without an adequate factual basis for doing so at this juncture, and it is premature to the extent that it calls for substantive testimony at a juncture when the parties have yet to reach agreement concerning the scope of discovery (including search terms) and have not yet completed review and substantial production of documents and information relevant to the issues in the litigation.  Uber objects to Topic 12 as overbroad and unduly burdensome to the extent it seeks information neither relevant to the claims and defenses of any party nor proportional to the needs of the case.  Uber objects to the use of the term "Categories" in this Topic as ambiguous, overbroad and unduly burdensome.  Uber objects to Topic 12 to the extent that it seeks testimony on subjects protected by the attorney-client privilege, the work product doctrine, the joint defense or common interest doctrine and/or any other privilege or immunity.  Uber objects to Topic 12 to the extent it requires Uber to express a legal or expert opinion.  Uber objects to Topic 12 on the grounds that it fails to describe the testimony sought with the required particularity, and/or is so unintelligible that Uber cannot prepare its witnesses to testify on Topic 12.  Uber objects to Topic 12 to the extent it seeks information that is more easily obtainable by production of documents by Uber.

For these reasons, Uber will not designate a witness to testify to Topic 12 at this time but is available to meet and confer with Lead Plaintiff concerning this Topic.

**Topic No. 13:**

> *The identities of all Persons who participated in preparing the U.S. Safety Report (see ¶44), Including those who:(a) Collected information for the report; (b) Provided information for the report; (c) Prepared the report (and drafts thereof), Including editing, reviewing and compiling data for the report; (d) Communicated information pertinent to the U.S. Safety Report to those collecting information for the U.S. Safety Report; and (e) Persons who Uber believes are the most knowledge about the creation, collection, preparation, and dissemination of the information for the U.S. Safety Report and the U.S. Safety Report.*

**Response to Topic No. 13:**

Uber objects to Topic 13 on the grounds that it impermissibly seeks "discovery on discovery" without an adequate factual basis for doing so at this juncture, and is premature to the extent that it calls for substantive testimony at a juncture when the parties have yet to reach

agreement concerning the scope of discovery (including search terms) and have not yet completed

review and substantial production of documents and information relevant to the issues in the

litigation. Uber objects to Topic 13 as overbroad and unduly burdensome to the extent it seeks

information neither relevant to the claims and defenses of any party nor proportional to the needs of

the case. Uber objects to the use of certain terms in this Topic, including "U.S. Safety Report,"

"information," "creation," "collection," "preparation," and "dissemination" as vague, ambiguous

and overbroad. Uber objects to Topic 13 on the grounds that it is compound and consists of

numerous discrete subparts, and is therefore overbroad and unduly burdensome. Uber objects to

Topic 13 to the extent it seeks information that is more easily obtainable by production of

documents by Uber. Uber objects to Topic 13 to the extent it requires Uber to express a legal or

expert opinion. Uber objects to Topic 13 to the extent that it seeks testimony on subjects protected

by the attorney-client privilege, the work product doctrine, the joint defense or common interest

doctrine and/or any other privilege or immunity.

   For these reasons, Uber will not designate a witness to testify to Topic 13 at this time but is

available to meet and confer with Lead Plaintiff concerning this Topic.

**Topic No. 14:**

> *The existence and location of data for any international or non-United States equivalent safety report, Including the identity of any past or current Uber employees with relevant information concerning such data and the Persons who Uber believes are the most knowledge about such data.*

**Response to Topic No. 14:**

   Uber objects to Topic 14 on the grounds that it impermissibly seeks "discovery on

discovery" without an adequate factual basis for doing so at this juncture, and is premature to the

extent that it calls for substantive testimony at a juncture when the parties have yet to reach

agreement concerning the scope of discovery (including search terms) and have not yet completed

review and substantial production of documents and information relevant to the issues in the

litigation. Uber objects to Topic 14 as overbroad and unduly burdensome to the extent it seeks

information neither relevant to the claims and defenses of any party nor proportional to the needs of

the case. Uber objects to Topic 14 to the extent it seeks information that is more easily obtainable

UBER'S RESPONSES & OBJECTIONS TO   17   CASE NO. 3:19-cv-06361-RS
LEAD PLAINTIFF'S SECOND AMENDED
30(B)(6) DEPO. NOTICE

**157**

by production of documents by Uber.  Uber objects to Topic 14 to the extent it requires Uber to

express a legal or expert opinion.  Uber objects to the use of the terms "international or non-United

States equivalent safety report" and "data" as vague, ambiguous and overbroad.  Uber objects to

Topic 14 to the extent that it seeks testimony on subjects protected by the attorney-client privilege,

the work product doctrine, the joint defense or common interest doctrine and/or any other privilege

or immunity.

    For these reasons, Uber will not designate a witness to testify to Topic 14 at this time but is

available to meet and confer with Lead Plaintiff concerning this Topic.

**Topic No. 15:**

> *The existence and location of draft reports for any international or non-United States equivalent safety report, Including the identity of any past or current Uber employees with relevant information concerning such draft reports and the Persons who Uber believes are the most knowledge about such draft reports.*

**Response to Topic No. 15:**

    Uber objects to Topic 15 on the grounds that it is disfavored discovery of ESI by deposition

rather than through the informal meet-and-confer process, it impermissibly seeks "discovery on

discovery" without an adequate factual basis for doing so at this juncture, and it is premature to the

extent that it calls for substantive testimony at a juncture when the parties have yet to reach

agreement concerning the scope of discovery (including search terms) and have not yet completed

review and substantial production of documents and information relevant to the issues in the

litigation.  Uber objects to Topic 15 as overbroad and unduly burdensome to the extent it seeks

information neither relevant to the claims and defenses of any party nor proportional to the needs of

the case.  Uber objects to the use of the term "international or non-United States equivalent safety

report" as vague, ambiguous and overbroad  Uber objects to Topic 15 to the extent that it seeks

testimony on subjects protected by the attorney-client privilege, the work product doctrine, the joint

defense or common interest doctrine and/or any other privilege or immunity.  Uber objects to Topic

15 to the extent it requires Uber to provide information that it does not have in its possession,

custody, or control.  Uber objects to Topic 15 to the extent it seeks information that is more easily

obtainable by production of documents by Uber.  Uber objects to Topic 15 to the extent it requires Uber to express a legal or expert opinion.

For these reasons, Uber will not designate a witness to testify to Topic 15 at this time but is available to meet and confer with Lead Plaintiff concerning this Topic.

**Topic No. 16:**

*The location of and Uber's Policies and Practices for the filing and storage of Documents Concerning the Categories.*

**Response to Topic No. 16:**

Uber objects to Topic 16 on the grounds that it is disfavored discovery of ESI by deposition rather than through the informal meet-and-confer process, it impermissibly seeks "discovery on discovery" without an adequate factual basis for doing so at this juncture, and it is premature to the extent that it calls for substantive testimony at a juncture when the parties have yet to reach agreement concerning the scope of discovery (including search terms) and have not yet completed review and substantial production of documents and information relevant to the issues in the litigation.  Uber objects to Topic 16 as overbroad and unduly burdensome to the extent it seeks information neither relevant to the claims and defenses of any party nor proportional to the needs of the case.  Uber objects to the use of the term "Categories" in this Topic as vague, ambiguous, overbroad, and unduly burdensome.  Uber objects to Topic 16 to the extent it seeks information that is more easily obtainable by production of documents by Uber.  Uber objects to Topic 16 on the grounds that it fails to describe the testimony sought with the required particularity, and/or is so unintelligible that Uber cannot prepare its witnesses to testify on Topic 16.  Uber objects to Topic 16 to the extent that it seeks testimony on subjects protected by the attorney-client privilege, the work product doctrine, the joint defense or common interest doctrine and/or any other privilege or immunity.

For these reasons, Uber will not designate a witness to testify to Topic 16 at this time but is available to meet and confer with Lead Plaintiff concerning this Topic.

**Topic No. 17:**

*Uber's Policies and Practices, and any changes thereto, Concerning the backup, preservation, archiving, deletion, handling, retention and restoration of Documents, Communications, Electronic Data and/or ESI, as well as any electronic media containing backups of such data, Including:*

(a) *the backup, preservation, archiving, and restoration of data contained on network servers or other network storage devices;*

(b) *the backup, preservation, archiving, and restoration of data contained on Uber's computers, Including desktop computers, laptop computers, tablets, smartphones, local drives of network computer systems, and any other like device used by any Uber officer(s), partner(s), director(s), Employee(s), or other Person(s);*

(c) *the backup, preservation, archiving, and restoration of data contained on the hard drives of computer systems no longer in active service within Uber;*

(d) *the backup, preservation, archiving, and restoration of any data created or stored by or within Uber's electronic messaging systems, Including email, SMS, MMS, instant messaging (e.g., Slack, Blackberry, Google Chat, Whatsapp, and other like messages), and other forms of electronic Communications;*

(e) *the backup, preservation, archiving, and restoration of any data created or stored by or within Uber's voicemail systems or other systems of recording telephonic messages;*

(f) *Uber's Document retention and/or destruction policy, Including those Policies and Practices employed in connection with this Action and any litigation holds related this Action;*

(g) *the rotation of any electronic media used by Uber to backup ESI;*

(h) *the rotation of any individual workstations and computer systems used by Uber; and*

(i) *the deletion of data from any Uber computers used by any Uber officer(s), partner(s), director(s), Employee(s), representative(s), or other Person(s), whether by scheduled, automated, or individualized processes.*

**Response to Topic No. 17:**

Uber objects to Topic 17 on the grounds that it is disfavored discovery of ESI by deposition rather than through the informal meet-and-confer process and impermissibly seeks "discovery on discovery" without an adequate factual basis for doing so.  Uber objects to Topic 17 as vague, overbroad, and unduly burdensome to the extent it seeks information neither relevant to the claims and defenses of any party nor proportional to the needs of the case.  Uber objects to Topic 17 to the extent that it seeks testimony on subjects protected by the attorney-client privilege, the work

product doctrine, the joint defense or common interest doctrine and/or any other privilege or immunity.  Uber objects to Topic 17 to the extent it requires Uber to express a legal or expert opinion.  Uber objects to Topic 17 on the grounds that it is compound and consists of numerous discrete subparts, and is therefore overbroad and unduly burdensome.  Uber objects to Topic 17 to the extent it seeks information that is more easily obtainable by production of documents by Uber.

For these reasons, Uber will not designate a witness to testify to Topic 17 at this time but is available to meet and confer with Lead Plaintiff concerning this Topic.

**Topic No. 18:**

> *Uber's Policies and Practices, and any changes thereto, Concerning the use by Uber Employees, Including the Individuals Defendants, of personal desktop computers, portable computers, laptop computers, handheld devices, cellular or smartphones, telephones, and other similar electronic devices, and any applications thereon.*

**Response to Topic No. 18:**

Uber objects to Topic 18 on the grounds that it is disfavored discovery of ESI by deposition rather than through the informal meet-and-confer process and impermissibly seeks "discovery on discovery" without an adequate factual basis for doing so.  Uber objects to Topic 18 as vague, overbroad, and unduly burdensome.  Uber objects to Topic 18 on the grounds that it seeks information neither relevant to the claims and defenses of any party nor proportional to the needs of the case.  Uber objects to Topic 18 to the extent that it seeks testimony on subjects protected by the attorney-client privilege, the work product doctrine, the joint defense or common interest doctrine and/or any other privilege or immunity.  Uber objects to Topic 18 to the extent it requires Uber to express a legal or expert opinion.  Uber objects to Topic 18 to the extent it requires the disclosure of information in violation of privacy rights or obligations under any constitutional, statutory or common law rights of privacy.  Uber objects to Topic 18 to the extent it requires Uber to provide information that it does not have in its possession, custody, or control.  Uber objects to Topic 18 to the extent it seeks information that is more easily obtainable by production of documents by Uber.

For these reasons, Uber will not designate a witness to testify to Topic 18 at this time but is available to meet and confer with Lead Plaintiff concerning this Topic.

**Topic No. 19:**

> *Uber's Policies and Practices for the use of cell phones, smartphones, digital convergence devices, or other portable electronic devices, whether owned by Uber or by others, used by any employee of Uber including Senior Management involved in (i) the IPO; (ii) the Offering Documents; and (iii) any Road Show.*

**Response to Topic No. 19:**

Uber objects to Topic 19 on the grounds that it is disfavored discovery of ESI by deposition rather than through the informal meet-and-confer process and impermissibly seeks "discovery on discovery" without an adequate factual basis for doing so. Uber objects to Topic 19 as vague, overbroad, and unduly burdensome to the extent it seeks information neither relevant to the claims and defenses of any party nor proportional to the needs of the case. Uber objects to Topic 19 to the extent that it seeks testimony on subjects protected by the attorney-client privilege, the work product doctrine, the joint defense or common interest doctrine and/or any other privilege or immunity. Uber objects to Topic 19 to the extent it requires Uber to express a legal or expert opinion. Uber objects to Topic 19 to the extent it requires the disclosure of information in violation of privacy rights or obligations under any constitutional, statutory or common law rights of privacy. Uber objects to Topic 19 to the extent it requires Uber to provide information that it does not have in its possession, custody, or control. Uber objects to Topic 19 to the extent it seeks information that is more easily obtainable by production of documents by Uber.

For these reasons, Uber will not designate a witness to testify to Topic 19 at this time but is available to meet and confer with Lead Plaintiff concerning this Topic.

**Topic No. 20:**

> *All methods by which Senior Management, Including the Individual Defendants, communicated Concerning Uber business such as e-mail, Internet newsgroups, chat rooms, instant messaging, internal or external text messaging, messaging via social media platforms, applications, and any other electronic messaging.*

**Response to Topic No. 20:**

Uber objects to Topic 20 on the grounds that it is disfavored discovery of ESI by deposition rather than through the informal meet-and-confer process, it impermissibly seeks "discovery on discovery" without an adequate factual basis for doing at this juncture, and it is premature

because it calls for substantive testimony at a juncture when the parties have yet to reach agreement concerning the scope of discovery (including search terms) and have not yet completed review and substantial production of documents and information relevant to the issues in the litigation.  Uber objects to Topic 20 as vague, overbroad, and unduly burdensome to the extent it seeks information neither relevant to the claims and defenses of any party nor proportional to the needs of the case. Uber objects to Topic 20 to the extent it requires the disclosure of information in violation of privacy rights or obligations under any constitutional, statutory or common law rights of privacy. Uber objects to Topic 20 to the extent it requires Uber to provide information that it does not have in its possession, custody, or control.  Uber objects to Topic 20 to the extent it seeks information that is more easily obtainable by production of documents by Uber.  Uber objects to Topic 20 to the extent that it seeks testimony on information protected by the attorney-client privilege, the work product doctrine, the joint defense or common interest doctrine and/or any other privilege or immunity.

For these reasons, Uber will not designate a witness to testify to Topic 20 at this time but is available to meet and confer with Lead Plaintiff concerning this Topic.

**Topic No. 21:**

*All aspects of the Document collection process, Including:(a) what sources of Documents exist; (b) what sources of Documents were searched; (c) what sources of Documents were not searched; (d) the process used to collect Documents.*

**Response to Topic No. 21:**

Uber objects to Topic 21 on the grounds that it is disfavored discovery of ESI by deposition rather than through the informal meet-and-confer process and impermissibly seeks "discovery on discovery" without an adequate factual basis for doing so.  Uber objects to Topic 21 as vague, overbroad, and unduly burdensome to the extent it seeks information neither relevant to the claims and defenses of any party nor proportional to the needs of the case.  Uber objects to Topic 21 to the extent it requires the disclosure of information in violation of privacy rights or obligations under any constitutional, statutory or common law rights of privacy.  Uber objects to Topic 21 to the extent it requires Uber to provide information that it does not have in its possession, custody, or control.  Uber objects to Topic 21 to the extent it seeks information that is more easily obtainable by

1  production of documents by Uber.  Uber objects to Topic 21 on the grounds that it fails to describe

2  the testimony sought with the required particularity, and/or is so unintelligible that Uber cannot

3  prepare its witnesses to testify on Topic 21.  Uber objects to Topic 21 to the extent that it seeks

4  testimony on information protected by the attorney-client privilege, the work product doctrine, the

5  joint defense or common interest doctrine and/or any other privilege or immunity.

6     For these reasons, Uber will not designate a witness to testify to Topic 21 at this time but is

7  available to meet and confer with Lead Plaintiff concerning this Topic.

8  **Topic No. 22:**

9     *All efforts to retrieve text messages, instant messages, and other non-email Communications*
   *Concerning Uber's business.*

10

11  **Response to Topic No. 22:**

12     Uber objects to Topic 22 on the grounds that it is disfavored discovery of ESI by deposition

13  rather than through the informal meet-and-confer process and impermissibly seeks "discovery on

14  discovery" without an adequate factual basis for doing so.  Uber objects to Topic 22 as vague,

15  overbroad, and unduly burdensome to the extent it seeks information neither relevant to the claims

16  and defenses of any party nor proportional to the needs of the case.  Uber objects to Topic 22 to the

17  extent it requires the disclosure of information in violation of privacy rights or obligations under

18  any constitutional, statutory or common law rights of privacy.  Uber objects to Topic 22 to the

19  extent it requires Uber to provide information that it does not have in its possession, custody, or

20  control.  Uber objects to Topic 22 to the extent it seeks information that is more easily obtainable by

21  production of documents by Uber.  Uber objects to Topic 22 to the extent that it seeks testimony on

22  information protected by the attorney-client privilege, the work product doctrine, the joint defense

23  or common interest doctrine and/or any other privilege or immunity.

24     For these reasons, Uber will not designate a witness to testify to Topic 22 at this time but is

25  available to meet and confer with Lead Plaintiff concerning this Topic.

26  **Topic No. 23:**

27

28

UBER'S RESPONSES & OBJECTIONS TO   24   CASE NO. 3:19-cv-06361-RS
LEAD PLAINTIFF'S SECOND AMENDED
30(B)(6) DEPO. NOTICE

**164**

*Uber's Policies and Practices Concerning the definition of and disclosure of material non-public information and the identity of any current or former Uber Employees who created, prepared or disseminated said Policies and Practices.*

**Response to Topic 23:**

Uber objects to Topic 23 on the grounds that it impermissibly seeks "discovery on discovery" without an adequate factual basis for doing so at this juncture, and is premature to the extent that it calls for substantive testimony at a juncture when the parties have yet to reach agreement concerning the scope of discovery (including search terms) and have not yet completed review and substantial production of documents and information relevant to the issues in the litigation. Uber objects to Topic 23 as overbroad and unduly burdensome to the extent it seeks information neither relevant to the claims and defenses of any party nor proportional to the needs of the case. Uber objects to the use of certain terms in this Topic, including "Policies and Practices," "created," "prepared," and "disseminated" as vague, ambiguous and overbroad. Uber objects to Topic 23 to the extent that it seeks testimony on subjects protected by the attorney-client privilege, the work product doctrine, the joint defense or common interest doctrine and/or any other privilege or immunity. Uber objects to Topic 23 to the extent it requires Uber to express a legal or expert opinion. Uber objects to Topic 23 to the extent it seeks information that is more easily obtainable by production of documents by Uber.

For these reasons, Uber will not designate a witness to testify to Topic 23 at this time but is available to meet and confer with Lead Plaintiff concerning this Topic.

**Topic No. 24:**

*The contents of the Offering Documents.*

**Response to Topic No. 24:**

Uber objects to Topic 24 on grounds that it is premature to the extent that it calls for substantive testimony at a juncture when the parties have yet to reach agreement concerning the scope of discovery (including search terms) and have not yet completed review and substantial production of documents and information relevant to the issues in the litigation. Uber objects to Topic 24 as vague, overbroad, and unduly burdensome to the extent it seeks information neither relevant to the claims and defenses of any party nor proportional to the needs of the case. Uber

objects to Topic 24 to the extent that it seeks testimony on subjects protected by the attorney-client privilege, the work product doctrine, the joint defense or common interest doctrine and/or any other privilege or immunity. Uber objects to Topic 24 to the extent it seeks information that is more easily obtainable by production of documents by Uber. Uber objects to Topic 24 to the extent it requires Uber to express a legal or expert opinion. Uber objects to Topic 24 on the grounds that it fails to describe the testimony sought with the required particularity, and/or is so unintelligible that Uber cannot prepare its witnesses to testify on Topic 24. Uber objects to Topic 24 as inappropriate to the extent that it seeks testimony regarding information readily available to Lead Plaintiff by other means.

For these reasons, Uber will not designate a witness to testify to Topic 24 at this time but is available to meet and confer with Lead Plaintiff concerning this Topic.

**Topic No. 25**

*The Uber IPO, Including: (a) the timing of the Uber IPO; (b) all processes Concerning the Uber IPO; (c) any Communications Concerning the Uber IPO; (d) all internal Uber Meetings, Including Uber Board Meetings; Concerning the Uber IPO; (e) all valuations of Uber created in connection with the Uber IPO; (f) all Uber Projections including in the Offering Documents; and (g) all materials created, received, or considered Concerning the Categories in connection with the Uber IPO.*

**Response to Topic No. 25:**

Uber objects to Topic 25 on grounds that it is premature to the extent that it calls for substantive testimony at a juncture when the parties have yet to reach agreement concerning the scope of discovery (including search terms) and have not yet completed review and substantial production of documents and information relevant to the issues in the litigation. Uber objects to Topic 25 as vague, overbroad, and unduly burdensome to the extent it seeks information neither relevant to the claims and defenses of any party nor proportional to the needs of the case. Uber objects to Topic 25 on the grounds that it is compound and consists of numerous discrete subparts, and is therefore overbroad and unduly burdensome. Uber objects to Topic 25 to the extent that it seeks testimony on subjects protected by the attorney-client privilege, the work product doctrine, the joint defense or common interest doctrine and/or any other privilege or immunity. Uber objects to Topic 25 to the extent it seeks information that is more easily obtainable by production of

1    documents by Uber.  Uber objects to Topic 25 to the extent it requires Uber to express a legal or

2    expert opinion.  Uber objects to Topic 25 on the grounds that it fails to describe the testimony

3    sought with the required particularity, and/or is so unintelligible that Uber cannot prepare its

4    witnesses to testify on Topic 25.  Uber objects to Topic 25 as inappropriate to the extent that it

5    seeks testimony regarding information readily available to Lead Plaintiff by other means.

6           For these reasons, Uber will not designate a witness to testify to Topic 25 at this time but is

7    available to meet and confer with Lead Plaintiff concerning this Topic.

8    **Topic No. 26**

9        *Your Advisors in connection with the Uber IPO, Including: (a) Your Communications with*
     *Your Advisors in connection with the Uber IPO; (b) The due diligence process Your*
10       *Advisors undertook Including Documents and Communications provided to, or sent by, Your*
     *Advisors in connection with the Uber IPO; (c) Your process to select Your Advisors; (d)*
11       *Your retenton of and agreements with Your Advisors.*

12   **Response to Topic No. 26**

13          Uber objects to Topic 26 on grounds that it is premature to the extent that it calls for

14   substantive testimony at a juncture when the parties have yet to reach agreement concerning the

15   scope of discovery (including search terms) and have not yet completed review and substantial

16   production of documents and information relevant to the issues in the litigation.  Uber objects to

17   Topic 26 as vague, overbroad, and unduly burdensome to the extent it seeks information neither

18   relevant to the claims and defenses of any party nor proportional to the needs of the case.  Uber

19   objects to Topic 26 on the grounds that it is compound and consists of numerous discrete subparts,

20   and is therefore overbroad and unduly burdensome.  Uber objects to Topic 26 to the extent that it

21   seeks testimony on subjects protected by the attorney-client privilege, the work product doctrine,

22   the joint defense or common interest doctrine and/or any other privilege or immunity.  Uber objects

23   to Topic 26 to the extent it requires Uber to provide information that it does not have in its

24   possession, custody, or control.  Uber objects to Topic 26 to the extent it seeks information that is

25   more easily obtainable by production of documents by Uber.  Uber objects to Topic 26 to the extent

26   it requires Uber to express a legal or expert opinion.  Uber objects to Topic 26 on the grounds that it

27   fails to describe the testimony sought with the required particularity, and/or is so unintelligible that

28   Uber cannot prepare its witnesses to testify on Topic 26.  Uber objects to Topic 26 as inappropriate

1  to the extent that it seeks testimony regarding information readily available to Lead Plaintiff by

2  other means.

3          For these reasons, Uber will not designate a witness to testify to Topic 26 at this time but is

4  available to meet and confer with Lead Plaintiff concerning this Topic.

5  **Topic No. 27**

6          *Uber's common stock issued in the Uber IPO, Including: (a) all valuations of Uber common*
   *stock; (b) Your Communications regarding all valuations of Uber common stock; (c) the*
7  *public trading price of Uber common stock after the Uber IPO; and (d) all factors affecting*
   *the value of Uber common stock Including the Categories.*

8

9  **Response to Topic No. 27:**

10         Uber objects to Topic 27 on grounds that it is premature to the extent that it calls for

11  substantive testimony at a juncture when the parties have yet to reach agreement concerning the

12  scope of discovery (including search terms) and have not yet completed review and substantial

13  production of documents and information relevant to the issues in the litigation.  Uber objects to

14  Topic 27 as vague, overbroad, and unduly burdensome to the extent it seeks information neither

15  relevant to the claims and defenses of any party nor proportional to the needs of the case.  Uber

16  objects to Topic 27 on the grounds that it is compound and consists of numerous discrete subparts,

17  and is therefore overbroad and unduly burdensome.  Uber objects to Topic 27 to the extent that it

18  seeks testimony on subjects protected by the attorney-client privilege, the work product doctrine,

19  the joint defense or common interest doctrine and/or any other privilege or immunity.  Uber objects

20  to Topic 27 to the extent it seeks information that is more easily obtainable by production of

21  documents by Uber.  Uber objects to Topic 27 to the extent it requires Uber to express a legal or

22  expert opinion.  Uber objects to Topic 27 on the grounds that it fails to describe the testimony

23  sought with the required particularity, and/or is so unintelligible that Uber cannot prepare its

24  witnesses to testify on Topic 27.  Uber objects to Topic 27 as inappropriate to the extent that it

25  seeks testimony regarding information readily available to Lead Plaintiff by other means.

26         For these reasons, Uber will not designate a witness to testify to Topic 27 at this time but is

27  available to meet and confer with Lead Plaintiff concerning this Topic.

28  **Topic No. 28**

*Uber's Business Model and Growth Strategy, Including: (a) all Communications and Documents Concerning Uber's Business Model and Growth Strategy in connection with Uber's IPO; (b) all forecasts, projections, analyses, appraisals, and/or valuations that was reviewed, relied on, or generated Concerning Uber's Business Model and Growth Strategy in connection with the Uber IPO; (c) any information Concerning Uber's Business Model and Growth Strategy was excluded from the Offering Documents; and (d) the reasons why information Concerning Uber's Business Model and Growth Strategy was excluded from the Offering Documents.*

**Response to Topic No. 28**

Uber objects to Topic 28 on grounds that it is premature to the extent that it calls for substantive testimony at a juncture when the parties have yet to reach agreement concerning the scope of discovery (including search terms) and have not yet completed review and substantial production of documents and information relevant to the issues in the litigation.  Uber objects to Topic 28 as vague, overbroad, and unduly burdensome to the extent it seeks information neither relevant to the claims and defenses of any party nor proportional to the needs of the case.  Uber objects to Topic 28 on the grounds that it is compound and consists of numerous discrete subparts, and is therefore overbroad and unduly burdensome.  Uber objects to the use of the term "Uber's Business Model and Growth Strategy" in Topic 28 as vague, ambiguous, overbroad, unduly burdensome and to the extent it requires a legal conclusion.  Uber objects to Topic 28 to the extent that it seeks testimony on subjects protected by the attorney-client privilege, the work product doctrine, the joint defense or common interest doctrine and/or any other privilege or immunity.  Uber objects to Topic 28 to the extent it seeks information that is more easily obtainable by production of documents by Uber.  Uber objects to Topic 28 to the extent it requires Uber to express a legal or expert opinion.  Uber objects to Topic 28 on the grounds that it fails to describe the testimony sought with the required particularity, and/or is so unintelligible that Uber cannot prepare its witnesses to testify on Topic 28.  Uber objects to Topic 28 as inappropriate to the extent that it seeks testimony regarding information readily available to Lead Plaintiff by other means.

For these reasons, Uber will not designate a witness to testify to Topic 28 at this time but is available to meet and confer with Lead Plaintiff concerning this Topic.

**Topic No. 29**

*Uber's Passenger Safety Issues, Including: (a) all Communications and Documents Concerning Uber's Passenger Safety Issues in connection with Uber's IPO; (b) all*

*forecasts, projections, analyses, appraisals, and/or valuations that was reviewed, relied on, or generated Concerning Uber's Passenger Safety Issues in connection with Uber's IPO; (c) any information Concerning Uber's Passenger Safety Issues was excluded fom the Offering Documents; and (d) the reasons why information Concerning Uber's Passenger Safety Issues was excluded from the Offering Documents.*

**Response to Topic No. 29:**

Uber objects to Topic 29 on grounds that it is premature to the extent that it calls for substantive testimony at a juncture when the parties have yet to reach agreement concerning the scope of discovery (including search terms) and have not yet completed review and substantial production of documents and information relevant to the issues in the litigation. Uber objects to Topic 29 as vague, overbroad, and unduly burdensome to the extent it seeks information neither relevant to the claims and defenses of any party nor proportional to the needs of the case. Uber objects to Topic 29 on the grounds that it is compound and consists of numerous discrete subparts, and is therefore overbroad and unduly burdensome. Uber objects to the use of the term "Uber's Passenger Safety Issues" in Topic 29 as vague, ambiguous and overbroad. Uber objects to Topic 29 to the extent that it seeks testimony on subjects protected by the attorney-client privilege, the work product doctrine, the joint defense or common interest doctrine and/or any other privilege or immunity. Uber objects to Topic 29 to the extent it would result in the disclosure of information in violation of privacy rights or obligations under any constitutional, statutory or common law rights of privacy. Uber objects to Topic 29 to the extent it seeks information that is more easily obtainable by production of documents by Uber. Uber objects to Topic 29 to the extent it requires Uber to express a legal or expert opinion. Uber objects to Topic 29 on the grounds that it fails to describe the testimony sought with the required particularity, and/or is so unintelligible that Uber cannot prepare its witnesses to testify on Topic 29. Uber objects to Topic 29 as inappropriate to the extent that it seeks testimony regarding information readily available to Lead Plaintiff by other means.

For these reasons, Uber will not designate a witness to testify to Topic 29 at this time but is available to meet and confer with Lead Plaintiff concerning this Topic.

**Topic 30**

*Uber's Financial Condition, Including: (a) all Communications and Documents Concerning Uber's Financial Condition in connection with the Uber IPO; (b) all forecasts, projections, analyses, appraisals, and/or valuations that were reviewed, relied on, or generated Concerning Uber's Financial Condition in connection with Uber's IPO; (c) any information*

*Concerning Uber's Financial Condition was excluded from the Offering Documents; and (d) the reasons why information Concerning Uber's Financial Condition was excluded from the Offering Documents.*

**Response to Topic No. 30:**

Uber objects to Topic 30 on grounds that it is premature to the extent that it calls for substantive testimony at a juncture when the parties have yet to reach agreement concerning the scope of discovery (including search terms) and have not yet completed review and substantial production of documents and information relevant to the issues in the litigation.  Uber objects to Topic 30 as vague, overbroad, and unduly burdensome to the extent it seeks information neither relevant to the claims and defenses of any party nor proportional to the needs of the case.  Uber objects to Topic 30 on the grounds that it is compound and consists of numerous discrete subparts, and is therefore overbroad and unduly burdensome.  Uber objects to the use of the term "Uber's Financial Condition" in Topic 30 as vague, ambiguous and overbroad.  Uber objects to Topic 30 to the extent that it seeks testimony on subjects protected by the attorney-client privilege, the work product doctrine, the joint defense or common interest doctrine and/or any other privilege or immunity.  Uber objects to Topic 30 to the extent it seeks information that is more easily obtainable by production of documents by Uber.  Uber objects to Topic 30 to the extent it requires Uber to express a legal or expert opinion.  Uber objects to Topic 30 on the grounds that it fails to describe the testimony sought with the required particularity, and/or is so unintelligible that Uber cannot prepare its witnesses to testify on Topic 30.  Uber objects to Topic 30 as inappropriate to the extent that it seeks testimony regarding information readily available to Lead Plaintiff by other means.

For these reasons, Uber will not designate a witness to testify to Topic 30 at this time but is available to meet and confer with Lead Plaintiff concerning this Topic.

**Topic No. 31**

*Uber's New Day Theme, Including: (a) the genesis of that language and theme; (b) the individuals who suggested that language or theme; (c) the reasons why that theme or language was chosen; (d) changes in company culture and norms and the reasons for such changes Concerning that theme or language; (e) actions taken by Uber leading up to the Uber IPO to implement the changes Concerning that theme or language; (f) any information Concerning Uber's New Day Theme was excluded from the Offering Documents; and (g) the reasons why information Concerning Uber's New Day Theme was excluded from the Offering Documents.*

**Response to Topic No. 31**

Uber objects to Topic 31 on grounds that it is premature to the extent that it calls for substantive testimony at a juncture when the parties have yet to reach agreement concerning the scope of discovery (including search terms) and have not yet completed review and substantial production of documents and information relevant to the issues in the litigation.  Uber objects to Topic 31 as vague, overbroad, and unduly burdensome to the extent it seeks information neither relevant to the claims and defenses of any party nor proportional to the needs of the case.  Uber objects to Topic 31 on the grounds that it is compound and consists of numerous discrete subparts, and is therefore overbroad and unduly burdensome.  Uber objects to the use of the term "Uber's New Day Theme" in Topic 31 as vague, ambiguous, overbroad and unduly burdensome.  Uber objects to Topic 31 to the extent that it seeks testimony on subjects protected by the attorney-client privilege, the work product doctrine, the joint defense or common interest doctrine and/or any other privilege or immunity.  Uber objects to Topic 31 to the extent it seeks information that is more easily obtainable by production of documents by Uber.  Uber objects to Topic 31 to the extent it requires Uber to express a legal or expert opinion.  Uber objects to Topic 31 on the grounds that it fails to describe the testimony sought with the required particularity, and/or is so unintelligible that Uber cannot prepare its witnesses to testify on Topic 31.  Uber objects to Topic 31 as inappropriate to the extent that it seeks testimony regarding information readily available to Lead Plaintiff by other means.

For these reasons, Uber will not designate a witness to testify to Topic 31 at this time but is available to meet and confer with Lead Plaintiff concerning this Topic.

**Topic No. 32**

*The Categories, Including: (a) all Communications and Documents Concerning the Categories in connection with Uber's IPO; (b) all forecasts, projections, analyses, appraisals, and/or valuations that was reviewed, relied on, or generated Concerning the Categories in connection with Uber's IPO; (c) what information Concerning the Categories was excluded from the Offering Documents; and (d) the reasons why information Concerning the Categories was excluded from the Offering Documents.*

**Response to Topic No. 32**

1    Uber objects to Topic 32 on grounds that it is premature to the extent that it calls for

2   substantive testimony at a juncture when the parties have yet to reach agreement concerning the

3   scope of discovery (including search terms) and have not yet completed review and substantial

4   production of documents and information relevant to the issues in the litigation.  Uber objects to

5   Topic 32 as vague, overbroad, and unduly burdensome to the extent it seeks information neither

6   relevant to the claims and defenses of any party nor proportional to the needs of the case.  Uber

7   objects to Topic 32 on the grounds that it is compound and consists of numerous discrete subparts,

8   and is therefore overbroad and unduly burdensome.  Uber objects to the use of the term

9   "Categories" in this Topic as vague, ambiguous, overbroad, and unduly burdensome.  Uber objects

10   to the use of the terms "forecasts," "projections," "analyses," "appraisals," "valuations," "Uber's

11   IPO" in this Topic as vague, ambiguous and overbroad.  Uber objects to Topic 32 to the extent that

12   it seeks testimony on subjects protected by the attorney-client privilege, the work product doctrine,

13   the joint defense or common interest doctrine and/or any other privilege or immunity.  Uber objects

14   to Topic 32 to the extent it seeks information that is more easily obtainable by production of

15   documents by Uber.  Uber objects to Topic 32 to the extent it requires Uber to express a legal or

16   expert opinion.  Uber objects to Topic 32 on the grounds that it fails to describe the testimony

17   sought with the required particularity, and/or is so unintelligible that Uber cannot prepare its

18   witnesses to testify on Topic 32.  Uber objects to Topic 32 as inappropriate to the extent that it

19   seeks testimony regarding information readily available to Lead Plaintiff by other means.

20    For these reasons, Uber will not designate a witness to testify to Topic 32 at this time but is

21   available to meet and confer with Lead Plaintiff concerning this Topic.

22   **Topic No. 33**

23    *Any considered disclosures in the Offering Documents Concerning: (a) Uber's Business*
     *Model and Growth Strategy; (b) Uber's Passenger Safety Issues; (c) Uber's Financial*
24   *Condition; (d) Uber's New Day Theme; (e) The Categories; (f) Any "known trends or*
     *uncertainties" pursuant to Item 303 of SEC Regulation S-K; and (g) The "most significant*
25   *factors that make the Offering speculative or risky" pursuant to Item 105 of SEC Regulation*
     *S-K.*
26

27   **Response to Topic No. 33:**

28

Uber objects to Topic 33 on grounds that it is premature to the extent that it calls for substantive testimony at a juncture when the parties have yet to reach agreement concerning the scope of discovery (including search terms) and have not yet completed review and substantial production of documents and information relevant to the issues in the litigation.  Uber objects to Topic 33 as vague, overbroad, and unduly burdensome to the extent it seeks information neither relevant to the claims and defenses of any party nor proportional to the needs of the case.  Uber objects to Topic 33 on the grounds that it is compound and consists of numerous discrete subparts, and is therefore overbroad and unduly burdensome.  Uber objects to the use of the terms "considered disclosures," "Uber's Business Model and Growth Strategy," "Uber's Passenger Safety Issues," "Uber's Financial Condition," "Uber's New Day Theme," and "The Categories" in this Topic as vague, ambiguous, overbroad, unduly burdensome and/or to the extent it requires a legal conclusion.  Uber objects to Topic 33 to the extent that it seeks testimony on subjects protected by the attorney-client privilege, the work product doctrine, the joint defense or common interest doctrine and/or any other privilege or immunity.  Uber objects to Topic 33 to the extent it calls for or requires a legal conclusion.  Uber objects to Topic 33 to the extent it seeks information that is more easily obtainable by production of documents by Uber.  Uber objects to Topic 33 to the extent it requires Uber to express a legal or expert opinion.  Uber objects to Topic 33 on the grounds that it fails to describe the testimony sought with the required particularity, and/or is so unintelligible that Uber cannot prepare its witnesses to testify on Topic 33.  Uber objects to Topic 33 as inappropriate to the extent that it seeks testimony regarding information readily available to Lead Plaintiff by other means.

For these reasons, Uber will not designate a witness to testify to Topic 33 at this time but is available to meet and confer with Lead Plaintiff concerning this Topic.

**Topic No. 34**

> *Communications with securities analysts, the media, the SEC, Uber Employees, and Your Advisors Concerning: (a) the Uber IPO; (b) Uber's Business Model and Growth Strategy; (c) Uber's Passenger Safety Issues; (d) Uber's Financial Condition; (e) Uber's New Day Theme; and (f) The Categories.*

**Response to Topic No. 34:**

Uber objects to Topic 34 on grounds that it is premature to the extent that it calls for substantive testimony at a juncture when the parties have yet to reach agreement concerning the scope of discovery (including search terms) and have not yet completed review and substantial production of documents and information relevant to the issues in the litigation.  Uber objects to Topic 34 as vague, overbroad, and unduly burdensome to the extent it seeks information neither relevant to the claims and defenses of any party nor proportional to the needs of the case.  Uber objects to Topic 34 on the grounds that it is compound and consists of numerous discrete subparts, and is therefore overbroad and unduly burdensome.  Uber objects to the use of the terms "Your Advisors," "Uber's Business Model and Growth Strategy," "Uber's Passenger Safety Issues," "Uber's Financial Condition," "Uber's New Day Theme," and "The Categories" in this Topic as vague, ambiguous, overbroad, unduly burdensome and/or to the extent it requires a legal conclusion.  Uber objects to Topic 34 to the extent that it seeks testimony on subjects protected by the attorney-client privilege, the work product doctrine, the joint defense or common interest doctrine and/or any other privilege or immunity.  Uber objects to Topic 34 to the extent it requires Uber to provide information that it does not have in its possession, custody, or control.  Uber objects to Topic 34 to the extent it seeks information that is more easily obtainable by production of documents by Uber.  Uber objects to Topic 34 to the extent it requires Uber to express a legal or expert opinion.  Uber objects to Topic 34 on the grounds that it fails to describe the testimony sought with the required particularity, and/or is so unintelligible that Uber cannot prepare its witnesses to testify on Topic 34.  Uber objects to Topic 34 as inappropriate to the extent that it seeks testimony regarding information readily available to Lead Plaintiff by other means.

For these reasons, Uber will not designate a witness to testify to Topic 34 at this time but is available to meet and confer with Lead Plaintiff concerning this Topic.

**Topic No. 35**

> *The Road Show, Including: (a) all Communications and Documents Concerning the Road Show; (b) participants, attendees, and locations of the Road Show; and (c) all forecasts, projections, analyses, appraisals, projections and/or valuations that were presented or provided in connection with the Road Show.*

**Response to Topic No. 35**

1    Uber objects to Topic 35 on grounds that it is premature to the extent that it calls for

2  substantive testimony at a juncture when the parties have yet to reach agreement concerning the

3  scope of discovery (including search terms) and have not yet completed review and substantial

4  production of documents and information relevant to the issues in the litigation.  Uber objects to

5  Topic 35 as vague, overbroad, and unduly burdensome to the extent it seeks information neither

6  relevant to the claims and defenses of any party nor proportional to the needs of the case.  Uber

7  objects to Topic 35 to the extent that it seeks testimony on subjects protected by the attorney-client

8  privilege, the work product doctrine, the joint defense or common interest doctrine and/or any other

9  privilege or immunity.  Uber objects to the use of the term "Road Show" in this Topic as overbroad.

10  Uber objects to Topic 35 to the extent it requires Uber to provide information that it does not have

11  in its possession, custody, or control.  Uber objects to Topic 35 to the extent it seeks information

12  that is more easily obtainable by production of documents by Uber.  Uber objects to Topic 35 to the

13  extent it requires Uber to express a legal or expert opinion.  Uber objects to Topic 35 on the grounds

14  that it fails to describe the testimony sought with the required particularity, and/or is so

15  unintelligible that Uber cannot prepare its witnesses to testify on Topic 35.  Uber objects to Topic

16  35 as inappropriate to the extent that it seeks testimony regarding information readily available to

17  Lead Plaintiff by other means.

18    For these reasons, Uber will not designate a witness to testify to Topic 35 at this time but is

19  available to meet and confer with Lead Plaintiff concerning this Topic.

20  **Topic No. 36**

21    *All price or value impact analyses on Uber's valuation and/or Uber common stock*
    *from the disclosure (actual or potential) of information associated with: (a) Uber's Business*
22    *Model and Growth Strategy; (b) Uber's Passenger Safety Issues; (c) Uber's Financial*
    *Condition; (d) Uber's New Day Theme; (e) The Categories; (f) Any "known trends or*
23    *uncertainties" pursuant to Item 303 of SEC Regulation S-K; and (g) The "most significant*
    *factors that make the Offering speculative or risky" pursuant to Item 105 of SEC Regulation*
24    *S-K.*

25  **Response to Topic No. 36:**

26    Uber objects to Topic 36 on grounds that it is premature to the extent that it calls for

27  substantive testimony at a juncture when the parties have yet to reach agreement concerning the

28  scope of discovery (including search terms) and have not yet completed review and substantial

production of documents and information relevant to the issues in the litigation. Uber objects to

Topic 36 as vague, overbroad, and unduly burdensome to the extent it seeks information neither

relevant to the claims and defenses of any party nor proportional to the needs of the case. Uber

objects to Topic 36 on the grounds that it is compound and consists of numerous discrete subparts,

and is therefore overbroad and unduly burdensome. Uber objects to the use of the terms "value

impact analysis," "Uber's Business Model and Growth Strategy," "Uber's Passenger Safety Issues,"

"Uber's Financial Condition," "Uber's New Day Theme," and "The Categories" in this Topic as

vague, ambiguous, overbroad, unduly burdensome and/or to the extent it requires a legal

conclusion. Uber objects to Topic 36 to the extent that it seeks testimony on subjects protected by

the attorney-client privilege, the work product doctrine, the joint defense or common interest

doctrine and/or any other privilege or immunity. Uber objects to Topic 36 to the extent it calls for

or requires a legal conclusion. Uber objects to Topic 36 to the extent it requires Uber to provide

information that it does not have in its possession, custody, or control. Uber objects to Topic 36 to

the extent it seeks information that is more easily obtainable by production of documents by Uber.

Uber objects to Topic 36 to the extent it requires Uber to express a legal or expert opinion. Uber

objects to Topic 36 on the grounds that it fails to describe the testimony sought with the required

particularity, and/or is so unintelligible that Uber cannot prepare its witnesses to testify on Topic 36.

Uber objects to Topic 36 as inappropriate to the extent that it seeks testimony regarding information

readily available to Lead Plaintiff by other means.

      For these reasons, Uber will not designate a witness to testify to Topic 36 at this time but is

available to meet and confer with Lead Plaintiff concerning this Topic.

**Topic No. 37**

*All cost-benefit analyses associated with the disclosure (actual or potential) of information associated with: (a) Uber's Business Model and Growth Strategy; (b) Uber's Passenger Safety Issues; (c) Uber's Financial Condition; (d) Uber's New Day Theme; (e) The Categories; (f) Any "known trends or uncertainties" pursuant to Item 303 of SEC Regulation S-K; and (g) The "most significant factors that make the Offering speculative or risky" pursuant to Item 105 of SEC Regulation S-K.*

**Response to Topic No. 37:**

Uber objects to Topic 37 on grounds that it is premature to the extent that it calls for substantive testimony at a juncture when the parties have yet to reach agreement concerning the scope of discovery (including search terms) and have not yet completed review and substantial production of documents and information relevant to the issues in the litigation.  Uber objects to Topic 37 as vague, overbroad, and unduly burdensome to the extent it seeks information neither relevant to the claims and defenses of any party nor proportional to the needs of the case.  Uber objects to Topic 37 on the grounds that it is compound and consists of numerous discrete subparts, and is therefore overbroad and unduly burdensome.  Uber objects to the use of the terms "cost-benefit analyses," "Uber's Business Model and Growth Strategy," "Uber's Passenger Safety Issues," "Uber's Financial Condition," "Uber's New Day Theme," and "The Categories" in this Topic as vague, ambiguous, overbroad, unduly burdensome and/or to the extent it requires a legal conclusion.  Uber objects to Topic 37 to the extent that it seeks testimony on subjects protected by the attorney-client privilege, the work product doctrine, the joint defense or common interest doctrine and/or any other privilege or immunity.  Uber objects to Topic 37 to the extent it calls for or requires a legal conclusion.  Uber objects to Topic 37 to the extent it requires Uber to provide information that it does not have in its possession, custody, or control.  Uber objects to Topic 37 to the extent it seeks information that is more easily obtainable by production of documents by Uber.  Uber objects to Topic 37 to the extent it requires Uber to express a legal or expert opinion.  Uber objects to Topic 37 on the grounds that it fails to describe the testimony sought with the required particularity, and/or is so unintelligible that Uber cannot prepare its witnesses to testify on Topic 37.  Uber objects to Topic 37 as inappropriate to the extent that it seeks testimony regarding information readily available to Lead Plaintiff by other means.

For these reasons, Uber will not designate a witness to testify to Topic 37 at this time but is available to meet and confer with Lead Plaintiff concerning this Topic.

**Topic No. 38**

> The reasons why Uber common stock decreased in value at any point in time from the date of the Uber IPO through the present.

**Response to Topic No. 38:**

1    Uber objects to Topic 38 on grounds that it is premature to the extent that it calls for

2    substantive testimony at a juncture when the parties have yet to reach agreement concerning the

3    scope of discovery (including search terms) and have not yet completed review and substantial

4    production of documents and information relevant to the issues in the litigation.  Uber objects to

5    Topic 38 as vague, overbroad, and unduly burdensome to the extent it seeks information neither

6    relevant to the claims and defenses of any party nor proportional to the needs of the case.  Uber

7    objects to Topic 38 to the extent that it seeks testimony on subjects protected by the attorney-client

8    privilege, the work product doctrine, the joint defense or common interest doctrine and/or any other

9    privilege or immunity.  Uber objects to Topic 38 to the extent it seeks information that is more

10   easily obtainable by production of documents by Uber.  Uber objects to Topic 38 to the extent it

11   requires Uber to express a legal or expert opinion.  Uber objects to Topic 38 on the grounds that it

12   fails to describe the testimony sought with the required particularity, and/or is so unintelligible that

13   Uber cannot prepare its witnesses to testify on Topic 38.  Uber objects to Topic 38 as inappropriate

14   to the extent that it seeks testimony regarding information readily available to Lead Plaintiff by

15   other means.

16   For these reasons, Uber will not designate a witness to testify to Topic 38 at this time but is

17   available to meet and confer with Lead Plaintiff concerning this Topic.

18   **Topic No. 39**

19   *The factors causing any decline in value or share price to Uber common stock at any point
     in time from the date of the Uber IPO through the present.*

20

21   **Response to Topic No. 39:**

22   Uber objects to Topic 39 on grounds that it is premature to the extent that it calls for

23   substantive testimony at a juncture when the parties have yet to reach agreement concerning the

24   scope of discovery (including search terms) and have not yet completed review and substantial

25   production of documents and information relevant to the issues in the litigation.  Uber objects to

26   Topic 39 as vague, overbroad, and unduly burdensome because it seeks information neither relevant

27   to the claims and defenses of any party nor proportional to the needs of the case.  Uber objects to

28   Topic 39 to the extent that it seeks testimony on subjects protected by the attorney-client privilege,

the work product doctrine, the joint defense or common interest doctrine and/or any other privilege or immunity.  Uber objects to Topic 39 to the extent it seeks information that is more easily obtainable by production of documents by Uber.  Uber objects to Topic 39 to the extent it requires Uber to express a legal or expert opinion.  Uber objects to Topic 39 on the grounds that it fails to describe the testimony sought with the required particularity, and/or is so unintelligible that Uber cannot prepare its witnesses to testify on Topic 39.   Uber objects to Topic 39 as inappropriate to the extent that it seeks testimony regarding information readily available to Lead Plaintiff by other means.

For these reasons, Uber will not designate a witness to testify to Topic 39 at this time but is available to meet and confer with Lead Plaintiff concerning this Topic.

**Topic No. 40**

*The allegations in Complaint.*

**Response to Topic No. 40:**

Uber objects to Topic 40 on grounds that it is premature to the extent that it calls for substantive testimony at a juncture when the parties have yet to reach agreement concerning the scope of discovery (including search terms) and have not yet completed review and substantial production of documents and information relevant to the issues in the litigation.  Uber objects to Topic 40 as overbroad on its face.  Uber objects to Topic 40 as vague, overbroad, and unduly burdensome to the extent it seeks information neither relevant to the claims and defenses of any party nor proportional to the needs of the case.  Uber objects to Topic 40 to the extent that it seeks testimony on subjects protected by the attorney-client privilege, the work product doctrine, the joint defense or common interest doctrine and/or any other privilege or immunity.  Uber objects to Topic 40 to the extent it seeks information that is more easily obtainable by production of documents by Uber.  Uber objects to Topic 40 to the extent it requires Uber to express a legal or expert opinion. Uber objects to Topic 40 on the grounds that it fails to describe the testimony sought with the required particularity, and/or is so unintelligible that Uber cannot prepare its witnesses to testify on

Topic 40.  Uber objects to Topic 40 as inappropriate to the extent that it seeks testimony regarding information readily available to Lead Plaintiff by other means.

For these reasons, Uber will not designate a witness to testify to Topic 40 at this time but is available to meet and confer with Lead Plaintiff concerning this Topic.

**Topic No. 41**

*The Documents and Communications produced by Uber in this Action.*

**Response to Topic No. 41**

Uber objects to Topic 41 on grounds that it is premature to the extent that it calls for substantive testimony at a juncture when the parties have yet to reach agreement concerning the scope of discovery (including search terms) and have not yet completed review and substantial production of documents and information relevant to the issues in the litigation.  Uber objects to Topic 41 as overbroad on its face.  Uber objects to Topic 41 as vague, overbroad, and unduly burdensome to the extent it seeks information neither relevant to the claims and defenses of any party nor proportional to the needs of the case.  Uber objects to Topic 41 to the extent that it impermissibly seeks "discovery on discovery."  Uber objects to Topic 41 to the extent that it seeks testimony on subjects protected by the attorney-client privilege, the work product doctrine, the joint defense or common interest doctrine and/or any other privilege or immunity.  Uber objects to Topic 41 to the extent it seeks information that is more easily obtainable by production of documents by Uber.  Uber objects to Topic 41 to the extent it requires Uber to express a legal or expert opinion.  Uber objects to Topic 41 on the grounds that it fails to describe the testimony sought with the required particularity, and/or is so unintelligible that Uber cannot prepare its witnesses to testify on Topic 41.  Uber objects to Topic 41 as inappropriate to the extent that it seeks testimony regarding information readily available to Lead Plaintiff by other means.

For these reasons, Uber will not designate a witness to testify to Topic 41 at this time but is available to meet and confer with Lead Plaintiff concerning this Topic.

**Topic No. 42**

*Uber's responses to discovery propounded on Uber in this Action.*

**Response to Topic No. 42:**

1    Uber objects to Topic 42 on the grounds that it impermissibly seeks "discovery on

2   discovery" without an adequate factual basis for doing so at this juncture, and is premature to the

3   extent that it calls for substantive testimony at a juncture when the parties have yet to reach

4   agreement concerning the scope of discovery (including search terms) and have not yet completed

5   review and substantial production of documents and information relevant to the issues in the

6   litigation.  Uber objects to Topic 42 as overbroad on its face.  Uber objects to Topic 42 as overbroad

7   and unduly burdensome to the extent it seeks information neither relevant to the claims and

8   defenses of any party nor proportional to the needs of the case.  Uber objects to Topic 42 to the

9   extent that it seeks testimony on subjects protected by the attorney-client privilege, the work

10  product doctrine, the joint defense or common interest doctrine and/or any other privilege or

11  immunity.  Uber objects to Topic 42 to the extent it seeks information that is more easily obtainable

12  by production of documents by Uber.  Uber objects to Topic 42 to the extent it requires Uber to

13  express a legal or expert opinion.  Uber objects to Topic 42 on the grounds that it fails to describe

14  the testimony sought with the required particularity, and/or is so unintelligible that Uber cannot

15  prepare its witnesses to testify on Topic 42.  Uber objects to Topic 42 as inappropriate to the extent

16  that it seeks testimony regarding information readily available to Lead Plaintiff by other means.

17    For these reasons, Uber will not designate a witness to testify to Topic 42 at this time but is

18  available to meet and confer with Lead Plaintiff concerning this Topic.

19  **Topic No. 43**

20    *Uber's affirmative defenses in this Action as set forth in the Uber Defendants' Answer to*
    *Second Amended Class Action Complaint for Violations of the Federal Securities Laws filed*
21    *October 15, 2021 (ECF No. 174).*

22  **Response to Topic No. 43:**

23    Uber objects to Topic 43 on grounds that it is premature to the extent that it calls for

24  substantive testimony at a juncture when the parties have yet to reach agreement concerning the

25  scope of discovery (including search terms) and have not yet completed review and substantial

26  production of documents and information relevant to the issues in the litigation.  Uber objects to

27  Topic 43 as overbroad on its face.  Uber objects to Topic 43 as vague, overbroad, and unduly

28  burdensome to the extent it seeks information neither relevant to the claims and defenses of any

party nor proportional to the needs of the case.  Uber objects to Topic 43 to the extent that it seeks

testimony on subjects protected by the attorney-client privilege, the work product doctrine, the joint

defense or common interest doctrine and/or any other privilege or immunity.  Uber objects to Topic

43 to the extent it seeks information that is more easily obtainable by production of documents by

Uber.  Uber objects to Topic 43 to the extent it requires Uber to express a legal or expert opinion.

Uber objects to Topic 43 on the grounds that it fails to describe the testimony sought with the

required particularity, and/or is so unintelligible that Uber cannot prepare its witnesses to testify on

Topic 43.  Uber objects to Topic 43 as inappropriate to the extent that it seeks testimony regarding

information readily available to Lead Plaintiff by other means.

   For these reasons, Uber will not designate a witness to testify to Topic 43 at this time but is

available to meet and confer with Lead Plaintiff concerning this Topic.

**Topic No. 44**

   *The items listed in Schedule C.*

**Response to Topic No. 44:**

   Uber objects to Topic 44 on the grounds that it is disfavored discovery of ESI by deposition

rather than through the informal meet-and-confer process, it impermissibly seeks "discovery on

discovery" without an adequate factual basis for doing so at this juncture, and it is premature to the

extent that it calls for substantive testimony at a juncture when the parties have yet to reach

agreement concerning the scope of discovery (including search terms) and have not yet completed

review and substantial production of documents and information relevant to the issues in the

litigation.  Uber objects to Topic 44 as vague, overbroad, and unduly burdensome to the extent it

seeks information neither relevant to the claims and defenses of any party nor proportional to the

needs of the case.  Uber objects to Topic 44 to the extent that it seeks testimony on subjects

protected by the attorney-client privilege, the work product doctrine, the joint defense or common

interest doctrine and/or any other privilege or immunity.  Uber objects to Topic 44 to the extent it

seeks information that is more easily obtainable by production of documents by Uber.  Uber objects

to Topic 44 to the extent it requires Uber to express a legal or expert opinion.

UBER'S RESPONSES & OBJECTIONS TO    43    CASE NO. 3:19-cv-06361-RS
LEAD PLAINTIFF'S SECOND AMENDED
30(B)(6) DEPO. NOTICE

**183**

1    For these reasons, Uber will not designate a witness to testify to Topic 44 at this time but is

2    available to meet and confer with Lead Plaintiff concerning this Topic.

3    **Schedule C:**

4                                          **RELEVANT TIME PERIOD**

5    Unless otherwise noted in a specific request, the Relevant Time Period for these requests is

6    from January 1, 2017 through March 3, 2020.

7                                          **REQUESTS TO PRODUCE**

8    1.  Deponent(s)' current curriculum vitae or resume.

9    2.  All documents the deponent reviewed in preparation of the deposition.

10   3.  Uber's organizational charts for management, legal, marketing, engineering, finance,

11       operations, human resources, and safety.

12   4.  All documents that were cited, referenced, reviewed and/or relied upon to support

13       Uber's affirmative defenses in this Action.

14   5.  All Communications and Documents evidencing a decline in value or share price for

15       Uber common stock from factors other than the misstatements or omissions alleged in

16       the Complaint from the date of the Uber IPO through the present.

17   **Response to Schedule C:**

18   Uber objects to the Requests to Produce in Schedule C for the same reasons that it objects to

19   Topics 1–44 above, and incorporates those general and specific objections by reference. Uber

20   objects to the Requests to Produce in Schedule C on the grounds that a Rule 30(b)(6) deposition

21   notice is not the proper means to request documents from a party to litigation. Uber objects to the

22   Requests to Produce in Schedule C to the extent the Requests are duplicative of requests made in

23   other discovery served by Lead Plaintiff on Uber.

24   In addition to the foregoing, Uber specifically objects to each of the Requests to Produce as

25   follows:

26   **Request to Produce No. 1**

27   *Deponent(s)' current curriculum vitae or resume.*

28   **Response to Request to Produce No. 1:**

1     Uber objects to Request No. 1 as moot in the absence of a deponent.

2   **Request to Produce No. 2**

3       *All documents the deponent reviewed in preparation of the deposition.*

4   **Response to Request to Produce No. 2:**

5     Uber objects Request No. 2 as moot in the absence of a deponent.  Uber objects to this

6   Request to the extent that it seeks documents protected by the attorney-client privilege, the work

7   product doctrine, the joint defense or common interest doctrine and/or any other privilege or

8   immunity from production.

9   **Request to Produce No. 3**

10      *Uber's organizational charts for management, legal, marketing, engineering, finance,
        operations, human resources, and safety.*

11

12  **Response to Request to Produce No. 3:**

13    Uber objects to Request No. 3 as overbroad, unduly burdensome, not reasonably tailored to

14  Lead Plaintiff's claims related to specific alleged misrepresentations in Uber's IPO Registration

15  Statement and Prospectus, and to the extent it seeks information that is not relevant to any claims or

16  defenses in the suit nor proportional to the needs of the case.  Uber objects to this Request to the

17  extent that it seeks documents protected by the attorney-client privilege, the work product doctrine,

18  the joint defense or common interest doctrine and/or any other privilege or immunity from

19  production.  Uber objects to this Request as redundant and duplicative of other requests Lead

20  Plaintiff has already served on Uber in this action, to which Uber has already served responses and

21  objections.

22  **Request to Produce No. 4**

23      *All documents that were cited, referenced, reviewed and/or relied upon to support Uber's
        affirmative defenses in this Action.*

24

25  **Response to Request to Produce No. 4:**

26    Uber objects to Request No. 4 as overbroad, redundant of other requests Lead Plaintiff has

27  already served on Uber in this action, unduly burdensome, not reasonably tailored to Lead

28  Plaintiff's claims related to specific alleged misrepresentations in Uber's IPO Registration

---

UBER'S RESPONSES & OBJECTIONS TO          45          CASE NO. 3:19-cv-06361-RS
LEAD PLAINTIFF'S SECOND AMENDED
30(B)(6) DEPO. NOTICE

1    Statement and Prospectus, and to the extent it seeks information that is not relevant to any claims or

2    defenses in the suit nor proportional to the needs of the case.  Uber objects to this Request to the

3    extent that it seeks documents protected by the attorney-client privilege, the work product doctrine,

4    the joint defense or common interest doctrine and/or any other privilege or immunity from

5    production.

6    **Request to Produce No. 5**

7        *All Communications and Documents evidencing a decline in value or share price for Uber*
        *common stock from factors other than the misstatements or omissions alleged in the*
8        *Complaint from the date of the Uber IPO through the present.*

9    **Response to Request No. 5:**

10       Uber objects to Request No. 5 as overbroad, redundant of other requests Lead Plaintiff has

11   already served on Uber in this action, unduly burdensome, not reasonably tailored to Lead

12   Plaintiff's claims related to specific alleged misrepresentations in Uber's IPO Registration

13   Statement and Prospectus, as well as to the extent it calls for a legal conclusion, and to the extent it

14   seeks information that is not relevant to any claims or defenses in the suit nor proportional to the

15   needs of the case.  Uber objects to this Request on the grounds that it is premature and requests

16   information that is subject to expert discovery, the production of which is not yet required.  Uber

17   objects to this Request to the extent that it seeks documents protected by the attorney-client

18   privilege, the work product doctrine, the joint defense or common interest doctrine and/or any other

19   privilege or immunity from production.  For these reasons and because Uber will not designate a

20   witness to testify to Topics 1–44 at this time, it will not produce documents in response to this

21   Request.

22       For the aforementioned reasons and because Uber will not designate a witness to testify to

23   Topics 1–44 at this time, it will not produce documents in response to the Requests to Produce in

24   Schedule C.

25

26

27

28

1    Dated:      June 9, 2022                          SHEARMAN & STERLING LLP

2
                                                       By:    _/s/ Daniel H.R. Laguardia_
3                                                             Daniel H.R. Laguardia

4                                                      *Attorneys for Defendant Uber Technologies,*
                                                       *Inc.*
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## CERTIFICATE OF SERVICE

2

I hereby certify that on June 9, 2022, I caused to be served, via electronic mail,

• 3

**DEFENDANT UBER TECHNOLOGIES, INC.'S AMENDED RESPONSES AND
OBJECTIONS TO LEAD PLAINTIFF'S SECOND AMENDED NOTICE OF RULE 30(b)(6)**

4

**DEPOSITION**

5

in connection with the above-captioned matter, upon the following:

6

Jonathan Gardner

7

Alfred L. Fatale III
Joseph N. Cotilletta

8

Marco A. Dueñas
Anna Menkova

9

Lisa Strejlau

**LABATON SUCHAROW LLP**

10

140 Broadway

New York, New York 10005

11

Telephone: (212) 907-0700

12

Facsimile: (212) 818-0477
Email: jgardner@labaton.com

13

afatale@labaton.com
jcotilletta@labaton.com

14

mduenas@labaton.com
amenkova@labaton.com

15

lstrejlau@labaton.com

16

*Lead Counsel for Plaintiffs and the Proposed Class*

17

18

Gregory M. Nespole (admitted *pro hac vice*)

**LEVI & KORSINSKY LLP**

19

55 Broadway, 10th Floor
New York, New York 10006

20

Telephone: (212) 363-7500

21

Facsimile: (212) 363-1294
Email: gnespole@zlk.com

22

23

Adam M. Apton (SBN 316506)

24

75 Broadway, Suite 202
San Francisco, California 94111

25

Telephone: (415) 373-1671
Facsimile: (415) 484-1294

26

Email: aapton@zlk.com

27

*Liaison Counsel for Lead Plaintiff Boston Retirement System*

28

1    John T. Jasnoch (CA 281605)
    **SCOTT+SCOTT ATTORNEYS AT LAW LLP**
2    600 W. Broadway, Suite 3300
    San Diego, California 82101
3    Telephone: (619) 233-4565
    Facsimile: (619) 233-0508
4    Email: jjasnoch@scott-scott.com

5

6    William C. Fredericks
    **SCOTT+SCOTT ATTORNEYS AT LAW LLP**
7    The Helmsley Building
    230 Park Avenue, 17th Floor
8    New York, New York 10169
    Telephone: (212) 223-6444
9    Facsimile: (212) 223-6334
    Email: wfredericks@scott-scott.com
10

11

12    David R. Scott
    **SCOTT+SCOTT ATTORNEYS AT LAW LLP**
13    156 South Main Street
    P.O. Box 192
14    Colchester, Connecticut 06415
    Telephone: (860) 537-5537
15    Facsimile: (860) 537-4432
    Email: david.scott@scott-scott.com
16

17

18    Samuel H. Rudman
    **ROBBINS GELLER RUDMAN & DOWD LLP**
19    58 South Service Road, Suite 200
    Melville, New York 11747
20    Telephone: (631) 367-7100
    Facsimile: (631) 367-1173
21    Email: srudman@rgrdlaw.com

22

23    Henry Rosen (156963)
    James I. Jaconette (179565)
24    **ROBBINS GELLER RUDMAN & DOWD LLP**
    655 West Broadway, Suite 1900
25    San Diego, CA 92101
    Telephone: 619-231-1058
26    Fax: 619-231-7423
    Email: henryr@rgrdlaw.com
27          jamesj@rgrdlaw.com

28

PROOF OF SERVICE          2          CASE NO. 3:19-cv-06361-RS

1    Mark C. Molumphy (SBN 168009)
    Tyson Redenbarger (SBN 294424)
2    Noorjahan Rahman (SBN 330572)
    Julia Peng (SBN 318396)
3    **COTCHETT, PITRE & McCARTHY, LLP**
4    San Francisco Airport Office Center
    840 Malcolm Road, Suite 200
5    Burlingame, California 94010
    Telephone: (650) 697-6000
6    Facsimile: (650) 697-0577
7    Email: mmolumphy@cpmlegal.com
           tredenbarger@cpmlegal.com
8            nrahman@cpmlegal.com
             jpeng@cpmlegal.com
9

10    *Counsel for Proposed Class Representatives Irving S. Braun and Judith Braun, David Messinger, and Ellie Marie Toronto ESA*

11

12

13                               By:   */s/ Dennis D. Kitt*

14                                     Dennis D. Kitt

15                               *Counsel for the Uber Defendants*

16

17

18

19

20

21

22

23

24

25

26

27

28

---

PROOF OF SERVICE                 3                 CASE No. 3:19-cv-06361-RS

**190**

1  Jonathan Gardner (admitted *pro hac vice*)
   Alfred L. Fatale III (admitted *pro hac vice*)
2  Joseph N. Cotilletta (admitted *pro hac vice*)
   Marco A. Dueñas (admitted *pro hac vice*)
3  Lisa Strejlau (admitted *pro hac vice*)
4  LABATON SUCHAROW LLP
   140 Broadway
5  New York, New York 10005
   Telephone: (212) 907-0700
6  Facsimile: (212) 818-0477
7  Email: jgardner@labaton.com
           afatale@labaton.com
8          jcotilletta@labaton.com
           mduenas@labaton.com
9          lstrejlau@labaton.com

10 *Lead Counsel for Plaintiffs*

11

12              **UNITED STATES DISTRICT COURT**
                **NORTHERN DISTRICT OF CALIFORNIA**
13                  **SAN FRANCISCO DIVISION**

14 BOSTON RETIREMENT SYSTEM,
15            Plaintiff,                    Case No.:  3:19-cv-06361-RS

16        v.                               ECF CASE

17 UBER TECHNOLOGIES, INC., et al.,        **LEAD PLAINTIFF'S REQUESTS FOR**
                                           **ADMISSION DIRECTED TO UBER**
18            Defendants.                  **TECHNOLOGIES INC.**

19

20

21

22        Lead Plaintiff Boston Retirement System ("Lead Plaintiff"), by and through its counsel,

23 serves this request for admissions ("RFAs" or "Requests") on Uber Technologies Inc. ("Uber"),

24 as authorized by Federal Rules of Civil Procedure 26 and 36. Uber must serve a response to each

25 Request separately and fully, in writing and under oath, withing 30 days after service.

26                              **<u>DEFINITIONS</u>**

27        1.      "Action" means the above-captioned securities class action.

28

---

1    2.    "Advisor" and "Advisors" mean any and all investment banks, bankers, law firms,

2    lawyers, financial advisors, consultants, accounting firms, accountants, public relations firms, or

3    person(s) or other parties engaged, retained, employed, or consulted by Uber in anticipation of,

4    Concerning, or in connection with the Uber IPO.

5    3.    "All" shall include the term "each" and vice-versa, as necessary to bring within

6    the scope of the request all responses that might otherwise be construed to be outside the scope

7    of the request.

8    4.    "And" and "or" shall be construed either disjunctively or conjunctively as

9    necessary to bring within the scope of the request all responses that might otherwise be construed

10    to be outside the scope of the request.

11    5.    "Aware" means any notice, knowledge, or suspicion that may arise from, among

12    other things, a complaint, legal claim, notice, document, media publication or post, report,

13    whether formal or informal, and whether verbal or documented.

14    6.    "Board" means the board of directors of Uber collectively, each member and

15    former member individually, each committee or subcommittee thereof, and each member and

16    former member individually of each committee or subcommittee thereof, as context requires.

17    7.    "Category" or "Categories" refers to the following categories of allegations in the

18    Action: (a) Uber's Business Model and Growth Strategy, as defined herein; (b) Uber's Passenger

19    Safety Issues, as defined herein; and (c) Uber's Financial Condition, as defined herein.

20    8.    "Communication" refers to any exchange of information, words, numbers,

21    pictures, charts, studies, or graphs by any means of transmission, sending, or receipt of

22    information of any kind by or through any means including, but not limited to, personal delivery,

23    speech, writings, Documents (as defined herein), language (machine, foreign, or otherwise) of

24    any kind, computer electronics or Electronically-Stored Information (as defined herein), sound,

25    radio or video signals, telecommunication, telephone, facsimile, mail, film, photographic film of

26    all types, or other media of any kind.  The term "Communication" also includes, without

27    limitation, all inquiries, discussions, conversations, Correspondence (as defined herein),

28

1  negotiations, agreements, presentations, understandings, Meetings (as defined herein), notices,

2  requests, responses, demands, complaints, press, publicity, or trade releases.

3        9.      "Complaint" refers to the Second Amended Class Action Complaint for

4  Violations of the Federal Securities Laws filed May 14, 2021 (ECF No. 137), in this Action. As

5  used herein, the paragraph symbol (¶) followed by a specific number refers to the corresponding

6  numbered paragraph of the Complaint and the allegation or information contained therein.

7        10.     "Concerning" means constituting, evidencing, reflecting, incorporating, effecting,

8  including, directly or indirectly pertaining or relating to, or being in any way logically or

9  factually connected with the subject matter of the inquiry.

10       11.     "Correspondence" means any letter, memorandum, note, e-mail, facsimile, text

11 message, instant message, internet message board posting, smartphone message, or any other

12 writing containing a Communication from one person or persons to another person or persons.

13       12.     "Defendants" mean "Uber Defendants" together with the "Underwriter

14 Defendants," as those terms are defined below.

15       13.     "Device" means any electronic communication device or machine capable of

16 sending, receiving, transmitting, and/or storing electronic Communications, Text messages, or

17 other data, including but not limited to cellular phones, iPhones, computers, laptop computers,

18 tablets, iPads, personal digital assistants (PDAs), flash drives, external hard drives, physical data

19 storage devices or machines, or other similar devices or machines.

20       14.     "Document" is intended to have the broadest possible meaning under Rule 34(a)

21 of the Federal Rules of Civil Procedure, and includes, without limitation, electronic or

22 computerized data compilations, electronic file backup tapes, hard drives and images of hard

23 drives, all drafts, Communications, Correspondence, memoranda, records, presentations, books,

24 manuals, reports and recordings of telephone conversations, telephone logs, statements,

25 summaries, opinions, agreements, ledgers, journals records of accounts, checks, summary of

26 accounts, spreadsheets, databases, receipts, balance sheets, income statements, confirmation

27 slips, questionnaires, desk calendars, appointment books, diaries, journals, graphs, test results,

28 blogs, charts, data,  files, log files of computer access and activity, and all of the records kept by

1    electronic, photographic, optical, mechanical, magnetic means and things similar to any of the

2    foregoing, including computer media, regardless of their author, transcripts of testimony,

3    subpoenas, and any paper or writing of whatever description, including any computer database or

4    information contained in any computer although not yet printed out.  A draft or non-identical

5    copy of any Document is a separate Document within the meaning of this term.

6          15.    "Electronic data" means the original (or identical copies when originals are not

7    available) and any non-identical copies (whether different from the originals because of notes

8    made on such copies or otherwise) of electronic data of any kind or description, whether

9    inscribed by mechanical, facsimile, electronic, magnetic, digital, or other means.  Such data may

10   include, but is not limited to, all text files (Including word processing Documents), presentation

11   files (such as PowerPoint), spreadsheets, electronic mail files, and information Concerning

12   electronic mails (Including electronic mail receipts or transmittals, logs of electronic mail history

13   and usage, header information, and deleted files), internet history of files and preferences,

14   graphical files in any format, databases, calendar and scheduling information, task lists,

15   telephone logs, contact managers, computer system activity logs, computer programs (whether

16   private, commercial, or work-in-progress), programming notes or instructions, output resulting

17   from the use of any software program Including, but not limited to, database files, charts, graphs,

18   outlines, operating systems, source codes of all types, programming languages, linkers and

19   compilers, peripheral drivers, PDF and TIF files, batch files, native files and all ASCII files, and

20   any and all miscellaneous files or file fragments, regardless of the medium or media on which

21   they reside and regardless of whether such electronic data is in an active file, deleted file, or file

22   fragment.  Electronic data includes, but is not limited to, any and all items stored on any

23   electronic media, computers, or networks and backup files containing electronically stored data.

24   The term "electronic data" also includes the file, folder tabs, or containers and labels appended to

25   or associated with any physical storage device associated with each such original or copy.

26         16.    "Electronically-Stored Information" or "ESI" - Unless otherwise superseded in

27   this case by an Order Governing the Use of Electronically-Stored Information, ESI is defined

28   herein to include the following:

1         (a)     all items covered by FED. R. CIV. P. 34(a)(1)(A);

2         (b)     information or data that is generated, received, processed, and recorded by

3 computers and other electronic devices, Including metadata (e.g., author, recipient, file

4 creation date, file modification date, etc.);

5         (c)     files, information, or data saved on backup tapes or hard drives;

6         (d)     internal or external web sites;

7         (e)     output resulting from the use of any software program, Including,

8 without limitation, word processing Documents, spreadsheets, database files, charts, graphs

9 and outlines, electronic mail, instant messenger (or similar programs), bulletin board

10 programs, operating systems, source code, PRF files, PRC files, batch files, ASCII files, and

11 all miscellaneous media on which they reside regardless of whether said electronic data exists

12 in an active file, a deleted file, or file fragment; and

13         (f)     activity listings of electronic mail receipts and transmittals; and any and

14 all items stored on computer memories, hard disks, USB flash drives, CD-ROM, magnetic

15 tape, microfiche, or on any other media for digital data storage, or transmittal, such as, but

16 not limited to, personal digital assistants (e.g., iPads), hand-held wireless devices (e.g., iPhones or

17 BlackBerry smartphones), or similar devices, and file folder tabs, or containers and labels

18 appended to, or relating to, any physical storage device associated with each original or copy of

19 all Documents requested herein.

20     17.    "Employee" or "Employees" means any Person who at any time during the

21 Relevant Time Period acted or purported to act on behalf of an entity, or another Person or

22 Persons Including, but not limited to, all present and former officers, directors, executives, board

23 members, partners, principals, managers, staff personnel, accountants, agents, representatives, in-

24 house attorneys, independent contractors, advisors, and consultants of such entity, Person, or

25 Persons.

26     18.    "Engagement" means any engagement between You, on the one hand, and the

27 Board and/or Uber, on the other hand, including any discussion which led to any such

28 engagement.

19.     "Government" means any agency of the U.S. federal or state government, or the government of any other U.S. commonwealth, district, or territory, including the U.S. Department of Justice, the SEC, U.S. Department of Homeland Security, U.S. Citizenship and Immigration Services; any attorney general's office; and district attorney's office; any committee or subcommittee of the U.S. Congress; and any person, employee, agent, or representative acting on their behalf.

20.     "Including" means including without limitation.

21.     "Individual Defendants" refers to Dara Khosrowshahi, Nelson Chai, Glen Ceremony, Ronald Sugar, Ursula Burns, Garrett Camp, Matt Choler, Ryan Graves, Arianna Huffington, Travis Kalanick, Wan Ling Martello, H.E. Yasir Al-Rumayyan, John Thain and David Trujillo.

22.     "Investors" means all persons or entities who purchased or otherwise acquired Uber's publicly traded common stock pursuant and/or traceable to the Offering Documents for Uber's IPO as defined in ¶ 333 of the Complaint.

23.     "IPO" or "Offering" means Uber's initial public offering on or about May 10, 2019.

24.     "Meeting" or "Meetings" means the contemporaneous presence of any natural Persons (Including by telephone, chat room, video conference, bulletin board programs, or instant messenger program), for any purpose, whether or not such presence was by chance or prearranged, and whether or not the Meeting was formal or informal or occurred in connection with some other activity.  Meeting also includes, but is not limited to, Documents discussed at or otherwise Concerning any Meeting, such as agendas, presentations, minutes, records, invites, invitations, calendar reminders, or calendars regarding a Meeting, and Communications regarding the Meeting.

25.     *Messenger* Action means *In re Uber Technologies, Inc. Securities Litigation*, Case Number: CGC19579544, filed in The Superior Court of California, County of San Francisco, on September 25, 2019.

26.     "Offering Documents" refers to the Registration Statement and Prospectus issued in connection with the IPO, along with any previously filed or amended versions of those offering documents and related documents.

27.      "Person" or "Persons" includes any natural person, firm, association, organization, partnership, limited partnership, sole proprietorship, trust, corporation, or legal or governmental entity, association, or body.

28.     "Policy" means any rule, protocol, procedure, directives, "playbooks," practice, guidelines, or course of conduct, whether formal or informal, written or unwritten, recorded or unrecorded, that was known, recognized, or followed, explicitly or implicitly.

29.     PwC means "PricewaterhouseCoopers LLP."

30.     "Prospectus" means any prospectus distributed by the Defendants or used to conduct the IPO, including but not limited to the Prospectus filed with the SEC on Form 424B4 on May 9, 2019.

31.     "Refer" or "Relate" or "Referring" or "Relating" means all Documents that explicitly or implicitly, in whole or in part, were received in conjunction with or were generated as a result of, the subject matter of the request, including, but not limited to, all Documents that reflect, record, memorialize, discuss, describe, compare, consider, concern, constitute, embody, evaluate, analyze, review, report on, comment on, impinge upon, or impact the subject matter of the request.

32.     "Registration Statement" means Uber's registration statement dated April 11, 2019, and filed with the SEC on Form S-1, which following amendment, was declared effective by the SEC on May 5, 2019.

33.     "Risk of Litigation" means any situation which has the potential to give rise to a cause of action or litigation.

34.     "Road Show" means any physical or virtual Meeting in which any defendant communicated with any current or potential investor Concerning the IPO.

35.     "SEC" means the United States Securities and Exchange Commission and any employee, agent, representative, or subdivision thereof.

36.　"Senior Management" includes the Individual Defendants as well as any past or present Uber Employee who directly reports/reported to:

(a)　any of the Individual Defendants; or

(b)　any officer or director of Uber, Including the Chief Financial Officer(s), Chief Operating Officer(s), Chief Commercial Officer, Chief Compliance Officer, Chief Accounting Officer and/or Corporate Controller(s).

37.　"Text message" means any written Communication sent or received from a device (including, but not limited to, a cellular phone, tablet, computer, and other similar devices), and shall include, without limitation, SMS messages, MMS messages, Whatsapp messages, BlackBerry messages (a/k/a BBM), Apple iMessages, and any other message sent through an application on any such mobile device.

38.　"Uber" refers to Uber Technologies, Inc., and any of its subsidiaries, divisions, or affiliates (foreign and domestic), predecessors, successors, and any present and former officers, directors, Employees, agents, representatives, members of its Board of Directors, accountants, attorneys, advisors, and all other persons and agents acting or purporting to act on its behalf.

39.　"Uber's Business Model and Growth Strategy" refers to allegations in the Complaint (¶¶1-366) that were sustained in full by the Court (ECF Nos. 95, 172), including, *inter alia*, the Offering Documents' failure to disclose that Uber's business model and growth strategy was premised on breaking and thwarting laws, rules, and regulations in many of the domestic and international jurisdictions in which the Company operates, ¶¶157-70, allegations about the "new" Uber's business model, practices, and legality, as well as growth strategy, compliance, integrity, and relationships with government entities, Drivers, and customers as alleged, ¶¶171(a)-(h), and related undisclosed risks, events, and adverse trends or uncertainties, ¶¶191-96 and ¶197(a)-(i).

40.　"Uber Custodians" pertains to the Uber's custodians that the parties agreed to or that were otherwise used for Uber's production of documents in this Action, excluding any Individual Defendant.

1      41.     "Uber Defendants" means Uber together with Individual Defendants, as those

2  terms are defined above.

3      42.     "Uber's Financial Condition" refers to allegations in the Complaint (¶¶1-366) that

4  were sustained in full by the Court (ECF Nos. 95, 172), including, *inter alia*, the Offering

5  Documents' failure to disclose that Uber's growth at any cost business model was defective,

6  Uber had sustained—and would continue to sustain—massive losses and deteriorating growth,

7  and the Company planned to mitigate its ongoing losses by cutting costs in fundamental areas of

8  its business that would further hinder growth, ¶¶181-88, allegations about Uber's financial

9  condition, ¶189(a)-(f), and related undisclosed risks, events, and adverse trends or uncertainties,

10  ¶¶203-06 and ¶207(a)-(f).

11      43.     "Uber's New Day Theme" refers to allegations in the Complaint (¶¶1-366) that

12  were sustained in full by the Court (ECF Nos. 95, 172), including, *inter alia*, allegations about

13  Uber's efforts to reform its culture "fundamentally" by, among other things, replacing Defendant

14  Kalanick as CEO with Defendant Khosrowshahi and developing a new set of "cultural norms,"

15  ¶6, serious, disturbing, and deeply material problems plaguing the Company behind its "new day

16  at Uber" façade, ¶20, Uber's toxic culture and its purported attempts to change, ¶¶145-55, the

17  Offering Documents' claim that after 2017 "[i]t is a new day at Uber[,]" ¶159, and undisclosed

18  facts and related undisclosed risks, events, and adverse trends or uncertainties, including that

19  Uber was not on a "new path" since 2017 nor was it a "new day at Uber[,]" ¶171(a) and ¶197(a).

20      44.     "Uber's Passenger Safety Issues" refers to allegations in the Complaint (¶¶1-366)

21  that were sustained in full by the Court (ECF Nos. 95, 172), including, *inter alia*, the Offering

22  Documents' failure to disclose that Uber ignored rampant, dangerous, and even lethal passenger

23  safety issues across its ridesharing platform that resulted from the Company's own defective

24  safety Policy, ¶¶172-79, allegations about Uber passenger safety and its Policy related to

25  passenger safety, ¶180(a)-(j), and related undisclosed risks, events, and adverse trends or

26  uncertainties, ¶¶198-201 and ¶202(a)-(j).

27      45.     "Uber Projections" means any Company-prepared or Uber management-prepared

28  unaudited financial projections Concerning the business of Uber.

1          46.    "Underwriter Defendants" means Morgan Stanley & Co. LLC, Goldman, Sachs &

2    Co. LLC, Merrill Lynch, Pierce, Fenner & Smith Incorporated, Barclays Capital Inc., Citigroup

3    Global Markets Inc., Allen & Company LLC, RBC Capital Markets, LLC, SunTrust Robinson

4    Humphrey, Inc., Deutsche Bank Securities, Inc., HSBC Securities (USA) Inc., SMBC Nikko

5    Securities America, Inc., Mizuho Securities USA LLC, Needham & Company, LLC, Loop

6    Capital Markets LLC, Siebert Cisneros Shank & Co., L.L.C., Academy Securities, Inc., BTIG,

7    LLC, Canaccord Genuity LLC, CastleOak Securities, L.P., Cowen and Company, LLC, Evercore

8    Group L.L.C., JMP Securities LLC, Macquarie Capital (USA) Inc., Mischler Financial Group,

9    Inc., Oppenheimer & Co., Inc., Raymond James & Associates, Inc., William Blair & Company,

10   L.L.C., The Williams Capital Group, L.P., TPG Capital BD, LLC, and, for each, any of its

11   present or former employees, officers, directors, board of directors or committees thereof,

12   representatives or agents (including attorneys, accountants, advisors), parents, subsidiaries,

13   divisions, subdivisions, affiliates, predecessors, successors, assigns, and all other person acting,

14   purporting to act, or authorized to act on its behalf.

15          47.    "You" and "Your" means Defendant Uber and (a) any of its respective agents,

16   employees, representatives, and/or attorneys; and (b) any other person or entity acting or

17   purporting to act on its behalf.

18                                    **INSTRUCTIONS**

19          1.    The scope of discovery for these RFAs is governed by Rule 26(b)(1) and 36(a)(1).

20   These RFAs may be used to request that You admit the truth of matters relating to (1) facts, the

21   application of law to facts, or opinions about either, and (2) the genuineness of any described

22   documents.

23          2.    You are required to respond to the RFAs based upon all information that is

24   available to You, including information in the possession of Your attorneys, agents, or others

25   under Your possession, custody, or control and not merely known by virtue of Your own

26   personal knowledge.

27          3.    In response to each RFA, you must specifically admit or deny the matter or set

28   forth in detail the reasons why you cannot truthfully admit or deny the matter.

4.      If you deny any part of an RFA, the denial must fairly meet the substance of the request.  If you qualify an answer or deny only part of the matter for which an admission is requested, you must specifically admit so much of it as is true.

5.      You may not object to a request simply because You consider the matter requested to be a genuine issue for trial; You must deny the matter or set forth specific reasons why You cannot admit or deny it.

6.      A denial coupled with a general objection will constitute an admission.

7.      If you claim a lack of information or knowledge as a reason for failure to admit or deny an RFA, state whether you have made reasonable inquiry and that the information known or readily obtainable by you is insufficient to enable you to admit or deny.

8.      These RFAs are continuing in nature and shall be deemed subject to the duty to supplement as set forth in the Federal Rules of Civil Procedure, and You shall be obligated to change, supplement, and correct Your answers to conform to all available information, including such information as becomes available to You after Your answers hereto are served.

9.      If You claim any sort of privilege or immunity, whether based on statute or otherwise, as a basis for not answering all or part of an RFA, state the following: (a) the date of the purportedly protected information; (b) the names, the present or last known home and business addresses, the telephone numbers, and email address of those individuals who prepared, produced, reproduced or were recipients of said information, or were a speaker of or listener to an oral communication; (c) a description of the subject matter sufficient to identify it without revealing the information for which the privilege or other protection is claimed; and (d) each and every fact or basis upon which You claim any such privilege or other protection.

10.      Whenever appropriate, the singular form of a word shall be interpreted to encompass the plural form or vice versa and verb tenses shall be interpreted to include past, present and future tenses. The words "any" and "all" mean "any and all."  The word "including" means "including but not limited to," "including without limitation," or "including, for the avoidance of doubt." Unless specifically defined herein, all words and terms used herein shall be construed and interpreted according to ordinary custom, usage, and meaning.

11.      If you are unable to fully respond to any RFA, supply the information that is available and explain why your response is incomplete, the efforts made by you to obtain responsive information, and the source from which all responsive information may be obtained, to the best of your knowledge or belief.

12.      Any request that contains subparts shall be either admitted, denied, or given such other response as if it were a standalone RFA.

13.      Each matter to which an admission is requested is admitted unless, no later than thirty (30) days after service, You serve upon Lead Plaintiff's counsel a written answer or objection addressed to each request separately, signed by You or Your counsel, under oath.

14.      These Instructions and the Requests do not require or demand that You set forth the basis for Your denials, if any.

## REQUESTS FOR ADMISSION

1.      Admit that the Uber Custodians used Text messages to communicate about the Uber IPO, the Uber Projections, or the Categories.

2.      Admit that the Uber Custodians did not use Text messages to communicate about the Uber IPO, the Uber Projections, or the Categories.

3.      Admit that You had a Policy in place, Concerning employees' use of Devices for work purposes, at any point between January 1, 2017 and March 3, 2020.

4.      Admit that Your Policy Concerning employees' use of Devices for work purposes provided You with possession, custody, access, or control of employees' Devices.

5.      Admit that You had possession, custody, access, or control of Devices through which the Uber Custodians sent Text messages.

6.      Admit that You had a Policy Concerning collection of Text messages and other Communications from Your employees' Devices at any point in time between January 1, 2017 and March 3, 2020.

7.      Admit that You had a Policy Concerning retention or preservation of Text messages and other Communications from Your employees' Devices at any point in time between January 1, 2017 and March 3, 2020.

8.      Admit that You had a Policy Concerning destruction of Text messages and other Communications from Your employees' Devices at any point in time between January 1, 2017 and March 3, 2020.

9.      Admit that You issued litigation hold notices Concerning the Uber IPO, the Categories, this Action, or the *Messinger* Action to the Uber's Custodians.

10.      Admit that You did send a litigation hold notice to the Uber Custodians Concerning the Uber IPO, the Categories, or the *Messinger* Action before September 25, 2019.

11.      Admit that You did not send a litigation hold notice to the Uber Custodians Concerning the Uber IPO, the Categories and/or the *Messinger* Action until on or after September 25, 2019.

12.      Admit that You did send a litigation hold notice to the Uber Custodians Concerning the Uber IPO, the Categories and/or this Action before October 4, 2019.

13.      Admit that You did not send a litigation hold notice to the Uber Custodians Concerning the Uber IPO, the Categories and/or this Action until on or after October 4, 2019.

14.      Admit that You received litigation hold notices from the Underwriter Defendants and/or Your Advisors Concerning the Uber IPO, the Categories, this Action and/or the *Messinger* Action.

15.      Admit that You sent litigation hold notices to the Underwriter Defendants and/or Your Advisors Concerning the Uber IPO, the Categories, this Action and/or the *Messinger* Action.

16.      Admit that You preserved all Text messages sent to or received by the Uber Custodians' Devices used at any point between January 1, 2017 and March 3, 2020.

17.      Admit that You did not preserve all Text messages sent to or received by the Uber Custodians' Devices used at any point between January 1, 2017 and March 3, 2020.

18.      Admit that Text messages sent to or received by the Uber Custodians' Devices used at any point between January 1, 2017 and March 3, 2020 have been permanently deleted and/or destroyed.

19.     Admit that no Text messages sent to or received by the Uber Custodians' Devices used at any point between January 1, 2017 and March 3, 2020 have been permanently deleted and/or destroyed.

20.     Admit that You have not been able to recover any Text messages sent to or received by the Uber Custodians' Devices—or from any backup locations, repositories, prior collections, or other sources (including any cloud-based backups or repositories)—that were sent or received at any point between January 1, 2017 and March 3, 2020.

21.     Admit that You have been able to recover Text messages sent to or received by the Uber Custodians' Devices—or from any backup locations, repositories, prior collections, or other sources (including any cloud-based backups or repositories)—that were sent or received at any point between January 1, 2017 and March 3, 2020.

22.     Admit that collections of any of the Uber Custodians' Devices performed in connection with this Action did not include every Text message sent to or received by the Uber Custodians at any point between January 1, 2017 and March 3, 2020.

23.     Admit that collections of any of the Uber Custodians' Devices performed in connection with this Action included every Text message sent to or received by the Uber Custodians at any point between January 1, 2017 and March 3, 2020.

24.     Admit that forensic images were not taken of any Devices owned or used by the Uber Custodians.

25.     Admit that forensic images taken of any of the Uber Custodians' Devices in connection with this Action did not include every Text message sent to or received by the Uber Custodians at any point between January 1, 2017 and March 3, 2020.

26.     Admit that forensic images taken of any of the Uber Custodians' Devices in connection with this Action included every Text message sent to or received by the Uber Custodians at any point between January 1, 2017 and January 1, 2020.

27.     Admit that You preserved all Documents and Communications responsive to Lead Plaintiff's document requests in this Action from Devices or other sources of Documents and Communications owned or used by the Uber Custodians.

28.     Admit that You did not preserve all Documents and Communications responsive to Lead Plaintiff's document requests in this Action from Devices or other sources of Documents and Communications owned or used by the Uber Custodians.

29.     Admit that by the end of May 2019, You and/or the Uber Custodians were Aware of the Risk of Litigation and/or actual litigation Concerning the Uber IPO.

30.     Admit that by the end of June 2019, You and/or the Uber Custodians were Aware of the Risk of Litigation and/or actual litigation Concerning the Uber IPO.

31.     Admit that by the end of July 2019, You and/or the Uber Custodians were Aware of the Risk of Litigation and/or actual litigation Concerning the Uber IPO.

32.     Admit that by the end of August 2019, You and/or the Uber Custodians were Aware of the Risk of Litigation and/or actual litigation Concerning the Uber IPO.

33.     Admit that by the end of September 2019, You and/or the Uber Custodians were Aware of the Risk of Litigation and/or actual litigation Concerning the Uber IPO.

34.     Admit that by the end of October 2019, You and/or the Uber Custodians were Aware of the Risk of Litigation and/or actual litigation Concerning the Uber IPO.

35.     Admit that by the end of November 2019, You and/or the Uber Custodians were Aware of the Risk of Litigation and/or actual litigation Concerning the Uber IPO.

36.     Admit that by the end of December 2019, You and/or the Uber Custodians were Aware of the Risk of Litigation and/or actual litigation Concerning the Uber IPO.

37.     Admit that by the end of January 2020, You and/or the Uber Custodians were Aware of the Risk of Litigation and/or actual litigation Concerning the Uber IPO.

38.     Admit that by the end of February 2020, You and/or the Uber Custodians were Aware of the Risk of Litigation and/or actual litigation Concerning the Uber IPO.

39.     Admit that by the end of March 2020, You and/or the Uber Custodians were Aware of the Risk of Litigation and/or actual litigation Concerning the Uber IPO.

40.     Admit that by the end of April 2020, You and/or the Uber Custodians were Aware of the Risk of Litigation and/or actual litigation Concerning the Uber IPO.

41.     Admit that by the end of May 2020, You and/or the Uber Custodians were Aware of the Risk of Litigation and/or actual litigation Concerning the Uber IPO.

42.     Admit that by the end of June 2020, You and/or the Uber Custodians were Aware of the Risk of Litigation and/or actual litigation Concerning the Uber IPO.

43.     Admit that by the end of July 2020, You and/or the Uber Custodians were Aware of the Risk of Litigation and/or actual litigation Concerning the Uber IPO.

44.     Admit that by the end of August 2020, You and/or the Uber Custodians were Aware of the Risk of Litigation and/or actual litigation Concerning the Uber IPO.

45.     Admit that by the end of September 2020, You and/or the Uber Custodians were Aware of the Risk of Litigation and/or actual litigation Concerning the Uber IPO.

46.     Admit that by the end of October 2020, You and/or the Uber Custodians were Aware of the Risk of Litigation and/or actual litigation Concerning the Uber IPO.

47.     Admit that by the end of November 2020, You and/or the Uber Custodians were Aware of the Risk of Litigation and/or actual litigation Concerning the Uber IPO.

48.     Admit that by the end of December 2020, You and/or the Uber Custodians were Aware of the Risk of Litigation and/or actual litigation Concerning the Uber IPO.

49.     Admit that by the end of January 2021, You and/or the Uber Custodians were Aware of the Risk of Litigation and/or actual litigation Concerning the Uber IPO.

50.     Admit that before the date of these RFAs, You and/or the Uber Custodians were made Aware of the Risk of Litigation associated with the Uber IPO.

51.     Admit that before the date of the RFAs, You and/or the Uber Custodians were made Aware (whether formally or informally) of litigation associated with the Uber IPO.

52.     Admit that You did not take any steps to preserve Documents and Communications stored on the Uber Custodians' Devices at any time between May 30, 2019 and present for purposes of this Action.

53.     Admit that You issued litigation hold notices Concerning unrelated litigation to the Uber Custodians before the date of these RFAs.

54.     Admit that the litigation hold notices Concerning unrelated litigation that You Sent to the Uber Custodians before the date of these RFAs included instructions to preserve Documents and Communications on the Uber Custodians' Devices.

55.     Admit that You took steps to preserve Documents and Communications on the Uber Custodians' Devices in connection with unrelated litigation before the date of these RFAs.

56.     Admit that You collected Documents and Communications stored on the Uber Custodians' Devices in connection with unrelated litigation at any time between January 1, 2017 and present.

57.     Admit that, as a result of collecting Documents and Communications stored on the Uber Custodians' Devices in connection with unrelated litigation, You have access, possession, custody or control of Documents and Communications (including Text messages) from the Uber Custodians' Devices sent or received at any time between January 1, 2017 and March 3, 2020.

58.     Admit that You have access, possession, control, or custody of Documents and Communications collected from the Uber Custodians' Devices prior to the date of these RFAs.

LABATON SUCHAROW LLP

*/s/ Alfred L. Fatale III*
Jonathan Gardner (admitted *pro hac vice*)
Alfred L. Fatale III (admitted *pro hac vice*)
Joseph N. Cotilletta (admitted *pro hac vice*)
Marco A. Dueñas (admitted *pro hac vice*)
Lisa Strejlau (admitted *pro hac vice*)
140 Broadway
New York, New York 10005
Telephone: 212-907-0700
Facsimile: 212-818-0477
Email:     jgardner@labaton.com
           afatale@labaton.com
           jcotilletta@labaton.com
           mduenas@labaton.com
           lstrejlau@labaton.com

*Lead Counsel for Plaintiffs*

1

2   Jonathan Gardner (admitted *pro hac vice*)
    Alfred L. Fatale III (admitted *pro hac vice*)
3   Joseph N. Cotilletta (admitted *pro hac vice*)
    Marco A. Duenas (admitted *pro hac vice*)
4   LABATON SUCHAROW LLP
    140 Broadway
5   New York, New York 10005
    Telephone: (212) 907-0700
6   Facsimile: (212) 818-0477
    Email: jgardner@labaton.com
7           afatale@labaton.com
            jcotilletta@labaton.com
8           mduenas@labaton.com

9   *Lead Counsel for Lead Plaintiff Boston Retirement System*

10                **UNITED STATES DISTRICT COURT**

11               **NORTHERN DISTRICT OF CALIFORNIA**

12                    **SAN FRANCISCO DIVISION**

13  BOSTON RETIREMENT SYSTEM,
    Individually and On                          Case No:  3:19-cv-06361-RS
14  Behalf of All Others Similarly Situated,
                                                  **CERTIFICATE OF SERVICE**
15                              Plaintiffs,
                                                  **Courtroom:**  No. 3 – 17th Floor
16          v.                                    **Judge:**      Hon. Richard Seeborg

17  UBER TECHNOLOGIES, INC., et al.,

18                              Defendants.

19

20

21

22

23

24

25

26

27

28

1

## CERTIFICATE OF SERVICE

2          I am a citizen of the United States and a member of the bar of the state of New York.  I

3 am over the age of eighteen years, and not a party to the within Action.  My business address is

4 Labaton Sucharow LLP, 140 Broadway, New York, NY 10005.  My e-mail address is

5 jcotilletta@labaton.com.  On the date set forth below, I served the following documents in the

6 manner described below:

7          • **LEAD PLAINTIFF'S REQUESTS FOR ADMISSION DIRECTED TO
             UBER TECHNOLOGIES INC.**

8      ☒    **BY ELECTRONIC MAIL** – Based on a court order or agreement of the parties
            to accept service by e-mail or electronic transmission, I caused such documents

9           described herein to be sent to the persons at the e-mail addresses listed below. I
            did not receive, within a reasonable time after the transmission, any electronic

10          message or other indication that the transmission was unsuccessful.

11

12 on the following parties in this Action:

13 Patrick D. Robbins (SBN 152288)              Todd G. Cosenza (admitted *pro hac vice*)
   Daniel H.R. Laguardia (SBN 314654)          **WILLKIE FARR & GALLAGHER LLP**
14 **SHEARMAN & STERLING LLP**                  787 Seventh Avenue
   535 Mission Street, 25th Floor               New York, NY 10019-6099
15 San Francisco, CA 94105-2997                 Telephone: (212) 728-8677
   Telephone: (415) 616-1100                    Fax: (212) 728-9677
16 Facsimile: (415) 616-1199                    tcosenza@willkie.com
   probbins@shearman.com
17 daniel.laguardia@shearman.com
                                                Simona Agnolucci (CA 246943)
18                                              **WILLKIE FARR & GALLAGHER LLP**
   George Anhang (admitted *pro hac vice*)      One Front Street
19 **SHEARMAN & STERLING LLP**                  San Francisco, CA 94111
   401 9th Street, NW, Suite 800                Telephone: (415) 858-7447
20 Washington, DC 20004-2128                    Fax: (415) 858-7599
   Telephone: (202) 508-8000                    sagnolucci@willkie.com
21 george.anhang@sherman.com

22                                              Joseph G. Davis (CA 157764)
   Agnès Dunogué (admitted *pro hac vice*)      **WILLKIE FARR & GALLAGHER LLP**
23 Dennis Kitt (admitted *pro hac vice*)        1875 K Street, N.W.
   **SHEARMAN & STERLING LLP**                  Washington, DC 20006-1238
24 599 Lexington Avenue                         Telephone: (202) 303-1131
   New York, NY 10022                           Fax: (202) 303-2131
25 Telephone: (212) 848-4000                    jdavis@willkie.com
   agnes.dunogue@shearman.com
26 dennis.kitt@shearman.com

27

28

1        I declare under penalty of perjury under the laws of the State of California that the above

2    is true and correct.  Executed on March 24, 2022 in New York, New York.

3                              */s/ Joseph N. Cotilletta*

# FILED UNDER SEAL

| | |
|---|---|
| **From:** | Duenas, Marco <MDuenas@labaton.com> |
| **Sent:** | Monday, August 15, 2022 5:40 PM |
| **To:** | Dennis Kitt; Cotilletta, Joseph; Frasca, Christopher |
| **Cc:** | Daniel Laguardia; Agnès Dunogué; George Anhang; Zach Deaton; Paula Anderson |
| **Subject:** | Re: [EXTERNAL]RE: Uber - Fourth Amended 30(b)(6) Directed at Uber |

Dennis,

As discussed during the 8/12 meet and confer and again today, Lead Plaintiff disagrees with Uber's characterization of the events that culminated in the 8/3 Uber 30(b)(6) deposition of Will Anderson and the current impasse. Lead Plaintiff further disagrees with Uber's position that it need not prepare and produce witnesses for the Uber 30(b)(6) depositions currently noticed and scheduled for 8/19 and 9/14.

We can confirm our agreement to exchange draft sections of our joint discovery letter brief on 8/18 at 5 PT and 8/19 at 4 PT in anticipation of filing on 8/19 at 5 PT.

Lead Plaintiff reserves all rights.

Thanks,
Marco

---

**From:** Dennis Kitt <Dennis.Kitt@Shearman.com>
**Sent:** Monday, August 15, 2022 5:05 PM
**To:** Duenas, Marco <MDuenas@labaton.com>; Cotilletta, Joseph <JCotilletta@labaton.com>; Frasca, Christopher <CFrasca@labaton.com>
**Cc:** Daniel Laguardia <Daniel.Laguardia@Shearman.com>; Agnès Dunogué <Agnes.Dunogue@Shearman.com>; George Anhang <George.Anhang@Shearman.com>; Zach Deaton <Zach.Deaton@Shearman.com>; Paula Anderson <Paula.Anderson@Shearman.com>
**Subject:** RE: [EXTERNAL]RE: Uber - Fourth Amended 30(b)(6) Directed at Uber

Counsel –

Further to our call earlier today, we write to confirm that as of last Friday, August 12, the parties have reached an impasse regarding the issues and remedies raised by Lead Plaintiff in connection with the August 3 deposition of William Anderson and Uber's disagreement with Lead Plaintiff in connection with the propriety of the scope of your noticed 30(b)(6) topics and your interpretation of said topics.  As we explained on last Friday's call, in light of Lead Plaintiff's refusal to consider providing in writing a proposal that clarifies and narrows the topics for the upcoming 30(b)(6) depositions scheduled for August 19 and September 14, Uber cannot adequately prepare and produce a witness to testify in accordance with the scope of the topics as currently written and interpreted by Lead Plaintiff, and thus will not appear for those depositions.

As discussed on today's call, we also confirm our agreement to exchange draft sections of our letter to the Court regarding these issues this Thursday, August 18 at 5:00 pm PT, and revised drafts on Friday, August 19 at 4:00 pm PT for anticipated filing by 5:00 p.m. PT Friday.

Regards,
Dennis

**Dennis Kitt**
Associate

**439**

Shearman & Sterling LLP
599 Lexington Avenue
New York, NY 10022-6069
D +1.212.848.7462 | M +1.646.220.1740 | F +1.646.848.7462
dennis.kitt@shearman.com | www.shearman.com
**S H E A R M A N   &   S T E R L I N G   LLP**

---

**From:** Daniel Laguardia <Daniel.Laguardia@Shearman.com>
**Sent:** Friday, August 12, 2022 16:38
**To:** Duenas, Marco <MDuenas@labaton.com>; Agnès Dunogué <Agnes.Dunogue@Shearman.com>
**Cc:** Dennis Kitt <Dennis.Kitt@Shearman.com>; George Anhang <George.Anhang@Shearman.com>; Zach Deaton <Zach.Deaton@Shearman.com>; Cotilletta, Joseph <JCotilletta@labaton.com>; Frasca, Christopher <CFrasca@labaton.com>; Paula Anderson <Paula.Anderson@Shearman.com>
**Subject:** RE: [EXTERNAL]RE: Uber - Fourth Amended 30(b)(6) Directed at Uber

Marco,

We reject your mischaracterizations of Mr. Anderson's deposition.  Your questions were far outside the noticed topics (which themselves were neither reasonably particular nor described with the requisite "painstaking specificity"), the material we agreed to provide in our responses and objections, and the agreements the parties reached in our related meet and confer discussions.  Indeed, I note that on our August 10 meet and confer you took the position that our objections were a "legal nullity" and that if we had concerns regarding the breadth of the noticed topics we should have moved for a protective order.

Moreover, we cannot accept your position that, as a result of our disagreements, you are entitled to 14 hours of additional deposition testimony, including an additional seven hours of fact testimony from Mr. Anderson, whose personal knowledge reflects internal legal support, as well as the production of text messages.  As discussed below, the issues you raise below involve subjects that were not even mentioned in your notice.  In light of your broad interpretation of your requests, your position that our responses & objections and subsequent agreements are a nullity, and the relief you believe you are due, we will have to seek relief from the Court as to the upcoming Rule 30(b)(6) depositions unless you substantially narrow the topics and definitions for them in writing.  Please let us know whether you are willing to do so.

    I.    **Your request for text messages is rejected.**

        a.Mr. Anderson testified on numerous occasions throughout the deposition that it was not the general practice of the Uber custodians to use text messages to substantively communicate about Uber's IPO or the substantive allegations in this case.  This answer is entirely consistent with Uber's amended responses and objections to Plaintiffs' Request for Admission No. 1 propounded upon Uber and is based upon Uber's reasonable investigation, which included inquiries of each of the Uber custodians.  It is also consistent with the email that you quote.

        b.Accordingly, there is no basis to conduct the invasive and unduly burdensome process of collecting and reviewing all of the Uber custodians' texts, particularly when the meet and confer process on document production is still ongoing, and you have yet to review the majority of communications that Uber has confirmed contain the information relevant to this case (i.e., emails, internal chats, and Google Drive documents).

    II.    **All Documents Shown to Mr. Anderson During His Deposition Preparation Have Been Produced.**

    III.    **Your Email Challenges Responses to Questions Outside the Scope of the Noticed Topics Based on Your Broad Definition of "Practice."**

        a.Many of the "issues and deficiencies" you note in your email below are prime examples of questions that fell outside the scope of the noticed topics for Mr. Anderson's deposition and that exceed the substantive contours of a reasonable 30(b)(6) deposition.  You appear to take the position that "practice" includes any conduct by any individual employee in any way related to the topics, despite our objections and meet and confer discussions.  That is not the case.  Uber could not possibly prepare its witnesses to such a standard.  And Rule 30(b)(6) does not require that it does.

**440**

b. For example, you asked "whether Uber [ever] granted any exceptions" to its Network and Device Acceptable Use Policy "during the relevant time period" and whether "any of the custodians [in this case] were granted exceptions" from Uber's Mobile Device Management Standard.  Anderson Tr. 172:1-12; 262:6-263:9.

i. Nowhere in Topic Nos. 1-4, 18-20, 42, or 44 is there any reference to "exceptions" to Uber's policies, or anything analogous.  Likewise, there is no reference to "exceptions" in your purported catch-all definition of Policies and Practices.

c. You also asked "whether any full-time employees of Uber or its subsidiaries were found to have violated" the Network and Device Acceptable Use Policy and "whether Uber personnel [ever] discovered or suspected violations of this policy during the relevant time period and contacted InfoSecPolicy@uber.com."  Anderson Tr. 153:18-154:7; 179:16-180:22; *see also* Anderson Tr. 210:25-213:13 (same question as to Data Classification, Handling, and Sharing Policy).

i. Nowhere in Topic Nos. 1-4, 18-20, 42, or 44 is there any reference to "violations," "the reporting of violations" of Uber's policies, or anything analogous.  Likewise, there are no such reference in your purported catch-all definition of Policies and Practices.

d. Indeed, you appear to have even expected Mr. Anderson to know whether "any Uber employee [ever] came] forward seeking clarity about their duties and obligations under" the Network and Device Acceptable Use Policy.  Anderson Tr. 132:25-133:22.

i. Nowhere in your notice is there any reference to employees' questions about their duties or obligations.

## IV.    Counsel for Uber Did Not "Coach" the Witness

a. You appear to complain of improper coaching in two respects, both of which are unfounded.

b. <u>Questions Outside the Scope of the Topics</u>

i. You state in your email below that "[c]ounsel cannot unilaterally decide that questions are outside the scope of the noticed topics and then deliver speaking objections instructing or coaching the witness not to answer, as counsel did during the 8/3 deposition."

ii. Contrary to your allegation, counsel for Uber never coached or instructed Mr. Anderson not to answer a question on the grounds that it was outside the scope of the noticed topics.  Rather, when appropriate, counsel for Uber objected to lines of questioning as outside the scope of the noticed topics and allowed Mr. Anderson to answer the questions in his personal capacity.  *See, e.g.*, Anderson Tr. 96:5-12 ("[T]his question is outside of the scope of the 30(b)(6) topics, as have been most of the questions since we came back from break, and so the witness is not testifying to those in his corporate representative capacity, but rather in his personal capacity."); 140:3-13; 187:10-19; 188:16-189:21.

c. <u>Questions Implicating Privileged Information</u>

i. The mischaracterizations in your email below regarding the scope of the attorney-client privilege and the manner in which it was raised during the deposition are also both incorrect.

ii. You asked numerous questions of the witness that were outside the scope of the noticed topics, which thus required him to answer such questions in his personal capacity.  Given that Mr. Anderson's work at Uber is done at the direction of counsel, counsel for Uber cautioned Mr. Anderson not to disclose any privileged information in answering your questions, and that, to the extent Mr. Anderson could not answer without disclosing privileged information, he should not answer.  *See, e.g.*, Anderson Tr.  45:19-24 ("Mr. Anderson, you can answer to the extent that you're able to do so without disclosing anything covered by attorney-client privilege or work product."); 65:13-18; 141:16-21; 154:15-25.

3

**441**

    iii.   These instructions were proper.  Indeed, it is the duty of counsel to protect the company's privilege, whether related to this or any other legal matter, and it would be a violation of that duty to not provide such instructions to the witness.

**V.**    **Requests for Information and Documents**

a. Mr. Anderson was well prepared to answer the topics agreed on, including Uber's relevant policies and the general practices of Uber employees.  The additional information you describe in your email was, as noted above, outside the scope of the deposition, inappropriate for 30(b)(6) testimony, and largely constituted impermissible attempts to conduct discovery on discovery.  Nevertheless, we remain willing to discuss disclosures of particular information as outlined in Wednesday's proposal (*e.g.*, whether any of the custodians were granted exceptions to the network and device policy).

b. As to your document requests at the end of your email, as noted in Wednesday's email, to the extent not already produced, Uber agrees to produce the versions of its already-produced policies in place at the time of the IPO.  Uber further agrees to review the other policies you identified on the record and produce them to the extent they are responsive to the topics for which Mr. Anderson was noticed.

It appears to us that we are reaching the end of the road on negotiations.  We will not agree to produce text messages of the Uber Custodians or allow additional depositions under your conditions.  We also do not think it is feasible to prepare for or go forward with your additional noticed and currently scheduled 30(b)(6) depositions under the conditions you have outlined (*i.e.*, unlimited by our objections or meet and confer discussions, and subject to your broad interpretations of the topics).  We look forward to discussing this at 4:00 PM PT, when I think we can determine whether there is room to negotiate or whether the parties have reached an impasse and should seek relief from the Court.

    Daniel

**Daniel H.R. Laguardia**
Shearman & Sterling LLP

535 Mission Street, 25th Floor      599 Lexington Avenue
San Francisco, CA 94105          New York, NY 10022
T +1.415.616.1114               T +1.212.848.4731

Daniel.Laguardia@Shearman.com
www.shearman.com

Preferred Pronoun: He/Him/His

**From:** Duenas, Marco <MDuenas@labaton.com>
**Sent:** Thursday, August 11, 2022 10:24 AM
**To:** Daniel Laguardia <Daniel.Laguardia@Shearman.com>; Agnès Dunogué <Agnes.Dunogue@Shearman.com>
**Cc:** Dennis Kitt <Dennis.Kitt@Shearman.com>; George Anhang <George.Anhang@Shearman.com>; Zach Deaton <Zach.Deaton@Shearman.com>; Cotilletta, Joseph <JCotilletta@labaton.com>; Frasca, Christopher <CFrasca@labaton.com>; Paula Anderson <Paula.Anderson@Shearman.com>
**Subject:** RE: [EXTERNAL]RE: Uber - Fourth Amended 30(b)(6) Directed at Uber

Daniel,

As discussed during our 8/10, 4 PT/7 ET meet & confer, Lead Plaintiff rejects your offers below, which can neither cure the eight issues identified in your email nor the many other issues and deficiencies identified on the record during the 8/3 30(b)(6) deposition of Will Anderson—but omitted from your email. Instead, Lead Plaintiff offers the following counterproposal with four conditions:

1. Another full 7-hour 30(b)(6) deposition on Topic Nos. 1-4, 18-20, 42, 44;
2. A full 7-hour deposition of Will Anderson as a fact witness, and a written representation that Uber will not count such deposition against any limitations for the number of fact witness depositions the parties may agree to;
3. Both the 7-hour 30(b)(6) deposition on Topic Nos. 1-4, 18-20, 42, 44 and the 7-hour deposition of Will Anderson as a fact witness will be scheduled for dates in August or September 2022; and

The following fourth condition flows from Mr. Anderson's impeached testimony that none of the custodians engaged in "substantive" text messaging about the Uber IPO, the Uber Projections, or the Categories during the relevant time period. Exhibit 12 reflects ████████████████████████████████████████████████████████████████. As we showed Mr. Anderson, ███████████████████████████████████████████████ Tr. at 277:18-279:10. When asked ████████████████████████████████████████████████████████████████████████████ Tr. at 285:9-17. To be clear, Uber does not have the right to withhold and not produce text messages (or refuse to answer whether the custodians texted) based on the vague assertion that such text messages are not "substantive." Communications are either relevant or not, and the Court is the final arbiter of any dispute concerning whether topics discussed in the text messages are relevant. Since we did not raise this request during our 8/10 meet & confer, we are happy to discuss this on another call before our next meet & confer scheduled for 8/12.

4. The Uber Defendants' agreement to add text messages as a source and produce both (i) all text messages sent to or received by the 38 agreed-upon custodians that are responsive to the search terms and (ii) all text messages between the custodians that relate to the Uber IPO, the Uber Projections, or the Categories as defined in Lead Plaintiff's requests for admission.

Regarding Mr. Anderson's failure to prepare, Rule 30(b)(6) provides that persons designated "must" testify about information known or reasonably available to Uber. Uber had a duty but failed to produce a witness prepared to provide complete, knowledgeable, and binding answers on behalf of Uber with respect to Topic Nos. 4, 18-20, 42, and 44. Mr. Anderson testified that the extent of his preparation included two Zoom meetings with counsel for a total of 4 or 5 hours the Friday before the deposition and meeting for 25 minutes with counsel the morning of the deposition. Tr. at 26:24-28:6. Even if the documents Mr. Anderson needed to prepare for the deposition are voluminous and his review of such documents would be burdensome, Mr. Anderson was required but failed to review them to prepare himself to be deposed. Mr. Anderson testified that, "[w]ith counsel, in those sessions described, we looked at court filings related to the deposition and *some internal Uber documents*." Tr. at 41:11-16. Counsel represented that the "documents that refreshed his recollection ... *included* a number of policies, all of which we have already produced to you." Tr. at 184:1-21. The testimony and counsel's representation suggests there are other documents that refreshed Mr. Anderson's recollection and formed the basis of his testimony on behalf of Uber, but were not produced.

Regarding scope, Mr. Anderson testified that he was only "here to talk about the policies related to these devices ... and then the approved practices that are outlined in the policies." Tr. at 145:21-148:18. The transcript makes clear Mr. Anderson was not prepared to testify about Uber's practices implicated by Topic Nos. 18-20. Counsel objected that questions about practices were outside the scope given Uber's responses and objections to the third amended notice of deposition (that counsel sought to retroactively apply to the fourth amended notice at the beginning of the deposition). However, as you concede below, the "topics for the deposition included [both] policies *and practices*." Mr. Anderson testified and agreed that such practices include any "course of conduct," but then he refused or could not answer questions about Uber's, Uber employees', the custodians', and the individual defendants' course of conduct during the relevant time period as it relates to the policies.

You reassert below counsel's 8/3 objections that that our "line of questioning is and was outside the scope of the topics for which Mr. Anderson was noticed." The Court does not allow parties to limit what is asked of the designated witness at the deposition based on reasonable particularity. Rule 30(b)(6)'s reasonable particularity requirement is not a limit on what can be asked but rather establishes the minimum of what the witness must be prepared to testify. Mr. Anderson's knowledge and testimony falls far short of that minimum threshold. We were well within our rights to ask questions

**443**

about Uber's practices as it pertains to specific provisions of the very policies Uber produced that relate to Topic Nos. 18-20. Counsel cannot unilaterally decide that questions are outside the scope of the noticed topics and then deliver speaking objections instructing or coaching the witness not to answer, as counsel did during the 8/3 deposition.

Regarding improper assertions of privilege, you reassert below counsel's 8/3 objections "that any personal knowledge he has on the subject was obtained through his role as an eDiscovery Analyst for Uber's litigation department, any personal knowledge he had clearly raised privilege issues." Uber cannot shield from discovery facts learned during the course of an investigation, whether by an attorney or otherwise, because attorney client privilege protects *communications*, not facts. It was Uber's choice to designate a 30(b)(6) witness with a mix of personal knowledge and knowledge derived from his preparation for the deposition. Uber cannot limit the 30(b)(6) witness's preparation to attorney client communications and then object to questions calling for facts because such facts were learned through communications. Uber cannot refuse to allow Mr. Anderson to respond to questions about his discussions with other Uber employees or third parties on the basis of attorney client privilege. Facts Mr. Anderson learned working as an eDiscovery analyst are not protected just because, as counsel erroneously instructed, such work "is undertaken at the direction of counsel." Tr. at 45:5-13.

Regarding the bases for our counterproposal, the transcript reflects all the issues and deficiencies that warrant the relief Lead Plaintiff seeks, e.g.,

1. **Witness's Failure to Prepare**
   1. Mr. Anderson admitted throughout the deposition that he took no steps to prepare himself to testify about many questions implicated by the noticed topics, e.g., as it relates to the "Practices" component of "Policies and Practices" including course of conduct for Topic Nos. 18-20,
      1. What steps are taken to ensure Uber employees and contractors comply with Uber's network and device policy, Tr. at 114:3-115:10;
      2. Was not prepared to testify about Uber employees' Practices concerning their use of various devices as noticed for Topic Nos. 18-20, as the witness testified he was only "here to talk about the policies related to these devices ... and then the approved practices that are outlined in the policies," Tr. at 145:21-148:18;
      3. Whether Uber granted any exceptions to its network and device policy during the relevant time period, Tr. at 172:1-12;
      4. Uber's data classification and handling requirements at the time of the IPO, Tr. at 204:22-208:16;
      5. Whether any Uber employees, including the agreed-upon custodians and individual defendants, violated Uber's data classification, handling, and sharing policy during the relevant time period, and whether any such violations led to disciplinary actions or enforcement of such policy during the relevant time period, Tr. at 210:25-213:13;
      6. How many Uber employees were granted exceptions from Uber's mobile device management standard and whether any of the custodians or the individual defendants were granted exceptions during the relevant time period, Tr. at 262:6-263:9.

2. **Witness's Refusal to Answer Questions About Facts Known to Uber**
   1. Mr. Anderson repeatedly refused to answer questions about facts known to Uber based on improper coaching, improper speaking objections, and improperly asserted privileges, e.g.,
      1. After providing his personal understanding of what is protected by attorney client privilege (which is not protected as he defined it) and work product (which he could not define), Mr. Anderson followed counsel's instructions and refused to answer whether any full-time employees of Uber or its subsidiaries were found to have violated Uber's network and device acceptable use policy during the relevant time period, Tr. at 184:22-190:12;
      2. Mr. Anderson followed counsel's instructions and refused to answer whether the custodians texted about the IPO, projections, or categories during the relevant time period on the basis of

6

**444**

attorney client privilege when the question called for a fact he had knowledge of, Tr. at 270:8-275:1.

3. **Improper Speaking Objections, Including Instructions Not to Answer and Coaching the Witness, Which Drained the Clock**
    1. Aside from other examples above, throughout the deposition, counsel improperly instructed and/or coached Mr. Anderson not to answer questions about facts known to Uber, resulting in much of the seven hours being consumed by improper speaking objections and coaching rather than questions and answers. Many objections were based on Mr. Anderson's personal knowledge about the topics coming from "his work as an eDiscovery analyst [which] is at the direction and under the supervision of lawyers" and therefore is purportedly privileged, e.g.,
        1. Mr. Anderson refused to answer whether he spoke to anyone other than counsel about the Action in preparing for the deposition, i.e., he did not respond to a question seeking a fact, Tr. at 44:6-48:14;
        2. Mr. Anderson refused to answer whether any employees of Uber or its subsidiaries were found to have violated Uber's network and device acceptable use policy during the relevant time period, as the witness testified that his "ability to answer that question pertains to knowledge related to my current role" and counsel instructed that "to the extent that he has any personal knowledge in connection with the topics you're asking about, that is in his capacity as part of the legal team[,]" Tr. at 140:21-142:14, 186:22-190:12;
        3. While conceding the definition of "Policies and Practices" in the fourth amended notice of deposition includes "any rule, protocol, procedure, directives, 'playbooks,' practice, guidelines, or course of conduct" and that he "understand[s] the definition as written in the document[,]" Mr. Anderson followed counsel's instructions not to answer and could not recall the answers to questions about violations about Uber's network and device acceptable use policy during the relevant time period, Tr. at 148:19-160:13;
        4. The transcript is littered with at least 62 examples of speaking objections and coaching by counsel, despite our efforts to caution counsel and limit such inappropriate activity.

Finally, as also discussed, we reiterate our request for the following documents that were made on the record during the 8/3 30(b)(6) deposition:

1. Documents used to prepare for the deposition that refreshed the witness's recollection and that formed the basis of his testimony, Tr. at 43:8-18, 181:13-21;
2. Version of Exhibit 6 that was in effect and approved at the time of the IPO, Tr. at 193:21-25, 194:9-17;
3. Version of Exhibit 7 that was in effect and approved at the time of the IPO, Tr. at 201:4-14;
4. All other documents referenced and/or hyperlinked in section 7 of Exhibit 7, Tr. at 208:17-209:1;
5. Version of Exhibit 8 that was in effect and approved at the time of the IPO, Tr. at 218:5-18;
6. Version of Exhibit 9 that was in effect and approved at the time of the IPO, Tr. at 242:15-243:10;
7. "Exception Form" and "Uber's Information Security Exception Management Process" referenced and/or hyperlinked in section 4 of Exhibit 10, Tr. at 261:23-262:5.

We look forward to speaking with you again on Friday, 8/12 at 4 PT/7 ET.

Thanks,
Marco

---

**From:** Daniel Laguardia <Daniel.Laguardia@Shearman.com>
**Sent:** Wednesday, August 10, 2022 6:46 PM
**To:** Duenas, Marco <MDuenas@labaton.com>; Agnès Dunogué <Agnes.Dunogue@Shearman.com>
**Cc:** Dennis Kitt <Dennis.Kitt@Shearman.com>; George Anhang <George.Anhang@Shearman.com>; Zach Deaton <Zach.Deaton@Shearman.com>; Cotilletta, Joseph <JCotilletta@labaton.com>; Frasca, Christopher

**445**

<CFrasca@labaton.com>; Paula Anderson <Paula.Anderson@Shearman.com>
**Subject:** RE: [EXTERNAL]RE: Uber - Fourth Amended 30(b)(6) Directed at Uber

Thanks, Marco.

We have 30(b)(6) witnesses already scheduled for next week and September, so I am not sure what the time pressure is here.  In fact, and as you point out, you have had the transcript since last Thursday, but only requested today's meet and confer yesterday morning, and then demanded a proposal for you to take or reject yesterday afternoon, with less than 24 hours for us to consider it, without even being willing to list out the issues you want addressed.   You will have up to 14 hours of additional deposition time that we can potentially use to try to address some of these issues.  There is no need to rush to a result.  That is particularly true where, as here, your questions largely go to potential document retention/collection issues when you have not yet received or reviewed any documents.  Any issues around retention or scope would be better addressed in the context of an actual document production and actual identified concerns.

Nevertheless, in an attempt to be constructive, we have taken the initiative to set out the questions marked in the transcript for motion practice below with some proposals as to how they could potentially be addressed.  We remain available to discuss at 4, but it may make sense for you to consider the below and respond instead.  We further note that you asked the court reporter to mark every time the witness followed an instruction not to answer if the answer would involve a privileged communication.  These are addressed below as an effort to compromise, but the instructions were entirely proper.  Your questions generally involved requests for personal knowledge from an employee who, during the relevant time period, worked in the eDiscovery team of Uber's legal department, meaning his personal knowledge was generally the result of privileged interactions.

1. **Whether Any Uber Employee Ever Violated Uber's Network and Device Acceptable Use Policy**

    a. You asked that the court reporter mark two sections of the transcript related to questioning regarding "whether during the relevant time period any Uber employee violated the terms of" Uber's Network and Device Acceptable Use Policy.  Anderson Tr. 141:3-142:14; 153:18--156:1; 172:21-173:19; 186:22-190:12; Anderson Ex. 6.

        i. The topics for the deposition included policies and practices.  Nowhere did the notice describe a request for violations of the policy, and that is not an issue raised in your complaint.  This line of questioning is and was outside the scope of the topics for which Mr. Anderson was noticed.
        ii. Mr. Anderson attempted to answer the questions in his personal capacity.  However, given that any personal knowledge he has on the subject was obtained through his role as an eDiscovery Analyst for Uber's litigation department, any personal knowledge he had clearly raised privilege issues.
        iii. Uber cannot answer with certainty as to every employee's compliance with a policy at all times.  But Uber is willing to investigate whether information responsive to this line of questioning is recorded by Uber in a reasonably accessible manner.
        iv. If it is, Uber is prepared to provide, through testimony during the forthcoming 30(b)(6) depositions on August 19 or September 14, whether any of the 38 custodians have ever been found to have violated the Network and Device Acceptable Use Policy during the relevant period.
        v. It seems to us, however, that this issue can be more effectively addressed in writing.

2. **Whether Uber Exercised Right to Delete Data or Information**

    a. You asked that the court reporter mark the section of the transcript in which you asked whether Uber ever "exercise[d] its right to delete the communications, files, and data of any of the individual defendants."  Anderson Tr. 170:9-25.
        i. Mr. Anderson attempted to answer the questions in his personal capacity.  However, given that any personal knowledge he has on the subject was obtained through his role as an eDiscovery Analyst for Uber's litigation department, any personal knowledge he had clearly raised privilege issues.

**446**

    ii.  Notwithstanding the above, Uber is willing to investigate whether information responsive to this line of questioning is recorded by Uber in a reasonably accessible manner.

    iii.  If it is, Uber is prepared to provide, through testimony during the forthcoming 30(b)(6) depositions on August 19 or September 14, information about whether Uber has exercised that right for any of the 38 custodians during the relevant period until their receipt of the litigation hold in this matter.

    iv.  It seems to us, however, that this issue can be more effectively addressed in writing.

3. **Whether Uber Ever Disciplined or Terminated an Employee for Violation of the Network and Device Acceptable Use Policy**

    a.  You asked that the court reporter mark the section of the transcript in which you asked whether any Uber employee had been disciplined or terminated for violation of the Network and Device Acceptable Use Policy.  Anderson Tr. 173:24-174:22.

        i.  Mr. Anderson attempted to answer the questions in his personal capacity.  However, given that any personal knowledge he has on the subject was obtained through his role as eDiscovery Analyst for Uber's litigation department, any personal knowledge he had clearly raised privilege issues.

        ii.  Notwithstanding the above, Uber is willing to investigate whether information responsive to this line of questioning is recorded by Uber in a reasonably accessible manner.

        iii.  If it is, Uber is prepared to provide, through testimony during the forthcoming 30(b)(6) depositions on August 19 or September 14, whether any of the 38 custodians have ever been disciplined for violation of the policy during the relevant period.

        iv.  It seems to us, however, that this issue can be more effectively addressed in writing.

4. **Whether Uber Custodians Were Subject to a Legal Hold Throughout the Relevant Period**

    a.  You asked that the court reporter mark the section of the transcript in which you asked whether "any of [the 38] custodians were subject to a Legal Hold during the relevant time period, either in connection with this case or any other case."  Anderson Tr. 228:2-230:12.

        i.  Such questioning is plainly outside the scope of the noticed topics and is duplicative of Requests for Admission Nos. 53 and 54 previously propounded upon Uber.

        ii.  Uber objected to those Requests for Admission on, *inter alia*, the grounds that they seek discovery on discovery and seek information protected from disclosure by the attorney-client privilege and the work product doctrine.

        iii.  To the extent there turns out to be any document issues regarding the custodians, those will be better addressed after you have received and reviewed the document productions.

5. **Whether Uber Custodians Ever Sent Text Messages About Work**

    a.  You asked that the court reporter mark two sections of the transcript related to questioning regarding whether the Uber custodians ever texted during the relevant period regarding work, which was duplicative of Request for Admission No. 1 previously propounded upon Uber.  Anderson Tr. 267:3-276:2; 302:21-305:15.

        i.  Mr. Anderson testified that it was not the general practice of the Uber custodians to use text messages to substantively communicate about Uber's IPO or the substantive allegations in this case.   Mr. Anderson further testified that this understanding was based on Uber's investigation, but he did not answer questions regarding the details of such investigation because he did not think he could answer such questions without divulging information protected by the attorney-client privilege.

        ii.  Notwithstanding the above, and without waiver of any privilege or protection, Uber states that the investigation undertaken by Uber consisted of inquiries of the custodians made by counsel.

        iii.  Any further answer would require Uber to collect each custodian's personal device and image and review all the communications on it.  This would be an intensely burdensome and invasive process that goes far beyond any proportionality or what is required in light of your claims and the state of discovery at this point.

6. **Whether Information Was Shared With or Accessed by the Individual Defendants**

   a. You asked that the court reporter mark the section of the transcript in which you asked whether information regarding the categories of allegations that was tracked during the relevant time period "was shared with or accessed by the individual defendants."  Anderson Tr. 298:24-301:18.

      i. Mr. Anderson testified that, "[w]ithout definitively looking at [an employee's] account and knowing what he has access to, I wouldn't be able to say what levels he would have had at that time to those systems."  *Id*.

      ii. Notwithstanding the above, Uber is willing to investigate whether information responsive to this line of questioning is recorded by Uber in a reasonably accessible manner.

      iii. If it is, Uber is prepared to provide, through testimony during the forthcoming 30(b)(6) depositions on August 19 or September 14, a discussion of how Uber can track, if at all, whether information related to the categories of allegations was viewed by the Individual Defendants during the relevant time period.

      iv. However, this topic may be best addressed by the production of responsive documents from our custodial searches.

7. **Production of Documents that Refreshed the Witness's Recollection During Preparation for the Deposition**

   a. You asked that the court reporter mark the section of the transcript in which you asked that Uber produce the documents shown to the witness during preparation for the deposition that "refreshed his recollection."  Anderson Tr. 41:8-43:18.

      i. After the lunch break, counsel for Uber confirmed on the record that the only documents that refreshed Mr. Anderson's recollection were the policies already produced to plaintiffs and that there were no other "documents the witness reviewed to prepare for today's deposition that were not produced."  Anderson Tr. 184:7-21.

8. **Production of Versions of Policies in Place at the time of the IPO**

   a. On several occasions you asked that the court reporter mark sections of the transcript in which you asked that Uber produce versions of its produced policies that were in effect at the time of its May 2019 IPO.  Anderson Tr. 193:21-194:17; 201:4-15; 218:5-18; 242:15-243:10.  As stated on the record, Uber agrees to produce the versions of those policies in place at the time of the IPO, to the extent not already produced.

   b. You also asked that Uber produce several policies that were referenced in its produced policies.  Anderson Tr. 208:17-209:1; 261:23-262:5.  Uber agrees to review those identified policies and produce them to the extent they are responsive to the topics for which Mr. Anderson was noticed.

   Daniel

**Daniel H.R. Laguardia**
Shearman & Sterling LLP

535 Mission Street, 25th Floor | 599 Lexington Avenue
San Francisco, CA 94105 | New York, NY 10022
T +1.415.616.1114 | T +1.212.848.4731

Daniel.Laguardia@Shearman.com
www.shearman.com

Preferred Pronoun: He/Him/His

**From:** Duenas, Marco <MDuenas@labaton.com>
**Sent:** Tuesday, August 9, 2022 1:06 PM

**448**

**To:** Daniel Laguardia <Daniel.Laguardia@Shearman.com>; Agnès Dunogué <Agnes.Dunogue@Shearman.com>
**Cc:** Dennis Kitt <Dennis.Kitt@Shearman.com>; George Anhang <George.Anhang@Shearman.com>; Zach Deaton <Zach.Deaton@Shearman.com>; Cotilletta, Joseph <JCotilletta@labaton.com>; Frasca, Christopher <CFrasca@labaton.com>
**Subject:** RE: [EXTERNAL]RE: Uber - Fourth Amended 30(b)(6) Directed at Uber

Daniel,

Tomorrow at 4 PT/7 ET works for us. We will circulate a dial-in.

We appreciate your offer to chat on a prior call, but we are not sure how helpful that would be given that Agnès was the one who twice offered another 30(b)(6) deposition after various issues arose during Will Anderson's deposition. Perhaps Agnès had something specific in mind. Either way, the offers for another 30(b)(6) deposition were made on the record last Wednesday. The transcript was available on Thursday, which provides the context of when those offers arose. The transcript also reflects the instances in which we asked the court reporter to mark the transcript for motion practice. Accordingly, we expect you will have a proposal for us by tomorrow that we can accept, counter, or reject. We will not provide a list of questions we want to ask your witness in advance of the deposition.

Thanks,
Marco

**From:** Daniel Laguardia <Daniel.Laguardia@Shearman.com>
**Sent:** Tuesday, August 9, 2022 2:03 PM
**To:** Agnès Dunogué <Agnes.Dunogue@Shearman.com>; Duenas, Marco <MDuenas@labaton.com>
**Cc:** Dennis Kitt <Dennis.Kitt@Shearman.com>; George Anhang <George.Anhang@Shearman.com>; Zach Deaton <Zach.Deaton@Shearman.com>; Cotilletta, Joseph <JCotilletta@labaton.com>; Frasca, Christopher <CFrasca@labaton.com>
**Subject:** RE: [EXTERNAL]RE: Uber - Fourth Amended 30(b)(6) Directed at Uber

Hi, Marco

I can speak at 2:00 PT tomorrow or after 4:00 PT tomorrow.  I think it would be helpful to have a list of 30(b)(6) questions you still want answered, but also happy to jump on a call prior to discuss at a higher level.

Daniel

**Daniel H.R. Laguardia**
Shearman & Sterling LLP

535 Mission Street, 25th Floor
San Francisco, CA 94105
T +1.415.616.1114

599 Lexington Avenue
New York, NY 10022
T +1.212.848.4731

Daniel.Laguardia@Shearman.com
www.shearman.com

Preferred Pronoun: He/Him/His

**From:** Agnès Dunogué <Agnes.Dunogue@Shearman.com>
**Sent:** Tuesday, August 9, 2022 10:36 AM
**To:** Duenas, Marco <MDuenas@labaton.com>
**Cc:** Dennis Kitt <Dennis.Kitt@Shearman.com>; George Anhang <George.Anhang@Shearman.com>; Zach Deaton <Zach.Deaton@Shearman.com>; Cotilletta, Joseph <JCotilletta@labaton.com>; Frasca, Christopher

**449**

<CFrasca@labaton.com>; Daniel Laguardia <Daniel.Laguardia@Shearman.com>
**Subject:** RE: [EXTERNAL]RE: Uber - Fourth Amended 30(b)(6) Directed at Uber

Marco – I am preparing for a trial this month and will be unavailable so Daniel Laguardia, copied, will take the lead on this.  Daniel will let you know his availability for a call.
Regards,

Agnès

Agnès Dunogué
Partner

_____
Shearman & Sterling LLP
599 Lexington Avenue
New York, NY 10022-6069
D +1.212.848.5257  |  F +1.646.848.5257
agnes.dunogue@shearman.com  |  www.shearman.com

---

**From:** Duenas, Marco <MDuenas@labaton.com>
**Sent:** Tuesday, August 9, 2022 11:47 AM
**To:** Agnès Dunogué <Agnes.Dunogue@Shearman.com>
**Cc:** Dennis Kitt <Dennis.Kitt@Shearman.com>; George Anhang <George.Anhang@Shearman.com>; Zach Deaton <Zach.Deaton@Shearman.com>; Cotilletta, Joseph <JCotilletta@labaton.com>; Frasca, Christopher <CFrasca@labaton.com>
**Subject:** RE: [EXTERNAL]RE: Uber - Fourth Amended 30(b)(6) Directed at Uber

Agnès,

We would like to meet and confer to discuss your proposal to address unanswered questions from the 8/3/2022 30(b)(6) deposition of Will Anderson "through another 30(b)(6) deposition."

We are available today after 3 ET and tomorrow before 11 ET or after 12 ET. Please have someone with client authority attend the meet and confer that can approve any compromise we may reach. If we are not able to reach agreement on the scope, duration, and timing of the substitute 30(b)(6), Lead Plaintiff will seek relief from the Court within five business days of the meet and confer.

Thanks,
Marco

---

**From:** Dennis Kitt <Dennis.Kitt@Shearman.com>
**Sent:** Tuesday, August 2, 2022 6:38 PM
**To:** Duenas, Marco <MDuenas@labaton.com>
**Cc:** George Anhang <George.Anhang@Shearman.com>; Zach Deaton <Zach.Deaton@Shearman.com>; Cotilletta, Joseph <JCotilletta@labaton.com>; Frasca, Christopher <CFrasca@labaton.com>
**Subject:** [EXTERNAL]RE: Uber - Fourth Amended 30(b)(6) Directed at Uber

Marco –

Attached please find Uber's Mobile Device Management Standard, which we are producing to you as responsive to Schedule C of Plaintiffs' Fourth Amended Notice of Deposition of Uber dated July 25, 2022.  We are designating this document as Confidential pursuant to the Protective Order.

Best,
Dennis

**Dennis Kitt**
Associate

Shearman & Sterling LLP
599 Lexington Avenue
New York, NY 10022-6069
D +1.212.848.7462 | M +1.646.220.1740 | F +1.646.848.7462
dennis.kitt@shearman.com | www.shearman.com
**S H E A R M A N & S T E R L I N G   L L P**

---

**From:** Dennis Kitt
**Sent:** Monday, August 01, 2022 22:39
**To:** 'Duenas, Marco' <MDuenas@labaton.com>
**Cc:** George Anhang <George.Anhang@Shearman.com>; Zach Deaton <Zach.Deaton@Shearman.com>; 'Cotilletta, Joseph' <JCotilletta@labaton.com>; 'Frasca, Christopher' <CFrasca@labaton.com>
**Subject:** RE: Uber - Fourth Amended 30(b)(6) Directed at Uber

Marco –

Attached please find Mr. Anderson's resume, which we are designating Highly Confidential pursuant to the Protective Order.

Regards,
Dennis

**Dennis Kitt**
Associate

Shearman & Sterling LLP
599 Lexington Avenue
New York, NY 10022-6069
D +1.212.848.7462 | M +1.646.220.1740 | F +1.646.848.7462
dennis.kitt@shearman.com | www.shearman.com
**S H E A R M A N & S T E R L I N G   L L P**

---

**From:** Dennis Kitt
**Sent:** Friday, July 29, 2022 16:26
**To:** 'Duenas, Marco' <MDuenas@labaton.com>
**Cc:** George Anhang <George.Anhang@Shearman.com>; Zach Deaton <Zach.Deaton@Shearman.com>; Cotilletta, Joseph <JCotilletta@labaton.com>; Frasca, Christopher <CFrasca@labaton.com>
**Subject:** RE: Uber - Fourth Amended 30(b)(6) Directed at Uber

Marco –

Below please find the email addresses of the attendees for Will Anderson's deposition next week.  Please go ahead and forward these along to your vendor so they can set up credentials.

- wander@uber.com
- agnes.dunogue@shearman.com
- zach.deaton@shearman.com
- nielsm@uber.com
- jvaldivieso@uber.com

Almost all of the documents responsive to Requests 1 and 2 of Schedule C with respect to Mr. Anderson have already been produced and are in you possession.  We expect to produce the very small number of responsive documents (such as Mr. Anderson's resume) that have not been produced already on Monday.

**451**

Best,
Dennis

**Dennis Kitt**
Associate

Shearman & Sterling LLP
599 Lexington Avenue
New York, NY 10022-6069
D +1.212.848.7462 | M +1.646.220.1740 | F +1.646.848.7462
dennis.kitt@shearman.com | www.shearman.com
**S H E A R M A N & S T E R L I N G LLP**

---

**From:** Duenas, Marco <MDuenas@labaton.com>
**Sent:** Thursday, July 28, 2022 17:23
**To:** Dennis Kitt <Dennis.Kitt@Shearman.com>
**Cc:** George Anhang <George.Anhang@Shearman.com>; Zach Deaton <Zach.Deaton@Shearman.com>; Cotilletta, Joseph <JCotilletta@labaton.com>; Frasca, Christopher <CFrasca@labaton.com>
**Subject:** RE: Uber - Fourth Amended 30(b)(6) Directed at Uber

Dennis,

When can we expect to receive the Schedule C documents for Will Anderson? The notice requests those materials ten days prior.

Also, please confirm by tomorrow Defendants' 8/3 deposition attendee list so we can let the vendor U.S. Legal know.

Thanks,
Marco

---

**From:** Frasca, Christopher <CFrasca@labaton.com>
**Sent:** Monday, July 25, 2022 4:41 PM
**To:** 'George Anhang' <George.Anhang@Shearman.com>; 'Patrick Robbins' <PRobbins@Shearman.com>; 'Daniel Laguardia' <Daniel.Laguardia@Shearman.com>; 'Osher Gordon' <Osher.Gordon@Shearman.com>; 'Agnès Dunogué' <Agnes.Dunogue@Shearman.com>; 'tcosenza@willkie.com' <tcosenza@willkie.com>; 'sagnolucci@willkie.com' <sagnolucci@willkie.com>; 'jdavis@willkie.com' <jdavis@willkie.com>; 'Iannece, Vincent' <VIannece@willkie.com>
**Cc:** Gardner, Jonathan <JGardner@labaton.com>; Fatale, Alfred L. <AFatale@labaton.com>; Duenas, Marco <MDuenas@labaton.com>; Cotilletta, Joseph <JCotilletta@labaton.com>; 'gnespole@zlk.com' <gnespole@zlk.com>; 'aapton@zlk.com' <aapton@zlk.com>; 'Daniel Tepper' <dtepper@zlk.com>; 'jjasnoch@scott-scott.com' <jjasnoch@scott-scott.com>; 'david.scott@scott-scott.com' <david.scott@scott-scott.com>; 'wfredericks@scott-scott.com' <wfredericks@scott-scott.com>; 'Jonathan M. Zimmerman' <jzimmerman@scott-scott.com>; 'srudman@rgrdlaw.com' <srudman@rgrdlaw.com>; 'James Jaconette' <JamesJ@rgrdlaw.com>; 'Henry Rosen' <HenryR@rgrdlaw.com>; 'Sara Bierl Polychron' <SPolychron@rgrdlaw.com>; 'Mark Molumphy' <MMolumphy@cpmlegal.com>; 'Tyson Redenbarger' <TRedenbarger@cpmlegal.com>
**Subject:** Uber - Fourth Amended 30(b)(6) Directed at Uber

Dear Counsel:

Attached is Lead Plaintiff's Fourth Amended Notice of Deposition directed at Uber. The only change is the new date for the deposition of Ms. Reuter.

Thank you,
Chris

14

**452**

**Christopher A. Frasca | Senior Litigation Paralegal**
140 Broadway, New York, New York 10005
T: (212) 907-0835 | F: (212) 883-7535
E: CFrasca@labaton.com | W: www.labaton.com

***Privilege and Confidentiality Notice*** This electronic message contains information that is (a) LEGALLY PRIVILEGED, PROPRIETARY IN NATURE, OR OTHERWISE PROTECTED BY LAW FROM DISCLOSURE, and (b) intended only for the use of the Addressee(s) named herein. If you are not the Addressee(s), or the person responsible for delivering this to the Addressee(s), you are hereby notified that reading, copying, or distributing this message is prohibited. If you have received this electronic mail message in error, please contact us immediately at 212-907-0700 and take the steps necessary to delete the message completely from your computer system. Thank you.

This communication and any attachments may be privileged or confidential. If you are not the intended recipient, you have received this in error and any review, distribution or copying of this communication is strictly prohibited. In such an event, please notify us immediately by reply email or by phone (collect at 212-848-4000) and immediately delete this message and all attachments.
***Privilege and Confidentiality Notice*** This electronic message contains information that is (a) LEGALLY PRIVILEGED, PROPRIETARY IN NATURE, OR OTHERWISE PROTECTED BY LAW FROM DISCLOSURE, and (b) intended only for the use of the Addressee(s) named herein. If you are not the Addressee(s), or the person responsible for delivering this to the Addressee(s), you are hereby notified that reading, copying, or distributing this message is prohibited. If you have received this electronic mail message in error, please contact us immediately at 212-907-0700 and take the steps necessary to delete the message completely from your computer system. Thank you.
***Privilege and Confidentiality Notice*** This electronic message contains information that is (a) LEGALLY PRIVILEGED, PROPRIETARY IN NATURE, OR OTHERWISE PROTECTED BY LAW FROM DISCLOSURE, and (b) intended only for the use of the Addressee(s) named herein. If you are not the Addressee(s), or the person responsible for delivering this to the Addressee(s), you are hereby notified that reading, copying, or distributing this message is prohibited. If you have received this electronic mail message in error, please contact us immediately at 212-907-0700 and take the steps necessary to delete the message completely from your computer system. Thank you.
***Privilege and Confidentiality Notice*** This electronic message contains information that is (a) LEGALLY PRIVILEGED, PROPRIETARY IN NATURE, OR OTHERWISE PROTECTED BY LAW FROM DISCLOSURE, and (b) intended only for the use of the Addressee(s) named herein. If you are not the Addressee(s), or the person responsible for delivering this to the Addressee(s), you are hereby notified that reading, copying, or distributing this message is prohibited. If you have received this electronic mail message in error, please contact us immediately at 212-907-0700 and take the steps necessary to delete the message completely from your computer system. Thank you.
***Privilege and Confidentiality Notice*** This electronic message contains information that is (a) LEGALLY PRIVILEGED, PROPRIETARY IN NATURE, OR OTHERWISE PROTECTED BY LAW FROM DISCLOSURE, and (b) intended only for the use of the Addressee(s) named herein. If you are not the Addressee(s), or the person responsible for delivering this to the Addressee(s), you are hereby notified that reading, copying, or distributing this message is prohibited. If you have received this electronic mail message in error, please contact us immediately at 212-907-0700 and take the steps necessary to delete the message completely from your computer system. Thank you.

**453**