Jonathan Gardner (admitted *pro hac vice*)
Alfred L. Fatale III (admitted *pro hac vice*)
Joseph N. Cotilletta (admitted *pro hac vice*)
Robert S. Rowley (admitted *pro hac vice*)
LABATON SUCHAROW LLP
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
Email: jgardner@labaton.com
        afatale@labaton.com
        jcotilletta@labaton.com
        rrowley@labaton.com

*Lead Counsel for the Class*

[Additional Counsel on Signature Page]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| BOSTON RETIREMENT SYSTEM,<br><br>Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES, INC., et al.,<br><br>Defendants. | Case No.:  3:19-cv-06361-RS<br><br>ECF CASE<br><br>**AMENDED SUMMARY CHART FOR POTENTIAL APEX DEPONENTS** |

**Summary Chart for Potential Apex Deponents**
*Boston Retirement System v. Uber Technologies, Inc.*, No. 3:19-cv-06361-RS (N.D. Cal.)

## TABLE OF CONTENTS

**Dara Khosrowshahi** ................................................................................................................... 1

**Nelson Chai** ........................................................................................................................... 15

**Ronald Sugar** ........................................................................................................................ 24

**Ursula Burns** ........................................................................................................................ 29

**Garrett Camp** ........................................................................................................................ 32

**Matt Cohler** .......................................................................................................................... 36

**Ryan Graves** ......................................................................................................................... 40

**Arianna Huffington** ............................................................................................................. 43

**Travis Kalanick** .................................................................................................................... 47

**Wan Ling Martello** .............................................................................................................. 51

**Yasir Al-Rumayyan** ............................................................................................................ 55

**John Thain** ........................................................................................................................... 58

**David Trujillo** ...................................................................................................................... 63

**Gus Fuldner** ......................................................................................................................... 65

**Jill Hazelbaker** .................................................................................................................... 69

**Andrew Macdonald** ............................................................................................................. 75

**Summary Chart for Potential Apex Deponents**
*Boston Retirement System v. Uber Technologies, Inc.*, No. 3:19-cv-06361-RS (N.D. Cal.)

| Proposed Deponent | Plaintiffs' Basis for the Deposition | Uber Defendants: Good Cause for Precluding the Deposition |
|---|---|---|
| **Dara Khosrowshahi**[1] (CEO, Board Member, and Individual Defendant) | **Unique, First-Hand, Non-Repetitive Knowledge of Relevant Facts**<br><br>**Knowledge and conduct regarding contents of, and basis for, alleged misrepresentations, as well as steps taken for IPO-related due diligence:**<br><br>• Khosrowshahi should be questioned about his review of, and input regarding, the contents of the Registration Statement. *See, e.g.,* **UBER_00043016** (signed the Registration Statement, certifying that he had "reasonable grounds to believe that it meets all of the requirements for filing on [SEC] Form S-1."); *see also* **UBER_00174444** (S-1 signature page with Khosrowshahi's signature); **Byrne Tr. at 419:23-420:9** ("senior members of Uber's executive leadership reviewed the entire S-1 prospectus before it was filed with the SEC . . . *our CEO [Khosrowshahi]*, our CFO [Chai], and Jill Hazelbaker, and Tony West would be *the primary members who reviewed the document*").[2]<br><br>• Several of the alleged misrepresentations are contained in a letter *written by Khosrowshahi*, which was published at the front of the Registration Statement. **PwC_00089234 at -89250-89255** ("we've changed . . . we have improved our governance and Board oversight; built a stronger and more cohesive management team; and made the changes necessary to ensure our company culture rewards teamwork and encourages employees to commit for the long term . . . *I will ensure that we treat our customers, our colleagues, and our cities with respect*"); *see also* ECF 95 at 9-10 (citing Khosrowshahi letter as one of the bases for upholding claims).<br><br>• Khosrowshahi was intimately involved IPO-related due diligence meetings. *See, e.g.,* **UBER_00191339** (email containing attachment titled: "03.20.2019 Diligence Meeting Agenda.pdf; Ellis S1" that lists "Dara" as a speaker for "Company Overview"); **UWS-UBER-** | **Lack of First-Hand / Unique Knowledge Regarding Relevant Issues**<br><br>• Mr. Khosrowshahi does not have unique, first-hand knowledge on relevant topics beyond the testimony covered in numerous Rule 30(b)(6) and individual depositions.<br><br>• The Second Amended Complaint ("SAC") lacks any allegation regarding Mr. Khosrowshahi's intent, knowledge, solicitation of stock purchases, or other actions except to cite his public statements.<br><br>• Plaintiffs expressly "do[] not allege . . . that any of the Defendants acted with scienter or fraudulent intent." (SAC ¶¶ 353, 361; *see id.* ¶¶341.)<br><br>• Plaintiffs' examples establish Mr. Khosrowshahi received information through reports and discussions with less senior members of management.<br><br>• Barney Harford, who reported to Mr. Khosrowshahi directly, and Andrew Byrne, Glen Ceremony, Catherine Gibbons, Matt Kallman, and Emily Reuter, who reported to him indirectly, have been or will be deposed.<br><br>• The SAC lacks any allegation regarding SEC approval, Mr. Khosrowshahi's role as "CODM," or reporting metrics such as breakdowns by geographic region and business segment, |

---

[1] The parties previously exchanged preliminary drafts of their sections; to the extent that the parties do not respond to or address any points subsequently added after the initial exchange and which the parties have not had an opportunity to review, the parties do not concede such points. The parties also disagree as to numerous characterizations or interpretations of evidence, but the parties do not address each of those instances here given the purpose of this submission as set forth in the Court's Order dated July 27, 2023 (ECF No. 305).

[2] Unless otherwise noted, all emphasis in Plaintiffs' sections is added.

**Summary Chart for Potential Apex Deponents**
*Boston Retirement System v. Uber Technologies, Inc.*, No. 3:19-cv-06361-RS (N.D. Cal.)

| Proposed Deponent | Plaintiffs' Basis for the Deposition | Uber Defendants: Good Cause for Precluding the Deposition |
|---|---|---|
| | 00027368 (slide deck titled "IPO Banker / Research Diligence Meeting Proposal" listing "Dara" as a speaker for "Company Overview and Strategy").<br><br>• <u>Khosrowshahi was intimately involved in external reporting and IPO readiness discussions.</u> *See* **UBER_00101387** ("Understand what Dara wants to see in respect of external reporting, how Dara wants to be involved in IPO readiness discussions and involvement in tax risk and global remodeling considerations.").<br><br>• <u>Khosrowshahi is the only person who can testify regarding the conduct and knowledge supporting his affirmative "due diligence" defense, which contends that Khosrowshahi, individually, "exercised due diligence and, *after reasonable investigation*, had reasonable ground to believe and did believe that the purported misstatements and/or omissions . . . were true and that there was no omission to state a material fact required to be stated therein or necessary to make the statements therein not misleading . . ."</u> *See* ECF 174 at 71, Affirmative Defense No. 12.<br><br>**As Uber's chief operating decision maker ('CODM'), Khosrowshahi was the *only* person who made decisions for the Company as a whole.**<br><br>• *See, e.g.,* **UBER_00329948 at 330006** ("During 2018, the Company made operational changes in how its chief operating decision maker ("CODM") manages the business including performance assessment and resource allocation. The Company's Chief Executive Officer is its CODM.); **UBER_00720530** ("[Khosrowshahi] is the *only individual that approves things at the Total Company level and is making decisions for the Company as a whole[.]*"); **Ceremony Tr. at 124:12 – 125:2** (same); **Rosenthal Tr. at 67:10-20** (regional safety managers "*reported up to Dara*"); *id.* **at 163:07-12** ("decisions over individual regions" were "*centralized through Dara*"). | category position, and contribution margin, which were disclosed in the offering documents in any event. (*E.g.*, Dkt. No. 188-3 ("RS") at 3, 34, 98, F-31).<br><br>• Mr. Khosrowshahi had no unique knowledge as to those metrics.<br><br>• There is no evidence that meetings Mr. Khosrowshahi had with Uber's Board chairman are relevant to the complaint or relayed unique information. Discussions regarding the composition of the Board are likewise not relevant.<br><br>• Due diligence is evaluated under an objective standard focused on the process undertaken and information received by an officer or director.<br><br>**Others Could Testify From a Similar Vantage Point**<br><br>• Knowledge of allegedly relevant topics can be investigated through Uber's 30(b)(6) and individual witnesses. For example:<br><br>  ○ Andrew Byrne (VP, Global Public Policy), who was deposed as Uber's 30(b)(6) witness concerning Uber's business model and growth strategy and also in his individual capacity, answered numerous questions relating to, among other things:<br><br>    ▪ Mr. Khosrowshahi's cultural changes at Uber. (*See, e.g.*, Byrne Tr. at 119:1-122:11, 404:20-405:12.)<br><br>    ▪ Mr. Khosrowshahi's decision to publish the U.S. Safety Report. (*See, e.g., id.* at 126:2-132:11 ("Dara believed that our proactive commitment in the U.S. to publishing a safety report, i.e., a report that wasn't mandated by regulators that demonstrated that Uber was placing public safety above the concerns of the brand or reputation of the business . . . .").)[3] |

---

[3] The deposition transcripts cited are being reviewed for errata and accordingly are not yet final.

**Summary Chart for Potential Apex Deponents**
*Boston Retirement System v. Uber Technologies, Inc.*, No. 3:19-cv-06361-RS (N.D. Cal.)

| Proposed Deponent | Plaintiffs' Basis for the Deposition | Uber Defendants: Good Cause for Precluding the Deposition |
|---|---|---|
| | As Uber's CODM, Khosrowshahi played a critical role in all aspects of Uber's IPO-related strategy:<br><br>• Khosrowshahi pushed Uber to conduct its IPO as fast as possible. *See, e.g.,* **UBER_00121221** (email from Khosrowshahi to Bill Gurley, stating: ▮▮▮▮▮); **UBER_00147971** (email from Khosrowshahi to Cameron Poetzcher, stating: ▮▮▮▮▮); **UWS-GS-UBER-00055235** ("Why do we know an IPO is happening by end of 2019[?] *Well[,] Dara says it to employees, shareholders and media at every chan[c]e*.").<br><br>• Khosrowshahi was involved in key decisions relating to the method by which Uber should go public. *See, e.g.,* **UBER_00238845** (email from Khosrowshahi stating ▮▮▮▮▮"); **UBER_00174456** (email from CMO Rebecca Messina, stating that Khosrowshahi acted as a "seasoned marketer to get [Uber] through the IPO.").<br><br>• Khosrowshahi was the ultimate decision maker for IPO timing – a critical concern for investors, particularly since the use of flash numbers (i.e., preliminary summary level financials) for Q1 2019 and delay of the safety report were matters that caused market uproar when the full facts were released post-IPO. *See, e.g.,* **UBER_00467441** (message from Manik Gupta, stating: ▮▮▮▮▮; *see also* **UBER_00215464** ▮▮▮▮▮"); **Gibbons Tr.** at 94:12-20 ("Q. Did Mr. Fuldner have a meeting with Mr. Harford, Mr. West, Ms. Hazelbaker and Dara in May of 2018? A. Per this e-mail, yes, he did ▮▮▮▮▮<br><br>• Khosrowshahi held private, off-board meetings and engaged in on-on-one email communications with Chairman Sugar regarding IPO strategy. *See, e.g.,* **UBER_00206833** | ▪ Mr. Khosrowshahi's participation in meetings with TfL, the London licensing authority. (*See, e.g., id.* at 118:16-121:1, 131:2-14 ("I believe I was involved in almost every single conversation with Dara when it . . . came to London to briefing Dara on . . . what was going on in London and our potential response."), 250:13-251:6 (accompanied Mr. Khosrowshahi to all meetings he had with TfL), 302:25-303:25 (Mr. Byrne "provided the script . . . for Dara" for a phone call with TfL).)<br><br>▪ The type of information provided to Mr. Khosrowshahi about the legality of Uber's business model in specific countries. (*See, e.g., id.* at 193:10-197:10.)<br><br>▪ Other relevant correspondence involving Mr. Khosrowshahi. (*See, e.g., id.* at 209:15-236:16, 375:13-378:4.)<br><br>○ Glen Ceremony (Chief Accounting Officer), who was deposed as Uber's 30(b)(6) witness concerning Uber's financial condition and also in his individual capacity, testified about:<br><br>▪ Meetings Mr. Khosrowshahi attended or periodic reports he received regarding Uber's financial condition. (Ceremony Tr. at 61:22-66:2, 77:3-80:4, 174:23-175:8).)<br><br>▪ Financial information Mr. Khosrowshahi relied upon in making business decisions. (*Id.* at 107:23-116:14. (Mr. Khosrowshahi's decision-making as CODM is "an iterative process that . . . is visible" because "there's a lot of people involved in meetings that those decisions are being made"); 119:22-24 ("The CODM meets monthly with the senior director of strategic finance . . . Dennis Cinelli").)<br><br>▪ IPO pricing. (*Id.* at 420:7-422:6 (explaining that "[bankers] advise on a valuation they believe would be sufficient to meet the goals of, you know, how much capital you want to raise, |

**Summary Chart for Potential Apex Deponents**
*Boston Retirement System v. Uber Technologies, Inc., No. 3:19-cv-06361-RS (N.D. Cal.)*

| Proposed Deponent | Plaintiffs' Basis for the Deposition | Uber Defendants: Good Cause for Precluding the Deposition |
|---|---|---|
| | (email from Ronald Sugar to Khosrowshahi, stating: "Here are my topics for our call tomorrow: ███████████████████████████████; **UBER_00000090** (email from Khosrowshahi to Sugar, stating █████████████████████████████████ ██████████.<br><br>• Khosrowshahi was one of three members for Uber's Pricing Committee – the only ones with authority to decide, among other things, the "range of offering price," "final offering price," "Final S-1 registration statement," and the "underwriting agreement." **UBER_IPO_00003807 at 3819 and 3489**; *see also* **UBER_00198371 at 375** ("Full authority related to IPO matters to be delegated to Pricing Committee after formation"); **UBER_00035977 at 5985** ("Pricing Committees should generally be small and nimble enough to hold calls/meetings on short notice and make decisions (e.g., upsizing, pricing changes, etc.) quickly throughout the roadshow. . . . ████████████████████████████████████████ **UBER_00035977 at 5986** ("CEOs are almost always on the Pricing Committee because they (A) best understand the company's short- and long-term financing needs, (B) met proposed investors and may want to allocate shares based on feedback and relationships, and (C) best understand employee and stakeholder sensitivities to a particular deal size or price."); **UBER_00411097** (Khosrowshahi received "Valuation and Filing Range" materials on the eve of the IPO, which provided the calculations and bases for the potential IPO price range).<br><br>• The Pricing Committee held meetings where updates regarding IPO pricing, status of investor engagement and orderbook momentum, and D&O Insurance for Section 11 claims were discussed. *See, e.g.*, **UBER_IPO_00008246 at 8246** ("Pricing [redacted] Committee Meeting April 9, 2019"), **8248** ███████████████████████████████████ ████████████████, **and 8265** (slide in D&O Insurance slide deck regarding the "Top Ten IPO/Section 11 Case Settlements"); *see also* **UBER_IPO_00008282 at 8282** ("Pricing [redacted] Meeting May 7, 2019") **and 8287** (slide titled "Status of Investor Engagement from 1x1 and Small Meetings"); **UBER_IPO_00008293 at 8293** ("Pricing | and that had changes regularly . . . based on conversations with investors . . . the roadshow is a big information-sharing with investors. And then that feedback is synthesized by and assessed by the bankers, and they advise the company on the valuation that they would advise as kind of a market-maker for the stock.").<br><br>▪ The limited emails introduced which Mr. Khosrowshahi received. (*Id.* at 147:16-151:16, 344:5-360:10, 380:19-382:22.)<br><br>▪ Plaintiffs did not ask Mr. Ceremony any questions about the Pricing Committee even though he was designated as Uber's 30(b)(6) witness on valuations considered and received by the Board.<br><br>▪ Plaintiffs did not ask Mr. Ceremony any questions about Uber's driver equity program in the IPO even though he was designated as Uber's 30(b)(6) witness on the company's financial condition, including how one-time losses related to the program were calculated and recorded.<br><br>○ Catherine Gibbons (Global Head of Platform Safety), who was deposed as Uber's 30(b)(6) witness concerning passenger safety, testified regarding the company's and Mr. Khosrowshahi's views on safety as one of Uber's top priorities and the development of the U.S. Safety Report. (*See* Gibbons Tr.at 35:13-37:14, 82:19-92:16, 94:12-100:23, 102:11-104:13, 106:6-107:24, 113:14-117:12, 139:4-142:4.)<br><br>▪ Plaintiffs did not ask Ms. Gibbons any questions regarding Mr. Khosrowshahi's views as to any other aspects of their safety allegations. |

**Summary Chart for Potential Apex Deponents**
*Boston Retirement System v. Uber Technologies, Inc.*, No. 3:19-cv-06361-RS (N.D. Cal.)

| Proposed Deponent | Plaintiffs' Basis for the Deposition | Uber Defendants: Good Cause for Precluding the Deposition |
|---|---|---|
| | [redacted] Committee Meeting May 4, 2019") **and 8301** ("Snapshot of Top 30 Orders in the Orderbook"); **UBER_IPO_00008324 at 8324** ("Pricing [redacted] Committee Meeting May 9, 2019"). <br><br> • Khosrowshahi reviewed and approved the IPO's cost model for driver equity. *See* **UBER_00107678** ("the last thing Dara said on it in the meeting was 'this is approved'"); *see also* **UBER_00829850** ("I don't want to front run your and Dara's decision on whether to do it"). <br><br> • Khosrowshahi, Chai, and the Board discussed IPO readiness over dinner. *See, e.g.,* **UBER_00670298 at 301** ("IPO Readiness: Nelson will discuss his view of ██████████ ████████████████████████████ We will discuss over dinner."). <br><br> **Khosrowshahi was instrumental to Uber's efforts to repair the Company's reputation and operate in various jurisdictions:** <br><br> • Khosrowshahi was instrumental to Uber's efforts to repair the Company's reputation – a key aspect of Plaintiff's New Day at Uber allegations. *See, e.g.,* **UBER_00053798** ("Our rebirth has been the reputation turnaround we architected over the last 18 months ("*Dara's charm offensive*")); *see also* **UBER_00210336 at 337** ("Uber's charm offensive comes with a high commitment: ████████████████ ; **Byrne Tr. at 196:4-10** ("So Dara was instrumental to Uber's efforts to repair its reputation with the press, TfL, and mayor at this time; correct? . . . [Byrne:] As the CEO of the company, Dara was intimately involved in our attempt to repair our reputation, yes."); *id* **at 271:19-22** ("Dara was very clear about the changes in corporate culture that covered the entirety of Uber around the world and the -- you know, for example, the prohibition on any use of Greyball anywhere"); *id.* **at 377:18-378:4** ("But it also relied a lot on Dara's personal -- placing his personal imprimatur on the business and -- and that's what she was referring to when she means Dara's charm offensive. You know, he -- he flew around the world. *He met with, you know, a number of journalists, politicians, and regulators and talked* | ○ Emily Reuter (Head of Corporate Finance) is designated to testify as Uber's 30(b)(6) representative regarding, among other things, meetings of the Board and management regarding the IPO, Uber's participation in the underwriters' diligence, Uber's roadshow, Uber's communications with investors in the six months prior to the IPO, and the timing of the IPO. <br><br> ○ Matt Kallman (VP and Global Head, Communications) is designated to testify as Uber's 30(b)(6) representative regarding, among other things, Uber's "New Day," changes in corporate culture since Mr. Khosrowshahi's arrival, and post-IPO layoffs. <br><br> **Specific Prejudice or Harm From the Deposition** <br><br> ● As Uber's CEO and a member of the company's Board of Directors, Mr. Khosrowshahi has important and time-consuming responsibilities for the company's day-to-day operations and decision making. <br><br> ● Beyond his roles as Uber's CEO and a member of its Board of Directors, Mr. Khosrowshahi serves in senior positions at other institutions, including as (i) Member of the Board of Directors the Expedia Group, (ii) Member of the Board of Directors of Aurora Innovation, Inc., and (iii) Member of the Board of Directors of Grab Holdings Ltd. |

**Summary Chart for Potential Apex Deponents**

*Boston Retirement System v. Uber Technologies, Inc.*, No. 3:19-cv-06361-RS (N.D. Cal.)

| Proposed Deponent | Plaintiffs' Basis for the Deposition | Uber Defendants: Good Cause for Precluding the Deposition |
|---|---|---|
| | *to them in a -- and investors and talked to them face-to-face*. And, you know, Dara being the new CEO and being a new face of the business was in some sense the personal embodiment of that change."); **Gibbons Tr. at 163:11-23** ("Q. And Ms. Hazelbaker propose ▮▮▮▮▮ Q. And what is the Dara ad she refers to? A. I'm not quite sure.  Q. ▮▮▮▮▮ . . . · A. That sounds familiar, yes."). <br><br> • Khosrowshahi was intimately involved in Uber's compliance efforts and negotiations with the Transport for London (TfL) – a key aspect of Plaintiff's illegal operations theory of liability – including personally attending meetings and engaging in multiple, private one-on-one calls with TfL Commissioner, Mike Brown. *See, e.g.*, **UBER_00264639** ("Hi Dara, Thanks again for taking the time for another call with Mike Brown."); *id.* ("Here is what I am thinking and have run this by Dara: Sunday Jan 7 – Dara heads to London . . . Monday – Jan 8 – Dara and Mike meet. Dara is fine with doing london meetings throughout the day . . ."); **UBER_00828852** ("Dara has a call with Mike on Monday night, so we have a shot to persuade them otherwise."); **UBER_00284896 at 4908** ("Transport for London says it had 'constructive' meeting with Uber chief"); **Byrne Tr. at 120:22 – 121:1** ("Q. So Dara was personally involved in Uber's response to the TfL decision, correct?  A. Dara was - - attended the meeting with Transport for London. And, yes, he was personally involved in that meeting."); *id.* **at 132:1-11** ▮▮▮▮▮▮▮▮ *; id.* **at 134:16-24** ▮▮▮▮▮▮▮▮ *; id.* **at 210:8-10** ("[Q]: So it was *just Dara and Mike Brown on that call*; is that right? [A]: *Yes*."). | |

**Summary Chart for Potential Apex Deponents**
*Boston Retirement System v. Uber Technologies, Inc.*, No. 3:19-cv-06361-RS (N.D. Cal.)

| Proposed Deponent | Plaintiffs' Basis for the Deposition | Uber Defendants: Good Cause for Precluding the Deposition |
|---|---|---|
| | <ul><li>Khosrowshahi was intimately involved in Uber's political efforts to operate in various jurisdictions. *See, e.g.*, **UBER_00132153** (email from Matt Kallman, stating ████████████████████████████████████████████████████ **UBER_00264558** ████████████████████████████████</li><li>Recommendations related to ELT's behavior and respective cultural changes came from Uber's outside counsel and were directed to Khosrowshahi to make the ultimate decision – a key aspect to Plaintiff's New Day at Uber allegations. *See* **UBER_00410834** (Transcript forwarded to WSJ from a July 16, 2018 All Hands meeting, where Tony West states: "What happens with the -- with all of these, but particularly with the ELT processes that go to outside counsel, the way those culminate is they culminate usually in a set of recommendations. And because we are talking about the ELT, those recommendations usually go to Dara . . . if there is some substantiation, those recommendations will go to Dara for action.")</li></ul>**State of mind and knowledge of known trends or uncertainties for Item 303:**<ul><li>The evidence cited in the due diligence section above also supports the notion that Khosrowshahi should be questioned regarding his state of mind and knowledge concerning trends or uncertainties associated with Plaintiffs' Item 303 claims.</li><li>Khosrowshahi has unique knowledge regarding Uber's declining US "Category Position" ("CP"; a form of market share) and his strategic decisions to combat Lyft's share gains that were deliberately contrary to his "do the right thing" message in the Registration Statement. *See, e.g.*, **UBER_00610286** (email from Khosrowshahi stating ████████████████████ ████████████████████████████████████</li></ul> | |

**Summary Chart for Potential Apex Deponents**
*Boston Retirement System v. Uber Technologies, Inc.*, No. 3:19-cv-06361-RS (N.D. Cal.)

| Proposed Deponent | Plaintiffs' Basis for the Deposition | Uber Defendants: Good Cause for Precluding the Deposition |
|---|---|---|
| | ; **UBER_00068822** ▆▆▆▆▆▆▆▆▆▆ ▆▆▆▆▆▆▆▆▆ **Uber Technologies, Inc., SEC Form S-1 A (Apr. 26, 2019) at 12** ("We do the right thing. Period."). <br><br> • Khosrowshahi received key US&C regional data and metrics – which were generally omitted from the S-1. *See, e.g.,* **Ceremony Tr. 77:3 – 78:23** ("Strategic finance" circulated "top line summary emails," showing US CP to Khosrowshahi); **UBER_00050474** (Khosrowshahi asks Dennis Cinelli to provide MAPC metrics into the top line reports going forward); **Ceremony Tr. at 381:10-10** (same); **UBER_00279947** (US and Canada Business Update email example sent to Khosrowshahi); **UBER_00050640** ("Good update here - thanks. ▆▆▆▆▆▆▆▆▆▆ ▆▆▆▆▆▆ <br><br> • Khosrowshahi received financial reporting information indicating that losses were exceeding forecasts presented to the Board. *See, e.g.,* **UBER_00058481** (email stating, among other things, that ▆▆▆▆▆▆▆▆▆▆ ▆▆▆▆▆▆▆ <br><br> • ▆▆▆▆▆▆▆▆▆▆ *See* ▆▆▆▆ **UBER_00000364** ▆▆▆▆▆▆▆▆▆▆ ▆▆▆▆▆▆ <br><br> **Khosrowshahi has unique knowledge regarding Plaintiffs' driver misclassification claims:** <br><br> • *See, e.g.,* **UBER_00829490** (meeting invite sent by Khosrowshahi to Macdonald, Hazelbaker, and the Chief Legal Officer "to align on AB5 – exactly who does what/what the plan is."). | |

**Summary Chart for Potential Apex Deponents**
*Boston Retirement System v. Uber Technologies, Inc.*, No. 3:19-cv-06361-RS (N.D. Cal.)

| Proposed Deponent | Plaintiffs' Basis for the Deposition | Uber Defendants: Good Cause for Precluding the Deposition |
|---|---|---|
| | **Personalized facts and circumstances surrounding solicitation under Section 12(a)(2):** <br><br> • <u>Khosrowshahi personally attended numerous investor meetings either solely or with Chai</u>. *See, e.g.,* **UBER_00032845** (slide deck titled "Investor Meetings" listing "# of Times Met with Dara"); **UBER_00176392 at 6435** (meetings with top investors); **UBER_00032845 at 847** (chart of investor meetings attended before Uber's IPO, including meetings attended ***solely by Dara***); **UBER_00108307** ▮▮▮▮▮▮▮▮▮▮▮ <br><br> • <u>Khosrowshahi provided instructions on information that should be included in investor pitches that is relevant to our financial condition theory.</u> *See* **UBER_00070684** (email from Andrew Macdonald statin ▮▮▮▮▮ <br><br> **Khosrowshahi's state of mind as CODM is critical to Uber's Segment Reporting Defense:** <br><br> • <u>The segment information Khosrowshahi received and *whether he relied on it as CODM* is critical to whether Uber misled the SEC and whether regional data should have been disclosed in the S-1.</u> *See, e.g.,* **Uber_007200530 at 533** ▮▮▮▮▮ **; *id.* at 534** ▮▮▮▮▮ ***id.* at 535** *see also* **Ceremony Tr. at 112:12-18** ("the analysis is holistic and you look at all the information, including the regular meetings, the periodic meetings. And you have to determine, like, ultimately what is the chief operating decision maker doing? And that's through the nature of the meetings, the nature of the information that he has, the discussions at those meetings."); **at 118:14 – 119:3** ▮▮▮▮▮ | |

**Summary Chart for Potential Apex Deponents**
*Boston Retirement System v. Uber Technologies, Inc.*, No. 3:19-cv-06361-RS (N.D. Cal.)

| Proposed Deponent | Plaintiffs' Basis for the Deposition | Uber Defendants: Good Cause for Precluding the Deposition |
|---|---|---|
| | ███████████████████████████████████████<br><br>• Uber told the SEC that Khosrowshahi did not receive regional profitability information. *See* **Uber_00719950 at 952** ████████████████████████████████████████████████████████████████████████████████████████████████████████ *see also* ███ **Ceremony Tr. at 133:14 – 134:13** ██████████████████████████████████████████████████ **at 108:1-20** ███████████████████████████████.<br><br>• Khosrowshahi attended numerous meetings where key regional information was discussed, and received regional information. *See* **UBER_00324237-38** ████████████████████████████████ *See, e.g.*, **Ceremony Tr. 77:3 – 78:23** ("Strategic finance" circulated "top line summary emails," showing US CP to Khosrowshahi); **UBER_00050474** (Khosrowshahi asks Dennis Cinelli to provide MAPC metrics into the top line reports going forward); **Ceremony Tr. at 381:10-10** (same); **UBER_00279947** (US and Canada Business Update email sent to Khosrowshahi); **UBER_00050640** ("Good update here - thanks. ██████████████████ **UBER_00787321** (evidencing ████████████████████████████ | |

**Summary Chart for Potential Apex Deponents**
*Boston Retirement System v. Uber Technologies, Inc.*, No. 3:19-cv-06361-RS (N.D. Cal.)

| Proposed Deponent | Plaintiffs' Basis for the Deposition | Uber Defendants: Good Cause for Precluding the Deposition |
|---|---|---|
| | <ul><li>Khosrowshahi signed off on preferred reporting segments. *See* **UBER_00632897** ("Project IPO readiness - Dara updates . . . who has signed off that this is preferable? . . . Dara wants Rides, EATS, Other").</li><li>Khosrowshahi and Ron Sugar thought the segment reporting issue was critical in the IPO process. *See, e.g.,* **UBER_00626469** ██████████████ **UBER_00603832** (email from Ronald Sugar to Khosrowshahi stating ██████ Khosrowshahi responds by stating ██████.</li></ul>**Khosrowshahi was involved in key discussions concerning Uber's contribution margin metric (a misleading metric in S-1):**<ul><li>Khosrowshahi and Chai were given talking points for Uber's Roadshows that included the controversial contribution margin metric in the S-1, ████████████ **UBER_00051020**.</li><li>Khosrowshahi informed Ron Sugar of the ████████████ **UBER_00000530**.</li><li>Khosrowshahi requested COR breakdown for contribution margin discussion with investors – ████████████ **UBER_00050879**.</li><li>Khosrowshahi provided input on how investor slide deck should be presented along with presenting the biggest investor questions regarding Uber, such as "Ride Share Contribution Margin/Competitive Environment" and specific growth figures. **UBER_00050522**.</li><li>Khosrowshahi and Chai were given talking points for Uber's Roadshows that addressed, among other things, ████████████ *See* **UBER_00001685**.</li></ul> | |

**Summary Chart for Potential Apex Deponents**
*Boston Retirement System v. Uber Technologies, Inc.*, No. 3:19-cv-06361-RS (N.D. Cal.)

| Proposed Deponent | Plaintiffs' Basis for the Deposition | Uber Defendants: Good Cause for Precluding the Deposition |
|---|---|---|
| | Khosrowshahi was a member of the Final Draft Review Group for Uber's Safety Report: <br><br> • *See, e.g.*, **UBER_00593176 at 3185**; **Gibbons Tr. at 237:16 – 238:19** <br><br> **Steps Taken to Obtain Information Sought Through Less Intrusive Means** <br><br> • **Individual Interrogatories (First Set to Uber and Individual Defendants)** regarding litigation against the Company that commenced after the IPO, the identification of former and current employees that held responsibilities related to Plaintiffs' allegations, identification of all locations where Uber Rides and Uber Eats operates, information relating to Uber's settlement of passenger safety claims, communications with third-party analysts, ESI, and methods of communication. <br><br> • **Text Messages** – *Awaiting Production of Text Messages. Uber stated it would not produce before submission of this chart.* <br><br> • **Contention Interrogatories (Second Set)** Seeking Narrative and Documents Supporting Due Diligence – *Now Subject of Anticipated Motion to Compel.* <br><br> • **Requests for Admission** regarding methods of communication, document preservation and ESI, and awareness of litigation risks concerning IPO. <br><br> • **Requests for Production** (2 sets totaling 118 requests) regarding a range of topics such as IPO timing, actual and considered disclosures, communications with outsiders (including investors), due diligence, financial statements and documents, and other requests relating to Plaintiff's financial condition, passenger safety, illegal operations and New Day at Uber allegations. In response, Khorsowshahi produced 2,590 documents as a custodian. <br><br> • **Testimony of Glen Ceremony**. He does not have adequate knowledge of Board of Director communications at meetings. *See, e.g.*, **Ceremony Tr. at 60:5-6; 66:3-8** ("Q. Would you attend | |

**Summary Chart for Potential Apex Deponents**
*Boston Retirement System v. Uber Technologies, Inc.*, No. 3:19-cv-06361-RS (N.D. Cal.)

| Proposed Deponent | Plaintiffs' Basis for the Deposition | Uber Defendants: Good Cause for Precluding the Deposition |
|---|---|---|
| | board meetings? A. Only periodically."; "Q. Pre-IPO, did you attend any of the quarterly board of director meetings for 2018 or 2019? A. I can't recall. If I was called into a board meeting, it would be brief.") | |

- **Testimony of Glen Ceremony.** *See, e.g.*, **Ceremony Tr. at 136:20-24** ("My question to you is: Does Dara receive regional profitability information? . . . [Ceremony]: Yeah, I can say that it wouldn't surprise me if he periodically received that. . . ."); **151:11-16** ("Prior to this time, was Dara receiving Rides and Eats contribution margin reporting? . . . [Ceremony] Yeah, I don't recall. I would say based on the conclusion we got to, if he was receiving it, it was only on a periodic basis."); **324:15 – 325:3** ("So they're speaker notes that . . . could have been a statement from Dara Khosrowshahi, right? We don't know.· You weren't there. . . . [Ceremony]: Yeah. . ."); **347:15 – 349:6** ("Is it your understanding that [Khosrowshahi is] saying April and May because that's the IPO and the roadshow? . . . [Ceremony:] No, I don't. I don't know. There could be multiple reasons why. ***I can't get inside his head***. . . ."); **351:21 – 352:6** ("So focusing your attention on the email from Dara in response to Andrew Macdonald . . . Do you know what he's talking about? [Ceremony:] Not specifically. I'd be guessing, yeah.").

- **Testimony of Andrew Byrne.** *See, e.g.*, **Byrne Tr. at 91:15 – 92:1** ("Q. And you don't know who else would have been in that meeting that could describe the specific information that was presented to the board . . . and the senior management; correct? A. I would speculate that - - from personal capacity, I can speculate that other senior leaders within the company, i.e., Attorney West and Dara Khosrowshahi would have been present. . ."); **211:12-25** ("Q. And so you don't know if Dara modified these talking points in any way on that phone call; correct? A. I was not present on the phone call.  Q. And you don't know what specific words Dara used when conveying these talking points to Mike Brown; correct?  A.· ·Yeah, that's true."); **226:3-15** ("Q. And so what specific assurances did Dara provide Mike Brown during the conversation just between himself and Mike Brown regarding the changing government -- governance structures of the business?  A. I, obviously, am not clear on whether he provided any further detail to this e-mail."); **232:10-16** ("Q. What specifically ███████████ [Objection]. A. I don't know anything more than that was provided to him in the talking points."); **247:15-22** ("Q. So who specifically did Dara meet with in those locations?  A. I can't remember. I don't -- can't remember an exhaustive list of everyone

**Summary Chart for Potential Apex Deponents**
*Boston Retirement System v. Uber Technologies, Inc.*, No. 3:19-cv-06361-RS (N.D. Cal.)

| Proposed Deponent | Plaintiffs' Basis for the Deposition | Uber Defendants: Good Cause for Precluding the Deposition |
|---|---|---|
| | that Dara met, but I believe he met with a number of high-ranking senators who were critical to the passage of our bill. And I'm afraid I don't know the top media outlets."). <br><br> • **Testimony of Rebecca Messina**. *See, e.g.*, **Messina Tr. at 91:10 – 92:14** ("A. ███████ ███ Q. Do you know if Dara asked Jill to undertake this feedback? . . . A. No idea. . . . . Q. But presumably Dara would know? . . . A. I think."); **100:1 – 102:7** ("A. Let's move onto the eighth page of the transcript, 715214. Matt says in the fourth Slack, 'Undiscussable dinner guest list: Rebecca, Barney, Dara, Droege, Manik, Troy(!?), Nikki.' Do you have any idea what they are talking about here? . . . A. No, I don't remember a dinner."). <br><br> • **Testimony of Brad Rosenthal**. *See, e.g.*, **Rosenthal Tr. at 170:12-15** (Q. What meetings did Dara Khosrowshahi attend, where passenger safety was discussed, between January 2017 and May 2019? A. *I don't have a definitive answer for you*."); *id.* **at 172:3-13** ("Q. So were there any -- so for avoidance of doubt, were there any regularly scheduled recurring meetings during which -- attended by Dara Khosrowshahi -- during which Uber's business model and growth strategy were discussed between the time period of January 2017 and May 2019? A. My understanding is he attended some of the monthly business reviews. Q. Okay. Is that it? A. *I can't recall any of the other ones*. I would have to review the documents that we produced."). <br><br> • **Testimony of Catherine Gibbons**. *See* **Gibbons Tr. at 225:22 – 226:12** ("A. I see on June 11th, Jill says ███████ ███████████████████ Q. Do you know when he asked her that? A. I do not know. . ."); *see also id.* **at 239:2-5** ("So, do you have any insight into how the final draft review group made edits to the final draft? A. I do not"); *id.* **at 46:6 – 147:6** ("Q. And it notes that he will discuss his view of our readiness and timing for a potential IPO in 2019. Do you see that? A. I do see that. . . . Q. And do you know if the safety report came up in the discussion of IPO readiness over dinner? A. Not to my knowledge. Q. Who would know if the safety report came up over the IPO readiness discussion during the dinner of the board? . . . A. I do not know."). | |

**Summary Chart for Potential Apex Deponents**
*Boston Retirement System v. Uber Technologies, Inc., No. 3:19-cv-06361-RS (N.D. Cal.)*

| Proposed Deponent | Plaintiffs' Basis for the Deposition | Uber Defendants: Good Cause for Precluding the Deposition |
|---|---|---|
| **Nelson Chai** (CFO and Individual Defendant) | **Unique, First-Hand, Non-Repetitive Knowledge of Relevant Facts** <br><br>**Knowledge and conduct regarding contents of, and basis for, alleged misrepresentations, as well as steps taken for IPO-related due diligence:** <br><br>• <u>Chai should be questioned about his review of, and input regarding, the contents of the Registration Statement</u>. *See, e.g.,* **UBER 00043016** (signed the Registration Statement, certifying that he had "reasonable grounds to believe that it meets all of the requirements for filing on [SEC] Form S-1."); *see also* **UBER 00056542** (email from Chai to Emily Maher Reiter titled "Re: S-1 Draft" stating "please send me final"); **UBER 00177497** (S-1 signature page with Chai's signature); **Byrne Tr.** at 419:23-420:9 ("senior members of Uber's executive leadership reviewed the entire S-1 prospectus before it was filed with the SEC . . . our CEO [Khosrowshahi], *our CFO [Chai]*, and Jill Hazelbaker, and Tony West would be *the primary members who reviewed the document*"). <br><br>• <u>Chai was intimately involved in deciding how to disclose financials in the S-1</u>. *See* **UBER 00001139** (email from Chai stating: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮) <br><br>• <u>Chai participated in various due diligence calls – which not only pertain to his affirmative defense but also that of the Underwriter Defendants</u>. *See, e.g.,* **UBER_00321996** (due diligence call with Cooley titled "Ellis – Bringdown Due Diligence Call"); **UBER_00538719** (draft slide deck from due diligence call). <br><br>• <u>Chai reviewed and approved the IPO's cost model for driver equity</u>. *See* **UBER 00107678** ("[w]henever this is final (per Dara or Nelson or whoever has the D)….We also checked with Nelson offline to see whether his discounting idea was one he considering blocking or not, and he too confirmed it's not and that we're good to go with the plan."); *see also* **UBER 00829850** ("I don't want to front run your [Chai's] and Dara's decision on whether to do it"). | **Lack of First-Hand / Unique Knowledge Regarding Relevant Issues** <br><br>• Mr. Chai does not have unique, first-hand knowledge on relevant topics beyond the testimony covered in numerous Rule 30(b)(6) and individual depositions. <br><br>• The SAC lacks any individual allegations—let alone allegations of solicitation of stock purchases, financial misreporting or malfeasance—against Mr. Chai that would implicate any unique or first-hand knowledge that he might have. (*See* SAC ¶ 72 (alleging only that he served as Uber's CFO during the IPO and received an RSU award in connection with it).) <br><br>• Plaintiffs expressly "do[] not allege . . . that any of the Defendants acted with scienter or fraudulent intent." (SAC ¶¶ 353, 361; *see id.* ¶ 341.) <br><br>• Plaintiffs' examples establish Mr. Chai received information through reports and discussions with less senior members of management. <br><br>• The SAC lacks any allegation regarding reporting metrics such as breakdowns by geographic region and business segment, category position, and contribution margin, which were disclosed in the offering documents in any event. (*E.g.,* Dkt. No. 188-3 ("RS") at 3, 34, 98, F-31.) <br><br>• Mr. Chai had no unique knowledge as to those metrics. <br><br>• Due diligence is evaluated under an objective standard focused on the process undertaken and information received by an officer or director. |

**Summary Chart for Potential Apex Deponents**
*Boston Retirement System v. Uber Technologies, Inc.*, No. 3:19-cv-06361-RS (N.D. Cal.)

| Proposed Deponent | Plaintiffs' Basis for the Deposition | Uber Defendants: Good Cause for Precluding the Deposition |
|---|---|---|
| | **State of mind and knowledge of known trends or uncertainties for Item 303:**<br><br>• The evidence cited in the due diligence section above also supports the notion that Chai should be questioned regarding his state of mind and knowledge concerning trends or uncertainties associated with Plaintiffs' Item 303 claims.<br><br>• Chai finalized the "2019 Plan" – a budget implemented after he saw massive decelerating growth – and a budget aimed at decreasing headcount (i.e., layoffs) – both of which are highly relevant to Plaintiffs' financial condition theory. *See* **UBER_00368221** (email chain where Chai proposes ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮).<br><br>• Chai was informed that Uber was experiencing downward pressure on US Category Position ("CP"). *See* **UBER_00610286** (received email noting that Uber is experiencing downward pressure on US CP).<br><br>• Chai was aware of poor performance in regions not detailed enough in the S-1. *See* **Ceremony Tr. 77:3 – 78:23** ("Strategic finance" circulated "top line summary emails" to Chai).<br><br>• Chai received financial reporting information indicating that losses were exceeding forecasts presented to the Board. *See, e.g.,* **UBER_00058481** (email stating, among other things, that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.) | **Others Could Testify From a Similar Vantage Point**<br><br>• Knowledge of allegedly relevant topics (*e.g.*, Uber's financial condition, the company's business model and growth strategy, or the contents and preparation of the Offering Documents) can be investigated through Uber's 30(b)(6) and individual witnesses. For example:<br><br>○ Andrew Byrne (VP, Global Public Policy), who was deposed as Uber's 30(b)(6) witness concerning Uber's business model and growth strategy and also in his individual capacity, answered numerous questions relating to, among other things, the limited emails introduced which Mr. Chai received. (*See* Byrne Tr. at 309:1-315:25, 375:13-378:4.) Plaintiffs did not ask Mr. Byrne any questions about Mr. Chai.<br><br>○ Glen Ceremony (Chief Accounting Officer and Mr. Chai's direct report), who was deposed as Uber's 30(b)(6) witness concerning Uber's financial condition and also in his individual capacity, testified about:<br><br>▪ Meetings Mr. Chai attended or periodic reports he received regarding Uber's financial condition (*See* Ceremony Tr. at 61:22-66:2, 174:23-175:8, 263:12-287:5).<br><br>▪ Uber's process for creating, analyzing, and updating internal budgets and forecasts. (*See id.* at 60:10-61:21, 148:10-23 ("Plan generally refers to the budget for the year that's set for the year. Periodically, that would be updated midyear. The forecast is something that continuously gets updated each month."), 181:9-184:8, 212:10-213:8, 220:16-221:15 ("I think of forecasts as a week later it could be different. So if a week later it was different, it doesn't mean it's inaccurate; it means |

**Summary Chart for Potential Apex Deponents**
*Boston Retirement System v. Uber Technologies, Inc.*, No. 3:19-cv-06361-RS (N.D. Cal.)

| Proposed Deponent | Plaintiffs' Basis for the Deposition | Uber Defendants: Good Cause for Precluding the Deposition |
|---|---|---|
| | • <u>Khosrowshahi and Chai were aware that pre-IPO investors were concerned about ridesharing bookings growth deceleration and were given talking points to address these concerns.</u> *See* **UBER 00050974** ("one specific question that has come up a couple times post meetings is around ridesharing bookings growth deceleration").<br><br>**Personalized facts and circumstances surrounding solicitation under Section 12(a)(2):**<br><br>• <u>Chai personally attended numerous investor meetings before Uber's IPO, sometimes alone.</u> *See, e.g.,* **UBER 00032845 at 847** (chart of investor meeting attended before Uber's IPO including meetings *only Chai attended*); **UBER_00176392 at 6435** (Chai attended meetings with top investors).<br><br>**Chai was intimately involved in Uber's IPO-related strategy, including key metric disclosures:**<br><br>• <u>The decision as to how Uber would go public ultimately resided with Chai.</u> *See* **UBER 00238845** ("The Decision here is ultimately with Nelson. . . .").<br><br>• <u>Chai knew that Uber's corporate culture remained a major problem at the time of the IPO, but that the "inertia to get public was too far along" to "fix the company and then go public."</u> *See* **UBER 00626598** ▮▮▮▮▮▮▮▮▮<br><br>• <u>Chai was personally involved in key communications regarding Uber's financial well-being.</u> *See* **UBER 00238801** (email from Sujoy Haldar to Chai stating: ▮▮▮▮ . | your forecast was updated."), 280:3-17, 303:21-306:13, 370:13-371:2.)<br><br>▪ The disclosure of financial information, including Q1 2019 "flash numbers," in the S-1. (*See id.* at 90:24-91:10 ("[T]hrough the preparation of the registration statement there were a host of various discussions related to making sure we had full disclosure, full and complete disclosure, related to those non-GAAP measures and operating metrics. So there was a complete kind of transparency what they meant, down to definitions and the reconciliations we talked about."), 143:11-21, 184:19-185:1, 198:8-205:13 ("[T]he flash numbers were elective disclosure. We wanted to be transparent with investors if we had enough comfort to disclose what we thought Q1 was going to be resulting in financially . . . .").)<br><br>▪ The limited emails introduced which Mr. Chai received. (*See id.* at 344:5-360:10.)<br><br>▪ Plaintiffs did not ask Mr. Ceremony any questions about Uber's driver equity program in the IPO even though he was designated as Uber's 30(b)(6) witness on the company's financial condition, including how one-time losses related to the program were calculated and recorded.<br><br>○ Emily Reuter (Head of Corporate Finance) is Mr. Chai's direct report and is designated to testify as Uber's 30(b)(6) representative regarding, among other things, meetings of the Board and management regarding the IPO, Uber's retention of the underwriters and participation in their diligence, Uber's roadshow, Uber's communications with investors in the six months prior to the IPO, and the timing of the IPO. |

**Summary Chart for Potential Apex Deponents**
*Boston Retirement System v. Uber Technologies, Inc.*, No. 3:19-cv-06361-RS (N.D. Cal.)

| Proposed Deponent | Plaintiffs' Basis for the Deposition | Uber Defendants: Good Cause for Precluding the Deposition |
|---|---|---|
| | <ul><li>Chai was a member of the Steering Committee that oversaw Uber's "Overall IPO Readiness and Strategy." *See* **UBER 00541430** (slide deck titled "IPO Readiness Overview to Strategic Finance" listing Chai as member of "Steering Committee" to oversee "Project OM and PMO: Overall IPO Readiness and Strategy").</li><li>Chai led the Company's IPO team. *See* **Messina Tr. at 160:25 – 161:2** ("Q. Who - - who led the IPO team, if your remember? . . . A. I believe Nelson's team.").</li><li>Chai discussed IPO strategy and planning with the Executive Leadership Team ("ELT"). *See* **UBER 00164981** (ELT Meeting notes dated 12/11/18, stating "IPO (Nelson)[:] Nelson wants to have a banker come in and talk to the ELT about IPO readiness in 2019.").</li><li>Khosrowshahi, Chai, and the Board discussed IPO readiness over dinner. *See* **UBER 00670298 at 301** ("IPO Readiness: Nelson will discuss his view of ███████████████████████ We will discuss over dinner.").</li></ul>**Chai was responsible for managing the budget and making key decisions regarding spending and cost-related issues (including those relevant to Plaintiffs' claims):**<ul><li>Chai was responsible for managing Uber's budget and return on investment (ROI), both of which are relevant to Plaintiffs' financial condition theory (*i.e.*, marketing spend and efficiencies). *See, e.g.*, **UBER_00720530** ("Nelson is responsible for managing the budget, and questioning certain spend or costs."); **UBER_00238782** (email from Chai directing that spending budget be cut "in half" to "improve contribution in 2019"); **Ceremony Tr. at 124:12 – 125:2** ("Nelson is responsible for the managing the budget and questions concerning spend or costs"); **Messina Tr. at 156:15 – 157:1** ("Whose responsibility was it to measure ROI and</li></ul> | <ul><li>Matt Kallman (VP and Global Head, Communications) is designated to testify as Uber's 30(b)(6) representative regarding, among other things, Uber's post-IPO layoffs.</li><li>Plaintiffs could have, but have not sought to, depose:<ul><li>Francois Chadwick (VP for Tax & Accounting at IPO), who reported to Mr. Chai directly and could testify knowledgeably about Uber's financial condition.</li><li>Dennis Cinelli (former Head of Strategic Finance), who was Mr. Chai's direct report and intimately involved in most decisions Mr. Chai made. (*See, e.g.*, UBER 00368221 ("████████████████████; Ceremony Tr. at 78:3-23 (Mr. Cinelli would circulate monthly business metric reports to "Dara, the CEO; Nelson, the CFO; other business leaders at the time that headed up the different divisions of the company.").)</li></ul></li></ul>**Specific Prejudice or Harm From the Deposition**<ul><li>As a member of Uber's Executive Leader Team ("ELT"), Mr. Chai has important and time-consuming responsibilities for the company's day-to-day operations and decision making.</li><li>Mr. Chai plans to leave Uber effective January 5, 2024. Requiring him to prepare for and attend an unnecessary deposition would take him away from the important work of transitioning his role as CFO to a successor.</li></ul> |

**Summary Chart for Potential Apex Deponents**
*Boston Retirement System v. Uber Technologies, Inc.*, No. 3:19-cv-06361-RS (N.D. Cal.)

| Proposed Deponent | Plaintiffs' Basis for the Deposition | Uber Defendants: Good Cause for Precluding the Deposition |
|---|---|---|
| | marketing spend?  A. Well, I was obviously very involved…..Q. Is it fair to say that Nelson Chai was very involved in that?  A. Yes.").<br><br>• <u>Chai presented on cost savings and financial discipline as the Company prepared for the IPO, including information relevant to Plaintiffs' theory regarding marketing layoffs.</u> *See* **UBER  00046418 at 423-425** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮<br><br>• <u>Chai acknowledged that safety marketing budget was constrained.</u>  *See* **UBER  00510964** (Hazelbaker to Nelson Chai▮ ▮▮▮▮▮▮▮ Chai's response▮ ▮▮▮▮▮▮▮<br><br>• <u>Chai acknowledged that Uber's</u> ▮▮▮▮▮▮▮ ▮▮▮**" UBER  00107937**.<br><br>**Segment Reporting:**<br><br>• <u>Chai has personal knowledge of Uber's decision to change its segment reporting approach after the IPO to one that "improves transparency and will help investors track the progress of our growth strategy."</u> *See* **UBER  00641381 at 388**. | |

**Summary Chart for Potential Apex Deponents**
*Boston Retirement System v. Uber Technologies, Inc.*, No. 3:19-cv-06361-RS (N.D. Cal.)

| Proposed Deponent | Plaintiffs' Basis for the Deposition | Uber Defendants: Good Cause for Precluding the Deposition |
|---|---|---|
|  | **Flash Number Usage:**<br><br>• <u>Chai was responsible for decision to use Q'1 2019 flash numbers (i.e., preliminary summary level financial statement) for the IPO against the recommendation of Morgan Stanley's Michael Grimes.</u> *See, e.g.,* **UBER 00719950** (email chain between Emily Reuter and Dennis Cinelli titled "Contribution Margin Rider – To Include in Flash – Invitation to edit" ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ **UBER 00176390** (Reuter to Chai: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮<br><br>• <u>Chai nonetheless reviewed and signed a CFO certificate in connection with the S-1, which was provided to the Underwriter Defendants in connection with their due diligence efforts concerning "gross bookings, trips, MAPCs, the Q1'19 flash results and certain quarterly non-GAAP measure reconciliation that PwC will not be comforting as part of their comfort letter."</u> **UBER 00605504-507**.<br><br>**Contribution Margin:**<br><br>• <u>Chai was the architect behind the controversial contribution margin range metric disclosed in the S-1.</u> **UBER 00719950.** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.<br><br>• <u>Khosrowshahi and Chai were given talking points for the Roadshow that included the controversial contribution margin metric in the S-1 which failed to disclose United States & Canada as the -10%, among other things.</u> *See* **UBER 00051020**. |  |

**Summary Chart for Potential Apex Deponents**
*Boston Retirement System v. Uber Technologies, Inc.*, No. 3:19-cv-06361-RS (N.D. Cal.)

| Proposed Deponent | Plaintiffs' Basis for the Deposition | Uber Defendants: Good Cause for Precluding the Deposition |
|---|---|---|
| | <ul><li>Chai's remarks to investors during the roadshow on contribution margin ranges on the high end (~54%) caused commentary that ███████████████████ *See* **UBER_00001644**.</li></ul><br><ul><li>Khosrowshahi and Chai were given talking points for Uber's Roadshows that addressed, among other things, ███████ **UBER_00001685**.</li></ul><br>**Chai had prior relationships with the Underwriter Defendants – a relevant factor against Underwriter Defendants' Due Diligence Defense.**<br><ul><li>*See* **UBER_00032841** (Sydney Meheula to Emily Maher, stating: "Running list of our banking relationships here <Google Doc Link> - I can give you a more thorough run-through of these relationships at a later time, however Nelson will also have a strong view here given his existing relationships from his former roles.").</li></ul>**Chai was involved in strategic decisions regarding guidance disclosures and combating competition:**<br><ul><li>Chai was involved in discussions regarding guidance on Uber's projections. *See* **UWS-UBER-00092422** (email from Kate Claassen, stating: ███████)</li></ul><br><ul><li>Chai was involved in discussions regarding the Company's strategy for combating competition. *See* **UBER_00107517** (email from Chai: ███████████)</li></ul> | |

**Summary Chart for Potential Apex Deponents**
*Boston Retirement System v. Uber Technologies, Inc.*, No. 3:19-cv-06361-RS (N.D. Cal.)

| Proposed Deponent | Plaintiffs' Basis for the Deposition | Uber Defendants: Good Cause for Precluding the Deposition |
|---|---|---|
| | **Chai was a member of the Final Draft Review Group for Uber's Safety Report:** | |
| | • *See* **UBER 00593176 at 3185**; *see also* **Gibbons Tr. at 237:16 – 238:19**. | |
| | **Steps Taken to Obtain Information Sought Through Less Intrusive Means** | |
| | • **Individual Interrogatories (First Set to Uber and Individual Defendants)** regarding litigation against the Company that commenced after the IPO, the identification of former and current employees that held responsibilities related to Plaintiffs' allegations, identification of all locations where Uber Rides and Uber Eats operates, information relating to Uber's settlement of passenger safety claims, communications with third-party analysts, ESI, and methods of communication. | |
| | • **Text Messages** – Awaiting Production of Text Messages. Uber stated it would not produce before submission of this chart. | |
| | • **Contention Interrogatories (Second Set)** Seeking Narrative and Documents Supporting Due Diligence – Now Subject of Anticipated Motion to Compel. | |
| | • **Requests for Admission** regarding methods of communication, document preservation and ESI, and awareness of litigation risks concerning IPO. | |
| | • **Requests for Production** (2 sets totaling 118 requests) regarding a range of topics such as IPO timing, actual and considered disclosures, communications with outsiders (including investors), due diligence, financial statements and documents, and other requests relating to Plaintiff's financial condition, passenger safety, illegal operations and New Day at Uber allegations. In response, Chai produced 2,514 documents as a custodian. | |

**Summary Chart for Potential Apex Deponents**
*Boston Retirement System v. Uber Technologies, Inc.*, No. 3:19-cv-06361-RS (N.D. Cal.)

| Proposed Deponent | Plaintiffs' Basis for the Deposition | Uber Defendants: Good Cause for Precluding the Deposition |
|---|---|---|
| | • **Testimony of Glen Ceremony**. *See, e.g.*, **Ceremony Tr. at 146:4-15** ("Q. Do you recall whether there was a proposal about whether this contribution range to be put in the S-1 would be a one-time purpose kind of illustration?" A….I don't know if I should be guessing here."); **158:11-15** ("Q. But did Uber consider category position important to its business? A. Yeah. I couldn't say like a definitive on that. So I don't know."); **166:6-15** (does not know who receives reports for category position); **179:2-5** (does not know if considered disclosures existed for category position); **204:9-15** (does not know if discussions on IPO timing and use of flash numbers occurred); **213:2-13; 227:23-228:1; 235:21-236:4; 257:17-22; 274:9-16; 284:2-14; 285:20-286:4; 291:3-14; 320:16-21; 389:24-390:10; 403:16-21** (does not know what certain data means within the forecasts, plans and actuals presented as exhibits and otherwise was not knowledgeable on strategic finance or other departments knowledgeable about growth trends). <br><br> • **Testimony of Brad Rosenthal**. *See, e.g.*, **Rosenthal Tr. at 179:19-23** ("Q. Are you aware of any recurring meetings attended by Nelson Chair related to passenger safety between January 2017 and May of 2019? A. *I don't know if he attended regular meetings regarding passenger safety*."); *id.* **at 180:11-21** ("Q. Do you know if Nelson Chai attended any meetings concerning Uber's business model, and recurring meetings concerning Uber's business model, between January of 2017 and May of 2019? A. Well, there were regular board meeting to discuss, among other things, the business model broadly. Nelson was a member – was a participant in the board meetings. Q. Any other meeting besides board meetings? A. *There may have been. I'm not sure*."). <br><br> • **Testimony of Catherine Gibbons**. *See* **Gibbons Tr. at 239:2-5** ("So, do you have any insight into how the final draft review group made edits to the final draft? A. I do not"); *id.* **at 146:6 – 147:6** ("Q. And it notes that he will discuss his view of our readiness and timing for a potential IPO in 2019. Do you see that? A. I do see that. . . . Q. And do you know if the safety report came up in the discussion of IPO readiness over dinner? A. Not to my knowledge. Q. Who | |

**Summary Chart for Potential Apex Deponents**
*Boston Retirement System v. Uber Technologies, Inc.*, No. 3:19-cv-06361-RS (N.D. Cal.)

| Proposed Deponent | Plaintiffs' Basis for the Deposition | Uber Defendants: Good Cause for Precluding the Deposition |
|---|---|---|
| | would know if the safety report came up over the IPO readiness discussion during the dinner of the board? . . . A. I do not know."). | |
| **Ronald Sugar** (Chairman of Board and Individual Defendant) | **Unique, First-Hand, Non-Repetitive Knowledge of Relevant Facts** <br><br> Plaintiffs must be allowed to examine Sugar regarding the purported basis for the alleged misrepresentations in the Registration Statement, as well as the conduct and knowledge supporting his asserted "due diligence" defense: <br><br> • Sugar signed the Registration Statement, certifying that he had "reasonable grounds to believe that it meets all of the requirements for filing on [SEC] Form S-1." *See* **UBER_00043016.** <br><br> • Sugar is the only person who can testify regarding the conduct and knowledge supporting his affirmative "due diligence" defense, which contends that Sugar, individually, "exercised due diligence and, *after reasonable investigation*, had reasonable ground to believe and did believe that the purported misstatements and/or omissions . . . were true and that there was no omission to state a material fact required to be stated therein or necessary to make the statements therein not misleading . . ." *See* ECF 174 at 71, Affirmative Defense No. 12. <br><br> **Sugar was intimately involved in numerous matters regarding Uber's IPO Strategy:** <br><br> • Sugar held private, off-board meetings and engaged in on-on-one email communications with Khosrowshahi regarding IPO strategy. *See, e.g.,* **UBER_00206833** (email from Ronald Sugar to Khosrowshahi, stating: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ **UBER_00000090** (email from Khosrowshahi to Sugar, stating ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮). | **Lack of First-Hand / Unique Knowledge Regarding Relevant Issues** <br><br> • Mr. Sugar is one of 11 non-executive members of Uber's Board (the "Outside Directors"), each of whom Plaintiffs seek to depose. <br><br> • Plaintiffs expressly "do[] not allege . . . that any of the Defendants acted with scienter or fraudulent intent." (SAC ¶¶ 353, 361; *see id.* ¶ 341.) <br><br> • Plaintiffs' examples establish the Outside Directors relied on management, reports and documents from management, and their discussions with management at Board meetings in fulfilling their duties. <br><br> ○ For example, Plaintiffs cite to an email from Mr. Sugar to Mr. Khosrowshahi (UBER_00626469) purportedly showing Mr. Sugar's intimate knowledge when in fact Mr. Sugar merely forwarded and commented on an email sent to a number of other witnesses whom Plaintiffs have deposed (Glen Ceremony), will depose (Matt Kallman and Emily Reuter), or could have sought to depose (Dennis Cinelli) (*see id.*). <br><br> • Plaintiffs can investigate issues discussed at Board meetings from produced minutes and 30(b)(6) deponents: Andrew Byrne, Glen Ceremony, Catherine Gibbons, Matt Kallman, and Emily Reuter. |

**Summary Chart for Potential Apex Deponents**
*Boston Retirement System v. Uber Technologies, Inc.*, No. 3:19-cv-06361-RS (N.D. Cal.)

| Proposed Deponent | Plaintiffs' Basis for the Deposition | Uber Defendants: Good Cause for Precluding the Deposition |
|---|---|---|
| | • Sugar has intimate knowledge of the SEC's concerns regarding Uber's Segment Reporting approach. *See, e.g.,* **UBER_00626469** (email from Sugar to Khosrowshahi, stating: ██████████; **UBER_00603832** (email from Sugar to Khosrowshahi, stating: ██████ Khosrowshahi responds by stating ██████; **UBER_00090700** (Sugar received highly confidential information ██████████<br><br>• Khosrowshahi informed Sugar of the ██████████ **UBER_00000530**.<br><br>• Sugar was one of three members for Uber's Pricing Committee – the only ones with authority to decide, among other things, "range of offering price," "final offering price," "Final S-1 registration statement," and the "underwriting agreement." *See* **UBER_IPO_00003807 at 3819 and 3489**; *see also* **UBER_00198371 at 375** ("Full authority related to IPO matters to be delegated to Pricing Committee after formation"); **UBER_00035977 at 5985** ("Pricing Committees should generally be small and nimble enough to hold calls/meetings on short notice ██████████ **UBER_00411097** (Sugar received "Valuation and Filing Range" materials on the eve of the IPO, which provided the calculations and bases for the potential IPO price range).<br><br>• As the IPO neared, Sugar chaired the Pricing Committee of the Board of Directors. *See* **UWS-TPG-UBER-00001549**. | • Item 303 concerns disclosures of "material events and uncertainties known *to management*" collectively. 17 C.F.R. § 229.303 (emphasis added).<br>• Due diligence is evaluated under an objective standard focused on the process undertaken and information received by an officer or director.<br><br>**Others Could Testify From a Similar Vantage Point**<br><br>• Plaintiffs may examine the information provided to and discussed with the Outside Directors through the documents provided to the Outside Directors and executed by them, as well as by deposing Uber's 30(b)(6) witnesses designated to speak on topics including the contents of the Offering Documents, Uber's IPO, including the Board's consideration of and decision relating to the IPO, and the Board's meetings concerning the IPO.<br>• Other fact witnesses, such as Glen Ceremony, Francois Chadwick, Dennis Cinelli, Barney Harford, and Emily Reuter, have knowledge of Board reporting and discussions relating to the IPO.<br>• Uber's Chief Accounting Officer Glen Ceremony, one of Uber's 30(b)(6) witnesses, has already testified about the Board's and Audit Committee's process for reviewing and approving the company's financials, including in connection with the IPO Offering Documents. (*See, e.g.,* Ceremony Tr. at 67:1-70:5; 73:25-76:4.)<br>○ Plaintiffs did not ask Mr. Ceremony any specific questions about discussions with or actions taken by any of the Outside Directors, except Mr. Kalanick. (*See id.* at 111:7-116:14; 393:8-394:6.) |

**Summary Chart for Potential Apex Deponents**
*Boston Retirement System v. Uber Technologies, Inc.*, No. 3:19-cv-06361-RS (N.D. Cal.)

| Proposed Deponent | Plaintiffs' Basis for the Deposition | Uber Defendants: Good Cause for Precluding the Deposition |
|---|---|---|
| | Sugar has unique knowledge regarding the factual bases underlying Plaintiffs' claims, including the undisclosed known trends and uncertainties supporting Plaintiffs' Item 303 claims:<br><br>• <u>The evidence cited in the due diligence section above also supports the notion that Sugar should be questioned regarding his state of mind and knowledge concerning trends or uncertainties associated with Plaintiffs' Item 303 claims.</u><br><br>• <u>Sugar was appointed as Chairperson of the Board on July 17, 2018.</u> *See* **UBER_00024833**.<br><br>• <u>As Chairman of the Board, Sugar received Board of Directors agendas and materials and regularly attended Board Committee meetings.</u> *See, e.g.*, **UBER_00024856** (2018-10-29, Board of Director Minutes); **UBER_00026383** (2018-12-28, Telephonic Board of Directors Meeting Minutes); **UBER_00026383** (2019-01-28 & 29 Board of Directors and Board Committee Meetings Agendas); UBER_00046336 (2019-03-29 Board of Directors agenda); **Byrne Tr. at 434:6-12** ("I believe that the board would have been kept appraised of key issues around Uber's business strategy, business model, and growth strategy in terms of the trends that we were seeing in -- across a number of our key markets, but only some of the most significant issues would have bubbled their way up to the board.").<br><br>• <u>Sugar had direct communications with Khosrowshahi concerning ongoing issues, general reporting on the other directors, and approving documents before they were sent to the Board.</u> *See, e.g.*, **UBER_00000146** (email from Sugar to Khosrowshahi, stating: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ **UBER_00313122** (email exchange between Sugar and Khosrowshahi outlining agenda topics, including: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮); **UBER_00206833** (email from Sugar Khosrowshahi outing ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *see also* **UBER_00000146**; **UBER_00064537**; **UBER_00091289**; **UBER_00091487**. | ○ Plaintiffs did not ask Mr. Ceremony any questions about the Pricing Committee even though he was also designated as Uber's 30(b)(6) witness on valuations considered and received by the Board.<br><br>• Plaintiffs are scheduled to depose Emily Reuter in her individual capacity and as a Rule 30(b)(6) witness. Ms. Reuter is currently VP of Corporate Finance and, at the time of the IPO, served as IPO Lead as well as Director of Corporate Development and Capital Markets. She will be able to testify knowledgeably about the IPO and due diligence process.<br><br>• Uber has identified thousands of documents demonstrating the Board's due diligence in response to Plaintiffs' interrogatories.<br><br>**Specific Prejudice or Harm From the Deposition**<br><br>• Mr. Sugar serves in senior positions at several institutions, including as (i) Member of the Board of Directors of Amgen, Inc., (ii) Member of the Board of Directors of Apple Inc., (iii) Member of the Board of Directors of Chevron Corporation, (iv) Member of the Board of Directors of Uber, (v) Member of the Board of Trustees of the University of Southern California, (vi) Member of the Board of Visitors of the University of California, Los Angeles School of Management, (vii) Adviser to Ares Management LLC, (viii) Adviser to Bain & Company, and (ix) Adviser to Singapore's Temasek Investment Company. |

**Summary Chart for Potential Apex Deponents**
*Boston Retirement System v. Uber Technologies, Inc.*, No. 3:19-cv-06361-RS (N.D. Cal.)

| Proposed Deponent | Plaintiffs' Basis for the Deposition | Uber Defendants: Good Cause for Precluding the Deposition |
|---|---|---|
| | • <u>Sugar regularly informed of issues at Uber **before** the rest of the Board.</u>  *See, e.g.*, **UBER_00312900** (Khosrowshahi had been "updating Ron on these changes over the past weeks" and thereafter told the Board as to organizational changes.).<br><br>• <u>Sugar received direct communications from third-parties concerning corporate risks at Uber.</u> *See* **UBER_00188146** ▮▮▮▮ ); **UBER_00750427** (Uber asked Thain and Sugar to edit Uber's draft response letter to CtW). | |
| | **Steps Taken to Obtain Information Sought Through Less Intrusive Means** | |
| | • **Individual Interrogatories (First Set to Uber and Individual Defendants)** regarding litigation against the Company that commenced after the IPO, the identification of former and current employees that held responsibilities related to Plaintiffs' allegations, identification of all locations where Uber Rides and Uber Eats operates, information relating to Uber's settlement of passenger safety claims, communications with third-party analysts, ESI, and methods of communication.<br><br>• **Text Messages** – *Awaiting Production of Text Messages. Uber stated it would not produce before submission of this chart.*<br><br>• **Contention Interrogatories (Second Set)** Seeking Narrative and Documents Supporting Due Diligence Defense—Now Subject of Anticipated Motion to Compel.<br><br>• **Requests for Admission** regarding methods of communication, document preservation and ESI, and awareness of litigation risks concerning IPO.<br><br>• **Requests for Production** (2 sets totaling 118 requests) regarding a range of topics such as IPO timing, actual and considered disclosures, communications with outsiders (including investors), | |

**Summary Chart for Potential Apex Deponents**
*Boston Retirement System v. Uber Technologies, Inc.*, No. 3:19-cv-06361-RS (N.D. Cal.)

| Proposed Deponent | Plaintiffs' Basis for the Deposition | Uber Defendants: Good Cause for Precluding the Deposition |
|---|---|---|
| | due diligence, financial statements and documents, and other requests relating to Plaintiff's financial condition, passenger safety, illegal operations and New Day at Uber allegations. In response, Sugar produced 251 documents as a custodian.<br><br>• **Testimony of Andrew Byrne**. *See, e.g.*, **Byrne Tr. at 360:19-23** ("Q. Do you know if these materials were ever provided to members of the board in connection with the IPO process? A. I'm afraid I don't know that but I would consider it unlikely."); **397:9-20** ("Q. Did Uber's board of directors convene any meetings where the specific contents of Uber's offering documents were discussed? [Objection] A. Not as far as I'm aware. Q.  Did Uber's board of directors receive any reports or analyses regarding Uber's business model and growth strategy in connection with the preparation of the offering materials for Uber's IPO? A. I do not believe so."); **433:2-9** ("Q. Can you describe the process by which the members of the IPO drafting team kept the board apprised of the work that it conducted in connection with preparing the S-1? A. I believe that the members of the core IPO drafting team had regular meetings with the board to discuss their progress on key points of drafting the materials.").<br><br>• **Testimony of Glen Ceremony**. He does not have adequate knowledge of Board of Director communications at meetings. *See, e.g.*, **Ceremony Tr.** at **60:5-6; 66:3-8** ("Q. Would you attend board meetings? A. Only periodically."; "Q. Pre-IPO, did you attend any of the quarterly board of director meetings for 2018 or 2019? A. I can't recall. If I was called into a board meeting, it would be brief."). | |

**Summary Chart for Potential Apex Deponents**
*Boston Retirement System v. Uber Technologies, Inc.*, No. 3:19-cv-06361-RS (N.D. Cal.)

| Proposed Deponent | Plaintiffs' Basis for the Deposition | Uber Defendants: Good Cause for Precluding the Deposition |
|---|---|---|
| **Ursula Burns** (Member of Board and Individual Defendant) | **Unique, First-Hand, Non-Repetitive Knowledge of Relevant Facts**<br><br>Plaintiffs must be allowed to examine Burns regarding the purported basis for the alleged misrepresentations in the Registration Statement, as well as the conduct and knowledge supporting her asserted "due diligence" defense:<br><br>• Burns signed the Registration Statement, certifying that she had "reasonable grounds to believe that it meets all of the requirements for filing on [SEC] Form S-1." *See* **UBER_00043016.**<br><br>• Burns is the only person who can testify regarding the conduct and knowledge supporting his affirmative "due diligence" defense, which contends that Burns, individually, "exercised due diligence and, *after reasonable investigation*, had reasonable ground to believe and did believe that the purported misstatements and/or omissions . . . were true and that there was no omission to state a material fact required to be stated therein or necessary to make the statements therein not misleading . . ." *See* ECF 174 at 71, Affirmative Defense No. 12.<br><br>Burns has unique knowledge regarding the factual bases underlying Plaintiffs' claims, including the undisclosed known trends and uncertainties supporting Plaintiffs' Item 303 claims:<br><br>• The evidence cited in the due diligence section above also supports the notion that Burns should be questioned regarding her state of mind and knowledge concerning trends or uncertainties associated with Plaintiffs' Item 303 claims.<br><br>• Burns attended an Audit Committee meeting January 28, 2019, which presented an "Enterprise Risk Assessment" showing undisclosed trends. *See* **UBER_00028931** (Audit Committee Agenda and Materials); *see also* **UBER_00029156** (2019-04-22, Audit Committee material showin ▮▮▮▮▮▮▮ ▮▮▮▮▮ being presented to the Audit Committee).<br><br>• "Members of the [Audit] Committee asked questions, and discussion ensued" about Uber's IPO. *See* **UBER_00578887** (January 28, 2019 Minutes of Meeting of the Audit Committee including a Financial Update, Accounting Update, Tax Update, Internal Audit) Update). | **Lack of First-Hand / Unique Knowledge Regarding Relevant Issues**<br><br>• Ms. Burns is one of 11 Outside Directors, each of whom Plaintiffs seek to depose.<br><br>• Plaintiffs expressly "do[] not allege . . . that any of the Defendants acted with scienter or fraudulent intent." (SAC ¶¶ 353, 361; *see id.* ¶ 341.)<br><br>• Plaintiffs' examples establish the Outside Directors relied on management, reports and documents from management, and their discussions with management at Board meetings in fulfilling their duties.<br><br>• Plaintiffs can investigate issues discussed at Board meetings from produced minutes and 30(b)(6) deponents: Andrew Byrne, Glen Ceremony, Catherine Gibbons, Matt Kallman, and Emily Reuter.<br><br>• Item 303 concerns disclosures of "material events and uncertainties known *to management*" collectively. 17 C.F.R. § 229.303 (emphasis added).<br><br>• Due diligence is evaluated under an objective standard focused on the process undertaken and information received by an officer or director.<br><br>**Others Could Testify From a Similar Vantage Point**<br><br>• Plaintiffs may examine the information provided to and discussed with the Outside Directors through the documents provided to the Outside Directors and executed by them, as well as by deposing Uber's 30(b)(6) witnesses designated to speak on topics including the contents of the Offering Documents, Uber's IPO, including |

**Summary Chart for Potential Apex Deponents**
*Boston Retirement System v. Uber Technologies, Inc.*, No. 3:19-cv-06361-RS (N.D. Cal.)

| Proposed Deponent | Plaintiffs' Basis for the Deposition | Uber Defendants: Good Cause for Precluding the Deposition |
|---|---|---|
| | <ul><li>The Audit Committee was aware of outstanding high risks. *See* **UBER_00578887** (January 28, 2019 "The [Audit] Committee members requested that with respect to past due high risk action items, the owner of such item report to the Audit Committee"); *see also* **Uber Technologies, Inc., SEC Form S-1 A (Apr. 26, 2019) at 227**.</li><li>As an Audit Committee member, Burns was involved in the review and approval of the Company's response to SEC Comment letters, which included issues such as segment reporting and other relevant matters to Plaintiffs' financial condition claims. **UBER_00747880**.</li><li>Burns received Board of Directors agendas and materials pertaining to IPO readiness, S1, and safety. *See, e.g.*, **UBER_00024833**; **UBER_00024856** (2018-10-29, Board of Director Minutes); **UBER_00026383** (2018-12-28, Telephonic Board of Directors Meeting Minutes); **UBER_00026383** (2019-01-28 & 29 Board of Directors and Board Committee Meetings Agendas); **Byrne Tr. at 434:6-12** ("I believe that the board would have been kept appraised of key issues around Uber's business strategy, business model, and growth strategy in terms of the trends that we were seeing in -- across a number of our key markets, but only some of the most significant issues would have bubbled their way up to the board.").</li><li>Board of directors were kept informed of the ongoing issues at Uber. *See* **UBER_00226466** ("Coverage Highlights" including media reports regarding active issues at Uber).</li></ul> | the Board's consideration of and decision relating to the IPO, and the Board's meetings concerning the IPO.<br><br>• Other fact witnesses, such as Glen Ceremony, Francois Chadwick, Dennis Cinelli, Barney Harford, and Emily Reuter, have knowledge of Board reporting and discussions relating to the IPO.<br><br>• Uber's Chief Accounting Officer Glen Ceremony, as one of Uber's 30(b)(6) witnesses, has already testified about the Board's and Audit Committee's process for reviewing and approving the company's financials, including in connection with the IPO Offering Documents. (*See, e.g.*, Ceremony Tr. at 67:1-70:5; 73:25-76:4.)<br>○ Plaintiffs did not ask Mr. Ceremony any specific questions about discussions with or actions taken by any of the Outside Directors, except Mr. Kalanick. (*See* Ceremony Tr. at 111:7-116:14; 393:8-394:6.)<br><br>• Plaintiffs are scheduled to depose Emily Reuter in her individual capacity and as a Rule 30(b)(6) witness. Ms. Reuter is currently VP of Corporate Finance and, at the time of the IPO, served as IPO Lead as well as Director of Corporate Development and Capital Markets. She will be able to testify knowledgeably about the IPO and due diligence process.<br><br>• Uber has identified thousands of documents demonstrating the Board's due diligence in response to Plaintiffs' interrogatories. |
| | **Steps Taken to Obtain Information Sought Through Less Intrusive Means** | **Specific Prejudice or Harm From the Deposition** |
| | • **Individual Interrogatories (First Set to Uber and Individual Defendants)** regarding litigation against the Company that commenced after the IPO, the identification of former and current employees that held responsibilities related to Plaintiffs' allegations, identification of all locations where Uber Rides and Uber Eats operates, information relating to Uber's settlement of passenger safety claims, communications with third-party analysts, ESI, and methods of communication. | • Ms. Burns serves in senior positions at several institutions, including as (i) Co-founder of Integrum Holdings LP and Member of its Investment Committee, (ii) Member of the Board of Directors of Endeavor Group Holdings, Inc., (iii) Member of the Board of Directors of Exxon Mobil Corporation, (iv) Member of |

**Summary Chart for Potential Apex Deponents**
*Boston Retirement System v. Uber Technologies, Inc.*, No. 3:19-cv-06361-RS (N.D. Cal.)

| Proposed Deponent | Plaintiffs' Basis for the Deposition | Uber Defendants: Good Cause for Precluding the Deposition |
|---|---|---|
| | • **Text Messages** – *Awaiting Production of Text Messages. Uber stated it would not produce before submission of this chart.*<br><br>• **Contention Interrogatories (Second Set)** Seeking Narrative and Documents Supporting Due Diligence Defense—*Now Subject of Anticipated Motion to Compel.*<br><br>• **Requests for Admission** regarding methods of communication, document preservation and ESI, awareness of litigation risk concerning IPO.<br><br>• **Requests for Production** (2 sets totaling 118 requests) regarding a range of topics such as IPO timing, actual and considered disclosures, communications with outsiders (including investors), due diligence, financial statements and documents, and other requests relating to Plaintiff's financial condition, passenger safety, illegal operations and New Day at Uber allegations. In response, Burns produced 120 documents as a custodian.<br><br>• **Testimony of Andrew Byrne**. *See, e.g.*, **Byrne Tr. at 360:19-23** ("Q. Do you know if these materials were ever provided to members of the board in connection with the IPO process? A. I'm afraid I don't know that but I would consider it unlikely."); **397:9-20** ("Q. Did Uber's board of directors convene any meetings where the specific contents of Uber's offering documents were discussed? [Objection] A. Not as far as I'm aware. Q. Did Uber's board of directors receive any reports or analyses regarding Uber's business model and growth strategy in connection with the preparation of the offering materials for Uber's IPO? A. I do not believe so."); **433:2-9** ("Q. Can you describe the process by which the members of the IPO drafting team kept the board apprised of the work that it conducted in connection with preparing the S-1? A. I believe that the members of the core IPO drafting team had regular meetings with the board to discuss their progress on key points of drafting the materials.").<br><br>• **Testimony of Glen Ceremony**. He does not have adequate knowledge of Board of Director communications at meetings. *See, e.g.*, **Ceremony Tr.** at **60:5-6; 66:3-8** ("Q. Would you attend board meetings? A. Only periodically."; "Q. Pre-IPO, did you attend any of the quarterly board | the Board of Directors of I Holdings Limited, (v) Executive Chairwoman of the Board of Directors of Plum Acquisition Corp. I, and (vi) Member of the Board of Directors of Uber. |

**Summary Chart for Potential Apex Deponents**
*Boston Retirement System v. Uber Technologies, Inc.*, No. 3:19-cv-06361-RS (N.D. Cal.)

| Proposed Deponent | Plaintiffs' Basis for the Deposition | Uber Defendants: Good Cause for Precluding the Deposition |
|---|---|---|
| | of director meetings for 2018 or 2019? A. I can't recall. If I was called into a board meeting, it would be brief.") <br><br> • **Testimony of Glen Ceremony**. He does not have adequate knowledge of Board of Director communications at meetings. *See, e.g.*, **Ceremony Tr.** at **60:5-6; 66:3-8** ("Q. Would you attend board meetings? A. Only periodically."; "Q. Pre-IPO, did you attend any of the quarterly board of director meetings for 2018 or 2019? A. I can't recall. If I was called into a board meeting, it would be brief."). <br><br> • <u>**Testimony of Glen Ceremony**. Ceremony testified extensively to the knowledge and responsibility of the Audit Committee members as it relates to approval of regulatory filings including the "Management's Discussion and Analysis of Financial Condition and Results of Operations" section of the Registration Statement – where Plaintiff claims many misrepresentations and omissions occurred.</u> *See* **Ceremony Tr.** at **66:21-73:21**; at **73:13-21** ("Q. Is it your understanding they did that in preparation of the IPO? A. Well, there was a process of preparing the registration statement, and they were provided multiple copies along the way to review, and we reviewed those with them in various different meetings. Q. And that would include reviewing the MD&A section as well, correct? A. Yes, commenting, yeah, and highlighting different areas of the MD&A, yeah."). | |
| **Garrett Camp** (Co-founder, Member of Board, and Individual Defendant) | **Unique, First-Hand, Non-Repetitive Knowledge of Relevant Facts** <br><br> **Plaintiffs must be allowed to examine Camp regarding the purported basis for the alleged misrepresentations in the Registration Statement, as well as the conduct and knowledge supporting his asserted "due diligence" defense:** <br><br> • <u>Camp signed the Registration Statement, certifying that he had "reasonable grounds to believe that it meets all of the requirements for filing on [SEC] Form S-1."</u> *See* **UBER_00043016.** | **Lack of First-Hand / Unique Knowledge Regarding Relevant Issues** <br><br> • Mr. Camp is one of 11 Outside Directors, each of whom Plaintiffs seek to depose. <br><br> • Plaintiffs expressly "do[] not allege . . . that any of the Defendants acted with scienter or fraudulent intent."  (SAC ¶¶ 353, 361; *see id.* ¶ 341.) |

**Summary Chart for Potential Apex Deponents**
*Boston Retirement System v. Uber Technologies, Inc.*, No. 3:19-cv-06361-RS (N.D. Cal.)

| Proposed Deponent | Plaintiffs' Basis for the Deposition | Uber Defendants: Good Cause for Precluding the Deposition |
|---|---|---|
| | • Camp is the only person who can testify regarding the conduct and knowledge supporting his affirmative "due diligence" defense, which contends that Camp, individually, "exercised due diligence and, *after reasonable investigation*, had reasonable ground to believe and did believe that the purported misstatements and/or omissions . . . were true and that there was no omission to state a material fact required to be stated therein or necessary to make the statements therein not misleading . . ." *See* ECF 174 at 71, Affirmative Defense No. 12.<br><br>**Camp has unique knowledge regarding the factual bases underlying Plaintiffs' claims, including the undisclosed known trends and uncertainties supporting Plaintiffs' Item 303 claims:**<br><br>• The evidence cited in the due diligence section above also supports the notion that Camp should be questioned regarding his state of mind and knowledge concerning trends or uncertainties associated with Plaintiffs' Item 303 claims.<br><br>• Camp has been with Uber since its creation in 2009 and has firsthand knowledge of and beliefs about the risks of Uber's business and the strategies for managing those risks. *See, e.g.,* **https://medium.com/@gc/ubers-path-forward-b59ec9bd4ef6** (June 20, 2017 blog post by Garrett Camp, sharing thoughts on "how [Uber] got here, and a path forward.").<br><br>• As the Company's Co-Founder, former chairman, former Audit Committee member, and the owner of more than 4% of Uber's shares outstanding as of March 30, 2020, Camp was not a mere passive director. *See* **Uber Technologies, Inc., Proxy Statement** (Schedule 14A) (Mar. 30, 2023); *see also, e.g.,* **UBER_00267922** (requesting ROI on all driver and rider incentives broken down by market to determine "how much slower we would grow with lower incentives, and how much they would contribute to profitability" and so he was "well informed about the details as [the Board] make[s] decisions"); **UBER_00090603** (responding to weekly US & Canada Business update regarding category position, growth metrics, etc.); **UBER_00411201** (regarding Camp's membership on Audit Committee and knowledge of ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮; **UBER_00749913** (Slide Deck - Audit | • Although Mr. Camp co-founded Uber in 2009, Mr. Camp did not hold *any* operational role at Uber during the Relevant Time Period (Jan. 1, 2017 – Mar. 3, 2020).<br><br>• Plaintiffs' examples establish the Outside Directors relied on management, reports and documents from management, and their discussions with management at Board meetings in fulfilling their duties.<br><br>• Plaintiffs can investigate issues discussed at Board meetings from produced minutes and 30(b)(6) deponents: Andrew Byrne, Glen Ceremony, Catherine Gibbons, Matt Kallman, and Emily Reuter.<br><br>• Item 303 concerns disclosures of "material events and uncertainties known *to management*" collectively. 17 C.F.R. § 229.303 (emphasis added).<br><br>• Mr. Camp's ownership of Uber's shares is irrelevant to whether he in fact conducted reasonable due diligence.<br><br>• Due diligence is evaluated under an objective standard focused on the process undertaken and information received by an officer or director.<br><br>**Others Could Testify From a Similar Vantage Point**<br><br>• Plaintiffs may examine the information provided to and discussed with the Outside Directors through the documents provided to the Outside Directors and executed by them, as well as by deposing Uber's 30(b)(6) witnesses designated to speak on topics including the contents of the Offering Documents, Uber's IPO, including the Board's consideration of and decision relating to the IPO, and the Board's meetings concerning the IPO. |

**Summary Chart for Potential Apex Deponents**
*Boston Retirement System v. Uber Technologies, Inc.*, No. 3:19-cv-06361-RS (N.D. Cal.)

| Proposed Deponent | Plaintiffs' Basis for the Deposition | Uber Defendants: Good Cause for Precluding the Deposition |
|---|---|---|
| | Committee Meeting - 01.26.17.pdf); **UBER_00750267** (PricewaterhouseCoopers Report to Audit Committee of the Board of Directors dated March 26, 2017).<br><br>• Plaintiffs should be allowed to examine Camp regarding any potential bias he may have suffered in the due diligence process due to his close financial ties to the company.<br><br>• As Uber's Co-Founder and a long-time Board member, Camp has knowledge regarding the Company's risks, strategies, and misrepresentations since the Company's founding. *See, e.g.,* **UBER_00302013** (sole custodian on July 2017 presentation entitled "Summary of Key Insights on US Business & Competitive Strategy"); **UBER_00749836** (report detailing "increasingly complex regulatory regimes" encountered by Uber and extent of litigation matters in the United States).<br><br>• Ceremony testified extensively to the knowledge and responsibility of the Audit Committee members as it relates to approval of regulatory filings including the "Management's Discussion and Analysis of Financial Condition and Results of Operations" section of the Registration Statement – where Plaintiff claims many misrepresentations and omissions occurred. *See* Ceremony Tr. at 66:21-73:21; at 73:13-21 ("Q. Is it your understanding they did that in preparation of the IPO? A. Well, there was a process of preparing the registration statement, and they were provided multiple copies along the way to review, and we reviewed those with them in various different meetings. Q. And that would include reviewing the MD&A section as well, correct? A. Yes, commenting, yeah, and highlighting different areas of the MD&A, yeah.").<br><br>• Board of directors were kept informed of the ongoing issues at Uber. *See, e.g.,* **UBER_00226466** ("Coverage Highlights" including media reports regarding active issues at Uber).<br><br>• Camp received Board of Directors agendas and materials pertaining to IPO readiness, S-1, and safety. *See, e.g.,* **UBER_00024833**; **UBER_00024856** (2018-10-29, Board of Director | • Other fact witnesses, such as Glen Ceremony, Francois Chadwick, Dennis Cinelli, Barney Harford, and Emily Reuter, have knowledge of Board reporting and discussions relating to the IPO.<br><br>• Uber's Chief Accounting Officer Glen Ceremony, as one of Uber's 30(b)(6) witnesses, has already testified about the Board's and Audit Committee's process for reviewing and approving the company's financials, including in connection with the IPO Offering Documents. (*See, e.g.,* Ceremony Tr. at 67:1-70:5; 73:25-76:4.)<br><br>  ○ Plaintiffs did not ask Mr. Ceremony any specific questions about discussions with or actions taken by any of the Outside Directors, except Mr. Kalanick. (*See id.* at 111:7-116:14; 393:8-394:6.)<br><br>• Mr. Camp was not a member of the Audit Committee at the time of the IPO.<br><br>• Plaintiffs are scheduled to depose Emily Reuter in her individual capacity and as a Rule 30(b)(6) witness. Ms. Reuter is currently VP of Corporate Finance and, at the time of the IPO, served as IPO Lead as well as Director of Corporate Development and Capital Markets. She will be able to testify knowledgeably about the IPO and due diligence process.<br><br>• Uber has identified thousands of documents demonstrating the Board's due diligence in response to Plaintiffs' interrogatories.<br><br>**Specific Prejudice or Harm From the Deposition**<br><br>• Mr. Camp serves in senior positions at several institutions, including as (i) Founding Partner of EXPA, LLC, (ii) Founder of Camp.org, and (iii) Member of the Board of Directors of Aero Technologies, Inc. |

**Summary Chart for Potential Apex Deponents**
*Boston Retirement System v. Uber Technologies, Inc.*, No. 3:19-cv-06361-RS (N.D. Cal.)

| Proposed Deponent | Plaintiffs' Basis for the Deposition | Uber Defendants: Good Cause for Precluding the Deposition |
|---|---|---|
| | Minutes); **UBER_00026383** (2019-01-28 & 29 Board of Directors and Board Committee Meetings Agendas); **Byrne Tr. at 434:6-12** ("I believe that the board would have been kept appraised of key issues around Uber's business strategy, business model, and growth strategy in terms of the trends that we were seeing in -- across a number of our key markets, but only some of the most significant issues would have bubbled their way up to the board."). | |

<table>
<tr><td colspan="1"></td><td align="center"><b>Steps Taken to Obtain Information Sought Through Less Intrusive Means</b></td><td></td></tr>
</table>

- **Individual Interrogatories (First Set to Uber and Individual Defendants)** regarding litigation against the Company that commenced after the IPO, the identification of former and current employees that held responsibilities related to Plaintiffs' allegations, identification of all locations where Uber Rides and Uber Eats operates, information relating to Uber's settlement of passenger safety claims, communications with third-party analysts, ESI, and methods of communication.

- **Contention Interrogatories (Second Set)** Seeking Narrative and Documents Supporting Due Diligence – *Now Subject of Anticipated Motion to Compel*

- **Requests for Admission** regarding methods of communication, document preservation and ESI, awareness of litigation risk concerning IPO

- **Requests for Production** (2 sets totaling 118 requests) regarding a range of topics such as IPO timing, actual and considered disclosures, communications with outsiders (including investors), due diligence, financial statements and documents, and other requests relating to Plaintiff's financial condition, passenger safety, illegal operations and New Day at Uber allegations. In response, Camp produced 136 documents as a custodian.

- **Testimony of Andrew Byrne**. *See, e.g.,* **Byrne Tr. at 360:19-23** ("Q. Do you know if these materials were ever provided to members of the board in connection with the IPO process? A. I'm afraid I don't know that but I would consider it unlikely."); **397:9-20** ("Q. Did Uber's board

**Summary Chart for Potential Apex Deponents**
*Boston Retirement System v. Uber Technologies, Inc.*, No. 3:19-cv-06361-RS (N.D. Cal.)

| Proposed Deponent | Plaintiffs' Basis for the Deposition | Uber Defendants: Good Cause for Precluding the Deposition |
|---|---|---|
| | of directors convene any meetings where the specific contents of Uber's offering documents were discussed? [Objection] A. Not as far as I'm aware. Q. Did Uber's board of directors receive any reports or analyses regarding Uber's business model and growth strategy in connection with the preparation of the offering materials for Uber's IPO? A. I do not believe so."); **433:2-9** ("Q. Can you describe the process by which the members of the IPO drafting team kept the board apprised of the work that it conducted in connection with preparing the S-1? A. I believe that the members of the core IPO drafting team had regular meetings with the board to discuss their progress on key points of drafting the materials."). <br><br> • **Testimony of Glen Ceremony**. He does not have adequate knowledge of Board of Director communications at meetings. *See, e.g.*, **Ceremony Tr.** at 60:5-6; 66:3-8 ("Q. Would you attend board meetings? A. Only periodically."; "Q. Pre-IPO, did you attend any of the quarterly board of director meetings for 2018 or 2019? A. I can't recall. If I was called into a board meeting, it would be brief."). | |
| **Matt Cohler** (Member of Board and Individual Defendant) | **Unique, First-Hand, Non-Repetitive Knowledge of Relevant Facts** <br><br> Plaintiffs must be allowed to examine Cohler regarding the purported basis for the alleged misrepresentations in the Registration Statement, as well as the conduct and knowledge supporting his asserted "due diligence" defense: <br><br> • <u>Cohler signed the Registration Statement, certifying that he had "reasonable grounds to believe that it meets all of the requirements for filing on [SEC] Form S-1." *See* UBER 00043016.</u> <br><br> • <u>Cohler is the only person who can testify regarding the conduct and knowledge supporting his affirmative "due diligence" defense, which contends that Cohler, individually, "exercised due diligence and, *after reasonable investigation*, had reasonable ground to believe and did believe that the purported misstatements and/or omissions . . . were true and that there was no omission to state a material fact required to be stated therein or necessary to make the statements therein not misleading . . ." *See* ECF 174 at 71, Affirmative Defense No. 12.</u> | **Lack of First-Hand / Unique Knowledge Regarding Relevant Issues** <br><br> • Mr. Cohler is one of 11 Outside Directors, each of whom Plaintiffs seek to depose. <br><br> • Plaintiffs expressly "do[] not allege . . . that any of the Defendants acted with scienter or fraudulent intent." (SAC ¶¶ 353, 361; *see id.* ¶ 341.) <br><br> • Plaintiffs' examples establish the Outside Directors relied on management, reports and documents from management, and their discussions with management at Board meetings in fulfilling their duties. |

**Summary Chart for Potential Apex Deponents**
*Boston Retirement System v. Uber Technologies, Inc.*, No. 3:19-cv-06361-RS (N.D. Cal.)

| Proposed Deponent | Plaintiffs' Basis for the Deposition | Uber Defendants: Good Cause for Precluding the Deposition |
|---|---|---|
| | <ul><li>As the owner of more than 11% of Uber's shares outstanding prior to the IPO, Cohler was not a mere passive director and should be questioned regarding his potential bias as someone expected to conduct due diligence. *See* **Uber Technologies, Inc., SEC Form S-1 A (Apr. 26, 2019) at 266-268**.</li></ul><br>**Cohler has unique knowledge regarding the factual bases underlying Plaintiffs' claims, including the undisclosed known trends and uncertainties supporting Plaintiffs' Item 303 claims:**<br><ul><li>The evidence cited in the due diligence section above also supports the notion that Cohler should be questioned regarding his state of mind and knowledge concerning trends or uncertainties associated with Plaintiffs' Item 303 claims.</li><li>Cohler has first-hand knowledge of the ongoing discussions regarding the S1 and the risk climate at Uber. *See, e.g.,* **UBER_00028931** (Audit Committee Agenda, 2019-01-28).</li><li>As an Audit Committee member, Cohler was involved in the review and approval of the Company's response to SEC Comment letters, which included issues such as segment reporting and other relevant matters to Plaintiffs' financial condition claims. *See* **UBER_00747880**; *see also* **Uber Technologies, Inc., SEC Form S-1 A (Apr. 26, 2019) at 227**.</li><li>Cohler attended an Audit Committee meeting January 28, 2019, which presented an "Enterprise Risk Assessment" showing undisclosed trends and risks. *See* **UBER_00028931**; *see also* **UBER_00029156** (Audit Committee material showing ▮▮▮▮▮▮▮▮▮▮ eing presented to the Audit Committee 4-22-2019).</li><li>"Members of the [Audit] Committee asked questions, and discussion ensued" about Uber's IPO. *See* **UBER_00578887** (January 28, 2019 Minutes of Meeting of the Audit Committee including a Financial Update, Accounting Update, Tax Update, Internal Audit) Update).</li></ul> | <ul><li>Plaintiffs can investigate issues discussed at Board meetings from produced minutes and 30(b)(6) deponents: Andrew Byrne, Glen Ceremony, Catherine Gibbons, Matt Kallman, and Emily Reuter.</li><li>Item 303 concerns disclosures of "material events and uncertainties known *to management*" collectively. 17 C.F.R. § 229.303 (emphasis added).</li><li>Due diligence is evaluated under an objective standard focused on the process undertaken and information received by an officer or director.</li></ul>**Others Could Testify From a Similar Vantage Point**<br><ul><li>Plaintiffs may examine the information provided to and discussed with the Outside Directors through the documents provided to the Outside Directors and executed by them, as well as by deposing Uber's 30(b)(6) witnesses designated to speak on topics including the contents of the Offering Documents, Uber's IPO, including the Board's consideration of and decision relating to the IPO, and the Board's meetings concerning the IPO.</li><li>Other fact witnesses, such as Glen Ceremony, Francois Chadwick, Dennis Cinelli, Barney Harford, and Emily Reuter, have knowledge of Board reporting and discussions relating to the IPO.</li><li>Uber's Chief Accounting Officer Glen Ceremony, as one of Uber's 30(b)(6) witnesses, has already testified to the Board's and Audit Committee's process for reviewing and approving the company's financials, including in connection with the IPO Offering Documents. (*See, e.g.,* Ceremony Tr. at 67:1-70:5; 73:25-76:4.)<ul><li>Plaintiffs did not ask Mr. Ceremony any specific questions about discussions with or actions taken by any of the Outside</li></ul></li></ul> |

**Summary Chart for Potential Apex Deponents**
*Boston Retirement System v. Uber Technologies, Inc.*, No. 3:19-cv-06361-RS (N.D. Cal.)

| Proposed Deponent | Plaintiffs' Basis for the Deposition | Uber Defendants: Good Cause for Precluding the Deposition |
|---|---|---|
| | • The Audit Committee was aware of outstanding high risks. *See* UBER_00578887 (January 28, 2019 "The [Audit] Committee members requested that with respect to past due high risk action items, the owner of such item report to the Audit Committee"). <br><br>• Ceremony testified extensively to the knowledge and responsibility of the Audit Committee members as it relates to approval of regulatory filings including the "Management's Discussion and Analysis of Financial Condition and Results of Operations" section of the Registration Statement – where Plaintiff claims many misrepresentations and omissions occurred. *See* **Ceremony Tr.** at 66:21-73:21; at 73:13-21 ("Q. Is it your understanding they did that in preparation of the IPO? A. Well, there was a process of preparing the registration statement, and they were provided multiple copies along the way to review, and we reviewed those with them in various different meetings. Q. And that would include reviewing the MD&A section as well, correct? A. Yes, commenting, yeah, and highlighting different areas of the MD&A, yeah."). <br><br>• Cohler received Board of Directors agendas and materials pertaining to IPO readiness, S1, and safety. *See, e.g.,* **UBER_00024833; UBER_00024856** (2018-10-29, Board of Director Minutes); **UBER_00026383** (2018-12-28, Telephonic Board of Directors Meeting Minutes); **UBER_00026383** (2019-01-28 & 29 Board of Directors and Board Committee Meetings Agendas); **Byrne Tr.** at 434:6-12 ("I believe that the board would have been kept appraised of key issues around Uber's business strategy, business model, and growth strategy in terms of the trends that we were seeing in -- across a number of our key markets, but only some of the most significant issues would have bubbled their way up to the board."). <br><br>• Directors were kept informed of the ongoing issues at Uber. *See* UBER_00226466 ("Coverage Highlights" including media reports regarding active issues at Uber). | Directors, except Mr. Kalanick. (*See id.* at 111:7-116:14; 393:8-394:6.) <br><br>• Plaintiffs are scheduled to depose Emily Reuter in her individual capacity and as a Rule 30(b)(6) witness. Ms. Reuter is currently VP of Corporate Finance and, at the time of the IPO, served as IPO Lead as well as Director of Corporate Development and Capital Markets. She will be able to testify knowledgeably about the IPO and due diligence process. <br><br>• Uber has identified thousands of documents demonstrating the Board's due diligence in response to Plaintiffs' interrogatories. <br><br>**Specific Prejudice or Harm From the Deposition** <br><br>• Mr. Cohler serves in senior positions at several institutions, including as (i) Owner of Oslo Holdings Limited, (ii) Member of the Board of Directors of 1stDibs, Inc., (iii) Member of the Board of Directors of Asana, Inc., (iv) Member of the Board of Directors of KKR & Co. Inc., (v) Member of the Investment Committee of the Chan Zuckerberg Initiative, (vi) Member of the Board of Trustees of the Environmental Defense Fund, (vii) Member of the Board of Governors of the San Francisco Symphony, and (vii) Member of the Investment Committee of the Yale Investments Office. |
| | **Steps Taken to Obtain Information Sought Through Less Intrusive Means** | |
| | • **Individual Interrogatories (First Set to Uber and Individual Defendants)** regarding litigation against the Company that commenced after the IPO, the identification of former and | |

**Summary Chart for Potential Apex Deponents**
*Boston Retirement System v. Uber Technologies, Inc.*, No. 3:19-cv-06361-RS (N.D. Cal.)

| Proposed Deponent | Plaintiffs' Basis for the Deposition | Uber Defendants: Good Cause for Precluding the Deposition |
|---|---|---|
| | current employees that held responsibilities related to Plaintiffs' allegations, identification of all locations where Uber Rides and Uber Eats operates, information relating to Uber's settlement of passenger safety claims, communications with third-party analysts, ESI, and methods of communication.<br><br>● **Contention Interrogatories (Second Set)** Seeking Narrative and Documents Supporting Due Diligence Defense—*Now Subject of Anticipated Motion to Compel.*<br><br>● **Requests for Admission** regarding methods of communication, document preservation and ESI, awareness of litigation risk concerning IPO.<br><br>● **Requests for Production** (2 sets totaling 118 requests) regarding a range of topics such as IPO timing, actual and considered disclosures, communications with outsiders (including investors), due diligence, financial statements and documents, and other requests relating to Plaintiff's financial condition, passenger safety, illegal operations and New Day at Uber allegations. In response, Cohler produced 35 documents as a custodian.<br><br>● **Testimony of Andrew Byrne**. *See, e.g.*, **Byrne Tr. at 360:19-23** ("Q. Do you know if these materials were ever provided to members of the board in connection with the IPO process? A. I'm afraid I don't know that but I would consider it unlikely."); **397:9-20** ("Q. Did Uber's board of directors convene any meetings where the specific contents of Uber's offering documents were discussed? [Objection] A. Not as far as I'm aware. Q. Did Uber's board of directors receive any reports or analyses regarding Uber's business model and growth strategy in connection with the preparation of the offering materials for Uber's IPO? A. I do not believe so."); **433:2-9** ("Q. Can you describe the process by which the members of the IPO drafting team kept the board apprised of the work that it conducted in connection with preparing the S-1? A. I believe that the members of the core IPO drafting team had regular meetings with the board to discuss their progress on key points of drafting the materials."). | |

**Summary Chart for Potential Apex Deponents**
*Boston Retirement System v. Uber Technologies, Inc.*, No. 3:19-cv-06361-RS (N.D. Cal.)

| Proposed Deponent | Plaintiffs' Basis for the Deposition | Uber Defendants: Good Cause for Precluding the Deposition |
|---|---|---|
| | • **Testimony of Glen Ceremony**. He does not have adequate knowledge of Board of Director communications at meetings. *See, e.g.,* **Ceremony Tr.** at **60:5-6; 66:3-8** ("Q. Would you attend board meetings? A. Only periodically."; "Q. Pre-IPO, did you attend any of the quarterly board of director meetings for 2018 or 2019? A. I can't recall. If I was called into a board meeting, it would be brief.").<br><br>• <u>**Testimony of Glen Ceremony**. Ceremony testified extensively to the knowledge and responsibility of the Audit Committee members as it relates to approval of regulatory filings including the "Management's Discussion and Analysis of Financial Condition and Results of Operations" section of the Registration Statement – where Plaintiff claims many misrepresentations and omissions occurred.</u> *See* **Ceremony Tr.** at **66:21-73:21**; at **73:13-21** ("Q. Is it your understanding they did that in preparation of the IPO? A. Well, there was a process of preparing the registration statement, and they were provided multiple copies along the way to review, and we reviewed those with them in various different meetings. Q. And that would include reviewing the MD&A section as well, correct? A. Yes, commenting, yeah, and highlighting different areas of the MD&A, yeah."). | |
| **Ryan Graves** (Member of Board and Individual Defendant) | **Unique, First-Hand, Non-Repetitive Knowledge of Relevant Facts**<br><br>**Plaintiffs must be allowed to examine Graves regarding the purported basis for the alleged misrepresentations in the Registration Statement, as well as the conduct and knowledge supporting his asserted "due diligence" defense:**<br><br>• <u>Graves signed the Registration Statement, certifying that he had "reasonable grounds to believe that it meets all of the requirements for filing on [SEC] Form S-1."</u> *See* **UBER_00043016.**<br><br>• <u>Graves is the only person who can testify regarding the conduct and knowledge supporting his affirmative "due diligence" defense, which contends that Graves, individually, "exercised due diligence and, *after reasonable investigation*, had reasonable ground to believe and did believe that the purported misstatements and/or omissions . . . were true and that there was no omission</u> | **Lack of First-Hand / Unique Knowledge Regarding Relevant Issues**<br><br>• Mr. Graves is one of 11 Outside Directors, each of whom Plaintiffs seek to depose.<br><br>• Plaintiffs expressly "do[] not allege . . . that any of the Defendants acted with scienter or fraudulent intent." (SAC ¶¶ 353, 361; *see id.* ¶ 341.)<br><br>• Although Mr. Graves had an executive role at Uber years before the IPO, Mr. Graves left his operations role at Uber in September |

**Summary Chart for Potential Apex Deponents**
*Boston Retirement System v. Uber Technologies, Inc.*, No. 3:19-cv-06361-RS (N.D. Cal.)

| Proposed Deponent | Plaintiffs' Basis for the Deposition | Uber Defendants: Good Cause for Precluding the Deposition |
|---|---|---|
| | to state a material fact required to be stated therein or necessary to make the statements therein not misleading . . ." *See* ECF 174 at 71, Affirmative Defense No. 12.<br><br>• As the owner of more than 2.4% of Uber's shares outstanding prior to the IPO, Graves was not a mere passive director and should be questioned regarding his potential bias as someone expected to conduct due diligence. *See* **Uber Technologies, Inc., SEC Form S-1 A (Apr. 26, 2019) at 266-268.**<br><br>**Graves has unique knowledge regarding the factual bases underlying Plaintiffs' claims, including the undisclosed known trends and uncertainties supporting Plaintiffs' Item 303 claims:**<br><br>• The evidence cited in the due diligence section above also supports the notion that Graves should be questioned regarding his state of mind and knowledge concerning trends or uncertainties associated with Plaintiffs' Item 303 claims.<br><br>• Graves had input into Board meeting topics and direction of Uber. *See, e.g.*, **UBER_00091289** (9/14/2018 email re: Uber tech concepts discussing information for October Board Strategy Meeting. Matters include: ▬▬▬▬▬▬▬▬▬.<br><br>• Graves had input into the Greyball program. *See, e.g.*, **UBER_00534408** ("*Ryan Graves approved, supported and promoted the program among GMs. *").<br><br>• Graves routinely made presentations to employees. *See* **UBER_00284896** ("Employees want to hear more from other senior leaders vs just Ryan Graves").<br><br>• Graves was a part of the Compensation Committee. *See, e.g.*, **UBER_00204143, UBER_00803392** (meeting minutes), **UBER_00406882** ▬▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬.<br><br>• Graves received Board of Directors agendas and materials pertaining to IPO readiness, S1, and safety. *See, e.g.*, **UBER_00024833; UBER_00024856** (2018-10-29, Board of Director | 2017—*over a year and a half before* Uber's IPO and only nine months into the over 38-month Relevant Time Period.<br><br>• Plaintiffs' examples establish the Outside Directors relied on management, reports and documents from management, and their discussions with management at Board meetings in fulfilling their duties.<br><br>• Plaintiffs can investigate issues discussed at Board meetings from produced minutes and 30(b)(6) deponents: Andrew Byrne, Glen Ceremony, Catherine Gibbons, Matt Kallman, and Emily Reuter.<br><br>• Item 303 concerns disclosures of "material events and uncertainties known *to management*" collectively. 17 C.F.R. § 229.303 (emphasis added).<br><br>• Mr. Graves's or any other Outside Director's knowledge about entirely irrelevant issues also cannot serve as the basis to depose them.<br><br>  ○ Plaintiffs cite, for example, a *New York Times* reporter's *question* asking about Mr. Graves's purported involvement in the Greyball program. (*See* UBER_00534408 at 4409.)<br><br>  ○ That program was publicly disclosed before the IPO and in the Offering Documents. *See* Mike Isaac, *How Uber Deceives the Authorities Worldwide*, N.Y. Times (Mar. 3, 2017); RS at 67.<br><br>• Due diligence is evaluated under an objective standard focused on the process undertaken and information received by an officer or director.<br><br>**Others Could Testify From a Similar Vantage Point**<br><br>• Plaintiffs may examine the information provided to and discussed with the Outside Directors through the documents provided to the Outside Directors and executed by them, as well as by deposing |

**Summary Chart for Potential Apex Deponents**
*Boston Retirement System v. Uber Technologies, Inc.*, No. 3:19-cv-06361-RS (N.D. Cal.)

| Proposed Deponent | Plaintiffs' Basis for the Deposition | Uber Defendants: Good Cause for Precluding the Deposition |
|---|---|---|
| | Minutes); **UBER_00026383** (2018-12-28, Telephonic Board of Directors Meeting Minutes); **UBER_00026383** (2019-01-28 & 29 Board of Directors and Board Committee Meetings Agendas); **Byrne Tr. at 434:6-12** ("I believe that the board would have been kept appraised of key issues around Uber's business strategy, business model, and growth strategy in terms of the trends that we were seeing in -- across a number of our key markets, but only some of the most significant issues would have bubbled their way up to the board."). <br><br> • Directors were kept informed of the ongoing issues at Uber. *See* **UBER_00226466** ("Coverage Highlights" including media reports regarding active issues at Uber). | Uber's 30(b)(6) witnesses designated to speak on topics including the contents of the Offering Documents, Uber's IPO, including the Board's consideration of and decision relating to the IPO, and the Board's meetings concerning the IPO. <br><br> • Other fact witnesses, such as Glen Ceremony, Francois Chadwick, Dennis Cinelli, Barney Harford, and Emily Reuter, have knowledge of Board reporting and discussions relating to the IPO. <br><br> • Uber's Chief Accounting Officer Glen Ceremony, as one of Uber's 30(b)(6) witnesses, has already testified about the Board's and Audit Committee's process for reviewing and approving the company's financials, including in connection with the IPO Offering Documents. (*See, e.g.*, Ceremony Tr. at 67:1-70:5; 73:25-76:4.) <br><br>   ○ Plaintiffs did not ask Mr. Ceremony any specific questions about discussions with or actions taken by any of the Outside Directors, except Mr. Kalanick. (*See id.* at 111:7-116:14; 393:8-394:6.) <br><br> • Plaintiffs are scheduled to depose Emily Reuter in her individual capacity and as a Rule 30(b)(6) witness. Ms. Reuter is currently VP of Corporate Finance and, at the time of the IPO, served as IPO Lead as well as Director of Corporate Development and Capital Markets. She will be able to testify knowledgeably about the IPO and due diligence process. <br><br> • Uber has identified thousands of documents demonstrating the Board's due diligence in response to Plaintiffs' interrogatories. <br><br> **Specific Prejudice or Harm From the Deposition** <br><br> • Mr. Graves serves in senior positions at several institutions, including as (i) Founder and CEO of Saltwater Capital LLC, |
| | **Steps Taken to Obtain Information Sought Through Less Intrusive Means** | |
| | • **Individual Interrogatories (First Set to Uber and Individual Defendants)** regarding litigation against the Company that commenced after the IPO, the identification of former and current employees that held responsibilities related to Plaintiffs' allegations, identification of all locations where Uber Rides and Uber Eats operates, information relating to Uber's settlement of passenger safety claims, communications with third-party analysts, ESI, and methods of communication. <br><br> • **Contention Interrogatories** (Second Set) Seeking Narrative and Documents Supporting Due Diligence Defense—*Now Subject of Anticipated Motion to Compel.* <br><br> • **Requests for Admission** regarding methods of communication, document preservation and ESI, awareness of litigation risk concerning IPO. <br><br> • **Requests for Production** (2 sets totaling 118 requests) regarding a range of topics such as IPO timing, actual and considered disclosures, communications with outsiders (including investors), due diligence, financial statements and documents, and other requests relating to Plaintiff's financial condition, passenger safety, illegal operations and New Day at Uber allegations. In response, Graves produced 933 documents as a custodian. | |

**Summary Chart for Potential Apex Deponents**
*Boston Retirement System v. Uber Technologies, Inc.*, No. 3:19-cv-06361-RS (N.D. Cal.)

| Proposed Deponent | Plaintiffs' Basis for the Deposition | Uber Defendants: Good Cause for Precluding the Deposition |
|---|---|---|
| | • **Testimony of Andrew Byrne**. *See, e.g.*, **Byrne Tr. at 360:19-23** ("Q. Do you know if these materials were ever provided to members of the board in connection with the IPO process? A. I'm afraid I don't know that but I would consider it unlikely."); **397:9-20** ("Q. Did Uber's board of directors convene any meetings where the specific contents of Uber's offering documents were discussed? [Objection] A. Not as far as I'm aware. Q. Did Uber's board of directors receive any reports or analyses regarding Uber's business model and growth strategy in connection with the preparation of the offering materials for Uber's IPO? A. I do not believe so."); **433:2-9** ("Q. Can you describe the process by which the members of the IPO drafting team kept the board apprised of the work that it conducted in connection with preparing the S-1? A. I believe that the members of the core IPO drafting team had regular meetings with the board to discuss their progress on key points of drafting the materials."). <br><br>• **Testimony of Glen Ceremony**. He does not have adequate knowledge of Board of Director communications at meetings. *See, e.g.*, **Ceremony Tr.** at **60:5-6; 66:3-8** ("Q. Would you attend board meetings? A. Only periodically."; "Q. Pre-IPO, did you attend any of the quarterly board of director meetings for 2018 or 2019? A. I can't recall. If I was called into a board meeting, it would be brief."). | (ii) Member of the Board of Directors of Charity: Water, and <br> (iii) Member of the Board of Directors of Pachama, Inc. |
| **Arianna Huffington** <br> (Member of Board and Individual Defendant) | **Unique, First-Hand, Non-Repetitive Knowledge of Relevant Facts** <br><br> **Plaintiffs must be allowed to examine Huffington regarding the purported basis for the alleged misrepresentations in the Registration Statement, as well as the conduct and knowledge supporting her asserted "due diligence" defense:** <br><br> • Huffington signed the Registration Statement, certifying that she had "reasonable grounds to believe that it meets all of the requirements for filing on [SEC] Form S-1." *See* **UBER 00043016.** <br><br> • Huffington is the only person who can testify regarding the conduct and knowledge supporting her affirmative "due diligence" defense, which contends that Huffington, individually, "exercised due diligence and, *after reasonable investigation*, had reasonable ground to believe | **Lack of First-Hand / Unique Knowledge Regarding Relevant Issues** <br><br> • Ms. Huffington is one of 11 Outside Directors, each of whom Plaintiffs seek to depose. <br><br> • Plaintiffs expressly "do[] not allege . . . that any of the Defendants acted with scienter or fraudulent intent." (SAC ¶¶ 353, 361; *see id.* ¶ 341.) <br><br> • Plaintiffs' examples establish the Outside Directors relied on management, reports and documents from management, and their |

**Summary Chart for Potential Apex Deponents**
*Boston Retirement System v. Uber Technologies, Inc.*, No. 3:19-cv-06361-RS (N.D. Cal.)

| Proposed Deponent | Plaintiffs' Basis for the Deposition | Uber Defendants: Good Cause for Precluding the Deposition |
|---|---|---|
| | and did believe that the purported misstatements and/or omissions . . . were true and that there was no omission to state a material fact required to be stated therein or necessary to make the statements therein not misleading . . ." *See* ECF 174 at 71, Affirmative Defense No. 12.<br><br>**Huffington has unique knowledge regarding the factual bases underlying Plaintiffs' claims, including the undisclosed known trends and uncertainties supporting Plaintiffs' Item 303 claims:**<br><br>• The evidence cited in the due diligence section above also supports the notion that Huffington should be questioned regarding her state of mind and knowledge concerning trends or uncertainties associated with Plaintiffs' Item 303 claims.<br><br>• Huffington received Board of Directors agendas and materials pertaining to IPO readiness, S1, and safety. *See, e.g.*, **UBER 00024833; UBER 00024856** (2018-10-29, Board of Director Minutes); **UBER 00026383** (2018-12-28, Telephonic Board of Directors Meeting Minutes); **UBER 00026383** (2019-01-28 & 29 Board of Directors and Board Committee Meetings Agendas); **Byrne Tr. at 434:6-12** ("I believe that the board would have been kept appraised of key issues around Uber's business strategy, business model, and growth strategy in terms of the trends that we were seeing in -- across a number of our key markets, but only some of the most significant issues would have bubbled their way up to the board.").<br><br>• As a long-time Board Member, Huffington has knowledge of the company's risks, strategies, and misrepresentations going back to 2016. *See* **UBER 00413445** (Email from Jill Hazelbaker to Huffington regarding ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮<br><br>• Huffington has unique knowledge regarding Uber's professed cultural change. *See, e.g.*, **UBER 00227149** ("As the only woman on the board it was important for me to make myself available to employees, to listen, and to make it clear that the board would hold management's feet to the fire and that we were committed to fundamental changes."); **UBER 00413431** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮<br>; **UBER 00411205 at 205 and 208** (Huffington served as Chairman of the special | discussions with management at Board meetings in fulfilling their duties.<br><br>• Plaintiffs can investigate issues discussed at Board meetings from produced minutes and 30(b)(6) deponents: Andrew Byrne, Glen Ceremony, Catherine Gibbons, Matt Kallman, and Emily Reuter.<br><br>• The stock awards Ms. Huffington received are irrelevant to whether she in fact conducted reasonable due diligence.<br><br>• Ms. Huffington's or any of other Outside Director's knowledge about entirely irrelevant issues also cannot serve as the basis to depose them.<br><br>　○ For example, Ms. Huffington's purported knowledge about alleged events that occurred before the Relevant Time Period or were disclosed in Uber's Offering Documents, such as Greyball, cannot serve as the basis to depose her.<br><br>• Item 303 concerns disclosures of "material events and uncertainties known *to management*" collectively. 17 C.F.R. § 229.303 (emphasis added).<br><br>• Due diligence is evaluated under an objective standard focused on the process undertaken and information received by an officer or director.<br><br>**Others Could Testify From a Similar Vantage Point**<br><br>• Plaintiffs may examine the information provided to and discussed with the Outside Directors through the documents provided to the Outside Directors and executed by them, as well as by deposing Uber's 30(b)(6) witnesses designated to speak on topics including the contents of the Offering Documents, Uber's IPO, including the Board's consideration of and decision relating to the IPO, and the Board's meetings concerning the IPO. |

**Summary Chart for Potential Apex Deponents**
*Boston Retirement System v. Uber Technologies, Inc.*, No. 3:19-cv-06361-RS (N.D. Cal.)

| Proposed Deponent | Plaintiffs' Basis for the Deposition | Uber Defendants: Good Cause for Precluding the Deposition |
|---|---|---|
| | subcommittee that was formed to "to supervise the internal investigation to be conducted by Covington & Burling, LLP ('Covington') into the Company's culture and workplace environment. . .").<br><br>• **UBER_00413519** (Piece published by Huffington regarding ways to improve company culture following Kalanick scandals); **UBER_00227127** (Emails between Hazelbaker and Huffington regarding the Holder investigation).<br><br>• <u>Board directors were kept informed of the ongoing issues at Uber.</u> *See* **UBER_00226466** ("Coverage Highlights" including media reports regarding active issues at Uber).<br><br>• <u>Huffington received substantial stock awards for her role as a member of Uber's ad hoc committee in 2017, which calls into question her ability to independently access due diligence, as the ad hoc committee was involved in Uber's cultural change and illegal operations – both of which are highly relevant to Plaintiffs' claims.</u> *See* **Uber Technologies, Inc., SEC Form S-1 A (Apr. 26, 2019) at 224** (independent director); *see also id.* at 226 (Compensation Committee), *id.* at 257-258 (340,000 in stock awards "[g]ranted in recognition of her service as chair of one of our ad hoc committees in 2017, 9,658 of these RSUs vest immediately . . . upon the earlier to occur of (i) the consummation of this offering . . ."); **UBER_00411205** (special subcommittee was formed to "to supervise the internal investigation to be conducted by Covington & Burling, LLP ('Covington') into the Company's culture and workplace environment. . ."). | • Other fact witnesses, such as Glen Ceremony, Francois Chadwick, Dennis Cinelli, Barney Harford, and Emily Reuter, have knowledge of Board reporting and discussions relating to the IPO.<br><br>• Uber's Chief Accounting Officer Glen Ceremony, as one of Uber's 30(b)(6) witnesses, has already testified to the Board's and Audit Committee's process for reviewing and approving the company's financials, including in connection with the IPO Offering Documents. (*See, e.g.*, Ceremony Tr. at 67:1-70:5; 73:25-76:4.)<br><br>  ○ Plaintiffs did not ask Mr. Ceremony any specific questions about discussions with or actions taken by any of the Outside Directors, except Mr. Kalanick. (*See id.* at 111:7-116:14; 393:8-394:6.)<br><br>• Plaintiffs are scheduled to depose Emily Reuter in her individual capacity and as a Rule 30(b)(6) witness. Ms. Reuter is currently VP of Corporate Finance and, at the time of the IPO, served as IPO Lead as well as Director of Corporate Development and Capital Markets. She will be able to testify knowledgeably about the IPO and due diligence process.<br><br>• Uber has identified thousands of documents demonstrating the Board's due diligence in response to Plaintiffs' interrogatories. |
| | **Steps Taken to Obtain Information Sought Through Less Intrusive Means**<br><br>• **Individual Interrogatories (First Set to Uber and Individual Defendants)** regarding litigation against the Company that commenced after the IPO, the identification of former and current employees that held responsibilities related to Plaintiffs' allegations, identification of all locations where Uber Rides and Uber Eats operates, information relating to Uber's settlement of passenger safety claims, communications with third-party analysts, ESI, and methods of communication. | **Specific Prejudice or Harm From the Deposition**<br><br>• Ms. Huffington serves in senior positions at several institutions, including as (i) Founder and CEO of Thrive Global, (ii) Member of the Board of Directors of the Berggruen Institute, and (iii) Member of the Board of Directors of Gloat Inc. |

**Summary Chart for Potential Apex Deponents**
*Boston Retirement System v. Uber Technologies, Inc.*, No. 3:19-cv-06361-RS (N.D. Cal.)

| Proposed Deponent | Plaintiffs' Basis for the Deposition | Uber Defendants: Good Cause for Precluding the Deposition |
|---|---|---|
|  | • **Contention Interrogatories (Second Set)** Seeking Narrative and Documents Supporting Due Diligence Defense—*Now Subject of Anticipated Motion to Compel*<br><br>• **Requests for Admission** regarding methods of communication, document preservation and ESI, awareness of litigation risk concerning IPO<br><br>• **Requests for Production** (2 sets totaling 118 requests) regarding a range of topics such as IPO timing, actual and considered disclosures, communications with outsiders (including investors), due diligence, financial statements and documents, and other requests relating to Plaintiff's financial condition, passenger safety, illegal operations and New Day at Uber allegations. In response, Huffington produced 104 documents as a custodian.<br><br>• **Testimony of Andrew Byrne**. *See, e.g.*, **Byrne Tr. at 360:19-23** ("Q. Do you know if these materials were ever provided to members of the board in connection with the IPO process? A. I'm afraid I don't know that but I would consider it unlikely."); **397:9-20** ("Q. Did Uber's board of directors convene any meetings where the specific contents of Uber's offering documents were discussed? [Objection] A. Not as far as I'm aware. Q. Did Uber's board of directors receive any reports or analyses regarding Uber's business model and growth strategy in connection with the preparation of the offering materials for Uber's IPO? A. I do not believe so."); **433:2-9** ("Q. Can you describe the process by which the members of the IPO drafting team kept the board apprised of the work that it conducted in connection with preparing the S-1? A. I believe that the members of the core IPO drafting team had regular meetings with the board to discuss their progress on key points of drafting the materials.").<br><br>• **Testimony of Glen Ceremony**. He does not have adequate knowledge of Board of Director communications at meetings. *See, e.g.*, **Ceremony Tr.** at **60:5-6; 66:3-8** ("Q. Would you attend board meetings? A. Only periodically."; "Q. Pre-IPO, did you attend any of the quarterly board of director meetings for 2018 or 2019? A. I can't recall. If I was called into a board meeting, it would be brief."). |  |

**Summary Chart for Potential Apex Deponents**
*Boston Retirement System v. Uber Technologies, Inc.*, No. 3:19-cv-06361-RS (N.D. Cal.)

| Proposed Deponent | Plaintiffs' Basis for the Deposition | Uber Defendants: Good Cause for Precluding the Deposition |
|---|---|---|
| **Travis Kalanick** (Co-founder, former CEO, Member of Board, and Individual Defendant) | **Unique, First-Hand, Non-Repetitive Knowledge of Relevant Facts** | **Lack of First-Hand / Unique Knowledge Regarding Relevant Issues** |
| | **Plaintiffs must be allowed to examine Kalanick regarding the purported basis for the alleged misrepresentations in the Registration Statement, as well as the conduct and knowledge supporting his asserted "due diligence" defense:** | • Mr. Kalanick is one of 11 Outside Directors, each of whom Plaintiffs seek to depose. |
| | • <u>Kalanick signed the Registration Statement, certifying that he had "reasonable grounds to believe that it meets all of the requirements for filing on [SEC] Form S-1." *See* UBER_00043016.</u> | • Plaintiffs expressly "do[] not allege . . . that any of the Defendants acted with scienter or fraudulent intent." (SAC ¶¶ 353, 361; *see id.* ¶ 341.) |
| | • <u>Kalanick is the only person who can testify regarding the conduct and knowledge supporting his affirmative "due diligence" defense, which contends that Kalanick, individually, "exercised due diligence and, *after reasonable investigation*, had reasonable ground to believe and did believe that the purported misstatements and/or omissions . . . were true and that there was no omission to state a material fact required to be stated therein or necessary to make the statements therein not misleading . . ."</u> *See* ECF 174 at 71, Affirmative Defense No. 12. | • Mr. Kalanick stepped down as CEO in June 2017—almost *two years before* Uber's IPO and only six months into the over 38-month Relevant Time Period. |
| | | • Plaintiffs' examples establish the Outside Directors relied on management, reports and documents from management, and their discussions with management at Board meetings in fulfilling their duties. |
| | • <u>As the owner of more than 8.6% of Uber's shares outstanding prior to the IPO, Kalanick was not a mere passive director and should be questioned regarding his potential bias as someone expected to conduct due diligence.</u> *See* U**ber Technologies, Inc., SEC Form S-1 A (Apr. 26, 2019) at 266-268**. | • Mr. Kalanick's purported knowledge about entirely irrelevant issues, such as regulatory issues in Taiwan or proposed governance changes, which are not even referenced in the SAC, cannot serve as the basis to depose him. Nor can conjectures about events that purportedly occurred between Mr. Kalanick and other Outside Directors. |
| | **Kalanick has unique knowledge regarding the factual bases underlying Plaintiffs' claims, including the undisclosed known trends and uncertainties supporting Plaintiffs' Item 303 claims:** | • Plaintiffs can investigate issues discussed at Board meetings from produced minutes and 30(b)(6) deponents: Andrew Byrne, Glen Ceremony, Catherine Gibbons, Matt Kallman, and Emily Reuter. |
| | • <u>The evidence cited in the due diligence section above also supports the notion that Kalanick should be questioned regarding his state of mind and knowledge concerning trends or uncertainties associated with Plaintiffs' Item 303 claims.</u> | • Item 303 concerns disclosures of "material events and uncertainties known *to management*" collectively. 17 C.F.R. § 229.303 (emphasis added). |

**Summary Chart for Potential Apex Deponents**
*Boston Retirement System v. Uber Technologies, Inc.*, No. 3:19-cv-06361-RS (N.D. Cal.)

| Proposed Deponent | Plaintiffs' Basis for the Deposition | Uber Defendants: Good Cause for Precluding the Deposition |
|---|---|---|
| | • Kalanick was involved in key conversations regarding Uber's CP. *See, e.g.,* **UBER_00274065** (email re ███████████████████████████████████████████████████████████████ <br><br> • Kalanick attended Audit Committee meetings as a non-member and should be questioned further on his due diligence efforts. *See* **Ceremony Tr. at 393:8-23** ("Q. But Travis wasn't on the audit committee, correct? A. He wasn't on -- an official member on the audit committee but he, from my recollection, appeared at one of the audit committee meetings pre-IPO. Q. Do you know which one? A. I don't -- I don't know which one."). <br><br> • Kalanick received updates concerning CP growth and geographical policies. *See* **UBER_00278998** (Andrew Macdonald forwarded weekend updates to Kalanick concerning growth CP, geographical policies). <br><br> • Kalanick received updates on ████████████████████████ and was involved in key communications regarding political efforts taken by Uber to address anti-Uber legislation. *See* **UBER_00481828** (email chain re ████████████████████████████████████████████████████. <br><br> • Kalanick was an active member of Uber's Board of Directors that asked key questions regarding, *inter alia*, the source of Uber's growth or lack thereof at the BoD meeting immediately before the IPO. *See, e.g.,* **UBER_00045174 at 177** (███████████████████████████████████████████████████████████████ "); *see also* **UBER_00146773** (email chain regardin ███████ | • Due diligence is evaluated under an objective standard focused on the process undertaken and information received by an officer or director. <br><br> **Others Could Testify From a Similar Vantage Point** <br> • Plaintiffs may examine the information provided to and discussed with the Outside Directors through the documents provided to the Outside Directors and executed by them, as well as by deposing Uber's 30(b)(6) witnesses designated to speak on topics including the contents of the Offering Documents, Uber's IPO, including the Board's consideration of and decision relating to the IPO, and the Board's meetings concerning the IPO. <br><br> • Other fact witnesses, such as Glen Ceremony, Francois Chadwick, Dennis Cinelli, Barney Harford, and Emily Reuter, have knowledge of Board reporting and discussions relating to the IPO. <br><br> • Uber's Chief Accounting Officer Glen Ceremony, as one of Uber's 30(b)(6) witnesses, has already testified about the Board's and Audit Committee's process for reviewing and approving the company's financials, including in connection with the IPO Offering Documents. (*See, e.g.,* Ceremony Tr. at 67:1-70:5; 73:25-76:4.) <br><br> ○ Mr. Ceremony further provided specific testimony about Mr. Kalanick and his attendance at an Audit Committee meeting ahead of the IPO even though he was not a member of the Audit Committee. (*See id.* at 393:15-394:6.) <br><br> • Plaintiffs are scheduled to depose Emily Reuter in her individual capacity and as a Rule 30(b)(6) witness. Ms. Reuter is currently VP of Corporate Finance and, at the time of the IPO, served as IPO Lead as well as Director of Corporate Development and |

**Summary Chart for Potential Apex Deponents**
*Boston Retirement System v. Uber Technologies, Inc.*, No. 3:19-cv-06361-RS (N.D. Cal.)

| Proposed Deponent | Plaintiffs' Basis for the Deposition | Uber Defendants: Good Cause for Precluding the Deposition |
|---|---|---|
| | ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓<br><br>• Kalanick pushed back on proposed governance changes. *See* **UBER_00411048** ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓).<br><br>• Kalanick received Board of Directors agendas and materials pertaining to IPO readiness, S1, and safety. *See, e.g.*, **UBER_00024833; UBER_00024856** (2018-10-29, Board of Director Minutes); **UBER_00026383** (2018-12-28, Telephonic Board of Directors Meeting Minutes); **UBER_00026383** (2019-01-28 & 29 Board of Directors and Board Committee Meetings Agendas); **Byrne Tr. at 434:6-12** ("I believe that the board would have been kept appraised of key issues around Uber's business strategy, business model, and growth strategy in terms of the trends that we were seeing in -- across a number of our key markets, but only some of the most significant issues would have bubbled their way up to the board.").<br><br>• Directors were kept informed of the ongoing issues at Uber. *See* **UBER_00226466** ("Coverage Highlights" including media reports regarding active issues at Uber). | Capital Markets. She will be able to testify knowledgeably about the IPO and due diligence process.<br><br>• To the extent Plaintiffs are interested in Mr. Kalanick's communications with certain Uber employees, such as Dennis Cinelli, they could have sought to depose those individuals.<br><br>• Uber has identified thousands of documents demonstrating the Board's due diligence in response to Plaintiffs' interrogatories.<br><br>**Specific Prejudice or Harm From the Deposition**<br><br>• Mr. Kalanick is the full-time CEO of City Storage Systems, a privately held global business with complex operations, which requires Mr. Kalanick to travel domestically or internationally nearly every week. |
| | **Steps Taken to Obtain Information Sought Through Less Intrusive Means** | |
| | • **Individual Interrogatories (First Set to Uber and Individual Defendants)** regarding litigation against the Company that commenced after the IPO, the identification of former and current employees that held responsibilities related to Plaintiffs' allegations, identification of all locations where Uber Rides and Uber Eats operates, information relating to Uber's settlement of passenger safety claims, communications with third-party analysts, ESI, and methods of communication. | |

**Summary Chart for Potential Apex Deponents**
*Boston Retirement System v. Uber Technologies, Inc.*, No. 3:19-cv-06361-RS (N.D. Cal.)

| Proposed Deponent | Plaintiffs' Basis for the Deposition | Uber Defendants: Good Cause for Precluding the Deposition |
|---|---|---|
| | • **Text Messages** – *Awaiting Production of Text Messages. Uber stated it would not produce before submission of this chart.* | |
| | • **Contention Interrogatories (Second Set)** Seeking Narrative and Documents Supporting Due Diligence – *Now Subject of Anticipated Motion to Compel.* | |
| | • **Requests for Admission** regarding methods of communication, document preservation and ESI, and awareness of litigation risks concerning IPO. | |
| | • **Requests for Production** (2 sets totaling 118 requests) regarding a range of topics such as IPO timing, actual and considered disclosures, communications with outsiders (including investors), due diligence, financial statements and documents, and other requests relating to Plaintiff's financial condition, passenger safety, illegal operations and New Day at Uber allegations. In response, Kalanick produced 477 documents as a custodian. | |
| | • **Testimony of Glen Ceremony**. He does not have adequate knowledge of Board of Director communications at meetings. *See, e.g.,* **Ceremony Tr.** at **60:5-6; 66:3-8** ("Q. Would you attend board meetings? A. Only periodically."; "Q. Pre-IPO, did you attend any of the quarterly board of director meetings for 2018 or 2019? A. I can't recall. If I was called into a board meeting, it would be brief."). | |
| | • **Testimony of Glen Ceremony:** *See* **Ceremony Tr.** at **394:21 – 395:1** ("In 2019, at any board meeting that you attended, do you recall, if you did attend any of those meetings, whether Travis Kalanick was drilling Dennis Cinelli on anything? . . . [Ceremony:] No, I don't recall."). | |
| | • **Testimony of Andrew Byrne**. *See, e.g.,* **Byrne Tr.** at **360:19-23** ("Q. Do you know if these materials were ever provided to members of the board in connection with the IPO process? A. I'm afraid I don't know that but I would consider it unlikely."); **397:9-20** ("Q. Did Uber's board of directors convene any meetings where the specific contents of Uber's offering documents were discussed? [Objection] A. Not as far as I'm aware.  Q.  Did Uber's board of directors receive any reports or analyses regarding Uber's business model and growth strategy in connection with the preparation of the offering materials for Uber's IPO? A. I do not believe so."); **433:2-9** ("Q. Can | |

**Summary Chart for Potential Apex Deponents**
*Boston Retirement System v. Uber Technologies, Inc., No. 3:19-cv-06361-RS (N.D. Cal.)*

| Proposed Deponent | Plaintiffs' Basis for the Deposition | Uber Defendants: Good Cause for Precluding the Deposition |
|---|---|---|
| | you describe the process by which the members of the IPO drafting team kept the board apprised of the work that it conducted in connection with preparing the S-1? A. I believe that the members of the core IPO drafting team had regular meetings with the board to discuss their progress on key points of drafting the materials."). | |
| **Wan Ling Martello** (Member of Board and Individual Defendant) | **Unique, First-Hand, Non-Repetitive Knowledge of Relevant Facts**<br><br>**Plaintiffs must be allowed to examine Martello regarding the purported basis for the alleged misrepresentations in the Registration Statement, as well as the conduct and knowledge supporting her asserted "due diligence" defense:**<br><br>• <u>Martello signed the Registration Statement, certifying that she had "reasonable grounds to believe that it meets all of the requirements for filing on [SEC] Form S-1."</u> *See* **UBER 00043016.**<br><br>• <u>Martello is the only person who can testify regarding the conduct and knowledge supporting her affirmative "due diligence" defense, which contends that Martello, individually, "exercised due diligence and, *after reasonable investigation*, had reasonable ground to believe and did believe that the purported misstatements and/or omissions . . . were true and that there was no omission to state a material fact required to be stated therein or necessary to make the statements therein not misleading . . ."</u> *See* ECF 174 at 71, Affirmative Defense No. 12.<br><br>**Martello has unique knowledge regarding the factual bases underlying Plaintiffs' claims, including the undisclosed known trends and uncertainties supporting Plaintiffs' Item 303 claims:**<br><br>• <u>The evidence cited in the due diligence section above also supports the notion that Martello should be questioned regarding his state of mind and knowledge concerning trends or uncertainties associated with Plaintiffs' Item 303 claims.</u><br><br>• <u>Martello was Chair of the Audit Committee in 2018 and received the agenda and associated materials.</u> *See, e.g.,* **UBER 00027196** (January 30, 2018, Audit Committee Agenda); Audit Committee Agenda (**UBER 00027555**) (May 8, 2018, Audit Committee minutes). | **Lack of First-Hand / Unique Knowledge Regarding Relevant Issues**<br><br>• Ms. Martello is one of 11 Outside Directors, each of whom Plaintiffs seek to depose.<br><br>• Plaintiffs expressly "do[] not allege . . . that any of the Defendants acted with scienter or fraudulent intent." (SAC ¶¶ 353, 361; *see id.* ¶ 341.)<br><br>• Plaintiffs' examples establish the Outside Directors relied on management, reports and documents from management, and their discussions with management at Board meetings in fulfilling their duties.<br><br>• Plaintiffs can investigate issues discussed at Board meetings from produced minutes and 30(b)(6) deponents: Andrew Byrne, Glen Ceremony, Catherine Gibbons, Matt Kallman, and Emily Reuter.<br><br>• Item 303 concerns disclosures of "material events and uncertainties known *to management*" collectively. 17 C.F.R. § 229.303 (emphasis added).<br><br>• Due diligence is evaluated under an objective standard focused on the process undertaken and information received by an officer or director.<br><br>**Others Could Testify From a Similar Vantage Point**<br><br>• Plaintiffs may examine the information provided to and discussed with the Outside Directors through the documents provided to the |

**Summary Chart for Potential Apex Deponents**
*Boston Retirement System v. Uber Technologies, Inc.*, No. 3:19-cv-06361-RS (N.D. Cal.)

| Proposed Deponent | Plaintiffs' Basis for the Deposition | Uber Defendants: Good Cause for Precluding the Deposition |
|---|---|---|
| | <ul><li>As an Audit Committee member, Martello was involved in the review and approval of the Company's response to SEC Comment letters, which includes issues such as segment reporting and other relevant matters to the financial condition claims. *See* **UBER_00747880.**</li><li>Martello was responsible for "report[ing] to the Board regarding the Audit Committee meeting that took place before the Board meeting." *See* **UBER_00024833** (July 31, 2018, Board Meeting minutes).</li><li>Martello attended an Audit Committee meeting January 28, 2019, which presented an "Enterprise Risk Assessment" showing undisclosed trends and risks. *See* **UBER_00028931**, (Audit Committee Agenda and Materials); *see also* **UBER_00029156** (2019-04-22, Audit Committee material showing ███████████████ eing presented to the Audit Committee).</li><li>Directors were kept informed of the ongoing issues at Uber. *See* **UBER_00226466** ("Coverage Highlights" including media reports regarding active issues at Uber).</li><li>"Members of the [Audit] Committee asked questions, and discussion ensued" about Uber's IPO. *See* **UBER_00578887** (January 28, 2019 Minutes of Meeting of the Audit Committee including a Financial Update, Accounting Update, Tax Update, Internal Audit) Update).</li><li>The Audit Committee was aware of outstanding high risks. *See* **UBER_00578887** (January 28, 2019 "The [Audit] Committee members requested that with respect to past due high risk action items, the owner of such item report to the Audit Committee").</li><li>Ceremony testified extensively to the knowledge and responsibility of the Audit Committee members as it relates to approval of regulatory filings including the "Management's Discussion and Analysis of Financial Condition and Results of Operations" section of the Registration Statement – where Plaintiff claims many misrepresentations and omissions occurred. *See* **Ceremony Tr.** at **66:21-73:21**; at **73:13-21** ("Q. Is it your understanding they did that in preparation of the IPO? A. Well, there was a process of preparing the registration statement,</li></ul> | Outside Directors and executed by them, as well as by deposing Uber's 30(b)(6) witnesses designated to speak on topics including the contents of the Offering Documents, Uber's IPO, including the Board's consideration of and decision relating to the IPO, and the Board's meetings concerning the IPO.<br><br>• Other fact witnesses, such as Glen Ceremony, Francois Chadwick, Dennis Cinelli, Barney Harford, and Emily Reuter, have knowledge of Board reporting and discussions relating to the IPO.<br><br>• Uber's Chief Accounting Officer Glen Ceremony, as one of Uber's 30(b)(6) witnesses, has already testified to the Board's and Audit Committee's process for reviewing and approving the company's financials, including in connection with the IPO Offering Documents. (*See, e.g.*, Ceremony Tr. at 67:1-70:5; 73:25-76:4.)<br><br>  ○ Plaintiffs did not ask Mr. Ceremony any specific questions about discussions with or actions taken by any of the Outside Directors, except Mr. Kalanick. (*See id.* at 111:7-116:14; 393:8-394:6.)<br><br>• Plaintiffs are scheduled to depose Emily Reuter in her individual capacity and as a Rule 30(b)(6) witness. Ms. Reuter is currently VP of Corporate Finance and, at the time of the IPO, served as IPO Lead as well as Director of Corporate Development and Capital Markets. She will be able to testify knowledgeably about the IPO and due diligence process.<br><br>• Uber has identified thousands of documents demonstrating the Board's due diligence in response to Plaintiffs' interrogatories.<br><br>**Specific Prejudice or Harm From the Deposition**<br><br>• Ms. Martello serves in senior positions at several institutions, including as (i) Founding Partner of BayPine, (ii) Member of the |

**Summary Chart for Potential Apex Deponents**
*Boston Retirement System v. Uber Technologies, Inc.*, No. 3:19-cv-06361-RS (N.D. Cal.)

| Proposed Deponent | Plaintiffs' Basis for the Deposition | Uber Defendants: Good Cause for Precluding the Deposition |
|---|---|---|
| | and they were provided multiple copies along the way to review, and we reviewed those with them in various different meetings. Q. And that would include reviewing the MD&A section as well, correct? A. Yes, commenting, yeah, and highlighting different areas of the MD&A, yeah.").<br><br>• <u>Martello received Board of Directors agendas and materials pertaining to IPO readiness, S1, and safety.</u> *See, e.g.*, **UBER_00024833**; **UBER_00024856** (2018-10-29, Board of Director Minutes); **UBER_00026383** (2018-12-28, Telephonic Board of Directors Meeting Minutes); **UBER_00026383** (2019-01-28 & 29 Board of Directors and Board Committee Meetings Agendas); **Byrne Tr. at 434:6-12** ("I believe that the board would have been kept appraised of key issues around Uber's business strategy, business model, and growth strategy in terms of the trends that we were seeing in -- across a number of our key markets, but only some of the most significant issues would have bubbled their way up to the board.").<br><br>**Steps Taken to Obtain Information Sought Through Less Intrusive Means**<br><br>• **Individual Interrogatories (First Set to Uber and Individual Defendants)** regarding litigation against the Company that commenced after the IPO, the identification of former and current employees that held responsibilities related to Plaintiffs' allegations, identification of all locations where Uber Rides and Uber Eats operates, information relating to Uber's settlement of passenger safety claims, communications with third-party analysts, ESI, and methods of communication.<br><br>• **Contention Interrogatories (Second Set)** Seeking Narrative and Documents Supporting Due Diligence Defense—*Now Subject of Anticipated Motion to Compel.*<br><br>• **Requests for Admission** regarding methods of communication, document preservation and ESI, awareness of litigation risk concerning IPO. | Board of Directors of Alibaba Group, (iii) Member of the Board of Directors of Stellantis N.V., and (iv) Member of the Board of Directors of Uber. |

**Summary Chart for Potential Apex Deponents**
*Boston Retirement System v. Uber Technologies, Inc.*, No. 3:19-cv-06361-RS (N.D. Cal.)

| Proposed Deponent | Plaintiffs' Basis for the Deposition | Uber Defendants: Good Cause for Precluding the Deposition |
|---|---|---|
| | • **Requests for Production** (2 sets totaling 118 requests) regarding a range of topics such as IPO timing, actual and considered disclosures, communications with outsiders (including investors), due diligence, financial statements and documents, and other requests relating to Plaintiff's financial condition, passenger safety, illegal operations and New Day at Uber allegations. In response, Martello produced 59 documents as a custodian.<br><br>• **Testimony of Andrew Byrne**. *See, e.g.,* **Byrne Tr. at 360:19-23** ("Q. Do you know if these materials were ever provided to members of the board in connection with the IPO process? A. I'm afraid I don't know that but I would consider it unlikely."); **397:9-20** ("Q. Did Uber's board of directors convene any meetings where the specific contents of Uber's offering documents were discussed? [Objection] A. Not as far as I'm aware. Q. Did Uber's board of directors receive any reports or analyses regarding Uber's business model and growth strategy in connection with the preparation of the offering materials for Uber's IPO? A. I do not believe so."); **433:2-9** ("Q. Can you describe the process by which the members of the IPO drafting team kept the board apprised of the work that it conducted in connection with preparing the S-1? A. I believe that the members of the core IPO drafting team had regular meetings with the board to discuss their progress on key points of drafting the materials.").<br><br>• **Testimony of Glen Ceremony**. He does not have adequate knowledge of Board of Director communications at meetings. *See, e.g.,* **Ceremony Tr.** at **60:5-6; 66:3-8** ("Q. Would you attend board meetings? A. Only periodically."; "Q. Pre-IPO, did you attend any of the quarterly board of director meetings for 2018 or 2019? A. I can't recall. If I was called into a board meeting, it would be brief.").<br><br>• **Testimony of Glen Ceremony**. Ceremony testified extensively to the knowledge and responsibility of the Audit Committee members as it relates to approval of regulatory filings including the "Management's Discussion and Analysis of Financial Condition and Results of Operations" section of the Registration Statement – where Plaintiff claims many misrepresentations and omissions occurred. *See* **Ceremony Tr.** at **66:21-73:21**; at **73:13-21** ("Q. Is it your understanding they did that in preparation of the IPO? A. Well, there was a | |

**Summary Chart for Potential Apex Deponents**
*Boston Retirement System v. Uber Technologies, Inc.*, No. 3:19-cv-06361-RS (N.D. Cal.)

| Proposed Deponent | Plaintiffs' Basis for the Deposition | Uber Defendants: Good Cause for Precluding the Deposition |
|---|---|---|
| | process of preparing the registration statement, and they were provided multiple copies along the way to review, and we reviewed those with them in various different meetings. Q. And that would include reviewing the MD&A section as well, correct? A. Yes, commenting, yeah, and highlighting different areas of the MD&A, yeah."). | |
| **Yasir Al-Rumayyan** (Member of Board and Individual Defendant) | **Unique, First-Hand, Non-Repetitive Knowledge of Relevant Facts**<br><br>Plaintiffs must be allowed to examine Rumayyan regarding the purported basis for the alleged misrepresentations in the Registration Statement, as well as the conduct and knowledge supporting his asserted "due diligence" defense:<br><br>• Al-Rumayyan signed the Registration Statement, certifying that he had "reasonable grounds to believe that it meets all of the requirements for filing on [SEC] Form S-1." *See* **UBER_00043016.**<br><br>• Al-Rumayyan is the only person who can testify regarding the conduct and knowledge supporting his affirmative "due diligence" defense, which contends that Al-Rumayyan, individually, "exercised due diligence and, *after reasonable investigation*, had reasonable ground to believe and did believe that the purported misstatements and/or omissions . . . were true and that there was no omission to state a material fact required to be stated therein or necessary to make the statements therein not misleading . . ." *See* ECF 174 at 71, Affirmative Defense No. 12.<br><br>• As the owner (directly and indirectly) of more than 10% of Uber's shares outstanding prior to the IPO, Al-Rumayyan was not a mere passive director and should be questioned regarding his potential bias as someone expected to conduct due diligence. *See* **Uber Technologies, Inc., SEC Form S-1 A (Apr. 26, 2019) at 266-268** (owner of more than 5.4% of Uber's shares outstanding prior to the IPO); *see also* **Uber Technologies, Inc., SEC Form S-1 A (Apr. 26, 2019) at 266-268** (Al-Rumayyan is the managing director of The Public Investment Fund (the sovereign wealth fun of the Kingdom of Saudi Arabia), which held 5.3% of Uber's outstanding shares prior to the IPO). | **Lack of First-Hand / Unique Knowledge Regarding Relevant Issues**<br><br>• Mr. Al-Rumayyan is one of 11 Outside Directors, each of whom Plaintiffs seek to depose.<br><br>• Plaintiffs expressly "do[] not allege . . . that any of the Defendants acted with scienter or fraudulent intent." (SAC ¶¶ 353, 361; *see id.* ¶ 341.)<br><br>• Plaintiffs' examples establish the Outside Directors relied on management, reports and documents from management, and their discussions with management at Board meetings in fulfilling their duties.<br><br>• Plaintiffs can investigate issues discussed at Board meetings from produced minutes and 30(b)(6) deponents: Andrew Byrne, Glen Ceremony, Catherine Gibbons, Matt Kallman, and Emily Reuter.<br><br>• Item 303 concerns disclosures of "material events and uncertainties known *to management*" collectively. 17 C.F.R. § 229.303 (emphasis added).<br><br>• Mr. Al-Rumayyan's involvement in a public interview he gave in his personal capacity and not on behalf of Uber (*see* UBER_00322650, cited by Plaintiffs), does not demonstrate unique, first-hand knowledge, is irrelevant to the due diligence he conducted, and cannot serve as the basis to depose him. |

**Summary Chart for Potential Apex Deponents**

*Boston Retirement System v. Uber Technologies, Inc.*, No. 3:19-cv-06361-RS (N.D. Cal.)

| Proposed Deponent | Plaintiffs' Basis for the Deposition | Uber Defendants: Good Cause for Precluding the Deposition |
|---|---|---|
| | <ul><li>The sovereign wealth fund launched the "SoftBank Vision fund," which wholly owns SB Cayman 2 Ltd—a fund that held 16.3% of Uber's outstanding shares prior to the IPO. *See* **WSJ, SoftBank, Saudis Lunch $100 Billion Tech Fund** (updated May 20, 2017) https://www.wsj.com/articles/softbank-saudis-to-launch-100-billion-tech-fund-1495270854; *see also* **Uber Technologies, Inc., SEC Form S-1 A** (Apr. 26, 2019) at 266-268.</li></ul> **Al-Rumayyan has unique knowledge regarding the factual bases underlying Plaintiffs' claims, including the undisclosed known trends and uncertainties supporting Plaintiffs' Item 303 claims:** <ul><li>The evidence cited in the due diligence section above also supports the notion that Al-Rumayyan should be questioned regarding his state of mind and knowledge concerning trends or uncertainties associated with Plaintiffs' Item 303 claims.</li><li>Al-Rumayyan was an Uber board member since 2016 and has firsthand knowledge of the risks and risk discussions at Uber. *See* **UBER_00204143**.</li><li>Al-Rumayyan was not a mere passive director. *See* **UBER_0032265** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮</li><li>Directors were kept informed of the ongoing issues at Uber. *See* **UBER_00226466** ("Coverage Highlights" including media reports regarding active issues at Uber).</li><li>Al-Rumayyan received Board of Directors agendas and materials pertaining to IPO readiness, S1, and safety. *See, e.g.,* **UBER_00024833** (July 31, 2018 Meeting Minutes.); **UBER_00024856** (2018-10-29, Board of Director Minutes); **UBER_00026383** (2018-12-28, Telephonic Board of Directors Meeting Minutes); **UBER_00026383** (2019-01-28 & 29 Board of Directors and Board Committee Meetings Agendas); **Byrne Tr.** at 434:6-12 ("I believe that the board would have been kept apprised of key issues around Uber's business strategy, business model, and growth strategy in terms of the trends that we were seeing in -- across a</li></ul> | <ul><li>Plaintiffs cite the minutes of a Compensation Committee meeting as evidence of Mr. Al-Rumayyan's relevant, first-hand knowledge. (*See* on UBER_00204143.) But those minutes do not even reference Mr. Al-Rumayyan, who neither belonged to that committee nor attended that meeting. (*See id.*)</li><li>Due diligence is evaluated under an objective standard focused on the process undertaken and information received by an officer or director.</li></ul> **Others Could Testify From a Similar Vantage Point** <ul><li>Plaintiffs may examine the information provided to and discussed with the Outside Directors through the documents provided to the Outside Directors and executed by them, as well as by deposing Uber's 30(b)(6) witnesses designated to speak on topics including the contents of the Offering Documents, Uber's IPO, including the Board's consideration of and decision relating to the IPO, and the Board's meetings concerning the IPO.</li><li>Other fact witnesses, such as Glen Ceremony, Francois Chadwick, Dennis Cinelli, Barney Harford, and Emily Reuter, have knowledge of Board reporting and discussions relating to the IPO.</li><li>Uber's Chief Accounting Officer Glen Ceremony, as one of Uber's 30(b)(6) witnesses, has already testified about the Board's and Audit Committee's process for reviewing and approving the company's financials, including in connection with the IPO Offering Documents. (*See, e.g.,* Ceremony Tr. at 67:1-70:5; 73:25-76:4.)<ul><li>Plaintiffs did not ask Mr. Ceremony any specific questions about discussions with or actions taken by any of the Outside</li></ul></li></ul> |

**Summary Chart for Potential Apex Deponents**
*Boston Retirement System v. Uber Technologies, Inc.*, No. 3:19-cv-06361-RS (N.D. Cal.)

| Proposed Deponent | Plaintiffs' Basis for the Deposition | Uber Defendants: Good Cause for Precluding the Deposition |
|---|---|---|
| | number of our key markets, but only some of the most significant issues would have bubbled their way up to the board."). | Directors, except Mr. Kalanick. (*See id.* at 111:7-116:14; 393:8-394:6.) |
| | **Steps Taken to Obtain Information Sought Through Less Intrusive Means** | • Plaintiffs are scheduled to depose Emily Reuter in her individual capacity and as a Rule 30(b)(6) witness. Ms. Reuter is currently VP of Corporate Finance and, at the time of the IPO, served as IPO Lead as well as Director of Corporate Development and Capital Markets. She will be able to testify knowledgeably about the IPO and due diligence process. |
| | • **Individual Interrogatories (First Set to Uber and Individual Defendants)** regarding litigation against the Company that commenced after the IPO, the identification of former and current employees that held responsibilities related to Plaintiffs' allegations, identification of all locations where Uber Rides and Uber Eats operates, information relating to Uber's settlement of passenger safety claims, communications with third-party analysts, ESI, and methods of communication. | • Uber has identified thousands of documents demonstrating the Board's due diligence in response to Plaintiffs' interrogatories. |
| | • **Contention Interrogatories (Second Set)** Seeking Narrative and Documents Supporting Due Diligence Defense—*Now Subject of Anticipated Motion to Compel* | **Specific Prejudice or Harm From the Deposition** |
| | • **Requests for Admission** regarding methods of communication, document preservation and ESI, awareness of litigation risk concerning IPO | • Mr. Al-Rumayyan is a foreign official (holding the rank of minister) and Governor of the Public Investment Fund, which is an instrumentality of the Kingdom of Saudi Arabia. |
| | • **Requests for Production** (2 sets totaling 118 requests) regarding a range of topics such as IPO timing, actual and considered disclosures, communications with outsiders (including investors), due diligence, financial statements and documents, and other requests relating to Plaintiff's financial condition, passenger safety, illegal operations and New Day at Uber allegations. In response, Al-Rumayyan produced 153 documents as a custodian. | • Mr. Al-Rumayyan is subject to certain legal constraints under Saudi law. |
| | • **Testimony of Andrew Byrne.** *See, e.g.,* **Byrne Tr. at 360:19-23** ("Q. Do you know if these materials were ever provided to members of the board in connection with the IPO process? A. I'm afraid I don't know that but I would consider it unlikely."); **397:9-20** ("Q. Did Uber's board of directors convene any meetings where the specific contents of Uber's offering documents were discussed? [Objection] A. Not as far as I'm aware. Q. Did Uber's board of directors receive any reports or analyses regarding Uber's business model and growth strategy in | |

**Summary Chart for Potential Apex Deponents**
*Boston Retirement System v. Uber Technologies, Inc.*, No. 3:19-cv-06361-RS (N.D. Cal.)

| Proposed Deponent | Plaintiffs' Basis for the Deposition | Uber Defendants: Good Cause for Precluding the Deposition |
|---|---|---|
| | connection with the preparation of the offering materials for Uber's IPO? A. I do not believe so."); **433:2-9** ("Q. Can you describe the process by which the members of the IPO drafting team kept the board apprised of the work that it conducted in connection with preparing the S-1? A. I believe that the members of the core IPO drafting team had regular meetings with the board to discuss their progress on key points of drafting the materials.").<br><br>• **Testimony of Glen Ceremony**. He does not have adequate knowledge of Board of Director communications at meetings. *See, e.g.,* **Ceremony Tr.** at **60:5-6; 66:3-8** ("Q. Would you attend board meetings? A. Only periodically."; "Q. Pre-IPO, did you attend any of the quarterly board of director meetings for 2018 or 2019? A. I can't recall. If I was called into a board meeting, it would be brief."). | |
| **John Thain** (Member of Board and Individual Defendant) | **Unique, First-Hand, Non-Repetitive Knowledge of Relevant Facts**<br><br>Plaintiffs must be allowed to examine Thain regarding the purported basis for the alleged misrepresentations in the Registration Statement, as well as the conduct and knowledge supporting his asserted "due diligence" defense:<br><br>• <u>Thain signed the Registration Statement, certifying that he had "reasonable grounds to believe that it meets all of the requirements for filing on [SEC] Form S-1."</u> *See* **UBER_00043016.**<br><br>• <u>Thain is the only person who can testify regarding the conduct and knowledge supporting his affirmative "due diligence" defense, which contends that Thain, individually, "exercised due diligence and, **after reasonable investigation**, had reasonable ground to believe and did believe that the purported misstatements and/or omissions . . . were true and that there was no omission to state a material fact required to be stated therein or necessary to make the statements therein not misleading . . ."</u> *See* ECF 174 at 71, Affirmative Defense No. 12. | **Lack of First-Hand / Unique Knowledge Regarding Relevant Issues**<br><br>• Mr. Thain is one of 11 Outside Directors, each of whom Plaintiffs seek to depose.<br><br>• Plaintiffs expressly "do[] not allege . . . that any of the Defendants acted with scienter or fraudulent intent." (SAC ¶¶ 353, 361; *see id.* ¶ 341.)<br><br>• Plaintiffs' examples establish the Outside Directors relied on management, reports and documents from management, and their discussions with management at Board meetings in fulfilling their duties.<br><br>• Plaintiffs can investigate issues discussed at Board meetings from produced minutes and 30(b)(6) deponents: Andrew Byrne, Glen Ceremony, Catherine Gibbons, Matt Kallman, and Emily Reuter. |

**Summary Chart for Potential Apex Deponents**
*Boston Retirement System v. Uber Technologies, Inc.*, No. 3:19-cv-06361-RS (N.D. Cal.)

| Proposed Deponent | Plaintiffs' Basis for the Deposition | Uber Defendants: Good Cause for Precluding the Deposition |
|---|---|---|
| | Thain has unique knowledge regarding the factual bases underlying Plaintiffs' claims, including the undisclosed known trends and uncertainties supporting Plaintiffs' Item 303 claims: <br><br> • The evidence cited in the due diligence section above also supports the notion that Thain should be questioned regarding his state of mind and knowledge concerning trends or uncertainties associated with Plaintiffs' Item 303 claims. <br><br> • Attended ongoing discussions within Audit committee as Chair and Finance committee member regarding the S-1 and the risk climate at Uber. *See e.g.,* **UBER_00028931** (2019-01-28, Audit Committee Agenda); **UBER_00027196**; (2019-01-30, Audit Committee Agenda; UBER_00029156 (2019-04-22, Audit Committee Agenda). <br><br> • Thain reviewed documents showing knowledge of the S-1's undisclosed trends. *See, e.g.,* **UBER_00028931** (Audit Committee Agenda and Materials including "Enterprise Risk Assessment" showing outstanding high risks); **UBER_00029156** (2019-04-22, Audit Committee material showing ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ eing presented to the Audit Committee). <br><br> • Thain received highly confidential information showing regional data that was missing from the S-1. *See* **UBER_00090700**. <br><br> • Thain was involved in the review and approval of the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* **UBER_00415412**. <br><br> • Thain was responsible fo ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ calling into question Thain's ability to conduct due diligence in an unbiased manner. *See* **UBER_00090703** <br><br> • Board directors were kept informed of the ongoing issues at Uber. *See* **UBER_00226466** ("Coverage Highlights" including media reports regarding active issues at Uber). | • Item 303 concerns disclosures of "material events and uncertainties known *to management*" collectively. 17 C.F.R. § 229.303 (emphasis added). <br><br> • Due diligence is evaluated under an objective standard focused on the process undertaken and information received by an officer or director. <br><br> **Others Could Testify From a Similar Vantage Point** <br><br> • Plaintiffs may examine the information provided to and discussed with the Outside Directors through the documents provided to the Outside Directors and executed by them, as well as by deposing Uber's 30(b)(6) witnesses designated to speak on topics including the contents of the Offering Documents, Uber's IPO, including the Board's consideration of and decision relating to the IPO, and the Board's meetings concerning the IPO. <br><br> • Other fact witnesses, such as Glen Ceremony, Francois Chadwick, Dennis Cinelli, Barney Harford, and Emily Reuter, have knowledge of Board reporting and discussions relating to the IPO. <br><br> • Uber's Chief Accounting Officer Glen Ceremony, as one of Uber's 30(b)(6) witnesses, has already testified about the Board's and Audit Committee's process for reviewing and approving the company's financials, including in connection with the IPO Offering Documents. (*See, e.g.,* Ceremony Tr. at 67:1-70:5; 73:25-76:4.) <br><br> ○ Plaintiffs did not ask Mr. Ceremony any specific questions about discussions with or actions taken by any of the Outside Directors, except Mr. Kalanick. (*See id.* at 111:7-116:14; 393:8-394:6.) <br><br> ○ Plaintiffs also did not ask Mr. Ceremony any questions about the Pricing Committee even though he was also designated as |

**Summary Chart for Potential Apex Deponents**
*Boston Retirement System v. Uber Technologies, Inc.*, No. 3:19-cv-06361-RS (N.D. Cal.)

| Proposed Deponent | Plaintiffs' Basis for the Deposition | Uber Defendants: Good Cause for Precluding the Deposition |
|---|---|---|
| | • "Members of the [Audit] Committee asked questions, and discussion ensued" about Uber's IPO. *See* **UBER_00578887** (January 28, 2019 Minutes of Meeting of the Audit Committee including a Financial Update, Accounting Update, Tax Update, Internal Audit) Update). <br><br> • The Audit Committee was aware of outstanding high risks. *See* **UBER_00578887** (January 28, 2019 "The [Audit] Committee members requested that with respect to past due high risk action items, the owner of such item report to the Audit Committee"). <br><br> • Ceremony testified extensively to the knowledge and responsibility of the Audit Committee members as it relates to approval of regulatory filings including the "Management's Discussion and Analysis of Financial Condition and Results of Operations" section of the Registration Statement – where Plaintiff claims many misrepresentations and omissions occurred. *See* **Ceremony Tr.** at **66:21-73:21**; at **73:13-21** ("Q. Is it your understanding they did that in preparation of the IPO? A. Well, there was a process of preparing the registration statement, and they were provided multiple copies along the way to review, and we reviewed those with them in various different meetings. Q. And that would include reviewing the MD&A section as well, correct? A. Yes, commenting, yeah, and highlighting different areas of the MD&A, yeah."). <br><br> • Thain received Board of Directors agendas and materials pertaining to IPO readiness, S1, and safety. *See, e.g.,* **UBER_00024833**; **UBER_00024856** (2018-10-29, Board of Director Minutes); **UBER_00026383** (2018-12-28, Telephonic Board of Directors Meeting Minutes); **UBER_00026383** (2019-01-28 & 29 Board of Directors and Board Committee Meetings Agendas); **Byrne Tr. at 434:6-12** ("I believe that the board would have been kept appraised of key issues around Uber's business strategy, business model, and growth strategy in terms of the trends that we were seeing in -- across a number of our key markets, but only some of the most significant issues would have bubbled their way up to the board."). <br><br> • Thain was one of three members for Uber's Pricing Committee – the only ones with authority to decide, among other things, "range of offering price," "final offering price," "Final S-1 registration statement," and the "underwriting agreement." *See* **UBER_IPO_00003807 at 3819** | Uber's 30(b)(6) witness on valuations considered and received by the Board. <br><br> • Plaintiffs are scheduled to depose Emily Reuter in her individual capacity and as a Rule 30(b)(6) witness. Ms. Reuter is currently VP of Corporate Finance and, at the time of the IPO, served as IPO Lead as well as Director of Corporate Development and Capital Markets. She will be able to testify knowledgeably about the IPO and due diligence process. <br><br> • Uber has identified thousands of documents demonstrating the Board's due diligence in response to Plaintiffs' interrogatories. <br><br> **Specific Prejudice or Harm From the Deposition** <br><br> • Mr. Thain serves in senior positions at several institutions, including as (i) Member of the Supervisory Board of Deutsche Bank AG, (ii) Chairman of Pine Island Capital Partners, (iii) Member of the Board of Directors of Uber, and (iv) Member of the Board of Trustees of New York-Presbyterian Hospital. |

**Summary Chart for Potential Apex Deponents**
*Boston Retirement System v. Uber Technologies, Inc.*, No. 3:19-cv-06361-RS (N.D. Cal.)

| Proposed Deponent | Plaintiffs' Basis for the Deposition | Uber Defendants: Good Cause for Precluding the Deposition |
|---|---|---|
| | **and 3489**; *see also* **UBER_00198371 at 375** ("Full authority related to IPO matters to be delegated to Pricing Committee after formation"); **UBER_00035977 at 5985** ("Pricing Committees should generally be small and nimble enough to hold calls/meetings on short notice and make decisions (e.g., upsizing, pricing changes, etc.) quickly throughout the roadshow. . . . ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ; **UBER_00411097** (Thain received "Valuation and Filing Range" materials on the eve of the IPO, which provided the calculations and bases for the potential IPO price range). | |
| | **Steps Taken to Obtain Information Sought Through Less Intrusive Means** | |
| | • **Individual Interrogatories (First Set to Uber and Individual Defendants)** regarding litigation against the Company that commenced after the IPO, the identification of former and current employees that held responsibilities related to Plaintiffs' allegations, identification of all locations where Uber Rides and Uber Eats operates, information relating to Uber's settlement of passenger safety claims, communications with third-party analysts, ESI, and methods of communication. | |
| | • **Contention Interrogatories (Second Set)** Seeking Narrative and Documents Supporting Due Diligence Defense—*Now Subject of Anticipated Motion to Compel.* | |
| | • **Requests for Admission** regarding methods of communication, document preservation and ESI, awareness of litigation risk concerning IPO. | |
| | • **Requests for Production** (2 sets totaling 118 requests) regarding a range of topics such as IPO timing, actual and considered disclosures, communications with outsiders (including investors), due diligence, financial statements and documents, and other requests relating to Plaintiff's financial condition, passenger safety, illegal operations and New Day at Uber allegations. In response, Thain produced 46 documents as a custodian. | |

**Summary Chart for Potential Apex Deponents**
*Boston Retirement System v. Uber Technologies, Inc.*, No. 3:19-cv-06361-RS (N.D. Cal.)

| Proposed Deponent | Plaintiffs' Basis for the Deposition | Uber Defendants: Good Cause for Precluding the Deposition |
|---|---|---|
| | • **Testimony of Andrew Byrne**. *See, e.g.*, **Byrne Tr. at 360:19-23** ("Q. Do you know if these materials were ever provided to members of the board in connection with the IPO process? A. I'm afraid I don't know that but I would consider it unlikely."); **397:9-20** ("Q. Did Uber's board of directors convene any meetings where the specific contents of Uber's offering documents were discussed? [Objection] A. Not as far as I'm aware. Q. Did Uber's board of directors receive any reports or analyses regarding Uber's business model and growth strategy in connection with the preparation of the offering materials for Uber's IPO? A. I do not believe so."); **433:2-9** ("Q. Can you describe the process by which the members of the IPO drafting team kept the board apprised of the work that it conducted in connection with preparing the S-1? A. I believe that the members of the core IPO drafting team had regular meetings with the board to discuss their progress on key points of drafting the materials."). <br><br> • **Testimony of Glen Ceremony**. He does not have adequate knowledge of Board of Director communications at meetings. *See, e.g.*, **Ceremony Tr.** at **60:5-6; 66:3-8** ("Q. Would you attend board meetings? A. Only periodically."; "Q. Pre-IPO, did you attend any of the quarterly board of director meetings for 2018 or 2019? A. I can't recall. If I was called into a board meeting, it would be brief."). <br><br> • <u>**Testimony of Glen Ceremony**. Ceremony testified extensively to the knowledge and responsibility of the Audit Committee members as it relates to approval of regulatory filings including the "Management's Discussion and Analysis of Financial Condition and Results of Operations" section of the Registration Statement – where Plaintiff claims many misrepresentations and omissions occurred.</u> *See* **Ceremony Tr.** at **66:21-73:21**; at **73:13-21** ("Q. Is it your understanding they did that in preparation of the IPO? A. Well, there was a process of preparing the registration statement, and they were provided multiple copies along the way to review, and we reviewed those with them in various different meetings. Q. And that would include reviewing the MD&A section as well, correct? A. Yes, commenting, yeah, and highlighting different areas of the MD&A, yeah."). | |

**Summary Chart for Potential Apex Deponents**
*Boston Retirement System v. Uber Technologies, Inc.*, No. 3:19-cv-06361-RS (N.D. Cal.)

| Proposed Deponent | Plaintiffs' Basis for the Deposition | Uber Defendants: Good Cause for Precluding the Deposition |
|---|---|---|
| **David Trujillo** (Member of Board and Individual Defendant) | **Unique, First-Hand, Non-Repetitive Knowledge of Relevant Facts**<br><br>**Plaintiffs must be allowed to examine Trujillo regarding the purported basis for the alleged misrepresentations in the Registration Statement, as well as the conduct and knowledge supporting his asserted "due diligence" defense:**<br><br>• Trujillo signed the Registration Statement, certifying that he had "reasonable grounds to believe that it meets all of the requirements for filing on [SEC] Form S-1." *See* **UBER_00043016.**<br><br>• Trujillo is the only person who can testify regarding the conduct and knowledge supporting his affirmative "due diligence" defense, which contends that Trujillo, individually, "exercised due diligence and, ***after reasonable investigation***, had reasonable ground to believe and did believe that the purported misstatements and/or omissions . . . were true and that there was no omission to state a material fact required to be stated therein or necessary to make the statements therein not misleading . . ." *See* ECF 174 at 71, Affirmative Defense No. 12.<br><br>**Trujillo has unique knowledge regarding the factual bases underlying Plaintiffs' claims, including the undisclosed known trends and uncertainties supporting Plaintiffs' Item 303 claims:**<br><br>• The evidence cited in the due diligence section above also supports the notion that Trujillo should be questioned regarding his state of mind and knowledge concerning trends or uncertainties associated with Plaintiffs' Item 303 claims.<br><br>• Trujillo was a member of the Audit Committee in 2018 and has first-hand knowledge of the ongoing risk climate at Uber. *See* **UBER_00027196** (January 30, 2018, Audit Committee Agenda).<br><br>• Trujillo was Compensation Committee Chair and has firsthand knowledge of the risks and risk discussions at Uber. *See* **UBER_00204143.**<br><br>• Board directors were kept informed of the ongoing issues at Uber. *See* **UBER_00226466** ("Coverage Highlights" including media reports regarding active issues at Uber). | **Lack of First-Hand / Unique Knowledge Regarding Relevant Issues**<br><br>• Mr. Trujillo is one of 11 Outside Directors, each of whom Plaintiffs seek to depose.<br><br>• Plaintiffs expressly "do[] not allege . . . that any of the Defendants acted with scienter or fraudulent intent." (SAC ¶¶ 353, 361; *see id.* ¶ 341.)<br><br>• Plaintiffs identify Mr. Trujillo as a partner at TPG Inc. Mr. Trujillo's role at TPG is as a private equity investment professional. He is not affiliated with TPG Inc.'s affiliate, TPG Capital BD, LLC ("TPG BD"), and did not conduct the underwriting work of TPG BD.<br><br>• Plaintiffs' examples establish the Outside Directors relied on management, reports and documents from management, and their discussions with management at Board meetings in fulfilling their duties.<br><br>• Plaintiffs can investigate issues discussed at Board meetings from produced minutes and 30(b)(6) deponents: Andrew Byrne, Glen Ceremony, Catherine Gibbons, Matt Kallman, and Emily Reuter.<br><br>• Item 303 concerns disclosures of "material events and uncertainties known *to management*" collectively. 17 C.F.R. § 229.303 (emphasis added).<br><br>• Due diligence is evaluated under an objective standard focused on the process undertaken and information received by an officer or director. |

**Summary Chart for Potential Apex Deponents**
*Boston Retirement System v. Uber Technologies, Inc.*, No. 3:19-cv-06361-RS (N.D. Cal.)

| Proposed Deponent | Plaintiffs' Basis for the Deposition | Uber Defendants: Good Cause for Precluding the Deposition |
|---|---|---|
| | • <u>Trujillo received Board of Directors agendas and materials pertaining to IPO readiness, S1, and safety.</u> *See, e.g.*, **UBER_00024833**; **UBER_00024856** (2018-10-29, Board of Director Minutes); **UBER_00026383** (2018-12-28, Telephonic Board of Directors Meeting Minutes); **UBER_00026383** (2019-01-28 & 29 Board of Directors and Board Committee Meetings Agendas); **Byrne Tr. at 434:6-12** ("I believe that the board would have been kept appraised of key issues around Uber's business strategy, business model, and growth strategy in terms of the trends that we were seeing in -- across a number of our key markets, but only some of the most significant issues would have bubbled their way up to the board."). | **Others Could Testify From a Similar Vantage Point** <br> • Plaintiffs may examine the information provided to and discussed with the Outside Directors through the documents provided to the Outside Directors and executed by them, as well as by deposing Uber's 30(b)(6) witnesses designated to speak on topics including the contents of the Offering Documents, Uber's IPO, including the Board's consideration of and decision relating to the IPO, and the Board's meetings concerning the IPO. <br> • Other fact witnesses, such as Glen Ceremony, Francois Chadwick, Dennis Cinelli, Barney Harford, and Emily Reuter, have knowledge of Board reporting and discussions relating to the IPO. <br> • Uber's Chief Accounting Officer Glen Ceremony, as one of Uber's 30(b)(6) witnesses, has already testified about the Board's and Audit Committee's process for reviewing and approving the company's financials, including in connection with the IPO Offering Documents. (*See, e.g.*, Ceremony Tr. at 67:1-70:5; 73:25-76:4.) <br> ○ Plaintiffs did not ask Mr. Ceremony any specific questions about discussions or actions taken by Mr. Trujillo or any of the other Outside Directors except Mr. Kalanick. (*See id.* at 111:7-116:14; 393:8-394:6.) <br> • Plaintiffs are scheduled to depose Emily Reuter in her individual capacity and as a Rule 30(b)(6) witness. Ms. Reuter is currently VP of Corporate Finance and, at the time of the IPO, served as IPO Lead as well as Director of Corporate Development and Capital Markets. She will be able to testify knowledgeably about the IPO and due diligence process. <br> • Uber has identified thousands of documents demonstrating the Board's due diligence in response to Plaintiffs' interrogatories. |
| | **Steps Taken to Obtain Information Sought Through Less Intrusive Means** | |
| | • **Individual Interrogatories (First Set to Uber and Individual Defendants)** regarding litigation against the Company that commenced after the IPO, the identification of former and current employees that held responsibilities related to Plaintiffs' allegations, identification of all locations where Uber Rides and Uber Eats operates, information relating to Uber's settlement of passenger safety claims, communications with third-party analysts, ESI, and methods of communication. <br><br> • **Contention Interrogatories (Second Set)** Seeking Narrative and Documents Supporting Due Diligence Defense—*Now Subject of Anticipated Motion to Compel.* <br><br> • **Requests for Admission** regarding methods of communication, document preservation and ESI, awareness of litigation risk concerning IPO. <br><br> • **Requests for Production** (2 sets totaling 118 requests) regarding a range of topics such as IPO timing, actual and considered disclosures, communications with outsiders (including investors), due diligence, financial statements and documents, and other requests relating to Plaintiff's financial condition, passenger safety, illegal operations and New Day at Uber allegations. In response, Trujillo produced 138 documents as a custodian. | |

**Summary Chart for Potential Apex Deponents**
*Boston Retirement System v. Uber Technologies, Inc.*, No. 3:19-cv-06361-RS (N.D. Cal.)

| Proposed Deponent | Plaintiffs' Basis for the Deposition | Uber Defendants: Good Cause for Precluding the Deposition |
|---|---|---|
| | • **Testimony of Andrew Byrne**. *See, e.g.*, **Byrne Tr. at 360:19-23** ("Q. Do you know if these materials were ever provided to members of the IPO process? A. I'm afraid I don't know that but I would consider it unlikely."); **397:9-20** ("Q. Did Uber's board of directors convene any meetings where the specific contents of Uber's offering documents were discussed? [Objection] A. Not as far as I'm aware. Q. Did Uber's board of directors receive any reports or analyses regarding Uber's business model and growth strategy in connection with the preparation of the offering materials for Uber's IPO? A. I do not believe so."); **433:2-9** ("Q. Can you describe the process by which the members of the IPO drafting team kept the board apprised of the work that it conducted in connection with preparing the S-1? A. I believe that the members of the core IPO drafting team had regular meetings with the board to discuss their progress on key points of drafting the materials."). <br><br> • **Testimony of Glen Ceremony**. He does not have adequate knowledge of Board of Director communications at meetings. *See, e.g.*, **Ceremony Tr. at 60:5-6; 66:3-8** ("Q. Would you attend board meetings? A. Only periodically."; "Q. Pre-IPO, did you attend any of the quarterly board of director meetings for 2018 or 2019? A. I can't recall. If I was called into a board meeting, it would be brief."). | **Specific Prejudice or Harm From the Deposition** <br> • Mr. Trujillo serves in senior positions at several institutions, including as (i) Partner and Member of the Board of Directors of TPG, Inc., and Member of its Executive Committee, (ii) Member of the Board of Directors of Azoff Music Company, (iii) Member of the Board of Directors of Beauty for All Industries, (iv) Member of the Board of Directors of Calm.com, Inc., (v) Member of the Board of Directors of the Creative Artists Agency LLC, (vi) Member of the Board of Directors of DirecTV, (vii) Member of the Board of Directors of Entertainment Partners, (viii) Member of the Board of Directors of Global Music Rights, and (ix) Member of the Board of Directors of Uber. |
| **Gus Fuldner** (VP, Safety and Insurance) | **Unique, First-Hand, Non-Repetitive Knowledge of Relevant Facts** <br> **Fuldner has unique knowledge regarding the factual bases underlying Plaintiffs' claims, including <u>issues regarding passenger safety</u> and the undisclosed known trends and uncertainties supporting Plaintiffs' Item 303 claims:** <br><br> • <u>Fuldner attended and presented at Safety Advisory Board meetings.</u> *See, e.g.*, **UBER 00819749**. (Fuldner attended all sessions of the Safety Advisory Board meetings and presented on multiple sections). | **Lack of First-Hand / Unique Knowledge Regarding Relevant Issues** <br> • Mr. Fuldner does not have unique, first-hand knowledge on relevant topics beyond the testimony covered in numerous Rule 30(b)(6) and individual depositions. <br> • SAC makes no mention of Mr. Fuldner. |

**Summary Chart for Potential Apex Deponents**
*Boston Retirement System v. Uber Technologies, Inc.*, No. 3:19-cv-06361-RS (N.D. Cal.)

| Proposed Deponent | Plaintiffs' Basis for the Deposition | Uber Defendants: Good Cause for Precluding the Deposition |
|---|---|---|
| | • Fuldner has unique knowledge regarding Uber's strategy and release timing for Uber's Transparency Report. *See* **UBER_00215464** (███████████████████████████████████████████ ; *see also* **Gibbons Tr. at 94:12-20** ("Q. Did Mr. Fuldner have a meeting with Mr. Harford, Mr. West, Ms. Hazelbaker and Dara in May of 2018? A. Per this e-mail, yes, he did. ██████████████████████████ ; **UBER_00639152**. (email from Fuldner, stating: ██████████████████████████████████████████ ); **UBER_00044221** (10/28/2019 email requesting Fuldner's sign-off on "strategy and funding approach" regrading Transparency Report plan); **UBER_00061473** (leading a "pop-up Directors+ call" with Tony West and Jill Hazelbaker regarding Transparency Report release); **Gibbons Tr. at 94:3-8** ███████████████████████████████████████ . <br><br>• Fuldner has unique knowledge regarding Uber's safety protocols and data. *See, e.g.*, **UBER_00303928** (identifying Fuldner as the custodian of spreadsheet detailing ██████████████████ "); *see also* **UBER_00044006** ("Flagging several questions for you to take tomorrow. You can find suggested TP's here . . ."); **UBER_00044150** █████████████████ **UBER_00215150** ███████████ **UBER_00062006** ███████████████████ ). <br><br>• Fuldner was a leader on the decision to work with Lyft re Safety Report/joint reporting. *See* **UBER_00061641** (9/26/2019 email with Andrew Macdonald re Tony West's conversation with Lyft re Joint Reporting). | • Plaintiffs expressly "do[] not allege . . . that any of the Defendants acted with scienter or fraudulent intent." (SAC ¶¶ 353, 361; *see id.* ¶ 341.)<br><br>• Plaintiffs' examples establish Mr. Fuldner received information through reports and discussions with less senior members of management.<br><br>• Mr. Fuldner's involvement in the following points are not relevant to assessing whether there were materially false or misleading statements in the IPO offering documents:<br><br>  ○ Safety marketing or advertising campaigns (as opposed to the actual safety operations team, which prepared the U.S. Safety Report). (*See* UBER_00628863.)<br><br>  ○ █████████████████████████████████ (*See* UBER_00061830.)<br><br>  ○ ████████████████████████ (*See* UBER_00777475.)<br><br>**Others Could Testify From a Similar Vantage Point**<br><br>• Knowledge of allegedly relevant topics (*e.g.*, passenger safety issues, related analyses and data, and the timing of the release of Uber's December 2019 U.S. Safety Report) can be investigated through Uber's 30(b)(6) and individual witnesses. For example:<br><br>  ○ Catherine Gibbons (30(b)(6) witness concerning passenger safety issues), whom Plaintiffs have already deposed. Ms. Gibbons is Uber's Global Head of Platform Safety and testified extensively about issues relating to passenger safety, including the timing of the U.S. Safety Report's release. Ms. Gibbons testified about communications and documents |

**Summary Chart for Potential Apex Deponents**
*Boston Retirement System v. Uber Technologies, Inc.*, No. 3:19-cv-06361-RS (N.D. Cal.)

| Proposed Deponent | Plaintiffs' Basis for the Deposition | Uber Defendants: Good Cause for Precluding the Deposition |
|---|---|---|
| | • <u>Fuldner spearheaded the decision to get an outside accounting firm to audit Uber's safety material.</u> *See* **UBER_00061783** (09/17/2019, Gus emails Dominique Vincenti to get the process started on having someone audit the material).<br><br>• ⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛ *See* **UBER_00061830** ⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛<br><br>• <u>Fuldner expressed concerns regarding Uber's use of numbers to convey a decline in accident rates.</u> *See* **UBER_00215373** (email exchange indicating tha ⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛<br><br>• <u>Fuldner expressed concerns over Uber's safety advertising.</u> *See* **UBER_00628863** ⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛).<br><br>• <u>Fuldner has unique knowledge regarding Uber's alleged "strike system" for safety violations for incidents.</u> *See* **UBER_00638024.** (⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛<br><br>• <u>Fuldner has unique knowledge regarding Uber's protocols regarding consent solicitation from sexual assault victims.</u> *See, e.g.,* **UBER_00727914.** (email from Fuldner, stating: ⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛. | involving Mr. Fuldner, including presentations he made (to both the Board of Directors and Safety Advisory Board) and emails he received, and topics and processes in which Mr. Fuldner participated.<br><br>▪ *Uber's SIU team.* (*See* Gibbons Tr. at 32:23-35:12, 58:8-18, 126:15-129:18 (SIU investigators "have six to eight weeks of on the ground training . . . they learn all of the trauma to make sure they can look after themselves. And then they do a lot of on the ground shadowing and make sure they can actually be embedded and successfully complete this job."), 243:16-244:16.)<br><br>▪ *Creation of, data auditing for, and timing of the U.S. Safety Report.* (*See id.* at 35:13-37:14 (explaining that Uber's safety data needed auditing and scrubbing to make "sure that we had a clean and unified taxonomy that was MECE, so that we were actually comparing apples to apples and could have an understanding of true incident rates across the board … ensuring that we had taken into account all of the investigative details that were necessary to classify these incidents appropriately."), 64:13-72:15, 82:19-92:16 ("Q. Was there a preference in the timing of the release of the safety report and the IPO? A. No. Overall, the company was agnostic, it depended on what timing was to come up and how long it would take to complete a safety report and when the IPO was planned to occur."), 94:12-100:23, 106:6-109:17, 139:4-142:4 (explaining third party auditing process: "the way that the process worked is NSVRC reviewed tickets, we also review tickets, we did agreement sessions between the two teams . . . then came that audit of a hundred thousand tickets done by |

**Summary Chart for Potential Apex Deponents**
*Boston Retirement System v. Uber Technologies, Inc.*, No. 3:19-cv-06361-RS (N.D. Cal.)

| Proposed Deponent | Plaintiffs' Basis for the Deposition | Uber Defendants: Good Cause for Precluding the Deposition |
|---|---|---|
| | <ul><li>Fuldner has unique knowledge regarding Uber's background check grace periods. *See* **UBER_00777475.** [redacted]</li><li>Fuldner attended an "Uber IPO Pricing Dinner hosted by Morgan Stanley. *See* **UBER_00062138.**</li><li>Fuldner was a member of the Final Draft Review Group for Uber's Safety Report. *See* **UBER_00593176 at 3185**; *see also* **Gibbons Tr. at 237:16 – 238:19**.</li></ul><br>**Steps Taken to Obtain Information Sought Through Less Intrusive Means**<br><ul><li>**Requests for Production** (2 sets totaling 118 requests) regarding a range of topics such as IPO timing, actual and considered disclosures, communications with outsiders (including investors), due diligence, financial statements and documents, and other requests relating to Plaintiff's financial condition, passenger safety, illegal operations and New Day at Uber allegations. In response, Fuldner produced 4,707 documents as a custodian.</li><li>**Testimony of Andrew Byrne**. *See, e.g.,* **Byrne Tr. at 325:8-325:10** (defense counsel objecting to questions regarding email from Fuldner, stating: "to clarify, you're asking him in his personal capacity, since this is not one of his designated topics?").</li><li>**Testimony of Catherine Gibbons**. *See, e.g.,* **Gibbons Tr. at 239:2-5** ("So, do you have any insight into how the final draft review group made edits to the final draft? A. I do not").</li></ul> | Uber auditors to determine if that taxonomy worked before we could get to the finalized taxonomy that can be published.").)<br><ul><li>*Updates to Uber's safety policies.* (*See id.* at 38:17-49:15 [redacted], 59:22-64:4, 113:14-117:12, 152:10-153:2, 246:20-24.)</li><li>*Mr. Fuldner's presentations to the Board and Safety Advisory Board.* (*See id.* at 72:22-82:18, 143:15-145:12.)</li><li>*Emails.* The limited emails introduced which Mr. Fuldner sent or received. (*See id.* at 194:23-197:8 (explaining Mr. Fuldner's thinking in UBER_00639152).)</li></ul><ul><li>Another witness, Andrew Byrne, testified about communications involving Mr. Fuldner about the U.S. Safety Report, including statements concerning the timing of the U.S. Safety Report. (*See, e.g.,* Byrne Tr. at 321:25-329:1.)</li><li>Barney Harford will be deposed in September, and Plaintiffs will have the opportunity to ask him about his meetings with Mr. Fuldner.</li></ul>**Specific Prejudice or Harm From the Deposition**<br><ul><li>As a member of Uber's ELT, Mr. Fuldner has important and time-consuming responsibilities for the company's day-to-day operations and decision making.</li></ul> |

**Summary Chart for Potential Apex Deponents**
*Boston Retirement System v. Uber Technologies, Inc.*, No. 3:19-cv-06361-RS (N.D. Cal.)

| Proposed Deponent | Plaintiffs' Basis for the Deposition | Uber Defendants: Good Cause for Precluding the Deposition |
|---|---|---|
| | **Unique, First-Hand, Non-Repetitive Knowledge of Relevant Facts** | **Lack of First-Hand / Unique Knowledge** |
| **Jill Hazelbaker** (SVP of Marketing and Public Affairs) | <u>Hazelbaker</u> has unique knowledge regarding the factual bases underlying Plaintiffs' claims, including issues regarding <u>passenger safety, Uber's public policy, marketing layoffs, spending,</u> <u>and</u> the undisclosed known trends and uncertainties supporting Plaintiffs' Item 303 claims:<br><br>**Public Policy – Hazelbaker had sole responsibility for Uber's global policy:**<br><br>• <u>Hazelbaker was responsible for Uber's "global public policy" and "advising the senior</u> <u>leadership of the company on business strategy."</u> *See, e.g.,* **Byrne Tr. at 45:12-47:6** ("Jill's role would have been having overall responsibility for the relationship with politicians and regulators globally; public people management, obviously, managing the people and the individuals in probably a 300-person team, if I was to estimate, across the world in policy and communications; and advising the senior leadership of the company on business strategy."); *id.* **at 392:21-393:1** ("policy, comms, and marketing were all under Jill Hazelbaker, all reported to Jill Hazelbaker at this time.").<br><br>• <u>Hazelbaker's position as the head of global policy gave her a "unique vantage point" into</u> <u>Uber's operations.</u> *See, e.g.,* **UBER_00626416** ██████████████████████████ ████████████████ and *we work closely with all parts of the business globally* (which gives me a bird's-eye view into the good and the less good).")<br><br>• <u>Hazelbaker hosted "Global Policy & Comms Call[s]" where she answered pre-submitted</u> <u>questions from her direct reports that affected Uber's policy strategy worldwide, including how</u> <u>to deal with regulators.</u> *See, e.g.,* **UBER_00284896** (Hazelbaker advised her reports that ████████████████████████████; **Byrne Tr. at 139:14-15** (during these meetings, "Jill typically provide[d] an update on what's top of mind.").<br><br>• <u>Hazelbaker's position was particularly important given the relative youth of Uber as a</u> <u>company.</u> *See* **Messina Tr. at 65:6-24** ("Jill's responsibilities were to run policy and comms for the company. . . . policy is important in establishing policy around ride sharing and delivery and things like that and working with governments around the world. Comms is the external | • Ms. Hazelbaker does not have unique, first-hand knowledge on relevant topics beyond the testimony covered in numerous Rule 30(b)(6) and individual depositions.<br><br>• Plaintiffs expressly "do[] not allege . . . that any of the Defendants acted with scienter or fraudulent intent." (SAC ¶¶ 353, 361; *see id.* ¶ 341.)<br><br>• Plaintiffs' examples establish Ms. Hazelbaker received information through reports and discussions with less senior members of management.<br><br>• The SAC mentions Ms. Hazelbaker only once, in a paragraph about the departure of Uber's former Chief Marketing Officer ("CMO") Rebecca Messina. (*See* SAC ¶ 308.)<br><br>• Plaintiffs have no reason to depose Ms. Hazelbaker about Ms. Messina's departure because they have already deposed Ms. Messina herself, who testified not only about Ms. Hazelbaker's role in her departure, but that her departure had no connection to the IPO. (*See* Messina Tr. at 164:13-165:13 ███████████████████████████████████████████████ ██████████████████████████████████ *see also, e.g., id.* at 70:4-71:20.)<br><br>• Plaintiffs have no reason to depose Ms. Hazelbaker about the departure of Barney Harford, who will testify about the elimination of his position.<br><br>• Plaintiffs have no reason to depose Ms. Hazelbaker about the SAC's allegations that Uber had decided *before* the IPO to make significant layoffs in the marketing department (SAC ¶¶ 307-11), |

**Summary Chart for Potential Apex Deponents**
*Boston Retirement System v. Uber Technologies, Inc.*, No. 3:19-cv-06361-RS (N.D. Cal.)

| Proposed Deponent | Plaintiffs' Basis for the Deposition | Uber Defendants: Good Cause for Precluding the Deposition |
|---|---|---|
| | communication that happens as it relates to shareholders. This is a private company at the time for largely part of it, so communication to investors, internal – employee relations communications as part of the comms team. Not consumer direct, you know, communications, but communications about the company, corporate releases, things like that.") <br><br> **Marketing Layoffs/Spending:** <br><br> • Hazelbaker oversaw the re-structuring of marketing when Dara Khosrowshahi was hired, and personally engaged in dozens of conversations to gauge the state of the marketing team and determine what its future should be. *See, e.g.,* **UBER_00284727** <br><br> **UBER_00311507** <br><br> **UBER_00487744** (email from Hazelbaker describing Uber's marketing as ▮▮▮▮▮▮▮▮). <br><br> • Hazelbaker questioned the amount of money that was budgeted for marketing. *See, e.g.,* **UBER_00626416** (email from Hazelbaker, stating: ▮▮▮▮; <br> **UBER_00510964** (Hazelbaker emailed Chai: ▮▮▮▮). <br><br> • As a pre-condition for taking over marketing, Hazelbaker requested ▮▮▮▮ *See* **UBER_IPO_00005345**. <br><br> • Hazelbaker thought ▮▮▮ *See, e.g.,* **UBER_00022321** (▮▮▮ **UBER_00626430** | because Ms. Hazelbaker did not assume responsibility for the marketing department until *after* the IPO. (*See* Messina Tr. at 45:20-46:1; *see also id.* at 65:6-67:2▮▮▮▮▮▮▮▮▮▮▮▮▮ <br><br> • Ms. Hazelbaker lacks unique, relevant knowledge on driver classification issues. Any knowledge would be derivative of her subordinates, like Matt Kallman, who is due to testify as Uber's 30(b)(6) witness on this subject, or Andrew Byrne, whom Plaintiffs already deposed but chose not to ask any questions on this subject. (*See, e.g.,* UBER_00494715, UBER_00209621, UBER_00572497, UBER_00315997, UBER_00627208, and UBER_00802772.) <br><br> • Plaintiffs have no reason to depose Ms. Hazelbaker about the management of the company during the brief period (July-August 2017) when the company had no CEO (after Mr. Kalanick's departure but before Mr. Khosrowshahi arrived), as the SAC contains no allegations of any relevant events during that period, and there is nothing in the discovery record suggesting she has relevant, unique knowledge about that period. <br><br> **Others Could Testify From a Similar Vantage Point** <br><br> • Knowledge of allegedly relevant topics (*e.g.*, Uber's business model and growth strategy, the elimination of the CMO position, and the post-IPO downsizing of Uber's marketing team) can be investigated through Uber's 30(b)(6) and individual witnesses. For example: <br> ○ Andrew Byrne (VP, Global Public Policy) reports directly to Ms. Hazelbaker. He was deposed as Uber's 30(b)(6) witness |

**Summary Chart for Potential Apex Deponents**
*Boston Retirement System v. Uber Technologies, Inc.*, No. 3:19-cv-06361-RS (N.D. Cal.)

| Proposed Deponent | Plaintiffs' Basis for the Deposition | Uber Defendants: Good Cause for Precluding the Deposition |
|---|---|---|
| | **Messina Tr. at 138:17-18** ████████ ████ . <br><br> • Hazelbaker discussed ████████ *See* **UBER_00022319** ████████████████████████ ████ . <br><br> **Passenger Safety – Hazelbaker has unique knowledge regarding the contents and impact of Uber's Transparency Report:** <br><br> • Hazelbaker expressed significant concerns over the public response to Uber's Transparency Report and o to the report.  *See* **UBER_00049540** (email from Hazelbaker, stating: ████████████ ████████████████████ ████████ ). <br><br> • Hazelbaker cautioned against release of the Transparency Report. *See* **UBER_00639451** (████████████████ ████████████████████ ██████ . <br><br> • Hazelbaker oversaw Uber's strategy regarding how to counter negative responses to the Transparency report.  *See* **UBER_00510962** ████████████████ ████████████████ ██████ . <br><br> **UBER_00554225** (regarding the Transparency Report: ████████████████ ██ "). | concerning business model and growth strategy and in his individual capacity. <br><br> ○ Mr. Byrne testified extensively about Uber's business model and growth strategy, the legal and regulatory risk disclosures in the Offering Documents, passenger safety, and relations with regulators, as well as Ms. Hazelbaker's views on all these topics. <br><br> ▪ *Risk disclosures.*  Mr. Byrne testified that his "principal role" in the IPO was to review and "determine the accuracy of those . . . statements" in the legal and regulatory risk factors sections of the Offering Documents (Byrne Tr. at 54:25-55:7), and that "Ms. Hazelbaker trusted [him]" with that task because "[a]t that point, [his] knowledge of the detail of Uber's regulatory position around the world was probably the most significant at that time" (*id.* at 56:12-24). <br><br> ▪ *Policy plans.*  Mr. Byrne testified that Ms. Hazelbaker depended on his superior knowledge about public policy and regulatory issues around the world, and "would expect me to have a far greater depth and breadth of knowledge of . . . what is in the policy plans" for each market.  (*Id.* at 342:24-343:5.) <br><br> ▪ *Relations with regulators.*  Based on his close working relationship with Ms. Hazelbaker, Mr. Byrne was able to testify knowledgeably about Ms. Hazelbaker's statements on this subject.  When asked about a statement attributed to Ms. Hazelbaker that ████████████ ████████████████ ████████████████ ████████ |

**Summary Chart for Potential Apex Deponents**
*Boston Retirement System v. Uber Technologies, Inc.*, No. 3:19-cv-06361-RS (N.D. Cal.)

| Proposed Deponent | Plaintiffs' Basis for the Deposition | Uber Defendants: Good Cause for Precluding the Deposition |
|---|---|---|
| | • Hazelbaker believed the company needed ▮▮▮▮▮▮▮▮▮▮▮ exist. *See, e.g.*, **UBER_00049479** (email from Hazelbaker, stating ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ).<br><br>• Hazelbaker has unique knowledge regarding challenges Uber faced with regulators and the press regarding safety issues, like sexual assault. *See* **UBER_00277733** ( ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ); *see also* **UBER_00284655** (noting that Uber should be ▮▮▮▮▮▮▮▮▮ ).<br><br>• Hazelbaker was involved in preparing the US Safety Report. *See* **Rosenthal Tr. at 177:24 - 178:20**; *see also* **UBER_00785674** (Hazelbaker listed as custodian for PowerPoint presentation titled "US Safety Report.").<br><br>• Hazelbaker was a member of the Final Draft Review Group for Uber's Safety Report. *See* **UBER_00593176 at 3185**; *see also* **Gibbons Tr. at 237:16 – 238:19**.<br><br>**Uber's Business:**<br><br>• Hazelbaker was part of a "handful of individuals responsible for the business" of Uber between CEOs. *See* **Byrne Tr. at 47:2-3**; *see also* ***Id.* at 46:19-24** ("As mentioned, there was a small number of individuals who were part of the senior leadership at the company. I believe you'd count Jill Hazelbaker, Pierre-Dimitri Gore-Coty, Andrew Macdonald, and a number of the senior leaders who ran the business at that point.").<br><br>• Hazelbaker provided input into what disclosures should be in the Registration Statement. *See* **Byrne Tr. at 402:8-11** ("Q. And did any members of Uber's senior management have insight or input into that decision? A. I believe that Jill Hazelbaker had input into that decision.").<br><br>• Hazelbaker was instrumental in Uber's efforts to engage with Lyft in coordinating a joint response to the *Dynamex* ruling. *See* **UBER_00311973** (email from Hazelbaker, stating: "I have | (*Id.* at 142:23-146:5.)<br><br>• *U.S. Safety Report.* Based on his close working relationship with Ms. Hazelbaker, Mr. Byrne explained why ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*Id.* at 371:2-375:8.)<br><br>▪ *Relations with sexual assault charities and women's rights group.* Mr. Byrne already testified extensively about Uber's relationship with such organizations. (*See, e.g., id.* at 123:15-124:12 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ 382:14-387:24 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ .)<br><br>▪ *Uber's losses and business model.* Based on his close working relationship with Ms. Hazelbaker, Mr. Byrne explained |

**Summary Chart for Potential Apex Deponents**
*Boston Retirement System v. Uber Technologies, Inc.*, No. 3:19-cv-06361-RS (N.D. Cal.)

| Proposed Deponent | Plaintiffs' Basis for the Deposition | Uber Defendants: Good Cause for Precluding the Deposition |
|---|---|---|
| | had several calls with Zimmer over the past few days. We brought the teams together today and continue to work through the issues . . . . [W]e think they made a mistake modeling out the costs, which we will address with them next week."). <br><br> • Hazelbaker provided conversational updates—of which there are no records—to executive leadership regarding the legality of Uber's operations in certain jurisdictions leading up to the IPO. *See* **Byrne Tr. at 90:18-24** (Q. "So Ms. Hazelbaker would have engaged in conversations with those individuals regarding the operations in the jurisdictions that you just mentioned; correct? . . . . [Byrne:] I believe that is correct."). <br><br> • Hazelbaker is the custodian for a PowerPoint Presentation titled "Taking the lead on the 'Future of Work'", discussing Uber's strategy for framing the status of its drivers. *See* **UBER_00784458** ██████████████████████████████ ██████████████████████ . <br><br> • Hazelbaker served on the Compliance team for the Board Oversight Committee. *See* **UBER_00713189 at 314**. <br><br> • Hazelbaker presented on "Governance, Legal and Policy" at the [IPO] Syndicate Financial Diligence Meeting and responded to questions from the Underwriters Defendants. *See* **UBER_00033571**. <br><br> • Hazelbaker has unique knowledge regarding Plaintiffs' driver misclassification claims. *See, e.g.*, **UBER_00829490** (meeting invite sent by Khosrowshahi to Macdonald, Hazelbaker, and the Chief Legal Officer "to align on AB5 – exactly who does what/what the plan is."); *see also* **UBER_00785702** (Hazelbaker is the custodian of a document titled "Feedback from Legal" regarding the issue ██████████████████████████████ which states ██████████ ██████████████████████████████ ). <br><br> • Hazelbaker commissioned an "IPO Research Plan" in early 2019. *See* **UBER_00634422**; **Messina Tr. at 161:23-24**. <br><br> • Hazelbaker expressed concern regarding the fact that ██████████████████████ ████████████████ *See* **Uber_00715207 at 5215** (Message from Kallman: ██████████████ | Ms. Hazelbaker's statements reflecting investor concerns about the sustainability of Uber's business model: "I don't believe Jill Hazelbaker did think Uber had an unproven business model, but her role as a senior adviser to the business in policy and communications is to -- is to reflect the -- and characterize the skepticism that we often face with people that make sails [*sic*] of the business. I don't think that either Jill or I, in our many discussions about this, would be -- still be at the company if we felt that the company was unproven or could not be a successful business in the end." (*Id.* at 379:15-25.) <br><br> ○ Matt Kallman (VP and Global Head, Communications) was a member of the IPO core team, which had primary responsibility for preparing the Offering Documents and reports directly to Ms. Hazelbaker. <br><br> ○ Mr. Kallman will be deposed as Uber's 30(b)(6) witness concerning a number of issues, including those related to the IPO drafting process, the process of putting together the risk disclosures, the "New Day" discussion in the Offering Documents, Uber's efforts to change its corporate culture, and its 2019 layoffs, and Plaintiffs' driver-classification allegations. He will be able to testify knowledgeably about a number of topics, including: <br><br> ▪ *Driver Classification.* Mr. Kallman is better situated than Ms. Hazelbaker to testify on driver classification issues, including Uber and Lyft's joint efforts on the issue. For example, Mr. Kallman played a leading role in Mr. Khosrowshahi's joint op-ed with Lyft on the subject published in June 2019, which is discussed in the SAC at ¶¶ 234-36. (*See* **UBER_00510345**.) |

**Summary Chart for Potential Apex Deponents**
*Boston Retirement System v. Uber Technologies, Inc.*, No. 3:19-cv-06361-RS (N.D. Cal.)

| Proposed Deponent | Plaintiffs' Basis for the Deposition | Uber Defendants: Good Cause for Precluding the Deposition |
|---|---|---|
| | ███████████████████████████████████<br><br>**Steps Taken to Obtain Information Sought Through Less Intrusive Means**<br><br>• **Requests for Production** (2 sets totaling 118 requests) regarding a range of topics such as IPO timing, actual and considered disclosures, communications with outsiders (including investors), due diligence, financial statements and documents, and other requests relating to Plaintiff's financial condition, passenger safety, illegal operations and New Day at Uber allegations. In response, Hazelbaker produced 4,961 documents as a custodian.<br><br>• **Text Messages** – *Awaiting Production of Text Messages, which Defendants maintain they do not have for Ms. Hazelbaker despite discovery demonstrating that she texted regarding work (i.e., there was destruction of text messages).*<br><br>• **Deposition of direct report Andrew Byrne**, who was unable to speak to Hazelbaker's mental state regarding statements she made, or whether she reviewed portions of the Prospectus. *See* **Byrne Tr. at 373:2-17** ("And why did Ms. Hazelbaker believe that this was the most consequential thing that Uber would do between this point and the end of the year? MS. ANDERSON: Objection. MR. LINDELL:· What's the basis for the objection? MS. ANDERSON: You're asking -- you're asking him to opine on why someone else made this statement."); *see also id.* at 374:18-375:8 (same); *id.* at 379:6-13 (same); *see also id.* at 56:6-10 ("Q. Did Ms. Hazelbaker also review the accuracy of those portions of the prospectus? . . . THE WITNESS: *I cannot say for certain*, but I believe it's likely.").<br><br>• **Testimony of Catherine Gibbons**. *See* **Gibbons Tr. at 214:22 – 215:14** ("Q. Directing your attention to Bates ending 215, Mr. Kallman states: ████████████████████████████ . . . A. I do not. Q. And Ms. Hazelbaker notes: ███████████████ . . . A. I don't know what it's referring to."); *see also id.* at 216:6-18 ("Q. And Ms. | • *Offering Documents.* Mr. Kallman's position as the Policy & Communications group's (Ms. Hazelbaker's group) representative on the IPO core team puts him in a superior position to describe the process of preparing the Offering Documents. (*See* Messina Tr. 160:4-161:7; Byrne Tr. at 54:25-55:20.)<br><br>○ Rebecca Messina, Uber's former CMO, has already testified about the elimination of her position, as well as about issues relating to Plaintiffs' allegations regarding the downsizing of Uber's marketing team.<br><br>**Specific Prejudice or Harm From the Deposition**<br><br>• As a member of Uber's ELT, Ms. Hazelbaker has important and time-consuming responsibilities for the company's day to day operations and decision making. |

**Summary Chart for Potential Apex Deponents**
*Boston Retirement System v. Uber Technologies, Inc.*, No. 3:19-cv-06361-RS (N.D. Cal.)

| Proposed Deponent | Plaintiffs' Basis for the Deposition | Uber Defendants: Good Cause for Precluding the Deposition |
|---|---|---|
| | Hazelbaker states that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ o you know what she's referring to?  A. I do not."); *id.* at 216:24 – 217:8 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ A. I do not know."); *id.* at 225:22 – 226:12 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Q. Do you know when he asked her that?  A. I do not know. . ."); *id.* at 239:2-5 ("So, do you have any insight into how the final draft review group made edits to the final draft? A. I do not"). | |
| **Andrew Macdonald** (VP, Americas Operations and Global Business Development) | **Unique, First-Hand, Non-Repetitive Knowledge of Relevant Facts**<br><br>**Macdonald has unique knowledge regarding the factual bases underlying Plaintiffs' claims, including issues regarding <u>passenger safety, Uber's business model, and</u> the undisclosed known trends and uncertainties supporting Plaintiffs' Item 303 claims:**<br><br>**Passenger Safety:**<br><br>• <u>Macdonald noted shortly before the filing of the IPO that, according to a "US&C Single Source of Truth Business Update," Uber</u> ▮▮▮▮▮▮▮▮▮▮ <u>and that he would "</u>▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮".  *See* **UBER_00049479**.<br>• <u>Macdonald received "Media Coverage Report[s]," that informed him of serious safety incidents involving Uber across the world.</u> *See, e.g.*, **UBER_00070448** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮); **UBER_00382429** (Macdonald received a report stating ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮).<br>• <u>Macdonald received weekly updates from Uber's Law Enforcement Outreach managers.</u> *See, e.g.*, **UBER_00218322** (email from Ana Lorena Vigil titled "LE Outreach update week ending April 26, 2019," stating ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ | **Lack of First-Hand / Unique Knowledge**<br><br>• Mr. Macdonald does not have unique, first-hand knowledge on relevant topics beyond the testimony covered in numerous Rule 30(b)(6) and individual depositions.<br>• SAC makes no mention of Mr. Macdonald whatsoever.<br>• Plaintiffs expressly "do[] not allege . . . that any of the Defendants acted with scienter or fraudulent intent." (SAC ¶¶ 353, 361; *see id.* ¶ 341.)<br>• Plaintiffs' examples establish Mr. Macdonald received information through reports and discussions with less senior members of management.<br>• Mr. Macdonald was not directly responsible for passenger safety, and his knowledge of such issues is limited compared to other available witnesses.<br>• Mr. Macdonald was not directly responsible for driver classification issues and Uber's response to Dynamex and AB5, which were primarily handled by members of the Policy & Communications department like Matt Kallman, who will be testifying. |

**Summary Chart for Potential Apex Deponents**
*Boston Retirement System v. Uber Technologies, Inc.*, No. 3:19-cv-06361-RS (N.D. Cal.)

| Proposed Deponent | Plaintiffs' Basis for the Deposition | Uber Defendants: Good Cause for Precluding the Deposition |
|---|---|---|
| | ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮); UBER_00381127 ("LE Outreach update week ending May 10, 2019").<br><br>• MacDonald was a member of the Final Draft Review Group for Uber's Safety Report. *See* **UBER_00593176 at 3185**; *see also* **Gibbons Tr. at 237:16 – 238:19**.<br><br>**Business Model:**<br><br>• Macdonald was responsible for Uber's strategy for competing with Lyft on incentive spending. *See, e.g.*, **UBER_00213561** (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ **UBER_00378786** (comparing Uber to Lyft, noting Uber's 2020 Rides plan will be ▮▮▮▮▮▮▮▮▮▮▮▮▮▮).<br><br>• Macdonald reported Uber's performance v. Lyft to upper management, including Khosrowshahi . *See, e.g.*, **UBER_00610286** (writing in an email to Khosrowshahi and others that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮) **Ceremony Tr. at 358:22-359:2** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮<br><br>• Macdonald was heavily involved in discussions with Lyft on how to jointly handle the *Dynamex* fallout. *See* **UBER_00312030** ("We're going to need to some hand holding here".).<br><br>• Macdonald oversaw how Khosrowshahi was updated regarding ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* **UBER_00481828** ("Also make sure you have press stats handy . . . . He'll want to know that as press coverage is a good indicator of how much noise we're making.").<br><br>• Macdonald led efforts for partnerships with companies such as Marriott per Khosrowshahi's instructions. *See* **UBER_00066558** (Dara writes in an email "In copy you have Andrew Macdonald; Mac is Global Head of BD and can spearhead this on our end.").<br><br>• Macdonald was part of the senior leadership team in charge of running Uber between CEOs. *See* **Byrne Tr. at 47:7-48:12**. | • Mr. Macdonald's knowledge of discussions of potential partnerships with other companies (such as Marriott) after the IPO is irrelevant.<br><br>• Plaintiffs have no reason to depose Mr. Macdonald about the management of the company during the brief period (July-August 2017) when the company had no CEO (after Mr. Kalanick's departure but before Mr. Khosrowshahi's arrival), as the SAC contains no allegations of any relevant events during that period and there is nothing in the discovery record suggesting he has relevant, unique knowledge about that period.<br><br>**Others Could Testify From a Similar Vantage Point**<br><br>• Knowledge of allegedly relevant topics can be investigated through Uber's 30(b)(6) and individual witnesses. For example:<br><br>○ Andrew Byrne (VP, Global Public Policy), who was deposed as Uber's 30(b)(6) witness concerning Uber's business model and growth strategy and also in his individual capacity, answered numerous questions relating to, among other things:<br><br>▪ Plaintiffs' allegations about Uber's business model and growth strategy, including testimony on Uber's spending on incentives and competitive position. (*See, e.g.*, Byrne Tr. a 75:11-79:24, 310:4-315:25.)<br><br>▪ The single introduced email which Mr. Macdonald received. (Byrne Tr. at 329:6-335:14.)<br><br>▪ Plaintiffs did not ask Mr. Byrne any substantive questions about Mr. Macdonald or his role with respect to Uber's business model.<br><br>○ Glen Ceremony (Chief Accounting Officer), who was deposed as Uber's 30(b)(6) witness concerning Uber's financial |

**Summary Chart for Potential Apex Deponents**
*Boston Retirement System v. Uber Technologies, Inc.*, No. 3:19-cv-06361-RS (N.D. Cal.)

| Proposed Deponent | Plaintiffs' Basis for the Deposition | Uber Defendants: Good Cause for Precluding the Deposition |
|---|---|---|
| | <ul><li>Macdonald has unique knowledge regarding international ridesharing regulations. *See, e.g.*, **UBER_00610219** (email titled "Mexico City update," stating: "the Mexico City government published their new ridesharing regulation. . . . the mayor and the secretary of transportation based the changes on a more transparency / less corruption narrative. . . . As we agreed, our initial public response will be firm but not aggressive"); **UBER_000793996** (Macdonald presented on "Monterrey Regulatory Strategy," stating the "Objective" was to "Influence both the Executive and Congress to: a) Avoid discussing Law Bill b) present and/or vote a Law Bill with no relevant information c) Influence on Enforcement").</li><li>Macdonald has unique knowledge regarding Plaintiffs' driver misclassification claims. *See, e.g.*, **UBER_00829490** (meeting invite sent by Khosrowshahi to Macdonald, Hazelbaker, and the Chief Legal Officer "to align on AB5 – exactly who does what/what the plan is.").</li><li>As part of management of rideshare operations, Macdonald had knowledge of trends of declining growth associated with UberX. *See* **UBER_00792066 at 071** ▮▮▮▮▮▮▮"); *id.* at **076** ▮▮▮▮▮</li><li>Macdonald was involved in discussions regarding responses to investor questions leading up to the IPO. *See, e.g.*, **UBER_00003350** (email chain titled "Investor question – urgent," where Macdonald states: "The key points that need to be expanded are on price and access . . .").</li><li>Macdonald received weekly metric updates for Uber Billings CP and Uber Eats US and Canada. *See, e.g.*, **UBER_00218298** (email containing "Uber Eats US & Canada Weekly Metrics Update" for "Week of 29 April 2019"); **UBER_00218301** (email containing "Uber Eats US & Canada Weekly Metrics Update" for "Week of 22 April 2019"); **UBER_00218310** (email titled "Global Intelligence Weekly Review \| 4.15 – 4.21").</li><li>According to Khosrowshahi, Macdonald oversaw "Global Rides business along with key functions like customer support and safety." *See* **UBER_00284820**.</li></ul> | condition and also in his individual capacity, testified extensively about issues relating to Plaintiffs' financial condition allegations as well as the single introduced email which Mr. Macdonald received. (*See* Ceremony Tr. at 344:5-360:10.)<br><br>○ Catherine Gibbons (Global Head of Platform Safety), who was deposed as Uber's 30(b)(6) witness concerning passenger safety, testified extensively about issues relating to Plaintiffs' passenger safety allegations. She also testified about the single introduced email which Mr. Macdonald received. (*See* Gibbons Tr. at 129:25-134:6, 153:10-157:12.)<br><br>○ Barney Harford, Uber's former COO, whom Plaintiffs are scheduled to depose in September in his individual capacity, was Mr. Macdonald's direct supervisor until Mr. Harford left Uber after the IPO. He will be able to testify knowledgeably about Uber's business model and growth strategy and Mr. Macdonald's responsibilities at the company before the IPO.<br><br>▪ For example, Mr. Ceremony testified that both "Barney [Harford] and Andrew Macdonald . . . ha[d] the decision on . . . ▮▮▮▮▮▮▮▮▮▮ (Ceremony Tr. at 358:22-359:2.) (Plaintiffs cite the same testimony but selectively edited out any mention of Mr. Harford's role.)<br><br>▪ Mr. Harford is also an active participant in correspondence about Uber's competitive position, including correspondence with Mr. Macdonald that Plaintiffs cite. (*See, e.g.*, UBER_00610286.)<br><br>○ Matt Kallman (VP and Global Head, Communications) was designated as Uber's 30(b)(6) witness concerning issues related |

**Summary Chart for Potential Apex Deponents**
***Boston Retirement System v. Uber Technologies, Inc.*, No. 3:19-cv-06361-RS (N.D. Cal.)**

| Proposed Deponent | Plaintiffs' Basis for the Deposition | Uber Defendants: Good Cause for Precluding the Deposition |
|---|---|---|
| | **Steps Taken to Obtain Information Sought Through Less Intrusive Means**<br><br>• **Requests for Production** (2 sets totaling 118 requests) regarding a range of topics such as IPO timing, actual and considered disclosures, communications with outsiders (including investors), due diligence, financial statements and documents, and other requests relating to Plaintiff's financial condition, passenger safety, illegal operations and New Day at Uber allegations. In response, Macdonald produced 5,486 documents as a custodian.<br><br>• **Testimony of Andrew Byrne**. *See, e.g.*, **Byrne Tr. at 47:11-22** (Q. And what was Mr. Macdonald's role at that time? A. He was a senior member of the operations organization. I wouldn't -- I wouldn't like to speculate on exactly what his role was, though. I'm not sure I can remember. Q. So you're not sure what Mr. Macdonald's job responsibilities were at that time; is that right? A. I – [Objection.]. THE WITNESS: Not insofar to give you a perfectly accurate picture."); ***id.* at 48:15-19** ("Q. And did Mr. Macdonald play a role in the selection of Mr. Khosrowshahi as CEO? [Objection] A. I don't believe so, but I wouldn't necessarily have full information on that."); defense counsel objecting to questions regarding email from Fuldner, stating: "to clarify, you're asking him in his personal capacity, since this is not one of his designated topics?"); ***id.* at 49:1-3** ("Q. And who did Mr. Macdonald report to at that time? A. I'm not sure.").<br><br>• **Testimony of Catherine Gibbons**. *See* **Gibbons Tr. at 239:2-5** ("So, do you have any insight into how the final draft review group made edits to the final draft? A. I do not"). | to Plaintiffs' driver-classification and 2019 layoff allegations and will be deposed by Plaintiffs in September. He will be able to testify knowledgeably about a number of topics, including:<br><br>▪ *Driver Classification.* Mr. Kallman is better situated than Ms. Macdonald to testify on driver classification issues, including Uber and Lyft's joint efforts on the issue. For example, Mr. Kallman played a leading role in Mr. Khosrowshahi's joint op-ed on the subject with Lyft published in June 2019. (*See* UBER_00510345.)<br><br>▪ *Offering Documents.* Mr. Kallman's position as a member of the IPO core team puts him in a superior position to describe the process of preparing the Offering Documents. (*See* Messina Tr. 160:4-161:7; Byrne Tr. at 54:25-55:20.)<br><br>○ Dennis Cinelli, who was Uber's Global Head of Strategic Finance during the Relevant Time Period, has at least as much knowledge of issues related to incentive spending as Mr. Macdonald based on documents Plaintiffs cite (*see, e.g.*, UBER_00213561, UBER_00378786) and is available to testify.<br><br>**Specific Prejudice or Harm From the Deposition**<br><br>• As a member of Uber's ELT, Mr. Macdonald has important and time-consuming responsibilities for the company's day to day operations and decision making. |