Jonathan Gardner (admitted *pro hac vice*)
Alfred L. Fatale III (admitted *pro hac vice*)
Joseph N. Cotilletta (admitted *pro hac vice*)
Robert S. Rowley (admitted *pro hac vice*)
LABATON SUCHAROW LLP
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
Email: jgardner@labaton.com
       afatale@labaton.com
       jcotilletta@labaton.com
       rrowley@labaton.com

*Lead Counsel for the Class*

[Additional Counsel on Signature Page]

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| BOSTON RETIREMENT SYSTEM,<br><br>                    Plaintiff,<br><br>         v.<br><br>UBER TECHNOLOGIES, INC., et al.,<br><br>                    Defendants. | Case No.: 3:19-cv-06361-RS<br><br>ECF CASE<br><br>**AMENDED JOINT DISCOVERY LETTER TO COURT CONCERNING APEX DEPOSITIONS**<br><br>Hearing Date:  October 20, 2023<br>Time:          10:00am<br>Courtroom:     3<br><br>Complaint Filed: October 4, 2019<br>Trial Date:      None Set |

July 19, 2023 <u>Via ECF</u>

Hon. Donna M. Ryu
U.S. District Court, Northern District of California
Ronald V. Dellums Fed. Bldg. & U.S. Courthouse
1301 Clay Street
Oakland, California 94612

RE: <u>*Boston Retirement System v. Uber Technologies, Inc.*, No. 3:19-cv-06361-RS (N.D. Cal.)</u>

Dear Judge Ryu:

Lead Plaintiff Boston Retirement System ("BRS"), and defendants Uber Technologies, Inc. and the Individual Defendants[1] (collectively, "Uber"), respectfully submit this letter regarding BRS's Omnibus Notice of Depositions (the "Notice") requesting 22 Uber depositions. Uber seeks an order staying 16 "apex" depositions prior to completion of non-apex depositions, and believes that the dispute is also not ripe until such non-apex depositions occur. BRS disagrees and cross-moves to compel. Counsel have conferred numerous times by email and phone, culminating in BRS declaring impasse on July 17. The fact discovery cutoff is September 20, 2023, and dispositive pretrial motions are due March 12, 2024. ECF No. 271. No trial date has been set.

## I.     Uber's Statement

BRS's Notice exemplifies the "tremendous potential for abuse or harassment" inherent in apex deposition requests. *Celerity, Inc. v. Ultra Clean Holding*, 2007 WL 205067, at *3 (N.D. Cal. Jan. 25, 2007). Without taking any substantive depositions after four years, BRS now seeks 17 apex depositions, including the entire Uber Board, the CEO, and much of Uber's Executive Leadership Team ("ELT"),[2] as well as two underwriters and four senior Uber employees: Emily Reuter (VP, Corp. Finance), Andrew Byrne (VP, Global Public Policy), Glen Ceremony (Chief Accounting Officer), and Rebecca Messina (ex-Chief Marketing Officer). Because of the prejudice and burden associated with misuse of their time and testimony, "[c]ourts generally refuse to allow the immediate deposition of high-level executives" and directors (1) "before the depositions of lower level employees with more intimate knowledge of the case," *Mehmet v. PayPal, Inc.*, 2009 WL 921637, at *2 (N.D. Cal. Apr. 3, 2009) (Seeborg, J.), (2) when they lack "unique first-hand, non-repetitive knowledge of the facts at issue," *Apple Inc. v. Samsung Electronics Co.*, 282 F.R.D. 259, 263 (N.D. Cal. 2012) (citation omitted), and/or (3) when plaintiffs fail to exhaust "less intrusive discovery." *Id. See also In re Transpacific Passenger Air Transp. Antitrust Litig.*, 2014 WL 939287, at *5 (N.D. Cal. Mar. 6, 2014) (Ryu, J.) (considering "whether and how the party seeking [CEO's] deposition has attempted to use other less intrusive discovery methods, in addition to whether the deponent possesses unique, firsthand knowledge."); *Garcia v. Primary Health Care, Inc.*, 2022 WL 1697965, at *5 (S.D. Iowa Jan. 31, 2022) (outside directors).

---

[1] The Individual Defendants ("IDs") are Uber's CEO (Dara Khosrowshahi), CFO (Nelson Chai), CAO (Glen Ceremony), and the 11 outside directors as of the date of the IPO.

[2] Current and former ELT members include proposed deponents Khosrowshahi, Chai, Travis Kalanick (ex-CEO), Barney Harford (ex-COO), and SVPs Andrew Macdonald (Mobility & Business Operations), Jill Hazelbaker (Marketing & Public Affairs), Gus Fuldner (Safety & Core Services). For reasons stated herein, Uber does not object to Mr. Harford's deposition.

BRS's abusive campaign to harass Uber's leadership must be rejected because it has failed to use less burdensome means to show that BRS's targets may have non-redundant, unique knowledge. Uber has produced documents from 18 relevant non-apex custodians with more intimate knowledge of the relevant issues, but BRS plans to depose only four. And rather than waiting to complete those depositions or the depositions of two other 30(b)(6) witnesses (VP of Commc'ns Matt Kallman and Global Head of Platform Safety Catherine Gibbons) or former COO Harford (whom Uber agrees has unique knowledge regarding his departure), BRS demands that apex depositions proceed now. That is improper. BRS first "must make a good faith effort to extract the information it seeks from interrogatories and depositions of lower-level . . . employees" first. *Celerity*, 2007 WL 205067, at *5; *see also Bicek v. C & S Wholesale Grocers, Inc.*, 2013 WL 5425345, at *5 (E.D. Cal. Sept. 27, 2013) (barring apex depositions when "plaintiff has not shown that other less intrusive means of discovery have been exhausted").

BRS argues: (1) many deponents are individual defendants; (2) the directors' testimony could be relevant to an affirmative defense; (3) evidence shows senior executives received reports from lower employees; and (4) BRS is out of time after waiting four years to notice any substantive depositions. These justifications are insufficient. **First**, that Uber's Board, CEO, and CFO are named as defendants does not eliminate the apex issue. "[A]n exception to [the apex] doctrine for named defendants likely would be inconsistent with its aim of thwarting harassment." *Myun-Uk Choi v. Tower Rsch. Cap. LLC*, 2019 WL 6271324, at *2 (S.D.N.Y. Nov. 25, 2019). Thus, courts "have barred such 'apex' depositions even when the deponent is a named defendant." *City of Sterling Heights Gen. Employees' Ret. Sys. v. Prudential Fin., Inc.*, 2015 WL 9434782, at *2 n.1 (E.D. Cal. Dec. 24, 2015); *see also Topete v. City of Mesa*, 2020 WL 8872800 (D. Ariz. Apr. 29, 2020). This issue is particularly acute for the outside directors, against whom there are no allegations except as to their position as statutory defendants. *See Newport v. Burger King Corp.*, 2011 WL 3607973, at *2 (N.D. Cal. Aug. 16, 2011) (Ryu, J.) (denying request to depose all named plaintiffs because pleadings lacked individualized claims or defenses).

*Second*, the due diligence defense requires defendants to show "reasonable investigation and reasonable ground for belief" that the statements at issue were not false or misleading, which is evaluated under an *objective* standard. 15 U.S.C. § 77k(c) ("the standard of reasonableness shall be that required of a prudent man"). Courts consider the process undertaken by the Board, such as meeting attendance, information received, and directors' review of the registration statement. *See, e.g.*, *Weinberger v. Jackson*, 1990 WL 260676, at *4 (N.D. Cal. Oct. 11, 1990). Plaintiffs make no individualized allegations on these points about the outside directors, who attended the same meetings and had access to the same information. And BRS does not cite a single Section 11 case where each director was deposed. That makes sense. The '33 Act has no scienter requirement, and Section 12's solicitation provision is irrelevant as there is no allegation that directors individually solicited sales of Uber stock. Item 303 concerns disclosures of "material events and uncertainties known to management" collectively, not the subjective knowledge of each director. *See* 17 CFR § 229.303; Comm'n Guidance Regarding Mgmt.'s Discussion and Analysis of Financial Condition and Results of Operations, 68 FR 75056 (Dec. 29, 2003) (disclosures "[p]rovide insight into [issues] . . . on which the company's executives are most focused").

*Third*, none of the materials BRS cites show relevant, unique knowledge by any outside director, nor demonstrate unique knowledge by senior executives. The one email cited to support CEO Khosrowshahi's deposition, about the benefits of a direct listing in lieu of an IPO, UBER_238845,

is irrelevant. The emails purportedly justifying CFO Chai's deposition include that same email plus emails on topics that will be extensively addressed in 30(b)(6) depositions on incentives and corporate culture. The emails with SVP Hazelbaker include witnesses who are already testifying. *See* UBER_49540; 49479; 487744. And the emails with SVPs Fuldner or Macdonald include mass distribution emails, UBER_70448, emails with other testifying witnesses, UBER_382429, one on the irrelevant topic of bike safety, UBER_215150, and others on topics that will also be explored in 30(b)(6) depositions on layoffs, passenger safety and business model. Nor can the cited testimony on corporate reporting lines support apex depositions. That regional safety managers reported up to the CEO via "regional general managers," Tr. at 67:10-20, and the CEO "attended some of the monthly business reviews," Tr. at 172:9-10, is unsurprising. If sitting atop reporting lines were sufficient, the apex doctrine would be meaningless.

*Fourth*, BRS cannot rely on its own delay. *See Affinity Labs of Texas v. Apple, Inc.*, 2011 WL 1753982, at *10 (N.D. Cal. May 9, 2011) (blocking CEO's deposition after plaintiff delayed deposing "lower-level witnesses" and "fail[ed] to serve interrogatories" before discovery cutoff); *cf. Medimmune, LLC v. PDL Biopharma, Inc.*, 2010 WL 2640473, at *2 (N.D. Cal. June 30, 2010) (allowing CEO's deposition only after failed attempts to depose other witnesses). Uber had produced the emails BRS cites by March; BRS could have started depositions months ago.

Even if other depositions show an apex witness has relevant, unique knowledge, that witness's deposition should be truncated and limited to topics concerning such knowledge. *See, e.g.*, *In re Transpacific*, 2014 WL 939287, at *5-6 (permitting two-hour deposition of CEO on limited subjects after numerous other employees were deposed); *Google Inc. v. Am. Blind & Wallpaper Factory, Inc.*, 2006 WL 2578277, at *3 n.3 (N.D. Cal. Sept. 6, 2006) (Seeborg, J.) (permitting three-hour deposition of Google's co-founder on one topic "only *after* learning from Google's designated 30(b)(6) witnesses that he may have relevant first hand information"). Uber respectfully requests a protective order staying depositions of Uber's apex witnesses (except Mr. Harford) until the need for these depositions is shown through non-apex depositions.

Finally, certain outside directors have additional objections, defenses, and immunities that they expressly reserve and do not waive in making this specific objection to their depositions as untimely apex depositions. To the extent the Court permits BRS to proceed with apex depositions now, the outside directors will address such arguments in separate submissions.

II.   **Lead Plaintiff's Statement**[3]

For two months, Uber sought to preclude any depositions of the Apex Witnesses, which include 13 IDs and 3 key employee witnesses. Now, Uber asserts that it "is not categorically refusing to produce" such witnesses, but that BRS must first depose other "non-apex" witnesses before the parties "can then meet and confer" regarding the 16 Apex Witness depositions they have already claimed to be "duplicative and unnecessary." Uber's transparent attempt to delay and obstruct BRS's discovery of critical testimony is baseless, inefficient, and unfeasible given the fast-approaching fact discovery cut-off, the current limit of 24 fact depositions per side, and the substantial amount of existing evidence confirming each witness's unique personal knowledge of

---

[3] Unless otherwise noted, emphasis is added, internal citations are omitted, and "¶_" references refer to the Second Amended Class Action Complaint (ECF 137) ("Complaint").

Page 3 of 5

highly relevant facts. Uber should produce these witnesses as described below and, within one day of the Court's ruling, provide three available deposition dates for each witness.

The "apex doctrine" is intended to shield corporate officers from abuse and harassment when they have "**no first hand knowledge of the facts of the case**." *In re Transpacific Passenger Air Transp. Antitrust Litig.*, 2014 WL 939287, *2 (N.D. Cal. Mar. 6, 2014). But if they "**may** have **any** first-hand knowledge of relevant facts, **the deposition should be allowed**," *In re Apple Iphone Antitrust Litig.*, 2021 WL 485709, *5 (N.D. Cal. Jan. 26, 2021), including when an officer's "position as the supervisor in charge of [a] department **could** provide unique, firsthand information." *Transpacific*, 2014 WL 939287, at *4. When, as here, a case concerns "aspects of a company's business model that are plainly the result of high-level executive decisions," "high-level executives will be deposed, and . . . [it] will **not** be abusive or harassing." *Apple*, 2021 WL 485709, at *4.

To preclude the Apex Witness depositions, Uber faces a "'heavy burden'" of showing "'specific prejudice or harm,'" which requires "'**extraordinary circumstances**.'" *Transpacific*, 2014 WL 939287, at *1-*2, *5. Because the existing evidence precludes Uber from meeting that heavy burden here, there is no basis to delay the depositions, given the limited time before the discovery cut-off. *See Medimmune, LLC v. PDL Biopharma, Inc.*, 2010 WL 2640473, at *2 (N.D. Cal. June 30, 2010) (compelling deposition of former CEO before other employee depositions where there was "insufficient time" to exhaust "all other possible sources of relevant testimony"); *WebSideStory, Inc. v. NetRatings, Inc.*, 2007 WL 1120567, at *4 (S.D. Cal. Apr. 6, 2007) (same); *Minter v. Wells Fargo Bank, N.A.*, 258 F.R.D. 118, 127 (D. Md. 2009) (rejecting "'wait and see' approach," which is "**meant to protect high-level executives who lack unique knowledge**").

**IDs**. The 14 IDs consist only of individuals who "participated in the preparation of and signed the Registration Statement." ¶¶71-86. Each ID intends to avoid liability through **affirmative proof** that they had **reasonable grounds to believe** that the alleged misrepresentations were true based on their own **individual exercise** of due diligence. ECF 174 at 71-72 (Aff. Def. Nos. 12-15). This is a fact-specific, individual defense, which must be proven on the basis of each ID's **personal conduct and beliefs**. 15 U.S.C. §77k(c). In addition, the IDs are liable under 17 C.F.R. §229.303(a)(3)(ii) for concealing known adverse trends, ¶208, so BRS must examine each ID's knowledge of such trends. BRS must also examine each ID on acts of solicitation under Section 12. *Pinter v. Dahl*, 486 U.S. 622, 647 (1988). As named defendants, each ID will be called to testify at trial concerning the above matters. Thus, to adequately cross-examine them at trial, BRS must, at a minimum, be allowed to depose each ID on these issues.

In addition, IDs Dara Khosrowshahi and Nelson Chai clearly possess unique personal knowledge of material facts regarding BRS's claims. Many of the alleged misrepresentations come from a letter **written by Khosrowshahi**, and the Complaint asserts several factual allegations directly tied to him. *E.g.*, ¶¶145-159, 234, 270-271, 304, 307, 327. Extensive evidence – including Uber's own testimony – also confirms his direct involvement in several highly relevant matters. *E.g.*, Tr. at 67:10-20 (regional safety managers "**reported up to Dara**"); 163:07-12 ("decisions over individual regions" were "**centralized through Dara**"); 172:03-10 (attended "monthly business reviews"); UBER_00238845 ████████████████████████████████████████████████████████████.[4] Evidence also shows that Chai was heavily involved in Uber's IPO strategy, was responsible for

---

[4] Due to space limitations, BRS is unable to detail all of the vast evidence concerning each witness's personal knowledge of relevant facts but can provide additional evidence upon request.

driver incentive spending and its impact on ANR (a key part of BRS's financial condition claims), regularly attended meetings regarding Uber's business model, and oversaw the finance team. *E.g.*, UBER_00238845 ▮▮▮; UBER_00238782 (driver incentive spending); UBER_00211217 (ANR impact of driver incentives); UBER_00626598 ▮▮▮; Tr. at 146:07-23, 180:11-18. BRS has offered to limit the 11 Board member depositions to 5 hours on due diligence, solicitation, and knowledge of concealed trends, but seeks 7 hours of testimony from Khosrowshahi and Chai due to their extensive personal knowledge. Uber rejected this proposal, agreeing only to offer CAO Ceremony, while proposing an unnecessary and impractical "wait and see" approach for the remaining 13 IDs.

***Non-Defendants***. Uber also opposes the depositions of three non-defendant witnesses, each of whom currently serves as one of Uber's several SVPs, and two of whom were listed on Uber's initial disclosures. These witnesses supervised and managed departments directly tied to BRS's allegations, and plainly possess unique, personal knowledge of critical facts. While Uber contends that these witnesses' knowledge may potentially be duplicative of individuals Uber intends to designate as 30(b)(6) witnesses, "that other witnesses may be able to testify as to what occurred at a particular time or place does ***not*** mean that a high-level corporate officer's testimony would be 'repetitive.' Indeed, it is ***not uncommon*** for different witnesses to an event to have differing recollections of what occurred." *First Nat'l Mortg. Co. v. Fed. Realty Inv. Trust*, 2007 WL 4170548, at *2 (N.D. Cal. Nov. 19, 2007). Further, because none of these witnesses are "classic apex witnesses," "***less is required to justify their depositions***." *Apple*, 2021 WL 485709, at *4 (compelling depositions of SVPs). BRS seeks 7 hours of testimony from each of these witnesses.

***Jill Hazelbaker***. Hazelbaker has served as SVP of Marketing and Public Affairs since 2015, overseeing Uber's public policy team and communications. *See* Tr. at 119:7-120:6; 136:10-18. She possesses unique knowledge regarding passenger safety, marketing layoffs, and spending. *E.g.*, UBER_00049540 ▮▮▮; UBER_00049479 (stating "***we've got to be honest about where challenges exist***" and that she had "said the same to ***Dara***"); UBER_00487744 ▮▮▮.

***Andrew Macdonald***. At the time of the IPO, Macdonald was VP, Americas Operations and Global Business Development, overseeing Uber's rideshare operations. Tr. at 93:1-24. He possesses unique personal knowledge regarding BRS's passenger safety and business model claims. *E.g.*, UBER_00070448 ▮▮▮; UBER_00382429 ▮▮▮; UBER_00481828 (email regarding upcoming bill's impact on operations).

***Gus Fuldner***. At the time of the IPO, Fuldner was VP, Safety and Insurance, overseeing passenger safety. Tr. at 46:1-20. He possesses unique personal knowledge regarding BRS's passenger safety claims. *E.g.*, UBER_00303928 (document detailing sexual assault complaints and Uber's responses); UBER_00215373 ▮▮▮; UBER_00215150 ▮▮▮; UBER_00727914 ▮▮▮.

Page 5 of 5

Lead Counsel and counsel for the Uber Defendants attest that they have met and conferred regarding these discovery issues, with the last meet and confer occurring on July 17, and jointly request oral argument.

Respectfully submitted,

LABATON SUCHAROW LLP

By: */s/ Alfred L. Fatale III*

Jonathan Gardner (admitted *pro hac vice*)
Alfred L. Fatale III (admitted *pro hac vice*)
Joseph N. Cotilletta (admitted *pro hac vice*)
Robert S. Rowley (admitted *pro hac vice*)
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
Email: jgardner@labaton.com
    afatale@labaton.com
    jcotilletta@labaton.com
    rrowley@labaton.com

*Lead Counsel for the Class*

LEVI & KORSINSKY LLP
Gregory M. Nespole (admitted *pro hac vice*)
55 Broadway, 10th Floor
New York, NY 10006
Telephone: (212) 363-7500
Facsimile: (212) 363-1294
Email: gnespole@zlk.com

   -and-

Adam M. Apton (SBN 316506)
388 Market Street, Suite 1300
San Francisco, CA 94111
Telephone: (415) 373-1671
Facsimile: (415) 484-1294
Email: aapton@zlk.com

*Liaison Counsel for Lead Plaintiff
   Boston Retirement System*

Cc: All Counsel of Record (*via ECF*)

SHEARMAN & STERLING LLP

By: */s/ Daniel H.R. Laguardia*

Daniel H.R. Laguardia (SBN 314654)
535 Mission Street, 25th Floor
San Francisco, CA 94105-2997
Telephone: (415) 616-1100
Facsimile: (415) 616-1199
Email: daniel.laguardia@shearman.com

   -and-

Paula Anderson (*admitted pro hac vice*)
Agnès Dunogué (*admitted pro hac vice*)
Dennis D. Kitt (*admitted pro hac vice*)
599 Lexington Avenue
New York, NY 10022-6069
Telephone: 212.848.4000
Facsimile: 212.848.7179
Email: paula.anderson@shearman.com
    agnes.dunogue@shearman.com
    dennis.kitt@shearman.com

*Attorneys for Defendants Uber Technologies, Inc., Dara Khosrowshahi, Nelson Chai, Glen Ceremony, Ronald Sugar, Ursula Burns, Garrett Camp, Matt Cohler, Ryan Graves, Arianna Huffington, Travis Kalanick, Wan Ling Martello, Yasir Al-Rumayyan, John Thain, and David Trujillo*

## ECF ATTESTATION

Pursuant to Civil L.R. 5-1(i)(3), the filer attests that concurrence in the filing of this document has been obtained from each of the other signatories thereto.

Executed this 19th day of July, 2023.

/s/ Dennis D. Kitt