Daniel H.R. Laguardia (SBN 314654)
SHEARMAN & STERLING LLP
535 Mission Street, 25th Floor
San Francisco, CA 94105-2997
Telephone:  415.616.1100
Facsimile:  415.616.1199
Email: daniel.laguardia@shearman.com

Paula H. Anderson (admitted *pro hac vice*)
Agnès Dunogué (admitted *pro hac vice*)
Dennis D. Kitt (admitted *pro hac vice*)
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, NY 10022-6069
Telephone:  212.848.4000
Facsimile:  212.848.7179
Email: paula.anderson@shearman.com
       agnes.dunogue@shearman.com
       dennis.kitt@shearman.com

*Attorneys for Defendant Uber Technologies, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| BOSTON RETIREMENT SYSTEM, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UBER TECHNOLOGIES, INC., *et al.*,<br><br>Defendants. | Case No. 3:19-cv-06361-RS<br><br>**DEFENDANT UBER TECHNOLOGIES, INC.'S OPPOSITION TO LEAD PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS**<br><br>**Date**:   December 14, 2023<br>**Time**:   1:00 pm<br>**Place**:  4, 3rd Floor<br>**Judge**:  Hon. Donna M. Ryu |

# TABLE OF CONTENTS

Page

INTRODUCTION .................................................................................................................... 1

BACKGROUND ...................................................................................................................... 1

ARGUMENT ............................................................................................................................ 2

    I.    The Challenged Analyses Are Shielded by the Work Product Doctrine ................ 2

    II.    BRS Fails to Provide a Basis to Pierce the Work Product Protection .................... 5

    III.    Each of BRS's Category-Specific Challenges to Uber's Privilege Log Fails ........ 5

    IV.    *In* Camera Review Is Not Warranted ....................................................................... 8

CONCLUSION ......................................................................................................................... 9

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*AT&T Corp. v. Microsoft Corp.*,
  2003 WL 21212614 (N.D. Cal. Apr. 18, 2003) ............................................................................. 8

*U.S. ex rel. Bagley v. TRW, Inc.*,
  212 F.R.D. 554 (C.D. Cal. 2003) ................................................................................................. 5

*In re Blue Cross Blue Shield Antitrust Litig.*,
  2018 WL 11425553 (N.D. Ala. Nov. 7, 2018) ............................................................... 1, 3, 7, 8

*Bostick v. Atl. Mut. Ins. Co.*,
  2008 WL 11338091 (C.D. Cal. Jan. 16, 2008) ............................................................................. 5

*In re Diasonics Sec. Litig.*,
  1986 WL 53402 (N.D. Cal. June 15, 1986) ................................................................................. 4

*Dolby Lab'ys Licensing Corp. v. Adobe Inc*,
  402 F. Supp. 3d 855 (N.D. Cal. 2019) ......................................................................................... 8

*In re Grand Jury Investigation*,
  974 F.2d 1068 (9th Cir. 1992) ..................................................................................................... 8

*In re Grand Jury Subpoena*,
  357 F.3d 900 (9th Cir. 2004) ................................................................................................... 2, 3

*Hickman v. Taylor*,
  329 U.S. 495(1947) ...................................................................................................................... 2

*Holmgren v. State Farm Mut. Auto. Ins. Co.*,
  976 F.2d 573 (9th Cir. 1992) ....................................................................................................... 5

*In re JDS Uniphase Corp. Sec. Litig.*,
  2006 WL 2850049 (N.D. Cal. Oct. 5, 2006) ............................................................................ 4, 5

*Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*,
  237 F.R.D. 176 (N.D. Ill. 2006) .............................................................................. 1, 3, 6, 7, 8

*Merrill Lynch & Co. v. Allegheny Energy, Inc.*,
  229 F.R.D. 441 (S.D.N.Y. 2004) ................................................................................................. 4

*Nishika, Ltd. v. Fuji Photo Film Co.*,
  181 F.R.D. 465 (D. Nev. 1998) .................................................................................................... 9

*In re NVIDIA GPU Litig.*,
  2009 WL 4573311 (N.D. Cal. Nov. 30, 2009) ............................................................................. 4

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
  2019 WL 1950377 (N.D. Cal. May 1, 2019) ................................................................................ 8

*Polycast Tech. Corp. v. Uniroyal, Inc.*,
  1990 WL 138968 (S.D.N.Y. Sept. 20, 1990) ............................................................................... 5

*Republic of Ecuador v. Mackay*,
  742 F.3d 860 (9th Cir. 2014) .................................................................................................. 2, 5

*S.E.C. v. Roberts*,
  254 F.R.D. 371 (N.D. Cal. 2008) ............................................................................................... 4

*U.S. v. Arthur Young & Co.*,
  465 U.S. 805 (1984) ................................................................................................................... 4

*U.S. v. Burga*,
  2019 WL 3859157 (N.D. Cal. Aug. 16, 2019) ........................................................................... 8

*U.S. v. Deloitte LLP*,
  610 F.3d 129 (D.C. Cir. 2010) ........................................................................................*passim*

*U.S. v. Graham*,
  555 F. Supp. 2d 1046 (N.D. Cal. 2008) ..................................................................................... 5

*U.S. v. Sanmina Corp.*,
  968 F.3d 1107 (9th Cir. 2020) ........................................................................................... 1, 3, 4, 7

*VLSI Tech. LLC v. Intel Corp.*,
  2019 WL 13253478 (N.D. Cal. Jan. 18, 2019) ...................................................................... 1, 4

*Walker v. Cnty. of Contra Costa*,
  227 F.R.D. 529 (N.D. Cal. 2005) ............................................................................................... 7

*Whitecryption Corp. v. Arxan Techs., Inc.*,
  2016 WL 7852471 (N.D. Cal. Mar. 9, 2016) ............................................................................. 9

*X One, Inc. v. Uber Techs., Inc.*,
  2019 WL 2513688 (N.D. Cal. June 18, 2019) ........................................................................... 9

**Other Authorities**

Fed. R. Civ. P. 26(b)(3) ..................................................................................................................... 2

Defendant Uber Technologies, Inc. ("Uber") hereby respectfully submits this Opposition to the Motion to Compel Production of Documents (the "Motion") initially filed on October 12, 2023 (ECF No. 363), by Lead Plaintiff Boston Retirement System ("BRS").

## INTRODUCTION

BRS's Motion ignores governing authority and relies on inapposite and inapplicable precedent to seek the disclosure of litigation and investigation analyses (the "Analyses") prepared for Uber by its counsel and confidentially conveyed to PwC. In the Ninth Circuit, as in other jurisdictions that apply the "created because of anticipated litigation" test to work product, it is well established that attorney analyses of litigation and loss reserves shared with auditors are protected opinion work product. *See U.S. v. Sanmina Corp.*, 968 F.3d 1107, 1122 (9th Cir. 2020); *see also U.S. v. Deloitte LLP*, 610 F.3d 129, 138 (D.C. Cir. 2010); *In re Blue Cross Blue Shield Antitrust Litig.*, 2018 WL 11425553, at *3 (N.D. Ala. Nov. 7, 2018); *Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, 237 F.R.D. 176, 181 (N.D. Ill. 2006). Ignoring this straightforward authority, BRS relies on cases applying standards inapplicable in the Ninth Circuit, (*see* Mot. at 4 (citing *VLSI Tech. LLC v. Intel Corp.*, 2019 WL 13253478 (N.D. Cal. Jan. 18, 2019) (applying Fifth Circuit law))), and outdated cases decided long before the Ninth Circuit established the "because of" test as the applicable standard. Because (a) the Analyses unquestionably constitute Uber's protected opinion work product, (b) the protection was not waived when they were shared with PwC, and (c) BRS cannot overcome that protection through its assertion of "substantial need," BRS has no basis to seek their production. BRS's request for *in camera* review, which is generally unfavored, should also be denied because it provides no reason to conclude that further review is needed.

## BACKGROUND

PwC produced over 3,000 documents to BRS in response to a third-party subpoena. Uber asserted privilege over certain documents and produced a privilege log. Over the following eight months, BRS sent three letters challenging Uber's privilege log and, subject to agreement with BRS and in an effort to avoid burdening the Court, Uber produced amended logs and withdrew some claims of protection. On September 8, 2023, Uber produced its latest amended log (the "Privilege Log"),

which accompanied a supplemental document production by PwC. BRS, however, continued to demand discovery of Uber's Analyses, and the parties reached an impasse.

As Uber's independent auditor, PwC requests analyses from Uber regarding pending litigation and investigations. *See* Declaration of Jason Allen ("Allen Decl.") ¶ 2; *see also* Declaration of John Dwyer ("Dwyer Decl.") ¶¶ 2–3; Declaration of Stacey Grigsby ("Grigsby Decl.") ¶¶ 2–3. Uber responds by gathering analyses from its in-house and outside counsel and sharing it with PwC on a confidential basis. Allen Decl. ¶ 3; Dwyer Decl. ¶ 3; Grigsby Decl. ¶ 3. The 28 privilege challenges at issue (the "Documents") reflect that process and contain material created in anticipation of litigation and reflecting attorney mental impressions and judgments protected under Rule 26(b)(3)(B).

## ARGUMENT

**I.    The Challenged Analyses Are Shielded by the Work Product Doctrine**

Under Fed. R. Civ. P. 26(b)(3), "documents and tangible things . . . prepared in anticipation of litigation or for trial by or for another party or its representative" are protected from disclosure. Under Ninth Circuit precedent, materials "created because of anticipated litigation" are protected irrespective of whether litigation was the "primary" purpose of the document. *In re Grand Jury Subpoena*, 357 F.3d 900, 908 (9th Cir. 2004) (citation and internal quotation marks omitted). All of the Analyses contained in the Documents at issue were prepared by Uber's counsel "because of" litigation and are, thus, protected from disclosure. *See* Declaration of Alfred L. Fatale III ("Fatale Decl."), Ex. HH (Log Nos. 687, 695–96, 729, 940, 1033, 1061, 14305–11, 893.1, 895–96, 904.1, 916, 932–33, 985.1, 999, 1008, 1014, 1019, 949); *see also* Allen Decl. ¶¶ 3–5, 7–12; Dwyer Decl. ¶¶ 2–9; Grigsby Decl. ¶¶ 2–8. That includes PwC's memorialization of Uber's oral work product, because the common law work product doctrine "protects intangible things independent of [Rule 26]." *Republic of Ecuador v. Mackay*, 742 F.3d 860, 868 n.2 (9th Cir. 2014); *see also Hickman v. Taylor*, 329 U.S. 495, 511 (1947); *Deloitte*, 610 F.3d at 138 (applying "because of" test in holding that outside auditor's memo summarizing meeting with company attorneys is work product if it "contains thoughts and analyses by legal counsel").

BRS's focus on the supposed "business purpose" of the Documents at issue (Mot. at 3, 5) is irrelevant. "A document can contain protected work-product material even though [the document]

serves multiple purposes," such as an audit, "so long as the protected material was prepared because of the prospect of litigation." *Deloitte*, 610 F.3d at 138. All the Documents here contain counsel's analyses about internal investigations, government investigations, or litigation, which were shared with PwC in connection with its review of Uber's litigation loss reserves, financial statements, or internal controls. *See* Fatale Decl., Ex. HH (Log Nos. 687, 695–96, 729, 940, 1033, 1061, 14305–11, 893.1, 895–96, 904.1, 916, 932–33, 985.1, 999, 1008, 1014, 1019, 949); *see also* Allen Decl. ¶¶ 3–5, 7–12; Dwyer Decl. ¶¶ 2–9; Grigsby Decl. ¶¶ 2–8; *In re Grand Jury Subpoena*, 357 F.3d at 908 (work product protection applies to pre-litigation investigations). The Analyses exist only because of existing or anticipated litigation, and they are protected opinion work product. (BRS's category-specific objections regarding the existence of opinion work product in the redacted materials are further addressed in the Declarations accompanying this opposition and in Section III, *infra*.)

Indeed, courts have consistently recognized that audit-related materials concerning litigation or loss reserves are work product and "not mere business documents." *Lawrence E. Jaffe*, 237 F.R.D. at 181. In *Deloitte*, the D.C. Circuit held that memos prepared by an outside auditor about "potential litigation," based on oral discussions with its client's counsel, are protected if they "contain thoughts and analyses by legal counsel." 610 F.3d at 139 (applying "because of" test). Similarly, *Lawrence E. Jaffe* held that both factual summaries and legal analysis in attorney opinion letters are protected because "[t]he attorney clearly exercised judgment in assessing the potential liability for each case and in determining which matters and information to include . . . ." 237 F.R.D. at 182–83. And in *Blue Cross*, the court held that materials prepared or shared "for the purpose of calculating (or recommending) litigation reserve amounts" are protected work product. 2018 WL 11425553, at *3–4.

Nor does sharing otherwise protected work product with an auditor waive protection. The Ninth Circuit has confirmed that work product is protected unless it is voluntarily disclosed "to an adversary in litigation or" a "conduit to an adversary." *Sanmina*, 968 F.3d at 1121 (quoting *Deloitte*, 610 F.3d at 138). The Ninth Circuit has expressly held that "disclosure of [] attorney work product to an *independent auditor* does not constitute disclosure to an adversary sufficient to waive the protection." *Id*. at 1122 (emphasis added). Rather, compelling policy considerations militate against

the view that clients and their independent auditors are situated in an adversarial relationship. *See S.E.C. v. Roberts*, 254 F.R.D. 371, 382 (N.D. Cal. 2008); *see also Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 229 F.R.D. 441, 447–48 (S.D.N.Y. 2004). Because PwC is not Uber's adversary in litigation or a potential adversary in the "litigation the [work product] address[es]," the Analyses disclosed to PwC remain protected. *Sanmina*, 968 F.3d at 1121 (quoting *Deloitte* 610 F.3d at 140).

PwC was also not a "conduit to an adversary" because it received the Analyses in confidence; they were not to be disclosed to others, and they remain protected. *See* Allen Decl. ¶¶ 3, 12; *see also* Dwyer Decl. ¶ 3–4; Grigsby Decl. ¶¶ 3–4. Indeed, PwC, "as an independent auditor, has an obligation to refrain from disclosing confidential client information." *Deloitte*, 610 F.3d at 142 (discussing AICPA Code of Professional Conduct). There is thus no question that Uber had "a reasonable basis for believing that [PwC] would keep the disclosed material confidential," and that the material would remain protected. *See Sanmina*, 968 F.3d at 1121 (quoting *Deloitte* 610 F.3d at 141) (internal quotation marks omitted). And there is "no indication that [Uber] was engaging in 'self-interested selective disclosure' when it provided the [Analyses] to [PwC]." *Id.* at 1123. In short, although PwC is independent, that is not sufficient to waive work product protection.

Instead of citing the governing authority for the Court described above, however, BRS relies on an inapposite case about "accountant-client" privilege, which is not at issue here, and on an outdated district court case decided long before the Ninth Circuit established the "because of" test as the applicable standard (Mot. at 3 (citing *U.S. v. Arthur Young & Co.*, 465 U.S. 805, 817–18 (1984), and *In re Diasonics Sec. Litig.*, 1986 WL 53402, at *1 (N.D. Cal. June 15, 1986)). Indeed, not one of BRS's cases supports its position. *VLSI Tech*. (Mot. at 4) involved a dispute transferred from Texas and applied Fifth Circuit law, which evaluates work product under the "primary motivating purpose" test, 2019 WL 13253478, at *2, and not the Ninth Circuit's less restrictive "because of" standard—a crucial point which BRS neglected to disclose, and which renders the case entirely inapposite. *In re NVIDIA GPU Litig*. (Mot. at 3) involved an investigation by non-lawyers into a product's technical issues, not *counsel's* litigation analyses, opinion work product, or financial audits. 2009 WL 4573311, at *2 (N.D. Cal. Nov. 30, 2009). *In re JDS Uniphase Corp. Sec. Litig*. (Mot. at 3, 5, 8) only found that materials that did not indicate that counsel had provided legal advice were not protected.

2006 WL 2850049, at *2 (N.D. Cal. Oct. 5, 2006). And *Polycast Tech. Corp. v. Uniroyal, Inc.*, 1990 WL 138968, at *2 (S.D.N.Y. Sept. 20, 1990), and *U.S. v. Graham*, 555 F. Supp. 2d 1046, 1050 (N.D. Cal. 2008) (Mot. at 8), are inapposite because, in both, a non-party was asserting work product, and neither case applies the "because of" test used by the Ninth Circuit.

Accordingly, BRS's contention that the Analyses contained in the Documents "in the possession" of PwC cannot be protected (Mot. at 3) is wrong.

## II. BRS Fails to Provide a Basis to Pierce the Work Product Protection

Because the Documents at issue contain Uber's counsel's mental impressions, conclusions, opinions, and legal theories about pending litigation and investigations, they are protected opinion work product, which "enjoys nearly absolute protection," *U.S. ex rel. Bagley v. TRW, Inc.*, 212 F.R.D. 554, 559 (C.D. Cal. 2003), and are "virtually undiscoverable." *Mackay*, 742 F.3d at 869 n.3. As such, BRS's attempt to show "substantial need" for this work product, (Mot. at 9), is irrelevant. The substantial need standard only applies to work product that does not contain legal opinions. By contrast, opinion work product is only discoverable "when mental impressions are the pivotal issue in the current litigation and the need for the material is compelling." *Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 577 (9th Cir. 1992). That is not the case here because Uber "is not relying on the defense of advice of counsel, and . . . counsel's mental impressions are not at issue." *Bostick v. Atl. Mut. Ins. Co.*, 2008 WL 11338091, at *3 (C.D. Cal. Jan. 16, 2008).

Even if the lower "substantial need" standard applied, BRS did not and could not carry its burden to show that the requested work product is needed to "show the state of Uber's business operations before and after the IPO" or "how it was not a 'New Day at Uber.'" Mot at 9. BRS already has abundant materials on these topics, including extensive custodial productions from Uber's current and former CEOs, former COO, and the leaders of its public policy and communications teams.

## III. Each of BRS's Category-Specific Challenges to Uber's Privilege Log Fails

***Impairment Assessments*** (Fatale Decl., Exs. A, B, C): PwC requested the opinions and mental impressions of Uber's in-house counsel regarding the potential impact of rulings in pending litigation and regulatory matters on the value of Uber's assets. *See* Fatale Decl., Ex. HH (Log Nos. 687, 695–96); *see also* Grigsby Decl. ¶ 8. Uber's counsel's confidential responses to these inquiries

were memorialized by PwC in memoranda prepared as part of its annual Impairment Assessments. Grigsby Decl. ¶ 8.  The redacted excerpts in the PwC memoranda reflect the opinions and mental impressions of Uber's in-house counsel regarding litigation and regulatory matters, which would not exist but for litigation.  *See id*.  Because an auditor's memorialization of counsel's views about litigation is protected opinion work product, the redactions are proper.  *See Deloitte*, 610 F.3d at 136.

*Management Representation Letters* (Fatale Decl., Exs. I, J, K, L, M, N, O, P, Q, R, S, T, U): As part of its audits of Uber's consolidated financial statements, PwC sought the views, opinions, analyses, mental impressions, and conclusions of Uber's attorneys about allegations or inquiries of possible violations of laws or regulations whose effects had been considered by Uber for disclosure in the consolidated financial statements or as a basis for recording a loss contingency (i.e., litigation reserves).  *See* Fatale Decl., Ex. HH (Log Nos. 14305–11, 893.1, 895, 896, 904.1, 916, 933); *see also* Allen Decl. ¶¶ 4–7.  Uber confidentially responded to such inquiries in a section of its Management Representation Letters ("MRLs") to PwC that was prepared by an in-house Uber attorney.  Allen Decl. ¶¶ 4–5.  The decision as to which matters to include in the MRLs and how to describe them was based on the judgment of that in-house Uber attorney, as well as the judgment of other Uber in-house counsel.  *Id*. ¶ 4.  Because the redacted material in the MRLs contains the opinions and mental impressions of Uber's in-house counsel regarding whether potential or pending litigation and investigation matters merited consideration for disclosure in Uber's financial statements, which would not exist but for litigation, *id*. ¶ 5, the material is appropriately redacted as opinion work product.  *See Lawrence E. Jaffe*, 237 F.R.D. at 182–83.  The MRLs also contain a wide range of other representations and are signed by Uber's management, but because the redacted portions here were prepared by Uber's in-house counsel, Allen Decl. ¶¶ 4–6, BRS's argument that the MRL's signatories are not attorneys (Mot. at 8) is irrelevant.  And BRS's argument about the timing of MRLs submitted in the ordinary course before and after the IPO is speculative and baseless.  *See* Allen Decl. ¶ 6.

*Audit Workpapers* (Fatale Decl., Ex. H):  Ex. H to the Fatale Decl. contains several reports reflecting analyses about any material loss contingencies arising from pending or overtly threatened litigation, claims, or assessments ("Loss Contingency Letters") that Uber's in-house and outside counsel prepared for the purpose of determining the appropriate level of litigation reserves and

1 confidentially conveyed to PwC. Fatale Decl., Ex. HH (Log No. 1061); *see also* Allen Decl. ¶¶ 2, 8,
2 11. The decision as to which potential or pending litigation matters to include in the Loss
3 Contingency Letters and how to describe them was based on legal judgment of Uber's counsel. Allen
4 Decl. ¶¶ 8, 11. The redacted portions of the Loss Contingency Letters reflect the opinions and mental
5 impressions of Uber attorneys as to potential or pending litigation and investigation matters, none of
6 which would exist but for litigation. *See id.* Accordingly, the reports were appropriately redacted to
7 withhold that material. *See Blue Cross*, 2018 WL 11425553, at *3–4 (protecting attorney opinion
8 letters "created for the purpose of calculating (or recommending) litigation reserve amounts").

9 ***Forensic Services Memoranda*** (Fatale Decl., Exs. E, AA, F, BB, D/G): PwC conducted
10 assessments to understand the potential impact of possible incidents of non-compliance with laws and
11 regulations at Uber (and related litigation) on Uber's financial statements and internal controls. *See*
12 Fatale Decl., Ex. HH (Log Nos. 729, 932, 940, 949, 1033); *see also* Allen Decl. ¶¶ 7, 10; Dwyer Decl.
13 ¶¶ 2–3; Grigsby Decl. ¶¶ 2–3. Uber's in-house and external counsel confidentially conveyed their
14 views, mental impressions, opinions, and conclusions about the matters to PwC. *See* Allen Decl. ¶¶
15 7, 10; *see also* Dwyer Decl. ¶¶ 2–9; Grigsby Decl. ¶¶ 2–5, 7. The redacted portions of the PwC
16 memoranda containing such analyses would not exist but for litigation and are appropriately redacted.
17 *See* Allen Decl. ¶¶ 7, 10; *see also* Dwyer Decl. ¶¶ 2–9; Grigsby Decl. ¶¶ 2–5, 7; *see also Deloitte*,
18 610 F.3d at 138; *Lawrence E. Jaffe*, 237 F.R.D. at 181–83. PwC also prepared charts summarizing
19 the contents of the Loss Contingency Letters and included them as appendices to the PwC
20 memoranda. Allen Decl. ¶ 10. Those summaries reflect the opinions and mental impressions of
21 Uber's in-house and outside counsel as to potential or pending litigation and investigation matters,
22 which would not exist but for litigation. *See id*. BRS's reliance on *Walker v. Cnty. of Contra Costa*,
23 227 F.R.D. 529, 534 (N.D. Cal. 2005) (Mot. at 7), is misplaced because it (i) predates the Ninth
24 Circuit's ruling in *Sanmina* that such material is protected, (ii) involves non-attorney analysis, and
25 (iii) quotes from a New Jersey state court decision where work product protection over an
26 investigation was found to be waived after the defendant raised the investigation as an affirmative
27 defense.
28

***Emails Between PwC and Uber attorneys*** (Fatale Decl., Exs. V, W, X, Y, Z): PwC and Uber attorneys also exchanged emails regarding the Loss Contingency Letters. *See* Fatale Decl., Ex. HH (Log Nos. 985.1, 999, 1008, 1014, 1019); Allen Decl. ¶ 9. The redacted content in these communications contains attorney opinions and mental impressions of Uber's in-house counsel as to potential or pending litigation and investigation matters, which would not exist but for litigation. *See* Allen Decl. ¶ 9; *see also Blue Cross*, 2018 WL 11425553, at *3–4; *Lawrence E. Jaffe*, 237 F.R.D. at 184–85. BRS's focus on the fact that an unredacted portion of the email chains contains a request for signatures (Mot. at 6) is irrelevant to the fact that other portions of the chain are protected work product.

### IV.   *In Camera* Review Is Not Warranted

To obtain *in camera* review, BRS must show a "factual basis sufficient to support a reasonable, good faith belief that *in camera* inspection may reveal evidence that information in the [Documents] is not privileged." *In re Grand Jury Investigation*, 974 F.2d 1068, 1075 (9th Cir. 1992). BRS has not done so. BRS's purported "factual basis" is that (i) some of the redacted material is in documents that were prepared by a third party, and (ii) "Uber has made several significant and objectionable changes" to its privilege logs. (*See* Mot. 9–10). These "conclusory, speculative and unsupported" arguments are insufficient. *See Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 2019 WL 1950377, at *7 (N.D. Cal. May 1, 2019). The unredacted portions of the Documents and the log descriptions, not to mention the affidavits that have been supplied, "sufficiently demonstrate the basis for an assertion of privilege." *AT&T Corp. v. Microsoft Corp.*, 2003 WL 21212614 at *8 (N.D. Cal. Apr. 18, 2003). And the fact that some Documents were prepared by PwC is insufficient, as courts have consistently held that documents prepared by independent auditors can contain their clients' protected work product. *See supra* at pp. 2–5.

None of the cases cited by BRS provide a viable basis for *in camera* inspection. BRS's reliance on *Dolby Lab'ys Licensing Corp. v. Adobe Inc* (Mot. at 9–10) is misplaced because that case only involved *non-lawyer* communications. *See* 402 F. Supp. 3d 855, 861 (N.D. Cal. 2019). And, unlike in *U.S. v. Burga*, 2019 WL 3859157, at *4–5, *7 (N.D. Cal. Aug. 16, 2019) (Mot. at 10), where the defendant withheld numerous documents wholesale, the Documents here have narrowly targeted

redactions, making it readily apparent, when reviewing the unredacted content alongside the detailed log descriptions and supporting affidavits, that the redacted material was prepared by Uber's counsel, and rendering *in camera* review unnecessary. For the same reason, BRS's reliance on *Whitecryption Corp. v. Arxan Techs., Inc.* (Mot. at 4,6), which criticized "blanket redactions," is also misplaced. 2016 WL 7852471, at *2 (N.D. Cal. Mar. 9, 2016). Uber has not made "blanket redactions," and, in any case, *Whitecryption Corp.* involved redactions for confidentiality, not privilege.

Finally, BRS's misleading suggestion that Uber "made significant late changes to its privilege log" is not a basis for *in camera* review. (Mot. at 10). The change BRS highlights—in which Uber designated a subset of documents as attorney work product, rather than attorney-client privilege—was made early in the discovery process, in December 2022, after BRS sent its initial challenge letter. Unlike in *X One, Inc. v. Uber Techs., Inc.*, 2019 WL 2513688, at *1 (N.D. Cal. June 18, 2019), that was not an eleventh-hour change that could conceivably be interpreted as gamesmanship.

For all of these reasons, *in camera* review, which is "not generally favored," is not warranted here. *Nishika, Ltd. v. Fuji Photo Film Co.*, 181 F.R.D. 465, 467–68 (D. Nev. 1998).

## CONCLUSION

For the foregoing reasons, Uber respectfully requests that the Court deny the Motion.

Dated:     October 25, 2023              SHEARMAN & STERLING LLP

                                          By:    /s/     *Daniel H.R. Laguardia*
                                                        Daniel H.R. Laguardia

                                          *Attorneys for Uber*