DocuSign Envelope ID: BC2398EC-7EAA-47BF-8784-5D3935B50960

Daniel H.R. Laguardia (SBN 314654)
SHEARMAN & STERLING LLP
535 Mission Street, 25th Floor
San Francisco, CA 94105-2997
Telephone:  415.616.1100
Facsimile:  415.616.1199
Email: daniel.laguardia@shearman.com

Paula H. Anderson (admitted *pro hac vice*)
Agnès Dunogué (admitted *pro hac vice*)
Dennis D. Kitt (admitted *pro hac vice*)
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, NY 10022-6069
Telephone:  212.848.4000
Facsimile:  212.848.7179
Email: paula.anderson@shearman.com
        agnes.dunogue@shearman.com
        dennis.kitt@shearman.com

*Attorneys for Defendants Uber Technologies, Inc., Dara Khosrowshahi, Nelson Chai, Glen Ceremony, Ronald Sugar, Ursula Burns, Garrett Camp, Matt Cohler, Ryan Graves, Arianna Huffington, Travis Kalanick, Wan Ling Martello, H.E. Yasir Al-Rumayyan, John Thain, and David Trujillo*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| BOSTON RETIREMENT SYSTEM, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> UBER TECHNOLOGIES, INC., *et al.*, <br><br> Defendants. | Case No. 3:19-cv-06361-RS <br><br> **DECLARATION OF STACEY GRIGSBY** |

I, Stacey Grigsby, declare as follows:

1. I am an attorney licensed to practice law in the District of Columbia, and the states of Maryland and New York. From December 2014 until April 2020, I was Counsel and then a Partner at Boies Schiller Flexner LLP ("Boies Schiller"). While at Boies Schiller, I was seconded to the legal department of Uber Technologies, Inc. ("Uber") from January 2018 until August 2019, where I handled litigation and investigations. I submit this declaration in support of Uber's Opposition to Lead Plaintiff Boston Retirement System's Motion to Compel (ECF No. 363). I have personal knowledge of the facts and circumstances set forth herein, and if called upon as a witness to testify in this matter I could and would competently do so as follows:

2. While working in Uber's legal department, one of my responsibilities was to supervise certain investigations into possible incidents of non-compliance with laws and regulations and potential or actual litigation associated therewith (the "Matters"). Most of the investigations associated with the Matters were initiated under the Special Matters Committee ("SMC") of the Board of Directors (the "Board"), which was formed in 2017. After the SMC was wound down in early 2018, I assumed responsibility for supervising the investigations of the Matters that had started under the SMC's watch. These responsibilities included providing legal advice, supervising outside counsel retained to handle the Matters, providing updates to management and providing input for briefing to the Board, and communicating about the Matters with PricewaterhouseCoopers LLP ("PwC"), Uber's outside auditor. I acquired an intimate familiarity with each of the Matters and outside counsel's work on the Matters based on my role supervising outside counsel handling the Matters, and in preparing reports about the Matters for management and PwC.

3. In my role supervising the Matters, I was responsible for coordinating and providing responses to requests from PwC, Uber's outside auditor, for legal analyses about the Matters. Accordingly, I made myself available for interviews with PwC to share my views, opinions, mental

impressions, and conclusions about the Matters. I also arranged for PwC to discuss the Matters with attorneys at outside law firms that were handling them. I did so with the understanding that both Uber and PwC, as Uber's outside auditor, shared the same interest in understanding the impact that the Matters may have on Uber's financial statements or internal controls. Further, PwC was notified that the views, opinions, mental impressions, and conclusions about the Matters provided to PwC were prepared by me and Uber's outside counsel. I did not have any intention, belief or understanding that the legal analyses we provided to PwC would be made available to anyone other than to PwC or that sharing the analyses with PwC would constitute a waiver of Uber's work product protection.

4. I have reviewed unredacted copies of Exhibits D, G, AA, and BB to the Declaration of Al Fatale (ECF No. 364-1) and confirm, based on my personal knowledge of each of the Matters and my role in supervising outside counsel's work on the Matters, that the redacted material memorializes the views, opinions, mental impressions, and conclusions of myself and outside counsel conveyed to PwC on a confidential basis with respect to the Matters discussed therein.

5. Page 6 of Exhibit D and page 6 of Exhibit G summarize Uber's conclusions, which were based on the legal opinions and mental impressions of myself and other Uber attorneys, about the Matters and the impact they had or might have on the historical or current financial statements of Uber (if any). This determination about the impact of the Matters depended on the legal expertise of myself and other counsel and constitutes my and other counsel's opinion work product prepared in anticipation of litigation on Uber's behalf.

6. Pages 5–6 of Exhibit BB summarize the Uber legal department's overall conclusion about the investigations regarding the Matters. The redacted material contains the opinion work product of myself and other Uber attorneys prepared in anticipation of litigation on Uber's behalf.

7. I also coordinated meetings between PwC and outside law firms handling the Matters and related civil litigation, during which attorneys at those firms would explain the status of each

investigation, the investigation process, and their factual and legal findings. Uber shared this material with PwC with an understanding that the material would be kept confidential and would not constitute a waiver of work product protection. These outside law firms included Boies Schiller Flexner LLP, Covington & Burling LLP, Jenner & Block LLP, Morrison & Foerster LLP, O'Melveny & Myers LLP, Shearman & Sterling LLP, and Wilmer Cutler Pickering Hale and Dorr LLP. I have reviewed unredacted versions of Appendices I, II and III of Exhibits D and G and Appendix I of Exhibits AA and BB, and I confirm that these contain PwC's memorialization of these interviews. I also arranged subsequent update calls between PwC and these outside counsel and have confirmed that PwC memorialized those calls at pages 15–18 of Exhibit D, pages 15–18 of Exhibit G, and pages 6–7 of Exhibit BB. In each of those discussions, attorneys at the outside law firms were asked to and did disclose their mental impressions and conclusions regarding the Matters. In each case, outside counsel had been engaged to carry out their work in anticipation of litigation and potential regulatory or enforcement actions.

8. While working in Uber's legal department, I also had responsibility for handling broader inquiries from PwC about potential or pending government litigation and investigation matters. This included inquiries from PwC about the potential impact of rulings in pending litigation and regulatory matters on the value of Uber's assets. In responding to such inquiries, I and other attorneys in Uber's legal department assessed pending and potential litigation and regulatory matters and shared with PwC our assessment as to whether rulings in these matters might impact the value of Uber's assets. The response provided to PwC reflected the opinions and mental impressions of myself and other attorneys in Uber's legal department as to potential or pending litigation and investigation matters. PwC memorialized our responses to its inquiries in memoranda prepared as part of its annual Impairment Assessments, examples of which I understand have been filed as exhibits in this action, as Exhibits A, B, and C to the Declaration of Al Fatale (ECF No. 364-1). I have reviewed unredacted

1  versions of these memoranda and confirm that the redacted excerpts reflect the opinions and mental

2  impressions of myself and other attorneys in Uber's legal department as to the potential impact on the

3  value of Uber's assets of rulings in pending or potential litigation and regulatory matters.

4    9.  I declare under penalty of perjury under the laws of the United States of America that

5  the foregoing is true and correct.

6    Executed on October 25, 2023, at Potomac, Maryland.

7

8  _____
   Stacey Grigsby

DECLARATION OF STACEY GRIGSBY    4    Case No. 3:19-cv-06361-RS