December 19, 2023                                                                                                   <u>Via ECF</u>

Hon. Donna M. Ryu
U.S. District Court, Northern District of California
Ronald V. Dellums Fed. Bldg. & U.S. Courthouse
1301 Clay Street
Oakland, California 94612

RE:   *Boston Retirement System v. Uber Technologies, Inc.*, No. 3:19-cv-06361-RS (N.D. Cal.)

Dear Judge Ryu:

Lead Plaintiff Boston Retirement System ("BRS") and the Individual Defendants ("IDs") respectfully submit this letter regarding the IDs' Amended Responses to BRS's Second Set of Interrogatories ("Amended Responses"). BRS believes the Amended Responses are insufficient and seeks to compel further amended responses, and other relief. The IDs believe no amendment is necessary. Counsel conferred several times, culminating in an impasse on December 12. The fact discovery cutoff was September 20, 2023, and dispositive pretrial motions are due June 12, 2024. ECF No. 376. Trial has been set for January 27, 2025. *Id*.

## I.   Lead Plaintiff's Statement

On September 6, 2023, the parties filed a joint discovery brief regarding the ID's Responses to BRS's Second Set of Interrogatories. ECF No. 322. On November 6, 2023, the Court ordered the IDs, among other things, to amend his or her responses to:

> make clear that their response is tailored and correct. In other words, each Individual Defendant must confirm that he or she reviewed the group summaries provided in response to the interrogatories, as well as every document listed in the exhibit attached to the responses, and certify that the information provided is 1) accurate as to them, and 2) provides a full and complete response to the interrogatory.

ECF No. 390 at 3 (the "Order"). The Order also stated that "Individual Defendants must amend their answers to Lead Plaintiff's interrogatories . . . providing clear responses as to which individuals (including their name, contact information, and dates of communication) the Individual Defendants spoke with and relied on." *Id*. at 4. On November 20, 2023, the IDs served their Amended Responses, which were deficient as outlined below.

First, the Amended Responses fail to clearly indicate which documents the IDs reviewed and relied on (if at all). Instead, the responses reference the *possibility* that each Defendant <u>might</u> have reviewed documents as part of a "general practice" to the "best of [their] knowledge." *See*, *e.g.*, Defendant Cohler's responses, which are attached as Exhibit 1, at p. 9 (Cohler's responses are a representative example, as each ID's written responses are substantially the same). This language is vague, speculative, and does not comply with the Order. Specifically, the responses fail to "certify" that the IDs actually "reviewed…every document listed in the exhibit attached to the responses…." ECF No. 390 at 3. Moreover, the phrase "general practice" is ambiguous, *i.e.*, when did that practice start, were there any exceptions, and what was the precise method of review? The

1

Amended Responses also fail to state that the information provided is accurate and a full and complete response to the interrogatory. *Id*. In other words, the IDs do not confirm when or if they ever actually reviewed the documents cited, while also completely omitting whether they *relied* on the documents prior to the IPO, which is improper. *See also Loop AI Labs Inc v. Gatti*, No. 15-CV-00798-HSG (DMR), 2016 WL 2342128, at *2 (N.D. Cal. May 3, 2016) (an answer to an interrogatory must be responsive to the question) (citations omitted).

The IDs argue that they identify a list of documents that "were reviewed," however, the Amended Responses do not clearly identify *when* the documents were "reviewed." For instance, Defendant Cohler's response does not clearly state whether it was his "general practice" to review these documents at the time he originally received the document or at the time he responded to these interrogatories, which is evasive and improper. *See, e.g.,* Exhibit 1 at 9. Mr. Cohler also states he "does not recall which materials reviewed related specifically to the statements [at issue]," which further compounds the speculative nature of the response. *Id*. Mr. Cohler's deposition testimony confirms he did not review any documents when responding to the interrogatories: Q.: "In the last year, do you recall reviewing any documents concerning the IPO prior to the documents you reviewed to prepare for today?" A.: "I do not." Cohler Depo. at 54:18-21. Given that the interrogatories were served less than a year ago, he could not have actually reviewed any of the documents cited. Additional IDs have testified that they reviewed minimal documents and only for the purposes of preparation for their deposition. The responses are therefore insufficient.

Alternatively, if the IDs cannot specifically recall any documents they reviewed and relied on before the May 9, 2019 IPO, he or she "may not simply refuse to answer, but must state under oath that he is unable to provide the information and 'set forth the efforts he used to obtain the information.'" *See* Fed. R. Civ. P. 33(b)(3) ("Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath."); *Noble v. Gonzalez*, 2011 WL 2118746, at *6 (E.D. Cal. May 27, 2011) ("if the answering party lacks necessary information to make a full, fair, and specific answer to the interrogatory, it should so state under oath and should set forth in detail efforts made to obtain the information.") *Bruce v. Woodford*, 2014 WL 4446288, at *6 (E.D. Cal. Sept. 9, 2014) ("Discovery is not limited to that information which one easily recalls from memory. The burden in responding to discovery is greater than that and Defendants are required to make a *reasonable effort* to respond."). Here, the IDs have not identified what efforts, if any, they made to review the documents cited. Such a failure also violates the Order, which requires that each ID confirm, whether in the past or through recent efforts, that they reviewed each and every document in the list, and identify which documents they relied on. Contrary to their arguments in this letter, BRS is not seeking to "strip their responses of additional . . . content." Instead, BRS asks that the IDs comply with the Order. In other words, BRS is seeking the truth – *i.e*., what precisely did each ID actually review and rely on.

Second, the IDs have not complied with the Order which states that each must provide clear responses as to which individuals they *spoke* with and *relied* on. ECF No. 390 at 4. Specifically, the ID's responses do not identify *by name*, any individuals they spoke with. *See* Exhibit 1 at 10. Instead, the Amended Responses refer generally to "participating in calls, meetings, and other oral communications." *Id*. However, that does not respond to the interrogatories or comply with the Order. Additionally, the IDs reference to Exhibit B – which lists "Individuals With Whom Defendant Exchanged Electronic Communications That Formed Part of Defendant's Reasonable

Due Date Diligence Investigation" and "Individuals With Whom Defendant Had Meetings or Oral Communications That Formed Part of Defendant's Reasonable Due Diligence Investigation" – does not answer the interrogatory nor comply with the Order. For example, the "electronic communications" referenced are emails that the IDs sent, received, were copied on, or even blind copied on. *See* Exhibit 1 at Exhibit B-1. Identifying emails does not answer the question of who the IDs *spoke* with and *relied* on. Receiving an email – especially as a copy – is not the same as *speaking* with someone. *See, e.g.,* Exhibit 1 at Exhibit B-5 at 8. The IDs also failed to answer whether they *relied* on those communications. As another example, Defendant Burns testified that she did not speak to anyone outside of board or committee meetings about the IPO or S-1. Burns Depo. at 77:2-5. Accordingly, Burns' citation to emails is improper (and speculative) as those emails, many of which are entirely unrelated to board or committee meetings, do not identify who Burns *spoke* with at any particular meeting.

Likewise, listing "meeting participants" does not clearly answer who the IDs *spoke* with and *relied* on. *See, e.g.,* Exhibit 1 at Exhibit B-2 at 2. The ID(s) could have been silent during the meeting. They could have spoken with one person but not others (many of the table entries list numerous "participants"). Simply put, listing "meeting participants" does not clearly identify which individuals the IDs spoke with and relied on. *See* ECF No. 390 at 4. On the other hand, if the IDs cannot specifically recall any spoken conversations they relied on, he or she "must state under oath that he is unable to provide the information and 'set forth the efforts he used to obtain the information,'" which they have not. *Noble, supra*, 2011 WL 2118746, at *6. Accordingly, the IDs Amended Responses are inadequate as they fail to "provid[e] clear responses as to which individuals . . . the Individual Defendants spoke with and relied on." ECF No. 390 at 3.

BRS's final proposed compromise asked that the IDs amend their responses by (1) unequivocally confirming which documents listed in Exhibit A were specifically reviewed and relied on by each ID (through actual review of each document listed) and (2) unequivocally listing anyone the IDs spoke with and relied on. Defendants refused to amend. The Court should therefore compel amended responses or strike the responses (and provide an adverse inference). BRS also requests that the Court reopen depositions given that the evasive responses have frustrated the purpose behind the use of this discovery device (*i.e.,* to get the information necessary to efficiently examine the witness and complete their testimony in light of the limited 2-3 hour depositions).

## II.     Individual Defendants' Statement

The IDs fully complied with this Court's Order and the Federal Rules of Civil Procedure by providing amended, verified responses **with information specific to each ID and each interrogatory**. BRS is simply wrong to insist that the IDs must ignore produced evidence and refer only to documents and communications they specifically recall from diligence performed years ago. Although incomplete responses might better serve BRS's strategic aims, they would be inconsistent with the Court's Order and applicable law. There is no basis for BRS to seek additional discovery from the IDs as BRS has already deposed them for hours about their diligence and had the opportunity, often not taken, to ask the vast majority about their Amended Responses.

***Each ID's Amended Responses Identify Specific People and Documents Consulted in Diligence, as the Court Ordered.***  The Court's Order required the IDs to amend their interrogatory responses to "clarify[] which documents are responsive to which interrogatory and provid[e] clear responses

3

as to which individuals (including their name, contact information, and dates of communication) the [IDs] spoke with and relied on." ECF No. 390 at 4.  The IDs did that, identifying in response to each interrogatory the documents each ID reviewed and relied upon and the individuals they communicated with and relied upon as part of their IPO diligence.  Each Amended Response identifies documents that, "consistent with [the ID's] general practice and to the best of [the ID's] knowledge, *were reviewed by [the ID] . . .* [and] reflect [the ID's] reasonable due diligence investigation.  *See, e.g.*, A. Huffington's Am. Resps. at 9–10 (emphasis added) (Ms. Huffington's Amended Responses are substantially identical to Mr. Cohler's, which BRS cites).  The directors' Amended Responses state that it was their "*consistent practice ... to review the materials and attend the presentations provided before and during Board meetings ... and the materials otherwise sent by the Company*," *see, e.g.*, *id.*, and the non-directors' Amended Responses state their due diligence included "receiving, reviewing, and participating in the preparation of materials in connection with the day-to-day activities of [their] role[s] as … officer[s] of Uber," *see, e.g.*, G. Ceremony's Am. Resps. at 9.  The Amended Responses further state that, "in addition to written information, [the ID's] due diligence included participating in calls, meetings, and other oral communications" and refer BRS to Exhibit B "which lists individuals (including names, contact information, and dates of communication) with whom [the ID] communicated and who formed part of [the ID's] reasonable due diligence investigation."  A. Huffington's Am. Resps. at 10.[1]  The responses also state that the directors "relied on the information [they] received" in the materials and from the individuals identified in the exhibits.  *Id*. at 9.  For completeness, each Amended Response acknowledges that the IDs "cannot recall with specificity all communications [they] had in connection with the [interrogatory topics] or Uber's preparation for the IPO" more than four years ago.  *Id*. at 10.  Finally, each of the IDs certifies that, "based on [the ID's] present knowledge, information, and belief," the Amended Responses "are true and correct."  *See* ECF No. 390 at 3.

***The Federal Rules Require the IDs to Respond Based on Information Available to Them.***  BRS now insists the IDs cannot identify documents or individuals unless they specifically recall today that they previously relied on those particular documents and oral communications, or use the documentary record to refresh their memory or reference their general practice in testifying that these are documents they reviewed and communications they had.  Not so.  "Discovery is not limited to that information which one easily recalls from memory."  *Bruce v. Woodford*, 2014 WL 4446288, at *6 (E.D. Cal. Sept. 9, 2014).  As the authorities BRS itself cites demonstrate, the IDs were permitted and indeed ***required*** to refer to their historical communications in responding to the interrogatories.  *See* Fed. R. Civ. P. 33(b)(3) (Interrogatories must be answered "fully."); 8B Charles Alan Wright et al., Federal Practice and Procedure § 2177 (3d ed.) ("In answering interrogatories, a party is charged with knowledge of … what is in records available to it, or even … information others have given it on which it intends to rely in its suit."); *see also, e.g.*, *Goolsby v. Gentry*, 2015 WL 1849837, at *26 (E.D. Cal. Apr. 22, 2015) (proper to respond to interrogatory about a conversation despite "ha[ving] no memory of [it]" by "summariz[ing] the conversation as it appeared in his records"); *see also, e.g.*, *Noble v. Gonzalez*, 2011 WL 2118746,

---

[1] The IDs included individuals with whom they engaged in discussions at board meetings and other meetings, as well as individuals with whom they had non-oral communications.  The IDs expressly indicated those distinctions to BRS and provided the name, contact information, and date of each communication to BRS.  To the extent the Court deems that information was not necessary, the IDs respectfully submit that does not require a re-amendment of their responses.

4

at *6 (E.D. Cal. May 27, 2011) (holding that an interrogatory respondent could not simply state that he or she "ha[d] no current recollection" but, rather, was "required to give the information available to [him or her], if any, through [his or her] attorney[s] … or other agents or representatives, whether personally known to the [respondent] or not"). Thus, they provided information about meetings and communications based on (among other things) their records, which were identified to Plaintiffs. *See, e.g.*, A. Huffington's Am. Resps. at 9–10.

***The IDs' Amended Responses and Testimony Clearly Explain Their Diligence.*** Contrary to BRS's contention, the Amended Responses are not based on "speculation" and do not fail to "certify" that the IDs reviewed and relied on the documents listed in the responses. Each Amended Response identifies documents that "were provided to [the ID], and *consistent with [the ID's] general practice and to the best of [the ID's] knowledge, were reviewed by [the ID]*." *See, e.g.*, A. Huffington's Am. Resps. at 9; *see also id.* (it was the IDs' "consistent practice during the Relevant Period" to review the materials identified). When asked during their depositions, the IDs confirmed that they reviewed board materials before the meetings. *See, e.g.*, U. Burns Dep. Tr. at 61:4–13; W.L. Martello Dep. Tr. at 28:20–29:5; T. Kalanick Dep. Tr. at 46:10–14. Moreover, as required by the Federal Rules, and consistent with the Court's Order, the IDs worked with their counsel to accurately and completely respond to the interrogatories based on their current "knowledge, information, and belief formed after a reasonable inquiry." Fed. R. Civ. P. 26(g)(1); A. Huffington Dep. Tr. at 104:14–17 ("I had worked with my counsel to make sure that what we provided you with was accurate and reflected what I had – I had reviewed in the course of leading to the IPO.").[2] As Ms. Huffington explained, she, like the other IDs, received electronic copies of the materials cited in her Amended Responses, which she reviewed to the extent necessary to confirm that they were correct. *See id.* at 106:14–24, 107:22–9.

***BRS's Requested Relief Should Be Denied.*** The Amended Responses fully comply with the Court's Order and the Federal Rules of Civil Procedure and there is therefore no basis to strike the Amended Responses or require further amended responses from the IDs. Nor is there good cause to reopen the IDs' depositions. BRS has already taken extensive deposition testimony concerning the IDs' diligence and, even more specifically, their interrogatory responses. Indeed, BRS has asked every ID deposed to date about their diligence and has asked most of the IDs deposed after the Amended Responses were served about those responses. BRS specifically chose not to ask Mr. Cohler about his Amended Responses, which were served almost two weeks before his deposition. And his testimony was entirely consistent with his Amended Responses. His due diligence included "many meetings and discussions with management, with the [B]oard, with outside auditors, with outside counsel, with the financial advisors on the transaction" as well as "document reviews that occurred leading up to [the IPO]," including "multiple reviews of drafts of the [registration statement]." M. Cohler's Dep. Tr. at 59:3–18. Moreover, BRS ended some of the IDs' depositions early instead of using the full time it had to question them about those topics. After two rounds of interrogatories and hours of depositions, there is no basis for further discovery.

---

[2] BRS also complains that the Amended Responses do not identify *when* the IDs reviewed the documents cited. There is no such requirement in the Court's Order or the Federal Rules, and, again, the IDs have provided complete responses to the best of their knowledge, including based on confirmation of their practice as to the documents cited.

Plaintiffs' counsel and counsel for the Individual Defendants attest that they have met and conferred regarding these discovery issues and jointly request oral argument.

Respectfully submitted,

| | |
|---|---|
| COTCHETT, PITRE & MCCARTHY | SHEARMAN & STERLING LLP |
| By: */s/ Tyson C. Redenbarger* | */s/ Daniel H.R. Laguardia* |
| Tyson C. Redenbarger (SBN 294424)<br>Mark C. Molumphy (SBN 168009)<br>Gia Jung (SBN 340160)<br>San Francisco Airport Office Center<br>840 Malcolm Road, Suite 200<br>Burlingame, California 94010<br>Telephone: (650) 697-6000<br>Email: tredenbarger@cpmlegal.com<br>         mmolumphy@cpmlegal.com<br>         gjung@cpmlegal.com | Daniel H.R. Laguardia (SBN 314654)<br>535 Mission Street, 25th Floor<br>San Francisco, CA  94105-2997<br>Telephone: 415.616.1100<br>Facsimile: 415.616.1199<br>daniel.laguardia@shearman.com<br><br>Paula H. Anderson (*admitted pro hac vice*)<br>Agnès Dunogué (*admitted pro hac vice*)<br>Dennis D. Kitt (*admitted pro hac vice*)<br>599 Lexington Avenue<br>New York, NY 10022-6069<br>Telephone: 212.848.4000<br>Facsimile: 212.848.7179<br>paula.anderson@shearman.com<br>agnes.dunogue@shearman.com<br>dennis.kitt@shearman.com |
| *Counsel for Class Representatives* | |
| LABATON SUCHAROW LLP<br>Jonathan Gardner (admitted *pro hac vice*)<br>Alfred L. Fatale III (admitted *pro hac vice*)<br>Joseph N. Cotilletta (admitted *pro hac vice*)<br>Robert S. Rowley (admitted *pro hac vice*)<br>140 Broadway<br>New York, NY 10005<br>Telephone: (212) 907-0700<br>Facsimile: (212) 818-0477<br>Email: jgardner@labaton.com<br>         afatale@labaton.com<br>         jcotilletta@labaton.com<br>         rrowley@labaton.com | *Attorneys for the Individual Defendants* |
| *Lead Counsel for the Class* | |
| LEVI & KORSINSKY LLP<br>Gregory M. Nespole (admitted *pro hac vice*)<br>55 Broadway, 10th Floor<br>New York, NY 10006<br>Telephone: (212) 363-7500<br>Facsimile: (212) 363-1294<br>Email: gnespole@zlk.com | |

*-and-*

Adam M. Apton (SBN 316506)
388 Market Street, Suite 1300
San Francisco, CA 94111
Telephone: (415) 373-1671
Facsimile: (415) 484-1294
Email: aapton@zlk.com

*Liaison Counsel for Lead Plaintiff*
　*Boston Retirement System*


cc:  All Counsel of Record (*via ECF*)

## ECF ATTESTATION

Pursuant to Civil L.R. 5-1(i)(3), the filer attests that concurrence in the filing of this document has been obtained from each of the other signatories thereto.

Executed this 19th day of December 2023.

*/s/ Tyson C. Redenbarger*
Tyson C. Redenbarger
