UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOSTON RETIREMENT SYSTEM, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES, INC., et al.,<br><br>Defendants. | Case No. 19-cv-06361-RS  (DMR)<br><br>**OMNIBUS ORDER ON JOINT DISCOVERY LETTERS AND RELATED SEALING MOTIONS**<br><br>Re: Dkt. Nos. 346, 347, 348, 378, 410 |

The parties filed three joint discovery letters ("JDLs") leading up to and after the September 20, 2023 fact discovery deadline. [*See* Docket Nos. 346, 347, 410.] The letters are appropriate for resolution without oral argument pursuant to Civil Local Rule 7-1(b).

**I.    DOCKET NO. 346**

In the first JDL Lead Plaintiff Boston Retirement System ("BRS") moves to compel Defendant Uber Technologies, Inc. ("Uber") to produce a new Rule 30(b)(6) witness, as well as a list of documents and notes in connection with the 30(b)(6) deposition of Uber's Chief Accounting Officer Glen Ceremony. [Docket No. 346 (the "First JDL").] BRS also moves to compel further deposition testimony from Uber's former Chief Operating Officer, non-party Barney Harford. For the following reasons, BRS's motion is denied.

**A.    New Rule 30(b)(6) Witness**

On August 16, 2023, BRS deposed Ceremony for nine hours as Uber's 30(b)(6) designee and in his personal capacity. BRS claims that Ceremony generally was underprepared for the deposition and specifically was not adequately prepared to answer questions regarding noticed deposition Topics 27, 30, 36, and 37. First JDL at 1. The parties were ordered to file Ceremony's deposition transcript with highlighted excerpts to support their positions. [Docket No. 367.] They

1    timely filed the deposition transcript.[1]  [Docket No. 377 ("Ceremony Dep.").]

2    BRS argues that Ceremony was ill-prepared for his deposition because he 1) reviewed
3    "less than ten" emails and "probably less than five" text messages; 2) spent "an hour, two hours
4    max" "scanning" the registration statement; and 3) attended only one meeting with counsel a week
5    prior to his deposition.  First JDL at 1.

6    As stated in a case cited by BRS, "[t]he amount of preparation that is necessary for a Rule
7    30(b)(6) deposition depends on the nature of the topics and what information the witness already
8    knows or can remember."  *Tradeshift, Inc. v. BuyerQuest, Inc.*, No. 20-CV-01294-RS (TSH), 2021
9    WL 2222811, at *1 (N.D. Cal. June 2, 2021) (explaining there is no "inflexible rule" that a
10   30(b)(6) witness must "put in a minimum of X hours to prepare for the deposition, and must
11   review at least Y documents to prepare, and must obtain factual information from at least Z other
12   people to prepare").  Instead, BRS must show that Ceremony was not able to answer questions
13   within the scope of the noticed topics.  *See id.*, at *2.

14   BRS has not made this showing for Topics 27, 30, 36, or 37.  Review of Ceremony's
15   deposition transcript reveals that he adequately answered the questions about which BRS now
16   complains.  As to Topic 27, BRS argues that Ceremony could not explain the difference between
17   Uber's 409A valuations and the IPO price, nor was he aware of other valuations.  First JDL at 2,
18   n.3 (citing Ceremony Dep. at 420:7-422:23).  The deposition testimony on which BRS relies does
19   not support its position.  The transcript shows that Ceremony explained differences between

---

[1] BRS filed a related motion to seal Ceremony's transcript in its entirety.  [Docket No. 378.]  As the designating party, Uber filed a statement in support of the motion.  [Docket No. 384.]  Uber seeks to redact only certain portions of the transcript, i.e., "targeted statements and numbers/metrics . . . that pertain to Mr. Ceremony's private compensation information and Uber's confidential and proprietary business information, including sensitive, non-public financial operational information."  [Docket No. 384 at 2.]

 Having reviewed the proposed redactions and applying the Ninth Circuit's lower good cause standard to sealed discovery documents attached to non-dispositive motions, the court grants BRS's motion in part, and orders BRS to re-file a version of the transcript consistent with the redactions proposed in Uber's statement.  *See Krieger v. Atheros Commc'ns, Inc.*, No. 11-CV-00640-LHK, 2011 WL 2550831, at *1 n.1 (N.D. Cal. June 25, 2011) (citing *Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006)).

United States District Court
Northern District of California

public market valuations and 409 valuations.[2]

With respect to Topic 30, BRS argues that Ceremony could not testify about Uber's financial condition and projections. First JDL at 2, n.4 (citing Ceremony Dep. at 373:5-11, 374:8-376:2, 380:3-6, 146:4-15, 285:20-286:4, 291:3-14, 320:16-21, 389:24-390:10, 403:16-21). Having carefully reviewed the deposition excerpts, the court agrees with Uber that BRS mischaracterizes Ceremony's testimony as a whole by cherry picking sentences and omitting surrounding explanations.[3]

The parties address Topics 36 and 37 together. BRS contends that Ceremony could not recall whether analyses were performed on the impact of relevant disclosures on Uber's valuation. JDL at 2. BRS cites one excerpt in support of its assertion, which states: "Q: If you don't recall [whether category position was in the S-1], then it's fair to say you wouldn't recall if there was (sic) any adjustments that were discussed regarding that same issue? A: Correct." First JDL at 2, n.5 (citing Ceremony Dep. at 179:2-5).

Again, BRS omits a relevant part of Ceremony's response. In the same portion of the testimony, Ceremony explains that while he does not recall the connection between competition and category position, he does remember "multiple locations throughout the registration document talking about competition and the risks of competition." Ceremony Dep. at 177:22-25. As Uber points out, BRS also fails to explain how the cited testimony relates to Topics 36 and 37, i.e., the

---

[2] *See, e.g.*, Ceremony Dep. at 421:7-24 ("So the company hires the bankers, you know, pre-IPO, and they advise on a valuation they believe would be sufficient to meet the goals of, you know, how much capital you want to raise, and that had changes regularly, right, based on conversations with investors and sharing of update – like the roadshow is a big information-sharing with investors. And then that feedback is synthesized by and assessed by the bankers, and they advise the company on the valuation they would advise as kind of a market-maker for the stock. And so that is not the process that you would go through for a 409A. You're not talking to bankers and checking with investors. You're going through different methodologies of valuing companies; like you're comparing to peers, multiples of revenue, discounted cash flow.").

[3] For example, BRS highlights the following portion of Ceremony's deposition: "Q: At the time of the IPO, did Uber experience stagnant cumulative [Monthly Active Platform Users] growth? A: I actually don't recall." Ceremony Dep. at 380:3-6. BRS omits the rest of Ceremony's response: "But I know we have the monthly active user operating metric in the registration document." Ceremony Dep. at 380:9-10.

3

impact of potential disclosure of information on Uber's valuation or stock price, or cost-benefit analyses of potential disclosures. [*See* Docket No. 346-1 (Deposition Notice) at 9-10.]

For these reasons, BRS's motion to compel a new 30(b)(6) witness is denied.

## B. List of Documents and Notes Reviewed by Ceremony

BRS seeks to compel the production of materials reviewed by Ceremony in preparation for his deposition, namely: 1) a list of bates numbers of certain produced documents reviewed by Ceremony in preparation for his deposition; and 2) notes created by Ceremony while preparing for his deposition. BRS argues it is entitled to these materials because they were used by Ceremony to "refresh his memory" before testifying. First JDL at 2. Uber objects, claiming that counsel's selection of documents to prepare a witness is entitled to work product protection under Federal Rule of Civil Procedure 23(b)(2). Uber contends that Ceremony's notes reflect privileged attorney-client communications and constitute work product. *Id.* at 4-5.

"When a 30(b)(6) witness has used privileged documents to prepare for deposition, some courts have applied Federal Rule of Evidence 612, via Federal Rule of Civil Procedure 30, to determine whether the party must produce the documents." *Corcoran v. CVS Health*, No. 15-CV-03504-YGR (JSC), 2016 WL 11565649, at *5 (N.D. Cal. Dec. 9, 2016), *on reconsideration*, No. 15-CV-03504-YGR (JSC), 2016 WL 11565647 (N.D. Cal. Dec. 13, 2016). Rule 612 provides that when a witness has used a writing to refresh his or her memory before testifying, the adverse party "is entitled to have the writing produced at the hearing, to inspect it, to cross-examine the witness about it, and to introduce in evidence any portion that relates to the witness's testimony," "if the court decides that justice requires the party to have those options." Fed. R. Evid. 612(a)(2), (b).

### 1. List of Documents

As a threshold matter, BRS does not meaningfully challenge Uber's position that the list of documents reviewed by Ceremony to prepare for his deposition constitutes work product. BRS cites *Waymo LLC v. Uber Techs., Inc.*, No. 17-CV-00939-WHA (JSC), 2017 WL 2485382 (N.D. Cal. June 8, 2017) in a footnote, but that case undermines BRS's position. *Waymo* involved exhibits compiled and attached by a forensic expert to an investigative report. 2017 WL 2485382, at *14. The court held that the exhibits constituted fact work product, which is discoverable upon

4

a showing of substantial need. In so holding, the court distinguished them from a binder of documents used by counsel to prepare his client for a deposition, which amounted to opinion work product. *Id.* (citing *Sporck v. Peil*, 759 F.2d 312, 315 (3d Cir. 1985)). *See also U.S. Ethernet Innovations LLC v. Acer Inc*, No. C 10-03724 CW (LB), 2013 WL 5370989, at *3 (N.D. Cal. Sept. 25, 2013) (noting documents culled by counsel can be work product).

Work product protection can be waived if the documents are put to testimonial use and if the interests of justice require production. *See San Diego Unified Port Dist. v. Monsanto Co.*, No. 15-CV-0578-WQH (AGS), 2018 WL 3656298, at *3 (S.D. Cal. Aug. 2, 2018) (explaining "[t]hree foundational elements must be met before Rule 612 may result in waiver: (a) the witness must use a writing to refresh his memory, (b) for the purpose of testifying, and (c) the interests of justice require production").

Review of Ceremony's deposition transcript does not establish the first and second requirements of Rule 612, i.e., that Ceremony used the documents to refresh his memory for the purpose of testifying. BRS refers to three excerpts from Ceremony's deposition transcript to support its position. *See* First JDL at 2 (citing Ceremony Dep. at 21:8-12 (stating that he spent time with counsel to prepare for his deposition and "reviewed some of the documents . . . to refresh – you know, just to get acquainted with the documents that were exchanged"); 28:22-30:3 (explaining he referenced other documents exchanged between the parties when reviewing slide decks to "prepar[e]" and "get[] [him]self familiar"); 35:16-36:8 (stating he was "getting familiar" with documents and these documents helped refresh his recollection "more generally" about events during the IPO)). Ceremony made each of these general assertions while discussing the ways in which he prepared for his deposition. *See* Ceremony Dep. at 36:10-11. BRS does not explain how the documents refreshed Ceremony's memory as to any aspect of his testimony, as required by Rule 612. Without such a showing, BRS is not entitled to know what documents Uber provided Ceremony. *See Greer v. Elec. Arts, Inc.*, No. C10-3601-RS (JSC), 2012 WL 6131031, at *2 (N.D. Cal. Dec. 10, 2012) (holding plaintiff was not entitled to know what documents defense counsel provided the witness if such documents had nothing to do with his deposition testimony); *see also Sporck*, 759 F.2d at 315 (finding Rule 612 did not apply to facts of the case where

1  plaintiff asked the deponent to identify all documents he reviewed but did not elicit testimony

2  establishing that he relied on any documents in giving his testimony or that the documents

3  influenced his testimony).

4       Accordingly, BRS's motion to compel the list of documents reviewed by Ceremony to

5  prepare for his deposition is denied.

### 2. Ceremony's Notes

7       BRS also seeks notes Ceremony took while reviewing documents in preparation for his

8  deposition. Uber argues the notes reflect privileged attorney-client communications and are work

9  product because they were taken during meetings with counsel and pertain to topics discussed in

10 the context of counsel's communications regarding BRS's claims. First JDL at 5. Again, BRS

11 does not meaningfully dispute Uber's privilege claim. Instead, BRS argues that Ceremony used

12 the notes to refresh his memory and any protection is thus waived under Rule 612. First JDL at 2.

13      The record does not establish that Ceremony used his notes to refresh his memory for the

14 purpose of testifying. BRS cites two deposition excerpts to support its position. *See* JDL at 2

15 (citing Ceremony Dep. at 37:14-38:6 (stating he took notes in connection with documents he

16 reviewed, including "more reminders," "what are you getting deposed on," and "what areas are

17 you going to cover"); 38:11-21 (explaining he took "[l]imited notes" on "financials" from "a

18 memory standpoint")). These statements appear again to have been made towards the beginning

19 of Ceremony's deposition, as defense counsel was exploring the ways in which Ceremony

20 prepared for his deposition. The statements do not show that Ceremony relied on his notes in

21 giving his testimony, or that the documents influenced his testimony.

22      Even if BRS were able to show that Ceremony used the notes and the reviewed documents

23 to refresh his recollection to give particular testimony, BRS does not compellingly explain why it

24 is "necessary in the interests of justice" to disclose these materials. *See San Diego Unified Port*

25 *Dist.*, 2018 WL 3656298, at *3. BRS argues that without the notes and the list of documents it

26 cannot (1) test the veracity of Uber's claims that Ceremony was prepared for his deposition; (2)

27 discern which documents Ceremony reviewed given his inadequate preparation for the deposition;

28 and (3) prepare for cross-examination at trial. As discussed above, BRS's assertion that

1    Ceremony was ill-prepared for his deposition is not supported by his testimony. And although
2    BRS contends that Ceremony's notes on "financials" are relevant to the case, it does not provide
3    any specific examples of "important financial information" the notes might contain or point to any
4    authority where similar materials have been produced. *See* First JDL at 3.
5        For these reasons, BRS's request to compel the production of Ceremony's notes is denied.

    **C.**     **Harford Deposition**

BRS argues it should be permitted to take an additional two hours of deposition testimony from Uber's former Chief Operating Officer Barney Harford because Harford made a "last-minute production."[4] First JDL at 3.

According to BRS, Harford produced "hundreds of pages of highly relevant documents on September 9 and September 11 (the day before the deposition)." First JDL at 3. Uber responds that the meeting notes referenced by BRS total "111 pages in 14-point font" – of those, four pages were produced the day before the deposition while the rest were produced three days before. *Id.* at 5. The remaining documents produced on September 9 and 11, 2023 contain 123 pages of contracts and 44 pages of compensation documents, including duplicates. *Id.*

BRS asks the court to follow *Apple Inc. v. Samsung Elecs. Co.*, No. C 11-1846 LHK PSG, 2012 WL 1511901, at *12 (N.D. Cal. Jan. 27, 2012) and compel Harford to testify for additional time.[5] JDL at 3. In *Apple*, Samsung sought more time with Apple's lead designer and senior vice president of industrial design, Jonathan Ive, on the basis that he was a key witness and the best or only source of information regarding several issues on which Samsung had only received documents and discovery after his seven-hour deposition was completed. 2012 WL 1511901, at *12. The court held it was reasonable for Samsung to have an additional opportunity to question the witness because "Samsung was not in receipt of significant design-related material at the time of Ive's deposition, Ive ha[d] unique first-hand knowledge of Apple's design processes and the

---

[4] Neither party indicates the length of Harford's first deposition on September 12, 2023.

[5] BRS also cites *Pratt v. Archstone Willow Glen Apartments*, No. C08-3588 JF (RS), 2009 WL 2032469, at *1 (N.D. Cal. July 10, 2009) in passing. JDL at 3. That case is inapposite because it involved a request for additional time before the defendants had even completed their first seven-hour deposition. The court denied the motion for additional time because it was premature.

products at issue, and other designers referred to Ive in the course of their depositions[.]" *Id.*

In contrast here, the documents at issue were produced before, not after, Harford's deposition. The record does not show that BRS took steps to mitigate the problem by seeking a postponement or asking Harford about his recently-produced documents. As in *Bookhamer v. Sunbeam Prod. Inc.*, No. C 09-6027-EMC (DMR), 2012 WL 5188302, at *3 (N.D. Cal. Oct. 19, 2012), BRS appears to have made "a tactical decision" to "reserve [its] right to call Harford back after completing a review of the belatedly-produced documents," JDL at 3, n.8, instead of raising the documents at Harford's deposition or seeking to reschedule the deposition. This type of litigation disadvantage does not warrant the reopening of Harford's deposition.

The court's ruling is bolstered by the fact that BRS has failed to explain what it believes is highly relevant about the documents at issue. BRS claims the documents "appear to be [Harford's] contemporaneous notes of meetings with members of Uber's Board and other Individual Defendants" and some of the notes are "dated around the time of the IPO" or "were last modified on August 23, 2023." First JDL 3. BRS apparently did not use the opportunity to ask Harford foundational questions about his documents, and it is not clear what inferences BRS is asking the court to make based on its assertions in the JDL.

Because BRS has failed to demonstrate good cause for additional time, the request to re-open Harford's deposition is denied. *See Couch v. Wan*, No. 08–1621, 2012 WL 4433470, at *3 (E.D. Cal. Sept. 24, 2012) ("Without a showing of need or good reason, courts generally will not require a deponent's reopened deposition" (citation omitted)).

## II. DOCKET NO. 347

In the parties' second JDL, BRS moves to compel text messages from Individual Defendants Wan Ling Martello and John Thain, plus the "entire Kalanick text message source" from Individual Defendant Travis Kalanick. As the court understands it, BRS seeks the "text message source" to explore potential gaps in Uber's production of Kalanick's 28 text messages. [Docket No. 347 (the "Second JDL") at 2-3.] BRS also seeks amended discovery responses from

all three Individual Defendants.[6]  *Id.*  For the following reasons, BRS's motion is denied.

The parties first filed a discovery dispute regarding text messages on August 19, 2022. [Docket No. 223.]  On September 21, 2022, the court denied without prejudice BRS's request to compel text messages from Uber custodians and granted BRS leave to resubmit its request with evidence of texting.  [Docket No. 232.]  Specifically, the parties were granted leave to submit evidence "that is properly authenticated by declaration to support their positions in the letter.  If the parties do submit evidence, they must lodge chambers copies of the materials immediately after filing their letter."  *Id.*  The court gave examples of permissible evidence: "a declaration that authenticates . . . text messages or whatever it might be that supports your argument that text messages for certain people should be compelled."  [Docket No. 230 (Hearing Transcript) at 6:1-3.]  The parties were also instructed to include a "more precise legal analysis."  *Id.* At 4:4-5.

BRS still does not attach any evidence in support of its motion to compel text messages from additional custodians Thain and Martello.  Instead, it argues that Uber produced text message discovery on September 20, 2023 (the last day of fact discovery), which included "highly relevant text messages" from Kalanick to Thain and Martello.  Second JDL at 2.  BRS gives a single example of a text message from Kalanick to Martello and asserts that Kalanick texted a similar message to Thain.  Second JDL at 2 (citing Uber_00844659, UBER_00844661).[7]

---

[6] BRS filed a related motion seeking to seal portions of the Second JDL and Kalanick, Martello, and Thain's discovery responses.  [Docket No. 348.]  As the designating party, Uber filed a statement in support of the motion.  [Docket No. 355.]  Uber seeks to redact only certain portions of the Second JDL and the Individual Defendants' discovery responses.  The redacted portions of the Second JDL contain confidential information regarding Uber's financial projections and business strategy.  The relevant portions of the discovery responses contain the Individual Defendants' personal information, including personal email addresses and telephone numbers.

 Applying the Ninth Circuit's lower good cause standard to sealed discovery documents attached to non-dispositive motions, the court grants BRS's motion in part and orders BRS to re-file a version of the Second JDL and Kalanick, Martello, and Thain's discovery responses consistent with the redactions proposed in Uber's statement.  *See Krieger v. Atheros Commc'ns, Inc.*, No. 11-CV-00640-LHK, 2011 WL 2550831, at *1 n.1 (N.D. Cal. June 25, 2011) (citing *Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006)).

[7] The court does not include the content of the text in this order because it is subject to sealing.  Generally speaking, it is a single sentence in which Kalanick characterizes second quarter "gross and rev" and expresses a concern that the problem could "multiply" through the course of the year.

BRS relies on two inapposite cases to support its position. The first is readily distinguishable. *See John v. Cnty. Of Lake*, No. 18-CV-06935-WHA (SK), 2020 WL 3630391, at *3 (N.D. Cal. July 3, 2020) (motion to compel text messages granted where county defendants had not produced any text messages and only informed plaintiffs after the close of discovery that they had withheld a chain of text messages on relevance grounds). The other, *Kellgren v. Petco Animal Supplies, Inc.*, merely stands for the proposition that quid pro quo production is not in keeping with the Federal Rules of Civil Procedure. No. 13-CV-644 L (KSC), 2016 WL 4097521, at *4 (S.D. Cal. May 26, 2016) (rejecting plaintiff's proposal to provide responsive text messages on the condition that her supervisors' text messages were reciprocally provided).

BRS has had ample time and opportunity to build a record to support a motion to compel text messages from additional custodians. At the close of fact discovery, BRS offers a single text sent to two people. Although the text discusses a financial topic, it is far from a "smoking gun." Accordingly, the request for text messages from Thain and Martello is denied.

BRS also complains that Uber only produced 28 of Kalanick's text messages. It moves to compel the "entire Kalanick text message source" to inquire into the sources that were searched, as well as the search methodology used for Kalanick's text production. *See* Second JDL at 2-3. BRS claims it is "skeptical" that only 28 text messages were responsive to its document requests based on "other litigations and documents leaked to the press" that suggest Kalanick "constantly texted" concerning Uber. *Id.*

As Uber points out, BRS does not provide any evidence that the documents it generally refers to are responsive to its discovery requests and/or that Kalanick has access to them. *See* JDL at 4 (explaining that "BRS has known for months, [Kalanick] has access to only about one month's worth of text messages from his time as Uber's CEO in 2017" and "Uber produced all responsive text messages with other Individual Defendants from the period after June 2017 when Mr. Kalanick stepped down as CEO"). BRS does not respond to Uber's arguments. BRS's request for the Kalanick text message source is denied.

BRS's motion to compel additional discovery responses from Kalanick, Martello, and Thain is also denied. In a previous joint discovery letter filed on April 12, 2023, BRS requested

that Individual Defendants be ordered to amend their responses to interrogatories that asked them to identify: 1) phones they used to text about the IPO and allegations; and 2) ESI repositories (e.g., phones and tablets) where they stored such files. For each phone identified, BRS requested additional information, including "whether any text message was ever sent to or received by the [phone] concerning the events described in the Complaint [and] the IPO . . . (whether or not such text message was business-related." [Docket No. 265.] On June 8, 2023, the court ordered the Individual Defendants to amend their responses to BRS's interrogatories. [Docket No. 292.]

BRS now claims that Martello and Thain's amended responses to BRS's interrogatories are "plainly inaccurate" in light of Uber's last-minute production of the Kalanick text message discussed above. Second JDL at 2.

In his amended responses, Thain stated "[i]t was not [his] practice to communicate about Uber business by text message. Based on his best recollection and a reasonable search, [he] infrequently sent or received text messages on these devices related to Uber business. The infrequent text messages [he] sent or received related to Uber business were largely non-substantive and included, for example, scheduling calls or meetings." Second JDL, Ex. A at 2. Thain added: "Based on his best recollection and a reasonable search, [he] did not send or receive text messages on these devices regarding the IPO, the Categories, Uber's New Day Theme, or Uber's Projections." *Id.*

Martello similarly testified that "It was not [her] practice to communicate about Uber business by text message. [She] does not recall frequently sending or receiving text messages on these devices related to Uber business but may, for example, have sent or received text messages regarding procedural matters, like confirming availability for meetings." JDL, Ex. A at 12. She also stated: "It was not [her] practice to communicate regarding the IPO, the Categories, Uber's New Day Theme, or Uber's Projections by text message. [She] does not recall sending or receiving any text messages on these devices related to the IPO, the Categories, Uber's New Day Theme, or Uber's Projections." *Id.*

BRS also complains that Thain, Martello, and Kalanick generally denied that they used text messages to communicate regarding the Uber IPO, the Uber Projections, or the Categories.

11

*See* Second JDL, Ex. A at 16-17, 20-21, 24 (in response to request for admission, "Defendant states that it was not Defendant's general practice to use text messages to communicate about the Uber IPO, the Uber Projections, or the Categories, as defined herein, and otherwise denies Request No. 1 at this time.").

The court finds that the above responses to BRS's discovery requests are not inconsistent with the scant evidence relied on by BRS, i.e., two identical text messages from Kalanick to Martello and Thain, to which neither Martello nor Thain responded. *See* Second JDL at 5. BRS's request to compel amended responses is denied. The two text messages do not conflict with discovery responses stating that it was not the "general practice" of the Individual Defendants to communicate by text about the identified key issues.

For these reasons, BRS's requests in the Second JDL are denied.

### III.    DOCKET NO. 410

The third JDL concerns the Individual Defendants' amended responses to four interrogatories related to the due diligence defense under Section 11 of the Securities Act of 1933. [Docket No. 410 (the "Third JDL").]

These interrogatories asked the Individual Defendants: "If You contend that, prior to May 9, 2019, You conducted due diligence into the statements made in Uber's Offering Documents concerning [1) Uber's Passenger Safety Issues; 2) Uber's Business Model and Growth Strategy, including Uber's compliance with laws and regulations; 3) Uber's Financial Condition, including Uber's then-current and expected financial trends, revenue growth rate, profit and loss, and Uber's ongoing financial viability; and/or 4) Uber's New Day Theme], then identify all documents (by Bates number if applicable) and individuals You spoke with (including name, contact information, and when you spoke) that You relied on." [Docket No. 322-1 (Individual Defendants' Responses and Objections to Lead Plaintiff's Second Set of Interrogatories Addressed to the Individual Defendants).]

On November 6, 2023, in adjudicating a prior joint discovery letter, the court ordered the Individual Defendants to amend their responses to the interrogatories as follows:

> [E]ach Individual Defendant must amend his or her responses to make

> clear that their response is tailored and correct. In other words, each Individual Defendant must confirm that he or she reviewed the group summaries provided in response to the interrogatories, as well as every document listed in the exhibit attached to the responses, and certify that the information provided is 1) accurate as to them, and 2) provides a full and complete response to the interrogatory. Otherwise, the Individual Defendant(s) must amend their responses accordingly.
>
> […]
>
> Individual Defendants must amend their answers to Lead Plaintiff's interrogatories clarifying which documents [listed in the exhibit attached to the responses] are responsive to which interrogatory and providing clear responses as to which individuals (including their name, contact information, and dates of communication) the Individual Defendants spoke with and relied on.

[Docket No. 390.] The Individual Defendants timely served amended responses on November 20, 2023. BRS contends the responses are still deficient and seeks to compel further amendments. BRS attaches Defendant Matt Cohler's amended responses as a representative example. *See* Third JDL, Ex. 1.

Having reviewed Cohler's responses, the court finds that they are an improvement on the Individual Defendants' prior responses. For example, Cohler now explains that it was his "consistent practice" to review materials and attend presentations before and during Board and committee meetings. Third JDL, Ex. 1 at 9. He asserts that this "ongoing review" was part of his due diligence, and he relied on the information he received in connection with these meetings. *Id.*

However, Cohler's amended responses fall short in other respects. They refer BRS to several exhibits listing numerous documents identified by Bates number (Exhibits A-1 through A-5). *See, e.g.*, Third JDL, Ex. 1 at 9. Although it is not clear because the parties attach only one example of the Individual Defendants' amended responses, these exhibits do not appear to be tailored to specific Individual Defendants. *See* Third JDL at 1 (BRS asserting that each Individual Defendant's amended responses are "substantially the same"), 4 (Uber noting that Defendant Arianna Huffington's amended responses are "substantially identical" to Cohler's). Cohler asserts the listed documents were "previously produced in this Action, and were provided to Mr. Cohler, and consistent with his general practice and to the best of Mr. Cohler's knowledge, were reviewed by Mr. Cohler." *Id.* at 9-10. This assertion is vague and does not clearly indicate which documents, among the many documents listed in the exhibits, were in fact reviewed by Cohler. In

13

addition, the documents listed in Exhibits A-1 through A-5 are not tethered to dates and are thus not responsive to BRS's discovery requests, which specifically seek information regarding the Individual Defendants' due diligence prior to May 9, 2019. *See Scaife v. Boenne*, 191 F.R.D. 590, 594 (N.D. Ind. 2000) ("It is well established that an answer to an interrogatory must be responsive to the question" (quotation marks and citation omitted)); *see also* Fed. R. Civ. P. 33(b)(3) ("Each interrogatory must . . . be answered . . . fully").

The Individual Defendants cite *Goolsby v. Gentry*, No. 1:11-CV-01773-LJO, 2015 WL 1849837, at *26 (E.D. Cal. Apr. 22, 2015) for the proposition that they may respond to an interrogatory despite having no recollection of the information sought, by summarizing the information as it appears in the records. In *Goolsby*, however, the defendant clearly stated that he could not recall the conversation at issue. *See id.* The same is true for the responding defendants in the Individual Defendants' remaining cited cases. *See Bruce v. Woodford*, No. 1:07-CV-00269-BAM PC, 2014 WL 4446288, at *6 (E.D. Cal. Sept. 9, 2014) (defendants generally responded that they did not recall events that occurred ten years ago); *Noble v. Gonzalez*, No. 1:07-CV-01111-LJO, 2011 WL 2118746, at *6 (E.D. Cal. May 27, 2011) (defendant stated he had no "current recollection"). Here, the Individual Defendants affirmatively assert that they reviewed documents, attended meetings, and relied on information as part of their due diligence. It is insufficient to then gesture broadly to various lists of documents, and without giving any time reference. The Individual Defendants must do more, even if they may not remember every detail. For "if the answering party lacks necessary information to make a full, fair, and specific answer to the interrogatory, it should so state under oath and should set forth in detail efforts made to obtain the information." *Id.* (citation omitted).

Accordingly, each Individual Defendant must amend his or her responses to make clear if and when he or she reviewed and relied on each document listed in Exhibits A-1 through A-5. If the Individual Defendant cannot recall, he or she should state so under oath. **The Individual Defendants must serve their amended answers by February 26, 2024**.

In contrast, Exhibits B-1 through B-5 – also referred to in Cohler's amended responses – include names, contact information, and dates of communication for individuals with whom the

1   Individual Defendants spoke with and relied on prior to May 19, 2019.  The exhibits include one

2   column listing "Individuals With Whom Defendant Exchanged Electronic Communications That

3   Formed Part of Defendant's Reasonable Due Diligence Investigation," as well as a column listing

4   "Individuals With Whom Defendant Had Meetings or Oral Communications That Formed Part of

5   Defendant's Reasonable Due Diligence Investigation."

6         BRS's criticism of Exhibits B-1 through B-5 is not well taken.  BRS first complains that

7   the Individuals Defendants' responses do not identify by name any individuals they spoke with.

8   Third JDL at 2.  While that may be true, Exhibits B-1 through B-5 contain this information.  BRS

9   argues the exhibits are nevertheless deficient because receiving an email – especially as a copy – is

10  not the same as speaking with someone.  *Id.* at 3.  As mentioned, the exhibits list both electronic

11  communications *and* meetings and oral communications.  BRS's claim that the Individual

12  Defendants failed to indicate whether they relied on the listed communications is also

13  disingenuous.  The exhibits themselves indicate that the listed individuals formed part of the

14  Individual Defendant's reasonable due diligence investigation.  Finally, while it may be true that

15  certain meeting participants listed in Exhibits B-1 through B-5 could have been silent during a

16  meeting or may not have spoken with an Individual Defendant, the court does not find that this

17  possibility requires further amendment of the responses.

18        The court also denies BRS's request to reopen the Individual Defendants' depositions.  *See*

19  Third JDL at 3.  In light of the court's rulings and guidance in this order, the Individual

20  Defendants' further amended responses should be sufficiently specific for BRS's use at trial.

21  //

22  //

23  //

24  //

25  //

26  //

27  //

28  //

//

## IV. CONCLUSION

For the reasons above, the court makes the following rulings:

- The First JDL (Docket No. 346) is denied.
- The Second JDL (Docket No. 347) is denied.
- The Third JDL (Docket No. 410) is granted in part and denied in part. The Individual Defendants must serve their amended answers by **February 26, 2024**.

Dated: February 12, 2024

_____
Donna M. Ryu
Chief Magistrate Judge