September 27, 2023

**Via ECF**

Hon. Donna M. Ryu
U.S. District Court, Northern District of California
Ronald V. Dellums Fed. Bldg. & U.S. Courthouse
1301 Clay Street
Oakland, California 94612

Re:   *Boston Retirement System v. Uber Technologies, Inc.*, No. 3:19-cv-06361-RS (N.D. Cal.), Joint Letter on Discovery Dispute Regarding the Production of Text Messages and Amended Discovery Responses from Defendants Kalanick, Martello, and Thain

Dear Judge Ryu:

Lead Plaintiff Boston Retirement System ("BRS") and defendants Uber Technologies, Inc., Travis Kalanick, Wan Ling Martello, and John Thain (collectively, "Uber") respectfully submit this letter regarding BRS's motion to compel additional text messages and amended discovery responses from Mr. Kalanick, Ms. Martello, and Mr. Thain. Counsel have conferred numerous times and reached an impasse on September 22, 2023. The fact discovery cutoff was September 20, 2023, and dispositive pretrial motions are due March 12, 2024. ECF No. 271. BRS has moved to extend the fact discovery cutoff. ECF No. 313. Uber opposed. ECF No. 332. No trial date has been set.

## I.   Lead Plaintiff's Position

BRS has long been concerned with Defendants' handling of text messages in this Action. Disputes concerning Uber's production of text messages have been constant, with joint discovery letters filed with the Court on two previous occasions. On August 19, 2022, the parties filed a joint letter (ECF No. 223) on text message discovery, and on September 21, 2022, the Court held oral argument. *See* ECF No. 232. The Court denied without prejudice BRS's request to compel text messages from the Uber custodians and granted BRS leave to resubmit its request and attach evidence of texting to another joint discovery letter. Thereafter, on April 12, 2023, text message discovery was again subject to a joint discovery letter filed by the Uber Defendants related to BRS's subpoenas to phone carriers. Oral argument was held on June 8, 2023.

Following the Court's guidance at oral argument, BRS diligently pursued text message discovery. BRS's text message discovery efforts culminated with the Individual Defendants providing their Amended Responses and Objections to Lead Plaintiff's First Set of Interrogatories Addressed to the Individual Defendants (the "Amended Responses"). Pursuant to the Amended Responses, the Individual Defendants identified whether they texted concerning the Uber IPO or the matters relevant to this Action. In response to Interrogatory No. 1, Defendant Thain testified unequivocally that it was not his practice to communicate via text message regarding Uber business and did not send or *receive* text messages regarding the Uber IPO, the Categories, Uber's New Day Theme, or Uber's Financial Projections. *See* Exhibit A at 2. Defendant Martello similarly testified that it was not her practice to communicate via text message regarding Uber business and "does not recall" whether she sent or received text messages regarding the Uber IPO, the Categories, Uber's New Day Theme, or Uber's Financial Projections. *Id.* at 12. Likewise,

Defendants Kalanick, Thain, and Martello each generally denied that they used text messages to communicate regarding the Uber IPO, the Uber Projections, or the Categories in their respective Responses and Objections to Lead Plaintiff's Requests for Admission. *See* Responses to Request for Admission No. 1, Ex. A at 16-17, 20-21, and 24.

Following the service of the Amended Responses, BRS continued diligently pursuing text message discovery. BRS's reasonable requests regarding the text message discovery were met with constant delay and obfuscation. Uber repeatedly refused to provide a timeline for its production of text messages and failed to deem their productions complete until the final day of fact discovery. Thus, BRS was unable to meaningfully judge whether there were gaps in the productions until it was too late. BRS was also prevented from using text message discovery in a meaningful manner during fact discovery.

Uber's delay and obfuscation on text message discovery culminated with a production on September 20, 2023, the very last day of the fact discovery period. In stark contrast to the testimonies from the Amended Responses, the last-minute production included highly relevant text messages from Defendant Kalanick to both Defendant Thain and Defendant Martello. Indeed, just weeks before Uber's IPO, Defendant Kalanick wrote to Defendant Martello regarding Uber's projections: "[REDACTED]". *See* UBER_00844659. Defendant Kalanick also texted a similar message to Defendant Thain. *See* UBER_00844661. These go directly toward BRS's allegations in the complaint, *see* ECF No. 137, ¶¶18-19, 49, 189, 314-218, 322, and issues Judge Seeborg thought were relevant in his decision denying Defendants' motions to dismiss. ECF No. 95, pp. 4, 14.

Upon receipt of these texts on the last day of the discovery period, Lead Counsel immediately notified Uber that the Amended Responses for (at least) Defendants Thain and Martello were inaccurate. Because the Amended Responses for Thain and Martello are plainly inaccurate as they currently stand, Thain and Martello should be required to submit amended responses. Given that Lead Plaintiff now has concrete evidence that Defendants Thain and Martello texted substantively regarding matters relevant to this Action, Defendants Thain and Martello should be compelled to search for and produce responsive text messages. Likewise, Defendants Kalanick, Thain, and Martello should be compelled to submit amended responses to Lead Plaintiff's Requests for Admissions. Pursuant to Rule 26(e)(1)(A), supplemental responses are required to be made because the Uber Defendants now know that the prior responses are incomplete and incorrect. *City of Roseville Employees' Retirement System v. Apple Inc.*, No. 19-cv-02033-YGR, 2023 WL 5519304 at *4 (N.D. Cal. 2023) (imposing a duty to supplement under Rule 26(e)).

The last-minute production of Defendant Kalanick's text messages also demonstrated that Kalanick's production was filled with gaps. Indeed, Defendant Kalanick's text message production was deemed complete after the production of only 28 text messages. But Lead Plaintiff is aware, based on other litigations and documents leaked to the press, that Kalanick constantly texted concerning Uber business. In July of 2022, in a leak dubbed the "Uber Files", approximately 124,000 internal company documents were released, including 83,000 emails and text messages that were exchanged between Defendant Kalanick and other executives. With this backdrop and given Uber's history of muddying the waters with respect to text message discovery, Lead

Plaintiffs are skeptical that only 28 text messages from Defendant Kalanick were responsive to Lead Plaintiffs' document requests. *See Waymo LLC v. Uber Technologies, Inc.,* No. C 17-00939 WHA, 2018 WL 646701, at *17, *19 (N.D. Cal., 2018) (referring to Defendant Kalanick's "hundreds of deleted text messages" and ruling that facts regarding Kalanick's deleted text messages can be shown to the jury); *Hugler v. Sw. Fuel Mgmt., Inc.*, No. 16CV4547FMOAGRX, 2017 WL 8941139, at *6 (C.D. Cal. Apr. 12, 2017) (noting that it is "not possible to operate a business" without texting). By waiting until the last day of fact discovery to produce Defendant Kalanick's text messages, Uber prevented Lead Plaintiff from meaningfully inquiring into the sources that were searched, as well as the search methodology used for Kalanick's text production.

Courts routinely compel parties to produce text messages. *John v. Cnty. of Lake*, No. 18-CV-06935-WHA (SK), 2020 WL 3630391, at *3 (N.D. Cal. July 3, 2020) (ordering production of text messages withheld on relevance grounds after defendants claimed they "did not use their cell phones to communicate"); *Kellgren v. Petco Animal Supplies, Inc.,* No. 13-CV-644, 2016 WL 4097521, at *4 (S.D. Cal. May 26, 2016) ("no . . . rationale as to why text messages should be treated any differently than email."). Based on the above, BRS respectfully requests that this Court grant BRS's motion to compel: (a) the entire Kalanick text message source; (b) amended responses to Lead Plaintiff's First Set of Interrogatories Addressed to the Individual Defendants for Thain and Martello; (c) text messages from Thain and Martello; (d) amended responses to Lead Plaintiff's Requests for Admissions Directed as to Defendants Kalanick, Thain, and Martello; and (d) for such other and further relief the court deems just and proper.

## II.     Uber's Position

After months of negotiation and motion practice, Uber and BRS agreed that Uber would produce text messages from six custodians in return for BRS's agreement that production would "put the . . . issue to rest," and BRS would not seek additional texts "absent good cause." Aug. 29, 2023, email from J. Cotilletta to Z. Deaton. Uber complied, BRS reneged. The six agreed-upon text custodians were (i) Dara Khosrowshahi (Uber's CEO), (ii) Ronald Sugar (Chairman of the Board), (iii) Travis Kalanick (Uber's CEO until June 2017; former Board member), (iv) Andrew Byrne (VP, Global Public Policy), (v) Glen Ceremony (Chief Accounting Officer), and (vi) Matt Kallman (VP and Global Head, Communications). *Id.* Contrary to BRS's accusations of delay, Uber produced texts for two of the custodians even before a final agreement was reached, and before their depositions, to avoid any possible prejudice to BRS.

But despite Uber's compliance with the parties' agreement, BRS now demands additional texts from Mr. Kalanick and from the personal devices of two additional Board members, Ms. Martello and Mr. Thain. BRS also demands that those individuals amend responses to its discovery requests. BRS's demands should be rejected. Uber has already produced all the responsive text messages in its and Mr. Kalanick's possession; there is no evidence that Ms. Martello or Mr. Thain texted about "key events or issues," Sept. 21, 2022, Hearing Tr. (ECF No. 230) at 4:10–11; the few texts BRS points to confirm the accuracy of the discovery request responses; and BRS has not come close to justifying the burden and privacy invasions it seeks, much less met the "exacting" good-cause standard it agreed to, *Clear-View Techs., Inc. v. Rasnick*, 2015 WL 1307112, at *3 (N.D. Cal. Mar. 23, 2015).

Requests for text messages should be based on evidence of "communication by text about the key

events or issues in the case." ECF No. 230 at 4:10–11; *see also Jones v. Varsity Brands*, 2021 WL 5889984, at *3 & n.6 (W.D. Tenn. Dec. 13, 2021) (requiring evidence "that a significant amount of business" was done over text and ordering search of only one "central figure['s]" texts); *United States v. Allergan*, 2021 WL 969215, at *3 n.4 (C.D. Cal. Mar. 1, 2021) ("there is considerably more burden associated with collecting text messages than emails").[1] A further key consideration is whether the texts sought are stored on private devices. ECF No. 230 at 5:12–13; *see also Riley v. California*, 573 U.S. 373, 403 (2014) (cell phones hold "the privacies of life"). Both considerations defeat BRS's demands.

*Mr. Kalanick*. Uber has already produced Mr. Kalanick's responsive text messages. As BRS has known for months, he has access to only about one month's worth of text messages from his time as Uber's CEO in 2017. Mr. Kalanick relinquished that position in June 2017, and his discovery responses explained that he has text message data only "from approximately May 2017." Mr. Kalanick's June 29, 2023, Am. R&Os to BRS's 1st Set of Interrogs. at 12. Given the "limitations on the data available" for the period covering his tenure as CEO (more than six years ago), Mr. Kalanick agreed to (and did) "review and produce <u>all</u> responsive messages . . . without the application of search term or custodian limitations." Aug. 22, 2023, email from Z. Deaton to J. Cotilletta. There is nothing more from 2017 that Mr. Kalanick could review or produce. *See Zox LLC v. Zox*, 2022 WL 3137939, at *3 (C.D. Cal. Feb. 4, 2022) ("No matter how strong its coercive powers, the Court cannot compel Defendant to produce something he swears—under penalty of perjury—that he does not possess."). Additionally, and as agreed, Uber produced all responsive text messages with other Individual Defendants from the period after June 2017 when Mr. Kalanick stepped down as CEO. His production is complete.

BRS's reference to the "Uber Files" document leak is irrelevant because BRS has shown neither that those documents include responsive texts from Mr. Kalanick nor that he has access to them. And the five exchanges BRS points to from Uber's production—which relate principally to meeting attendance and scheduling, *e.g.*, responding "Yes" to "R u on this board call" (UBER_00844661); "Got in a little late… Did I miss anything?" (UBER_00844659); "Any idea what agenda is for board meeting next week?" (UBER_00844655)—are entirely consistent with Mr. Kalanick's statement that "it was not [his] general practice to use text messages to communicate about the Uber IPO, the Uber Projections, or [Uber's business model, the December 2019 U.S. Safety Report release, and financial condition]." Mr. Kalanick's Apr. 22, 2022, R&Os to BRS's RFAs at 9–10.

*Ms. Martello* and *Mr. Thain*. The five exchanges BRS points to also confirm that it was not Ms. Martello's or Mr. Thain's "practice to communicate about Uber business by text message." Ms. Martello's July 6, 2023, and Mr. Thain's June 29, 2023, Am. R&Os to BRS's 1st Set of Interrogs. at 12. Among all the texts Uber has produced to BRS, there are only three short exchanges involving Mr. Thain (including one consisting of a single message to which Mr. Thain did not reply) and two involving Ms. Martello. Those five exchanges confirm that neither Ms. Martello nor Mr. Thain discussed key issues by text and only echo substance BRS can find in Uber's extensive document productions. *See, e.g.*, UBER_00844655 (August 2018 message from

---

[1] *Kellgren v. Petco Animal Supplies, Inc.* does not help BRS. 2016 WL 4097521 (S.D. Cal. May 26, 2016). There, "the plaintiff provide[d] no information or rationale as to why text messages should be treated any differently than email." *Id.* at *4. Here, the parties *agreed* texts should be treated differently. BRS now seeks to back out of that deal.

Mr. Kalanick asking, "Any idea what agenda is for board meeting next week?," to which Mr. Thain replied, "I know nothing except email messages"). Seeking Ms. Martello's texts would in any event be futile because she "does not have access to [the mobile devices she used during the relevant period]" or "to the text message data associated" with them. Ms. Martello's July 6, 2023, Am. R&Os to BRS's 1st Set of Interrogs. at 12; see Zox, 2022 WL 3137939, at *3.

Although a few of Mr. Kalanick's individual texts to Ms. Martello and Mr. Thain reference his concerns—known to BRS from Uber's document productions—about the company's direction after he stepped down as CEO, there is **not a single** response from Ms. Martello or Mr. Thain to those messages. UBER_00844663 is a text from Mr. Kalanick to Mr. Thain ("[redacted]"), to which Mr. Thain did not reply. UBER_00844665 is primarily a personal exchange between Ms. Martello and Mr. Kalanick that ends with a note from Ms. Martello that she "[j]ust saw an Uber TV commercial . . . . Dara saying changing the company with (1) change in culture (2) change in leadership (3) Listening," after which Mr. Kalanick stated: "[redacted]" a message to which Ms. Martello did not reply. UBER_00844661 includes a text from Mr. Kalanick to Mr. Thain: "[redacted] to which Mr. Thain did not reply. And UBER_00844659 includes a nearly identical text sent by Mr. Kalanick to Ms. Martello a few minutes later, to which Ms. Martello also did not reply.

Far from demonstrating the good cause BRS agreed is required for seeking additional text message discovery, and to reopen fact discovery, these brief exchanges defeat any argument that Ms. Martello or Mr. Thain sent texts about key, relevant issues. Indeed, if they had engaged in substantive texting about such issues, BRS would have seen those exchanges in the messages Uber has already produced, including in Mr. Khosrowshahi's and Dr. Sugar's texts, which were reviewed, and produced to the extent any texts with other Individual Defendants were responsive, without application of search terms. Those texts included no responsive exchanges with Ms. Martello or Mr. Thain, and Mr. Kalanick's messages yielded only the five exchanges with them noted above, none of which justifies seeking further text message discovery. That is particularly so because Ms. Martello and Mr. Thain, unlike Mr. Khosrowshahi, used personal mobile devices. Text message discovery from them would therefore require the collection and review of personal communications, exposing their private communications to counsel's scrutiny for no legitimate purpose. BRS's requests should be denied.

Respectfully submitted,

| | |
|---|---|
| SCOTT+SCOTT ATTORNEYS AT LAW, LLP | SHEARMAN & STERLING LLP |
| By: */s/ John T. Jasnoch* <br> John T. Jasnoch (SBN 281605) <br> 600 W. Broadway, Suite 3300 <br> San Diego, CA 92101 <br> Telephone: (619)798-5310 <br> Facsimile: (619) 233-0508 <br> Email: jjasnoch@scott-scott.com <br><br> *Counsel for Class Representatives* <br><br>   -and- <br><br> LABATON SUCHAROW LLP <br> Jonathan Gardner (admitted *pro hac vice*) <br> Alfred L. Fatale III (admitted *pro hac vice*) <br> Joseph N. Cotilletta (admitted *pro hac vice*) <br> Robert S. Rowley (admitted *pro hac vice*) <br> 140 Broadway <br> New York, NY 10005 <br> Telephone: (212) 907-0700 <br> Facsimile: (212) 818-0477 <br> Email: jgardner@labaton.com <br>         afatale@labaton.com <br>         jcotilletta@labaton.com <br>         rrowley@labaton.com <br><br> *Lead Counsel for the Class* | By: */s/ Daniel H.R. Laguardia* <br> Daniel H.R. Laguardia (SBN 314654) <br> 535 Mission Street, 25th Floor <br> San Francisco, CA 94105-2997 <br> Telephone: (415) 616-1100 <br> Facsimile: (415) 616-1199 <br> Email: daniel.laguardia@shearman.com <br><br>   -and- <br><br> Paula Anderson (admitted *pro hac vice*) <br> Agnès Dunogué (admitted *pro hac vice*) <br> Dennis D. Kitt (admitted *pro hac vice*) <br> 599 Lexington Avenue <br> New York, NY 10022-6069 <br> Telephone: 212.848.4000 <br> Facsimile: 212.848.7179 <br> Email: paula.anderson@shearman.com <br>         agnes.dunogue@shearman.com <br>         dennis.kitt@shearman.com <br><br> *Attorneys for Defendants Uber Technologies, Inc., Dara Khosrowshahi, Nelson Chai, Glen Ceremony, Ronald Sugar, Ursula Burns, Garrett Camp, Matt Cohler, Ryan Graves, Arianna Huffington, Travis Kalanick, Wan Ling Martello, Yasir Al-Rumayyan, John Thain, and David Trujillo* |

Cc:  All Counsel of Record (*via ECF*)