1

2

3

4 UNITED STATES DISTRICT COURT

5 NORTHERN DISTRICT OF CALIFORNIA

6

7 | BOSTON RETIREMENT SYSTEM,
Individually and on behalf of all others

8 | similarly situated,

9 |            Plaintiff,

10 |     v.

11 | UBER TECHNOLOGIES, INC., et al.,

12 |          Defendants.

Case No. 19-cv-06361-RS   (DMR)

**ORDER ON MOTION TO COMPEL AND MOTIONS TO SEAL**

Re: Dkt. No. 360, 362, 363, 364, 387

13

14       Lead Plaintiff Boston Retirement System ("BRS") filed a motion to compel production of

15 unredacted versions of 28 documents produced by non-party PricewaterhouseCoopers ("PwC").

16 [Docket No. 363 ("Mot.").]  Defendant Uber Technologies, Inc. ("Uber") asserts that the work

17 product doctrine shields redacted portions of the documents from discovery.  The documents fall

18 into four categories: 1) impairment assessments, 2) forensic memoranda, 3) emails, and 4)

19 management representation letters ("MRLs").  On December 18, 2023, the court ordered BRS to

20 select one exemplar document from the first, second, and fourth categories, and instructed Uber to

21 lodge complete, unredacted versions of those three documents for in camera review.  [Docket No.

22 409.]  The documents in each of these three categories are very similar, and a ruling on one

23 exemplar will in all likelihood apply to the others.  Uber was also ordered to submit unredacted

24 copies for in camera review of all emails at issue, as well as the document in Exhibit H.  Uber

25 timely lodged the documents.  Having reviewed the documents in camera, the court denies BRS's

26 motion to compel.[1]

27

28

---

[1] This matter is suitable for resolution without a hearing pursuant to Civil Local Rule 7-1(b).

# I.      BACKGROUND

## A.      Factual Background

This securities class action arises from the initial public offer ("IPO") for Uber, a transportation company that provides on demand rides and food delivery.  Uber raised more than $8.1 billion through the IPO, which took place on May 10, 2019, and sold over 180 million shares of its common stock to the public at a price of $45.00 per share.  [Docket No. 137 (Second Amended Complaint ("SAC") ¶¶ 3, 7.]  The IPO valued Uber at $75.5 billion.  *Id.*

Plaintiffs allege that, while the offering was successful for Uber, it was a "train wreck" for investors.  SAC ¶ 8.  Specifically, Uber "premised the Company's growth on an undisclosed, unsustainable, and often illegal 'growth at any cost' business model, putting growth first above profits, the law, and even its own passengers' safety." *Id.* ¶ 11.  As examples, Uber operated in jurisdictions where it was not licensed or lawfully permitted to operate and ignored reports of sexual assaults by its drivers.  *Id.* ¶¶ 12-17.  Uber also "concealed that its growth at any cost business model was negatively impacting its financial condition." *Id.* ¶ 17.  In the same quarter as its IPO, Uber reported a $5.2 billion loss.  *Id.* ¶ 18.  The financial documents for that quarter also showed that Uber was not growing as it represented in the offering documents.  *Id.* ¶ 19.

According to Plaintiffs, Uber's offering documents, including its registration statement, "contained materially false and misleading statements of fact and omitted material facts required to be disclosed in order to make the statements in the Offering Documents not misleading."  SAC ¶ 20.  As an initial matter, the offering documents concealed that Uber's success was "premised on an undisclosed, unsustainable, and often illegal growth at any cost business model." *Id.* ¶ 21.  Second, Uber "deliberately ignored and failed to disclose rampant, dangerous, and even lethal passenger safety issues across the Company's ridesharing platform," including physical and sexual assault.  *Id.* ¶¶ 42-43.  Finally, Uber allegedly "sold itself to investors promising growth now, profits later, but its growth at any cost business model was defective, and Uber concealed its true financial condition." *Id.* ¶ 48.

Plaintiffs allege that Uber made false or misleading statements and omissions in connection with Uber's IPO in violation of Sections 11, 12(a)(2), and 15 of the Securities Act of

1  1933 ("Securities Act").

2  **B.      Facts Relevant to the Present Dispute**

3  As Uber's independent auditor, PwC requests analyses from Uber regarding potential or

4  pending litigation and investigation matters.  [Docket No. 380-1 (Jason Allen Decl., Oct. 23,

5  2023) ¶ 2.]  Uber responds by gathering analyses from its in-house and outside counsel and

6  sharing them with PwC.  *Id.* ¶ 3.

7  According to Uber, PwC has produced thousands of documents to BRS in response to a

8  third-party subpoena.  [Docket No. 380 ("Opp'n") at 1.]  Uber asserted privilege over several of

9  these documents and produced its first privilege log on October 24, 2022.  [Docket No. 363-1

10  (Alfred L. Fatale III Decl., Sept. 26, 2023) ¶¶ 38-39, Ex. CC.]  Over the ensuing months, BRS

11  challenged Uber's privilege assertions, and Uber further amended the privilege log.  *Id.* ¶ 41, Exs.

12  DD-HH.  Uber produced its latest amended log on September 8, 2023 (the "Privilege Log").  *Id.* ¶

13  42, Ex. HH; Opp'n at 1-2.  The Privilege Log "shrunk from 432 entries to 114" and converted its

14  assertions of "attorney-client privilege" to "protected work product."  Fatale Decl. ¶¶ 43-44

15  (comparing Exs. CC, DD, and HH).  BRS continued to challenge the Privilege Log, and the parties

16  reached an impasse.  *Id.* ¶ 45; Opp'n at 2.

17  The parties filed a joint discovery letter on September 8, 2023, in which BRS moved to

18  compel 29 documents produced by PwC.  [Docket No. 326.]  The court subsequently granted the

19  parties leave to file the instant motion, in which there appear to be 28 documents in dispute.

20  **II.      LEGAL STANDARDS**

21  **A.  Work Product**

22  The parties agree that federal privilege law applies to this dispute.  *See* Mot. at 2; Opp'n at

23  2.  Under federal law, the work product doctrine protects from discovery "materials prepared by

24  an attorney in anticipation of litigation," be they "by or for the attorney."  *United States v.*

25  *Bergonzi*, 216 F.R.D. 487, 494 (N.D. Cal. 2003) (citations omitted); *accord United States v.*

26  *Richey*, 632 F.3d 559, 567 (9th Cir. 2011).  It aims to balance the "promotion of an attorney's

27  preparation in representing a client" against "society's general interest in revealing all true and

28  material facts to the resolution of a dispute."  *In re Seagate Tech., LLC*, 497 F.3d 1360, 1375 (Fed.

*United States District Court*
*Northern District of California*

3

1  Cir. 2007) (citation and quotation marks omitted).  To qualify for work-product protection,

2  materials must "(1) be prepared in anticipation of litigation or for trial and (2) be prepared by or

3  for another party or by or for that other party's representative."  *Richey*, 632 F.3d at 567 (citation

4  and quotation marks omitted).

5       At times, a document may have a litigation purpose as well as a non-litigation (e.g.,

6  business) purpose.  When a document serves a dual purpose, the Ninth Circuit applies a "because

7  of" test to determine whether the document is entitled to work product protection from discovery.

8  "Dual purpose documents are deemed prepared because of litigation if 'in light of the nature of the

9  document and the factual situation in the particular case, the document can be fairly said to have

10  been prepared or obtained because of the prospect of litigation.'"  *Richey*, 632 F.3d at 568 (9th

11  Cir. 2011) (quoting *In re Grand Jury Subpoena, Mark Torf/Torf Envtl. Mgmt.*, 357 F.3d 900, 907

12  (9th Cir. 2004)).  This analysis requires the court to examine the totality of the circumstances and

13  determine whether the document was prepared in anticipation of litigation and "would not have

14  been created in substantially similar form but for the prospect of that litigation."  *In re Grand Jury*

15  *Subpoena*, 357 F.3d at 908 (quotation omitted).  A party asserting the work product doctrine bears

16  the burden of demonstrating that the protection applies.  *See, e.g.*, *In re Grand Jury Investigation*,

17  974 F.2d 1068, 1071 (9th Cir. 1992).

18  **III.   DISCUSSION**

19       The court applies the "because of" standard and must "consider the totality of the

20  circumstances and determine whether the 'document was created because of anticipated litigation,

21  and would not have been created in substantially similar form but for the prospect of litigation.'"

22  *Richey*, 632 F.3d at 568 (quoting *In re Grand Jury Subpoena*, 357 F.3d at 908).[2]

23

24  [2] The parties dispute the meaning and application of the Ninth Circuit's "because of" test to
   determine whether a "dual purpose" document is entitled to work product protection.  In a

25  nutshell, the parties frame the issue as whether, in applying the "because of" test to redacted
   portions of a document, the court should focus on the redactions and not the document (Uber's

26  position), or on the document and not the redactions (BRS's position).

27   Neither party cites cases that squarely address their constructed framework.  For example, *In re
   JDS Uniphase Corp. Sec. Litig.*, No. C-02-1486 CW (EDL), 2006 WL 2850049 (N.D. Cal. Oct. 5,

28  2006) – a case proffered by BRS – dealt with a motion to compel production of the redacted
   portions of Board minutes.  The court in *JDS* appeared to consider both the redactions and the

United States District Court
Northern District of California

1    The first group of documents consists of three similar PwC impairment assessments dated

2    November 2018.  *See* Fatale Decl., Exs. A, B, C; *see also id.*, Ex. HH (privilege log entries 687,

3    695, and 696).

4    The assessments were prepared by Amy Cheng and reviewed by Paul Lewenberg.  BRS

5    asserts (and Uber does not appear to dispute) that Cheng and Lewenberg are "non-lawyer PwC

6    employees."  *See* Mot. at 5.  Exhibit C includes comment bubbles on the side of the document and

7    appears to be an earlier draft of Exhibits A and B.  The documents were drafted to "perform the

8    2018 annual impairment review of plant, property and equipment ("PP&E"), goodwill and

9    intangible assets on [Uber's] balance sheet," and contain "an overview of the assets subject to this

10   review, including the source of capitalization, and the approach to assessing impairment."  *See,*

11   *e.g.*, Fatale Decl., Ex. A.  All three documents reflect the same redactions under a section

12   describing "significant adverse change in legal factors or in the business climate that could affect

13   the value of a long-lived asset (asset group), including an adverse action or assessment by a

14   regulator."  *See, e.g.*, *id.*

15   Uber explains that PwC requested the opinions and mental impressions of Uber's in-house

16   counsel to include in PwC's impairment assessments.  Opp'n at 5 (citing Docket No. 380-3

17   (Stacey Grigsby Decl., Oct. 25, 2023) ¶ 8).  Grigsby, an outside counsel, was seconded to Uber's

18   legal department from January 2018 to August 2019.  Grigsby Decl. ¶ 1.  Her responsibilities

19   included handling inquiries from PwC about potential or pending government litigation and

20   investigation matters, including inquiries about the potential impact of these matters on the value

21   of Uber's assets.  *Id.* ¶ 8.  Grigsby explains that in responding to PwC's inquiries, she and other

22

23   minutes as a whole in analyzing whether the redactions were designated as work product under the
     "because of" test; it did not grapple with the question raised by the parties here.  *See* 2006 WL

24   2850049, at *2.  For its part, Uber cites *U.S. v. Deloitte LLP and Dow Chemical Co.*, which
     simply endorsed the "because of" test.  610 F.3d at 137 ("Like most circuits, we apply the

25   'because of' test . . . [W]hile this standard addresses a 'document,' it applies equally to work
     product in other forms.").

26
      Ultimately, the parties' framing is not helpful because, at bottom, the court must consider "the
27   totality of the circumstances and determine whether the 'document was created because of
     anticipated litigation, and would not have been created in substantially similar form but for the
28   prospect of litigation.'"  *Richey*, 632 F.3d at 568 (quoting *In re Grand Jury Subpoena*, 357 F.3d at
     908).

United States District Court
Northern District of California

1    attorneys in Uber's legal department "assessed pending and potential litigation and regulatory

2    matters and shared with PwC [their] assessment as to whether rulings in these matters might

3    impact the value of Uber's assets." *Id.* PwC then "memorialized [Uber's] responses to its

4    inquiries in memoranda prepared as part of its annual Impairment Assessments[.]" *Id.* According

5    to Uber, PwC's memorialization of counsel's views is protected opinion work product. Opp'n at

6    6; *see also* Grigsby Decl. ¶ 8 ("I have reviewed unredacted versions of these memoranda and

7    confirm that the redacted excerpts reflect the opinions and mental impressions of myself and other

8    attorneys in Uber's legal department as to the potential impact on the value of Uber's assets of

9    rulings in pending or potential litigation and regulatory matters").

10       In general, "a document created because of anticipated litigation, which tends to reveal

11   mental impressions, conclusions, opinions or theories concerning the litigation, does not lose

12   work-product protection merely because it is intended to assist in the making of a business

13   decision influenced by the likely outcome of the anticipated litigation. Where a document was

14   created because of anticipated litigation, and would not have been prepared in substantially similar

15   form but for the prospect of that litigation, it falls within Rule 26(b)(3)." *United States v. Adlman*,

16   134 F.3d 1194, 1195 (2d Cir.1998); *see also In re Honeywell Int'l, Inc. Sec. Litig.*, 230 F.R.D.

17   293, 300 (S.D.N.Y. 2003) (finding assertion of work product protection was proper for documents

18   prepared by PWC memorializing opinion work product).

19       In camera review of Exhibit A confirms that redactions in the impairment assessments

20   were created "because of" anticipated litigation. The redactions summarize PWC's discussions

21   with Uber counsel and reveal Uber counsel's mental impressions, conclusions, and opinions

22   regarding ongoing legal matters. *See* Fatale Decl., Ex. A at PwC_00005735. Because PWC's

23   memorialization of its discussions with Uber counsel "reflect the opinions and mental impressions

24   of [Grisby] and other attorneys in Uber's legal department as to the potential impact on the value

25   of Uber's assets of rulings in pending or potential litigation and regulatory matters," Grigsby Decl.

26   ¶ 8, the court concludes that the redactions in the impairment assessments are protected by the

27   work-product doctrine. *See Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, 237 F.R.D.

28   176, 182-83 (N.D. Ill. 2006) (finding opinion letters prepared by defendant's counsel summarizing

1    pending and threatened litigation and related documents were protected by the work product

2    doctrine where in camera review of the letters showed counsel "clearly exercised judgment in

3    assessing the potential liability for each case and in determining which matters and information to

4    include in the report").

5          The second group of documents comprises redacted email exchanges between PwC

6    representatives and Uber attorneys from late 2018 through early 2019.  *See* Opp'n at 8; *see also*

7    Fatale Decl., Exs. V, W, X, Y, Z; *id.*, Ex. HH at 18, 20-23 (privilege log entries 985.1, 999, 1008,

8    1014, 1019.1).  The emails refer to an "internal letter" or "legal letter."  *See, e.g.*, Fatale Decl.,

9    Exs. V, X.

10         Allen explains that PwC regularly requested loss contingency letters from Uber's legal

11   department and outside counsel "containing analyses about any material loss contingencies arising

12   from pending or overtly threatened litigation, claims, or assessments."  Allen Decl. ¶ 8.  Allen's

13   responsibilities include preparing these letters, which are ultimately signed by Uber's Chief Legal

14   Officer, Tony West.  *Id.*  Allen also corresponds with PwC via email regarding the loss

15   contingency letters.  *Id.* ¶ 9 (referring to Exhibits V, W, X, Y, Z).  His declaration "confirm[s] that

16   the redacted content [in Exhibits V through Z] contains attorney opinions and mental impressions

17   of [Allen] or other attorneys in Uber's legal department working with [Allen] as to potential or

18   pending litigation and investigation matters[.]"

19         In camera review of the emails supports Allen's assertions.  The redacted content describes

20   edits made to Uber's loss contingency letters, references pending litigation or investigations, and

21   discusses legal strategy.  *See, e.g.*, Fatale Decl., Ex. V at PwC_00127048, Ex. W at

22   PwC_00127050, PwC_00127051, Ex. X at PwC 00127064, Ex. Y at PwC_00127069, Ex. Z at

23   PwC_00127072.  The redacted information is protected work product.

24         The third group of documents consists of internal PwC forensic memoranda.  *See* Fatale

25   Decl., Exs. D, E, F, G, AA, BB.  Exhibits D, E, F, and G are nearly identical documents from

26   April 2018 (Ex. E) and updated in March 2019 (Exs. D, F, G).  Exhibits AA and BB are

27

28

United States District Court
Northern District of California

substantively identical memoranda from May 9, 2019 (BB) and May 23, 2019 (AA).[3]  All documents contain appendices with additional redactions.  They involve the "[e]valuation of [Uber]'s matters under investigation" and aim to "address the nature, scope and timing of procedures performed by PwC related to the possible incidents of noncompliance that have come to [PwC's] attention."  *See, e.g.*, Ex. E.  The memoranda appear to have been prepared to "support PwC's assessment of [Uber]'s ongoing response to possible illegal act(s)[.]"  *See, e.g.*, *id.*

Uber cites all three of its proffered declarations (Dwyer, Grigsby and Allen) to support that "in-house and external counsel confidentially conveyed their views, mental impressions, opinions, and conclusions about [possible incidents of non-compliance with laws and regulations at Uber] to PwC."  *See* Opp'n at 7.  John Dwyer, a partner at Cooley LLP ("Cooley"), explains that his law firm was retained by the Special Matters Committee ("SMC") of Uber's Board of Directors (the "Board") in 2017 to "assist and advise the SMC with respect to its oversight of multiple investigations into possible incidents of non-compliance with laws and regulations and potential or actual litigation associated [with those incidents] (the "Matters")."  [Docket No. 380-2 (John C. Dwyer Decl., Oct. 25, 2023) ¶ 2.]  Dwyer was responsible for coordinating with and providing responses to requests from PwC.  *Id.* ¶ 3.  He reviewed unredacted copies of the forensic memoranda, and confirms that the redacted material reflects "the views, opinions, mental impression, and conclusions of [himself] and other outside counsel conveyed to PwC on a confidential basis[.]"  *Id.* ¶ 4-9.  More specifically, Dwyer indicates that the redacted materials include "a framework categorizing the various Matters that [Dwyer] discussed with PwC," "Uber's conclusions . . . about the Matters . . . and the impact they had or might have on the historical or current financial statements of Uber (if any)," his "overall conclusions about the investigations regarding the Matters," opinions regarding "whether the Matters merited external disclosure," and the opinions, judgment, and mental impressions of Dwyer and outside counsel related to "the status of each investigation, the investigation process, and [counsel's] findings."

---

[3] The parties refer to different log entries for this category of documents.  Uber refers to entries 729, 932, 940, 949, and 1033.  BRS refers to entries 937.1, 729, 932, 949.  BRS's reference to log entry 937.1 appears to be an error as it relates to a management representation letter, not a forensic memorandum.

United States District Court
Northern District of California

1    *See id.*

2           Grigsby became responsible for supervising investigations into possible incidents of non-

3    compliance when the SMC was wound down in early 2018.  Grigsby Decl. ¶ 2.  Her work

4    included communicating about these matters with PwC.  *Id.*  She coordinated and provided

5    responses to requests from PwC for legal analyses about the Matters, and "made [herself]

6    available for interviews with PwC" to share her "views, opinions, mental impressions, and

7    conclusions" regarding the same.  *Id.* ¶ 3.  Grigsby reviewed unredacted copies of Exhibits D, G,

8    AA, and BB and "confirm[s] . . . that the redacted material memorializes the views, opinions,

9    mental impressions, and conclusions of myself and outside counsel conveyed to PwC on a

10   confidential basis with respect to the Matters."  *Id.* ¶ 4.  According to Grigsby, the redactions in

11   Appendix I of Exhibits AA and BB contain PwC's memorialization of meetings between PwC and

12   outside law firms handling the Matters and related civil litigation, during which attorneys

13   explained the status of each investigation, the investigation process, and their factual and legal

14   findings.  *Id.* ¶ 7.  The redactions at pages 6-7 of Exhibit BB contain summaries of calls between

15   PwC and outside counsel who disclosed their mental impressions and conclusions regarding the

16   Matters.  *Id.*

17          Allen asserts that some redactions include sections of MRLs, which "address allegations or

18   inquiries of possible violations of laws or regulations whose effects have been considered by Uber

19   for disclosure in the consolidated financial statements or as a basis for recording a loss

20   contingency."  Allen Decl. ¶ 7.  In addition, the memoranda's appendices include charts

21   summarizing the contents of loss contingencies letters prepared by Uber's counsel.  *Id.* ¶ 10.

22          Based on in camera review of Exhibit BB, the redactions in PwC's forensic memoranda

23   appear to fall into two buckets – both of which are protected by the work product doctrine.  The

24   first bucket includes PwC's memorialization of discussions with Uber counsel describing steps

25   taken to respond to PwC's inquiries, confirming the completeness of counsel's work, and

26   revealing counsel's mental impressions, conclusions, and opinions regarding ongoing

27   investigations.  *See, e.g.*, Fatale Decl., Ex. BB at PwC_00034241.0004, PwC_00034241.0005.

28   The court finds that these redactions are protected by the work product doctrine.

United States District Court
Northern District of California

1    The second bucket includes redactions made to Appendix I attached to Exhibit BB.

2    Appendix I contains charts summarizing Uber counsel's opinions and mental impressions

3    regarding ongoing investigations.  *See* Ex. BB at PwC_00034341.0007 – PwC_00034341.0025

4    (discussing a number of ongoing matters).  These summaries were created "because of anticipated

5    litigation, and would not have been created in substantially similar form but for the prospect of

6    litigation."  *In re Grand Jury Subpoena*, 357 F.3d at 908.  Accordingly, the redactions in

7    Appendix I qualify for work product protection.

8        The fourth and final group of documents includes MRLs from December 5, 2018 (Ex. N)

9    to May 12, 2019 (Ex. Q).  Fatale Decl., Exs. I-U; *see also id.*, Ex. HH (privilege log entries 893.1,

10   895, 896, 904.1, 916, 933, 14305-11, 1061).  The MRLs appear to be substantially the same,

11   except that some have different dates and others contain edits in track-changes (Ex. J).  They are

12   all addressed from Uber to PwC and were provided "in connection with [PwC's] audits of

13   [Uber's] consolidated financial statements . . . for the purpose of expressing an opinion as to

14   whether such consolidated financial statements present fairly, in all material respects, the financial

15   position, results of operations, and cash flows of [Uber] in conformity with accounting

16   principles[.]"  *See, e.g., id.*, Ex. I.  The MRLs are also provided for the purpose of "determining

17   whether any material modifications should be made to the consolidated interim financial

18   information for it to conform with accounting principles[.]"  *See id.*

19       Allen explains that PwC relied on MRLs in assessing the potential impact of litigation and

20   investigations on Uber's financial statements and internal controls.  Allen Decl. ¶ 4.  These MRLs

21   are provided by Uber and signed by senior management.  *Id.*  Allen was responsible for preparing

22   sections of the MRLs that addressed allegations or inquiries of possible violations of laws or

23   regulations whose effects were considered by Uber for disclosure in consolidated financial

24   statements or as a basis for recording a loss contingency.  *Id.*  Allen reviewed unredacted copies of

25   the MRLs and asserts that the redacted materials contain "a list and description of investigations

26   and litigation that Uber's in-house counsel prepared" as well as "the opinions and mental

27   impressions of Uber's in-house counsel regarding whether potential or pending litigation and

28   investigation matters merited consideration for disclosure in Uber's financial statements."  *Id.* ¶ 5.

1    BRS chiefly contends that the unredacted portions of the documents suggest they were not

2  prepared in anticipation of litigation.  *See* Mot. at 8.  In camera review of Exhibit Q does not

3  support BRS's assertion.  The redacted material in Exhibit Q contains a list of "allegations or

4  inquiries of possible violations of laws or regulations which effects have been considered for

5  disclosure in the consolidated financial statements or as a basis for recording a loss contingency."

6  Ex. Q at PwC_00014380.  Allen's testimony asserts that these redacted portions were prepared by

7  Uber's in-house counsel.  *See* Allen Decl. ¶¶ 4-6.  In addition, at least some of the documents

8  indicate that they originated from Uber's legal department.  *See, e.g.*, Ex. O (identifying Tony

9  West, Uber's Chief Legal Officer, in the letter heading).  As Allen's testimony highlights, the

10  descriptions of relevant allegations or inquiries are based on the judgment of Uber's in-house

11  attorneys.  *See* Allen Decl. ¶ 4.  In camera review of the unredacted content of Exhibit Q as well as

12  Uber's supporting declarations establish that the redactions "can be fairly said to have been

13  prepared or obtained because of the prospect of litigation."  *Richey*, 632 F.3d at 568 (citation

14  omitted).  Accordingly, the court finds that the redactions in Exhibit Q are protected by the work

15  product doctrine.

16    To the extent the parties dispute the redactions in Exhibit H, the court finds that they are

17  protected by the work product doctrine.[4]  Exhibit H is a 245-page document.  The redactions in the

18  document consist of numerous reports from Uber's in-house and outside counsel reflecting

19  analyses about material loss contingencies arising from pending or overtly threatened litigation,

20  claims, or assessments.  *See, e.g.*, Fatale Decl., Ex. H at PwC_00082608-PwC_00082626,

21  PwC_00082645-PwC_0008652; *see also id.*, Ex. HH (privilege log entry 1061).  After in camera

22  review, the court finds that Uber has met its burden to show that work product protection applies

23  to the redactions in this document.

24    Finally, BRS claims that even if some of the documents at issue are protected, they should

25

26  ─────────────────────

27  [4] Uber argues that Exhibit H was properly redacted as an "Audit Workpaper."  *See* Opp'n at 6.  It is not clear whether BRS seeks to compel an unredacted version of that document as it is not mentioned anywhere in its opening brief.  *But see* Reply at 4 (making passing reference to "Audit Workpapers").  For the avoidance of any doubt, the court ordered Uber to submit an unredacted copy of the document in Exhibit H for in camera review.

28

United States District Court
Northern District of California

1   be produced because they are "[c]entral to [its] theory of Uber's business model because they may

2   show the state of Uber's business operations before and after the IPO and how it was not a 'New

3   Day at Uber.'"  Mot. at 9.  BRS appears to argue that it has a "substantial need" for the documents.

4   *See* Reply at 5.

5       The work product doctrine may be overcome by a party's showing of "need and undue

6   hardship."  *In re Seagate Tech., LLC*, 497 F.3d at 1375 (citing Fed. R. Civ. P. 26(b)(3)).  The

7   degree of showing required, however, depends on whether the sought-after material "is factual, or

8   the result of mental processes such as plans, strategies, tactics, and impressions, whether

9   memorialized in writing or not."  *Id.* (citations omitted).  Factual materials simply require a

10  demonstration of "substantial need and undue hardship," while materials reflecting mental

11  processes receive greater, "nearly absolute" protection.  *Id.* (citations omitted); *see also Waymo

12  LLC v. Uber Techs., Inc.*, No. 17CV00939WHAJSC, 2017 WL 2485382, at *13 (N.D. Cal. June 8,

13  2017) ("Ordinary fact work product is discoverable when the moving party has a substantial need

14  for the documents . . . Opinion work product, in contrast, receives greater protection than ordinary

15  work product and is discoverable only upon a showing of rare and exceptional circumstances"

16  (quotation marks and citations omitted)).

17      BRS devotes a single paragraph to this argument in its opening and reply briefs.  *See* Mot.

18  at 9; Reply at 5.  It does not attempt to differentiate between fact and opinion work product or

19  provide any support for its assertion that the documents "may show the state of Uber's business

20  operations before and after the IPO and how it was not a 'New Day at Uber.'"  *See* Mot. at 9.  In

21  addition, BRS fails to respond to Uber's argument that BRS "already has abundant materials on

22  these topics, including extensive custodial productions from Uber's current and former CEOs,

23  former COO, and the leaders of its public policy and communications teams."  *See* Opp'n at 5.

24  Without more, the court finds that BRS has not met its burden to show a substantial need for the

25  documents.  *Compare Waymo*, 2017 WL 2485382, at *13 (finding burden was met where key

26  witness refused to testify or produce documents, and document at issue was thus the only way for

27  plaintiff to obtain relevant information).

28

United States District Court
Northern District of California

12

United States District Court
Northern District of California

## IV.    MOTIONS TO SEAL

BRS filed an Administrative Motion to Consider Whether Another Party's Material Should Be Sealed in connection with its motion to compel.[5]  [Docket No. 364.]  Uber (the designating party under Civil Local Rule 79-5(f)) filed a statement in support of sealing 28 documents produced by PwC (Exhibits A through BB) and six versions of Uber's privilege log produced in connection with PwC's document productions (Exhibits CC through HH).[6]  [Docket No. 373.]  Uber also seeks to seal portions of BRS's motion to compel that quote or reference these documents.  On November 1, 1023, BRS filed a second Administrative Motion to Consider Whether Another Party's Material Should Be Sealed in connection with its reply brief.  [Docket No. 387.]  Uber filed a statement in support of the motion, seeking to seal only a quote from a PwC memorandum.  [Docket No. 393.]

In assessing whether documents may be filed under seal there is "a strong presumption in favor of access."  *Foltz v. State Farm Mut. Auto. Ins.*, 331 F.3d 1122, 1135 (9th Cir. 2003).  The Ninth Circuit established standards governing requests to seal in *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1180-81 (9th Cir. 2006).  In accordance with the strong public policy favoring access to court records, "[a] party seeking to seal a judicial record . . . bears the burden of overcoming this strong presumption by meeting the 'compelling reasons' standard."  *Id.* at 1178.  If the court finds a compelling reason to seal a record, it must then "conscientiously balance[ ] the competing interests of the public and the party who seeks to keep" the records secret.  *Kamakana*, 447 F.3d at 1179.  However, the court explained that it had "carved out an exception to the presumption of access to judicial records" for "court records attached only to non-dispositive motions."  *Id.* (quoting *Foltz*, 331 F.3d at 1135).  The court reasoned that "the public has less of a

---

[5] BRS inadvertently filed an unredacted version of its motion to compel on October 10, 2023. [Docket No. 361.]  BRS filed an Administrative Motion to Consider Whether Another Party's Material Should Be Sealed in connection with that motion (Docket No. 360), as well as an Administrative Motion to Seal the motion in its entirety due to the erroneous filing (Docket No. 362).  Uber joined BRS's request to seal Docket No. 361 in its entirety on October 18, 2023. [Docket No. 373.]  For good cause shown, BRS's Administrative Motion to Seal (Docket No. 362) is granted.  In addition, because Docket No. 360 is substantially similar to Docket No. 364, the court addresses these sealing motions together.

[6] Uber does not appear to seek to seal Exhibit II attached to BRS's Administrative Motion to Consider Whether Another Party's Material Should Be Sealed.

13

need for access to court records attached only to non-dispositive motions because those documents are often 'unrelated, or only tangentially related, to the underlying cause of action.'" *Id.* (quoting *Foltz*, 331 F.3d at 1135). "A 'good cause' showing under Rule 26(c) will suffice to keep sealed records attached to non-dispositive motions." *Id.* at 1180 (citing *Foltz*, 331 F.3d at 1135). The same good cause showing applies to "discovery motion[s] unrelated to the merits of a case." *See Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1097 (9th Cir. 2016).

Applying the Ninth Circuit's lower good cause standard to sealed discovery documents attached to non-dispositive motions, the court grants BRS's motion to seal Exhibits A through BB because they reflect legal, business, accounting, and regulatory analyses, as well as correspondence with PwC about Uber's confidential business and internal litigation analyses.

Even though the documents as a whole warrant sealing, BRS's request to seal content describing Exhibits A through BB in its opening and reply briefs is denied. Contrary to Uber's assertions, the brief descriptions themselves do not reveal Uber's confidential business strategy, address its litigation and regulatory analyses, or divulge financial and regulatory information about the company. For the same reasons, Uber fails to establish good cause to seal the material in BRS's reply brief. In addition, BRS's request to seal the content in the first paragraph on page 9 of the motion to compel is denied because it describes Exhibits P and Q at a generalized level and primarily contains argument by BRS.

Likewise, BRS's motion to seal Uber's privilege logs produced in connection with PwC's document productions (Exhibits CC through HH) is denied. The privilege logs contain only high-level descriptions of PwC's documents; contrary to Uber's assertions, they do not reflect legal and business strategy or confidential business information. The court further denies BRS's request to seal portions of BRS's opening brief that quote the privilege logs.

## V.  CONCLUSION

For the foregoing reasons, BRS's motion to compel is denied. Uber is nevertheless ordered to immediately review its privilege log to determine whether any of the redactions in the remaining documents in dispute should be removed as a result of the court's rulings. Uber shall provide its final amended log to BRS by **February 23, 2024**.

United States District Court
Northern District of California

In addition, Docket No. 362 is granted.  Docket Nos. 360 and 364 are granted in part and denied in part, and Docket No. 387 is denied.  BRS shall re-file versions of its motion to compel and reply brief consistent with this order.

**IT IS SO ORDERED.**

Dated: February 16, 2024

_____
Donna M. Ryu
Chief Magistrate Judge