<u>Via ECF</u>                                                                                                      April 8, 2024

Hon. Donna M. Ryu
U.S. Magistrate Judge
U.S. District Court, Northern District of California
Ronald V. Dellums Federal Bldg. & U.S. Courthouse
1301 Clay Street
Oakland, CA 94612

RE:   <u>Boston Retirement Sys. v. Uber Technologies, Inc.</u>, No. 19-cv-6361 (N.D. Cal.)

Dear Magistrate Judge Ryu:

Defendants and Lead Plaintiff Boston Retirement System ("BRS") respectfully submit this letter regarding Defendants' motion to strike portions of BRS's experts James Miller's and William Purcell's reports as exceeding the scope of proper rebuttal. If the Court declines to strike, Defendants respectfully seek leave to file a sur-rebuttal expert report, and seek three more hours of deposition testimony from Miller. BRS opposes all requested relief. Counsel conferred and reached impasse on April 1, 2024. The expert discovery cutoff is April 17, 2024, and dispositive pretrial motions are due June 12, 2024.  ECF No. 376. Trial has been set for January 27, 2025.

## I.   Defendants' Statement

"[T]o forestall 'sandbagging' by a party with the burden of proof," Rule 26(a)(2)(D)(ii) strictly limits the scope of expert rebuttals. *Oracle Am., Inc. v. Google Inc.*, 2011 WL 5572835, at *3 (N.D. Cal. Nov. 15, 2011). "An expert report is not proper rebuttal if the report speaks directly to an issue on which the offering party bear[s] the burden of proof." *In re Toy Asbestos*, 2021 WL 1056552, at *4 (N.D. Cal. Mar. 19, 2021). Rebuttal experts "must restrict their testimony to attacking the theories offered by the adversary's experts." *Int'l Bus. Mach. Corp. v. Fasco Indus., Inc.*, 1995 WL 115421, at *3 (N.D. Cal. Mar. 15, 1995). BRS blatantly violated these limits in portions of the Purcell and Miller reports, which opine on alleged inadequacies in Uber's IPO disclosures (whether pled or unpled), a fundamental factual element of BRS's claims that ***it has the burden of establishing*** and that Defendants' experts did not address. Accordingly, Purcell ¶¶ 27-58, 79, 80(a), & 106-64 and Miller ¶¶ 54-66 & 85-181 should be stricken.

BRS asserts the **Miller Report** rebuts Gary Lawrence's opening report on the Underwriter Defendants' ("UWDs") due diligence. By statute, non-issuer defendants may assert an affirmative defense of a "reasonable investigation" (i.e., due diligence) even if material misstatements or omissions are found to be made in an IPO registration statement ("RS"). 15 U.S.C. § 77k(b)(3). Courts have found expert evidence on the "standard of care" in an industry relevant to assessing that defense, *In re Gap Stores Sec. Litig.*, 79 F.R.D. 283, 300 (N.D. Cal. 1978), and Lawrence's opinions go to the narrow questions of "industry custom and practice for due diligence by . . . underwriters in an IPO" and whether the UWDs' diligence was "consistent with industry custom and practice." Lawrence ¶ 14. Contrary to BRS's claims, their rebuttal expert did not merely opine on different facts and methodologies relating to those questions. Instead, ***Miller admits that his rebuttal exceeds the scope of Lawrence's report***: his report states he "evaluate[d] the disclosure resulting from the [UWDs'] due diligence investigation," Miller ¶ 1, and he testified that he opines

on "the reasons that [he] think[s] the disclosures . . . were inadequate," which "Lawrence does not opine on." Miller Tr. 201:14-202:7, 363:5-19; *see also id*. 130:10-132:23, 196:6-12, 201:14-202:7, 295:24-296:10, 320:12-327:6, 333:7-22. That material should be stricken because BRS cannot use Lawrence's conclusions on due diligence (an affirmative defense only relevant if BRS first proves the RS disclosures were inadequate) to surreptitiously insert improper expert opinions on the accuracy of the RS during "rebuttal." Lawrence never addressed the accuracy of the RS, and Defendants are unable to provide expert rebuttal on this new issue. Thus, Miller's opinions on issues other than the UWDs' due diligence (i.e., the accuracy of the RS disclosures (Miller ¶¶ 56-66; 85-181)) should be stricken.

BRS also asserts the **Purcell Report** rebuts Jonathan Foster's opening report on the Individual Defendants' ("IDs") due diligence. But it suffers from the same flaws as Miller's. Foster's opening expert report was limited to opining on whether the IDs' diligence complied with "the custom and practice for the consideration of an IPO" by signatories to an RS. Foster ¶ 22. But Purcell's rebuttal, like Miller's, states upfront that he was retained not only to opine on due diligence, but also on "investment banking" and "financial" matters. Purcell ¶ 1. Indeed, his report goes far beyond due diligence, opining broadly on the merits of the underlying disclosures and BRS's new unpled theories. *See id.* ¶¶ 27-57. These include his opinions on media and analyst reactions to Uber's Q2 and Q3 2019 earnings (*id.* ¶¶ 42-54), the effect "news of adverse facts about Uber's business model, its passenger safety, and its financial condition" had on Uber's share price (*id.* ¶ 55), and whether the IPO process was "rushed" (*id.* ¶¶ 56-57). Purcell also devotes a whole section of his report to arguing that statements in the RS were "incomplete and misleading," but that discussion largely references materials the IDs did not see. Purcell ¶¶ 110-64*; see, e.g.*, ¶ 115 (citing internal emails that none of the IDs were on to support a claim the safety disclosures were inadequate); ¶¶ 154-57 (criticizing Uber's disclosure of profitability levels of its top five markets without identifying any documents related to the board's due diligence). As with Miller's opinions on the disclosures, and as the cases BRS cites acknowledge, these purported opinions go to "a primary element of Plaintiff's case-in-chief," and thus "must be stricken" as untimely opening opinions. *Clear-View Techs., Inc. v. Rasnick*, 2015 WL 3509384, at *4-5 (N.D. Cal. June 3, 2015).

In both cases, BRS contends the disclosure issues are proper rebuttal because the disclosures themselves were "red flags" that should have given rise to further diligence, a concept pled nowhere in the complaint. But if allegedly inadequate disclosures equated to allegedly insufficient diligence, the due diligence defense would be a nullity; proving a misleading statement would automatically preclude the defense. Instead, Miller defines red flags as "information 'that would alert a prudent person to conduct further inquiry'" (Miller ¶ 21 (citation omitted)), and he acknowledged at his deposition that they are irrelevant to purported "inaccuracies in disclosures" (Miller Tr. 246:7-23).  Furthermore, a "red flag" is only triggered by information that those undertaking the diligence "were in a position to see." *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1175 (C.D. Cal. 2008). The key documents Miller and Purcell cite as evidence of "red flags" were internal emails or information that the UWDs or IDs did not receive.  See Purcell FN 142-63, 165, 179-82, 184-89; Miller FN 95-100, 103-23, 126, 144, 154, 207-17.

Most egregiously, BRS attempts to present new theories of liability not presented in its complaint via these Reports. Though the complaint does not allege that Uber's audited financial statements violated accounting and related reporting rules and explicitly disclaims any allegations of fraud

(SAC ¶¶ 340-41), BRS has belatedly attacked Uber's "segment reporting" as materially misleading. That subject matter was not disclosed in accordance with the Court's order (ECF No. 376), and BRS represented in January 2024, during expert disclosure meet and confer discussions, that it viewed segment reporting as "a fact issue" not suitable for an expert opinion. But Miller testified on April 4 that he identified it as an issue "early in [his] review of the case" after his retention *in February 2023*. Miller Tr. 280:24-281:7. The Miller and Purcell "rebuttal" reports proceed to offer extensive, purportedly expert, opinions that Uber's financial statements in the RS were inaccurate because they did not report the profitability of its Rides and Eats products separately, and by region. Miller ¶¶ 92-112; Purcell ¶¶ 123-45. Defendants' opening reports do not address accounting or segment issues at all aside from highlighting the IDs' and UWDs' reasonable reliance on Uber's outside auditor, PwC, as part of their due diligence. *See, e.g.*, Foster ¶¶ 23, 53, 66, 68, 70, 88, 120, 152; Lawrence ¶¶ 25, 71, 165-69. Defendants will move at the appropriate time to strike as unpled any contentions based on Uber's segment reporting. For now, however, the only ripe and appropriate action is to reject BRS's gambit and strike the portions of Miller's and Purcell's reports that offer improper opinions on this and the other disclosure points (where BRS bears the burden of proof) that go far beyond the scope of rebuttal allowed by Rule 26(a)(2)(D)(ii).

This is not a minor discovery dispute, and the most appropriate remedy is to strike the at-issue material in the Reports given BRS's tactics (as well as the limited amount of time left for expert discovery). *See Terpin v. AT&T Mobility, LLC*, 2023 WL 3431906, at *7-9 (C.D. Cal. Mar. 20, 2023). Defendants respectfully request full briefing if the Court is not inclined to strike on the basis of this submission. If the Court will not strike those sections of the Reports, Defendants seek (i) permission to submit a sur-rebuttal expert report on the disclosure issues to avoid further prejudice, *see Attachmate Corp. v. Health Net, Inc.*, 2010 WL 11561517, at *1 (W.D. Wash. Sept. 27, 2010), as well as (ii) three additional hours to depose Miller. But that should not need to occur. BRS strategically saved issues for rebuttal that they should have addressed in opening reports on subjects for which they bear the burden of proof. The Court should not reward such behavior.

## II. BRS's Statement

### A. BRS's Experts Properly Opined on Defendants' Due Diligence Defense

Defendants' motion arises from their mistaken belief that BRS's expert reports opine on subjects for which BRS bears the burden of proof. Not so. Due diligence is an affirmative defense for which Defendants' bear the burden of proof. *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1174 (C.D. Cal. 2008). Defendants' arguments also mischaracterize BRS's experts' reports and distort the issues. First, BRS's experts did not opine on the adequacy of disclosures—they opine on whether Defendants conducted adequate due diligence, including whether Defendants permitted disclosures that were contrary to findings of fact they made during their purported investigation. *See e.g.* Miller Tr. at 28:03-29:08, 30:04-16, 31:23-32:21, 89:02-91:12, 93:11-94:20, 111:05-112:03, 127:07-129:22, 130:17-133:14, 144:11-147:06, 211:13-212:04, 238:16-241:23. For example, Miller specifically disclaimed offering an opinion on an ultimate jury issue and instead testified that his opinions were based on facts and data analyzed under industry custom and practice and his "knowledge of the industry" simply "to help enlighten the jury or the judge as to what is typical and normal" during the due diligence process. *See* Miller

Tr. at 30:04-16, 32:03-25. Second, Defendants argue that BRS's expert's opinions rely on documents that the Defendants "largely would not have seen." That argument misses the point. BRS's experts opined that *if* Defendants had adequately investigated the disclosures in the RS, and asked questions about red-flags present before the IPO, the Defendants would have seen documents or information that would have made it clear the RS omitted or contained inaccurate information. To do so, BRS's experts pointed to evidence that Foster and Lawrence did not consider or ignored, including that Defendants do not recall asking due diligence questions. ***The point*** is that Defendants did not see or follow up on certain information, which they should have investigated. Ultimately, Defendants' arguments concerning "scope" are nothing more than an attempt to improperly strike opinions and facts Defendants' experts overlooked—undoubtedly an appropriate rebuttal opinion on "due diligence." *See* Miller Tr. at 28:03–29:08.

"The function of rebuttal testimony is to explain, repel, counteract or disprove evidence of the adverse party." *Clear–View Technologies, Inc. v. Rasnick*, 2015 WL 3509384, at *2 (N.D. Cal., 2015). "Contradicting expert opinions, questioning methodology, and opining on methods ***and facts*** [the opposing] experts did not consider are precisely the type of rebuttal testimony the court would expect." *Self v. Perspecta Enter. Sols., LLC*, 2023 WL 6020792, at *6 (S.D. Cal. Jan. 31, 2023) (emphasis added). Also, Rule 26 does not prohibit rebuttal experts from reviewing different evidence, offering new data or utilizing other methodologies. In fact, offering a "different, purportedly better" analysis is a proper way to rebut other analysis. *See Fitzhenry-Russell v. Keurig Dr. Pepper Inc*., 2018 WL 10472794, at *3 (N.D. Cal. Sept. 25, 2018) (rebuttal report that used "alternative methodology and different sets of evidence" was "squarely in the realm of rebuttal evidence"); *see also In re REMEC Inc. Sec. Litig*., 702 F. Supp. 2d 1202, 1220 (S.D. Cal. 2010).

Here, BRS's experts contradict Defendants' due diligence opinions by "questioning methodology, and opining on methods ***and facts***, [which Defendants'] experts did not consider." *Self,* 2023 WL 6020792 at *6. For example, both Miller and Purcell identify several "red flags," including the SEC's repeated inquiry into Uber's intended "segment reporting" in the RS. This impacted how Uber reported financial information for its two most important business segments, Rides and Eats. Evidence shows that Uber misled the SEC regarding segment reporting to avoid disclosing certain financial information for Rides and Eats in the RS. Despite the gravity of that issue, the SEC's inquiry and Uber's responses were not substantively discussed by Lawrence or Foster.

Failing to address those red flags undermines Lawrence and Foster's opinions. For instance, both Miller and Purcell opine that proper due diligence would have included an investigation into Uber's segment disclosures and the SEC's interest thereto (*i.e*., if Underwriter and Individual Defendants had conducted reasonable due diligence, they would have inquired about Uber's internal segment reporting, the SEC's comments, Uber's responses, and Uber's reasoning for the Rides and Eats segments disclosures). Also, the UWDs and IDs should have worked with Uber during that investigation to ensure accurate information was being disclosed to the investors. *See* Miller Tr. at 211:13-212:04. But such an investigation did not occur. As a result, Miller and Purcell opine that ***failing to investigate this critical issue does not qualify as adequate due diligence***. Further, any attempt to strike BRS's segment reporting allegations should be denied, as they are consistent with the Complaint's allegation of inadequate disclosures for slowing growth and increased expenses and losses. *E.g.*, SAC ¶¶ 304-306. Defendants' argument that this issue

is a "new theory" is not only unfounded, it is insincere as they have defended against this theory for months in over a dozen depositions.

The cases cited by Defendants are inapplicable. In *In re Toy Asbestos*, the court stated that a rebuttal report was inappropriate because the report speaks directly to an issue on which the offering party bears the burden of proof. 2021 WL 1056552, at *3 (N.D. Cal. Mar. 19, 2021). Here, it is Defendants' burden to establish the due diligence defense. Similarly, in *Int'l Bus. Machines Corp. v. Fasco Indus., Inc.*, the rebuttal experts opined on subjects that IBM's experts did not address. 1995 WL 115421, at *3 (N.D. Cal. Mar. 15, 1995). Here, Lawrence and Foster concluded that Defendants conducted reasonable due diligence. BRS's experts respond by pointing to critical facts and issues—*e.g.*, disclosure on contribution margin for Uber's top five countries—which was disclosed in the RS, but Defendants failed to consider or investigate, and which Defendants' experts ***did not consider or simply ignored***. See *Self,* 2023 WL 6020792 at *6.

## B. Defendants are Not Entitled to Extra Deposition Time or a Reply

Unless stipulated or ordered, a deposition is limited to 1 day of 7 hours. FRCP 30. The seven-hour limit was carefully chosen and "extensions of that limit should be the exception, not the rule." *Somerset Studios, LLC v. Sch. Specialty, Inc.*, 2011 WL 4344596 at *5 (N.D. Cal. Sept. 14, 2011).

Defendants' request for extra time for Miller's deposition should not be granted for several reasons. Defendants originally claimed that they needed more than 7 hours because both Uber and Underwriter Defendants served subpoenas on him, Miller's report was large, and Miller cited to "Issuer documents." Following Defendants' logic, an expert here could be subject to over 210 hours of testimony if each named Defendant served a subpoena. Second, every expert in this action served large reports and cited numerous documents. The fact that Miller cited "Issuer documents," which Underwriter Due Diligence experts reasonably rely upon in securities litigations, is of no avail to Defendants. *See* Fed. R. Evid. 703. Third, Defendants deposed Miller for the full seven hours and covered every aspect of his report, sometimes more than twice. Defendants' request is frivolous and harassing because even ***before*** taking Miller's deposition, Defendants concluded that they would require additional time. *See S.E.C. v. Kandalepas*, 2018 WL 4005201 (N.D. Ill. Aug. 22, 2018) (denying request for additional deposition time until after "default time" was exhausted). As for Defendants' sur-rebuttal request, for reasons stated above, Miller and Purcell did not exceed the scope of their rebuttal reports.

Accordingly, Defendants have not demonstrated "good cause," and should not be given more deposition time. Defendants should also not be permitted to file any "sur-rebuttal" reports, as neither the Court's Scheduling Order, nor the Federal Rules of Civil Procedure authorize a third round of expert reports, and BRS's expert reports were properly within scope. *See* Dkt. No. 376; Rule 26. Thus, the Court should deny Defendants' motion in its entirety.

Counsel for Defendants and BRS attest that they have met and conferred regarding these discovery issues, with the last meet and confer occurring on April 1, 2024, and jointly request oral argument.

Respectfully submitted,

| | |
|---|---|
| COTCHETT, PITRE & MCCARTHY | SHEARMAN & STERLING LLP |
| By: /s/ Tyson C. Redenbarger | By: /s/ Daniel H.R. Laguardia |
| Tyson C. Redenbarger (SBN 294424)<br>Mark C. Molumphy (SBN 168009)<br>Gia Jung (SBN 340160)<br>San Francisco Airport Office Center<br>840 Malcolm Road, Suite 200<br>Burlingame, California 94010<br>Telephone: (650) 697-6000<br>Email: tredenbarger@cpmlegal.com<br>　　　　mmolumphy@cpmlegal.com<br>　　　　gjung@cpmlegal.com | Daniel H.R. Laguardia (SBN 314654)<br>140 New Montgomery Street, 10th Floor<br>San Francisco, CA 94105<br>Telephone: 415.616.1100<br>Facsimile: 415.616.1199<br>Email: daniel.laguardia@shearman.com<br><br>　　　　-and- |
| *Counsel for Class Representatives* | Paula H. Anderson (admitted *pro hac vice*)<br>Agnès Dunogué (admitted *pro hac vice*)<br>Austin Zachary Deaton (admitted *pro hac vice*)<br>599 Lexington Avenue<br>New York, NY 10022-6069<br>Telephone: 212.848.4000<br>Facsimile: 212.848.7179<br>Email: paula.anderson@shearman.com<br>　　　　agnes.dunogue@shearman.com<br>　　　　zach.deaton@shearman.com |
| LABATON KELLER SUCHAROW LLP | |
| Jonathan Gardner (admitted *pro hac vice*)<br>Alfred L. Fatale III (admitted *pro hac vice*)<br>Joseph N. Cotilletta (admitted *pro hac vice*)<br>Robert S. Rowley (admitted *pro hac vice*)<br>140 Broadway<br>New York, NY 10005<br>Telephone: (212) 907-0700<br>Facsimile: (212) 818-0477<br>Email: jgardner@labaton.com<br>　　　　afatale@labaton.com<br>　　　　jcotilletta@labaton.com<br>　　　　rrowley@labaton.com | *Attorneys for Defendants Uber Technologies, Inc., Dara Khosrowshahi, Nelson Chai, Glen Ceremony, Ronald Sugar, Ursula Burns, Garrett Camp, Matt Cohler, Ryan Graves, Ariana Huffington, Travis Kalanick, Wan Ling Martello, Yasir Al-Rumayyan, John Thain, and David Trujillo* |
| *Lead Counsel for the Class* | |

| | |
|---|---|
| LEVI & KORSINSKY LLP | WILLKIE FARR & GALLAGHER LLP |
| Gregory M. Nespole (admitted *pro hac vice*) | |
| 55 Broadway, 10th Floor | By: /s/ *Todd G. Cosenza* |
| New York, NY 10006 | |
| Telephone: (212) 363-7500 | Todd G. Cosenza (admitted *pro hac vice*) |
| Facsimile: (212) 363-1294 | Zeh S. Ekono (admitted *pro hac vice*) |
| Email: gnespole@zlk.com | 787 Seventh Avenue |
| | New York, NY 10019-6099 |
| -and- | Telephone: (212) 728-8677 |
| | Facsimile: (212) 728-9677 |
| Adam M. Apton (SBN 316506) | Email: tcosenza@willkie.com |
| 388 Market Street, Suite 1300 | zekono@willkie.com |
| San Francisco, CA 94111 | |
| Telephone: (415) 373-1671 | Simona Agnolucci (CA 246943) |
| Facsimile: (415) 484-1294 | One Front Street |
| Email: aapton@zlk.com | San Francisco, CA 94111 |
| | Telephone: (415) 858-7447 |
| *Liaison Counsel for Lead Plaintiff* | Facsimile: (415) 858-7599 |
| *Boston Retirement System* | Email: sagnolucci@willkie.com |

SCOTT+SCOTT ATTORNEYS AT LAW, LLP
John T. Jasnoch
Mollie Chadwick
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: (619)798-5310
Facsimile: (619) 233-0508
Email: jjasnoch@scott-scott.com
mchadwick@scott-scott.com

*Counsel for Class Representatives*

Joseph G. Davis (CA 157764)
1875 K Street, N.W.
Washington, DC 20006-1238
Telephone: (202) 303-1131
Facsimile: (202) 303-2131
Email: jdavis@willkie.com

*Attorneys for the Underwriter Defendants*

Cc:   All Counsel of Record (*via ECF*)

## **ECF ATTESTATION**

Pursuant to Civil L.R. 5-1(i)(3), the filer attests that concurrence in the filing of this document has been obtained from each of the signatories thereto.

Executed this 8th day of April, 2024.

                                                                     /s/ *Daniel H.R. Laguardia*