UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BENJAMIN STIRRATT, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>UBER TECHNOLOGIES, INC., et al.,<br><br>    Defendants. | Case No. 19-cv-06361-RS   (DMR)<br><br>**AMENDED ORDER ON JOINT DISCOVERY LETTER AND RELATED SEALING MOTIONS**<br><br>Re: Dkt. Nos. 394, 395, 419, 435 |

This amends Docket No. 443 by adding a correction to the court's order on the Second Motion to Seal, page 12, line 10.

The parties filed a joint discovery letter in which Lead Plaintiff Boston Retirement System ("BRS") seeks to compel production of 12 documents listed on the privilege log of Defendant Uber Technologies, Inc. ("Uber") over which Uber asserts claims of attorney-client privilege (the "Uber Documents"). [Docket No. 394 (Joint Disc. Letter, "JDL").]   The court granted Plaintiff's request for in camera review and ordered Uber to lodge unredacted versions of the Uber Documents and provide evidence in the form of declarations sworn under penalty of perjury to support its assertions of privilege. [Docket No. 412.]   The court also ordered Plaintiff to file a brief responding to the information in the declarations. *Id.*   Defendant lodged the Uber Documents for in camera review along with its supporting declarations.  The court later ordered Uber to file its supporting declarations on the docket. [Docket No. 432.]   Uber filed the declarations along with an administrative motion to consider whether the declarations should be filed under seal. [Docket No. 435 ("Uber Sealing Mot.").]   Plaintiff filed a memorandum in response to Uber's declarations. [Docket No. 420 ("Mem.").]  This matter is suitable for determination without oral argument.  Civ. L.R. 7-1(b).   Having carefully reviewed the parties' submissions and conducted in camera review, Plaintiff's motion is granted in part and denied in

part. In addition, the related motions to seal (Docket Nos. 395, 419, and 435) are granted in part and denied in part.

## I.  BACKGROUND

This lawsuit asserts violations of Sections 11, 12(a)(2), and 15 of the Securities Act of 1933. Plaintiff claims that Uber's May 2019 initial public offering ("IPO") misled investors by making materially false and misleading statements and omissions in the registration statement and prospectus for the IPO.

## II.  LEGAL STANDARD

Federal privilege law applies to this federal statutory dispute. Fed. R. Evid. 501. The attorney-client privilege protects from discovery "confidential communications between attorneys and clients, which are made for the purpose of giving legal advice." *United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011) (citing *Upjohn Co. v. United States,* 449 U.S. 383, 389 (1981)). Under Ninth Circuit law, the privilege applies to protect information from discovery as follows: where "(1) [] legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived." *Id*. (quoting *United States v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010)).

The privilege is "narrowly and strictly construed," *United States v. Gray*, 876 F.2d 1411, 1415 (9th Cir. 1989)), and the party asserting it bears the burden of proving that it applies. *Richey*, 632 F.3d at 566. The privilege protects only communications, and not underlying facts, *Upjohn*, 449 U.S. at 396, and the fact "[t]hat a person is a lawyer does not, *ipso facto*, make all communications with that person privileged." *United States v. Chen*, 99 F.3d 1495, 1501 (9th Cir. 1996). Rather, for the privilege to apply, "the communication must be between the client and lawyer for the purpose of obtaining legal advice." *United States v. Martin*, 278 F.3d 988, 1000 (9th Cir. 2002); *see also Richey*, 632 F.3d at 566 n.3 ("What is vital to the privilege is that the communication be made in confidence for the purpose of obtaining *legal* advice *from the lawyer.*" (quotation and citation omitted; emphasis in original)).

1    The Ninth Circuit has recognized that "some communications [between attorneys and
2    clients] might have more than one purpose." *In re Grand Jury*, 23 F.4th 1088, 1091 (9th Cir.
3    2021). In that circumstance, courts in this circuit apply the "primary-purpose test" to determine
4    whether the communications are privileged. *Id*. at 1092. Under that test, "courts look at whether
5    the primary purpose of the communication is to give or receive legal advice, as opposed to
6    business . . . advice." *Id*. at 1091 (citation omitted). "The natural implication of this inquiry is
7    that a dual-purpose communication can only have a single 'primary' purpose." *Id*.

8    Additionally, communications with general counsel "warrant[] heightened scrutiny"
9    because "[i]n-house counsel may act as integral players in a company's business decisions or
10   activities, as well as its legal matters." *Oracle Am., Inc. v. Google, Inc.*, No. C-10-03561-WHA
11   (DMR), 2011 WL 3794892, at *4 (N.D. Cal. Aug. 26, 2011). Thus, "[w]hen attempting to
12   demonstrate that an internal communication involving in-house counsel deserves privileged status,
13   a party . . . 'must make a clear showing that the speaker made the communication[ ] for the
14   purpose of obtaining or providing *legal* advice.'" *Id*. (emphasis in original) (quoting *United States
15   v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1076 (N.D. Cal. 2002)); *accord City of Roseville
16   Employees' Ret. Sys. v. Apple Inc*., No. 19CV02033YGRJCS, 2022 WL 3083000, at *17 (N.D.
17   Cal. Aug. 3, 2022) (applying "clear showing" standard where examining claim of attorney-client
18   privilege over "internal communications involving in-house counsel").

19   **III.   DISCUSSION**
20   **A. Segment Reporting**
21   Log Nos. 1887-89, 4816, and 10185 concern segment reporting, a type of financial
22   reporting governed by Accounting Standards Codification § 280. Segment reporting is part of a
23   company's mandatory disclosures to the Securities and Exchange Commission ("SEC") on Form
24   S-1. [Docket No. 435-3 (Gumbs Decl., Jan. 22, 2024).] Defendant asserts that the primary
25   purpose of the contested documents was to obtain legal advice related to Uber's required SEC
26   disclosures. JDL 4. Plaintiff counters that the documents cannot be privileged because segment
27   reporting is an accounting principle that is entirely factual in nature. *Id*. at 2.
28   The segment reporting documents raise the question of whether they are "dual-purpose"

3

communications which integrally involve "both legal and non-legal analyses." *In re Grand Jury*, 23 F.4th at 1091 (quoting *United States v. Sanmina Corp.*, 968 F.3d 1107, 1118 (9th Cir. 2020)). For example, communications about the propriety of a tax deduction may have "both a non-legal purpose (tax compliance considerations) as well as potentially a legal purpose (seeking advice on what to do if the IRS challenged the deduction)." *Id.* (citing *Sanmina*, 968 F.3d at 1117-18). Similarly, communications about segment reporting may have both a business purpose, such as compliance with accounting standards for SEC mandatory disclosures, as well as a legal purpose, namely advice on how to respond to SEC inquiries into the company's segment reporting approach. A dual-purpose communication is only privileged if its "primary purpose" is to "give or receive legal advice." *See id.*

### 1.   Log Nos. 1887-89

Log No. 1887 is an email chain comprising two emails sent by Andrew Glickman, Uber's then in-house counsel. Log Nos. 1888 and 1889 are attachments to Glickman's initial email. The email chain includes outside counsel from the Cooley and Covington law firms. Keir Gumbs, then Uber's Associate General Counsel, confirms in his declaration that the emails and attachments were created in response to Gumbs's request for a segment report analysis "regarding the scope of Uber's disclosure obligations concerning its business segments in its Registration Statement on Form S-1." Gumbs Decl. ¶10.

Following in camera review, the court finds they are privileged communications created for the primary purpose of providing legal advice. Log Nos. 1888-89 consist primarily of analysis of the applicable standards related to segment reporting and the ramifications of reporting the segments in different ways. Log No. 1887 is an email chain discussing the attached documents and is likewise a privileged communication. If the documents merely summarized Uber's segment reporting approach, they would not constitute legal advice. *See Anastasion v. Credit Serv. of Logan, Inc.*, No. 2:08CV180, 2010 WL 94008, at *2 (D. Utah Jan. 8, 2010) ("Unless the records Plaintiff seeks from Movant contain some type of legal advice or strategy, rather than merely summary accounting and bookkeeping information, they would not be protected by the attorney-client privilege."). Here, the documents go beyond summary information and consist primarily of

4

substantive legal analysis. They are protected by the attorney-client privilege.

### 2. Log Nos. 4816 and 10185.

Log Nos. 4816 and 10185 are iterations of a two-email exchange between Nelson Chai, Uber's then Chief Financial Officer, and Glen Ceremony, Uber's Chief Accounting Officer. Several other Uber employees and in-house counsel were copied on the email exchange, including Gumbs and Tony West, Uber's General Counsel. "[M]erely copying or 'cc-ing' legal counsel, in and of itself, is not enough to trigger the attorney-client privilege. Instead, each element of the privilege must be met when the attorney-client privilege is being asserted." *Phillips v. C.R. Bard, Inc.*, 290 F.R.D. 615, 630 (D. Nev. 2013). Here, according to Gumbs's declaration, the first email from Chai is a request for legal advice on "the scope of Uber's ongoing disclosure obligations concerning Uber's business segments in its Quarterly Report on Form 10-Q." Gumbs Decl. ¶ 28. The second email from Ceremony reveals "the substance of legal advice" provided by Gumbs on Uber's 10-Q reporting requirements. *Id.*

After in camera review, the court finds that both emails are privileged communications. The first email from Chai is directed at Ceremony, a nonlawyer, as well as in-house counsel Gumbs. Both emails reflect "matters about which the client intends to seek legal advice." *See ChevronTexaco*, 241 F. Supp. 2d at 1077.

### B. Other SEC Reporting Requirements

#### 1. Log Nos. 4941 and 10228

Log Nos. 4941 and 10228 are iterations of an email chain between several non-lawyer Uber employees and in-house counsel Gumbs. In Log No. 4941, two specific emails are redacted: an email from Gumbs sent on April 24, 2019 at 2:54 PM, and an email from Chai sent on the same day at 8:15 PM. Log No. 10228 contains the same redacted email from Gumbs. Gumbs's declaration explains that the redacted portions consist of legal advice concerning Uber's Form S-1 disclosure obligations to the SEC and other legal considerations. After in camera review, the court finds that the redactions are proper. Gumbs's email contains legal advice. The redacted portion of Chai's email references the privileged communication with Gumbs.

#### 2. Log No. 14326

Log No. 14326 is a chain of text messages between Gumbs, Chai, and Ceremony. Read in context, the redacted portions of Gumbs's texts consist of legal advice in his capacity as in-house counsel regarding SEC disclosure obligations; two of the texts also reference advice from outside counsel. Log No. 14326 is properly redacted.

### C. IPO Process

Log Nos. 1998 and 13741 relate to a timeline of events leading up to Uber's May 2019 IPO. Uber redacted portions of both documents. Plaintiff argues that Uber failed to prove that the redactions consist of legal advice. JDL 2-3. Uber asserts that the redactions reveal confidential communications in which Uber employees requested and/or received legal advice in connection with the IPO. *Id.* at 4-5.

Attorney-client privilege "does not protect an attorney's business advice." *ChevronTexaco*, 241 F. Supp. 2d at 1076. But where an attorney "gives a client legal advice on a business decision, that communication is protected by privilege." *L.D. v. United Behav. Health*, No. 20-CV-02254-YGR-JCS, 2022 WL 3139520, at *13 (N.D. Cal. Aug. 5, 2022) (citation omitted). Uber bears the burden to show that the "primary purpose" of the communication was obtaining or providing legal advice. *See ChevronTexaco*, 241 F. Supp. 2d at 1076. In addition, Uber must make a "clear showing" that communications with in-house counsel were for the purpose of securing legal advice. *See id.*

#### 1. Log No. 1998

Log No. 1998 is an annotated spreadsheet of milestones, events, and action items related to the timeline for Uber's May 2019 IPO process. Numerous entries under the columns titled "Action/Event/Meeting" (column F) and "Comments" (column I) are redacted. Defendant argues that the redacted entries "reflect matters about which the client intends to seek legal advice . . . comparable to notes a client would make to prepare for a meeting with her lawyer." JDL 5 (quoting *ChevronTexaco*, 241 F. Supp. 2d at 1077). Plaintiff challenges the assertion of privilege over the information in the "Action/Event/Meeting" column. *Id.* at 3-4.

After in camera review, the court finds that none of the redactions in Log No. 1998 contain

6

privileged attorney-client communications. The spreadsheet was prepared by multiple nonlawyer employees as well as in-house and outside counsel, and it is not clear who contributed to which entries. It is also not clear who participated in each action, event, or meeting described in the timeline. Gumbs's declaration generally describes the scope of legal advice provided by Uber's counsel during the course of events leading up to the IPO but does not explain how each redacted entry primarily pertains to legal advice. Gumbs Decl. ¶¶ 18-19; *see Bruno v. Equifax Info. Servs., LLC,* No. 2:17-CV-327-WBS-EFB, 2019 WL 633454, at *6 (E.D. Cal. Feb. 14, 2019) (finding that defendant's redactions were not privileged because its "vague and conclusory explanation fails to provide any assistance in determining whether each of the redactions was proper"). Kathleen Waitzman's declaration describes the scope of legal advice provided by Uber's counsel related to D&O insurance, but the redacted entries only briefly mention D&O insurance and largely relate to other topics. [Docket No. 435-5 (Waitzman Decl., Jan. 25, 2024).]

The redacted entries reflect a dual legal and business purpose. Uber has failed to meet its burden to show that the "primary" purpose of the spreadsheet or any particular entry is legal in nature. *See In re Grand Jury*, 23 F.4th at 1091. Log No. 1998 does not contain any legal advice. At most, the redactions that refer to legal topics give two-to-three-word descriptions of general subjects about which in-house and outside counsel planned to provide legal advice during the IPO process. That level of description is very close to the general descriptions already provided by Gumbs and Waitzman in their supporting declarations. *See, e.g.,* Gumbs Decl. ¶ 19 (references to insider trading, timing of trading, communication with investors, etc.); Waitzman Decl. ¶¶ 4, 6 (references to litigation exposure arising from IPO, D&O insurance, etc.). In sum, the spreadsheet of IPO events at Log No. 1998 is not privileged because it does not contain legal advice and Defendants failed to meet their "primary purpose" burden.

          **2.     Log No. 13741**

Log No. 13741 consists of notes of a January 16, 2019 meeting of Uber employees and in-house counsel concerning Uber's IPO, prepared by Andi Pimentel, then Chief of Staff to Uber's CEO. Defendants redacted a small portion of the document. After in camera review, the court finds that the redaction is proper because it contains privileged communications with Gumbs about

legal advice.

### D. Safety Report Review (Log No. 9497)

Log No. 9497 is a Google Slides presentation prepared by Scott Binnings, then Legal Director of Safety at Uber, as well as other in-house counsel and Gus Fuldner, Uber's then Vice President of Safety and Insurance. [Docket 435-4 (Binnings Decl., Jan. 25, 2024).] According to Binnings, the slides were prepared by both in-house counsel and a nonlawyer (Fuldner) for use in a September 16, 2019 meeting between in-house counsel and Uber's Executive Leadership Team. Binnings Decl. ¶¶ 4-5. The meeting concerned the preparation of a report on safety incidents on Uber's rideshare platform in the United States and the processes for Uber's handling of the incidents, which was later published in December 2019 (the "Safety Report"). *Id.* at ¶ 1. Most of the slides are redacted.

Defendant argues that the redacted portions of the slides reveal communications "for the purpose of receiving or providing legal advice regarding passenger safety issues that could give rise to potential legal liability." JDL 5. To support this argument, Binnings states that the redacted portions "reflect" or are "infused with" his legal advice on issues such as the potential legal consequences of proposed Safety Report language, as well as ways in which Uber could prepare the disclosures to minimize potential legal exposure. Binnings Decl. ¶¶ 6-7. Plaintiff argues that, while the substance of the September 16, 2019 meeting may be privileged, the slides themselves should be produced. Mem. 5.

Having reviewed the unredacted slides, the court finds that, with one exception, the redactions do not qualify as privileged attorney-client communications because they do not reflect legal advice. To the extent Uber is attempting to argue that this document has a dual purpose, it fails to make a "clear showing" that the primary purpose of the redacted information is to give or receive legal advice rather than business advice. *ChevronTexaco*, 241 F. Supp. 2d at 1076. The redacted material contains non-privileged facts and business considerations. These include the steps Uber took to prepare to issue the Safety Report, draft data sets describing the impact of different reporting methodologies, Uber's public relations goals aimed at different stakeholder audiences, and a description of objectives, methods, and key takeaways from Uber's research.

1   The fact that the publication of the Safety Report might have some future unknown litigation
2   consequence does not turn the entire presentation into privileged legal advice. Any legal
3   ramifications reflected by the document are secondary considerations.
4       The only redaction reflecting legal advice is the information on the last row on the slide at
5   UBER_00835072. All other redacted information is not privileged and is not protected from
6   discovery.

### E.   Board Meeting Minutes (Log No. 14345)

According to Gumbs, Log No. 14345 contains materials for a meeting on May 4, 2019 with a committee of Uber's Board of Directors concerning a potential business transaction. Gumbs Decl. ¶ 24. The materials include the committee's prior meeting minutes from April 16, 2019, with one redacted paragraph. *Id.* Gumbs states that the redaction reveals a confidential discussion between committee members, in-house counsel, and other Uber employees. *Id.* He also states that the purpose of the discussion was to receive "legal advice on the assessment of specific categories of rights and obligations in the . . . transaction agreements, and how they would operate from a legal perspective." *Id.* Plaintiff argues that the redacted communication is nothing more than "a mere recitation of the overview and fairness of" the business transaction. Mem. 5.

"An attorney's involvement in, or recommendation of, a transaction does not place a cloak of secrecy around all the incidents of such a transaction." *Matter of Fischel*, 557 F.2d 209, 212 (9th Cir.1977). The party asserting privilege must show that the documents "directly or indirectly reveal communications of a confidential nature by the client to the attorney." *Id.* In other words, the party must show that the documents are "so interwoven with the privileged communications that disclosure of the former leads irresistibly to disclosure of the latter." *Id.* Board meeting minutes involving in-house counsel are not privileged unless the party asserting privilege can show that the communications were for the primary purpose of providing or obtaining legal advice. *United States v. Rite Aid Corp.,* No. 2:12-CV-1699-KJM-EFB, 2021 WL 1196250, at *8 (E.D. Cal. Mar. 30, 2021).

In camera review does not support Gumbs's conclusory assertion that the redacted portion of the minutes reflects legal advice. Gumbs. Decl. ¶ 24. General Counsel West may have led the

9

board's discussion about the business transaction, but there is no presumption that discussions led by in-house counsel involve legal advice. *See Rite Aid Corp.,* 2021 WL 1196250, at *9 (finding that board meeting minutes about "the status of negotiations, information about the other company involved in the transaction, and the potential financial implications of various transactions" were primarily business-related and therefore not privileged). Here, only the fourth sentence of the redacted paragraph contains information from which a reader may extrapolate that board members asked questions to seek legal advice about specific aspects of the business transaction. *See Matter of Fischel*, 557 F.2d at 212. The rest of the paragraph primarily involves a discussion of the business transaction itself.

Therefore, only the fourth sentence of the redacted paragraph in Log No. 14345 is privileged.

IN SUMMARY:

- Plaintiff's motion to compel Log Nos. 1887-89, 4816, 4941, 10185, 10228, 13741, and 14326 is denied.
- Plaintiff's motion to compel Log No. 1998 is granted.
- Plaintiff's motion to compel Log No. 9497 is granted except for the last row on the slide at UBER_00835072.
- Plaintiff's motion to compel Log No. 14345 is granted except for the fourth sentence of the redacted paragraph at UBER_00830742.

### IV. MOTIONS TO SEAL

Pursuant to Civil Local Rule 79-5(f), Plaintiff filed an Administrative Motion to Consider Whether Another Party's Material Should Be Sealed in connection to the JDL, and another sealing motion in connection to Plaintiff's memorandum in response to Uber's declarations. [Docket Nos. 395 (First Sealing Mot.), 419 (Second Sealing Mot.).] As the designating party, Uber filed statements in support of Plaintiff's motions, seeking to redact portions of the JDL and Plaintiff's memorandum. [Docket Nos. 397 (First Supp.), 421 (Second Supp.).] Pursuant to Civil Local Rule 79-5(c), Uber also filed an Administrative Motion to File Under Seal seeking to redact portions of its declarations. [Docket No. 435 (Third Sealing Mot.).] Plaintiff filed an opposition

to Uber's sealing motion.  [Docket No. 436 (Opp'n to Sealing).]

In assessing whether documents may be filed under seal there is "a strong presumption in favor of access."  *Foltz v. State Farm Mut. Auto. Ins.*, 331 F.3d 1122, 1135 (9th Cir. 2003).  The Ninth Circuit established standards governing requests to seal in *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1180-81 (9th Cir. 2006).  In accordance with the strong public policy favoring access to court records, "[a] party seeking to seal a judicial record . . . bears the burden of overcoming this strong presumption by meeting the 'compelling reasons' standard."  *Id.* at 1178.  If the court finds a compelling reason to seal a record, it must then "conscientiously balance[ ] the competing interests of the public and the party who seeks to keep" the records secret.  *Kamakana*, 447 F.3d at 1179.  However, the court explained that it had "carved out an exception to the presumption of access to judicial records" for "court records attached only to non-dispositive motions."  *Id.* (quoting *Foltz*, 331 F.3d at 1135).  The court reasoned that "the public has less of a need for access to court records attached only to non-dispositive motions because those documents are often 'unrelated, or only tangentially related, to the underlying cause of action.'"  *Id.* (quoting *Foltz*, 331 F.3d at 1135).  "A 'good cause' showing under Rule 26(c) will suffice to keep sealed records attached to non-dispositive motions."  *Id.* at 1180 (citing *Foltz*, 331 F.3d at 1135).  The same good cause showing applies to "discovery motion[s] unrelated to the merits of a case."  *See Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1097 (9th Cir. 2016).

### A. First Motion to Seal

Plaintiff's administrative motion to seal portions of the JDL is granted in part and denied in part.  The court grants the motion to seal the redacted portions of JDL pages one and three, except the last redaction on page three (after "because it merely summarizes" through the end of the sentence).  Uber has established good cause to seal the material because it reflects Uber's confidential business strategy as well as confidential communications with government regulators and in-house counsel.

The court denies the motion to seal the redacted portions of JDL page two and the last redaction on page three.  Contrary to Uber's assertions, these high-level descriptions do not reveal

legal and regulatory analyses or confidential business strategy.[1]

### B. Second Motion to Seal

Plaintiff's administrative motion to seal portions of its memorandum is granted in part and denied in part. Uber seeks to redact only some parts of the materials in Plaintiff's sealing motion. Second Supp. 4-7. Uber's proposed redactions on pages two and three of the memorandum are denied because they are general descriptions of a broad subject area of advice which do not reveal Uber's litigation and regulatory analyses, nor do they divulge financial and regulatory information about the company. Uber's first proposed redaction on page four (lines 2-3) is denied for the same reason.

The rest of Uber's proposed redactions on page four (lines 4-8 and lines 16-17) are granted because they reveal confidential communications regarding Uber's financial metrics and legal analyses. Uber's proposed redaction on page 5 is granted because it contains sensitive information about Uber's strategic business decisions.[2]

### C. Third Motion to Seal

Uber's administrative motion to seal portions of its declarations is granted in part and denied in part. The court grants Uber's motion to seal the redacted portion of Gumbs Decl. p.7, ¶ 14, line 22 because it reveals confidential communications regarding Uber's financial metrics and legal analyses. The court denies the motion to seal the redaction portion of Gumbs Decl. p.8, ¶ 14, lines 1-3 because it is a general description of a broad subject area of legal advice which does not reveal litigation or regulatory analyses.

The court denies the motion to seal the redacted portion of Gumbs Decl. p.11, ¶ 19 because it only generally describes the IPO process and the broad subject areas of counsel's advice, and

---

[1] Uber failed to offer a basis for sealing the first redaction on JDL page two (after "associated with the meeting such as" and before "Log No. 9497"), which is another reason why the court denies Plaintiff's motion to seal as to this material.

[2] Plaintiff argues that this redaction should be subject to full disclosure to the public because it is related to Plaintiff's complaint. Second Sealing Mot. 1. But the redaction contains information which was not disclosed in Plaintiff's Second Amended Class Action Complaint. [Docket No. 137.] Plaintiff cites to no case law which would deny a motion to seal simply because the redacted material is "related" to the complaint.

does not reveal confidential business or legal strategy.

The court grants the motion to seal the redacted portions of Gumbs Decl. ¶¶ 23-26 because they contain sensitive information about Uber's strategic business decisions. The court also grants the motion to seal the redacted portion of Gumbs Decl. p.16, ¶ 27 because it more specifically describes the contents of legal advice Uber received.

The court denies the motion to seal the redacted portions of Binnings Decl. ¶ 3 because they are only high-level descriptions of the broad subject areas of counsel's advice, and they do not reveal confidential litigation or business analyses.

The court denies the motion to seal the redacted portions of Waitzman Decl. ¶¶ 2, 4-7 because they contain only generalized descriptions of the broad subject area of counsel's advice.

## V.   CONCLUSION

For the forgoing reasons, the JDL is granted in part and denied in part. Uber shall produce documents in conformance with this order within seven days. In addition, Docket Nos. 395, 419, and 435 are granted in part and denied in part. The parties shall re-file versions of the JDL, Plaintiff's memorandum, and Uber's declarations consistent with this order within seven days.

**IT IS SO ORDERED.**

Dated: April 19, 2024

_____
Donna M. Ryu
Chief Magistrate Judge

13