**LABATON KELLER SUCHAROW LLP**
Jonathan Gardner (admitted *pro hac vice*)
Alfred L. Fatale III (admitted *pro hac vice*)
Joseph N. Cotilletta (admitted *pro hac vice*)
Beth C. Khinchuk (admitted *pro hac vice*)
Charles J. Stiene (admitted *pro hac vice*)
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
Email: jgardner@labaton.com
       afatale@labaton.com
       jcotilletta@labaton.com
       bkhinchuk@labaton.com
       cstiene@labaton.com

*Lead Counsel for Plaintiff and the Class*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| BOSTON RETIREMENT SYSTEM, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>UBER TECHNOLOGIES, INC., et. al.,<br><br>Defendants. | Case No. 3:19-cv-06361-RS<br><br>**LEAD PLAINTIFF'S MEMORANDUM IN RESPONSE TO UBER'S DECLARATIONS SUBMITTED PURSUANT TO DKT. NO. 412** |

Lead Plaintiff submits this Memorandum, pursuant to this Court's Order (Dkt. No. 412), opposing three declarations submitted by Defendant Uber in support of its privilege assertions of the 12 documents (the "Documents"). The Documents are highly relevant, "smoking gun," admissions in key areas of this case: (1) segment reporting; (2) certain key financial metrics; and (3) safety. The three declarations are in direct violation of the Court's Order because they are conclusory and fail to show or substantiate Uber's claim of attorney-client privilege as well as its position that the primary purpose of the communications was to provide legal advice.

## A. SEGMENT REPORTING

The Keir Gumbs Declaration ("Gumbs Decl.") discusses documents involving "segment reporting." Contrary to Mr. Gumbs' assertions, segment reporting is an accounting standard that is governed by the Financial Accounting Standards Board ("FASB"), under ASC 280,[1] and consists of examining a company's operations to determine what the company's "Chief Operating Decision Maker" regularly reviews to assess performance and/or make resource allocations, and other fact-based inquiries. Depending on the developments of this fact-based inquiry, certain "operating segments," such as Uber's rideshare business, may need to be converted to a "reportable segment" for purposes of the S-1. For the IPO, Uber reported both its Rideshare and its Eats operating segments into one combined, global reporting segment called "Core Platform." The segment analysis is entirely factual in nature and is an accounting activity. The primary purpose of segment reporting is non-legal, *i.e.*, "to provide information about the *different types of business activities* in which a public entity engages and the *different economic environments* in which it operates to help users of financial statements[:] (a) [b]etter understand the public entity's performance; (b) [b]etter assess its prospects for future net cash flows; and (c) [m]ake more informed judgments about the public entity as a whole." ASC 280-10-10-1 (emphasis added). Mr. Gumbs acknowledges that Uber's IPO disclosures "required legal and accounting advice[,]" where accountants and lawyers "sometimes relied on and informed one another." Gumbs Decl. ¶¶6-7. Mr. Gumbs only fights hard to keep these documents from

---

[1] PwC Viewpoint, 25.7 Segment disclosures, *US Financial statement presentation guide 25.7*, https://viewpoint.pwc.com/dt/us/en/pwc/accounting_guides/financial_statement_/financial_statement___18_US/chapter_25_segment_r_US/257_disclosures_US.html#pwc-topic.dita_1441043412156104 (containing public guidance on ASC 280 from Uber's auditor, PwC).

1

LEAD PLAINTIFFS' MEMORANDUM IN RESPONSE TO UBER'S DECLARATIONS
SUBMITTED PURSUANT TO DKT. NO. 412
CASE NO. 3:19-CV-06361-RS

disclosure because their release would show that Uber's and the other Defendants' acts and omissions violate the securities laws in Enron-like proportions. Plaintiffs allege that the Defendants misrepresented facts underlying its segment reporting analysis to the SEC and the investing public, which lead to Uber Defendants being portrayed as a company of continuous, rapid growth. By disclosing Uber's key Ssegments as one, the Defendants failed to disclose Uber's abysmal state of growth and profit of certain segments, and regions within them, that constituted major portions of Uber's business and were critically important to investors leading up to Uber's IPO.

***Log Nos. 1887-1889.*** Log Nos. 1887-1889 contain a memorandum and accompanying emails regarding segment reporting, which Mr. Gumbs asserts is "legal advice concerning segment reporting in Uber's registration statement." Gumbs Decl. § C. Mr. Gumbs states that Uber prepared this memorandum "in or around September 2018." *Id.* ¶ 10. Mr. Gumbs also states that the memorandum was provided to Uber's non-attorney, tax employees to restructure the business segments. *Id.* ¶ 11. September 2018 was approximately two months prior to Uber's change in segment reporting and right at the start of the IPO process.[2] Taken together, this memorandum was the genesis of restructuring the segments at Uber that lead to a false narrative for the IPO. However, Mr. Gumbs fails to provide any specifics on how this memorandum involved legal advice.

Mr. Gumbs references vague, undisclosed SEC regulations related to segment reporting. Mr. Gumbs did this because the SEC adopted ASC 280.[3] Thus, SEC rules on segment reporting involve the same fact-based accounting inquiry.[4] However, Mr. Gumbs states that the "legal advice" for segment reporting was "separate from any accounting considerations provided by PwC and in-house

---

[2] Uber then changed back the segment reporting shortly after the IPO.

[3] *See* SEC Release Nos. 33-7620 & 34-40884, https://www.sec.gov/files/rules/final/33-7620.txt ("Summary: The Commission today is adopting technical amendments to conform our reporting requirements with the [FASB] Statement of Financial Accounting Standards ('SFAS') No. 131, governing disclosures relating to a business enterprise's operating segments."). "SFAS No. 131 became FASB Accounting Standards Codification (ASC) Topic 280." CFA Institute Research & Policy Center, *Segment Disclosures: Investor Perspectives* (Aug. 30, 2018), https://rpc.cfainstitute.org/research/surveys/segment-disclosures-survey-report.

[4] PwC Viewpoint, Segment Reporting, *US SEC comment letter trends* (Jan. 26, 2024), https://viewpoint.pwc.com/dt/us/en/pwc/sec_comment_letters/comment_letter_trends_DM/Segment_reporting_main.html#pwc-topic.dita_a205c885-7812-4296-aa01-58ed5e00cf9c.

accounting resources[,]" with no explanation as to how or why this is the case. Gumbs Decl. ¶ 15. It is clear that these documents show the feat Uber undertook to restructure its business, which led to certain segments and regions being hidden from the SEC and public. These documents should be produced.

*Log Nos. 4816 (UBER_00605296) and 10185 (UBER_00719098).* Log Nos. 4816 and 10185 are post-IPO communications involving Uber's Chief Accounting Officer ("CAO") and Chief Financial Officer ("CFO") about segment reporting. Mr. Gumbs describes the content of these documents as "legal advice" concerning "Uber's business segments in its Quarterly Report." Gumbs Decl. ¶ 27. Notably, these communications take place at approximately the same time that Uber changed its segment reporting back to its original form after the IPO. Mr. Gumbs claims that the email sent by Nelson Chai (CFO/non-attorney) concerns a request for legal advice, (*id.* ¶ 28), however, he fails to address the documentary evidence contained in the emails. Mr. Chai addressed the email to "Glen [Ceremony] (and Keir [Gumbs])" with Mr. Gumbs copied to the email. Mr. Chai sought Glen Ceremony's (CAO/non-attorney) attention and merely kept Mr. Gumbs aware, consistent with the address fields. Mr. Gumbs fails to explain how Mr. Chai's email directed at Mr. Ceremony contains a request for legal advice through example or other means. *See id*. Mr. Gumbs also fails to address that Mr. Ceremony, not Mr. Gumbs or Tony West (attorneys), responded to Mr. Chai and provided a wholly redacted answer. *Id.* Given that segment analysis is an accounting activity, and the email response came from the CAO (a non-attorney), the likelihood of this communication containing legal advice is low, if any. These documents should be produced.

## B.    FINANCIAL METRICS

Mr. Gumbs' declaration also concerns key financial metrics at issue, such as contribution margin. Uber considered contribution margin a key performance indicator and included a one-time contribution margin range among its top five countries in the S-1, which failed to disclose that the United States (comprising approximately 50% of Uber's total business) represented a -10% contribution margin and was the worst performing country in the metric. Uber's failure to disclose this information was critical because prospective investors had questions and concerns about the U.S. business. Mr. Gumbs now seeks to prevent disclosure of the business decision to include this range.

1 | *Log Nos. 4941 (UBER_00606327) and 10228 (UBER_00719950)*. Mr. Gumbs describes
2 | these documents as "legal advice concerning financial metrics disclosures in Uber's Registration
3 | Statement on Form S-1." Gumbs Decl. § D. Mr. Gumbs claims that in these email chains he provided
4 | legal advice as to [redacted]. *Id.* ¶ 14. However, he
5 | fails to explain how the email chain concerns whether [redacted]
6 | [redacted] — a discussion that occurred well before and after his
7 | communication between non-attorneys. Mr. Gumbs fails to address how [redacted]
8 | [redacted] is legal advice rather than business advice.
9 | Mr. Gumbs also fails to address how legal advice was conveyed from Mr. Chai simply stating,
10 | "Yes looks good [redacted]." This is a mere utterance from a non-lawyer. Mr. Gumbs also fails to
11 | address whether he remained on this email chain. Uber failed to submit a declaration from Mr. Chai
12 | supporting this redaction. Thus, Mr. Gumbs' declaration does not adequately show what legal advice,
13 | if any, predominated over the clear business advice. These documents should be produced.
14 | *Log No. 14326 (UBER_00829471)*. Log No. 14326 contains text messages dated April 18,
15 | 2019 (right before Uber's IPO), which Mr. Gumbs claims contain "legal advice" that he
16 | "communicated to Mr. Glen Ceremony . . . and Mr. Nelson Chai . . . in connection with [redacted]
17 | [redacted]" Gumbs Decl. ¶ 15. Mr.
18 | Gumbs fails to address that the texts contain mere scheduling and follow-up calls with the SEC. Mr.
19 | Gumbs fails to address how legal advice was conveyed in what appear to be fragmented sentences of
20 | less than a few words, particularly when the preceding messages do not contain a request for legal
21 | advice. *See id.* This document should be produced.
22 | **C.    NON-ATTORNEY TIMELINE EVENTS AND NOTES**
23 | *Log Nos. 1998 (UBER_00836679) and 13741 (UBER_00803607)*. Log No. 1998 contains a
24 | spreadsheet of calendar events showing meetings related to Uber's IPO in 2019, with redactions on
25 | rows under the column titled "Action/Event/Meeting." In the declaration of Kathleen Waitzman
26 | ("Waitzman Decl."), she states it "contains a timeline of the IPO process." Waitzman Decl. ¶ 3. None
27 | of the declarants address how legal advice was communicated or received through the title of an event
28 | or meeting (*e.g.*, "Uber files publicly") or a timeline. Instead, for example, Ms. Waitzman states that

"Uber in-house counsel *likely* would have provided legal advice in our capacity as legal counsel for Uber on this contemplated meeting." *Id.* ¶ 6 (emphasis added). However, the issue here is whether the name of the meeting is the provision or receipt of legal advice. Ms. Waitzman's use of "likely" demonstrates her lack of personal knowledge. As for Log No. 13741, Mr. Gumbs admits it is a set of "notes," which was taken by a non-attorney at the ELT Offsite and does not allege that this document contains a communication conveying or requesting legal advice. Gumbs Decl. ¶ 20. These document should be produced.

D.   SAFETY

*Log No. 9497 (UBER_00835061).* The Declaration of Scott Binnings ("Binnings Decl.") fails to address how this PowerPoint *contains* legal advice. Instead, Mr. Binnings stated that "legal advice was provided for the preparation" of the PowerPoint, and that he used the Powerpoint to "facilitat[e] [his] discussion of legal issues." Binnings Decl. ¶¶ 5, 7. Thus, this document should be produced.

E.   GENERAL ISSUES WITH THE DECLARATIONS

First, in the eleventh hour, Uber asserts an advice of counsel defense, although it previously stated last year that it was not asserting the defense. *See, e.g.,* Gumbs ¶¶ 12, 16, 21, 25, 29; Binnings ¶¶ 3-8; Waitzman ¶¶ 2-7. This assertion now brings into question, not only the Documents, but each document in Uber's privilege log. *In re LendingClub Sec. Litig.*, 2017 WL 4023148, at *1 (N.D. Cal. Sep. 8, 2017) (prior order holding "[t]o the extent defendants rely upon the advice of counsel at trial or on summary judgment, they must produce the relevant communications upon which they rely").

Second, Uber *again* withdraws previously applied redactions that clearly show no legitimate claim to attorney-client privilege (Log No. 14345 (UBER_00830732 at 751)). Mr. Gumbs fails to address how the remaining redaction on this document (UBER_00830744) is anything more than a mere recitation of the overview and fairness of ███████████████████████████ ████████████████ two weeks before its IPO. The meeting was in connection with Annex A, a mere resolution of the transaction. In-house counsel is providing mere business advice.

F.   CONCLUSION

For the foregoing reasons, this Court should order the production of the Documents, or order an *in camera* inspection.

5
LEAD PLAINTIFFS' MEMORANDUM IN RESPONSE TO UBER'S DECLARATIONS
SUBMITTED PURSUANT TO DKT. NO. 412
CASE NO. 3:19-CV-06361-RS

| | | |
|---|---|---|
| 1 | Dated: February 5, 2024 | Respectfully Submitted, |
| 2 | | |
| 3 | | **LABATON KELLER SUCHAROW LLP** |
| 4 | | By: */s/ Joseph N. Cotilletta* |
| 5 | | Jonathan Gardner (admitted *pro hac vice*) |
| | | Alfred L. Fatale III (admitted *pro hac vice*) |
| 6 | | Joseph N. Cotilletta (admitted *pro hac vice*) |
| 7 | | Beth C. Khinchuk (admitted *pro hac vice*) |
| | | Charles J. Stiene (admitted *pro hac vice*) |
| 8 | | New York, NY 10005 |
| | | Telephone: 212 907 0700 |
| 9 | | Fax: 212 818 0477 |
| 10 | | Email: jgardner@labaton.com |
| | | afatale@labaton.com |
| 11 | | jcotilletta@labaton.com |
| | | bkhinchuk@labaton.com |
| 12 | | cstiene@labaton.com |
| 13 | | *Lead Counsel for Lead Plaintiff and the Class* |
| 14 | | |
| 15 | | LEVI & KORSINSKY, LLP |
| | | Gregory M. Nespole (admitted *pro hac vice*) |
| 16 | | Daniel Tepper (admitted *pro hac vice*) |
| | | Correy A. Suk (admitted *pro hac vice*) |
| 17 | | 55 Broadway, Suite 427 |
| 18 | | New York, NY 10006 |
| | | Telephone: (212) 363-7500 |
| 19 | | Facsimile: (212) 363-7171 |
| | | Email: gnespole@zlk.com |
| 20 | | dtepper@zlk.com |
| | | ckamin@zlk.com |
| 21 | | |
| 22 | | *Liaison Counsel for Lead Plaintiff Boston Retirement System* |
| 23 | | SCOTT+SCOTT ATTORNEYS AT LAW LLP |
| | | John T. Jasnoch |
| 24 | | Mollie Chadwick |
| 25 | | 600 West Broadway, Suite 3300 |
| | | San Diego, CA 92101 |
| 26 | | Telephone: (619) 233-4565 |
| | | Facsimile: (619) 233-0508 |
| 27 | | Email: jjasnoch@scott-scott.com |
| | | mchadwick@scott-scott.com |
| 28 | | |

ROBBINS GELLER RUDMAN & DOWD LLP
Thomas E. Egler
Nathan R. Lindell
Joseph J. Tull
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: (619) 231-1058
Facsimile: (619) 231-7423
Email: tome@rgrdlaw.com
nlindell@rgrdlaw.com
jtull@rgrdlaw.com

COTCHETT, PITRE & McCARTHY, LLP
Mark C. Molumphy
Tyson Redenbarger
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
Email: mmolumphy@cpmlegal.com
        tredenbarger@cpmlegal.com

*Counsel for Class Representatives David Messinger, Ellie Marie Toronto ESA, and Irving S. and Judith Braun*

## CERTIFICATE OF SERVICE

I, Joseph N. Cotilletta, certify that on February 5, 2024, the foregoing documents entitled **LEAD PLAINTIFF'S MEMORANDUM IN RESPONSE TO UBER'S DECLARATIONS SUBMITTED PURSUANT TO DKT. NO. 412** was filed electronically in the Court's ECF; thereby upon completion the ECF system automatically generated a "Notice of Electronic Filing" as service through CM/ECF to registered e-mail addresses of parties of record in this case.

                                                              */s/ Joseph N. Cotilletta*