Daniel H.R. Laguardia (SBN 314654)
SHEARMAN & STERLING LLP
140 New Montgomery Street, 10th Floor
San Francisco, CA 94105-2997
Telephone: 415.616.1100
Facsimile: 415.616.1199
Email: daniel.laguardia@shearman.com

Paula H. Anderson (admitted *pro hac vice*)
Agnès Dunogué (admitted *pro hac vice*)
Dennis D. Kitt (admitted *pro hac vice*)
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, NY 10022-6069
Telephone: 212.848.4000
Facsimile: 212.848.7179
Email: paula.anderson@shearman.com
       agnes.dunogue@shearman.com
       dennis.kitt@shearman.com

*Attorneys for Defendant Uber Technologies, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| BOSTON RETIREMENT SYSTEM, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UBER TECHNOLOGIES, INC., *et al.*,<br><br>Defendants. | Case No. 3:19-cv-06361-RS<br><br>**DECLARATION OF KEIR GUMBS**<br><br>**REDACTED** |

DocuSign Envelope ID: 09FADC3C-82F3-4A5B-9A0G-601CBED21EC9

I, Keir Gumbs, declare as follows:

**A. Background**

1. I am General Counsel at Edward D. Jones & Co., L.P. I am a former in-house attorney for Uber Technologies, Inc. ("Uber"). I was employed at Uber as Associate General Counsel, Global Corporate, M&A and Securities and Deputy Corporate Secretary from August 2018 to March 2021, and as Vice President, Deputy General Counsel and Deputy Corporate Secretary from March 2021 to July 2021. I am licensed to practice law in the State of California and the District of Columbia and certified to practice law temporarily in the State of Missouri under Supreme Court Rule 8.06. I submit this declaration in support of Uber's opposition to Lead Plaintiff Boston Retirement System's ("Lead Plaintiff") request to compel the production of certain documents, or redacted portions of certain documents, described on Uber's privilege log (the "Log"). (ECF No. 394.) In particular, I address herein the three documents in full identified on the Log in row numbers ("Log Nos.") 1887–89, and the redacted portions of eight other documents identified at Log Nos. 1998, 4816, 4941, 10185, 10228, 13741, 14326, and 14345 (collectively, the "Logged Documents"). As I discuss below, the three documents and the redacted portions of the other documents contain attorney-client communications made in confidence that reflect legal advice sought by and/or provided to Uber, and the only, or at the minimum the primary, purpose of the confidential attorney-client communications was for Uber to obtain legal advice. I have personal knowledge of the facts and circumstances set forth herein, and if called upon as a witness to testify in this matter, I could and would competently do so as follows:

2. By way of background to my discussion of the Logged Documents, I briefly summarize below the nature of the legal advice that I provided to Uber in connection with its May 10, 2019 initial public offering ("IPO"), and the drafting process for IPO disclosures as to which Uber required legal and accounting advice.

DocuSign Envelope ID: 09FADC3C-82F3-4A5B-9A0G-601CBED21EC9

**a. The Nature of the Legal Advice I Provided in Connection with Uber's IPO**

3.  While I was an in-house attorney at Uber, I had overall responsibility for the legal issues associated with Uber's IPO. In providing such advice, I analyzed (among other things) the scope and application of the laws, rules, and regulations governing the IPO process and Uber's regulatory disclosures or submissions to the Securities and Exchange Commission ("SEC"). Among other sources of law, I relied on the Securities Act of 1933, which governs an issuer's initial public offer and sale of securities in the United States, and the SEC rules regulating the IPO process and related disclosures. My legal advice was necessary for ensuring that Uber's execution of the IPO conformed to the requirements of the applicable securities laws, rules, and regulations.

4.  I also had responsibility for providing legal advice to Uber with respect to the preparation and distribution of Uber's Registration Statement on Form S-1 (the "Registration Statement"). Uber made its S-1 filings with the SEC over a period ranging from December 2018 to April 2019. My legal advice was necessary to ensure that the format and contents of the Registration Statement complied with the applicable law, including but not limited to Section 5 of the Securities Act, which requires issuers to file a registration statement and regulates the timeline and distribution process of an offer of securities for sale; Section 6 of the Securities Act, which sets forth the registration process for issuers; Regulation S-K, which governs the preparation of non-financial disclosures in an issuer's registration statement; and Regulation S-X, which sets out the form and content of required financial statements in an issuer's registration statement. I also ensured that Uber's Registration Statement conformed to the requirements of Form S-1, which lays out the disclosure and format requirements that an issuer must follow in its registration statement to satisfy Section 5 of the Securities Act for offerings of new securities. Form S-1 requires exceedingly detailed financial, legal, and structural information pertaining to an issuer. The disclosures range from

information concerning an issuer's business operations to information concerning the issuer's financial condition.

5. I also had responsibility for providing legal advice to Uber with respect to Uber's ongoing disclosure obligations after the IPO, including with respect to quarterly reports on Form 10-Q. I provided advice to Uber regarding the language used in Uber's quarterly reports on Form 10-Q to ensure it was compliant with the requirements of applicable securities laws, rules, and regulations. In doing so, I analyzed the scope and application of, among other sources of law, the Securities Exchange Act of 1934 (the "Exchange Act"), which requires publicly traded companies to submit periodic reports to the SEC. Form 10-Q requires particularly detailed financial, legal, and structural information pertaining to public companies. The disclosures range from information concerning a public company's business operations to information concerning the company's financial condition.

### b. Drafting Process for IPO Disclosures Requiring both Legal and Accounting Advice

6. During my time at Uber, both legal and accounting experts provided advice with respect to disclosure obligations implicating accounting principles or standards before and after the IPO. PricewaterhouseCoopers LLP ("PwC"), Uber's outside auditor, and Uber's in-house accounting experts, provided expert accounting guidance to Uber with respect to this type of regulatory disclosure. Uber's in-house and outside counsel provided legal advice to Uber with respect to legal issues stemming from the preparation of Uber's regulatory disclosures and related processes.

7. Uber's legal counsel sought and relied on the accounting advice of PwC and Uber's in-house accounting experts in providing legal advice to Uber with respect to compliance with the applicable securities laws, rules, and regulations before and after the IPO. But the legal and accounting processes were separate, although they sometimes relied on and informed one another.

**B. The Logged Documents**

8. I understand that Lead Plaintiff in this case seeks to compel the production in full of the Logged Documents that I identified in Paragraph 1 above, i.e., Log Nos. 1887–89, 1998, 4816, 4941, 10185, 10228, 13741, 14326, and 14345.

9. I have reviewed copies of each of the Logged Documents, including unredacted copies with highlights for the portions of each of the documents that Uber has redacted on the basis of the attorney-client privilege. I confirm that I was personally involved in my capacity as legal counsel for Uber in the rendering of the legal advice underlying all attorney-client communications contained and revealed in each of the Logged Documents. In addition, as further detailed below, while Uber's IPO and related transactions naturally implicated business considerations and required expert accounting advice, none of the attorney-client communications contained and revealed in the portions of the Logged Documents that Uber has withheld discussed mere business considerations, or mere accounting principles or standards. Nor would these communications have been made in the absence of any interest by Uber in legal advice. The sole, or at the minimum the primary, purpose of these confidential attorney-client communications was for Uber to receive legal advice as described above and below, and to my knowledge there was no other purpose, and even if there had been another purpose, it would have been at most a secondary purpose.

**C. Legal Advice Concerning Segment Reporting in Uber's Registration Statement on Form S-1—Log Nos. 1887–89**

10. Form S-1 required Uber to disclose information concerning its business segments to the SEC. I was responsible for the provision of legal advice to Uber with respect to segment reporting in Uber's Registration Statement on Form S-1. In or around September 2018, I requested Andrew Glickman, then in-house counsel for Uber, to prepare for my review a memorandum (the "Memorandum") containing an analysis regarding the scope of Uber's disclosure obligations concerning its business segments in its Registration Statement on Form S-1, as prescribed under the

applicable securities laws, rules, regulations, and precedent.  We based this analysis on our legal judgment and interpretation of the applicable securities laws and regulations and the SEC's enforcement of such disclosure obligations.  The law firms Cooley LLP and Covington & Burling LLP also assisted Mr. Glickman in the preparation of the legal analysis in the Memorandum in their capacity as outside legal counsel for Uber.  Our legal advice was necessary to ensure Uber's Registration Statement on Form S-1 was in compliance with the applicable law.

11. I understand that Uber has fully withheld the documents at Log Nos. 1887–89 on the basis of the attorney-client privilege.  I have reviewed a copy of the document at Log No. 1887, which contains an email chain comprising two confidential emails sent by Mr. Glickman in his capacity as legal counsel for Uber.  I confirm that the initial email in the chain, dated September 20, 2018, is from Mr. Glickman to me, copying Robert Wu, Uber's then in-house counsel, David Peinsipp and Siana Lowrey, then attorneys from Cooley LLP in their capacity as legal counsel for Uber, and Kerry Burke and Stephanie Bignon, then attorneys from Covington & Burling LLP in their capacity as legal counsel for Uber.  I have reviewed a copy of the documents at Log Nos. 1888–89, which are the attachments to Mr. Glickman's initial email in the chain at Log No. 1887, and confirm that these are the copies of the legal Memorandum containing the legal analysis concerning segment reporting that I requested Mr. Glickman to prepare with my input and the assistance of Cooley LLP and Covington & Burling LLP in their capacity as outside legal counsel for Uber.  This analysis was separate from any accounting considerations provided by PwC and in-house accounting resources.  The body of Mr. Glickman's initial email in the chain at Log No. 1887 contains a discussion of the substance of two copies of the legal Memorandum.  In the subsequent email of the chain at Log No. 1887, dated September 20, 2018, Mr. Glickman forwards the body of his initial email, including the attachments containing the copies of the legal Memorandum described at Log Nos. 1888–89, to Mr. Francois Chadwick, Uber's then Global Head of Tax and Accounting, and Mr. Josh Waldron, then Assistant

1   Controller at Uber, who were assisting Uber in its consideration of the scope of its business segments
2   and related disclosures in the Registration Statement. Mr. Glickman describes the legal advice
3   contained in the copies of the memorandum in the body of his email.

4      12. Without our legal advice, Uber could not have ensured that the disclosures regarding
5   business segments in its Registration Statement on Form S-1 complied with the applicable law. To
6   that end, Uber confided in its in-house and outside counsel to receive informed legal advice. The
7   substance of our legal advice was not a mere "logical" or "mechanical" step needed to carry out the
8   business or non-legal aspects of the IPO. Mr. Glickman's communications at Log Nos. 1887–89 did
9   not discuss mere business aspects of the IPO or mere accounting principles or standards. Nor would
10  these communications have been made in the absence of any interest by Uber in legal advice. To the
11  contrary, our legal advice required our legal judgment and expertise for the analysis of a complex
12  regulatory and precedential scheme requiring disclosure of exceedingly detailed corporate
13  information in Uber's Registration Statement on Form S-1. In sum, the sole, or at the minimum the
14  primary, purpose of the confidential attorney-client communications at Log Nos. 1887–89 was for
15  Uber to receive legal advice with respect to the scope of Uber's legal disclosure obligations, which
16  Uber needed to ensure compliance with the applicable securities laws, rules, and regulations.

17     **D. Legal Advice Concerning Financial Metrics Disclosures in Uber's Registration Statement on Form S-1—Log Nos. 4941, 10228, and 14326**
18

19     13. In connection with the IPO, Uber was also subject to disclosure obligations concerning
20  the disclosure of certain financial metrics. I was responsible for providing legal advice to Uber with
21  respect to the financial metrics disclosures in Uber's Registration Statement on Form S-1, with the
22  assistance of Cooley LLP in its capacity as Uber's outside counsel. We analyzed, among other things,
23  the scope of the disclosure obligations concerning Uber's financial metrics in its Registration
24  Statement on Form S-1, as prescribed under the applicable securities laws, rules, and regulations.

DECLARATION OF KEIR GUMBS       6      Case No. 3:19-cv-06361-RS

14. I understand that Uber has redacted portions of the documents at Log Nos. 4941 and 10228. I have reviewed unredacted copies of the documents at Log Nos. 4941 and 10228 with highlights for the portions that Uber has redacted on the basis of the attorney-client privilege. The documents at Log Nos. 4941 and 10228 contain iterations of an email chain in April 2019 between Uber employees and me in my capacity as in-house legal counsel for Uber. Mr. Nelson Chai, Uber's then Chief Financial Officer, Mr. Chris Cincotta, Uber's then Head of Strategic Initiatives, Accounting, Ms. Emily (Maher) Reuter, then IPO Lead, Corporate Development and Capital Markets at Uber, and Mr. Dennis Cinelli, then Vice President, Global Head of Strategic Finance at Uber, were among the Uber employees that were included on the email chain and who were assisting Uber with respect to its contribution margin disclosures in the Registration Statement. I confirm that the redacted material on pages 3 and 4[1] of the email chain of the document at Log No. 4941 and the redacted material on page 3 of the email chain of the document at Log No. 10228 contain and reveal the substance of legal advice I confidentially communicated to these Uber employees. This analysis was separate from any accounting considerations provided by PwC and Uber's in-house accounting resources. I assessed, among other legal issues, the scope of Uber's disclosure obligations in its Registration Statement on Form S-1 with respect to Uber's contribution margin financial metric and how to properly address comments on Uber's disclosures provided by the SEC as part of the comment letter process. This assessment was based on my legal judgment and interpretation of the applicable securities laws and regulations to ensure Uber's compliance therewith and my assessment of litigation and other related confidential matters to which I was privy as in-house counsel. In addition to the scope of Uber's legal disclosure obligations, such redacted material contains and reveal legal advice I provided to Uber as to ███████████████████████████████████████ in its

---

[1] All page numbers that I use herein refer to the PDF pagination of each of the Logged Documents, including the cover sheet, that were enclosed with the letter dated January 17, 2024 that Uber submitted to the Court.

DECLARATION OF KEIR GUMBS                     7                     Case No. 3:19-cv-06361-RS

1    Registration Statement on Form S-1, which was informed by my legal analysis of the scope of Uber's
2    legal disclosure obligations and other legal considerations, including as to ongoing litigation and
3    regulatory processes.

4        15.    I also understand that Uber has redacted portions of the document at Log No. 14326.
5    I have reviewed an unredacted copy of the document at Log No. 14326 with highlights for the portions
6    that Uber has redacted on the basis of the attorney-client privilege.  The document at Log No. 14326
7    contains text messages, dated April 18, 2019, between Uber employees and me in my capacity as
8    legal counsel for Uber.  I confirm that the redacted messages I sent at 4:39 PM and 6:40 PM in the
9    document at Log No. 14326 contain and reveal the substance of legal advice I confidentially
10   communicated to Mr. Glen Ceremony, Uber's Chief Accounting Officer, and Mr. Nelson Chai,
11   Uber's then Chief Financial Officer in connection with Uber's legal obligations concerning the scope
12   of its adjusted net revenue disclosures in the Registration Statement.  This analysis was separate from
13   any accounting considerations provided by PwC and in-house accounting resources.  I assessed,
14   among other legal issues, the scope of Uber's disclosure obligations in its Registration Statement on
15   Form S-1 with respect to Uber's adjusted net revenue and provided my confidential analysis of
16   ongoing discussions I and other counsel were having with the SEC regarding comments received
17   from the SEC staff in our capacity as legal counsel to Uber.  I based this analysis on my legal judgment
18   and interpretation of the applicable securities laws and regulations and the SEC's enforcement of such
19   disclosure obligations to ensure Uber's compliance therewith.  In addition to legal advice I provided
20   to Uber, the redacted message I sent at 4:39 PM and the first message I sent at 6:40 PM reveal
21   confidential attorney-client communications between Uber, including myself, with Cooley LLP,
22   whose team was led by attorneys David Peinsipp and Siana Lowrey, for the purpose of receiving
23   additional legal advice from them in their capacity as outside legal counsel for Uber.  This legal advice
24   concerned the scope of Uber's disclosure obligations with respect to Uber's adjusted net revenue in

DECLARATION OF KEIR GUMBS                        8                       Case No. 3:19-cv-06361-RS

DocuSign Envelope ID: 09FADC3C-82F3-4A5B-0A0C-601CBED21EC9
Case 3:19-cv-06361-RS   Document 448   Filed 04/23/24   Page 10 of 18

its Registration Statement on Form S-1.  The attorneys from Cooley LLP based their legal advice on their legal judgment and interpretation of the applicable securities laws and regulations and the SEC's enforcement of such disclosure obligations to ensure Uber's compliance therewith.

16. Without our legal advice, Uber could not have ensured that the disclosures regarding margin contribution and revenue in its Registration Statement on Form S-1 complied with the applicable law.  To that end, Uber confided in its in-house and outside counsel to receive informed legal advice.  The substance of our legal advice was not a mere "logical" or "mechanical" step needed to carry out the business or non-legal aspects of the IPO.  The redacted material on pages 3 and 4 of the email chain of the document at Log No. 4941, the redacted material on page 3 of the email chain of the document at Log No. 10228, and the redacted text messages I sent at 4:39 PM and 6:40 PM in the document at Log No. 14326 did not discuss mere business aspects of the IPO or mere accounting principles or standards.  Nor would these communications have been made in the absence of any interest by Uber in legal advice.  To the contrary, our legal advice required our legal judgment and expertise for the analysis of a complex regulatory scheme requiring disclosure of exceedingly detailed corporate information in Uber's Registration Statement on Form S-1.  Uber has not redacted the portions of the documents at Log Nos. 4941, 10228, and 14326 that do not contain or necessarily reveal a confidential communication between Uber and its counsel to provide or receive legal advice. In sum, the sole, or at the minimum the primary, purpose of the confidential attorney-client communications contained in the redacted portions of the documents at Log Nos. 4941, 10228, and 14326 was for Uber to receive legal advice with respect to the scope of its legal disclosure obligations, which Uber needed to ensure compliance with the applicable securities laws, rules, and regulations.

17. Finally, the legal advice Uber's in-house counsel and Cooley LLP provided to Uber with respect to the scope of Uber's regulatory disclosures in the Registration Statement naturally implicated the discussion of factual information pertaining to Uber.  However, to the extent the

redacted portions of the documents at Log Nos. 4941, 10228, and 14326 contain factual information, they do not contain "raw" or "mere" factual information in isolation. To the contrary, any factual information contained in these attorney-client communications underpinned and facilitated the discussion of the legal advice Uber sought from Cooley LLP and myself.

E. **Legal Advice Concerning Compliance with Laws, Rules, and Regulations Governing Uber's IPO Process—Log Nos. 1998 and 13741**

18.  Uber's in-house counsel, including myself, provided legal advice regarding the scope and timing of any regulatory obligations throughout each of the steps of the IPO process with the assistance of the law firms Cooley LLP and Covington & Burling LLP in our capacity as legal counsel for Uber. We assessed, among other legal issues, the scope and application of the laws, rules, and regulations governing Uber's initial public offer and sale of securities in the United States, and the rules regulating the IPO process and related disclosures issued by the SEC. Our legal advice was necessary for ensuring that Uber's execution of the IPO conformed to the requirements of the applicable securities laws, rules, and regulations.

19.  I understand that Uber has redacted portions of the document at Log No. 1998. I have reviewed an unredacted copy of the document at Log No. 1998 with highlights for the portions that Uber has redacted on the basis of the attorney-client privilege. The document at Log No. 1998 contains a timeline of the IPO process detailing, among other things, certain regulatory requirements with which Uber was required to comply in connection with the IPO. The IPO timeline at Log No. 1998 was prepared by, among other contributors, Mr. Dom Graham, Director, Strategic Initiatives at Uber, and me and attorneys Ms. Terra Castaldi, Mr. Robert Wu, Ms. Carolyn Mo, in our capacity as in-house legal counsel for Uber, with the assistance of attorneys at Cooley LLP and Covington & Burling LLP in their capacity as outside legal counsel for Uber. The redacted contents of the IPO timeline at Log No. 1998 reveal confidential communications over the course of 2018 and 2019 between Uber employees, including Mr. Graham, and Uber's in-house and outside counsel, in which

DocuSign Envelope ID: 09FADC3C-82F3-4A5B-9A0C-601CBED21EC9

Uber employees requested and/or received legal advice in our capacity as legal counsel for Uber with respect to the scope and timing of Uber's legal obligations, including regulatory requirements, stemming from the IPO.[2] The scope of our legal advice included: the preparation and distribution of offer letters in connection with the IPO; determining how and when to communicate with investors; the preparation of forms under Section 16 of the Exchange Act; analyzing any obligations of Uber with respect to insider trading and timing of trading; the preparation of current reports on Form 8-K for disclosure to the SEC; and fiduciary duties. We based our legal advice on our legal judgment and interpretation of the laws, rules, and regulations governing Uber's IPO, and the rules regulating the IPO process and related disclosures issued by the SEC.

20.  I also understand that Uber has redacted portions of the document at Log No. 13741. I have reviewed an unredacted copy of the document at Log No. 13741 with highlights for the portions that Uber has redacted on the basis of the attorney-client privilege. The document at Log No. 13741 contains notes of a January 16, 2019 meeting of Uber's Executive Leadership Team and other Uber employees concerning the IPO, which I attended in my capacity as legal counsel for Uber. The notes were prepared by Ms. Andi Pimentel, Chief of Staff to Uber's CEO, who also attended the meeting. The redacted contents under the heading "IPO Timing and Process" on page 3 of the document at Log No. 13741 contain (i) requests made at the meeting by Uber for legal advice with respect to certain regulatory requirements in connection with the IPO, including from Mr. Andrew Macdonald, Senior Vice President of Mobility and Business Operations at Uber, and (ii) certain of the legal advice that I provided in response, in my capacity as legal counsel. The scope of my legal advice included: determining how and when to communicate to investors (including as restricted by the "quiet period"

---

[2] The redacted portions of the document at Log No. 1998 also reflect attorney-client communications concerning certain insurance matters. *See* rows 22 and 25, column F, at PDF pages 3–4. I understand that those communications are addressed in the Declaration of Kathleen "Katie" Waitzman ("Waitzman Declaration"), which I understand Uber is submitting to the Court at the same time as my Declaration.

DECLARATION OF KEIR GUMBS        11        Case No. 3:19-cv-06361-RS

1  prescribed by federal securities laws); determining the extent to which certain information relating to

2  the IPO required disclosure to regulators; and analyzing any trading restrictions to which Uber was

3  subject.  I analyzed the scope and timing of Uber's legal obligations stemming from the IPO, which

4  I based on my legal judgment and interpretation of the laws, rules, and regulations governing Uber's

5  IPO, and the rules regulating the IPO process and related disclosures issued by the SEC to ensure

6  Uber's compliance.

7       21.    Without our legal advice, Uber could not have ensured that the execution of the IPO

8  complied with the requirements of the applicable law.  To that end, Uber confided in its in-house and

9  outside counsel to receive informed legal advice.  The substance of our legal advice was not a mere

10 "logical" or "mechanical" step needed to carry out the business or non-legal aspects of the IPO.  The

11 redacted portions of the documents at Log Nos. 1998 and 13741 did not discuss mere business aspects

12 of the IPO or mere accounting principles standards.  Nor would these communications have been

13 made in the absence of any interest by Uber in legal advice.  To the contrary, our legal advice required

14 our legal judgment and expertise for the analysis of a complex regulatory scheme governing the IPO.

15 Uber has not redacted the portions of the documents at Log Nos. Nos. 1998 and 13741 that do not

16 contain or necessarily reveal a confidential communication between Uber and its counsel to provide

17 or receive legal advice.  In sum, the sole, or at the minimum the primary, purpose of the confidential

18 attorney-client communications contained and revealed in the redacted portions of the documents at

19 Log Nos. 1998 and 13741 was for Uber to receive legal advice with respect to the scope of its legal

20 obligations in connection with the IPO, which Uber needed to ensure compliance with the applicable

21 securities laws, rules, and regulations.

22      22.    Finally, the legal advice Uber's in-house counsel and Cooley LLP provided to Uber

23 with respect to the IPO regulatory requirements and scope of Uber's regulatory disclosures naturally

24 implicated the discussion of factual information pertaining to Uber.  However, to the extent the

redacted portions of the documents at Log Nos. 1998 and 13741 contain factual information, they do not contain "raw" or "mere" factual information in isolation. To the contrary, any factual information contained in these attorney-client communications underpinned and facilitated the discussion of the legal advice Uber sought from Cooley LLP and myself.

**F. Legal Advice Concerning Uber's Entry into Agreements and Related Disclosures in Uber's Registration Statement on Form S-1—Log No. 14345**

23. At the time leading to the IPO, Uber's in-house counsel also provided legal advice concerning the terms of a business transaction ▆▆▆▆▆▆▆▆▆▆ referred to as "Project ▆▆," and any required regulatory disclosures with respect to the transaction in connection with the IPO. I was personally involved in the provision of this legal advice, which was based on my legal interpretation and analysis of specific categories of rights and obligations in the Project ▆▆ transaction agreements and how they would operate from a legal perspective. In addition, I assessed the scope of Uber's disclosure obligations in its Registration Statement on Form S-1 with respect to the entry into the Project ▆▆ transaction, which I based on my legal judgment and interpretation of the applicable securities laws and regulations and the SEC's enforcement of such disclosure obligations.

24. I understand that Uber has redacted portions of the document at Log No. 14345. I have reviewed an unredacted copy of the document at Log No. 14345 with highlights for the portions that Uber has redacted on the basis of the attorney-client privilege. The document at Log No. 14345 contains materials for a meeting of the Pricing and Project ▆▆ Committee of the Board of Directors of Uber (the "Pricing and Project ▆▆ Committee") on May 4, 2019. The redacted contents on page 12 of the document at Log No. 14345 are part of the minutes of a meeting of the Pricing and Project

1  ▮ Committee that was previously held on April 16, 2019.  Members of the Pricing and Project
2  ▮ Committee, Uber's in-house counsel team, including me, and other Uber employees attended the
3  April 16, 2019 meeting.  The redacted contents on page 12 of the document at Log No. 14345
4  contain a confidential discussion concerning the review and approval of the Project ▮ transaction.
5  Mr. Tony West, Uber's General Counsel, led the discussion.  I confirm that the redacted contents on
6  page 12 of the document at Log No. 14345 reveal a confidential discussion between members of the
7  Pricing and Project ▮ Committee and other Uber employees, including Mr. Ron Sugar, member of
8  the Pricing and Project ▮ Committee, Ms. Jennifer Jarrett, then Vice President, Corporate
9  Development at Uber, Mr. Ian Kleinfeld, then Director, Corporate Development at Uber, and Mr.
10 Jeff Miller, then Director, Business Development, and Uber's in-house counsel in their capacity as
11 legal counsel for Uber, including myself, for the purpose of receiving legal advice on the
12 assessment of specific categories of rights and obligations in the Project ▮ transaction
13 agreements, and how they would operate from a legal perspective.  Furthermore, the fourth sentence
14 in the redacted paragraph on page 12 of the document at Log No. 14345 contains a confidential
15 discussion between members of the Pricing and Project ▮ Committee of the Board of Directors
16 of Uber to Uber's in-house counsel in their capacity as legal counsel for Uber, including myself, for
17 the purpose of receiving legal advice regarding the scope of its disclosure obligations in its
18 Registration Statement on Form S-1 with respect to the entry into the Project ▮ transaction.

19      25.     Without our legal advice, Uber could not have acquired an understanding of its rights
20 and obligations under the Project ▮ agreements from a legal perspective and ensured that the
21 disclosures in its Registration Statement on Form S-1 complied with the requirements of the
22 applicable law.  To that end, Uber confided in its in-house counsel to receive informed legal advice.

1  The substance of our legal advice was not a mere "logical" or "mechanical" step needed to carry out
2  the business or non-legal aspects of the IPO or the Project ▮ Transaction. Moreover, the redacted
3  paragraph on page 12 of the document at Log No. 14345 did not primarily discuss business aspects
4  of the IPO or the Project ▮ transaction. Nor would this communication have been made in
5  the absence of any interest by Uber in legal advice. To the contrary, our legal advice required our
6  legal judgment and expertise for the analysis of complex contractual agreements and the
7  regulatory scheme governing the IPO. Uber has not redacted the portions of the document at Log
8  No. 14345 that do not contain or necessarily reveal a confidential communication between Uber and
9  its counsel to provide or receive legal advice. In sum, the sole, or at the minimum the primary,
10 purpose of the confidential attorney-client communications contained in the redacted portions on
11 page 12 of the document at Log No. 14345 was for Uber to receive legal advice with respect to
12 (i) the scope of its rights and obligations concerning Project ▮ from a legal perspective,
13 and (ii) related disclosure obligations in connection with the IPO.

14      26.   Finally, the legal advice Uber's in-house counsel provided to Uber with respect to the
15 Project ▮ transaction and the scope of Uber's regulatory disclosures in the Registration Statement
16 naturally implicated the discussion of factual information pertaining to Uber and the Project ▮
17 transaction. However, to the extent the redacted portions of the document at Log No. 14345 contain
18 factual information, they do not contain "raw" or "mere" factual information in isolation. To the
19 contrary, any factual information contained in these attorney-client communications underpinned and
20 facilitated the discussion of the legal advice Uber sought from its in-house counsel.

21      **G. Legal Advice Concerning Segment Reporting in Uber's Quarterly Report on Form 10-Q—Log Nos. 4816 and 10185**

22      27.   After the IPO, Uber continued to be subject to regulatory disclosure obligations
23 concerning segment reporting. In or around August 2019, I was specifically tasked with providing a
24 legal analysis with respect to the scope of Uber's ongoing legal disclosure obligations concerning

1 Uber's business segments in its Quarterly Report on Form 10-Q for the third quarter of Fiscal Year
2 2019. We assessed, among other legal issues, the scope of Uber's disclosure obligations in Uber's
3 10-Q filing with respect to Uber's business segments ████████████████████████████
4 ████████████████████████████████. We based this assessment on our
5 legal judgment and interpretation of the applicable securities laws, rules, regulations, and precedent.

6      28.   I understand that Uber has redacted portions of the documents at Log Nos. 4816 and
7 10185. I have reviewed unredacted copies of the documents at Log Nos. 4816 and 10185 with
8 highlights for the portions that Uber has redacted on the basis of the attorney-client privilege. The
9 documents at Log Nos. 4816 and 10185 contain iterations of an email chain between Uber employees
10 and Uber's in-house counsel, including Tony West and me, in our capacity as legal counsel for Uber.
11 I confirm that the redacted contents of the email sent by Mr. Nelson Chai on August 13, 2019, at Log
12 Nos. 4816 and 10185 contain a confidential request for legal advice to me, under the supervision of
13 Uber's General Counsel, Mr. Tony West, with respect to the scope of Uber's ongoing disclosure
14 obligations concerning Uber's business segments in its Quarterly Report on Form 10-Q for the third
15 quarter of Fiscal Year 2019. In addition, I confirm that the redacted contents of the email sent by Mr.
16 Glen Ceremony on August 13, 2019, at Log Nos. 4816 and 10185 reveal the substance of legal advice
17 I confidentially provided to him in his role as Uber's Chief Accounting Officer with respect to the
18 scope of Uber's ongoing disclosure obligations concerning Uber's business segments in its Quarterly
19 Report on Form 10-Q for the third quarter of Fiscal Year 2019. This analysis was separate from any
20 accounting considerations provided by PwC and Uber's in-house accounting resources. In providing
21 that advice, I assessed, among other legal issues, the scope of Uber's disclosure obligations
22 concerning its business segments in its Quarterly Report on Form 10-Q, as prescribed under the
23 applicable securities laws, rules, regulations, and precedent. We based this assessment on our legal
24

1  judgment and interpretation of the applicable securities laws and regulations and the SEC's

2  enforcement of such disclosure obligations to ensure Uber's disclosures were compliant.

3      29.    Without my legal advice, Uber could not have ensured that the disclosures regarding

4  business segments in its Quarterly Report on Form 10-Q for the third quarter of Fiscal Year 2019

5  complied with the applicable law. To that end, Uber confided in its in-house counsel to receive

6  informed legal advice. The substance of our legal advice was not a mere "logical" or "mechanical"

7  step needed to carry out Uber's business. The redacted portions of the documents at Log Nos. 4816

8  and 10185 did not discuss mere business considerations, or mere accounting principles or standards.

9  Nor would these communications have been made in the absence of any interest by Uber in legal

10 advice. To the contrary, our legal advice required our legal judgment and expertise for the analysis

11 of a complex regulatory scheme requiring disclosure of exceedingly detailed corporate information

12 in Uber's Quarterly Report on Form 10-Q. In sum, the sole, or at the minimum the primary, purpose

13 of the confidential attorney-client communications contained and revealed in the redacted portions of

14 the documents at Log Nos. 4816 and 10185 was for Uber to receive legal advice with respect to the

15 scope of its legal disclosure obligations, which Uber needed to ensure compliance with the applicable

16 securities laws, rules, and regulations.

17     30.    I declare under penalty of perjury under the laws of the United States of America that

18 the foregoing is true and correct.

19     Executed on January 22, 2024, at San Diego, California.

_____
Keir Gumbs