Jonathan Gardner (admitted *pro hac vice*)
Alfred L. Fatale III (admitted *pro hac vice*)
Joseph N. Cotilletta (admitted *pro hac vice*)
Beth C. Khinchuk (admitted *pro hac vice*)
LABATON KELLER SUCHAROW LLP
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
Email: jgardner@labaton.com
        afatale@labaton.com
        jcotilletta@labaton.com
        bkhinchuk@labaton.com

*Class Counsel for Plaintiffs and the Class*

[*additional counsel listed on signature page*]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| BOSTON RETIREMENT SYSTEM,<br><br>    Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES, INC., et al.,<br><br>    Defendants. | Case No.:  3:19-cv-06361-RS<br><br>**CLASS REPRESENTATIVES' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing:  Aug. 29, 2024 at 1:30 p.m.<br>Courtroom: No. 3 – 17th Floor<br>Judge:  Hon. Richard Seeborg<br>Filed:  Oct. 4, 2019 |

# TABLE OF CONTENTS

Page

NOTICE OF MOTION ............................................................................................ 1

STATEMENT OF ISSUES TO BE DECIDED ...................................................... 2

MEMORANDUM OF POINTS AND AUTHORITIES ........................................ 2

PRELIMINARY STATEMENT .............................................................................. 2

    A.    Overview of the Litigation ................................................................ 3

    B.    Settlement Discussions .................................................................... 6

    C.    Terms of the Proposed Settlement .................................................. 6

    D.    Proposed Schedule of Events .......................................................... 10

ARGUMENT ........................................................................................................... 10

I.     THE SETTLEMENT MERITS PRELIMINARY APPROVAL ..................... 10

    A.    The Class Has Been Adequately Represented ................................ 12

    B.    The Settlement Resulted from Good Faith, Arm's-Length Negotiations ........... 13

    C.    The Relief Provided by the Settlement Is Adequate ...................... 14

        1.    Many Challenges to Obtaining a Recovery Remained ........... 14

        2.    Effective Process for Distributing Relief to the Class ............ 17

        3.    Anticipated Legal Fees and Expenses ..................................... 19

    D.    Class Members Are Treated Equitably Relative to One Another ....... 20

II.    THE PROPOSED NOTICE PROGRAM SATISFIES RULE 23, DUE PROCESS, PSLRA REQUIREMENTS, AND THE COURT'S GUIDANCE ........... 21

    A.    Notice Procedures .......................................................................... 21

    B.    Form and Substance of Proposed Settlement Notices .................... 23

    C.    Claims Administration ................................................................... 24

CONCLUSION ....................................................................................................... 25

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4
5

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
No. 04-cv-08141 (S.D.N.Y.) ................................................................. 13

6

*In re Aqua Metals, Inc. Sec. Litig.*,
2002 WL 612804 (N.D. Cal. Mar. 3, 2022) ........................................ 16

7
8

*In re Banc of Caf. Sec. Litig.*,
2019 WL 6605884 (C.D. Cal. Dec. 4, 2019) ....................................... 13

9
10

*Chavez v. Converse, Inc.*,
2020 WL 4047863 (N.D. Cal. July 8, 2020) ....................................... 14

11

*In re Countrywide Sec. Litig.*,
No. 07-cv-05295 (C.D. Cal.) ................................................................ 13

12
13

*Destefano v. Zynga*,
2016 WL 537946 (N. D. Cal. Feb. 11, 2016) ...................................... 19

14
15

*In re Schering-Plough Corp. / ENHANCE Sec. Litig.*,
No. 08-cv-00397 (D.N.J.) ..................................................................... 13

16

*In re Heritage Bond Litig.*,
2005 WL 1594403 (C.D. Cal. June 10, 2005) ..................................... 19

17
18

*In re HP Inc. Sec. Litig.*,
2015 WL 12990170 (N.D. Cal. Nov. 16, 2015) .................................... 8

19
20

*In re HP Inc. Sec. Litig.*,
No. 3:20-cv-01260-SI (N.D. Cal. Sept. 6, 2023) .................................. 8

21

*In re HP Inc. Sec. Litig.*,
2015 WL 4477936 (N.D. Cal. July 20, 2015) ...................................... 22

22
23

*Lane v. Facebook, Inc.*,
696 F.3d 811 (9th Cir. 2012) ............................................................... 21

24
25

*In re LendingClub Sec. Litig.*,
2018 WL 1367336 (N.D. Cal. Mar. 16, 2018) ...................................... 8

26

*In re LinkedIn User Priv. Litig.*,
309 F.R.D. 573 (N.D. Cal. 2015) ........................................................ 17

27
28

*Low v. Trump Univ., LLC*,
881 F.3d 1111 (9th Cir. 2018) ............................................................... 9

CLASS REPRESENTATIVES' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION
SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3: 19-CV-06361-RS

ii

*Luz Bautista-Perez v. Juul Labs, Inc.*,
  2022 WL 307942 (N.D. Cal. Feb. 2, 2022) .................................................... 11 n.7

*In re Mercury Interactive Corp. Sec. Litig.*,
  618 F.3d 988 (9th Cir. 2010) ........................................................................ 10

*Moorer v. StemGenex Med. Grp.*,
  2021 WL 4993054 (S.D. Cal. Oct. 26, 2021) .................................................. 9 n.6

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
  339 U.S. 306 (1950)....................................................................................... 21

*In re Netflix Privacy Litig.*,
  2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ................................................ 13

*In re NVIDIA Corp. Derivative Litig.*,
  2008 WL 5382544 (N.D. Cal. Dec. 22, 2008) ................................................ 13

*In re OCZ Tech. Grp. Sec. Litig.*,
  No. 3:12-cv-05265 (N.D. Cal. Sept. 21, 2015) ............................................... 8

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) .................................................... 16, 19

*In re Pac. Enterprises Sec. Litig.*,
  47 F.3d 373 (9th Cir. 1995) ........................................................................... 19

*In re Portal Software, Inc. Sec. Litig.*,
  2007 WL 1991529 (N.D. Cal. June 30, 2007) ................................................ 13

*Satchell v. Fed. Express Corp.*,
  2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) ................................................ 14

*Schuh v. HCA Holdings, Inc.*,
  No. 11-cv-1033 (M.D. Tenn) .................................................................... 17 n.12

*Slack Technologies, LLC v. Pirani*,
  598 U.S. 759 (2023) ....................................................................................... 16

*In re Syncor ERISA Litig.*,
  516 F.3d 1095 (9th Cir. 2008) ....................................................................... 10

*In re Twitter Inc. Sec. Litig.*,
  No. 4:16-cv-05314-JST (N.D. Cal. Aug. 5, 2022)........................................... 9 n.6

*Vancouver Alumni Asset Holdings Inc. v. Daimler AG*,
  No. 16-cv-02942 (C.D. Cal. Mar. 13, 2023)............................................... 19 n.14

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002) ....................................................................... 20

CLASS REPRESENTATIVES' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION
SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3: 19-CV-06361-RS

iii

*In re Wells Fargo Sec. Litig.*,
   991 F.Supp. 1193 (N.D. Cal. 1998) ............................................................... 19 n.14

*In re Zynga Inc.*, *Sec. Litig.*
   2015 WL 6471171 (N.D. Cal. Oct. 27, 2015) ................................................. 11 n.9

**Statutes**

15 U.S.C. § 77z-1 ....................................................................................................... 23

15 U.S.C. § 77z-1(a)(4) ................................................................................... 19, 21 n.16

28 U.S.C. § 1715 ....................................................................................................... 22

**Other Authorities**

Laarni T. Bulan and Laura E. Simmons, *Securities Class Action Settlements –*
   *2023 Review and Analysis* (Cornerstone Research 2024) ...................................... 16

*N.D. Cal. Procedural Guidance for Class Action Settlements* ............................................. *passim*

Rule 23 ................................................................................................................ *passim*

CLASS REPRESENTATIVES' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION
SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3: 19-CV-06361-RS

iv

## **NOTICE OF MOTION**

PLEASE TAKE NOTICE that Lead Plaintiff Boston Retirement System ("BRS"), David Messinger ("Messinger"), Salvatore Toronto acting on behalf of the Ellie Marie Toronto ESA ("Toronto"), and Irving S. and Judith Braun (the "Brauns") (collectively, "Class Representatives"), on behalf of themselves and the other members of the certified Class hereby move this Court for an order, pursuant to Federal Rule of Civil Procedure 23(e)(1): (1) preliminarily approving the proposed Settlement of the above-captioned certified class action (the "Action"); (2) approving the form and manner of notice of the proposed Settlement and related relief to the Class; (3) scheduling a final settlement hearing before the Court to determine whether the proposed Settlement, proposed Plan of Allocation for the proceeds of the Settlement, and Class Counsel's motion for attorneys' fees and Litigation Expenses should be approved; and (4) granting such other and further relief as may be required.[1]

The Motion is supported by the following memorandum of points and authorities, and the accompanying Declaration of Alfred L. Fatale III in Support of Class Representatives' Unopposed Motion for Preliminary Approval of Proposed Class Action Settlement, dated July 19, 2024 ("Fatale Decl.") with annexed exhibits, including the Stipulation and Agreement of Settlement, dated July 19, 2024 ("Stipulation"), which is annexed as Exhibit 1.

Pursuant to Civil Local Rule 7-2 and the Court's Standing Order, the Motion is noticed for a hearing on August 29, 2024, at 1:30 p.m. However, Defendants do not oppose the Motion and the Parties agree that it may be decided on the papers, should the Court conclude that a hearing is not required.

A proposed Order Granting Preliminary Approval of Class Action Settlement, Approving Form and Manner of Notice, and Setting Date for Hearing on Final Approval of Settlement ("Preliminary Approval Order"), with annexed exhibits, which was negotiated by the Parties, is also submitted herewith.

---

[1] All capitalized terms used herein are defined in the Stipulation and have the same meanings as set forth therein. All references to "Ex." herein are references to exhibits attached to the Fatale Declaration. Unless otherwise noted, citations and internal quotations have been omitted.

CLASS REPRESENTATIVES' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:19-CV-06361-RS

1

**STATEMENT OF ISSUES TO BE DECIDED**

1.      Whether it is likely the Court will be able to approve the proposed $200 million cash Settlement of the Action pursuant to Rule 23(e)(2), such that notice of the Settlement should be provided to members of the certified Class.

2.      Whether the Court should approve the form and substance of the proposed Notice of Proposed Class Action Settlement and Motion for Attorneys' Fees and Expenses ("Settlement Notice"), Proof of Claim and Release form ("Claim Form"), Postcard Notice, and the Summary Notice of Proposed Class Action Settlement and Motion for Attorneys' Fees and Expenses ("Summary Notice"), attached as Exhibits A-1 through A-4 to the Preliminary Approval Order, as well as the manner of notifying the Class of the Settlement and related relief.

3.      Whether the Court should set a date for a hearing on final approval of the proposed Settlement, the proposed Plan of Allocation, and Class Counsel's motion for attorneys' fees and Litigation Expenses (the "Settlement Hearing").

**MEMORANDUM OF POINTS AND AUTHORITIES**

**PRELIMINARY STATEMENT**

Class Representatives respectfully submit this memorandum, on behalf of themselves and the certified Class, in support of preliminary approval of the proposed Settlement in the amount of $200,000,000, in cash, pursuant to the terms set forth in the Stipulation.[2] The Settlement is with all defendants: Uber Technologies, Inc. ("Uber" or the "Company"); the Individual Defendants (together with Uber, the "Uber Defendants"); and the Underwriter Defendants (together with Uber and the Individual Defendants, the "Defendants").

Class Representatives respectfully submit that the Settlement is an excellent result for the Class and should be preliminarily approved for the reasons stated herein. The decision to settle was informed by a comprehensive investigation into the claims and defenses in the Action, intensive motion practice and discovery, certification of the Class, and extensive arm's-length negotiations overseen by a highly respected mediator.

---

[2] The Stipulation is attached as Exhibit 1 to the Fatale Declaration, submitted herewith.

CLASS REPRESENTATIVES' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:19-CV-06361-RS

2

## A.      Overview of the Litigation

On or about May 10, 2019, Uber commenced its initial public offering ("IPO"). On October 4, 2019, this Action was commenced with the filing a class action complaint alleging violations of the Securities Act of 1933 (the "Securities Act") against Defendants. ECF No. 1. On January 3, 2020, the Court appointed BRS as Lead Plaintiff and approved Labaton Sucharow LLP (n/k/a Labaton Keller Sucharow LLP) ("Labaton" or "Class Counsel") as Lead Counsel pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"). ECF No. 59.

On March 3, 2020, Lead Plaintiff filed an Amended Class Action Complaint for Violations of the Federal Securities Laws (the "First Amended Complaint") asserting claims against Defendants under Sections 11, 12(a)(2), and 15 of the Securities Act. ECF No. 80. In particular, the First Amended Complaint alleged that the IPO's Offering Documents contained three categories of allegedly materially false and misleading statements or omissions. First, the First Amended Complaint alleged that the Offering Documents failed to disclose that, at the time of the IPO, Uber had an alleged practice of skirting laws and regulations to expand and operate in various jurisdictions, and that its business model depended on the purported misclassification of drivers as independent contractors, rather than employees. Second, the First Amended Complaint alleged that the Offering Documents failed to disclose, at the time of the IPO, information about passenger safety, including incidents of sexual assault and deficiencies in its background check procedures for drivers. Third, the First Amended Complaint alleged that the Offering Documents failed to disclose that, at the time of the IPO, Uber had (i) increasing losses, expenses and slowing growth, and (ii) a plan to cut costs post-IPO through layoffs that allegedly further hindered Uber's growth.

The First Amended Complaint was based on Lead Counsel's extensive factual investigation, which included the review and analysis of: (i) documents filed publicly by the Company with the U.S. Securities and Exchange Commission; (ii) Company press releases, transcripts of earnings calls, and other public statements issued and disseminated by the Company; (iii) the Company's website and marketing materials; (iv) price and volume data for

Uber's common stock; (v) research reports from securities and financial analysts; (vi) news and media reports concerning the Company and other facts related to the Action; (vii) other publicly available materials and data; and (viii) the applicable law governing the claims and potential defenses. Lead Counsel also identified and contacted approximately 138 former Uber employees with potentially relevant knowledge and interviewed approximately 24 of them (two of whom provided information for use in the First Amended Complaint as confidential witnesses).

On May 5, 2020, Defendants moved to dismiss the First Amended Complaint. ECF No. 85. On August 7, 2020, the Court denied this motion to dismiss in full. ECF No. 95. On September 30, 2020, Defendants filed their answers to the First Amended Complaint, denying all allegations of wrongdoing or damages and asserting affirmative defenses. ECF Nos. 106, 107.

On September 18, 2020, formal discovery commenced, which included both Defendants and Plaintiffs serving requests for documents, interrogatories, notices of deposition, and requests for admission. Each were responded to and were the subject of extensive negotiations as to scope.

On September 25, 2020, Lead Plaintiff filed its first Motion for Class Certification and Appointment of Class Representative and Class Counsel. ECF No. 104.

On December 5, 2020, plaintiffs Messinger, the Brauns, Toronto, Joseph Cianci ("Cianci"), Varghese Pallathu, Gerald Ashford, and Johnny Ramey, the latter three of whom are not currently named as plaintiffs in this Action (the "*Messinger* Plaintiffs") filed a class action complaint, captioned *Messinger, et al. v. Uber Technologies, Inc.*, *et al.* No. 3:20-cv-08610-WHA ("*Messinger* Action"), alleging violations of the federal securities laws in connection with the IPO against the same Defendants named in this Action. On January 25, 2021, the Court granted a stipulation to consolidate the *Messinger* Action into this Action. ECF No. 125.

On May 14, 2021, Lead Plaintiff filed the Second Amended Class Action Complaint for Violations of the Federal Securities Laws adding Messinger, Toronto, the Brauns, and Cianci[3] to the operative pleadings (the "Second Amended Complaint"). ECF No. 137. Other than adding additional named plaintiffs, the Second Amended Complaint alleged the same violations of the

---

[3] Cianci was named as a plaintiff in the Second Amended Complaint but is not a Class Representative. Cianci and Class Representatives are collectively referred to herein as Plaintiffs.

CLASS REPRESENTATIVES' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:19-CV-06361-RS

4

1   Securities Act based on the same factual allegations as in the First Amended Complaint.

2   On June 28, 2021, Defendants moved to dismiss the additional named plaintiffs' claims

3   from the Second Amended Complaint on statute of limitations and other procedural grounds. ECF

4   No. 141. On October 1, 2021, the Court entered an order denying this second motion to dismiss.

5   ECF No. 172. On October 15, 2021 and October 22, 2021, the Uber Defendants and the

6   Underwriter Defendants, respectively, filed answers to the Second Amended Complaint, denying

7   all allegations of wrongdoing or damages and asserting affirmative defenses. ECF Nos. 174, 178.

8   On October 29, 2021, Lead Plaintiff filed a Revised Motion for Class Certification. ECF

9   No. 182. On July 26, 2022, the Court granted the Revised Motion for Class Certification and

10  appointed Class Representatives and Class Counsel. ECF No. 217. On August 9, 2022,

11  Defendants petitioned the U.S. Court of Appeals for the Ninth Circuit for permission to appeal

12  the Court's class certification order. *See Boston Retirement System*, *et. al. v. Uber Technologies*

13  *Inc., et al.*, No. 22-80076 (9th Cir.). On February 24, 2023, the Ninth Circuit denied the petition.

14  Pursuant to Court order (ECF No. 291), beginning on July 7, 2023, the Class Postcard was

15  mailed to potential Class Members and a long-form notice was made available on

16  www.UberIPOSecuritiesLitigation.com. On July 21, 2023, a summary notice was published in

17  *The Wall Street Journal* and distributed on the internet using *PR Newswire*. In addition to

18  summarizing the Action, the notices collectively provided potential class members with the

19  opportunity to request exclusion from the Class (*i.e.*, to "opt-out"), explained that right, and set

20  forth procedures for doing so, including the September 5, 2023 deadline. Only 19 requests for

21  exclusion from the Class were received. *See* ECF Nos. 342 and 401.

22  The Parties took or defended a total of 46 depositions. Class Representatives took 32

23  depositions of Uber, its current and former employees, the Individual Defendants, the Underwriter

24  Defendants, and Defendants' experts. Defendants took 10 depositions in connection with class

25  certification and four in connection with expert discovery. In connection with expert discovery,

26  the Parties submitted a total of 11 expert reports, including rebuttal reports.

27

28

Class Representatives' Unopposed Motion for Preliminary Approval of Proposed Class Action
Settlement and Memorandum of Points and Authorities in Support Thereof
Case No. 3:19-cv-06361-RS

5

### B.   Settlement Discussions

In October 2020, Lead Plaintiff and the Uber Defendants began discussing a mediated resolution of the Action. To facilitate these discussions Lead Plaintiff, the *Messinger* Plaintiffs, and the Uber Defendants engaged Robert A. Meyer, Esq. (the "Mediator"), a well-respected and highly experienced mediator from JAMS. A mediation session was held on March 10, 2021. No settlement was reached at that time.

Beginning in February 2024, Class Representatives and the Uber Defendants again agreed to explore the possibility of a negotiated resolution of the Action with the assistance of the Mediator. The Class Representatives and the Uber Defendants engaged in two pre-mediation conferences on March 6 and 18, 2024 by remote means, during which counsel respectively made presentations regarding the Class Representatives' claims and the Defendants' defenses.

On March 28, 2024, representatives of Lead Plaintiff and Uber as well as counsel for the Class Representatives and the Uber Defendants met in person for a full-day mediation with the Mediator in an attempt to reach a settlement. After extensive arm's length negotiations, Class Representatives and the Uber Defendants were unable to reach an agreement to settle the Action, but agreed to continue negotiations through the Mediator.

On April 22, 2024, after continued negotiations, the Mediator issued a $200 million mediator's proposal to resolve all claims subject to the negotiation of non-financial terms for the Settlement and Court approval. On April 23, 2024, Class Representatives and the Uber Defendants accepted the Mediator's proposal. A Term Sheet was executed by the Parties on July 17, 2024, and the Stipulation was executed on July 19, 2024.

### C.   Terms of the Proposed Settlement

The Settlement provides that Uber will pay, or shall cause to be paid, $200 million in cash into an interest-bearing escrow account. *See* Stipulation at ¶ 5. The Settlement Amount, plus accrued interest, after the deduction of Court-awarded attorneys' fees and Litigation Expenses, Notice and Administration Expenses, Taxes, and any other costs or fees approved by the Court (the "Net Settlement Fund"), will be distributed to Class Members who submit timely and valid

CLASS REPRESENTATIVES' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION
SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:19-CV-06361-RS

6

1    Claims, in accordance with a plan of allocation approved by the Court. *See id.* at ¶¶ 8-9. The

2    Settlement is not a claims-made settlement and there is no reversion. *See id.* at ¶ 12. If approved,

3    Defendants and/or any other Person(s) funding the Settlement Amount on a Defendants' behalf

4    will have no right to the return of the Settlement Fund, or any portion thereof, for any reason. *Id.*;

5    *see also N.D. Cal. Procedural Guidance for Class Action Settlements* ("Guidance") ¶ 1(g)

6    (requiring disclosure of any reversions).[4]

7           In exchange for the payment of the Settlement Amount, upon the Effective Date of the

8    Settlement, Plaintiffs and each and every other Releasing Plaintiff Party, in their capacities as

9    such, shall release and dismiss the "Released Plaintiffs' Claims" against the Released Defendant

10   Parties. *See* Stipulation at ¶ 3.[5] The definition of Released Plaintiffs' Claims has been tailored to

11   provide Defendants and the other Released Defendant Parties with "complete peace." It releases

12   claims that Plaintiffs or any other member of the Class, and any and all of the Releasing Plaintiff

13   Parties, in their capacities as such, have or could have asserted in the Action or have or could in

14   the future assert in any forum, whether foreign or domestic, whether brought directly or indirectly,

15   against any of the Defendants and the Released Defendant Parties, which in any way arise out of

16   or are based upon both (1) any of the allegations, acts, transactions, facts, matters, occurrences,

17   representations or omissions involved, set forth, or alleged in the Action and (2) the purchase,

18   acquisition, holding, sale, or disposition of any publicly traded Uber common stock purchased or

19   acquired pursuant and/or traceable to the Offering Documents, including any publicly traded Uber

20   common stock purchased or acquired during the Traceability Period. *See id.* at ¶ 1(ll); *see also*

21   Guidance ¶ 1(b) (requiring disclosure of differences between released claims and claims of the

22   operative complaint).

23

24           [4] For the Court's convenience, a table outlining relevant Guidance requirements, along with
     where responsive information can be found, is attached as Appendix A.

25           [5] Defendants are also releasing any claims that they "could have asserted against any of the
     Released Plaintiff Parties that arise out of or are connected to the institution, prosecution, or
26   settlement of the claims in the Action, except for claims relating to the enforcement of the
     Settlement or any claim against any Person who, as of December 1, 2023, requested exclusion
27   from the Class in connection with the Class Notice and has not opted back into the Class, and
     anyone else who submits a request for exclusion that is accepted by the Court."
28   *See* Stipulation at ¶ 1(jj).

The proposed release is, therefore, tailored to the conduct at issue in the Action and is consistent with release provisions approved by this Court and other courts in this District. *See, e.g.*, *In re OCZ Tech. Grp. Sec. Litig.*, No. 3:12-cv-05265, ECF Nos. 97-1, 114 (N.D. Cal. Sept. 21, 2015) (Seeborg, J.) (approving similar release of claims "based upon, arising out of, or relating in any way to … allegations, matters, facts, transactions, events, occurrences, disclosures, statements, acts, omissions or failures to act which were or could have been alleged in the Litigation" or "the purchase, acquisition, disposition, sale or retention of OCZ securities"); *In re HP Inc. Sec. Litig.*, No. 3:20-cv-01260-SI, ECF No. 143 (N.D. Cal. Sept. 6, 2023) (approving release of claims that were asserted or could have been asserted "that arise out of or are based upon the allegations, transactions, facts, matters or occurrences, representations, or omissions set forth in the Action and that relate to the purchase or other acquisition of HP common stock"); *In re HP Inc. Sec. Litig.*, 2015 WL 12990170, at *3 (N.D. Cal. Nov. 16, 2015) (same); *In re LendingClub Sec. Litig.*, 2018 WL 1367336, at *3 (N.D. Cal. Mar. 16, 2018) (approving release "anchored to 'the purchase, acquisition, holding, sale, or disposition of'" stock).

In addition, the Settlement does not release claims "(i) to enforce the Settlement; (ii) of the 19 persons and entities who, as of December 1, 2023, requested exclusion in connection with the Class Notice, unless they choose to opt-back into the Class; (iii) alleged in the Amended Class Action Complaint, dated January 30, 2023, in *Cao v. Uber Technologies, Inc., et al.*, No. 22-cv-4688 (N.D. Cal.); (iv) alleged in *Fazio v. Khosrowshahi, et al.*, No. 20-cv-7916 (N.D. Cal.); (v) alleged in *Jain v. Khosrowshahi, et al*., No. 24-cv-0403 (D. Del.) or *Feghali Foods Inc. PSP v. Khosrowshahi, et al.*, No. 24-cv-0758 (D. Del.), other than claims related to the Traceability Period, if any; or (vi) arising from shareholder demands received by Uber and/or Uber's board of directors prior to the agreement to the Confidential Term Sheet executed by the Parties on July 17, 2024." Stipulation at ¶ 1(ll). The Parties are not aware of any other pending cases that will be affected by the Settlement or the proposed release. *See* Guidance ¶ 1(d) (requiring disclosure of other cases affected by settlement).

Pursuant to Rule 23(e)(3), the only agreements made by the Parties in connection with the

Class Representatives' Unopposed Motion for Preliminary Approval of Proposed Class Action Settlement and Memorandum of Points and Authorities in Support Thereof
Case No. 3:19-cv-06361-RS

8

Settlement are the Term Sheet, the Stipulation, and the confidential Supplemental Agreement, dated July 19, 2024, concerning the circumstances under which Uber may terminate the Settlement based upon the number of exclusion requests if the Court were to require an additional opportunity for Class Members to seek exclusion from the Class despite the opportunity previously provided in connection with the Class Notice. *See* Stipulation at ¶ 38; *Low v. Trump Univ., LLC*, 881 F.3d 1111, 1121 (9th Cir. 2018) ("[There is] no authority of any kind suggesting that due process requires that members of a Rule 23(b)(3) class be given a second chance to opt out. We think it does not.").[6] It is standard to keep such agreements confidential so that a large investor, or a group of investors, cannot intentionally try to leverage a better recovery for themselves by threatening to opt out, at the expense of the class. The Supplemental Agreement can be provided to the Court *in camera* or under seal.

After approval of the Settlement and approval of the Plan of Allocation for the proceeds of the Settlement, the proposed Claims Administrator, A.B. Data, Ltd. ("A.B. Data" or "Claims Administrator"), will process all claims received and will calculate their value according to the plan of allocation approved by the Court. At the completion of the administration, A.B. Data will distribute the Net Settlement Fund to eligible Claimants and will continue to do so as long as it is economically feasible to make distributions. *See* Stipulation at ¶¶ 23-24. As mentioned above, this is not a claims-made settlement and the entire $200 million Settlement Fund is for the benefit of the Class, regardless of how many claims are submitted. *See id.* at ¶ 12. As discussed further below, when it is no longer feasible to make additional distributions, Class Representatives propose that the unclaimed balance be contributed to the Council of Institutional Investors ("CII"), a non-profit, non-sectarian organization, or such other *cy pres* recipient approved by the

---

[6] In light of the extensive notice of pendency program provided to Class Members last year—and the ample opportunity afforded them at that time—Class Representatives respectfully submit that no second opportunity to request exclusion should be provided, and the proposed notices do not provide for one. *See, e.g., In re Twitter Inc. Sec. Litig.*, No. 4:16-cv-05314-JST, ECF No. 658 (N.D. Cal. Aug. 5, 2022); *Moorer v. StemGenex Med. Grp.*, 2021 WL 4993054, at *6 (S.D. Cal. Oct. 26, 2021). Here, the Class Notice provided Class Members with the opportunity to request exclusion, explained that right, and set forth the deadlines and procedures for doing so. The Class Notice also informed Class Members that if they choose to remain in the Class, they would "be bound by all Court orders, whether favorable or unfavorable, and [] may not pursue a lawsuit on your own with regard to any issues in the Action." There were only 19 requests for exclusion.

CLASS REPRESENTATIVES' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF CASE NO. 3:19-CV-06361-RS

9

Court. *See id.* at ¶ 24.

### D.    Proposed Schedule of Events

Class Representatives respectfully propose the following schedule for Settlement-related events, each of which is in the proposed Preliminary Approval Order:

| | |
|---|---|
| Deadline for commencing mailing individual Settlement Postcards | ***10 business days after entry of the Preliminary Approval Order (the "Notice Date")*** |
| Deadline for publication of Summary Notice in *The Wall Street Journal* and transmission over *PR Newswire* | ***Within 14 calendar days of the Notice Date*** |
| Deadline for filing motions in support of the Settlement, the Plan of Allocation, and Class Counsel's request for an award of attorneys' fees and expenses | ***No later than 35 calendar days before the Settlement Hearing*** |
| Deadline for requests to opt-into the Class; or objections | ***No later than 21 calendar days before the Settlement Hearing*** |
| Deadline for filing reply papers in further support of Class Representatives' and Class Counsel's motions | ***No later than seven (7) calendar days before the Settlement Hearing*** |
| Deadline for submission of Claim Forms | ***Postmarked or received no later than 10 calendar days before the Settlement Hearing*** |
| Settlement Hearing | ***At the Court's convenience, but no fewer than 100 calendar days after entry of the Preliminary Approval Order*** |

This schedule is similar to those used and approved by numerous courts in securities class action settlements and complies with the Ninth Circuit's ruling in *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 993 (9th Cir. 2010) (fee motion must be made available before the objection deadline). The schedule will also allow Class Members to have more than 35 days after the issuance of the Postcard Notice to object to the Settlement. *See* Guidance ¶ 9 (objection timeline).

## ARGUMENT

### I.    THE SETTLEMENT MERITS PRELIMINARY APPROVAL

As a matter of public policy, settlement is strongly favored for resolving disputes, especially in complex class actions. *See, e.g.*, *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008).

Rule 23 requires court approval for any class action settlement. A district court's review

CLASS REPRESENTATIVES' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:19-CV-06361-RS

10

of a proposed class action settlement is a two-step process. First, the court performs a review of the terms of the proposed settlement to determine whether to send notice of the proposed settlement to the class. *See* Rule 23(e)(1). Second, after notice and a hearing, the Court determines whether to grant final approval of the settlement. *See* Rule 23(e)(2). A court may grant preliminary approval of a settlement upon a finding that it "will likely be able to" approve the settlement as fair, reasonable, and adequate at the final hearing. *See* Rule 23(e)(1)(B).[7] By this motion, Class Representatives request that the Court take this first step: preliminary approval of the Settlement.

Rule 23(e)(2) provides that notice should be provided to the class upon a showing that the court will likely be able to finally approve the settlement as fair, adequate, and reasonable[8] considering whether:

(A)     the class representatives and class counsel have adequately represented the class;
(B)     the proposal was negotiated at arm's length;
(C)     the relief provided for the class is adequate, taking into account:
    (i)     the costs, risks, and delay of trial and appeal;
    (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
    (iii)   the terms of any proposed award of attorney's fees, including timing of payment; and
    (iv)    any agreement required to be identified under Rule 23(e)(3); and
(D)     the proposal treats class members equitably relative to each other.[9]

Applying the standards set forth above, it is respectfully submitted that the Settlement should be preliminarily approved.

---

[7] Rule 23(e)(1) effectively codifies prior case law, which provided that courts should grant preliminary approval after considering whether the settlement: "(1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not grant improper preferential treatment to class representatives or other segments of the class; and (4) falls within the range of possible approval." *Luz Bautista-Perez v. Juul Labs, Inc.*, 2022 WL 307942, at *6 (N.D. Cal. Feb. 2, 2022).

[8] Courts are also asked to consider whether they will be able to certify the settlement class, but here, the Court has already certified the Class. *See* Rule 23(e)(1)(B).

[9] The Court may also consider the Ninth Circuit's long-standing approval factors, many of which overlap with the Rule 23 considerations: "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement." *In re Zynga Inc., Sec. Litig.* 2015 WL 6471171, at *8 (N.D. Cal. Oct. 27, 2015).

CLASS REPRESENTATIVES' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:19-CV-06361-RS

11

**A.    The Class Has Been Adequately Represented**

As an initial matter, Class Representatives have vigorously litigated the claims in the Action and the Settlement was achieved only after diligent arm's-length mediated negotiations between counsel with considerable knowledge and expertise in the field of federal securities law. Class Representatives and Class Counsel developed a deep understanding of the facts of the case and merits of the claims by, *inter alia*: (1) conducting the extensive investigation detailed above; (2) drafting two detailed amended complaints; (3) defeating two extensive motions to dismiss; (4) obtaining class certification; (5) researching, drafting, propounding, and responding to document requests, interrogatories, and requests for admission; (6) reviewing approximately 107,196 documents (893,997 pages) produced by Uber Defendants, 31,379 produced by third parties, and 86,280 produced by Underwriter Defendants; (7) reviewing at least 27 privilege logs, containing at least 50,442 entries; (8) serving at least 39 subpoenas and at least 140 deposition notices (including amended notices); (9) taking 32 and defending 14 depositions; (11) litigating numerous discovery disputes; (12) consulting with experts in the fields of due diligence, negative causation and damages, and tracing; (13) serving five expert reports; and (14) participating in pre-mediation conferences, exchanging extensive mediation briefing, and participating in two mediations.

Lead Plaintiff is a sophisticated institutional investor and a governmental defined benefit plan with a Retirement Board that serves members and retirees of all City of Boston departments, the Boston Planning & Development Agency, the Boston Housing Authority, the Public Health Commission, and the Boston Water and Sewer Commission. *See* ECF No. 182-1, Ex. 4 at 2. Class Representatives played active roles in the settlement discussions through counsel and with a representative for BRS attending the mediation session on March 28, 2024. Moreover, through counsel, the Class Representatives participated in the ongoing negotiations after the final mediation failed to achieve a settlement. With an informed understanding, Class Representatives agreed to the Settlement.

Further, throughout the Action, Class Representatives had the benefit of the advice of knowledgeable counsel well-versed in securities class actions. Labaton is highly experienced and

Class Representatives' Unopposed Motion for Preliminary Approval of Proposed Class Action Settlement and Memorandum of Points and Authorities in Support Thereof
Case No. 3:19-cv-06361-RS

12

has a long and successful track record in such cases. S*ee* Ex. 2 (firm resume). Labaton has served as lead counsel in a number of high-profile matters. *See, e.g.*, *In re Am. Int'l Grp., Inc. Sec. Litig.*, No. 04-cv-08141 (S.D.N.Y.) ($1 billion recovery); *In re Countrywide Sec. Litig.*, No. 07-cv-05295 (C.D. Cal.) ($600 million recovery); and *In re Schering-Plough Corp. / ENHANCE Sec. Litig.*, No. 08-cv-00397 (D.N.J.) (settlement of $473 million).

Courts give considerable weight to the opinion of experienced and informed counsel. *See, e.g.*, *In re NVIDIA Corp. Derivative Litig.*, 2008 WL 5382544, at *4 (N.D. Cal. Dec. 22, 2008) ("[S]ignificant weight should be attributed to counsel's belief that settlement is in the best interest of those affected by the settlement.").

## B.      The Settlement Resulted from Good Faith, Arm's-Length Negotiations

Rule 23(e)(2)(B) asks whether "the [settlement] proposal was negotiated at arm's length." Courts have long recognized an initial presumption that a proposed settlement is fair and reasonable when it is the "product of arms-length negotiations." *In re Portal Software, Inc. Sec. Litig.*, 2007 WL 1991529, at *6 (N.D. Cal. June 30, 2007); *In re Netflix Privacy Litig.*, 2013 WL 1120801, at *4 (N.D. Cal. Mar. 18, 2013) (noting that courts afford "a presumption of fairness and reasonableness" to settlements that were "the product of non-collusive, arms' length negotiations conducted by capable and experienced counsel"). Courts have also reasoned that "one important factor [to consider] is that the parties reached the settlement … with a third-party mediator." *In re Banc of Caf. Sec. Litig.*, 2019 WL 6605884, at *2 (C.D. Cal. Dec. 4, 2019).

As noted above, the Settlement was achieved only after two mediations, which included the exchange of robust mediation materials and pre-mediation conferences. During the Mediation, the Uber Defendants, represented by a well-regarded law firm with deep expertise in defense of securities class actions, vigorously asserted arguments against liability and damages. With Class Representatives and the Uber Defendants still meaningfully apart in their respective settlement positions after the final mediation, they agreed to continue negotiations through the Mediator. On April 22, 2024, after several separate one-on-one discussions between the Mediator and counsel for Class Representatives, on the one hand, and counsel for the Uber Defendants, on the other

1   hand, the Mediator issued a $200 million mediator's proposal to resolve all claims subject to the

2   negotiation of non-financial terms for the Settlement and Court approval, which Class

3   Representatives and the Uber Defendants accepted on April 23, 2024.[10]

4       As courts in this District have found, "[t]he assistance of an experienced mediator in the

5   settlement process confirms that the settlement is non-collusive." *Satchell v. Fed. Express Corp.*,

6   2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007); *see also Chavez v. Converse, Inc.*, 2020 WL

7   4047863, at *2 (N.D. Cal. July 8, 2020). The negotiations were at all times adversarial and at

8   arm's-length, and have produced a result that is in the best interests of the Class.

9       **C.**    **The Relief Provided by the Settlement Is Adequate**

10       **1.**    **Many Challenges to Obtaining a Recovery Remained**

11       Although Class Representatives and Class Counsel believe that the claims asserted against

12   Defendants are strong, they recognize the significant challenges and risks they would face moving

13   forward, as well as the expense and length of continued litigation through summary judgment

14   motions, trial, and likely appeals.

15       Regarding allegations of false and misleading statements and omissions in the Offering

16   Documents, Defendants would have likely continued to argue that the disclosures within the

17   Offering Documents, and discovery, showed that there were no false and misleading statements

18   or omissions. Defendants also would have argued that, aside from relevant disclosures in the

19   Offering Documents, relevant information and reports about Uber also existed in the public

20   domain. For example, pertaining to passenger safety, Defendants would likely argue that Uber

21   released a passenger safety report, as the Offering Documents indicated Uber would and which

22   Class Representatives did not challenge, and that no evidence of purposeful delay to release the

23   report until after the IPO existed. Regarding slowing growth and losses, Defendants would likely

24   argue that this issue was discussed by analysts and at road shows prior to the IPO, and metrics

25   were published for years leading up to the IPO and disclosed in the Offering Documents.

26

27   _____

    [10] A mediation was also held in March 2021 with counsel for Lead Plaintiff, the *Messinger*
Plaintiffs and the Uber Defendants. Prior to this mediation, the Uber Defendants produced 8,600

28   pages of documents, the Parties had separate and joint pre-mediation calls with the Mediator and
exchanged thorough mediation statements.

1    Regarding driver classification, Defendants would likely argue that Uber's classification of
2    drivers as independent contractors was widely known and the subject of prior litigation. These
3    facts, if accepted at trial, could also significantly assist Defendants in establishing a knowledge
4    defense to Class Representatives' claims.

5            Additionally, Defendants would have likely continued to argue that certain allegations and
6    theories, which were the focus of subsequent discovery sought by Plaintiffs, were not explicitly
7    pled in the Second Amended Complaint. Defendants would have likely moved for dismissal and
8    preclusion based on this issue, creating uncertainty as to whether Class Representatives would be
9    allowed to proceed with such allegations. For example, regarding segment reporting, Defendants
10   would likely argue that Class Representatives never moved to amend the Second Amended
11   Complaint to include segment reporting as a pled allegation. If the Court were to agree with
12   Defendants' argument, it is possible that Class Representatives could no longer proceed with their
13   theory of falsity based on segment reporting.

14           Each of the Individual Defendants and the Underwriter Defendants also have asserted a
15   due diligence defense as to their liability. While Class Representatives would have worked
16   extensively with their due diligence experts with a view towards presenting compelling arguments
17   to the jury to show that these Defendants were negligent in connection with the IPO, these
18   Defendants would also have put forth well-qualified experts of their own showing that they
19   conducted a reasonable investigation and had reasonable grounds for their belief in the Offering
20   Documents' truthfulness and completeness.

21           Moreover, Defendants would attempt to inform the trier of fact that Uber is now a
22   profitable company with a drastically improved reputation and a new CEO who has in fact created
23   a "new day at Uber." This could potentially affect jurors' views of Uber and the allegations.

24           Further, while the Class Representatives' consulting damages expert estimated that
25   statutory damages were approximately $1.3 billion after accounting for various factors, including
26   residual price declines in Uber stock, Defendants and their experts would have also made several
27   credible arguments that any recoverable damages should be much lower, if not zero. If some of

28

1    these arguments were successful, recoverable damages, according to Class Representative's

2    consulting damages expert, could likely be as low as $424 million. If Defendants' arguments were

3    further or fully accepted, Defendants would claim that damages and the size of the Class would

4    be significantly reduced, potentially to zero. This includes Defendants' further argument that in

5    light of the U.S. Supreme Court's recent decision in *Slack Technologies, LLC v. Pirani*, 598 U.S.

6    759 (2023), which requires that Section 11 plaintiffs must plead and prove that they purchased

7    securities traceable to the registration statement at issue, at minimum no potential Class Member

8    after May 14, 2019 (the date the IPO shares were distributed) could prove tracing. Defendants

9    would likely argue that on that date the IPO shares were deposited with the DTC and they were

10   comingled with non-IPO shares, thus, making tracing impossible.[11]

11        Even without considering Defendants' potential tracing arguments, the Settlement

12   recovers at least 15% of the potential $1.3 billion in damages.  And it recovers 47% of the Class

13   Representatives' experts' likely lower bound of estimated recoverable damages ($424 million).

14   This recovery falls well within, if not well above, the range of reasonableness the courts regularly

15   approve in similar circumstances. *See, e.g.*, *In re Aqua Metals, Inc. Sec. Litig.*, 2002 WL 612804,

16   at *6 (N.D. Cal. Mar. 3, 2022) (approving settlement that recovers approximately 7.3% of likely

17   recoverable damages); *In re Omnivision Techs., Inc.,* 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008)

18   (finding settlement yielding 6% of potential damages after deducting fees and costs was "higher

19   than the median percentage of investor losses recovered in recent shareholder class action

20   settlements"). Notably, the $200 million recovery is almost 15 times greater than the median

21   recovery of $13.5 million in securities class actions settled in 2023 that, like this Action, alleged

22   only Securities Act claims. *See* Laarni T. Bulan and Laura E. Simmons, *Securities Class Action

23   Settlements – 2023 Review and Analysis* (Cornerstone Research 2024), Ex. 3 at 8. In fact, the

24   median settlement for class actions which allege only Securities Act claims between 2014 and

25   2023 has only been $9.9 million. *Id*. Finally, based on Class Counsel's research, the recovery in

26

27   _____

    [11] Damages under Section 12 could also be limited to a narrow class because Defendants
would argue that Section 12 liability does not attach for sales in the aftermarket and damages are

28   limited to only those investors who can prove they purchased their shares from or were solicited
by a specific defendant.

this Action is the second largest settlement of an IPO-related securities class action not alleging fraud claims under the Securities Exchange Act of 1934.[12]

Lastly, the Settlement represents a prompt and substantial tangible recovery, without the considerable risk, expense, and delay of completing expert discovery, summary judgment, trial, and post-trial litigation. *See, e.g.*, *In re LinkedIn User Priv. Litig.*, 309 F.R.D. 573, 587 (N.D. Cal. 2015) ("Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results."). At each of these stages, there would be significant risks attendant to the Action's continued prosecution, and there was no guarantee that further litigation would have resulted in a higher recovery, or any recovery at all.

Accordingly, in light of the substantial risks and expense of continued litigation, and compared to the certain and prompt recovery of $200,000,000, the Settlement is an excellent result that is well within the range of reasonableness.

### 2.      Effective Process for Distributing Relief to the Class

At the final Settlement Hearing, Class Representatives will ask the Court to approve the proposed Plan of Allocation for distributing the proceeds of the Settlement to eligible Claimants. The Plan of Allocation, which is reported in the Settlement Notice, was drafted with the assistance of Class Representatives' damages expert, is consistent with the statutory measure of damages under Section 11 of the Securities Act, and is a fair, reasonable, and adequate method for allocating the proceeds of the Settlement amongst eligible Claimants. *See* Settlement Notice at ¶¶ 61-79.

Specifically, the Plan of Allocation is designed to equitably distribute the Settlement proceeds among members of the Class who were allegedly injured by Defendants' alleged conduct and who submit valid Claim Forms. The Plan provides for the calculation of a "Recognized Loss Amount" for each share of Uber's publicly traded common stock purchased or acquired during the Traceability Period from May 10, 2019 through November 5, 2019, both dates

---

[12] Based on Class Counsel's research, the largest settlement of only Securities Act claims in connection with an IPO was in *Schuh v. HCA Holdings, Inc.*, No. 11-cv-1033 (M.D. Tenn), and only $15 million larger.

1   inclusive, that is listed in the Claim Form and for which adequate documentation is provided.

2       The Claims Administrator will calculate Claimants' Recognized Claims using the

3   transactional information provided by Claimants in their Claim Forms, which can be mailed to

4   the Claims Administrator, submitted online using the Settlement website, or, for large investors

5   with hundreds of transactions, via e-mail to the Claims Administrator's electronic filing team.

6   Because most securities are held in "street name" by the brokers that buy them on behalf of clients,

7   the Claims Administrator, Class Counsel, and Defendants do not have Class Members'

8   transactional data and a claims process is required. Because the Settlement does not recover 100%

9   of alleged damages, the Claims Administrator will determine each Authorized Claimant's *pro*

10   *rata* share of the Net Settlement Fund based upon each Authorized Claimant's total "Recognized

11   Claim" compared to the aggregate Recognized Claims of all Authorized Claimants.[13]

12       Once the Claims Administrator has processed all submitted claims, notified Claimants of

13   deficiencies or ineligibility, processed responses, and made claim determinations, distributions

14   will be made to Authorized Claimants in the form of checks and wire transfers. After an initial

15   distribution of the Net Settlement Fund, if there is any balance remaining in the Net Settlement

16   Fund (whether by reason of tax refunds, uncashed checks or otherwise), then, after the Claims

17   Administrator has made reasonable and diligent efforts to have Class Members who are entitled

18   to participate in the distribution of the Net Settlement Fund cash their distributions, any balance

19   remaining in the Net Settlement Fund, at least six (6) months after the initial distribution of such

20   funds, shall be re-distributed in an economical manner to Class Members who have cashed their

21   initial distributions, after payment of any unpaid costs or fees incurred in administering the Net

22   Settlement Fund for such re-distribution and Taxes. Any balance that still remains in the Net

23   Settlement Fund after re-distribution(s), which is not feasible or economical to reallocate, after

24   payment of Notice and Administration Expenses, Taxes, and unpaid attorneys' fees and expenses,

25

26

27       [13] Because eligible Claimants will be receiving their *pro rata* share of the Net Settlement Fund
and their individual recoveries will depend on the value of all other eligible Claimants' recoveries,

28   which will change on a daily basis as claims are processed, it would not be feasible to have the
website provide estimates of claim amounts for each Class Member. *See* Guidance ¶ 3.

shall be contributed to CII, or such other *cy pres* recipient approved by the Court.[14] *See* Stipulation at ¶ 24. Neither the Parties nor their counsel have a relationship with CII. *See* Guidance ¶ 8.

### 3.      Anticipated Legal Fees and Expenses

Class Counsel will request an award of attorneys' fees of no more than 29% of the Settlement Fund and Litigation Expenses of no more than $3,215,000, plus accrued interest, which may include an application pursuant to the PSLRA for the reasonable costs and expenses (including lost wages) of Plaintiffs directly related to their representation of the Class in an aggregate amount not to exceed $175,000. *See* Guidance ¶ 6. The PSLRA provides that such an award may be made to "any representative party serving on behalf of a class." 15 U.S.C. § 77z-1(a)(4).

Plaintiffs have been closely involved throughout the litigation and settlement of the Action and their requests will be based on the amount of time they dedicated to the case and the Class, which will be detailed in declarations submitted with Class Counsel's motion for attorneys' fees and expenses, to be filed thirty-five (35) days before the Settlement Hearing. *See* Guidance ¶ 7.

A fee request of no more than 29%, which is slightly above the Ninth Circuit benchmark, is warranted here in light of the tremendous result. Indeed, the Ninth Circuit has repeatedly held that a "district court may adjust the benchmark when special circumstances indicate a higher or lower percentage would be appropriate," *In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (affirming 33 1/3% fee), and "in most common fund cases, the award exceeds [the] benchmark." *Omnivision*, 559 F. Supp. 2d at 1047; *see also Destefano v. Zynga*, 2016 WL 537946, at *18, 21 (N. D. Cal. Feb. 11, 2016) ("in many securities class actions, the award has exceeded the 25 percent benchmark"); *In re Heritage Bond Litig.*, 2005 WL 1594403, at *11 (C.D. Cal. June 10, 2005) (awarding 33 1/3% fee given exceptional 36% recovery for the class;

---

[14] CII is a non-profit, non-partisan association of benefit funds, foundations, and endowments that seeks to educate its members, policymakers, and the public about corporate governance, shareowner rights, and related investment issues. *See, e.g.*, *Vancouver Alumni Asset Holdings Inc. v. Daimler AG*, No. 16-cv-02942, Dkt. 346 (C.D. Cal. Mar. 13, 2023) (designating CII as *cy pres* recipient in securities class action); *In re Wells Fargo Sec. Litig.*, 991 F.Supp. 1193, 1198 (N.D. Cal. 1998) (recognizing CII as a potential proper recipient of *cy pres* distributions in securities class actions).

counsel's effort, experience and skill during three years of contentious litigation; quality of opposition; complexity of securities issues; and contingency risk). Guidance ¶ 6.

A 29% fee would amount to $58,000,000 which would provide a "multiplier" on Plaintiffs' Counsel's "lodestar" in the case of 1.77. The basis of Class Counsel's fee and expense request will be detailed in its upcoming motion requesting fees and expenses however, to date, Plaintiffs' Counsel has spent approximately 53,257 hours litigating the case with a lodestar value of approximately $32,698,405 million.[15] *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050-52 (9th Cir. 2002) (affirming 28% fee award representing 3.65 multiplier and noting that multipliers commonly range from 1.0 to 4.0); Guidance ¶ 6.

Plaintiffs' Counsel's maximum expense figure of $3,215,000 is based upon total-to-date expenses, a $175,000 maximum aggregate PSLRA reimbursement request for Plaintiffs, plus a "cushion" to cover incurred expenses that have not yet been invoiced or expenses that will be incurred between now and Class Counsel's motion for fees and expenses:

| Category | Amount |
|---|---|
| Experts/Professional Fees | $2,148,968 |
| Mediation Fees | $36,344 |
| Transcript Fees | $219,896 |
| Long-Distance Telephone/Conference Calling | $2,517 |
| Overnight Delivery | $7,422 |
| Electronic Research | $98,826 |
| Electronic Discovery | $193,690 |
| Work-Related Transportation/ Meals/Hotels | $230,996 |
| Filing & Service Fees | $45,536 |
| Duplicating | $43,766 |
| Miscellaneous | $12,039 |
| **TOTAL** | **$3,040,000** |

**D.    Class Members Are Treated Equitably Relative to One Another**

The Settlement does not improperly grant preferential treatment to either Plaintiffs or any segment of the Class. Rather, all members of the Class, including Plaintiffs, will receive a distribution from the Net Settlement Fund pursuant to the Plan of Allocation approved by the

---

[15] Plaintiffs' Counsel are in the process of reviewing their time and expenses and additional time will be spent between now and the filing of the fee and expense motion. Accordingly, the final figures presented in Class Counsel's motion requesting fees and expenses may differ.

CLASS REPRESENTATIVES' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:19-cv-06361-RS

20

Court.[16] All Class Members that were allegedly harmed as a result of the alleged violations, and that submit an eligible claim pursuant to the Plan of Allocation, will receive their *pro rata* share of the Net Settlement Fund based on their "Recognized Claim" under the plan. *See generally* Settlement Notice at ¶¶ 61-79.

## II.   THE PROPOSED NOTICE PROGRAM SATISFIES RULE 23, DUE PROCESS, PSLRA REQUIREMENTS, AND THE COURT'S GUIDANCE

### A.   Notice Procedures

Rule 23(c)(2)(B) requires notice of the pendency and settlement of a class action to be "the best notice that is practicable under the circumstances." It must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.,* 339 U.S. 306, 314 (1950). Notice must describe "the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *See, e.g.*, *Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012).

Class Counsel proposes to provide Class Members notice by: (i) individual first-class mailing of the Settlement Postcard to all Class Members who can reasonably be identified and located, using mailing records obtained in connection with the Class Notice as well as, to the extent not already provided, information provided by third party banks, brokers, and other nominees about their customers who may have eligible purchases; (ii) emailing of the Settlement Postcard (to the extent emails are provided to the Claims Administrator); (iii) publication of the Summary Notice in *The Wall Street Journal,* as well as dissemination of the Summary Notice on the internet using *PR Newswire*; and (iv) posting documents on the Claims Administrator's website, from which copies of the Settlement Notice and Claim Form can be downloaded and claims can be completed using an online portal. *See* Exhibits A-1 to A-4 to the proposed

---

[16] Plaintiffs request for reimbursement of their reasonable costs and expenses directly related to their participation in the Action, noted above, would not constitute preferential treatment. *See* 15 U.S.C. §15 U.S.C. § 77z-1(a)(4) (reimbursement of plaintiffs' costs explicitly contemplated by the PSLRA in addition to receiving their *pro rata* recovery).

CLASS REPRESENTATIVES' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:19-CV-06361-RS

21

Preliminary Approval Order. The Claims Administrator will also mail the Settlement Notice and Claim Form upon request. The Postcard Notice will provide important information regarding the Settlement and the rights of Settlement Class Members in connection therewith, and will direct recipients to the Claims Administrator's website for more detailed information. The Court previously approved mailing a postcard in connection with Class Notice. The notices, Claim Form, and other Settlement-related documents will also be accessible on the case website and Class Counsel's website.

Notice to the Class in this form and manner, as set forth in the proposed Preliminary Approval Order, will fulfill the requirements of due process, the Federal Rules of Civil Procedure, the PSLRA, and the Northern District's Guidance ¶ 3. *See also* Declaration of Adam D. Walter Regarding Notice Plan ("Notice Decl."), submitted herewith as Ex. 4 to the Fatale Declaration. Indeed, this proposed notice program is the "gold standard" in securities cases. *See In re HP Inc. Sec. Litig.*, 2015 WL 4477936, at *2 (N.D. Cal. July 20, 2015) (finding that similar procedures satisfy Rule 23 and the PSLRA, and constitute the best notice practicable).

The Claims Administrator has a robust mailing list from the notice of pendency program, where more than 550,000 postcards were mailed. By combining this data with supplemental name and address information for potential Class Members obtained from third-party banks, brokers, and nominees, if any, the Claims Administrator will be able to reach potential Class Members by individual notice. Such third-parties are also required to provide email addresses to the Claims Administrator to the extent they are available and have not previously been provided. *See* Preliminary Approval Order, ¶ 7. Given the availability of individual notice, as supplemented by dissemination of the Summary Notice, Class Counsel is not recommending the use of social media outreach.

In addition, the Parties have conferred and while they do not believe a notice under the Class Action Fairness Act of 2005, 28 U.S.C. § 1715 (2005) ("CAFA"), is required in this Action, no later than ten (10) calendar days following the filing of the Stipulation with the Court, Defendants will serve a CAFA notice. The Parties are not aware of any other notice requirements

CLASS REPRESENTATIVES' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:19-CV-06361-RS

22

1    applicable to the Action. *See* Guidance ¶10.

2        **B.    Form and Substance of Proposed Settlement Notices**

3        The form and substance of the notice program are also appropriate and reasonable. The

4    notices are written in plain language and provide the relevant information and answers to most

5    questions that Class Members will have. Consistent with Rules 23(c)(2)(B) and 23(e)(1), the forms

6    of notice collectively describe, among other things, the nature of the Action; the definition of the

7    Class; the terms of the Settlement; the considerations that caused Class Representatives to

8    conclude that the Settlement is fair, adequate, and reasonable; the maximum attorneys' fees and

9    expenses that may be sought; the procedure for opting into the Class; the procedure for objecting;

10   the procedures for submitting claims; the proposed Plan of Allocation; and the date and place of

11   the Settlement Hearing.

12       The long-form Settlement Notice also satisfies the PSLRA's separate disclosure

13   requirements by, *inter alia*, stating: (i) the amount of the Settlement determined in the aggregate

14   and on an average per share basis; (ii) that the Parties do not agree on the amount of damages that

15   would be recoverable in the event Class Representatives prevailed; (iii) that Class Counsel intends

16   to make an application for an award of attorneys' fees and expenses (including the amount of

17   such fees and expenses determined on an average per share basis), and a brief explanation of the

18   fees and expenses sought; (iv) the name, telephone number, and address of a representative of

19   Class Counsel who will be available to answer questions concerning any matter contained in the

20   Notice; and (v) the reasons why the Parties are proposing the Settlement. *See* 15 U.S.C. § 77z-1.

21       The Settlement Notice also satisfies the District's Guidance in that it includes, among

22   other things, (1) "contact information for class counsel to answer questions"; (2) the address for

23   the Settlement website, which will provide deadlines, key information, links to relevant

24   documents, and an online claim portal; (3) "instructions on how to access the case docket;" and

25   (4) information about the Settlement Hearing, including reminders to check the Settlement

26   Website and the Court's websites for any changes to the hearing date/time. Guidance ¶ 3. The

27   Settlement Notice also provides the procedures and deadlines for submitting Claim Forms;

28

CLASS REPRESENTATIVES' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION
SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:19-CV-06361-RS

23

objections to any aspect of the Settlement, the Plan of Allocation, or the Fee and Expense Application; and for opting back into the Class.

### C.    Claims Administration

Class Representatives request that the Court appoint A.B. Data as the Claims Administrator to provide all notices approved by the Court, to process Claim Forms, and to administer the Settlement. *See* Guidance ¶ 2(a). A.B. Data was appointed in connection with the Class Notice and is a recognized leader in legal administration services for class action settlements and legal noticing programs and has successfully administered hundreds of complex securities class action settlements. *See* Notice Decl., Ex. A (A.B. Data CV). A.B. Data has over 40 years of experience in class action administration in securities class action cases, as well as antitrust, discrimination, financial services, product liability, privacy, and ERISA class action. The Notice Declaration also includes a discussion of A.B. Data's comprehensive data security procedures. *See* Notice Decl., Ex. B; Guidance ¶ 2(b).

In connection with the Class Notice, Class Counsel selected A.B. Data after a competitive bidding process in which three firms submitted cost proposals and A.B. Data had the most competitive proposal. Fatale Decl. at ¶ 3; Guidance ¶ 2(a). All of the cost proposals received involved comparable methods of providing notice and claims processing, including use of first-class mail and identification of potential Class Members through third-party brokers and nominee owners. *Id*. Class Counsel has engaged A.B. Data to serve as the administrator in ten (10) securities cases other than this Action in the past two years (as compared to a total of 27 such new engagements during the same period). *Id*. at ¶ 4. Class Counsel has found A.B. Data to be a very skilled and capable administrator for these types of cases, with competitive pricing compared to similar administration firms. *Id.*

A.B. Data estimates that 580,000 Settlement Postcards will be mailed, and that approximately 175,000 claims will be received, based on an estimated 30% response rate. *See* Notice Decl. ¶ 20; *see also* Guidance ¶ 1(f).[17] Summary information for three recent cases in which

---

[17] The estimated number of Settlement Postcards is based on past matters of similar size and

CLASS REPRESENTATIVES' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF CASE NO. 3:19-CV-06361-RS

24

1   Labaton acted as lead counsel or co-lead counsel is attached to the Notice Declaration as Exhibit

2   C. These cases were selected because they are either recent Section 11 cases or comparable in

3   size to the proposed Settlement, and were administered by A.B. Data. *See* Guidance ¶11.

4         With respect to Notice and Administration Expenses, A.B. Data currently estimates that

5   its fees and expenses in connection with the Settlement may be in the range of $515,000 to

6   $665,000.[18] Notice Decl. ¶ 29; Guidance ¶ 2(b). This estimate assumes, among other things, that

7   less than approximately 580,000 Settlement Postcards will be mailed and that less than 175,000

8   claims will be received. In the event that actual experience differs from these assumptions, the

9   administrative fees and expenses incurred in connection with this Settlement will differ from this

10  estimate. Notice and Administration Expenses will be paid from the Settlement Fund. *See*

11  Stipulation ¶ 19; Guidance ¶2(b).

12  **CONCLUSION**

13        Class Representatives respectfully request that the Court grant the Motion.

14  Dated: July 19, 2024                    **LABATON KELLER SUCHAROW LLP**

15

16                        By:      /s/ *Alfred L. Fatale III*

17                              Jonathan Gardner (*pro hac vice*)

                            Alfred L. Fatale III (pro hac vice)

18                              Joseph N. Cotilletta (*pro hac vice*)

                            Beth C. Khinchuk (*pro hac vice*)

19                              140 Broadway

                            New York, NY 10005

20                              Telephone: (212) 907-0700

21                              jgardner@labaton.com

                            afatale@labaton.com

22                              jcotilletta@labaton.com

                            bkhinchuk@labaton.com

23                              *Attorneys for Plaintiffs and the Class*

24  the Class Notice program. Notice Decl. ¶ 20. Class sizes in cases involving publicly traded

25  securities remain rough estimates until all identified brokers and nominees have responded with completed lists of beneficial shareholder counts.

     The conversion of approximately 30% of notices to claim forms is a reasonable assumption

26  in securities cases, although this does not mean that 70% of the Class will not recover. In fact, institutional investors may submit only a few hundred claims, however those claims typically

27  represent thousands of transactions and the majority of the damages suffered by a class.

    [18] This estimate is less than the costs of other comparable administrations that Class Counsel

28  has overseen. *See also* Notice Decl. Ex. C (*Facebook* and *Fannie Mae*).

LEVI & KORSINSKY LLP
Gregory M. Nespole (*pro hac vice*)
Daniel Tepper (*pro hac vice*)
Correy A. Suk (*pro hac vice*)
55 Broadway, 10th Floor
New York, New York 10006
Telephone: (212) 363-7500
Facsimile: (212) 363-1294
Email:  gnespole@zlk.com
             dtepper@zlk.com
             csuk@zlk.com

*-and-*

Adam M. Apton (SBN 316506)
75 Broadway, Suite 202
San Francisco, California 94111
Telephone: (415) 373-1671
Facsimile: (415) 484-1294
Email:  aapton@zlk.com

*Liaison Counsel for Lead Plaintiff Boston
Retirement System and the Class*

SCOTT+SCOTT ATTORNEYS AT LAW
LLP
John T. Jasnoch (SBN 281605)
600 W. Broadway, Suite 3300
San Diego, California 82101
Telephone: (619) 233-4565
Facsimile: (619) 233-0508
Email:  jjasnoch@scott-scott.com

*-and-*

David R. Scott
156 South Main Street P.O. Box 192
Colchester, Connecticut 06415
Telephone: (860) 537-5537
Facsimile: (860) 537-4432
Email:  david.scott@scott-scott.com

*-and-*

William C. Fredericks
The Helmsley Building
230 Park Avenue, 17th Floor
New York, New York 10169
Telephone: (212) 223-6444
Facsimile: (212) 223-6334
Email:  wfredericks@scott-scott.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ROBBINS GELLER RUDMAN
  & DOWD LLP
Thomas Egler
Nathan Lindell
One Montgomery Street, Suite 1800
San Francisco, California, 94104
Telephone: (619) 231-1058
Facsimile: (619) 231-7423
Email:  tegler@rgrdlaw.com
        nlindell@rgrdlaw.com

COTCHETT, PITRE & MCCARTHY, LLP
Mark C. Molumphy (SBN 168009)
Tyson Redenbarger (SBN 294424)
Gia Jung (SBN 340160)
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, California 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
Email:  mmolumphy@cpmlegal.com
        tredenbarger@cpmlegal.com
        jpeng@cpmlegal.com

*Counsel for Plaintiffs David Messinger,
Salvatore Toronto on behalf of Ellie Marie
Toronto ESA, Joseph Cianci, and Irving S. and
Judith Braun*

CLASS REPRESENTATIVES' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION
SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:19-CV-06361-RS

27

1

**APPENDIX A**

2

**PROCEDURAL GUIDANCE FOR CLASS ACTION SETTLEMENTS**

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

| **PRELIMINARY APPROVAL** | **Where Guidance is Addressed** |
|---|---|
| **1. Information About the Settlement** | |
| (a) Any differences between the settlement class and the class proposed in the operative complaint (or, if a class has been certified, the certified class) and an explanation as to why the differences are appropriate. | NA; Stipulation ¶ 1(f) |
| (b) Any differences between the claims to be released and the claims in the operative complaint (or, if a class has been certified, the claims certified for class treatment) and an explanation as to why the differences are appropriate. | Motion at 7:7-8:26; Stipulation ¶¶ 1(jj), 1(ll) |
| (c) The class recovery under the settlement (including details about and the value of injunctive relief), the potential class recovery if plaintiffs had fully prevailed on each of their claims, claim by claim, and a justification of the discount applied to the claims. | Motion at 6:23-7:1, § I.C.1. |
| (d) Any other cases that will be affected by the settlement, an explanation of what claims will be released in those cases if the settlement is approved, the class definitions in those cases, their procedural posture, whether plaintiffs' counsel in those cases participated in the settlement negotiations, a brief history of plaintiffs' counsel's discussions with counsel for plaintiffs in those other cases before and during the settlement negotiations, an explanation of the level of coordination between the two groups of plaintiffs' counsel, and an explanation of the significance of those factors on settlement approval. If there are no such cases, counsel should so state. | NA; Motion at 8:15-26 |
| (e) The proposed allocation plan for the settlement fund. | Motion at § I.C.2.; Settlement Notice ¶¶ 61-79 (Preliminary Approval Order Ex. A-1) |
| (f) If there is a claim form, an estimate of the expected claim rate in light of the experience of the selected claims administrator and/or counsel based on comparable settlements, the identity of the examples used for the estimate, and the reason for the selection of those examples. | Motion at 24:24-26 & n.17 |
| (g) In light of Ninth Circuit case law disfavoring reversions, whether and under what circumstances money originally designated for class recovery will revert to any defendant, the expected and potential amount of any such reversion, and an explanation as to why a reversion is appropriate. | NA; Motion at 7:2-6 |

CLASS REPRESENTATIVES' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:19-cv-06361-RS

28

| **PRELIMINARY APPROVAL** | **Where Guidance is Addressed** |
|---|---|
| **2. Settlement Administration** | |
| (a) Identify the proposed settlement administrator, the settlement administrator selection process, how many settlement administrators submitted proposals, what methods of notice and claims payment were proposed, and the lead class counsel's firms' history of engagements with the settlement administration over the last two years. | Motion at § II.C.; Fatale Decl. ¶¶ 3-4 |
| (b) Address the settlement administrator's procedures for securely handling class member data (including technical, administrative, and physical controls; retention; destruction; audits; crisis response; etc.), the settlement administrator's acceptance of responsibility and maintenance of insurance in case of errors, the anticipated administrative costs, the reasonableness of those costs in relation to the value of the settlement, and who will pay the costs. | Motion at 24-25; Notice Decl. ¶¶ 4-7, 27-31, Ex. B |
| **3. Notice** | |
| The parties should ensure that the class notice is easily understandable, in light of the class members' communication patterns, education levels, and language needs. The notice should include the following information: | *See generally* proposed notices (Preliminary Approval Order Exs. A-1 to A-4) |
| (a) Contact information for class counsel to answer questions. | Settlement Notice ¶¶ 7, 60; Summary Notice p. 2-3 (Preliminary Approval Order Ex. A-3) |
| (b) The address for a website, maintained by the claims administrator or class counsel, that lists key deadlines and has links to the notice, a claim form (if any), preliminary approval order, motions for preliminary and final approval and for attorneys' fees, and any other important documents in the case. | *See generally* proposed notices |
| (c) Instructions on how to access the case docket via PACER or in person at any of the court's locations. | Settlement Notice ¶¶ 54, 58 |
| (d) The date and time of the final approval hearing, clearly stating that the date may change without further notice to the class. | Settlement Notice p.2 & ¶¶ 53-54; Summary Notice p. 2 |
| (e) A note to advise class members to check the settlement website or the Court's PACER site to confirm that the date has not been changed. | Settlement Notice p.2 & ¶ 54 |

CLASS REPRESENTATIVES' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:19-CV-06361-RS

29

| PRELIMINARY APPROVAL | Where Guidance is Addressed |
|---|---|
| The parties should explain how the notice distribution plan is effective. Class counsel should consider the following ways to increase notice to class members: identification of potential class members through third-party data sources; use of text messages and social media to provide notice to class members; hiring a marketing specialist; providing a settlement website that estimates claim amounts for each specific class member and updating the website periodically to provide accurate claim amounts based on the number of participating class members; and distributions to class members via direct deposit. | Motion at §§ II.A. & B. |
| The notice distribution plan should rely on U.S. mail, email, and/or social media as appropriate to achieve the best notice that is practicable under the circumstances, consistent with Federal Rule of Civil Procedure 23(c)(2). If U.S. mail is part of notice distribution plan, notice envelope should be designed to enhance the chance that it will be opened. | Motion at § II.A. |
| Inclusion of suggested language in class notices: "This notice summarizes the proposed settlement. For the precise terms of the settlement, please see the settlement agreement available at www.__.com, by contacting class counsel at _____, by accessing the Court docket in this case, for a fee, through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov, or by visiting the office of the Clerk of the Court for the United States District Court for the Northern District of California, [insert appropriate Court location here], between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays.  PLEASE DO NOT TELEPHONE THE COURT OR THE COURT CLERK'S OFFICE TO INQUIRE ABOUT THIS SETTLEMENT OR THE CLAIM PROCESS." | Settlement Notice ¶¶ 58-59 |
| **4. Opt-Outs** | |
| The notice should instruct class members who wish to opt out of the settlement to send a letter, setting forth their name and information needed to be properly identified and to opt out of the settlement, to the settlement administrator and/or the person or entity designated to receive opt outs. It should require only the information needed to opt out of the settlement and no extraneous information or hurdles. The notice should | NA; Motion 5:17-21, 9:5-8 & n.6 |

CLASS REPRESENTATIVES' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:19-CV-06361-RS

30

| PRELIMINARY APPROVAL | Where Guidance is Addressed |
|---|---|
| clearly advise class members of the deadline, methods to opt out, and the consequences of opting out. | |
| **5. Objections** | |
| Objections must comply with Federal Rule of Civil Procedure 23(e)(5). | Settlement Notice ¶¶ 50-52 |
| The notice should instruct class members who wish to object to the settlement to send their written objections only to the court. All objections will be scanned into the electronic case docket, and the parties will receive electronic notices of filings. The notice should make clear that the court can only approve or deny the settlement and cannot change the terms of the settlement. The notice should clearly advise class members of the deadline for submission of any objections. | Settlement Notice ¶¶ 50-52 |
| Below is suggested language for inclusion in class notices: "You can ask the Court to deny approval by filing an objection. You can't ask the Court to order a different settlement; the Court can only approve or reject the settlement. If the Court denies approval, no settlement payments will be sent out and the lawsuit will continue. If that is what you want to happen, you should object. Any objection to the proposed settlement must be in writing. If you file a timely written objection, you may, but are not required to, appear at the Final Approval Hearing, either in person or through your own attorney. If you appear through your own attorney, you are responsible for hiring and paying that attorney. All written objections and supporting papers must (a) clearly identify the case name and number ( _____v. _____, Case No. _____), (b) be submitted to the Court either by filing them electronically or in person at any location of the United States District Court for the Northern District of California or by mailing them to the Class Action Clerk, United States District Court for the Northern District of California, [insert appropriate Court location here], and (c) be filed or postmarked on or before _____ ." | Settlement Notice ¶¶ 50-51 |
| **6. Attorneys' Fees and Costs** | |
| Class Counsel should include information about the fees and costs (including expert fees) they intend to request, their lodestar calculation (including total hours), and resulting multiplier. | Motion at § I.C.3. |
| In a common fund case, the parties should include information about the relationship between the amount of the common fund, the requested fee, and the lodestar. | Motion at § I.C.3. |

CLASS REPRESENTATIVES' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION
SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:19-CV-06361-RS

31

| PRELIMINARY APPROVAL | Where Guidance is Addressed |
|---|---|
| To the extent counsel base their fee request on having obtained injunctive relief and/or other non-monetary relief for the class, counsel should discuss the benefit conferred on the class. | NA |
| **7. Service Awards** | |
| The parties should include information about the service awards they intend to request as well as a summary of the evidence supporting the awards in the motion for preliminary approval. The parties should ensure that neither the size nor any conditions placed on the incentive awards undermine the adequacy of the named plaintiffs or class representatives. In general, unused funds allocated to incentive awards should be distributed to the class pro rata or awarded to cy pres recipients. | Motion at 19:6-10 |
| **8. Cy Pres Awardees** | |
| If the settlement contemplates a cy pres award, the parties should identify their chosen cy pres recipients, if any, and how those recipients are related to the subject matter of the lawsuit and the class members' claims. | Motion at 9:19-10:1, 18:22-19:2; Settlement Notice ¶ 78 |
| The parties should also identify any relationship they or their counsel have with the proposed cy pres recipients. | NA; Motion at 19:2 |
| In general, unused funds allocated to attorneys' fees, service awards, settlement administration costs, and class member payments should be distributed to the class pro rata or awarded to cy pres recipients or to the relevant government authorities. | Motion at 18:22-19:2 |
| **9. Timeline** | |
| The parties should ensure that class members have at least thirty-five days to opt out or object to the settlement and the motion for attorney's fees and costs. | Motion at 10:5-22 |
| **10. Class Action Fairness Act (CAFA) and Similar Requirements** | |
| The parties should address whether CAFA notice is required and, if so, when it will be given. In addition the parties should address substantive compliance with CAFA. | Motion at 22:24-23:1 |
| In addition, the parties should address whether any other required notices to government entities or others have been provided, such as notice to the Labor & Workforce Development Agency (LWDA) pursuant to the Private Attorneys General Act (PAGA). | NA; Motion at 22:27-23:1 |

CLASS REPRESENTATIVES' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:19-CV-06361-RS

32

| PRELIMINARY APPROVAL | Where Guidance is Addressed |
|---|---|
| **11. Comparable Outcomes** | |
| Lead class counsel should provide information about comparable cases, including settlements and litigation outcomes. Lead class counsel should provide the following information for as many as feasible (and at least one) comparable class settlement (i.e., settlements involving the same or similar claims, parties, issues):<br><br>(a) The claims being released, the total settlement fund, the total number of class members, the total number of class members to whom notice was sent, the method(s) of notice, the number and percentage of claim forms submitted, the average recovery per class member or claimant, the amounts distributed to cy pres recipients, the administrative costs, the attorneys' fees and costs, the total exposure if the plaintiffs had prevailed on every claim. | Motion at 24:27-25:3; Notice Decl. Ex. C |
| (b) Where class members are entitled to non-monetary relief, such as discount coupons or debit cards or similar instruments, the number of class members availing themselves of such relief and the aggregate value redeemed by the class members and/or by any assignees or transferees of the class members' interests. | NA |
| (c) Where injunctive and/or other non-monetary relief has been obtained, discuss the benefit conferred on the class. | NA |
| Counsel should summarize this information in easy-to-read charts that allow for quick comparisons with other cases, supported by analysis in the text of the motion. | Notice Decl. Ex. C |
| **12. Electronic Versions** | |
| Electronic versions (Microsoft Word or WordPerfect) of all proposed orders and notices should be submitted to the presiding judge's Proposed Order (PO) email address when filed. Most judges in this district used Microsoft Word, but counsel should check with the individual judge's Courtroom Deputy. | Done |
| **13. Overlapping Cases** | |
| Within one day of filing of the preliminary approval motion, the defendants should serve a copy on counsel for any plaintiffs with pending litigation, whether at the trial court or appellate court level, whether active or stayed, asserting claims on a representative (e.g., class, collective, PAGA, etc.) basis that defendants believe may be released by virtue of the settlement. | NA |

CLASS REPRESENTATIVES' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:19-CV-06361-RS

33

**CERTIFICATE OF SERVICE**

I hereby certify that on July 19, 2024, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List served via ECF on all registered participants only.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July 19, 2024

/s/ *Alfred L. Fatale III*
Alfred L. Fatale III