Jonathan Gardner (admitted *pro hac vice*)
Alfred L. Fatale III (admitted *pro hac vice*)
Joseph N. Cotilletta (admitted *pro hac vice*)
Beth C. Khinchuk (admitted *pro hac vice*)
LABATON KELLER SUCHAROW LLP
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
Email: jgardner@labaton.com
        afatale@labaton.com
        jcotilletta@labaton.com
        bkhinchuk@labaton.com

*Class Counsel for Plaintiffs and the Class*

[*additional counsel listed on signature page*]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| BOSTON RETIREMENT SYSTEM, | Case No.:  3:19-cv-06361-RS |
| Plaintiff, | **CLASS COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND PAYMENT OF EXPENSES AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| v. | |
| UBER TECHNOLOGIES, INC., et al., | |
| Defendants. | Hearing:  December 4, 2024 at 9:30 a.m.<br>Courtroom: No. 3 – 17th Floor<br>Judge:  Hon. Richard Seeborg<br>Filed:  Oct. 4, 2019 |

# TABLE OF CONTENTS

Page

NOTICE OF MOTION.................................................................................................1

STATEMENT OF ISSUES TO BE DECIDED ...........................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ..............................................2

PRELIMINARY STATEMENT ..................................................................................2

ARGUMENT ...............................................................................................................4

I.    CLASS COUNSEL'S REQUEST FOR ATTORNEYS' FEES OF 29% OF THE
      COMMON FUND SHOULD BE APPROVED...................................................4

      A.    Class Counsel Is Entitled to an Award of Attorneys' Fees from the
            Common Fund ...........................................................................................4

      B.    A Reasonable Percentage of the Fund Recovered Is the Appropriate
            Method for Awarding Attorneys' Fees in Common Fund Cases .........5

      C.    The Requested Attorneys' Fees Are Reasonable Under the Percentage
            Method .......................................................................................................6

      D.    Analysis Under the *Vizcaino* Factors Justifies a Fee Award of 29% in this
            Case............................................................................................................7

            1.    The Extraordinary Result Achieved.........................................8

            2.    The Risks of Litigation .............................................................9

            3.    The Skill Required and the Quality of Work ..........................11

            4.    The Contingent Nature of the Fee and the Financial Burden
                  Carried by Counsel ..................................................................12

            5.    Reaction of the Class to Date...................................................14

      E.    A Lodestar Cross-check Confirms that the Requested Fee Would Be
            Reasonable ................................................................................................15

II.   PLAINTIFFS' COUNSEL'S EXPENSES ARE REASONABLE AND WERE
      NECESSARY TO ACHIEVE THE BENEFIT OBTAINED.........................18

III.  PLAINTIFFS' REQUESTS FOR REIMBURSEMENT PURSUANT TO 15
      U.S.C 77z-1(a)(4) ARE REASONABLE .........................................................20

CONCLUSION.........................................................................................................22

CLASS COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND PAYMENT OF EXPENSES
AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:19-CV-06361-RS

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Alphabet, Inc. Sec. Litig.*,
   No. 18-cv-06245, slip op. (N.D. Cal. Sept. 30, 2024) .................................................... 16, 17

*In re Amgen Inc. Sec. Litig.*,
   2016 WL 10571773 (C.D. Cal. Oct. 25, 2016) ............................................................... 15, 21

*Andrews v. Plains All Am, Pipeline L.P.*,
   2022 WL 4453864 (C.D. Cal. Sept. 20, 2022) ..................................................................... 6, 8

*Anixter v. Home-Stake Prod. Co.*,
   77 F.3d 1215 (10th Cir. 1996) ................................................................................................ 14

*In re Apollo Grp. Inc. Sec. Litig.*,
   2012 WL 1378677 (D. Ariz. Apr. 20, 2012) ........................................................................... 7

*In re Apple Inc. Device Performance Litig.*,
   2021 WL 1022866 (N.D. Cal. Mar. 17, 2021) ......................................................................... 5

*In re Apple Inc. Device Performance Litig.*,
   2023 WL 2090981 (N.D. Cal. Feb.17, 2023) ................................................................. *passim*

*Baird v. BlackRock Institutional Tr. Co.*,
   2021 WL 5113030 (N.D. Cal. Nov. 3, 2021) ........................................................................... 5

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
   472 U.S. 299 (1985) .......................................................................................................... 4, 13

*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) ............................................................................................... 5, 6

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980) .................................................................................................................. 4

*In re Capacitors Antitrust Litig.*,
   2017 WL 9613950 ................................................................................................................... 17

*In re Capacitors Antitrust Litig.*,
   2023 WL 2396782 (N.D. Cal. Mar. 6, 2023) ........................................................................... 6

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
   2016 WL 4126533 (N.D. Cal. Aug. 3, 2016) ........................................................................... 7

*Cheng Jianghen v. Rentech, Inc.*,
   2019 WL 5173771 (C.D. Cal. Oct. 10, 2019) .......................................................................... 9

Class Counsel's Motion for an Award of Attorneys' Fees and Payment of Expenses
and Memorandum of Points and Authorities in Support Thereof
Case No. 3:19-cv-06361-RS

ii

*Destefano v. Zynga Inc.*,
   2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ........................................................ 5, 9, 11, 13

*EK Vathana v. Everbank*,
   2016 WL 3951334 (N.D. Cal. July 20, 2016) (J. Seeborg) ........................................ 6

*In re Equity Funding Corp. Sec. Litig.*,
   438 F. Supp. 1303 (C.D. Cal. 1977) ........................................................................ 12

*In re Extreme Networks, Inc. Sec. Litig.*,
   2019 WL 3290770 (N.D. Cal. July 22, 2019) ......................................................... 15

*In re Facebook Biometric Info. Priv. Litig.*,
   522 F. Supp. 3d 617 (N.D. Cal. 2021), *aff'd*, 2022 WL 822923 (9th Cir. Mar.
   17, 2022) .................................................................................................................. 18

*Glass v. UBS Fin. Servs. Inc.*,
   331 F. App'x. 452 (9th Cir. 2009) ............................................................................ 5

*Glickenhaus & Co. v. Household Int'l, Inc.*,
   787 F.3d 408 (7th Cir. 2015) ................................................................................... 13

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) .................................................................................. 8

*Harris v. Marhoefer*,
   24 F.3d 16 (9th Cir. 1994) ....................................................................................... 18

*Hatamian v. Advanced Micro Devices, Inc.*,
   Case No. 14-cv-00226-YGR (N.D. Cal. Mar. 2, 2018) ........................................... 21

*Hefler v. Wells Fargo & Co.*,
   2018 WL 6619983 (N.D. Cal. Dec. 18, 2018), *aff'd sub nom*, *Hefler v. Pekoc*,
   802 F. App'x. 285 (9th Cir. 2020) ....................................................................... 8, 17

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) .................................................................................................. 8

*In re Heritage Bond Litig.*,
   2005 WL 1594389 (C.D. Cal. June 10, 2005) ........................................... 11, 12, 14

*Hicks v. Stanley*,
   2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ......................................................... 21

*In re Immune Response Sec. Litig.*,
   497 F. Supp. 2d 1116 (S.D. Cal. 2007) ................................................................... 21

*In re Initial Pub. Offering Sec. Litig.*,
   671 F. Supp. 2d 467 (S.D.N.Y. 2009) ....................................................................... 7

Class Counsel's Motion for an Award of Attorneys' Fees and Payment of Expenses
and Memorandum of Points and Authorities in Support Thereof
Case No. 3:19-cv-06361-RS

iii

*In re Intuitive Surgical Sec. Litig.*,
    Case No. 5:13-cv-01920 (N.D. Cal. Dec. 20, 2018) ..................................................... 21

*In re Lidoderm Antitrust Litig.*,
    2018 WL 4620695 (N.D. Cal. Sept. 20, 2018) ............................................................ 7

*Missouri v. Jenkins*,
    491 U.S. 274 (1989) .................................................................................................. 15

*Nguyen v. Radient Pharms. Corp.*,
    2014 WL 1802293 (C.D. Cal. May 6, 2014) ........................................................... 5, 6

*In re Nuvelo, Inc. Sec. Litig.*,
    2011 WL 2650592 (N.D. Cal. July 6, 2011) ............................................................... 6

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) ........................................................... *passim*

*In re Online DVD-Rental Antitrust Litig.*,
    779 F.3d 934 (9th Cir. 2015) ..................................................................................... 7

*In re Oracle Corp. Sec. Litig.*,
    No. C 01-00988 SI, 2009 WL 1709050 (N.D. Cal. June 19, 2009), *aff'd*, 627
    F.3d 376 (9th Cir. 2010) .......................................................................................... 13

*In re Pac. Enters. Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995) ....................................................................................... 9

*Patel v. Trans Union*,
    2018 WL 1258194 (N.D. Cal. Mar. 11, 2018) ........................................................... 6

*Peace Officers' Annuity & Benefit Fund of Georgia v. Davita, Inc.*,
    2021 WL 2981970 (D. Colo. July 15, 2021) ............................................................. 7

*Pearlstein v. Blackberry Ltd.*,
    2022 WL 4554858 (S.D.N.Y. Sept. 29, 2022) ........................................................... 7

*Robbins v. Koger Props., Inc.*,
    116 F.3d 1441 (11th Cir. 1997) ............................................................................... 14

*Rutti v. Lojack Corp. Inc.*,
    2012 WL 3151077 (C.D. Cal. July 31, 2012) ......................................................... 16

*Six (6) Mexican Workers v. Arizona Citrus Growers*,
    904 F.2d 1301(9th Cir. 1990) .................................................................................... 6

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007).............................................................................................. 4, 13

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    2013 WL 1365900 (N.D. Cal. Apr. 3, 2013) ............................................................. 7

*In re Twitter Inc. Sec. Litig.*,
    No. 4:16-cv-05314(N.D. Cal. Oct. 13, 2022) ................................................ 17

*Vincent v. Hughes Air W., Inc.*,
    557 F.2d 759 (9th Cir. 1977) ........................................................................ 4

*Vincent v. Reser*,
    2013 WL 621865 (N.D. Cal. Feb. 19, 2013) ............................................. 4, 18

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ............................................................*passim*

*In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products*
    *Liab. Litig.*,
    2017 WL 1047834 (N.D. Cal. Mar. 17, 2017) ............................................ 14

*In re Wash. Pub. Power Supply Sys. Sec. Litig. (WPPSS*),
    19 F.3d 1291 (9th Cir. 1994), *aff'd in part*, *Class Plaintiffs v. Jaffe*
    *Schlesinger, P.A.*, 19 F.3d 1306 (9th Cir. 1994) ........................................ 4, 7

*In re Xcel Energy, Inc. Securities, Derivative & "ERISA" Litigation*,
    364 F. Supp. 2d 980 (D. Minn. 2005) ......................................................... 14

**Statutes**

15 U.S.C 77Z-1(A)(4) .................................................................................... 20

15 U.S.C. § 78u-4(a)(6) ................................................................................... 5

§15 U.S.C. § 77z-1(a)(4) ...................................................................... 1, 20, 21

**Rules**

Fed. R. Civ. P.  23(f) ............................................................................. 3, 12, 17

Fed. R. Civ. P. 23(h) ...................................................................................... 1

Fed. R. Civ. P. 54(d) ...................................................................................... 1

CLASS COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND PAYMENT OF EXPENSES
AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:19-CV-06361-RS

v

## NOTICE OF MOTION

PLEASE TAKE NOTICE that Class Counsel Labaton Keller Sucharow LLP ("Class Counsel" or "Labaton"), on behalf of itself and other Plaintiffs' Counsel, will move this Court on December 4, 2024 at 9:30 a.m., before the Honorable Richard Seeborg, for an Order, pursuant to Rules 23(h) and 54(d) of the Federal Rules of Civil Procedure: (i) awarding attorneys' fees in the amount of 29% of the Settlement Fund; (ii) awarding litigation expenses in the amount of $2,810,672.75, plus accrued interest; and (iii) approving Plaintiffs' requests for payment of their costs and expenses (including lost wages) related to their efforts on behalf of the Class, pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), §15 U.S.C. § 77z-1(a)(4).

The Motion is supported by the following Memorandum of Points and Authorities, and the accompanying Declaration of Alfred L. Fatale III in Support of (I) Class Representatives' Motion for Final Approval of Class Action Settlement and Plan of Allocation and (II) Class Counsel's Motion for an Award of Attorneys' Fees and Payment of Expenses, dated October 4, 2024 ("Fatale Declaration" or "Fatale Decl."), with annexed exhibits.

Pursuant to the Court's Order Granting Preliminary Approval of Class Action Settlement (ECF No. 468), any objections to this Fee and Expense Application must be filed with the Court by November 14, 2024. A proposed order will be submitted with Class Counsel's reply submission on or before November 27, 2024, after the deadline for objecting has passed.

## STATEMENT OF ISSUES TO BE DECIDED

1. Whether the Court should approve Class Counsel's request, on behalf of Plaintiffs' Counsel, for an award of attorneys' fees in the amount of 29% of the Settlement Fund?

2. Whether the Court should approve Class Counsel's request for payment of litigation expenses incurred by Plaintiffs' Counsel in the amount of $2,810,672.75.

3. Whether the Court should award Plaintiffs $120,420, in the aggregate, pursuant to 15 U.S.C. § 77z-1(a)(4), for reimbursement of their reasonable costs and expenses (including lost wages) related to their representation of the Class.

CLASS COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND PAYMENT OF EXPENSES AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:19-cv-06361-RS

1

## MEMORANDUM OF POINTS AND AUTHORITIES

### PRELIMINARY STATEMENT

As detailed in the Stipulation and Agreement of Settlement dated July 19, 2024 ("Stipulation), the proposed Settlement, if approved by the Court, will resolve the Action in its entirety in exchange for a cash payment of $200,000,000.[1] This recovery represents an outstanding result for the Class as it provides substantial, near-term compensation to Class Members who have recovered none of their alleged damages since Uber's IPO more than five years ago, while avoiding the risks associated with pursuing the Action through summary judgment, trial and the inevitable appeals that would follow. Based on Class Counsel's research, the Settlement would be the second largest settlement of a class action alleging claims solely under the Securities Act of 1933 ("Securities Act") arising from a company's initial public offering.[2]

In order to achieve this significant recovery, Plaintiffs' Counsel vigorously pursued the claims for more than four years.[3] In litigating the Action, Plaintiffs' Counsel worked tirelessly on behalf of the Class and expended extensive time (51,718.40 hours in professional time) and resources to ensure the best possible recovery for Class Members, all without any guarantee of a recovery and compensation. As detailed in the Declaration of Alfred L. Fatale III in Support of (I) Class Representatives' Motion for Final Approval of Class Action Settlement and Plan of Allocation and (II) Class Counsel's Motion for an Award of Attorneys' Fees and Payment of Expenses ("Fatale Declaration" or "Fatale Decl."),[4] filed herewith, Plaintiffs' Counsel engaged

---

[1]    The terms of the Settlement are set forth in the Stipulation. ECF No. 459-2. All capitalized terms used herein are defined in the Stipulation and have the same meanings as set forth therein. Unless otherwise noted, citations and internal quotations have been omitted.

[2]    The largest settlement of only Securities Act claims arising from an IPO was in *Schuh v. HCA Holdings, Inc.*, No. 11-cv-1033 (M.D. Tenn), and it was only $15 million larger. ¶123 n.14.

[3]    "Plaintiffs' Counsel" refers collectively to Labaton, Robbins Geller Rudman & Dowd LLP ("RGRD"), Cotchett Pitre McCarthy LLP ("Cotchett"), Scott + Scott Attorneys at Law LLP ("Scott+Scott"), Levi & Korsinsky LLP ("L&K"), Thornton Law Firm LLP, Brager Eagel & Squire, P.C., Bottini & Bottini Inc., and the Law Offices of Curtis V. Trinko.

[4]    The Fatale Declaration is an integral part of this motion and is incorporated herein by reference. For the sake of brevity, the Court is respectfully referred to it for, *inter alia*, a detailed description of the allegations and claims, the procedural history of the Action, the risks faced by

CLASS COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND PAYMENT OF EXPENSES
AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:19-CV-06361-RS

2

in thorough investigations prior to filing their claims; defeated defendants' motions to dismiss; obtained class certification, including overcoming a Rule 23(f) Petition; built the case through extensive fact and expert discovery, which included numerous fiercely contested discovery disputes, the review of 107,196 documents (893,997 pages) produced by Uber Defendants, 31,379 documents (371,787 pages) produced by third parties, and 86,280 documents (743,792 pages) produced by Underwriter Defendants, as well as taking or defending 46 depositions; and negotiated aggressively against widely respected defense firms, all on a fully contingent basis.

For these efforts, Class Counsel respectfully requests an award of attorneys' fees of 29% of the Settlement Fund, including accrued interest; litigation expenses in the amount of $2,810,672.75, plus accrued interest; and reimbursement in the total amount of $120,420 to Plaintiffs, pursuant to the PSLRA, for their extensive efforts on behalf of the Class.

As discussed herein, as well as in the Fatale Declaration, it is respectfully submitted that the requested fee would be fair and reasonable under the unique circumstances of this case, particularly the outstanding recovery obtained for the Class, the considerable litigation efforts undertaken by Plaintiffs' Counsel here, and the risks and challenges presented by the complex issues in this case. The lodestar multiplier of approximately 1.8 confirms that the fee would fairly compensate counsel and is inline with their work on behalf of the Class. Moreover, the requested fee and expenses have been approved by Lead Plaintiff Boston Retirement System ("BRS") and each of the Plaintiffs. *See* Ex. 1 at ¶¶3, 8; Ex. 2 at ¶¶1, 7; Ex. 3 at ¶¶1, 4; Ex. 4 at ¶¶1, 4; Ex. 5 at ¶¶1, 5.[5] Furthermore, the expenses requested are reasonable in amount and were necessarily incurred for the successful litigation of this long-running and complex case. Accordingly, it is respectfully submitted that the requested fees, litigation expenses, and PSLRA requests should be awarded in full.

---

the Class in pursuing litigation, the efforts that led to a settlement, and a description of the services provided by Plaintiffs' Counsel. Citations to "¶" in this motion refer to paragraphs of the Fatale Declaration.

[5]    All exhibits referenced herein are annexed to the Fatale Declaration. For clarity, citations to exhibits that themselves have attached exhibits, will be referenced as "Ex.__-__." The first numerical reference is to the designation of the entire exhibit to the Fatale Declaration and the second alphabetical reference is to the exhibit designation within the exhibit itself.

CLASS COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND PAYMENT OF EXPENSES
AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:19-cv-06361-RS

3

## ARGUMENT

**I.    CLASS COUNSEL'S REQUEST FOR ATTORNEYS' FEES OF 29% OF THE COMMON FUND SHOULD BE APPROVED**

### A.    Class Counsel Is Entitled to an Award of Attorneys' Fees from the Common Fund

It is well settled that attorneys who represent a class and achieve a benefit for class members are entitled to a reasonable fee as compensation for their services. The Supreme Court has recognized that "a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).[6] *See also Vincent v. Reser*, 2013 WL 621865, at *4 (N.D. Cal. Feb. 19, 2013) (quoting *Boeing*, 444 U.S. at 478). Indeed, the Ninth Circuit has expressly reasoned that "a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *Vincent v. Hughes Air W., Inc*., 557 F.2d 759, 769 (9th Cir. 1977). The purpose of this rule, known as the "common fund doctrine," is to prevent unjust enrichment so that "those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it." *In re Wash. Pub. Power Supply Sys. Sec. Litig. (WPPSS)*, 19 F.3d 1291, 1300 (9th Cir. 1994), *aff'd in part*, *Class Plaintiffs v. Jaffe Schlesinger, P.A*., 19 F.3d 1306 (9th Cir. 1994).

The Supreme Court has also emphasized that private securities actions, like this Action, are "an essential supplement to criminal prosecutions and civil enforcement actions" brought by the U.S. Securities and Exchange Commission ("SEC"). *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007); *accord Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (private securities actions provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action'").

---

[6]    All internal quotations and citations are omitted unless otherwise noted.

**B.    A Reasonable Percentage of the Fund Recovered Is the Appropriate Method for Awarding Attorneys' Fees in Common Fund Cases**

Although courts within the Ninth Circuit have discretion to employ either the lodestar or percentage method of calculating fees, in *Vizcaino v. Microsoft Corp*., 290 F.3d 1043, 1047-48 (9th Cir. 2002), the Ninth Circuit expressly approved the use of the percentage method in common fund cases. *See also Glass v. UBS Fin. Servs. Inc*., 331 F. App'x. 452, 456-57 (9th Cir. 2009) (affirming district court's use of percentage of recovery method to award fee). The percentage-of-recovery method for awarding attorneys' fees is preferable in cases with a common-fund recovery as it "aligns the lawyers' interests with achieving the highest award for class members, and reducing the burden on the courts that a complex lodestar calculation requires." *In re Apple Inc. Device Performance Litig*., 2021 WL 1022866, at *2 (N.D. Cal. Mar. 17, 2021). Indeed, "the use of the percentage-of-the fund method in common fund cases is the prevailing practice in the Ninth Circuit for awarding attorneys' fees and permits the Court to focus on showing that a fund conferring benefits on a class was created through the efforts of plaintiffs' counsel." *In re Apple Inc. Device Performance Litig*., 2023 WL 2090981, at *12 (N.D. Cal. Feb.17, 2023).

Further, the percentage of the fund method is appropriate in common fund cases where "the benefit to the class is easily quantified." *In re Bluetooth Headset Prods. Liab. Litig*., 654 F.3d 935, 942 (9th Cir. 2011); *Destefano v. Zynga Inc.,* 2016 WL 537946, at *12 (N.D. Cal. Feb. 11, 2016) ("Because this case involves a common settlement fund with an easily quantifiable benefit to the Class, the Court will primarily determine attorneys' fees using the percentage method. . . "); *see also Glass v. UBS Fin. Servs., Inc*., 331 F. App'x. 452, 456-57 (9th Cir. 2009) (overruling objection based on use of percentage-of-the-fund approach); *Baird v. BlackRock Institutional Tr. Co*., 2021 WL 5113030, at *6-7 (N.D. Cal. Nov. 3, 2021) (applying percentage of the fund method and lodestar crosscheck).

The use of the percentage-of-recovery method also comports with the language of the PSLRA, which states that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class." 15 U.S.C. § 78u-4(a)(6); *see also Nguyen v.*

CLASS COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND PAYMENT OF EXPENSES AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:19-CV-06361-RS

5

*Radient Pharms. Corp.*, 2014 WL 1802293, at *9 (C.D. Cal. May 6, 2014) ("[T]he PSLRA has made percentage-of-recovery the standard for determining whether attorney's fees are reasonable.").

### C.    The Requested Attorneys' Fees Are Reasonable Under the Percentage Method

"In applying the percentage of the fund method, the Ninth Circuit has established 25% as a 'benchmark' percentage, which may be adjusted depending on the circumstances of a case." *In re Apple Inc. Device Performance . Litig.*, 2023 WL 2090981, at *12 (citing *Vizcaino*, 290 F.3d at 1047); *see also In re Bluetooth*, 654 F.3d at 942 ("Courts typically calculate 25% of the fund as the benchmark for a reasonable fee award, providing adequate explanation in the record of any special circumstances justifying a departure"). "[C]ourts diverge from the benchmark based on a variety of factors, including the results obtained, risk undertaken by counsel, complexity of the issues, length of the professional relationship, the market rate, and awards in similar cases." *Patel v. Trans Union*, 2018 WL 1258194, at *6 (N.D. Cal. Mar. 11, 2018); *see also EK Vathana v. Everbank*, 2016 WL 3951334, at *2 (N.D. Cal. July 20, 2016) (J. Seeborg) ("courts have the power to award more or less than this starting point in "special circumstances"). The benchmark should be adjusted when the percentage recovery would be "either too small or too large in light of the hours devoted to the case or other relevant factors." *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).

Although 25% is the starting point in the Ninth Circuit, in fact, "in most common fund cases, the award exceeds that benchmark." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008); *see also In re Nuvelo, Inc. Sec. Litig.*, 2011 WL 2650592, at *1 (N.D. Cal. July 6, 2011) (applying relevant factors and finding that the settlement warrants an upward adjustment of the benchmark to 30%). Fee awards of 29%, or more, have been awarded in numerous common fund settlements with comparable, and greater settlements (and many lesser ones), in district courts throughout the Ninth Circuit. *See, e.g.*, *In re Capacitors Antitrust Litig.*, 2023 WL 2396782, at *2 (N.D. Cal. Mar. 6, 2023) (awarding 40% of $165 million partial settlement); *Andrews v. Plains All Am, Pipeline L.P.*, 2022 WL 4453864, at *4 (C.D. Cal. Sept.

20, 2022) (awarding 32% of $230 million settlement); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2016 WL 4126533, at *1 (N.D. Cal. Aug. 3, 2016) (awarding 27.5% of $576.75 million settlement); *In re Lidoderm Antitrust Litig.*, 2018 WL 4620695, at *1-3 (N.D. Cal. Sept. 20, 2018) (awarding one-third of $104.75 million settlement); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2013 WL 1365900, at *16-17 (N.D. Cal. Apr. 3, 2013) (awarding 28.5% on $1.08 billion settlement); *In re Apollo Grp. Inc. Sec. Litig.*, 2012 WL 1378677, at *9 (D. Ariz. Apr. 20, 2012) (awarding 33.33% of $145 million settlement); *see also In re Apple Inc. Device Performance. Litig.*, 2023 WL 2090981, at *16 (noting departure from benchmark and awarding 26% of $310 million settlement).[7]

   As discussed below, in determining a fee award here, however, the most important facts for the Court to consider are the extraordinary results, the difficulty and complexity of the claims, and the obstacles and challenges faced by Plaintiffs' Counsel, which exceeded those in typical cases in most respects.

### D.  Analysis Under the *Vizcaino* Factors Justifies a Fee Award of 29% in this Case

   The guiding principle in the Ninth Circuit is that a fee award must be "reasonable under the circumstances." *WPPSS*, 19 F.3d at 1296; *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d at 1047.

   In assessing attorneys' fees under the percentage method, and whether a departure from the 25% benchmark is warranted, the Court can consider the following factors: (1) the results achieved; (2) the risk of litigation; (3) the skill required and quality of the work; (4) awards made in similar cases; and (5) the contingent nature of the fee and financial burden carried by counsel. *See Vizcaino*, 290 F.3d at 1048-50; *see also* In re Online DVD-Rental Antitrust Litig.*, 779 F.3d

---

[7] A 29% fee is also consistent with awards in large common fund cases in other circuits. *See, e.g., In re U.S. Foodservice Inc. Pricing Litig.*, 2014 WL 12862264, at *3 (awarding 33.33% of $297 million settlement); *Pearlstein v. Blackberry Ltd.*, 2022 WL 4554858, at *11 (S.D.N.Y. Sept. 29, 2022) (awarding 33% of $165 million settlement); *In re Pfizer Inc. Sec. Litig.*, No. 1:04-cv-09866- LTS-HBP, slip op. at 2 (S.D.N.Y. Dec. 21, 2016) (ECF No. 727) (awarding 28% of $486 million settlement); *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 516 & n.354 (S.D.N.Y. 2009) (awarding 33.3% of $586 million settlement); *Peace Officers' Annuity & Benefit Fund of Georgia v. Davita, Inc.,* 2021 WL 2981970, at *4 (D. Colo. July 15, 2021) (awarding 30% of $135 million settlement).

CLASS COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND PAYMENT OF EXPENSES AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:19-CV-06361-RS

7

1   934, 954–55 (9th Cir. 2015) ("When using the percentage-of-recovery method, courts consider a

2   number of factors, including whether class counsel 'achieved exceptional results for the class,'

3   whether the case was risky for class counsel, whether counsel's performance 'generated benefits

4   beyond the cash settlement fund,' the market rate for the particular field of law (in some

5   circumstances), the burdens class counsel experienced while litigating the case (*e.g.*, cost,

6   duration, foregoing other work), and whether the case was handled on a contingency basis.").

7        The Ninth Circuit has explained that these factors should not be used as a rigid checklist

8   or weighed individually, but, rather, should be evaluated in light of the totality of the

9   circumstances. *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1029 (9th Cir. 1998); *see also Vizcaino*,

10  290 F.3d at 1048 (district courts must ensure that fee awards are "supported by findings that take

11  into account all of the circumstances of the case").

12                    **1.    The Extraordinary Result Achieved**

13       Courts have consistently recognized that the result achieved is a key factor to be

14  considered in making a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) (noting "the

15  most critical factor is the degree of success obtained"); *see also Hefler v. Wells Fargo & Co*.,

16  2018 WL 6619983, at *13 (N.D. Cal. Dec. 18, 2018), *aff'd sub nom*, *Hefler v. Pekoc*, 802 F.

17  App'x. 285 (9th Cir. 2020). Significantly, "the law appropriately provides for some upward

18  adjustment from the benchmark where the results achieved are significantly better than the norm."

19  *Andrews v. Plains All Am. Pipeline L.P*., 2022 WL 4453864, at *5. Class Counsel respectfully

20  submits that the $200 million proposed Settlement is an outstanding result for the Class, both

21  quantitatively and when considering the risk of a lesser (or no) recovery if the case proceeded

22  through summary judgment, trial, and appellate challenges.

23       As mentioned above, the recovery achieved here would be the second largest settlement

24  of an IPO-related securities class action not alleging related fraud claims under the Securities

25  Exchange Act of 1934. ¶7. The $200 million recovery is almost 15 times greater than the median

26  recovery of $13.5 million in securities class actions settled in 2023 that, like this Action, alleged

27  only Securities Act claims. *See* Laarni T. Bulan and Laura E. Simmons, *Securities Class Action*

28

CLASS COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND PAYMENT OF EXPENSES
AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:19-CV-06361-RS

8

*Settlements – 2023 Review and Analysis* (Cornerstone Research 2024), Ex. 7 at 8; ¶7. In fact, the median settlement for class actions that allege only Securities Act claims from 2014 to 2023 was only $9.9 million. *Id*.

Additionally, as discussed in the Fatale Declaration and Class Representatives' Motion for Final Approval of Class Action Settlement and Plan of Allocation and Memorandum of Points and Authorities in Support Thereof ("Settlement Memorandum"), according to analyses prepared by Class Representatives' damages expert, the aggregate damages the Class could have obtained at trial ranged from $1.3 billion to approximately $424 million, based on different scenarios. ¶¶97-99. Thus, the Settlement recovers at least 15% of maximum potential damages ($1.3 billion) and 47% of Class Representatives' experts' likely lower bound of estimated recoverable damages ($424 million). ¶121; Settlement Memorandum at §I.D. *See, e.g., Cheng Jianghen v. Rentech, Inc*., 2019 WL 5173771, at *9 (C.D. Cal. Oct. 10, 2019) (finding settlement that represented approximately 10% of total maximum potential damages to be a "favorable outcome in light of the challenging nature of a securities class action case" and supporting the fee award). According to Cornerstone Research, for Securities Act cases with total estimated damages (based on Cornerstone's methodology) of $150 million or more, the median percentage of recovery from 2014 to 2023 was 4.5% of total estimated damages, and the median percentage of recovery for all Securities Act cases from 2014 to 2023 was 7.5%. Ex. 7 at 9.

In sum, the outstanding recovery supports approval of a fee above the benchmark.

### 2.    The Risks of Litigation

The risk involved in a litigation is also an important factor in determining a fair fee award. *Vizcaino*, 290 F.3d at 1048 (noting "[r]isk is a relevant circumstance" in awarding attorneys' fees); *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379, n.10 (9th Cir. 1995) (finding that attorneys' fees were justified "because of the complexity of the issues and the risks"); *see also Zynga*, 2016 WL 537946, at *17 (approving requested fee and noting that "as to the second factor . . . the risks associated with the case were substantial given the challenges of obtaining class certification and establishing the falsity of the misrepresentations and loss causation"); *In re Omnivision Techs.*

CLASS COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND PAYMENT OF EXPENSES
AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:19-CV-06361-RS

9

*Inc.*, 559 F. Supp. 2d at 1047 (noting that the risk of litigation, including the ability to prove loss causation and the risk that Defendants prevail on damages, support the requested fee). As set forth in Section VII. of the Fatale Declaration, Class Counsel confronted, and would continue to do so if the litigation had continued, a number of significant legal and factual challenges during the course of the litigation.

Establishing the fundamental elements of materiality and falsity of the alleged misstatements in the Offering Documents was a major undertaking. For example, Defendants persistently maintained that disclosures within the Offering Documents, and evidence developed in discovery, showed that there were simply no false and misleading statements or omissions. As Defendants have repeatedly noted, the Prospectus contained in the Offering Documents spanned over 300 pages and included a massive 49 pages of disclosed "Risk Factors," which covered highly relevant topics such as Uber's business model, passenger safety, and financial condition. Defendants, and their experts, also maintained that relevant information and reports about Uber existed in the public domain, highlighting scores of news articles and analyst reports that they argue defeat Class Representatives' claims that any information was allegedly omitted from the Offering Documents. Defendants would also likely attempt to inform the trier of fact that Uber is now a profitable company with a drastically improved reputation and a new CEO who has, in fact, created a "new day at Uber," which could potentially affect jurors' views of Uber and the allegations. ¶¶88-95.

Leaving aside liability obstacles, Defendants and their experts have also sought to establish that any recoverable damages should be much lower than the $1.3 billion in potential damages estimated by Class Representatives' consulting damages expert, if not zero. ¶¶96-100. Defendants, for example, have argued that the evidence and data shows that rather than dropping due the post-IPO revelation of material negative information known by Uber at the time of the IPO, Uber's stock price trended down starting the day of the IPO itself and largely continued to do so for the next several months, irrespective of what news entered the market. Defendants would also likely seek to prove that prior to the filing the first complaint, Uber's stock price only had

CLASS COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND PAYMENT OF EXPENSES
AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:19-CV-06361-RS

10

three days of statistically significant negative residual returns. ¶98. If some of these arguments with respect to focusing only on statistically significant price drops were successful, recoverable damages, according to Class Representative's consulting damages expert, could be as low as $424 million. If Defendants were able to server causality on statistically significant days, Defendants would seek to establish that damages and the size of the Class should be significantly reduced, potentially to zero. The Parties clashed over arguments that the stock price declines on any of the statistically significant days were caused not by revelation of the truth about prior misrepresentations, but rather by the materialization of disclosed risks, new information about non-challenged aspects of Uber's business, and investors' evolving views on the ridesharing industry in general. ¶99.

In addition, Class Representatives knew they would face, and the Court would need to rule on, complex summary judgment and pre-trial motions – requiring significant effort on Class Counsel's part. Assuming summary judgment challenges were overcome, there was no doubt that both sides would have had to present multifaceted and nuanced information to the Court and a jury with no certainty as to the outcome.

Class Counsel worked diligently to achieve a significant result for the Class in the face of these very real risks. Under these circumstances, the requested fee is fully appropriate.

### 3.    The Skill Required and the Quality of Work

Courts have recognized that the "prosecution and management of a complex national class action requires unique legal skills and abilities." *In re Heritage Bond Litig.*, 2005 WL 1594389, at *12 (C.D. Cal. June 10, 2005); *see also Vizcaino,* 290 F.3d at 1048. "This is particularly true in securities cases because the Private Securities Litigation Reform Act makes it much more difficult for securities plaintiffs to get past a motion to dismiss." *Zynga*, 2016 WL 537946, at *17 (quoting *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d at 1047).

Plaintiffs' Counsel—firms that practice extensively in the highly challenging field of securities litigation and have skillfully litigated these types of cases in courts across the country through trial (*see* generally Plaintiffs' Counsel's firm resumes, Exs. 8-D, 9-D, 10-D, 11-D, 12-D

CLASS COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND PAYMENT OF EXPENSES
AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:19-CV-06361-RS

11

and 13-D) —engaged in a rigorous and concerted effort to obtain the maximum recovery for the Class. This case required a wide ranging and deep investigation, a thorough understanding of intricate factual and legal issues, voluminous fact and expert discovery, class certification efforts involving a Rule 23(f) Petition, and the skill to respond to the host of challenges that Defendants raised during the litigation. *See generally* Fatale Declaration. Plaintiffs' Counsel's efforts have resulted in a notable result for the Class, particularly in light of the risks of looming summary judgment motions and pre-trial challenges.

Accordingly, the quality of the legal services provided by Plaintiffs' Counsel over the course of this long running case, together with their substantial experience in complex class actions and commitment to the litigation, enabled Plaintiffs' Counsel to obtain the very favorable Settlement, and support an upward adjustment of the benchmark. *See In re Apple*, 2023 WL 2090981, at *14 (noting class counsel's skill and quality of work supported a fee above the benchmark where the case withstood two motions to dismiss and where "class counsel diligently developed the facts, propounded discovery, took depositions, and engaged a damages consultant, all of which was of great benefit to the class").

The quality of opposing counsel is also important in evaluating the quality of the work done by Plaintiffs' Counsel. *See, e.g.*, *Heritage Bond*, 2005 WL 1594389, at *12; *In re Equity Funding Corp. Sec. Litig.*, 438 F. Supp. 1303, 1337 (C.D. Cal. 1977). Here, Plaintiffs' Counsel were opposed by very skilled and highly respected lawyers at Allen Overy Shearman Sterling US LLP and Willkie Farr & Gallagher LLP, with well-deserved reputations for vigorous advocacy in the defense of complex civil cases such as this. In the face of this opposition, Plaintiffs' Counsel were able to develop the case so as to obtain an excellent recovery for the Class.

### 4. The Contingent Nature of the Fee and the Financial Burden Carried by Counsel

It has long been recognized that attorneys are entitled to a larger fee when their compensation is contingent in nature. *See Vizcaino*, 290 F.3d at 1048-50; *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d at 1047 ("The importance of assuring adequate representation for plaintiffs who could not otherwise afford competent attorneys justifies providing those attorneys who do

CLASS COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND PAYMENT OF EXPENSES AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:19-CV-06361-RS

12

accept matters on a contingent-fee basis a larger fee than if they were billing by the hour or on a flat fee."); *see also Zynga,* 2016 WL 537946, at *18 (noting that "when counsel takes on a contingency fee case and the litigation is protracted, the risk of non-payment after years of litigation justifies a significant fee award").

The Supreme Court has also emphasized that private securities actions such as this provide "a necessary supplement to [SEC] action." *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007) (noting that the court has long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions). Yet, vigorous private enforcement of the federal securities laws and state corporation laws can only occur if private plaintiffs can obtain some semblance of parity in representation with that available to large corporate defendants. If this important public policy is to be carried out, courts should award fees that will adequately compensate private plaintiffs' counsel, taking into account the enormous risks undertaken with a clear view of the economics of a securities class action.

Indeed, there have been many class actions in which plaintiffs' counsel took on the risk of pursuing claims on a contingency basis, expended thousands of hours and dollars, yet received no remuneration whatsoever despite their diligence and expertise. For example, Class Counsel tried *In re JDS Uniphase Securities Litigation*, Case No. C-02-1486 CW (EDL) (N.D. Cal. Nov. 27, 2007), through to a disappointing verdict for the defendants, receiving no compensation and expending millions of dollars in time and expenses. *See also In re Oracle Corp. Sec. Litig.*, No. C 01-00988 SI, 2009 WL 1709050 (N.D. Cal. June 19, 2009), *aff'd*, 627 F.3d 376 (9th Cir. 2010) (granting summary judgment to defendants after eight years of litigation, and after plaintiff's counsel incurred over $6 million in expenses and worked over 100,000 hours, representing a lodestar of approximately $48 million). *See also* Fatale Decl. at ¶¶127-132.

Class Counsel is aware of many other hard-fought lawsuits where excellent professional efforts by members of the plaintiff's bar produced no fee for counsel. *See, e.g., Glickenhaus &*

1  *Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015) (reversing and remanding jury verdict

2  of $2.46 billion after 13 years of litigation on loss causation grounds and error in jury instruction

3  under *Janus Cap. Grp., Inc. v. First Derivative Traders*, 131 S. Ct. 2296 (2011)); *Robbins v.*

4  *Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversing $81 million jury verdict and

5  dismissing case with prejudice); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996)

6  (overturning plaintiffs' verdict obtained after two decades of litigation). As the court in *In re Xcel*

7  *Energy, Inc. Securities, Derivative & "ERISA" Litigation,* 364 F. Supp. 2d 980 (D. Minn. 2005)

8  recognized, "[p]recedent is replete with situations in which attorneys representing a class have

9  devoted substantial resources in terms of time and advanced costs yet have lost the case despite

10 their advocacy." *Id.* at 994.

11        Here, because Plaintiffs' Counsel's fee was entirely contingent, the only certainty was that

12 there would be no fee without a successful result and that such result would only be realized after

13 significant amounts of time, effort, and expense had been expended. Unlike counsel for

14 defendants, who are paid and reimbursed for their expenses on a current basis, Plaintiffs' Counsel

15 have received no compensation for their efforts during the course of the Action. In the face of

16 very real uncertainties regarding the outcome of the case, Plaintiffs' Counsel prosecuted this

17 Action on a wholly contingent basis, knowing that the litigation could last for years and would

18 require devotion of a substantial amount of attorney time and a significant advance of litigation

19 expenses with no guarantee of compensation or reimbursement.

20        **5.        Reaction of the Class to Date**

21        Although not articulated specifically in *Vizcaino*, district courts in the Ninth Circuit also

22 consider the reaction of the class when deciding whether to award the requested fee. *See Heritage*

23 *Bond*, 2005 WL 1594389, at *15 ("The presence or absence of objections . . . is also a factor in

24 determining the proper fee award."); *In re Volkswagen "Clean Diesel" Marketing, Sales*

25 *Practices, and Products Liab. Litig.*, 2017 WL 1047834, at *4 (N.D. Cal. Mar. 17, 2017)

26 (considering the strong positive response from the class as a factor weighing in favor of the

27 requested fee).

28

CLASS COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND PAYMENT OF EXPENSES
AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:19-CV-06361-RS

14

Here, a total of 772,957 Settlement Postcards reporting the maximum amount of the Fee and Expense Application have been sent to potential Class Members and their brokers, banks, and other nominees. *See* Declaration of Adam D. Walter Regarding (A) Mailing of the Settlement Postcard and (B) Publication of the Summary Notice, dated October 4, 2024, Ex. 6 ("Mailing Decl.") at ¶¶8-11. The long-form Settlement Notice and Claim Form, along with the Stipulation and other relevant documents, were made available on a website dedicated to the litigation. *Id.* at ¶¶13-14. Additionally, the Court-approved Summary Notice was published in *The Wall Street Journal* and transmitted over the internet using *PR Newswire. Id.* at ¶12.

Although the objection deadline will not run until November 14 ,2024, to date no objections to the requested amount of attorneys' fees and expenses have been filed with the Court or received by Class Counsel.[8]

### E.    A Lodestar Cross-check Confirms that the Requested Fee Would Be Reasonable

Although an analysis of counsel's lodestar is not required for an award of attorneys' fees in the Ninth Circuit, it is it is often considered in order to ensure that an awarded fee would be reasonable. *In re Amgen Inc. Sec. Litig.*, 2016 WL 10571773, at *9 (C.D. Cal. Oct. 25, 2016) ("Although an analysis of the lodestar is not required for an award of attorneys' fees in the Ninth Circuit, a cross-check of the fee request with a lodestar amount can demonstrate the fee request's reasonableness."); *In re Extreme Networks, Inc. Sec. Litig.*, 2019 WL 3290770, at *10 (noting that "lodestar may provide a useful perspective on the reasonableness of a given percentage award").

"Under the lodestar approach, a court multiplies the number of hours reasonably expended by the reasonable hourly rate." *In re Apple*, 2023 WL 2090981, at *12. Plaintiffs' Counsel's combined "lodestar," derived by multiplying the hours worked on the litigation by each attorney and professional by their current hourly rates, is $31,657,987.40.[9] *See* Exs. 8-A; 9-A; 10-A; 11-

---

[8] Class Counsel will address any future objections in its reply papers, which will be filed with the Court on or before November 27, 2024.

[9] The Supreme Court and other courts have held that the use of current rates is proper since such rates compensate for inflation and the loss of use of funds. *See Missouri v. Jenkins*, 491 U.S.

CLASS COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND PAYMENT OF EXPENSES AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF CASE NO. 3:19-CV-06361-RS

15

A; 12-A; 13-A; *see also* Ex. 14 (Summary Table of Lodestars & Expenses). This lodestar is a function of the extensive and rigorous litigation of the case, as described in the Fatale Declaration. As detailed in the Fatale Declaration and in the accompanying individual firm fee and expense declarations submitted by Plaintiffs' Counsel, more than 51,718.40 hours of attorney and professional time were expended for the benefit of the Class. *Id*. Consistent with the Northern District of California Procedural Guidance for Class Action Settlements, Plaintiffs' Counsel's fee and expense declarations include tables showing counsel's time, in detail, broken down by 13 different categories of work. Exs. 8-B; 9-B; 10-B; 11-B; 12-B; 13-B. Throughout the litigation, Class Counsel implemented procedures for effective project management and maintained an appropriate level of staffing on all tasks through actively monitoring and supervising workstreams across Plaintiffs' Counsel. This effort was implemented at the express direction of Lead Plaintiff which, after the consolidation of the *Messinger* Action, instructed Class Counsel to develop, disseminate, and follow a written work protocol for all co-counsel. ¶¶138-143.

Plaintiffs' Counsel's rates are reasonable and range from $675 to $1,400 per hour (with one senior partner rate of $1,900) for partners, $700 to $935 per hour for of counsels, $300 to $750 for associates, and $350 to $700 for staff and contract attorneys. *See* Exs. 8-A; 9-A; 10-A; 11-A; 12-A; 13-A; *see, e.g., In re Alphabet, Inc. Sec. Litig.*, No. 18-cv-06245, slip op. at 12 (N.D. Cal. Sept. 30, 2024) (ECF No. 245) (finding rates ranging from $110 to $1,400 per hour reasonable and commensurate with market rates). Class Counsel submits that these rates are comparable or less than those used by peer defense-side law firms litigating matters of similar magnitude and complexity. Sample defense firm rates in 2023, gathered by Labaton annually from bankruptcy court filings nationwide, often exceeded these rates. Ex. 15; ¶145.

The work of Plaintiffs' Counsel was necessary for the success of the litigation. As set forth in great detail in the Fatale Declaration, Plaintiffs' Counsel: (i) drafted two detailed amended complaints; (ii) defeated two extensive motions to dismiss; (iii) obtained class certification,

---

274, 283-84 (1989); *Rutti v. Lojack Corp. Inc.*, 2012 WL 3151077, at *11 (C.D. Cal. July 31, 2012) ("it is well-established that counsel is entitled to current, not historic, hourly rates") (citing *Jenkins*, 491 U.S. at 284).

CLASS COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND PAYMENT OF EXPENSES
AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:19-CV-06361-RS

16

overcame a Rule 23(f) Petition, and mailed Class Notice; (iv) researched, drafted, propounded, and responded to document requests, interrogatories, and requests for admission; (v) reviewed approximately 107,196 documents (893,997 pages) produced by Uber Defendants, 31,379 produced by third parties, and 86,280 produced by Underwriter Defendants; (vi) reviewed at least 27 privilege logs, containing at least 50,442 entries; (vii) served at least 39 subpoenas and at least 140 deposition notices (including amended notices); (viii) took 32 and defended 14 depositions; (ix) litigated numerous discovery disputes; (x) consulted with experts in the fields of due diligence, negative causation and damages, and tracing; (xi) served five expert reports; and (xii) participated in pre-mediation conferences, exchanged extensive mediation briefing, and participated in two mediations during the course of the litigation. *See generally* Fatale Decl. at §IV. The substantial time devoted to the Action reflects the dedicated effort needed to prosecute the claims and bring them to a favorable resolution.

Here, the requested fee of 29%, if awarded, would represent a "multiplier" of approximately 1.8 of Plaintiffs' Counsel's combined lodestars. *Id*. The Ninth Circuit has recognized that attorneys in common fund cases are frequently awarded a multiple of their lodestar, rewarding them "for taking the risk of nonpayment by paying them a premium over their normal hourly rates for winning contingency cases." *Vizcaino*, 290 F.3d at 1051. For example, the district court in *Vizcaino* approved a fee that reflected a multiple of 3.65 times counsel's lodestar. *Id*. The Ninth Circuit affirmed, holding that the district court correctly considered the range of multiples applied in common fund cases, and noting that a range of lodestar multiples from 1.0 to 4.0 are frequently awarded. *Id*.; *see also In re Capacitors Antitrust Litig.*, 2017 WL 9613950, at *6 (noting, "[i]n the Ninth Circuit, a lodestar multiplier of around 4 times has frequently been awarded in common fund cases"); *In re Alphabet*, No. 18-cv-06245 (ECF No. 245 at 12) (approving fee in $350 million settlement representing 4.58 multiplier); *In re Twitter Inc. Sec. Litig.*, No. 4:16-cv-05314, ECF No. 661 at 2 (N.D. Cal. Oct. 13, 2022) and *Twitter*, ECF No. 670 (N.D. Cal. Nov. 21, 2022) (awarding fee in $809.5 million settlement representing a 4.14 multiplier); *Hefler*, 2018 WL 6619983, at *14 (awarding fee in $480 million settlement

CLASS COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND PAYMENT OF EXPENSES AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:19-CV-06361-RS

17

1    representing a 3.22 multiplier); *In re Facebook Biometric Info. Priv. Litig.*, 522 F. Supp. 3d 617,

2    633 (N.D. Cal. 2021) (awarding fee in $650 million common fund settlement representing 4.71

3    multiplier finding that "the results obtained and the risks at trial warrant a higher-end multiplier"),

4    *aff'd*, 2022 WL 822923 (9th Cir. Mar. 17, 2022). Given the risks undertaken by Plaintiffs'

5    Counsel and the extraordinary results achieved for the Class, a risk multiplier of approximately

6    1.8 is reasonable here.

7         Furthermore, additional work will be required of Class Counsel on an ongoing basis,

8    including: correspondence with Class Members; preparation for, and participation in, the final

9    approval hearing; supervising the claims administration process being conducted by the Claims

10   Administrator; and supervising the distribution of the Net Settlement Fund to Class Members who

11   have submitted valid Claim Forms. However, Class Counsel will not seek payment for this

12   additional work.

13   **II.    PLAINTIFFS' COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARY TO ACHIEVE THE BENEFIT OBTAINED**

14

15        Class Counsel's application includes a request for payment of Litigation Expenses, which

16   were reasonably incurred and necessary to prosecute the Action. Plaintiffs' Counsel collectively

17   incurred $2,810,672.75 in expenses. *See* Exs. 8-C; 9-C; 10-C; 11-C; 12- C; 13-C; *see also* Ex. 14.

18   These expenses are outlined in Plaintiffs' Counsel's individual fee and expense declarations

19   submitted to the Court concurrently herewith. *Id*. This amount is below the $3,215,000 maximum

20   that the notices informed potential Class Members counsel may apply for. To date, there has been

21   no objection to this request.

22        "Attorneys who created[] a common fund are entitled to the reimbursement of expenses

23   they advanced for the benefit of the class." *Vincent,* 2013 WL 621865, at *5. In assessing whether

24   counsel's expenses are compensable in a common fund case, courts look to whether the particular

25   costs are of the type typically billed by attorneys to paying clients in the non-contingent

26   marketplace. *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) ("Harris may recover as part of

27   the award of attorney's fees those out-of-pocket expenses that 'would normally be charged to a

28   fee paying client.'").

The amount of Litigation Expenses here is consistent with the stage of the litigation. Plaintiffs' Counsel have incurred considerable expenses related to, among other things, expert and consultant fees, mediation fees, deposition discovery, and litigation support fees related to electronic discovery. Class Counsel maintained strict control over the primary expenses in the Action by managing a joint litigation expense fund ("Joint Litigation Expense Fund" or "Litigation Fund"). Plaintiffs' Counsel collectively contributed $1,891,514.01 to the Joint Litigation Expense Fund, and their requests for reimbursement of these contributions is part of the overall expense request. A description of the expenses incurred by the Litigation Fund by category is included in the individual firm declaration submitted on behalf of Class Counsel. *See* Ex. 8 at ¶¶12-19, Ex. E.

The largest component of the litigation expenses relates to the retention of Class Representatives' consultants and experts. These costs total $$2,106,152, or approximately 75% of the total litigation expenses. ¶152. Class Counsel retained experts to analyze class-wide damages, provide merits expert reports and opinion on issues related to elements of Class Representatives' claims (*i.e.,* damages and tracing) and Defendants' purported defenses (negative causation and due diligence). Class Counsel also retained a consulting accounting expert to provide assistance with the analysis of Uber's accounting practices and the financial information disclosed in the Offering Documents. An outside investigation firm assisted with certain aspects of the investigation. Additionally, Class Counsel retained a trial consulting firm to assist with jury research. These experts and consultants were essential to the prosecution of the Action. *Id.*

Another substantial component of Plaintiffs' Counsel's expenses (*i.e.*, $201,176.26) was the cost of court reporters, videographers, and transcripts in connection with the depositions counsel took or defended during the course of the Action and court hearings. ¶156.

A significant component of Plaintiffs' counsel's litigation expenses ($179,647.54) was for document hosting and management related to electronic discovery. Among other things, Class Counsel retained a third-party vendor to host Lead Plaintiff's productions prior to the consolidation of the *Messinger* Action. Robbins Geller hosted additional Plaintiffs' documents,

CLASS COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND PAYMENT OF EXPENSES
AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:19-CV-06361-RS

19

Defendants' productions, and third-party productions on their sophisticated electronic database and litigation support platform, at a very reasonable rate. *See* Ex. 9 at ¶9(g). Plaintiffs' Counsel used these electronic databases to, among other things: (i) maintain potentially relevant documents collected from Plaintiffs for review and production in response to Defendants' discovery demands; (ii) maintain the electronic database through which the approximately two million pages of documents produced by Defendants and third parties in the Action were reviewed; (iii) process documents so that they would be in a searchable format, including the conversion and upload of any hard copy documents; and (iv) apply data analysis tools to focus the review on the most significant documents to efficiently target information counsel needed to support their allegations. ¶154.

Class Counsel also incurred a total of $26,344.10 in connection with the extensive mediation efforts of Mr. Meyer. ¶155.

The expenses also include $151,266.38 for work-related transportation expenses, meals, and lodging related to, among other things, traveling in connection with court hearings, dozens of depositions, the mediations, investigation interviews, and meetings with Plaintiffs. (Any first-class airfare has been reduced to be comparable to economy rates.) ¶153.

The other expenses for which Class Counsel seeks payment are the types of expenses that are necessarily incurred in complex commercial litigation. These expenses include, among others, duplicating costs, PACER, Westlaw/Lexis, long distance telephone and conference call charges, and service and court filing fees. *See* Ex. 8-C to Ex. 13-C.

In sum, Plaintiffs' Counsel's expenses, in an aggregate amount of $2,810,672.75, were reasonable and necessary to the litigation of the Action and should be approved.

## III.    PLAINTIFFS' REQUESTS FOR REIMBURSEMENT PURSUANT TO 15 U.S.C 77Z-1(A)(4) ARE REASONABLE

The PSLRA, 15 U.S.C. § 77z-1(a)(4), permits an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class." Here, Plaintiffs are seeking, in total, $120,420, in expenses related to the time they dedicated to the Action. *See* Exs. 1-5.

CLASS COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND PAYMENT OF EXPENSES AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF CASE NO. 3:19-CV-06361-RS

20

Consistent with the Northern District of California Guidelines, Plaintiffs have submitted declarations (*see* Exs. 1-5) setting forth the time and effort they dedicating to pursuing the Class's claims during the course of this long-running case. Each were deposed and engaged in discovery – with BRS producing two witnesses for deposition. Each were in regular contact with counsel, reviewed court filings, consulted with counsel during the course of the mediation process and approved of the Settlement. *Id.* Plaintiffs' efforts required them to devote considerable time and resources to this Action that would otherwise have been devoted to their regular professional endeavors.

Many cases have approved reasonable payments to compensate representatives for the time, effort, and expenses devoted by them on behalf of a class. *See, e.g., In re Amgen Inc. Sec. Litig.*, 2016 WL 10571773, at *10 (reasoning that "courts have awarded reasonable payments to compensate class representatives for the time, effort, and expenses devoted to litigating on behalf of the class" and awarding State of Connecticut $30,983.99 related to the time it dedicated to the case); *In re Intuitive Surgical Sec. Litig.*, Case No. 5:13-cv-01920, (ECF No. 317 at 4) (N.D. Cal. Dec. 20, 2018) (awarding $49,754.18 and $9,100.00 to class representatives); *Hatamian v. Advanced Micro Devices, Inc.*, Case No. 14-cv-00226-YGR, (ECF No. 364 at 4) (N.D. Cal. Mar. 2, 2018) (awarding costs and expenses to two class representatives in the amount of $8,348.25 and $14,875.00); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d at 1049 (awarding lead plaintiffs collectively $29,913.80 for the time they dedicated to the litigation); *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d at 1173-74 (awarding $40,000 to lead plaintiff pursuant to PSLRA).

As explained in one decision, courts "award such costs and expenses to both reimburse named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as provide an incentive for such plaintiffs to remain involved in the litigation and incur such expenses in the first place." *Hicks v. Stanley*, 2005 WL 2757792, at *10 (S.D.N.Y. Oct. 24, 2005).

Class Counsel respectfully submits that the amount sought here is reasonable based on Plaintiffs' active and lengthy involvement in the Action.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **CONCLUSION**

For all the foregoing reasons, Class Counsel respectfully requests that the Court award: (i) attorneys' fees of 29% of the Settlement Fund; (ii) litigation expenses in the amount of $2,810,672.75, plus accrued interest; and (iii) $120,420, in the aggregate, to Plaintiffs pursuant to the PSLRA. A proposed order will be submitted with Class Representatives' reply papers, after the deadline for objecting has passed.

Dated: October 4, 2024

**LABATON KELLER SUCHAROW LLP**

By:      /s/ *Alfred L. Fatale III*
Jonathan Gardner (*pro hac vice*)
Alfred L. Fatale III (pro hac vice)
Joseph N. Cotilletta (*pro hac vice*)
Beth C. Khinchuk (*pro hac vice*)
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
jgardner@labaton.com
afatale@labaton.com
jcotilletta@labaton.com
bkhinchuk@labaton.com

*Attorneys for Plaintiffs and the Class*

LEVI & KORSINSKY LLP
Gregory M. Nespole (*pro hac vice*)
Daniel Tepper (*pro hac vice*)
Correy A. Suk (*pro hac vice*)
55 Broadway, 10th Floor
New York, New York 10006
Telephone: (212) 363-7500
Facsimile: (212) 363-1294
Email:  gnespole@zlk.com
             dtepper@zlk.com
             csuk@zlk.com

*-and-*

Adam M. Apton (SBN 316506)
75 Broadway, Suite 202
San Francisco, California 94111
Telephone: (415) 373-1671
Facsimile: (415) 484-1294
Email:  aapton@zlk.com

*Liaison Counsel for Lead Plaintiff Boston Retirement System and the Class*

CLASS COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND PAYMENT OF EXPENSES AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:19-CV-06361-RS

22

1   SCOTT+SCOTT ATTORNEYS AT LAW
    LLP
2   John T. Jasnoch (SBN 281605)
    600 W. Broadway, Suite 3300
3   San Diego, California 82101
    Telephone: (619) 233-4565
4   Facsimile: (619) 233-0508
    Email: jjasnoch@scott-scott.com
5
6   -and-
7   David R. Scott
    156 South Main Street P.O. Box 192
8   Colchester, Connecticut 06415
    Telephone: (860) 537-5537
9   Facsimile: (860) 537-4432
    Email: david.scott@scott-scott.com
10
11  -and-
12  William C. Fredericks
    The Helmsley Building
13  230 Park Avenue, 17th Floor
    New York, New York 10169
14  Telephone: (212) 223-6444
    Facsimile: (212) 223-6334
15  Email: wfredericks@scott-scott.com
16  ROBBINS GELLER RUDMAN
      & DOWD LLP
17  Thomas Egler
    Nathan Lindell
18  One Montgomery Street, Suite 1800
    San Francisco, California, 94104
19  Telephone: (619) 231-1058
    Facsimile: (619) 231-7423
20  Email: tegler@rgrdlaw.com
21         nlindell@rgrdlaw.com
22
23  COTCHETT, PITRE & MCCARTHY, LLP
    Mark C. Molumphy (SBN 168009)
24  Tyson Redenbarger (SBN 294424)
    Gia Jung (SBN 340160)
25  San Francisco Airport Office Center
    840 Malcolm Road, Suite 200
26  Burlingame, California 94010
    Telephone: (650) 697-6000
27  Facsimile: (650) 697-0577
28  Email: mmolumphy@cpmlegal.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

tredenbarger@cpmlegal.com
jpeng@cpmlegal.com

*Counsel for Plaintiffs David Messinger,*
*Salvatore Toronto on behalf of Ellie Marie*
*Toronto ESA, Joseph Cianci, and Irving S. and*
*Judith Braun*

CLASS COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND PAYMENT OF EXPENSES
AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:19-CV-06361-RS

24

**CERTIFICATE OF SERVICE**

I hereby certify that on October 4, 2024, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List served via ECF on all registered participants only.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 4, 2024

/s/ *Alfred L. Fatale III*
Alfred L. Fatale III