Jonathan Gardner (admitted *pro hac vice*)
Alfred L. Fatale III (admitted *pro hac vice*)
Joseph N. Cotilletta (admitted *pro hac vice*)
Beth C. Khinchuk (admitted *pro hac vice*)
LABATON KELLER SUCHAROW LLP
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
Email: jgardner@labaton.com
        afatale@labaton.com
        jcotilletta@labaton.com
        bkhinchuk@labaton.com

*Class Counsel for Plaintiffs and the Class*

[*additional counsel listed on signature page*]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| BOSTON RETIREMENT SYSTEM,<br><br>    Plaintiff,<br><br>    v.<br><br>UBER TECHNOLOGIES, INC., et al.,<br><br>    Defendants. | Case No.:  3:19-cv-06361-RS<br><br>**CLASS REPRESENTATIVES' MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing:  December 4, 2024 at 9:30 a.m.<br>Courtroom: No. 3 – 17th Floor<br>Judge:  Hon. Richard Seeborg<br>Filed:  Oct. 4, 2019 |

# TABLE OF CONTENTS

Page

NOTICE OF MOTION.................................................................................................1

STATEMENT OF ISSUES TO BE DECIDED ..........................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................2

PRELIMINARY STATEMENT ................................................................................2

PRELIMINARY APPROVAL AND THE NOTICE PROGRAM ............................4

ARGUMENT .............................................................................................................5

I.      THE SETTLEMENT WARRANTS FINAL APPROVAL...............................5

        A.      Standards Governing Approval of Class Action Settlements ...............5

        B.      Rule 23(e)(2)(A): The Class Has Been Adequately Represented.........7

        C.      Rule 23(e)(2)(B): The Settlement Is the Product of Arm's-Length
                Negotiations Between Experienced Counsel ........................................9

        D.      Rule 23(e)(2)(C): The Relief Provided by the Settlement Is Adequate ..............11

                1.      Rule 23(e)(2)(C)(i): Risks of Continued Litigation ................12

                2.      Rule 23(e)(2)(C)(ii): Effective Process for Distributing Relief to
                        the Class ..................................................................18

                3.      Rule 23(2)(C)(iii): Anticipated Legal Fees and Expenses ......20

        E.      Rule 23(e)(2)(D): Class Members Are Treated Equitably Relative to One
                Another ..................................................................20

II.     THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION.........20

III.    THE NOTICE PROGRAM AND REACTION OF THE CLASS TO DATE ...............22

CONCLUSION.........................................................................................................24

CLASS REPRESENTATIVES' MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3: 19-CV-06361-RS

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Aqua Metals, Inc. Sec. Litig.*,
  2022 WL 612804 (N.D. Cal. Mar. 3, 2022)................................................................ 17

*In re Banc of Cal. Sec. Litig.*,
  2019 WL 6605884 (C.D. Cal. Dec. 4, 2019) ............................................................. 10

*In re Bluetooth Headset Prod. Liab. Litig.*,
  654 F.3d 935,947 (9th Cir. 2011) ............................................................................. 10

*Campbell v. Facebook, Inc.*,
  951 F.3d 1106 (9th Cir. 2020) ..................................................................................... 5

*In re Celera Corp. Sec. Litig.*,
  2015 WL 7351449 (N.D. Cal. Nov. 20, 2015) ........................................................... 16

*Cheng Jiangchen v. Rentech, Inc.*,
  2019 WL 5173771 (C.D. Cal. Oct. 10, 2019) ......................................................... 9, 10

*Churchill Vill., L.L.C. v. Gen. Elec.*,
  361 F.3d 566 (9th Cir. 2004) ........................................................................... 7, 12, 23

*Ciuffitelli v. Deloitte & Touche LLP*,
  2019 WL 1441634 (D. Or. Mar. 19, 2019) ................................................................ 21

*Class Plaintiffs v. City of Seattle*,
  955 F.2d 1268 (9th Cir. 1992) ................................................................................... 21

*Destefano v. Zynga Inc.*,
  2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ......................................................... 11, 23

*In re Extreme Networks, Inc. Sec. Litig.*,
  2019 WL 3290770 (N.D. Cal. July 22, 2019)......................................................... 10, 12

*Garner v. State Farm Mut. Auto Ins. Co.*,
  2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) .............................................................. 6

*In re Google Location History Litig.*,
  2024 WL 1975462 (N.D. Cal. May 3, 2024) .............................................................. 16

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ........................................................................... 7, 9, 12

*Hunt v. Bloom Energy Corp.*,
  2024 WL 1995840 (N.D. Cal. May 6, 2024) ......................................................... 17, 23

CLASS REPRESENTATIVES' MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3: 19-CV-06361-RS

ii

*In re LinkedIn User Priv. Litig.*,
   309 F.R.D. 573 (N.D. Cal. 2015).................................................................. 18

*Nat'l Rural Telecomm. Coop. v. DirectTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ................................................................... 9

*In re Netflix Privacy Litig.*,
   2013 WL 1120801 (N.D. Cal. Mar. 18, 2013)............................................. 10

*Nguyen v. Radient Pharms. Corp.*,
   2014 WL 1802293 (C.D. Cal. May 6, 2014) ............................................... 16

*In re NVIDIA Corp. Derivative Litig.*,
   2008 WL 5382544 (N.D. Cal. Dec. 22, 2008) ............................................... 9

*Officers for Justice v. Civil Serv. Comm'r*,
   688 F.2d 615 (9th Cir. 1982) ......................................................................... 6

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) ...................................................... 17

*In re Portal Software, Inc. Sec. Litig.*,
   2007 WL 1991529 (N.D. Cal. June 30, 2007) ............................................ 10

*Redwen v. Sino Clean Energy, Inc.*,
   2013 WL 12303367 (C.D. Cal. July 9, 2013) ............................................. 21

*Satchell v. Fed. Express Corp.*,
   2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) ............................................ 10

*Slack Technologies, LLC v. Pirani*,
   598 U.S. 759 (2023) ..................................................................................... 17

*In re Splunk Inc. Sec. Litig.*,
   2024 WL 923777 (N.D. Cal. Mar. 4, 2024).................................................. 12

*In re Stable Road Acquisition Corp.*,
   2024 WL 3643393 (N.D. Cal. Apr. 23, 2024) ............................................... 7

*In re Syncor ERISA Litig.*,
   516 F.3d 1095 (9th Cir. 2008) ....................................................................... 5

*In re The Honest Company Sec. Litig.*,
   2023 WL 3190506 (C.D. Cal. May 1, 2023) ............................................... 17

*Torrisi v. Tucson Elec. Power Co.*,
   8 F.3d 1370 (9th Cir. 1993) ......................................................................... 18

*Vancouver Alumni Asset Holdings Inc. v. Daimler AG*,
   No. 16-cv-02942 (C.D. Cal. Mar. 13, 2023) ............................................... 19

CLASS REPRESENTATIVES' MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3: 19-CV-06361-RS

iii

*Vataj v. Johnson*,
    2021 WL 1550478 (N.D. Cal. Apr. 20, 2021) ........................................................ 21

*In re Wells Fargo Sec. Litig.*,
    991 F.Supp. 1193 (N.D. Cal. 1998) ...................................................................... 19

*In re Zynga Inc., Sec. Litig.*
    2015 WL 6471171 (N.D. Cal. Oct. 27, 2015) ........................................................ 7

**Statutes**

15 U.S.C. § 77z-1(a)(4) ..................................................................................................... 20

15 U.S.C. §77z-1(a)(7) ...................................................................................................... 23

15 U.S.C. §77k(e) .............................................................................................................. 22

**Rules**

Fed. R. Civ. P.  23 .................................................................................................... *passim*

Fed. R. Civ. P. 23(e)(1)(B) ............................................................................................... 22

Fed. R. Civ. P. 23(e)(2) ....................................................................................................... 1

Fed. R. Civ. P.  23 .................................................................................................... *passim*

Fed. R. Civ. P. 23(2)(C)(iii) .............................................................................................. 20

Fed. R. Civ. P. 23 (c)(1) .................................................................................................... 16

Fed. R. Civ. P. 23(c)(2)(B) ............................................................................................... 23

Fed. R. Civ. P. 23(e)(2) ............................................................................................. 1, 6, 7

Fed. R. Civ. P. 23(e)(2)(A) ............................................................................................ 7, 9

Fed. R. Civ. P.  23(e)(2)(B) ................................................................................................ 9

Fed. R. Civ. P. 23(e)(2)(C) .............................................................................................. 11

Fed. R. Civ. P. 23(e)(2)(C)(i) .......................................................................................... 12

Fed. R. Civ. P. 23(e)(2)(C)(ii) .................................................................................... 18, 19

Fed. R. Civ. P. 23(e)(2)(C)(iii) ........................................................................................ 20

Fed. R. Civ. P. 23(e)(2)(C)(iv) .......................................................................................... 6

Fed. R. Civ. P. 23(e)(2)(D) ....................................................................................... 20, 21

Fed. R. Civ. P. 2 (e)(3) ....................................................................................................... 6

CLASS REPRESENTATIVES' MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3: 19-CV-06361-RS

iv

## NOTICE OF MOTION

PLEASE TAKE NOTICE that Lead Plaintiff Boston Retirement System ("BRS"), David Messinger ("Messinger"), Salvatore Toronto acting on behalf of the Ellie Marie Toronto ESA ("Toronto"), and Irving S. and Judith Braun (the "Brauns") (collectively, "Class Representatives"), on behalf of themselves and the other members of the certified Class, hereby move this Court for orders, pursuant to Federal Rule of Civil Procedure 23(e)(2): (i) granting final approval of the proposed Settlement of the above-captioned certified class action (the "Action"), as set forth in the Stipulation and Agreement of Settlement, dated July 19, 2024 (the "Stipulation," ECF No. 459-2); and (ii) approving the proposed plan for allocating the proceeds of the Settlement to the Class ("Plan of Allocation").[1]

The Motion is supported by the following memorandum of points and authorities, and the accompanying Declaration of Alfred L. Fatale III in Support of (I) Class Representatives' Motion for Final Approval of Class Action Settlement and Plan of Allocation and (II) Class Counsel's Motion for an Award of Attorneys' Fees and Payment of Expenses, dated October 4, 2024 ("Fatale Declaration" or "Fatale Decl."), with annexed exhibits.

Pursuant to the Court's Order Granting Preliminary Approval of Class Action Settlement (ECF No. 468), any objections to the Settlement and/or the Plan of Allocation must be filed by November 14, 2024. A proposed Judgment, negotiated by the Parties, and a proposed order approving the Plan of Allocation, will be submitted with Class Representatives' reply submission on or before November 27, 2024, after the deadline for objecting to the Settlement has passed.

## STATEMENT OF ISSUES TO BE DECIDED

1.      Whether the Court should approve the proposed Settlement of the Action as fair, reasonable, and adequate pursuant to Rule 23(e)(2).

2.      Whether the Court should approve the proposed Plan of Allocation as fair and reasonable.

---

[1] The terms of the Settlement are set forth in the Stipulation. All capitalized terms used herein are defined in the Stipulation and have the same meanings as set forth therein. Unless otherwise noted, citations and internal quotations have been omitted.

## MEMORANDUM OF POINTS AND AUTHORITIES

### PRELIMINARY STATEMENT

Class Representatives respectfully submit this memorandum, on behalf of themselves and the certified Class, in support of final approval of the proposed Settlement in the amount of $200,000,000, in cash, pursuant to the terms set forth in the Stipulation. The Settlement is with all defendants: Uber Technologies, Inc. ("Uber" or the "Company"); the Individual Defendants (together with Uber, the "Uber Defendants"); and the Underwriter Defendants (together with Uber and the Individual Defendants, the "Defendants").

As described below and in the accompanying Fatale Declaration, the Settlement is an outstanding result for the Class.  Facing the risks of summary judgment and a quickly approaching trial date, Class Representatives, being fully informed by substantial discovery involving over 200,000 documents and 46 depositions, negotiated an exception recovery for the Class that ranks near the top of the lists of largest class settlements for IPO-related claims brought only under the Securities Act of 1933 ("Securities Act").

The Settlement was reached after more than four years of vigorously contested litigation in which all Parties strongly advanced their positions. During the course of the litigation, Class Representatives, among other things: (i) drafted two detailed amended complaints; (ii) defeated two extensive motions to dismiss; (iii) obtained class certification; (iv) researched, drafted, propounded, and responded to document requests, interrogatories, and requests for admission; (v) reviewed approximately 107,196 documents (893,997 pages) produced by Uber Defendants, 31,379 produced by third parties, and 86,280 produced by Underwriter Defendants; (vi) reviewed at least 27 privilege logs, containing at least 50,442 entries; (vii) served at least 39 subpoenas and at least 140 deposition notices (including amended notices); (viii) took 32 and defended 14 depositions; (ix) litigated numerous discovery disputes; (x) consulted with experts in the fields of due diligence, negative causation and damages, and tracing; (xi) served five expert reports; and (xii) participated in pre-mediation conferences, exchanged extensive mediation briefing, and participated in two arm's length mediations overseen by a highly respected mediator. Indeed, at

CLASS REPRESENTATIVES' MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:19-CV-06361-RS

2

the time of settlement, the Parties had completed an arduous and thorough fact and expert discovery process, contested class certification proceedings, and were preparing for summary judgment and trial. *See generally* Fatale Declaration, filed herewith.[2]

As a result of these efforts, Class Representatives and Class Counsel had a well-developed understanding of the strengths and weaknesses of the claims at issue in the Action. Class Representatives litigated the Action with the utmost persistence and tenacity and were prepared to litigate their claims to trial.

While Class Representatives believe the Class's claims are meritorious and strong, they recognize there were substantial risks to continued litigation and trial. As discussed in detail in the Fatale Declaration and below, among other things, Defendants would likely argue in future dispositive motions and at trial that, for example, Class Representatives would be unable to prove that each of their statements or alleged omissions were materially false and misleading at trial. Further, Defendants would have likely continued to argue that certain allegations and theories, which were the focus of subsequent discovery sought by Plaintiffs, were not explicitly pled in the Second Amended Complaint and must be excluded from trial. Additionally, Defendants would put forward facts and several highly qualified experts in support of numerous affirmative defenses that could potentially absolve Defendants from liability or drastically reduce the size of the Class and the amount of recoverable damages.

The Settlement avoids these risks (and others), as well as further delay and expense of continued litigation – while providing a substantial and certain benefit to the Class. Furthermore, Class Representatives were actively involved throughout the litigation, diligently representing the Class, and have approved the Settlement. *See* Declaration of Timothy J. Smyth, Esq. on behalf of

---

[2] The Fatale Declaration is an integral part of this submission and, for the sake of brevity in this memorandum, the Court is respectfully referred to it for a detailed description of, *inter alia*: the history of the Action; the nature of the claims asserted; the litigation efforts; the negotiations leading to the Settlement; and the risks and uncertainties of continued litigation, among other things. Citations to "¶" in this memorandum refer to paragraphs in the Fatale Declaration.

All exhibits herein are annexed to the Fatale Declaration. For clarity, citations to exhibits that themselves have attached exhibits will be referenced as "Ex. __ -__." The first numerical reference is to the designation of the entire exhibit attached to the Declaration and the second reference is to the exhibit designation within the exhibit itself.

CLASS REPRESENTATIVES' MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:19-CV-06361-RS

3

Boston Retirement System, Ex. 1; Declaration of David Messinger, Ex. 2; Declaration of Salvatore Toronto, Ex. 3; and Declaration of Irving S. and Judith Braun, Ex. 4. The Class's reaction to date similarly reflects approval of the Settlement. Notice was provided to the Class beginning on August 23, 2024. *See* Declaration of Adam D. Walter Regarding (A) Mailing of the Settlement Postcard and (B) Publication of the Summary Notice, dated October 4, 2024 ("Mailing Decl."), Ex. 6. While the November 14, 2024 deadline to object to the Settlement has not yet passed, to date, no objections have been received by Class Counsel or docketed. Class Representatives respectfully request that the Court approve the Settlement.

In addition, the Plan of Allocation for the distribution of the proceeds of the Settlement, which was developed by Class Counsel with the assistance of Class Representatives' damages expert, is a fair and reasonable method for distributing the Net Settlement Fund to eligible claimants and should also be approved by the Court.

Given the foregoing considerations and the factors addressed below, Class Representatives submit that: (i) the Settlement meets the standards for final approval under Rule 23 and is a fair, reasonable and adequate result for the Class; and (ii) the Plan of Allocation is a fair and reasonable method for allocating the Net Settlement Fund to Class Members who submit valid Claim Forms.

**PRELIMINARY APPROVAL AND THE NOTICE PROGRAM**

On August 9, 2024, the Court entered an order preliminarily approving the Settlement and approving the proposed forms and methods of providing notice to the Class (the "Preliminary Approval Order", ECF No. 468). Pursuant to and in compliance with the Preliminary Approval Order, using names and addresses gathered in connection with the Class Notice, beginning on August 23, 2024, the Court-appointed Claims Administrator A.B. Data, Ltd. ("A.B. Data"), caused the Settlement Postcard to be mailed by first-class mail to potential Class Members. *See* Mailing Decl., Ex. 6 at ¶¶8-11. The Claims Administrator also mailed or emailed Settlement Postcards to Nominees, pursuant to the instructions set forth in the Preliminary Approval Order. A total of 772,957 Settlement Postcards have been mailed or emailed to Class Members or

Class Representatives' Motion for Final Approval of Proposed Class Action Settlement and Memorandum of Points and Authorities in Support Thereof
Case No. 3:19-cv-06361-RS

4

1   Nominees. *Id*. at ¶11. On September 6, 2024, the Summary Notice was published in *The Wall*

2   *Street Journal* and was disseminated over the internet using *PR Newswire*. *Id*. at ¶12 and Exhibit

3   C attached thereto. The Claim Form and the long-form Settlement Notice, along with other

4   Settlement related documents, were posted on the website maintained for the Action,

5   www.UberIPOSecuritiesLitigation.com, which was developed initially in connection with the

6   Class Notice and has been updated for the Settlement. In addition to containing the Settlement

7   Notice and Claim Form, the website provides information concerning the case and important dates

8   and deadlines in connection therewith, as well as access to downloadable copies of relevant

9   documents, including the Second Amended Complaint, the Stipulation, and the Preliminary

10  Approval Order. *Id*. at ¶13. Copies of the Settlement Notice and Claim Form are also available

11  on Class Counsel's website, www.labaton.com. ¶103.

12       The notices described, *inter alia*, the claims asserted in the Action, the contentions of the

13  Parties, the course of the litigation, the terms of the Settlement, the maximum amounts that would

14  be sought in attorneys' fees and expenses, the Plan of Allocation, the right to object to the

15  Settlement, and the opportunity to opt back into the Class. *See generally* Ex. 6-A through C. The

16  notices also gave the deadlines for objecting, opting back into the Class, submitting claims, and

17  advised potential Class Members of the scheduled Settlement Hearing before this Court. *Id*. To

18  date, the Class's reaction to the proposed Settlement has been positive. While the deadline

19  (November 14, 2024) for objecting to the Settlement has not yet passed, to date there have been

20  no objections to the proposed Settlement, and no objections to the Plan of Allocation.[3]

21                                    **ARGUMENT**

22  **I.    THE SETTLEMENT WARRANTS FINAL APPROVAL**

23       **A.    Standards Governing Approval of Class Action Settlements**

24       The Ninth Circuit recognizes a "'strong judicial policy that favors settlements, particularly

25  where complex class action litigation is concerned.'" *Campbell v. Facebook, Inc*., 951 F.3d 1106,

26  1121 (9th Cir. 2020); *In re Syncor ERISA Litig.,* 516 F.3d 1095, 1101 (9th Cir. 2008). It is well

27

28       [3] Should any objections be received, Class Representatives will address them in their reply
    papers, which are due to be filed with the Court on November 27, 2024.

established in the Ninth Circuit that "voluntary conciliation and settlement are the preferred means of dispute resolution." *Officers for Justice v. Civil Serv. Comm'r*, 688 F.2d 615, 625 (9th Cir. 1982). Settlements of complex cases, such as this one, greatly contribute to the efficient utilization of scarce judicial resources and achieve the speedy resolution of claims. *See, e.g.*, *Garner v. State Farm Mut. Auto Ins. Co.*, 2010 WL 1687832, at *10 (N.D. Cal. Apr. 22, 2010) ("Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain and substantial recovery for the Plaintiff class.").

Rule 23(e)(2) provides that a court may approve a proposed settlement that would bind class members "only after a hearing and only on finding that it is fair, reasonable, and adequate" after considering whether:

> (A)  the class representatives and class counsel have adequately represented the class;
> (B)  the proposal was negotiated at arm's length;
> (C)  the relief provided for the class is adequate, taking into account:
>> (i)  the costs, risks, and delay of trial and appeal;
>> (ii)  the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii)  the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv)  any agreement required to be identified under Rule 23(e)(3)[4]; and
> (D)  the proposal treats class members equitably relative to each other.

Rule 23, as amended in December 2018, has not changed the established overall standard for approving a proposed class settlement, *i.e.*, evaluating whether it is fair, adequate, and reasonable. Fed. R. Civ. P. 23(e)(2).

In considering final approval, the Court may also consider the Ninth Circuit's long-standing approval factors, many of which overlap with the Rule 23 considerations: "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further

---

[4] Rule 23(e)(2)(C)(iv) requires the disclosure of any agreement between the parties in connection with a proposed settlement. Here, in addition to the Stipulation, on July 17, 2024 the Parties executed a settlement term sheet and, on July 19, 2024, they entered into a confidential Supplemental Agreement Regarding Requests for Exclusion (the "Supplemental Agreement"). The Supplemental Agreement set forth the conditions under which Uber would have the option to terminate the Settlement in the event the Court required a second opt-out opportunity and requests for exclusion reached a certain threshold. However, the Court did not re-open the opt-out period and so the Supplemental Agreement is moot. The term sheet, Stipulation, and the Supplemental Agreement are the only agreements concerning the Settlement entered into by the Parties.

CLASS REPRESENTATIVES' MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:19-CV-06361-RS

6

litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement." *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004); *see Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *see also In re Zynga Inc.*, *Sec. Litig.* 2015 WL 6471171, at *8 (N.D. Cal. Oct. 27, 2015). The Advisory Committee Notes to the 2018 amendments to Rule 23 explain that the four Rule 23(e)(2) factors are not intended to "displace" any factor previously adopted by the courts, but "rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23 Advisory Committee Notes to 2018 Amendments, Subdivision (e)(2).

All of these factors, whether in Rule 23 or Ninth Circuit jurisprudence, favor approval of the Settlement.

## B.    Rule 23(e)(2)(A): The Class Has Been Adequately Represented

In determining whether to approve a class action settlement, courts consider whether "the class representative and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon* 150 F.3d at 1027.

Class Representatives claims are based on the same common course of alleged conduct by Defendants, are typical of all other Class Members, and Class Representatives have no interests antagonistic to the Class. *See In re Stable Road Acquisition Corp.*, 2024 WL 3643393, at *6 (N.D. Cal. Apr. 23, 2024) (finding lead plaintiff adequately represented the class where lead plaintiff's claims are typical of and coextensive with the claims of the settlement class with no antagonistic interests). Indeed, in granting class certification, the Court found Lead Plaintiff and Messinger, Toronto, and the Brauns adequate to serve as Class Representatives, and Lead Counsel fit to serve

CLASS REPRESENTATIVES' MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:19-CV-06361-RS

7

as Class Counsel. *See* ECF No. 217.

Since their appointment, Class Representatives and Class Counsel have adequately represented the Class in both their vigorous prosecution of the Action and in their negotiation of the Settlement. Class Representatives and Class Counsel developed a deep understanding of the facts of the case and merits of the claims by, *inter alia*: (i) conducting the extensive investigation of the claims and defenses; (ii) drafting two detailed amended complaints; (iii) defeating two extensive motions to dismiss; (iv) obtaining class certification; (v) researching, drafting, propounding, and responding to document requests, interrogatories, and requests for admission; (vi) reviewing approximately 107,196 documents (893,997 pages) produced by Uber Defendants, 31,379 produced by third parties, and 86,280 produced by Underwriter Defendants; (vii) reviewing at least 27 privilege logs, containing at least 50,442 entries; (viii) serving at least 39 subpoenas and at least 140 deposition notices (including amended notices); (ix) taking 32 and defending 14 depositions; (x) litigating numerous discovery disputes; (xi) consulting with experts in the fields of due diligence, negative causation and damages, and tracing; (xii) serving five expert reports; and (xiii) participating in pre-mediation conferences, exchanging extensive mediation briefing, and participating in two mediations. *See generally* Fatale Decl. at §§III.-V.

Class Representatives regularly communicated with Plaintiffs' Counsel and reviewed material filings in the case, such as the complaints, the briefing on Defendants' motions to dismiss, and the motions for class certification. Plaintiffs also responded to discovery requests, including searching for and producing potentially relevant information and preparing and sitting for depositions. *See* Exs. 1-5. Furthermore, Class Representatives played active roles in the settlement discussions through counsel and with a representative for BRS attending and actively participating the mediation session on March 28, 2024. *See, e.*g., Ex. 1 at ¶6. Moreover, through counsel, the Class Representatives participated in the ongoing negotiations after the final mediation failed to achieve a settlement. With an informed understanding, Class Representatives agreed to the Settlement.

Likewise, Plaintiffs' Counsel, which are highly experienced in prosecuting and trying

CLASS REPRESENTATIVES' MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:19-CV-06361-RS

8

complex class actions, had a clear view of the strengths and risks of the case and was equipped to make an informed decision regarding the reasonableness of a potential settlement. *See Cheng Jiangchen v. Rentech, Inc.,* 2019 WL 5173771, at *5 (C.D. Cal. Oct. 10, 2019) (finding this factor satisfied where counsel "has significant experience in securities class action lawsuits"). Over the course of the litigation, Class Counsel, with the assistance of Plaintiffs' Counsel, developed a deep understanding of the facts of the case and the merits of the claims. *See generally* Fatale Decl. at §§III.-V. Class Counsel is highly qualified and experienced in securities litigation, as set forth in its firm resume (*see* Ex. 8-D) and was able to successfully conduct the litigation against skilled opposing counsel from Allen Overy Shearman Sterling US LLP, Willkie Farr & Gallagher LLP, Paul, Weiss Rifkind, Wharton & Garrison LLP, and White & Case LLP. Accordingly, the Class has been, and remains, well represented.

Through their efforts on behalf of the Class, Class Counsel and Class Representatives have concluded that the proposed Settlement is fair, reasonable, and adequate. As the Ninth Circuit observed in *Rodriguez v. West Publishing Corporation,* Class Counsel's informed opinion supports approval as "[t]his circuit has long deferred to the private consensual decision of the parties" and their counsel in settling an action. 563 F.3d 948, 965 (9th Cir. 2009); *see also In re NVIDIA Corp. Derivative Litig.,* 2008 WL 5382544, at *4 (N.D. Cal. Dec. 22, 2008) ("[S]ignificant weight should be attributed to counsel's belief that settlement is in the best interest of those affected by the settlement."); *Nat'l Rural Telecomm. Coop. v. DirectV, Inc.,* 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("'[g]reat weight' is accorded to the recommendation of counsel, who are most closely acquainted the facts of the underlying litigation.").

Accordingly, it is respectfully submitted that this factor supports approval of the Settlement.

### C.    Rule 23(e)(2)(B): The Settlement Is the Product of Arm's-Length Negotiations Between Experienced Counsel

Rule 23(e)(2)(B) asks whether "the [settlement] proposal was negotiated at arm's length." This consideration (and Rule 23(e)(2)(A) discussed above) "overlaps with certain *Hanlon* factors,

Class Representatives' Motion for Final Approval of Proposed Class Action Settlement and Memorandum of Points and Authorities in Support Thereof
Case No. 3:19-cv-06361-RS

9

such as the non-collusive nature[5] of negotiations, the extent of discovery completed, and the stage of proceedings." *In re Extreme Networks, Inc. Sec. Litig.*, 2019 WL 3290770, at *7 (N.D. Cal. July 22, 2019).

Courts have long recognized an initial presumption that a proposed settlement is fair and reasonable when it is the "product of arms-length negotiations." *In re Portal Software, Inc. Sec. Litig.*, 2007 WL 1991529, at *6 (N.D. Cal. June 30, 2007); *In re Netflix Privacy Litig.*, 2013 WL 1120801, at *4 (N.D. Cal. Mar. 18, 2013) (noting that courts afford "a presumption of fairness and reasonableness" to settlements that were "the product of non-collusive, arms' length negotiations conducted by capable and experienced counsel"); *cf Jiangchen*, 2019 WL 5173771, at *6 (finding that the settlement was the product of "serious, informed, non-collusive negotiations performed at arms-length" where it involved a mediator and vigorousness litigation). Courts have also reasoned that "one important factor [to consider] is that the parties reached the settlement … with a third-party mediator." *In re Banc of Cal. Sec. Litig.*, 2019 WL 6605884, at *2 (C.D. Cal. Dec. 4, 2019); *see also Satchell v. Fed. Express Corp.*, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) (finding "[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.").

As detailed in the Fatale Declaration, the Settlement was achieved only after two formal mediation sessions over the course of three years, which included the exchange of robust mediation materials and pre-mediation conferences, and additional negotiations with the assistance of the Mediator. During the mediation sessions, the Uber Defendants, represented by a well-regarded law firm with deep expertise in defense of securities class actions, vigorously asserted arguments against liability and damages. With Class Representatives and the Uber Defendants still meaningfully apart in their respective settlement positions after the final

---

[5] The Settlement has none of the indicia of possible collusion identified by the Ninth Circuit, *see In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935,947 (9th Cir. 2011), such as a "clear-sailing" fee agreement or a provision that would allow settlement proceeds to revert to Defendants. *See* Stipulation at ¶12 ("The Settlement is not a claims-made settlement and there is no reversion.).

CLASS REPRESENTATIVES' MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:19-CV-06361-RS

10

mediation in March 2024, they agreed to continue negotiations through the Mediator.[6] On April 22, 2024, after several separate one-on-one discussions between the Mediator and counsel for Class Representatives, on the one hand, and counsel for the Uber Defendants, on the other hand, the Mediator issued a $200 million mediator's proposal to resolve all claims subject to the negotiation of non-financial terms for the Settlement and Court approval, which Class Representatives and the Uber Defendants accepted on April 23, 2024. *See* Fatale Decl. at §V. These negotiations were at all times adversarial and at arm's length, and have produced a result that is in the best interests of the Class.

Furthermore, Class Representatives and Class Counsel had a very deep understanding of the strengths and weaknesses of the case before reaching the proposed Settlement. The Parties were at an advanced stage of the litigation when they agreed to settle, after fact and expert discovery was complete, as detailed in the Fatale Declaration. There can be no question that Class Representatives and Class Counsel had sufficient information to evaluate the case and the merits of the Settlement by the time it was reached. *See Destefano v. Zynga Inc.,* 2016 WL 537946, at *12 (N.D. Cal. Feb. 11, 2016) (noting that the extent of discovery completed and stage of proceedings supports final approval of settlement where plaintiffs engaged in a pre-filing investigation, opposed defendants' motions to dismiss and a motion for reconsideration, worked with consultants, propounded and responded to some discovery, and prepared and participated in mediation session).

### D.    Rule 23(e)(2)(C): The Relief Provided by the Settlement Is Adequate

In determining whether a class-action settlement is "fair, reasonable, and adequate," the Court must consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal." Fed. R. Civ. P. 23(e)(2)(C). This factor overlaps with the Ninth Circuit factors that consider "the strength of the plaintiffs' case", "amount offered in the settlement", and "the risk, expense, complexity, and likely duration of further litigation"

---

[6] A mediation was also held in March 2021 with counsel for Lead Plaintiff, the *Messinger* Plaintiffs and the Uber Defendants. Prior to this mediation, the Uber Defendants produced 8,600 pages of documents, the Parties had separate and joint pre-mediation calls with the Mediator and exchanged thorough mediation statements.

CLASS REPRESENTATIVES' MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:19-CV-06361-RS

11

1   and the risk of maintaining class action status". *Churchill*, 361 F.3d at 575; *Hanlon*, 150 F.3d at
2   1026.

3     Here, the $200 million Settlement Amount presents an outstanding recovery for the Class.
4   As noted below and in the Fatale Declaration, the Settlement recovers at least 15% of the potential
5   $1.3 billion in estimated statutory damages, after accounting for various factors such as residual
6   price declines in Uber stock, and it recovers 47% of the Class Representatives' experts' likely
7   lower bound of estimated recoverable damages ($424 million). ¶8. The $200 million recovery is
8   almost 15 times greater than the median recovery of $13.5 million in securities class actions
9   settled in 2023 that, like this Action, alleged only Securities Act claims. *See* Laarni T. Bulan and
10  Laura E. Simmons, *Securities Class Action Settlements – 2023 Review and Analysis* (Cornerstone
11  Research 2024), Ex. 7 at 8; ¶7. In fact, the median settlement for class actions which allege only
12  Securities Act claims between 2014 and 2023 has only been $9.9 million. *Id*. In addition, based
13  on Class Counsel's research, the recovery in this Action is the second largest settlement of an
14  IPO-related securities class action not alleging fraud claims under the Securities Exchange Act of
15  1934.[7] While Class Representatives believe that the case against Defendants is strong, that
16  confidence must be tempered by the fact that the Settlement is certain and that every case involves
17  significant risk of no recovery, particularly in a complex securities case such as this one.

18     **1. Rule 23(e)(2)(C)(i): Risks of Continued Litigation**

19    "It is well-recognized that securities actions in particular are often long, hard-fought,
20  complicated, and extremely difficult to win." *In re Extreme Networks, Inc. Sec. Litig*., 2019 WL
21  3290770, at *8. Here, the "[d]ifficulties and risks in litigating weigh in favor of approving a class
22  action settlement." *In re Splunk Inc. Sec. Litig*., 2024 WL 923777, at *5 (N.D. Cal. Mar. 4, 2024).
23  Although Class Representatives and Class Counsel believe that the claims asserted against
24  Defendants are strong, they recognize the significant challenges and risks they would face moving
25  forward, as well as the expense and length of continued litigation through summary judgment
26
27     [7] Based on Class Counsel's research, the largest settlement of only Securities Act claims in
28  connection with an IPO was in *Schuh v. HCA Holdings, Inc.*, No. 11-cv-1033 (M.D. Tenn), and only $15 million larger.

1    motions, trial, and likely appeals. As set forth below, the benefits conferred on the Class by the

2    $200 million Settlement far outweigh the costs, risks, and delay of further litigation, and confirm

3    the adequacy of and reasonableness of the Settlement.

4           **Falsity, Materiality, and Investor Knowledge:** Regarding allegations of false and

5    misleading statements and omissions in the Offering Documents, Defendants would have likely

6    continued to argue that the disclosures within the Offering Documents, and discovery, showed

7    that there were no false and misleading statements or omissions. As Defendants have repeatedly

8    noted, the Prospectus contained in the Offering Documents spanned over 300 pages and included

9    a massive 49 pages of disclosed "Risk Factors" that covered highly relevant topics such as Uber's

10   business model, passenger safety, and financial condition. Thus, Defendants would continue to

11   argue that nothing material was omitted from the Offering Documents and any stock price

12   reaction to post-IPO news was merely the materialization of already warned of risks. ¶88.

13          Defendants also would have argued that, aside from relevant disclosures in the Offering

14   Documents, relevant information and reports about Uber also existed in the public domain. In

15   support of this argument, Defendants and their experts have already highlighted the scores of

16   purportedly relevant news articles and analyst reports that they argue defeat Class

17   Representatives' claims that any material information was allegedly omitted from the Offering

18   Documents. For example, pertaining to passenger safety, Defendants would likely argue that Uber

19   released a passenger safety report, as the Offering Documents indicated Uber would and which

20   Class Representatives did not challenge, and that no evidence of purposeful delay to release the

21   report until after the IPO existed. Regarding slowing growth and losses, Defendants would likely

22   argue that this issue was discussed by analysts and at road shows prior to the IPO, and metrics

23   were published for years leading up to the IPO and disclosed in the Offering Documents.

24   Moreover, Defendants would highlight for the jury that the unchallenged passenger safety report

25   demonstrated that only 0.01% of trips had any safety-related issues at all, and only 0.0003% of

26   trips had a report of a critical safety incident; facts which could prevent a jury from finding any

27   related misstatements or omissions were material to investors. ¶¶88, 89.

28

Likewise, regarding slowing growth and losses, Defendants would likely argue that this issue was discussed by analysts and at road shows prior to the IPO, and metrics were published for years leading up to the IPO and disclosed in the Offering Documents. ¶90. Defendants would likely continue to advocate their position, as discussed below, that the Court has already held that Uber was not required to disclose Q2 2019 financial results at the time of the IPO. *See* ECF No. 95 at 14.

Regarding driver classification, Defendants would likely argue that Uber's classification of drivers as independent contractors was widely known and the subject of prior litigation. Moreover, it is an unavoidable fact that in the five years since the IPO, Uber has not been required to re-classify its drivers as employees under *Dynamex* (the California Supreme Court rule on the test for independent contractors). ¶91.

Not only would these facts likely present challenges to Class Representatives from proving to a jury that the alleged misstatements and omissions were both false and material, but they also militate in favor of Defendants' asserted knowledge defense. Defendants have argued that because much was known to the investing public – good and bad – about Uber's business practices, passenger safety, and financial condition at the time of the IPO, even statements or omissions proven to be false and misleading would nonetheless be insulated from liability because they cannot be held liable for failing to disclose information that was otherwise actually or imputably known to investor.

**Alleged Unpled Claims:** Additionally, Defendants would have likely continued to argue that certain allegations and theories, which were the focus of subsequent discovery sought by Plaintiffs, were not explicitly pled in the Second Amended Complaint. Defendants would have likely moved for dismissal and preclusion based on this issue, creating uncertainty as to whether Class Representatives would be allowed to proceed with such allegations. For example, regarding segment reporting, Defendants would likely argue that Class Representatives never moved to amend the Second Amended Complaint to include segment reporting as a pled allegation. If the Court were to agree with Defendants' argument, it is possible that Class Representatives could no

CLASS REPRESENTATIVES' MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:19-CV-06361-RS

14

longer proceed with their theory of falsity based on segment reporting. ¶93.

**Due Diligence:** Each of the Individual Defendants and the Underwriter Defendants also have asserted a due diligence defense as to their liability. While Class Representatives would have worked extensively with their due diligence experts with a view towards presenting compelling arguments to the jury to show that these Defendants were negligent in connection with the IPO, these Defendants would also have put forth well-qualified experts of their own showing that they conducted a reasonable investigation and had reasonable grounds for their belief in the Offering Documents' truthfulness and completeness. ¶94.

**Trial**: Defendants would attempt to inform the trier of fact that Uber is now a profitable company with a drastically improved reputation and a new CEO who has in fact created a "new day at Uber." This could potentially affect jurors' views of Uber and the allegations. ¶95. Moreover, given the nature of the claims and allegations focusing on internal conduct and knowledge at Uber around the time of the IPO, Class Representatives faced a significant challenged in proving their case through the testimony of former and current Uber employees who would not readily admit mistakes were made in connection with preparing the Offering Documents or view documentary evidence in the same light as Class Representatives.

**Damages:** Further, while the Class Representatives' consulting damages expert estimated that statutory damages were approximately $1.3 billion after accounting for various factors, including residual price declines in Uber stock, Defendants and their experts would have also made several credible arguments that any recoverable damages should be much lower, if not zero. ¶¶96-101.

Defendants would argue that evidence and data show that rather than dropping due to post-IPO revelation of material negative information known by Uber at the time of the IPO, Uber's stock price trended down starting the day of the IPO itself and largely continued to do so for the next several months irrespective of what news entered the market. Defendants would likely go on to argue that prior to the filing of the first complaint in this Action, Uber's stock price only had three days of statistically significant negative residual returns. If some of these arguments

CLASS REPRESENTATIVES' MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:19-CV-06361-RS

15

with respect to focusing only on statistically significant price drops were successful, recover damages, according to Class Representatives' consulting damages expert, could likely be as low as $424 million. And if Defendants' arguments were further or fully accepted, *i.e.*, Defendants were able to sever causality on statistically significant days, Defendants would claim that damages should be significantly reduced further, potentially to zero. Indeed, on one of the statistically significant days, August 9, 2019, which followed Uber's public release of its Q2 2019 earnings, Defendants would argue that the Court has already found that the Defendants were "not required to disclose [Uber's] Q2 2019 Financial Results at the time of the IPO," thus severing causality on that day. ECF No. 95 at 14. Defendants would more broadly argue that any stock price declines on all of the statistically significant days were caused, not by the revelation of the truth about prior alleged misrepresentations, but rather by the materialization of disclosed risks, new information about unchallenged aspects of Uber's business, and investors' evolving views on the ridesharing industry in general. ¶¶98-99.

Furthermore, issues relating to damages would likely have come down to an unpredictable and hotly disputed "battle of the experts." The uncertainty as to which side's expert's view might be credited by the jury presents a substantial litigation risk in securities actions. *See, e.g., In re Celera Corp. Sec. Litig*., 2015 WL 7351449, at *6 (N.D. Cal. Nov. 20, 2015) (finding that risks related to the "battle of experts" weighed in favor of settlement approval); *Nguyen v. Radient Pharms. Corp*., 2014 WL 1802293, at *2 (C.D. Cal. May 6, 2014) (approving settlement in securities case where "[p]roving and calculating damages required a complex analysis, requiring the jury to parse divergent positions of expert witnesses in a complex area of the law" and "[t]he outcome of that analysis is inherently difficult to predict and risky").

**Maintaining Class Certification:** Although the Court certified a litigation class on July 26, 2022 and notice of certification was provided to Class Members, Defendants could move to decertify the class. Rule 23(c)(1) provides that a class certification order may be altered or amended at any time before decision on the merits, which is an "inescapable and weighty risk that weighs in favor of a settlement." *In re Google Location History Litig*., 2024 WL 1975462, at *6

(N.D. Cal. May 3, 2024).

**Tracing:** Both damages and the size of the Class could also be significantly reduced by the yet to be addressed question of tracing. Defendants would likely argue that in light of the U.S. Supreme Court's recent decision in *Slack Technologies, LLC v. Pirani*, 598 U.S. 759 (2023), which requires that Section 11 plaintiffs must plead and prove that they purchased securities traceable to the registration statement at issue, at minimum no potential Class Member after May 14, 2019 (the date the IPO shares were distributed) could prove tracing. Defendants would likely argue that on that date the IPO shares were deposited with the DTC and they were comingled with non-IPO shares, thus, making tracing impossible.[8] ¶100. As a result, Defendants would likely seek to decertify the Class and at minimum would seek to have it limited to investors who purchased Uber's common stock between May 10, 2019 and May 13, 2019. *See In re The Honest Company Sec. Litig.*, 2023 WL 3190506, at *5 (C.D. Cal. May 1, 2023) (limited Section 11 class period to the date of the IPO to the date on which unregistered shares were comingled at the DTC).

**Outstanding Settlement:** Even without considering Defendants' potential tracing arguments, the Settlement recovers at least 15% of the potential $1.3 billion in damages. It also recovers 47% of the Class Representatives' experts' likely lower bound of estimated recoverable damages ($424 million). Courts regularly approve settlements with comparable or lower percentage recoveries than obtained here. *See, e.g.*, *In re Aqua Metals, Inc. Sec. Litig.*, 2022 WL 612804, at *6 (N.D. Cal. Mar. 3, 2022) (approving settlement that recovers approximately 7.3% of likely recoverable damages); *In re Omnivision Techs., Inc.,* 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (finding settlement yielding 6% of potential damages after deducting fees and costs was "higher than the median percentage of investor losses recovered in recent shareholder class action settlements"); *Hunt v. Bloom Energy Corp.*, 2024 WL 1995840, at *6 (N.D. Cal. May 6, 2024) (approving settlement that recovers "approximately 5.2% of the estimated maximum

---

[8] Damages under Section 12 could also be limited to a narrow class because Defendants would argue that Section 12 liability does not attach for sales in the aftermarket and damages are limited to only those investors who can prove they purchased their shares from or were solicited by a specific defendant.

CLASS REPRESENTATIVES' MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:19-CV-06361-RS

17

damages potentially available").

Notably, the $200 million recovery is almost 15 times greater than the median recovery of $13.5 million in securities class actions settled in 2023 that, like this Action, alleged only Securities Act claims. *See* Laarni T. Bulan and Laura E. Simmons, *Securities Class Action Settlements – 2023 Review and Analysis* (Cornerstone Research 2024), Ex. 7 at 8. In fact, the median settlement for class actions which allege only Securities Act claims between 2014 and 2023 was only $9.9 million. *Id*. Finally, based on Class Counsel's research, the Settlement is the second largest settlement of an IPO-related securities class action not alleging fraud claims under the Securities Exchange Act of 1934.[9]

Lastly, the Settlement represents a prompt and substantial tangible recovery, without the considerable risk, expense, and delay of summary judgment, trial, and post-trial litigation. *See, e.g.*, *Torrisi v. Tucson Elec. Power Co*., 8 F.3d 1370, 1376 (9th Cir. 1993) ("the cost, complexity and time of fully litigating the case all suggest that this settlement was fair"); *In re LinkedIn User Priv. Litig.*, 309 F.R.D. 573, 587 (N.D. Cal. 2015) ("Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results."). At each of these stages, there would be significant risks attendant to the Action's continued prosecution, and there was no guarantee that further litigation would have resulted in a higher recovery, or any recovery at all.

Accordingly, in light of all the substantial risks and expense of continued litigation, and compared to the certain and prompt recovery of $200,000,000, the Settlement is an outstanding result.

### 2. Rule 23(e)(2)(C)(ii): Effective Process for Distributing Relief to the Class

Rule 23(e)(2)(C)(ii) instructs courts to consider whether the relief provided to the class is adequate in light of the "effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims."

---

[9] Based on Class Counsel's research, the largest settlement of only Securities Act claims in connection with an IPO was in *Schuh v. HCA Holdings, Inc.*, No. 11-cv-1033 (M.D. Tenn), and only $15 million larger.

CLASS REPRESENTATIVES' MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:19-CV-06361-RS

18

Here, the proceeds of the Settlement will be distributed with the assistance of an experienced claims administrator, A.B. Data, Ltd., which was previously appointed by the Court to disseminate the Class Notice. The Claims Administrator will employ a well-tested protocol for the processing of claims in a securities class action. Specifically, a Claimant will submit, either by mail or online using the case website, the Court-approved Claim Form. Based on the trade information provided by Claimants, the Claims Administrator will determine each Claimant's eligibility to recover by, among other things, calculating their respective "Recognized Claims" based on the Court-approved Plan of Allocation, and ultimately determine each eligible Claimant's *pro rata* portion of the Net Settlement Fund. *See* Stipulation at ¶¶21, 27. Plaintiffs' claims will be reviewed in the same manner. Claimants will be notified of any defects or conditions of ineligibility and be given the chance to contest the rejection of their claims. Stipulation at ¶27(d)-(e). Any claim disputes that cannot be resolved will be presented to the Court. *Id*.

After the Settlement reaches its Effective Date (*id*. at ¶36) and the claims process is completed, Authorized Claimants will be issued payments. If there are un-claimed funds after the initial distribution, and it would be feasible and economical to conduct a further distribution, the Claims Administrator will conduct a further distribution of remaining funds (less the estimated expenses for the additional distribution, Taxes, and unpaid Notice and Administration Expenses). Additional distributions will proceed in the same manner until it is no longer economical to conduct further distributions. Thereafter, Class Representatives recommend that any *de minimis* balance that remains in the Net Settlement Fund, after payment of any outstanding Notice and Administration Expenses, be donated to the Council of Institutional Investors, a non-profit, non-sectarian organization, or such other organization approved by the Court.[10] *Id* at ¶24; Ex. 6-B at

---

[10] CII is a non-profit, non-partisan association of benefit funds, foundations, and endowments that seeks to educate its members, policymakers, and the public about corporate governance, shareowner rights, and related investment issues. *See, e.g., Vancouver Alumni Asset Holdings Inc. v. Daimler AG,* No. 16-cv-02942, ECF No. 346 (C.D. Cal. Mar. 13, 2023) (designating CII as *cy pres* recipient in securities class action); *In re Wells Fargo Sec. Litig*., 991 F.Supp. 1193, 1198 (N.D. Cal. 1998) (recognizing CII as a potential proper recipient of cy pres distributions in securities class actions). Neither the Parties nor their counsel have a relationship with CII.

CLASS REPRESENTATIVES' MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:19-CV-06361-RS

19

¶78.

### 3.      Rule 23(2)(C)(iii): Anticipated Legal Fees and Expenses

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorneys' fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). As discussed in Class Counsel's Memorandum of Points and Authorities in Support of an Award of Attorneys' Fees and Expenses, submitted herewith, Class Counsel seek an award of attorneys' fees of 29% of the Settlement Fund and Litigation Expenses of $2,810,672.75. Class Counsel's Fee Memorandum also includes a request by the Class Representatives for $120,420 in connection with their work in the litigation, pursuant to the PSLRA. Approval of attorneys' fees is entirely separate from approval of the Settlement, is not part of any agreement with Defendants, and the Settlement cannot be terminated based on any ruling on the fees or expenses.

### E.      Rule 23(e)(2)(D): Class Members Are Treated Equitably Relative to One Another

The Settlement does not improperly grant preferential treatment to either Plaintiffs or any segment of the Class. Rather, all members of the Class, including Plaintiffs, will receive a distribution from the Net Settlement Fund pursuant to the Plan of Allocation approved by the Court, which is discussed below.[11] All Class Members that were allegedly harmed as a result of the alleged violations of the Securities Act, and that submit an eligible claim pursuant to the Plan of Allocation, will receive their *pro rata* share of the Net Settlement Fund based on their "Recognized Claim" under the plan. *See generally* Settlement Notice at ¶¶61-79.

## II.     THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION

In addition to seeking final approval of the Settlement, Class Representatives also seek final approval of the Plan of Allocation. The Plan of Allocation, drafted with the assistance of Class Representatives' damages expert, is a fair, reasonable, and adequate method for allocating

---

[11] Plaintiffs request for reimbursement of their reasonable costs and expenses directly related to their participation in the Action, noted above, would not constitute preferential treatment. *See* 15 U.S.C. §15 U.S.C. § 77z-1(a)(4) (reimbursement of plaintiffs' costs explicitly contemplated by the PSLRA in addition to receiving their *pro rata* recovery).

CLASS REPRESENTATIVES' MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:19-CV-06361-RS

20

the proceeds of the Settlement among eligible claimants and treats all Class Members equitably, as required by Rule 23(e)(2)(D). The standard for approval of a plan of allocation in a class action under Rule 23 of the Federal Rules of Civil Procedure is the same as the standard applicable to the settlement as a whole – the plan must be fair, reasonable, and adequate. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1284 (9th Cir. 1992); *see also Vataj v. Johnson*, 2021 WL 1550478, at 10 (N.D. Cal. Apr. 20, 2021). An allocation formula need only have a "reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *Id*.

Each Authorized Claimant, including Class Representatives, will receive a distribution pursuant to the Plan, and Class Representatives will be subject to the same formula for distribution of the Settlement as other class members. *See Ciuffitelli v. Deloitte & Touche LLP*, 2019 WL 1441634, at *18 (D. Or. Mar. 19, 2019) ("[t]he Proposed Settlement does not provide preferential treatment to Plaintiffs or segments of the class" where "the proposed Plan of Allocation compensates all Class Members and Class Representatives equally in that they will receive a pro rata distribution based [sic] of the Settlement Fund based on their net losses"). "[A] plan of allocation . . . fairly treats class members by awarding a pro rata share to every Authorized Claimant, even as it sensibly makes interclass distinctions based upon, *inter alia*, the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue." *Redwen v. Sino Clean Energy, Inc*., 2013 WL 12303367, at *8 (C.D. Cal. July 9, 2013).

Claimants' Recognized Loss Amounts per share will be calculated using the transactional information provided by Claimants in their Claim Forms. Authorized Claimants will recover their proportional "*pro rata*" amount of the Net Settlement Fund based on the sum of their Recognized Loss Amounts per share, *i.e.*, their total Recognized Claims.

Here, the objective of the Plan of Allocation is to distribute the Net Settlement Fund equitably among those Class Members who suffered economic losses as a result of the alleged violations of the federal securities law with respect to shares of Uber's publicly traded common stock purchased or otherwise acquired pursuant and/or traceable to the Offering Documents for

CLASS REPRESENTATIVES' MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:19-CV-06361-RS

21

Uber's IPO. In general, the Recognized Loss Amounts per share calculated under the Plan are based principally on the statutory formula for damages under Section 11(e) of the Securities Act, 15 U.S.C. §77k(e). As set forth in the Plan, a Claimant's total Recognized Claim will depend upon several factors, including the date(s) when the Claimant purchased or acquired his, her, or its shares of Uber common stock during the Traceability Period, and whether such shares were sold (and if so, when and at what price) or held. The Plan applies a ninety-five percent (95%) discount to claims of Class Members that purchased or otherwise acquired Uber's common stock after September 25, 2019. This discount reflects the potential weakness of claims arising after the State Court Action was filed by Plaintiff Messinger in California state court after the close of trading on September 25, 2019. (The State Court Action was brought to remedy the same violations of the Securities Act based upon many of the same factual allegations as this Action). Defendants would have likely argued that purchasers of Uber's publicly traded common stock after September 25, 2019 could have had actual or imputed knowledge of many, if not all, of the allegedly false and misleading statements and omissions at issue in this Action, which would disqualify those purchasers from recovery under the Securities Act.  ¶¶106-117.

The Plan of Allocation was fully described in the Settlement Notice and, to date, there has been no objection to the proposed plan. *See* Ex. 6-B at ¶¶61-79.

It is respectfully submitted that the proposed Plan of Allocation will result in a fair distribution of the available proceeds among Class Members who submit valid claims.

## III.   THE NOTICE PROGRAM AND REACTION OF THE CLASS TO DATE

Notice of a class action settlement must be directed "in a reasonable manner to all class members who would be bound" by the Settlement. Fed. R. Civ. P. 23(e)(1)(B). In granting preliminary approval of the Settlement, the Court approved Class Representatives' proposed notice plan. *See* ECF No. 468. The notice program's combination of individually mailed Settlement Postcards to all Class Members who could be identified with reasonable effort, supplemented by the Summary Notice in a widely circulated publication, transmission over a business newswire, and publication on internet websites, satisfied all requirements of Rule 23,

Class Representatives' Motion for Final Approval of Proposed Class Action Settlement and Memorandum of Points and Authorities in Support Thereof
Case No. 3:19-cv-06361-RS

22

due process, the PSLRA, and the Northern District's Guidance. *See, e.g., Hunt v. Bloom Energy Corp.*, 2024 WL 1995840, at *4 (N.D. Cal. May 6, 2024) (approving similar notice program that included mailing postcard notices to potential class members and nominees followed by publication notice and posting notice on a settlement website); *Zynga*, 2016 WL 537946, at *7 (similar notice program constituted "the best form of notice available under the circumstances").

As detailed in the accompanying Mailing Declaration of the Claims Administrator, as of October 4, 2024, a total of 772,957 Settlement Postcards have been mailed potential Class Members, brokers, and nominees. *See* Ex. 6 at ¶¶8-11. In addition, the Summary Notice was published in *The Wall Street Journal* and transmitted over the *PR Newswire* on September 6, 2024. *Id.* at ¶12. The Claims Administrator also continued to maintain a dedicated case website, www.UberIPOSecuritiesLitigation.com to provide potential Class Members with information concerning the Action, the Settlement, and access to copies of the Settlement Postcard, Settlement Notice, Claim Form, Stipulation, Preliminary Approval Order, and other case-related documents. *Id.* at ¶13. Claim Forms can be submitted to the Claims Administrator by mail or using the case website. *Id.* at ¶14.

Notice of a class action settlement "is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Churchill*, 361 F.3d at 575. The contents of the notices here provided the necessary information for Class Members to make an informed decision regarding the Settlement and contained all of the information required by Rule 23(c)(2)(B); the PSLRA, 15 U.S.C. §77z-1(a)(7); and Northern District's Guidance. The notices collectively informed Class Members of, among other things, (1) the nature of the Action and the claims asserted; (2) the definition of the Class; (3) the amount of the Settlement; (4) the Plan of Allocation; (5) the reasons why the Parties are proposing the Settlement; (6) the estimated average recovery per affected share; (7) the maximum amount of attorneys' fees and expenses that will be sought; (8) the identity and contact information for the representatives of Class Counsel; (9) Class Members' right to object to the Settlement, the Plan of Allocation, or the requested attorneys' fees or expenses as well as the right

CLASS REPRESENTATIVES' MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:19-CV-06361-RS

23

to opt back into the Class if they previously requested exclusion; (10) the binding effect of a judgment on Class Members; and (11) the dates and deadlines for Settlement-related events.

While the objection deadline – November 14, 2024 – has not yet passed, to date, no objections have been received by Class Counsel or docketed by the Court. The reaction to date supports approval of the Settlement and the proposed Plan of Allocation. Class Representatives will address any objections, if any, in their reply submission.

## CONCLUSION

For all the foregoing reasons, Class Representatives respectfully request that the Court grant final approval to the proposed Settlement and approve the Plan of Allocation for the distribution of the Net Settlement Fund. Proposed orders will be submitted with Class Representatives' reply papers, after the deadline for objecting has passed.

Dated: October 4, 2024

**LABATON KELLER SUCHAROW LLP**

By:      /s/ *Alfred L. Fatale III*
Jonathan Gardner (*pro hac vice*)
Alfred L. Fatale III (pro hac vice)
Joseph N. Cotilletta (*pro hac vice*)
Beth C. Khinchuk (*pro hac vice*)
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
jgardner@labaton.com
afatale@labaton.com
jcotilletta@labaton.com
bkhinchuk@labaton.com

*Attorneys for Plaintiffs and the Class*

LEVI & KORSINSKY LLP
Gregory M. Nespole (*pro hac vice*)
Daniel Tepper (*pro hac vice*)
Correy A. Suk (*pro hac vice*)
55 Broadway, 10th Floor
New York, New York 10006
Telephone: (212) 363-7500
Facsimile: (212) 363-1294
Email:  gnespole@zlk.com
            dtepper@zlk.com
            csuk@zlk.com

*-and-*

CLASS REPRESENTATIVES' MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:19-CV-06361-RS

24

CASE NO. 3:19-CV-06361-RS

Adam M. Apton (SBN 316506)
75 Broadway, Suite 202
San Francisco, California 94111
Telephone: (415) 373-1671
Facsimile: (415) 484-1294
Email:  aapton@zlk.com

*Liaison Counsel for Lead Plaintiff Boston
Retirement System and the Class*

SCOTT+SCOTT ATTORNEYS AT LAW
LLP
John T. Jasnoch (SBN 281605)
600 W. Broadway, Suite 3300
San Diego, California 82101
Telephone: (619) 233-4565
Facsimile: (619) 233-0508
Email:  jjasnoch@scott-scott.com

*-and-*

David R. Scott
156 South Main Street P.O. Box 192
Colchester, Connecticut 06415
Telephone: (860) 537-5537
Facsimile: (860) 537-4432
Email:  david.scott@scott-scott.com

*-and-*

William C. Fredericks
The Helmsley Building
230 Park Avenue, 17th Floor
New York, New York 10169
Telephone: (212) 223-6444
Facsimile: (212) 223-6334
Email:  wfredericks@scott-scott.com

ROBBINS GELLER RUDMAN
 & DOWD LLP
Thomas Egler
Nathan Lindell
One Montgomery Street, Suite 1800
San Francisco, California, 94104
Telephone: (619) 231-1058
Facsimile: (619) 231-7423
Email:  tegler@rgrdlaw.com
        nlindell@rgrdlaw.com

COTCHETT, PITRE & MCCARTHY, LLP
Mark C. Molumphy (SBN 168009)

CLASS REPRESENTATIVES' MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:19-CV-06361-RS

25

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Tyson Redenbarger (SBN 294424)
Gia Jung (SBN 340160)
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, California 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
Email:  mmolumphy@cpmlegal.com
        tredenbarger@cpmlegal.com
        jpeng@cpmlegal.com

*Counsel for Plaintiffs David Messinger,
Salvatore Toronto on behalf of Ellie Marie
Toronto ESA, Joseph Cianci, and Irving S. and
Judith Braun*

CLASS REPRESENTATIVES' MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:19-CV-06361-RS

26

1

**CERTIFICATE OF SERVICE**

2          I hereby certify that on October 4, 2024, I authorized the electronic filing of the foregoing

3   with the Clerk of the Court using the CM/ECF system, which will send notification of such filing

4   to the e-mail addresses denoted on the attached Electronic Mail Notice List served via ECF on all

5   registered participants only.

6          I certify under penalty of perjury under the laws of the United States of America that the

7   foregoing is true and correct.

8          Executed on October 4, 2024

9

10                              /s/ *Alfred L. Fatale III*
                                Alfred L. Fatale III

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28